1    BUCHALTER NEMER
     A Professional Corporation
2        PETER G. BERTRAND (#87883)
         RICHARD C. DARWIN (#161245)
3    333 Market Street, 25th Floor
     San Francisco, California  94105-2126
4    Telephone:    (415) 227-0900
     Facsimile:    (415) 227-0770
5    rdarwin@buchalter.com

6    Attorneys for Defendant
     COMERICA BANK

7

8              UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

10

11   ROBERT PRITIKIN, et al.,              CASE NO. CV 09-03303 JF

12                Plaintiffs,              **NOTICE OF MOTION AND MOTION TO
                                           DISMISS THE COMPLAINT BY
13           v.                            DEFENDANT COMERICA BANK**

14   COMERICA BANK, et al.,                Date:      October 23, 2009
                                           Time:      9:00 a.m.
15                Defendants.              Judge:     Honorable Jeremy Fogel

16
                                           Complaint filed:    July 20, 2009
17                                         Trial Date Set:

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
   SAN FRANCISCO

BN 4264557v8

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.      INTRODUCTION ...................................................................................................... 1

II.     THE PARTIES............................................................................................................ 2

    A.      Plaintiffs ........................................................................................................ 2

    B.      Comerica ........................................................................................................ 2

III.    PLAINTIFFS' KNOWLEDGE OF THE FOUR STAR PONZI SCHEME..................... 3

IV.     LEGAL STANDARD ................................................................................................. 5

V.      ARGUMENT .............................................................................................................. 6

    A.      Plaintiffs' Claims Are Time-Barred .............................................................. 6

        1.      Plaintiffs' Claims For Aiding And Abetting Breach Of Fiduciary Duty, and Aiding and Abetting Fraud, Are Time Barred ........................... 6

        2.      Plaintiffs' Claims Under B&P Section 17200 are Time Barred .............. 11

        3.      Plaintiffs' Civil RICO Claims are Time Barred...................................... 11

    B.      The Doctrines of Equitable Tolling and Equitable Estoppel Do Not Save Plaintiffs' Claims .......................................................................................... 12

        1.      Equitable Estoppel Does Not and Cannot Apply Here ............................ 12

        2.      Equitable Tolling Does Not Save Plaintiffs' State or Federal Claims ...... 17

    C.      Plaintiffs Have Failed to Allege Facts Sufficient to State a Claim for Conspiring and/or Aiding and Abetting a Breach of Fiduciary Duty ................. 19

        1.      The Law Does Not Recognize a Claim for Aiding and Abetting or Conspiring to Breach a Fiduciary Duty Against a Party Who Owes No Fiduciary Duty to Plaintiffs.................................................................. 19

    D.      Plaintiffs Fail to Allege Facts Sufficient to State a Claim for Aiding and Abetting  Fraud or Breach of Fiduciary Duty ....................................................... 20

    E.      Plaintiffs Civil RICO Claims Must Be Dismissed ................................................. 22

        1.      Plaintiffs' RICO Claims Are Precluded Because They Are Premised Upon Securities Fraud.............................................................. 22

        2.      Plaintiffs Have Failed to Adequately Allege the Required Element of an Enterprise ...................................................................................... 24

VI.     CONCLUSION ......................................................................................................... 25

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page**

## Cases

*Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*
  483 U.S. 143, 107 S.Ct. 2759 (1987) ............................................................... 11

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*
  7 Cal.4th 503 (1994) ............................................................................. 19, 20

*Azer v. Connell*
  306 F.3d 930 (9th Cir. 2002) ......................................................................... 17

*Bald Eagle Area School District v. Keystone Financial, Inc.*
  189 F.3d 321 (3d Cir. 1999) ...................................................................... 22, 23

*Barton v. New United Motor Manufacturing, Inc.*
  43 Cal.App.4th 1200 (1996) ............................................................................. 6

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544, 127 S.Ct. 1955 (2007) ............................................................. 5, 6

*Bernson v. Browning-Ferris Industries*
  7 Cal.4th 926 (1994) ....................................................................... 11, 14, 15

*Boyd v. United States Postal Service*
  752 F.2d 410 (9th Cir. 1985) ......................................................................... 17

*Cada v. Baxter Healthcare Corp.*
  920 F.2d 446 (7th Cir. 1990) ......................................................................... 17

*Casey v. U.S. Bank Nat. Ass'n*
  127 Cal.App.4th 1138 (2005) ................................................................. 20, 21, 22

*Chazen v. Centennial Bank*
  61 Cal.App.4th 532 (1998) ............................................................................ 19

*County of Orange v. McGraw-Hill Cos.*
  203 B.R. 983 (Bankr.C.D.Cal. 1996) ................................................................. 20

*Doctor's Co. v. Superior Court*
  49 Cal.3d 39 (1989) .................................................................................. 19

*Gerard v. Ross*
  204 Cal.App.3d 968 (1988) ............................................................................ 20

*Gidding v. Anderson*
  -- F.Supp.2d --, 2009 WL 666954, *2 (N.D.Cal., Mar. 13, 2009) ...................................... 12

*Gray v. Reeves*
  76 Cal.App.3d 567 (1978) ........................................................................... 7, 14

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Grimmett v. Brown*
75 F.3d 506 (9th Cir. 1996)................................................................ 12, 13

*Grisham v. Philip Morris U.S.A., Inc.*
40 Cal.4th 623 (2007) .......................................................................... 7

*Honig v. San Francisco Planning Dept.*
127 Cal.App.4th 520 (2005)................................................................ 14

*Howard v. America OnLine, Inc.*
208 F.3d 741 (9th Cir. 2000),
cert denied, 531 U.S. 828, 121 S.Ct. 77 (2000) ............................... 23

*In re Silicon Graphics, Inc. Sec. Lit.*
183 F.3d 970 (9th Cir. 1999)............................................................... 6

*Intri-Plex Techs, Inc. v. Crest Group, Inc.*
499 F.3d 1048 (9th Cir. 2007)............................................................ 6

*Irwin v. Dept. of Veterans Affairs*
498 U.S. 89 (1990).............................................................................. 17

*Janken v. GM Hughes Electronics*
46 Cal.App.4th 55 (1996)................................................................... 20

*Johnson v. Henderson*
314 F.3d 409 (9th Cir. 2002)........................................................ 13, 25

*Jolly v. Eli Lilly & Co.*
44 Cal.3d 1103 (1988) ................................................................... 7, 15

*Klehr v. A.O. Smith Corp.*
521 U.S. 179, 117 S.Ct. 1984 (1997) ................................................ 13

*Kline v. Turner*
87 Cal.App.4th 1369 (2001)......................................................... 6, 7, 11

*Lantzy v. Centex Homes*
31 Cal.4th 363 (2003) ........................................................................ 18

*Leorna v. U.S. Dept. of State*
105 F.3d 548 (9th Cir. 1997).......................................................... 17, 18

*Living Designs, Inc. v. E.I. DuPont de Nemours & Company*
431 F.3d 353 (9th Cir. 2005)......................................................... 22, 24

*Lomita Land Water Co. v. Robinson*
154 Cal. 36 (1908) ............................................................................. 20

*Marbley v. Kaiser Permanente Med. Group, Inc.*
W.L. 2157145 (N.D. Cal. July 20, 2009)............................................ 6

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Mass. Mut. Life Ins. Co. v. Sup. Court*
  97 Cal.App.4th 1282 (2002)..................................................................... 11

*Naton v. Bank of California*
  649 F.2d 691 (9th Cir. 1981)............................................................. 13, 17

*Neilson v. Union Bank of California, N.A.*
  290 F.Supp.2d 1101 (C.D. Cal. 2003)...................................................... 20

*Niebel v. Transworld Assurance Co.*
  108 F.3d, 1123 (9th Cir. 1997)............................................................. 24

*Odom v. Microsoft Corp.*
  486 F.3d, 541 (9th Cir. 2007)............................................................... 24

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*
  133 Cal.App.4th 658 (2005).................................................................. 13

*Platt Elec. Supply v. EOFF Elec., Inc.*
  522 F.3d 1049 (9th Cir. 2008)................................................................. 7

*Prudential Home Mortgage Company v. Superior Court (Diaz)*
  66 Cal.App.4th 1236 (1998)................................................................... 6

*Robertson v. Dean Witter Reynolds, Inc.*
  749 F.2d 530 (9th Cir. 1984).................................................................. 5

*Santa Maria v. Pacific Bell*
  202 F.3d 1170 (9th Cir. 2000)........................................................... 12, 17

*Snapp & Associates Ins. Services, Inc. v. Malcolm Bruce Burlingame Robertson*
  96 Cal.App.4th 884 (2002)................................................................ 11, 14

*Solomon v. North American Life Ins. Co.*
  151 F.3d 1132 (9th Cir. 1998)................................................................. 6

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001)............................................................... 6, 22

*Stalberg v. Western Title Ins. Co.*
  230 Cal.App.3d 1223 (1991).................................................................. 6

*Stearns v. Select Comfort Retail Corp.*
  -- F.Supp.2d --, 2009 WL 1635931, *2 (N.D. Cal. June 5, 2009) ............. 5, 6, 22

*Suh v. Yang*
  987 F.Supp. 783 (N.D. Cal. 1997) ........................................................ 11

*Traschel v. Bucholz*
  2009 WL 86698 (N.D.Cal. Jan. 9, 2009) ................................................ 23

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**COMERICA'S MOTION TO DISMISS COMPLAINT – CASE NO. CV 09-03303 JF**

## TABLE OF AUTHORITIES
### (continued)

**Page**

*United States v. Turkette*
452 U.S. 576, 101 S.Ct 2524 (1981) .......................................................... 24

*Veck v. Prupis*
529 U.S. 494 (2000) ......................................................................... 22

*Volk v. D.A. Davidson & Co.*
816 F.2d 1406 (9th Cir. 1987) ........................................................ 13, 16

*Wood v. Elling Corp.*
20 Cal.3d 353 (1977) ......................................................................... 18

### Statutes

18 U.S.C. § 1962 ............................................................................. 22
18 U.S.C. § 1964(c) ......................................................................... 22
Business and Professions Code § 17208 .......................................... 11
C.C.P. Section 338(d) ...................................................................... 6, 7
C.C.P. Section 343 ............................................................................. 6
California Civil Code § 19 ................................................................ 14
California Corporations Code §§ 25401 ........................................... 23
California Corporations Code §§ 25403 ........................................... 23

### Rules

Federal Rule of Civil Procedure 9(b) ...................................... 1, 11, 22

### Other Authorities

3 Witkin, *California Procedure* 5th (2008) Actions, § 762 .................. 13

Securities Exchange Act of 1934
Section 10(b) .................................................................................... 23

Securities Exchange Act of 1934
Section 12(a)(2) ................................................................................ 23

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**COMERICA'S MOTION TO DISMISS COMPLAINT – CASE NO. CV 09-03303 JF**

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 23, 2009, at 9:00 a.m. in Courtroom 3 of the above-entitled Court, located at 280 South 1st Street, San Jose, California 95113, Defendant Comerica Bank ("Defendant") will move this Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the complaint and each of the claims for relief alleged therein. Defendant seeks the requested relief on the grounds that the complaint fails to plead facts sufficient to state a claim for relief.

The motion will be based upon this Notice and the Memorandum of Points and Authorities set forth below, the Request for Judicial Notice and Declaration of Monique Jewett-Brewster filed herewith, the complete files and records in this action, the written and oral arguments of counsel and such other and further evidence as the Court may deem proper.

### STATEMENT OF RELIEF

By this motion, Comerica seeks an order dismissing plaintiffs' complaint, with prejudice, on the following grounds:

1.      Based upon the allegations in the complaint itself, and the existence of facts and events about which this Court may take judicial notice, each of the seven claims for relief alleged in the complaint are barred by the statute of limitations, and are not saved by the doctrines of delayed discovery, equitable estoppel, and/or equitable tolling.

2.      The First and Second Claims for Relief, for aiding and abetting breach of fiduciary duty, and aiding and abetting fraud, should be dismissed on the additional grounds that the complaint fails to adequately allege that Defendant had actual knowledge of the underlying wrongdoing, which is a required element of an aiding and abetting claim.

3.      The First and Seventh Claims for Relief, for aiding and abetting a breach of fiduciary duty, and conspiracy to breach a fiduciary duty, should also be dismissed because Defendant cannot be held vicariously liable for the breach of a fiduciary duty it did not personally owe to the plaintiffs.

4.      The Fifth and Sixth Claims for Relief, for violation of RICO, should be dismissed on the additional grounds that they are premised upon securities fraud, and are therefore barred by

1    the Private Securities Litigation Reform Act.

2        5.    The Fifth and Sixth Claims for Relief, for violation of RICO, should also be

3    dismissed because the complaint fails to allege the required element of an enterprise that is

4    separate and independent from the pattern of racketeering activity in which it allegedly engaged.

5

6    DATED: August 28, 2009                    BUCHALTER NEMER
                                                A Professional Corporation
7
                                                By: _____
8                                                       Richard C. Darwin
                                                Attorneys for Defendant, COMERICA BANK
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3        This action involves multiple claims asserted by a group of investors who between 1999

4    and 2002 allegedly purchased investments from Four Star Financial Services, LLC ("Four Star"),

5    which at the time were too good to be true.  Seven years later, after having sued everyone else in

6    sight on identical theories, Plaintiffs now allege that Comerica is liable for $50 million simply

7    because it:  (i) acted as Four Star's depository bank; (ii) provided routine treasury management

8    services to its customers; and (iii) extended a personal line of credit to two of Four Star's

9    managers.  Under the facts pled, Comerica owed no fiduciary duty to Four Star, let alone Four

10    Star's investors, and is not liable for their imprudent investment decisions.  As demonstrated

11    below, each of Plaintiffs' claims for relief is time-barred, and subject to dismissal because

12    Plaintiffs did not, and cannot, allege the essential elements of their claims.  Moreover, Plaintiffs

13    have attempted to substitute hyperbole and mere conclusory allegations where specific facts are

14    required pursuant to Federal Rule of Civil Procedure 9(b).

15        Although Plaintiffs attempt to avoid the obvious statute of limitations defects on the face

16    of their complaint, Plaintiffs have not and cannot allege facts supporting their equitable tolling

17    claims.  Plaintiffs only allege representations "made by Four Star and the Four Star managers,"

18    not Comerica, failing to allege the active concealment by Comerica necessary for equitable

19    tolling or estoppel to apply.  Additionally, Plaintiffs have not and cannot allege facts establishing

20    either adequate diligence or their inability to discover Comerica's allegedly improper conduct.

21    Instead, numerous judicially-noticeable facts establish that Comerica's actions as one of Four

22    Star's depository banks and the extension of personal lines of credit were known to Plaintiffs

23    since at least 2003, and the existence of the Four Star Ponzi scheme was alleged in numerous

24    state, federal and bankruptcy court actions over six years ago.  Indeed, the use of Four Star bank

25    accounts in connection with its Ponzi scheme was previously alleged by some of the Plaintiffs in

26    this case in a prior class action they filed in 2004.  Even the most cursory examination of publicly

27    available materials demonstrates that Plaintiffs were on notice of their injuries and claims.

28    Accordingly, equitable tolling and equitable estoppel are inapplicable as a matter of law.

## II.    THE PARTIES

### A.    Plaintiffs

Plaintiffs are alleged to have invested in Four Star during the period of December 1999 through October 2002 (defined in the Complaint as the "Loss Period").  Complaint, ¶ 9.  None of Plaintiffs are alleged to have had any contact with Comerica during the Loss Period, other than receiving checks drawn on Comerica bank accounts.  No representations are alleged to have been made by Comerica to any plaintiff, and no fiduciary relationship is alleged to have existed.

### B.    Comerica

Comerica is alleged to have maintained certain depository accounts in the name of Four Star and its affiliate FSF, LLC, and to have extended to Ron Anson ("Anson") and Jack Garrett ("Garrett") a **personal** revolving line of credit.  Complaint, ¶ 7, 16.  Although Plaintiffs allege that the personal line of credit somehow violated undescribed banking practices, no basis is alleged that would make Comerica liable to individual Four Star investors for allegedly making an undersecured loan.  Additionally, although Plaintiffs allege the existence of a "Banking Scheme," the allegations on their face are devoid of substance and show no wrongdoing by Comerica.  Complaint, ¶ 33.  Instead, Plaintiffs allege that on most banking days, if the amount of checks presented for a payment the preceding day exceeded the available balance, Four Star would prepare a "Cash Report" and transfer enough funds to cover any deficiency.  Complaint, ¶ 33.  Comerica also allegedly allowed Anson and Garrett to use their revolving line of credit to make deposits into the Four Star account, and to receive repayment of those advances from Four Star.  *Id.*  Plaintiffs further allege Four Star transferred proceeds in excess of that which was necessary to pay outstanding checks to other accounts and that Comerica provided immediate conditional credit for deposits, as is commonly done for the corporate customers.  *Id.*  Plaintiffs further allege that by giving immediate credit, Four Star was able to maintain control over the use of its funds.  *Id.*  Plaintiffs allege that Four Star supposedly maintained zero balance accounts in order to enable it to avoid creditor levies, but no Plaintiffs are alleged to have been a levying creditor against any Comerica account.  Plaintiffs allege that Comerica received the very same fraudulent financial statements they received (Complaint ¶ 39), but that somehow Comerica had

knowledge of the Ponzi scheme, although facts supporting such knowledge, when it acquired it, what Comerica was told and by whom are not alleged.

## III.    PLAINTIFFS' KNOWLEDGE OF THE FOUR STAR PONZI SCHEME

Plaintiffs admit in their Complaint that as of October, 2002, they were put on notice that Four Star was in financial trouble, and that as of October, 2002, they ceased investing in Four Star.  Complaint, ¶ 14.  Almost immediately, a number of investors, including some of the Plaintiffs in this action, retained counsel and commenced litigation against Four Star, its managers, and third parties as early as October 2002.  These lawsuits, which are described below, disclosed all of the core facts regarding Four Star's Ponzi scheme and the claims asserted herein.

| | |
|---|---|
| April 12, 1996 | Four Star is formed by Mark Cohn ("Cohn"), Anson, and Garrett.  Complaint, ¶ 8. |
| December 1999 | Four Star Ponzi scheme commences.  Complaint, ¶ 6. |
| | Plaintiffs in this action ("*Pritikin* Plaintiffs") allegedly begin investing in Four Star.  Complaint, ¶ 9.  Plaintiffs' investments included unsecured Cash Flow Notes which paid between 14% to 18%, and arbitrage facilities which paid between 13% and 30% interest.  Plaintiffs allege Four Star represented that repayment of principal in addition to the exorbitant rates of return was "guaranteed" and was paid on a monthly basis.[1]  Complaint, ¶ 59. |
| December 1999 | Four Star allegedly begins using a Comerica checking account to clear distribution checks to the *Pritikin* Plaintiffs.  Complaint, ¶ 17. |
| December 1999 – April 2000 | Several creditors allegedly obtain judgments and pre-judgment writs of attachment against Four Star totaling several millions of dollars.  Complaint, ¶¶ 7, 30. |
| April 2000 | Judgment of approximately $2.2 million is allegedly entered against Four Star in favor of Sentinel Trust.  Certain unnamed creditors allegedly seek enforcement of writs against Four Star bank accounts.  Complaint, ¶ 30; Request for Judicial Notice ("RJN") No. 1. |
| January 11, 2002 | Reservoir Capital registers a Maryland District Court judgment against Four Star in the amount of $1,866,996 in the Northern District of California.  RJN Nos. 2, 3. |
| October 2002 | Four Star runs out of cash and stops making monthly distributions to Plaintiffs.  Plaintiffs immediately suspect that Four Star is in financial trouble and stop making investments in Four Star.  Complaint, ¶ 14. |
| | Four Star ceases operations.  Complaint, ¶ 14. |

---

[1]  Comerica, by making reference to the various allegations set forth in the Complaint and other actions does not concede the truthfulness of the matters stated, but rather that information regarding potential claims was readily available to Plaintiffs.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

| October 18, 2002 | Four Star investors file lawsuit against Four Star, Cohn, Anson, and others in United States District Court for the District of Nevada, entitled *2424 Limited, et al. v. Four Star, et al.*, Case No. CV-S-02-1385 LDG, alleging claims for fraud, conversion, RICO, breach of fiduciary duty. Complaint alleges Four Star and its principals orchestrated a Ponzi scheme whereby early investors were paid from later investments. RJN No. 4. |
|---|---|
| August 4, 2003 | Four Star investor and *Pritikin* Plaintiff Steve Gevirtz retains counsel and files suit against Anson, Garrett, and Four Star in United States District Court for the Central District of California, entitled *Gevirtz v. Four Star Financial, et al.*, Case No. CV 03-5548 RSWL, alleging claims for securities fraud, RICO, common law fraud, unfair competition and financial deceit. RJN No. 5, 26. |
| August 11, 2003 | Reservoir Capital moves to amend its judgment against Four Star to include "alter egos" Anson and Garrett. Reservoir Capital specifically alleges that Anson and Garrett are paying off a Comerica loan with Four Star funds, and files Four Star financial statements and documents reflecting a revolving note from Comerica Bank. RJN No. 6, 7. |
| October 10, 2003 | Four Star investors Michael and Lisa Plonsker retain counsel and file suit against Four Star, its principals and affiliates in Los Angeles Superior Court entitled *Plonsker, et al. v. Four Star Financial, et al.*, Case No. SC 079281, alleging claims for fraud, breach of fiduciary duty, negligence, conversion, and asserting defendants engaged in a Ponzi scheme. RJN No. 8. |
| October 14, 2003 | Four Star investors and *Pritikin* Plaintiffs John Ferrara, Arlene Ferrara, The Ferrara Family Trust, Rodney Minott, and the Minott Family Trust retain counsel and file suit in Los Angeles Superior Court, *Ferrara, et al. v. Georgina Asset Management, Inc., et al.*, Case No. BC 304180, alleging losses due to investments in Four Star. RJN No. 9. |
| October 24, 2003 | Four Star is placed into involuntary bankruptcy. Complaint, ¶¶ 15, 47; *In re Four Star Financial Services, LLC, debtor* U.S. Bankruptcy Court, Central District of California, Case No. LA 03-37579 TD. RJN No. 10. |
| December 19, 2003 | Four Star files a statement of financial affairs in the bankruptcy proceedings, disclosing all then-pending litigation against Four Star and its principals, all banks accounts (including **Comerica bank accounts**) and account numbers, and identifies all Four Star membership owners. RJN No. 11. |
| February 10, 2004 | Court in Four Star bankruptcy grants Trustee's application to employ forensic accounting firm Squar Milner. RJN No. 12. |
| February 13, 2004 | Four Star investors and *Pritikin* Plaintiffs Phyllis Klein, Kenneth Kraus, Perry Gibson, and the Kraus/Gibson Revocable Trust retain counsel and file a class action against Cohn, Garrett, Anson, and others in Los Angeles Superior Court, *Gilbert, et al. v. Cohn, et al.*, Case No. BC 310846, alleging claims for fraud, breach of fiduciary duty, and negligence on the grounds that Four Star was a Ponzi scheme ("*Gilbert* Complaint"). RJN No. 13. |
| March 17, 2004 | Four Star bankruptcy proceedings are converted to Chapter 7. Complaint, ¶ 48; RJN No. 14. |
| April 6, 2004 | Four Star investor MaxMin Yield, Inc. files suit against Anson, Garrett, and Cohn in Los Angeles Superior Court, entitled *MaxMin Yield, et al. v. Mark Cohn, et al.*, Case No. BC 313316, alleging Four Star was a Ponzi scheme. RJN No. 15. |

| May 4, 2004 | Four Star holds substantive Section 341(a) meeting, attended by forensic accountant and over 30 creditors. RJN No. 16. |
| May 24, 2004 | *Pritikin* Plaintiffs Phyllis Klein, the Phyllis Klein Trust, Ken Krause, Perry Gibson, and the Krause/Gibson Revocable Trust amend their class action suit to name two of Four Star's banks as defendants. The amended complaint alleges, among other things, that the banks aided and abetted the Four Star Ponzi scheme by financing its operations through lines of credit to Anson and Garrett, and by shuffling funds among accounts held by Four Star entities. RJN No. 17, ¶ 63 |
| June 15, 2004 | The Wall Street Journal runs a front page article about Four Star, outlines the losses suffered by investors, and refers to it as a Ponzi scheme. RJN No. 18. |
| September 1, 2004 | Four Star Bankruptcy Trustee Richard Marshack files an adversary proceeding against Anson and Garrett in United States Bankruptcy Court, Cent. Dist. of California, Adv. Proc. No. 04-02002, alleging that they mismanaged corporate funds, siphoned off Four Star capital for their own use, and authorized "Ponzi-like" investment schemes. RJN No. 19. |

In addition, bankruptcy records show that throughout the summer of 2004 the Trustee scheduled Bankruptcy Rule 2004 examinations of former Four Star lawyers, employees, and investors. RJN No. 16. Further, documents filed in connection with the bankruptcy and the *Ferrara* litigation show that in 2002 and 2003, Kenneth Pritikin, Plaintiffs' co-counsel in this case, was retained as counsel for Four Star, and acted as an intermediary between Four Star and its investors. RJN Nos. 20, 21. Finally, in or about March 2004, a website entitled "FourStarFraud.com" was created which provided summaries of various judicial proceedings (including criminal actions against Four Star's principals) that were proceeding in the state, federal and bankruptcy courts. RJN No. 22.

## IV.    LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)6 if (i) it lacks of a cognizable legal theory; or (ii) insufficient facts are pled under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-534 (9th Cir. 1984); *see also, Stearns v. Select Comfort Retail Corp.*, -- F.Supp.2d --, 2009 WL 1635931, *2 (N.D. Cal. June 5, 2009). While allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party, the Court need not accept as true allegations that are conclusory, based on unwarranted deductions of fact, or premised upon unreasonable inferences. *See, Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561, 127 S.Ct. 1955 (2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

1   (9th Cir. 2001). A plaintiff is required to provide "more than labels and conclusions;" rather,

2   "factual allegations must be enough to raise a right to relief above the speculative level."

3   *Twombly*, 550 U.S. at 555; *Stearns v. Select Comfort Retail Corp.*, at *2. In ruling on a motion to

4   dismiss, the Court may consider the four corners of the complaint, matters that are judicially

5   noticeable, documents that are referenced extensively in the complaint and documents which are

6   accepted by the parties as authentic. *Marbley v. Kaiser Permanente Med. Group, Inc.* W.L.

7   2157145 (N.D. Cal. July 20, 2009), citing *In re Silicon Graphics, Inc. Sec. Lit.*, 183 F.3d 970, 986

8   (9th Cir. 1999); *Intri-Plex Techs, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

9   **V.    ARGUMENT**

10      **A.    Plaintiffs' Claims Are Time-Barred**

11          **1.    Plaintiffs' Claims For Aiding And Abetting Breach Of Fiduciary Duty,
12                  and Aiding and Abetting Fraud, Are Time Barred**

13      Claims for relief arising out of an alleged breach of a fiduciary duty are governed by the

14  four year statute of limitations set forth in C.C.P. Section 343. *Stalberg v. Western Title Ins. Co.*,

15  230 Cal.App.3d 1223, 1230 (1991); *Solomon v. North American Life Ins. Co.*, 151 F.3d 1132,

16  1137 (9th Cir. 1998). The three year limitations period set forth in C.C.P. Section 338(d) applies

17  to claims for fraud. *Kline v. Turner,* 87 Cal.App.4th 1369, 1374 (2001). Because the statute of

18  limitations applicable to a particular claim depends upon the underlying right sued upon, these

19  limitation periods are applicable to Plaintiffs' claims for aiding and abetting a breach of fiduciary

20  duty (First Claim for Relief), and aiding and abetting fraud (Second Claim for Relief). *See,*

21  *Barton v. New United Motor Manufacturing, Inc.* 43 Cal.App.4th 1200, 1207 (1996).

22      Ordinarily, a tort accrues when the wrongful act occurs – not at the time of the plaintiff's

23  discovery. *See, Prudential Home Mortgage Company v. Superior Court (Diaz)*, 66 Cal.App.4th

24  1236, 1246 (1998). Under limited circumstances, however, the claim will not accrue until the

25  plaintiff discovers or should have discovered, through the exercise of reasonable diligence, facts

26  giving rise to a claim for relief. *Id.* This doctrine of "delayed discovery" is "generally

27  applicable" to confidential or fiduciary relationships. *Id.* With respect to fraud claims, the

28  delayed discovery rule is incorporated into the language of the statute itself: "[t]he cause of action

1  is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting

2  the fraud or mistake." C.C.P. Section 338(d).

3      Generally speaking, the delayed discovery rule operates to toll the statute of limitations

4  until plaintiff "*suspects* or should suspect that her injury was caused by wrongdoing, that

5  someone has done something wrong to her." *Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1110

6  (1988); *Kline,* 87 Cal.App.4th at 1374. Once such suspicion exists, the statute begins to run, and

7  plaintiff has an affirmative duty to investigate and file suit before the running of the limitations

8  period: "[the plaintiff] cannot wait for the facts to find her." *Jolly,* 44 Cal.3d at 1111. A plaintiff

9  need not be aware of specific facts; a mere suspicion will suffice. *Id.* at 1112.[2] Thus, the delayed

10  discovery rule allows for tolling of the statute of limitations only in the very limited

11  circumstances where plaintiff has no reason to suspect any wrongdoing, in the lay sense, at the

12  time of the alleged harm. *See, e.g., Kline* , 87 Cal.App.4th at 1374; *Gray v. Reeves,* 76

13  Cal.App.3d 567, 576-577 (1978). If plaintiff has information that would put a reasonable person

14  on inquiry, the statute begins to run. *Kline,* 87 Cal.App.4th at 1374.

15      To properly invoke the delayed discovery rule, plaintiff has the burden of pleading

16  specific facts demonstrating the time and manner of discovery as well as "the inability to have

17  made earlier discovery despite reasonable diligence." *Grisham v. Philip Morris U.S.A., Inc.*, 40

18  Cal.4th 623, 638 (2007); *see also, Platt Elec. Supply v. EOFF Elec., Inc.,* 522 F.3d 1049, 1055

19  (9th Cir. 2008) (Federal courts "do not take a hypertechnical approach to the application of the

20  discovery rule. Rather... we look to whether the Plaintiffs have reason to at least suspect that a

21  type of wrongdoing has injured them."). Courts may decide the applicability of the delayed

22  discovery rule as a matter of law where the evidence is susceptible to only one legitimate

23  inference. *Kline,* 87 Cal.App.4th at 1374.

24      Here the Complaint admits Plaintiffs' actual knowledge of their injury, or at the least

---

[2]  In *Jolly*, the California Supreme Court held that once the plaintiff (who claimed to have been injured by the drug DES) suspected that DES may have caused her injuries, regardless of whether she had information concerning the specific manufacturer that caused her harm, she was "on inquiry" of potential wrongdoing. *Id.* at 1111. Since a timely investigation "would have disclosed numerous articles concerning DES and many DES suits filed throughout the country alleging wrongdoing," this knowledge was imputed to plaintiff, and her claim was time-barred. *Id.* at 1112-1113.

1   "enough information to warrant an investigation that, if reasonably diligent, would have led to

2   discovery of fraud," in October, 2002.  *See* Complaint, ¶ 14 ("In or about October 2002, i.e., at

3   the end of the Loss Period . . . Plaintiffs immediately suspected that Four Star was in financial

4   trouble, and Plaintiffs immediately stopped making new investments in Four Star.")  Further, as

5   detailed above, numerous lawsuits were filed against Four Star and its principals in 2002 and

6   2003 alleging Four Star and its principals engineered a Ponzi scheme.  Plaintiffs clearly had

7   knowledge of the alleged Ponzi scheme as of October 2002.

8        In addition, the very acts that form the basis of Comerica's alleged liability were publicly

9   available from October 2002 onward.  Plaintiffs' Complaint admits knowledge of the existence of

10   Comerica's bank accounts from as early as December, 1999, as Plaintiffs' distribution payments

11   were allegedly drawn on Comerica accounts.  Complaint, ¶ 17.  Moreover, each Comerica bank

12   account was listed in Four Star's bankruptcy schedules in December 2003, as well as being

13   described in other suits (*see* RJN Nos. 6, 7, 23, 24).  Comerica's line of credit to Anson and

14   Garrett was publicly disclosed at least as early as December 2003, as was its repayment sources.

15   *See* RJN Nos. 6, 24.  In May 2004, some of the same Plaintiffs who are now bringing this action

16   alleged, in the context of a class action suit, that Four Star bank accounts were used to perpetrate

17   the Ponzi scheme.  RJN No 17.  Plaintiffs were unquestionably put on notice of possible claims

18   against Four Star's banks long before Cohen's October 2008 assertion that Comerica accounts

19   were used to avoid creditors' levies.

20        A comparison of the core allegations in the Complaint with the allegations made in other

21   lawsuits dating back to 2002 demonstrates that well over five years ago Plaintiffs (i) knew or had

22   reason to suspect that they had been harmed by a fraudulent Ponzi scheme run by Four Star, *and*

23   (ii) had access – from publicly available court records – to information regarding Comerica's

24   alleged role in the underlying scheme.  The similarities between the *Pritikin* Complaint and

25   allegations made in prior Four Star lawsuits are striking, and are fatal to Plaintiffs' claims.

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 4264557v8

**COMERICA'S MOTION TO DISMISS COMPLAINT – CASE NO. CV 09-03303 JF**

| *Pritikin* Complaint | Prior Four Star Litigation |
|---|---|
| "Four Star Financial Services, LLC ("Four Star") was engaged in a Ponzi scheme (hereinafter, the "Four Star Ponzi Scheme") during the period from approximately December 1999 through approximately October 2002." Complaint, ¶ 6. | "Defendants at all times developed, orchestrated, and carried out a Ponzi scheme …." Complaint, ¶ 22, *2424 Limited v Marc Cohn, Four Star Financial, et al.*, U.S. District Court, District of Nevada, **filed October 18, 2002** ("*2424 Ltd.* Complaint"). RJN No. 4. |
| | "Defendants [Four Star, Anson and Garrett, et al.] and each of them, were secretly engaged in a "Ponzi scheme" whereby they illegally and fraudulently solicited, obtained, and used money provided by new investors in Four Star, including Plaintiffs, to pay interest to prior investors in Four Star." Complaint, ¶34(k), *Plonsker v. Four Star Financial Serv., et al.*, Superior Court of California, County of Los Angeles, **filed October 10, 2003.** RJN No. 8. |
| | "Plaintiffs seek to recover, on their own behalf and on behalf of all others similarly situated, damages arising from a Ponzi scheme operated through a company called Four Star Financial LLC ('Four Star')." Complaint, ¶ 1, *Colin Gilbert, et al. v. Mark Cohn, et al.*, Los Angeles Superior Court, **filed on February 13, 2004** ("*Gilbert* Complaint"). RJN No. 13. |
| "Plaintiffs made the Loss Period Investments in reliance on representations made to Plaintiffs by Four Star and the Four Star Managers that Four Star was a highly profitable enterprise that offered safe investments and lucrative returns to its investors." Complaint, ¶ 11. | "Defendants used the foregoing material misrepresentations, namely that capital was safely invested in legitimate activities that produced regular profits for distribution, to induce Plaintiffs to invest in Four Star or loan Four Star money…" *Gilbert* Complaint, ¶ 7. |
| | "Specifically, Defendants solicited funds from Plaintiffs, through Baron, and promised to invest those funds in high yield investments, at all times retaining full control over the principal and acting in a fiduciary capacity on Plaintiffs' behalf to safeguard their investment and return the amount agreed upon." *2424 Ltd.* Complaint, ¶ 16. |
| "In addition, throughout the Loss Period, Four Star maintained a practice it had followed since its inception of regularly paying monthly distributions to its investors.   The regular payment of monthly distributions was itself a representation by Four Star to Plaintiffs that Four Star was financially sound and solvent…" Complaint, ¶ 12. | "Four Star used new investor money, credit lines of its affiliated persons and entities, and other non-income sources to make regular monthly payments to existing investors to give the appearance that it was a profitable organization." Complaint, ¶ 28, *Marshack v. Roberts,* United States Bankruptcy Court, Central District of California, filed November 23, 2005. RJN No. 25. |
| "[The] movement of funds between the Four | "Reservoir [a judgment creditor] has been |

| *Pritikin* Complaint | Prior Four Star Litigation |
|---|---|
| Star checking account and the non-Four Star accounts was part of a strategy implemented jointly by Four Star and Comerica that was designed to hinder the ability of Four Star's creditors, including creditors holding … judgment writs and prejudgment writs of attachment against Four Star, from reaching Four Star's cash assets." Complaint, ¶ 16. | unable to satisfy its judgment against Four Star. … The evidence also support (sic) that Four Star's principal managers have used Four Star and its subsidiary limited liability companies as a shell to keep the liabilities separated from any assets which could be used to satisfy those liabilities." Memo. of Pts. and Auth. in Support of Motion to Amend *Judgment*, at 1:18-26, *Reservoir Capital v. Four Star*, United States District Court for Northern Dist. of California, **filed August 11, 2003**, RJN No. 6 ("*Reservoir* MPA"). |
| "At the same time, this scheme [of moving money between Four Star and non-Four Star accounts] allowed Four Star immediate access to its cash so that it could pay from its checking account at Comerica the distribution checks it wrote on a monthly basis to Plaintiffs. This allowed Four Star to continue to maintain the illusion to Plaintiffs that Four Star was a profitable and financially sound business." Complaint, ¶ 17. | "Defendants used a maze of transactions through attorney trust accounts and shell corporate entities to shuffle money in and out of Four Star… These 'transactions' created the appearance of legitimate economic activity and provided a basis for the fictitious accounting statements provided to Plaintiffs, for the purpose of preventing discovery of the fraud and bringing even more money into Four Star." *Gilbert* Complaint, ¶ 10 (RJN No. 13). |
| "COMERICA arranged for Four Star's cash to be held in non-Four Star accounts where Four Star's creditors couldn't reach it. The principal non-Four Star account used for this purpose was a personal line of credit, believed to be unsecured, that COMERICA had issued to Ronald Anson ("Anson") and Jack Garrett ("Garrett"), two of Four Star's principals (hereinafter referred to as the "Anson/Garrett Line of Credit")." Complaint, ¶ 7. | "Anson and Garrett have a personal line of credit in the sum of $4,500,000 from **Comerica** Bank that Four Star repays monthly from its general business checking account through an automatic withdrawal authorization." *Reservoir* MPA, at 16:25-17:2.<br><br>"Inter-company and personal assets of Four Star, FSF, CBA, Anson and Garrett are intermingled…. Anson and Garrett borrow from Four Star with no apparent intent to pay back. Anson and Garrett borrow from **Comerica Bank, but have Four Star repay the debt through an automatic payment authorization from Four Star's checking account.** *Reservoir* MPA at 18:19-19:2. |

These are but few examples of the information readily available to Plaintiffs.[3]

---

[3] In addition to the bankruptcy schedules, various Section 341(a) hearings occurred in the Four Star, Anson and Garrett bankruptcy proceedings which involved the questioning of the debtors by the United States Trustee and creditors generally. RJN No. 16. Also, the bankruptcy dockets reflect numerous 2004 examinations which included both testimony and the production of documents. However, due to the inordinate delay in bringing this action, Comerica is informed that transcripts pertaining to these proceedings are no longer available underscoring the significant prejudice to Comerica's defense both on statute of limitations grounds, as well as the substantive aspects of Plaintiffs' claims. See generally, Jewett-Brewster Declaration, ¶¶ 5-8.

1    Although Plaintiffs may argue that they were unaware of, and unable to discover,

2    Comerica's alleged involvement in the Four Star fraud (*see* Complaint, ¶¶ 45 -57), that claim is

3    belied by the information that was indisputably available to them as outlined above, and

4    Plaintiffs' conclusory allegations otherwise fail to comply with the requirements of FRCP 9(b).

5    Moreover, California courts have consistently held that the "discovery" to which the discovery

6    rule applies is not the detection of **each** individual participant's identity and role within a scheme

7    or conspiracy; rather, it is only the plaintiff's suspicion that "an injury was caused by

8    wrongdoing." *Kline v. Turner*, 87 Cal.App.4th at 1374. "Wrong and wrongdoing in this context

9    are understood in their lay and not legal senses." *Id.* Thus, for example, a plaintiff is not excused

10   by the delayed discovery rule from its failure to pursue litigation against a particular defendant, if

11   he or she was on notice of the underlying harm. *Bernson v. Browning-Ferris Industries*, 7 Cal.4th

12   926, 932 (1994). In the context of this case, this means that Plaintiffs' claims accrued *not* when

13   they discovered Comerica's alleged role in the Four Star fraud, but when they were on notice of

14   facts that would have led a reasonable person to suspect that they had been harmed by *Four Star's*

15   wrongdoing. As explained above, Plaintiffs were on notice of those facts long before July 2005.

### 2.    Plaintiffs' Claims Under B&P Section 17200 are Time Barred

17   A claim for relief under California's Unfair Competition Law, Business and Professions

18   Code Section 17200 ("UCL"), must be "commenced within four years after the cause of action

19   accrued." Cal. Bus. & Prof. Code § 17208. The question of whether the delayed discovery rule

20   applies to claims under the UCL is currently not settled under California law. *Compare Snapp &*

21   *Associates Ins. Services, Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal.App.4th 884, 891

22   (2002) (A plaintiff cannot rely upon the discovery rule for its Section 17200 claims) and *Suh v.*

23   *Yang*, 987 F.Supp. 783, 795 (N.D. Cal. 1997), with *Mass. Mut. Life Ins. Co. v. Sup. Court*, 97

24   Cal.App.4th 1282, 1295 (2002). However, as noted above, because Plaintiffs were plainly on

25   inquiry notice of their claims well before July 2005, their UCL claims are time barred.

### 3.    Plaintiffs' Civil RICO Claims are Time Barred

27   A four-year statute of limitations is applied to civil RICO claims. *Agency Holding*

28   *Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 152, 107 S.Ct. 2759 (1987). In determining

1   when a civil RICO cause of action accrues, the Ninth Circuit has "faithfully followed the 'injury

2   discovery' rule." *Grimmett v. Brown*, 75 F.3d 506, 511 (9th Cir. 1996). Under this rule, the

3   limitations period "begins to run when a plaintiff knows or should know *of the injury that*

4   *underlies his cause of action.*" *Id.* at 510 (citations omitted, emphasis added). Notably, "[t]he

5   plaintiff need not discover that the injury is part of a 'pattern of racketeering' for the period to

6   begin to run." *Id.* Both actual and constructive knowledge of the injury will start the running of

7   the statutory time: "While a plaintiff's actual knowledge of the injury will start the statutory time,

8   a plaintiff's constructive knowledge will as well, if he has enough information to warrant an

9   investigation that, if reasonably diligent, would have led to discovery of fraud." *Gidding v.*

10  *Anderson*, -- F.Supp.2d --, 2009 WL 666954, *2 (N.D.Cal., Mar. 13, 2009) (citations, internal

11  quotations omitted).

12      As shown above, both the Complaint and the allegations made in publicly available court

13  records (including allegations made by many of the Plaintiffs in this case) demonstrate that

14  Plaintiffs were on notice of their injury no later than 2002 or 2003. Plaintiffs further had actual,

15  or at least constructive, knowledge of their losses when Four Star publicly disclosed its finances,

16  including all of its accounts at Comerica, when it filed for bankruptcy on October 23, 2003, and

17  filed its statement of financial affairs on December 19, 2003. (RJN Nos. 10, 11). Plaintiffs'

18  RICO claims are plainly time-barred.

19  **B.    The Doctrines of Equitable Tolling and Equitable Estoppel Do Not Save**
        **Plaintiffs' Claims**
20

21      Equitable estoppel and equitable tolling are related doctrines which, under limited

22  circumstances, may prevent a limitations period from continuing to run *after* a cause of action has

23  accrued. Neither doctrine rescues Plaintiffs' claims in this case.

24          **1.    Equitable Estoppel Does Not and Cannot Apply Here**

25              **a.    Plaintiffs' Federal RICO Claims Are Not Saved by Equitable**
                    **Estoppel.**
26

27      Equitable estoppel in the limitations context is sometimes called "fraudulent

28  concealment." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176-77 (9th Cir. 2000). "Fraudulent

1    concealment necessarily requires active conduct by a defendant, above and beyond the

2    wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time."

3    *Id.* at 1177; *accord, Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002).

4        Under federal law, the fraudulent concealment doctrine may be invoked "only if the

5    plaintiff both pleads and proves that the defendant *actively* misled her, and that she had neither

6    actual nor constructive knowledge of the *facts constituting [her] cause of action despite her due*

7    *diligence*." *Grimmett*, 75 F.3d at 514 (italics in original); citing, *inter alia, Volk v. D.A. Davidson*

8    *& Co.*, 816 F.2d 1406, 1415 (9th Cir. 1987).

9            To invoke the doctrine in the complaint, appellants must plead with
             particularity the facts giving rise to the fraudulent concealment
10           claim and must establish that they used due diligence in trying to
             uncover the facts. Appellees' silence or passive conduct does not
11           constitute fraudulent concealment. Further, appellants' mere
             ignorance of the cause of action does not, in itself, toll the statute.
12

13    *Volk*, 816 F.2d at 1415-16 (internal citations omitted); *see also Klehr v. A.O. Smith Corp.*, 521

14    U.S. 179, 194, 117 S.Ct. 1984 (1997) (In the context of civil RICO, "[W]e conclude that

15    "reasonable diligence" does matter, and a plaintiff who is not reasonably diligent may not assert

16    'fraudulent concealment.'"). "Of critical importance is a showing of the plaintiff's actual and

17    reasonable reliance on the defendant's conduct or representations." *Naton v. Bank of California*,

18    649 F.2d 691 (9th Cir. 1981). As explained below, Plaintiffs make no such showing here.[4]

19                **b.    Equitable Estoppel Does Not Save Plaintiffs' State Law Claims**

20        Similarly, under California law estoppel to assert the statute of limitations arises as a

21    result of conduct by defendant, relied on by plaintiff, that induces the belated filing of the action.

22    3 Witkin, *California Procedure* 5th (2008) Actions, § 762, p. 993. "[W]hen a defendant's

23    conduct has deliberately induced the plaintiff to delay filing suit, the defendant will be estopped

24    from availing himself of this delay as a defense." (Citations omitted.) *Peregrine Funding, Inc. v.*

25    *Sheppard Mullin Richter & Hampton LLP*, 133 Cal.App.4th 658, 686 (2005). The elements of

26    ─────────────────
      [4]  "Also important is evidence of improper purpose on the part of the defendant, or of the
27    defendant's actual or constructive knowledge of the deceptive nature of its conduct. (Citation
      omitted.) And, with respect to a claim for either tolling or estoppel, the trier should consider the
28    extent to which the purposes of the limitations period have been satisfied, notwithstanding the
      delay in filing." *Naton*, 649 F.2d at 696.

1    equitable estoppel are: "(1) [T]he party to be estopped must be apprised of the facts; (2) that party

2    must intend that his or her conduct be acted on, or must so act that the party asserting the estoppel

3    had a right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of

4    the true state of facts; and (4) the party asserting the estoppel must reasonably rely on the conduct

5    to his or her injury." *Honig v. San Francisco Planning Dept.*, 127 Cal.App.4th 520, 529 (2005).

6        Under California law, "[t]he fraudulent concealment doctrine 'does not come into play,

7    whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on

8    notice of a potential claim.'   (Citation omitted.)   A plaintiff is under a duty to reasonably

9    investigate, and a *suspicion* of wrongdoing, coupled with a knowledge of the harm and its cause,

10   commences the limitations period.   (Citation omitted.)"   *Snapp*, 96 Cal.App.4th at 890-891

11   (italics in original).   Further, "the means of knowledge are equivalent to knowledge, if it appears

12   that the plaintiff had notice or information of circumstances which would put him on an inquiry

13   which, if followed, would lead to knowledge, or that the facts were presumptively within his

14   knowledge, he will be deemed to have had actual knowledge of these facts (citations omitted)."

15   *Gray v. Reeves*, 76 Cal.App.3d 567, 576 (1977).[5] Plaintiffs admit their knowledge of harm and a

16   "suspicion of wrongdoing" as early as October, 2002.   *See* Complaint, ¶ 14.   Moreover, the

17   Complaint admits that Comerica made no representations to Plaintiffs.   Plaintiffs cannot rely on

18   equitable estoppel to save their state law claims.

19       California law further imposes a duty of due diligence.   "'[D]efendant's fraud in

20   concealing a cause of action against him tolls the applicable statute of limitations, but only for

21   that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by

22   the exercise of reasonable diligence, should have discovered it.'   (Citation omitted.)"   *Bernson*, 7

23   Cal.4th at 931.   Where, as here, the identity of at least one defendant is known, plaintiffs must

24   avail themselves of the opportunity to file a timely complaint naming Doe defendants and take

---

[5] This rule is codified in California Civil Code § 19:

> Every person who has actual notice of circumstances sufficient to
> put a prudent man upon inquiry as to a particular fact, has
> constructive notice of the fact itself in all cases in which, by
> prosecuting such inquiry, he might have learned such fact.

1   discovery to determine additional facts and the identity of additional defendants. This rule is

2   premised on the common sense assumption that once plaintiff is aware of the injury, the

3   applicable limitations period (often effectively extended by the filing of a Doe complaint)

4   normally affords sufficient opportunity to discover the identity of all the wrongdoers. *See Jolly,*

5   44 Cal.3d at 118. "That, indeed, is the normal situation for which the fictitious name statute . . . is

6   designed: when the plaintiff is ignorant of the name of "a defendant," the plaintiff **must** file suit

7   against the known wrongdoers, and, when the Doe's true name is discovered, the complaint may

8   be amended accordingly." *Bernson,* 7 Cal.4th at 932-33 (emphasis added).

9   　　　This is simply an aspect of the due diligence requirement imposed by California law:

10   　　　　The rule of equitable estoppel includes, of course, the requirement
　　　　that the plaintiff exercise reasonable diligence. (Citation omitted.)
11   　　　　Thus, under our holding the statute will toll only until such time
　　　　that the plaintiff knows, or through the exercise of reasonable
12   　　　　diligence should have discovered, the defendant's identity. Lack of
　　　　knowledge alone is not sufficient to stay the statute; a plaintiff may
13   　　　　not disregard reasonably available avenues of inquiry which, if
　　　　vigorously pursued, might yield the desired information.
14

15   *Bernson,* 7 Cal.4th 926, 936-37. It is thus only in the "rare and exceptional case in which the

16   plaintiff could genuinely claim that he was aware of no defendants, and even more rare that,

17   given knowledge of at least one, he could not readily discover the remainder through the filing of

18   a Doe complaint and the normal discovery processes" (*Id.* at 937), that a plaintiff may invoke the

19   doctrine of fraudulent concealment on the basis that it was unaware of the identity of defendant.

20   Plaintiffs cannot do so here.

21   　　　　　　　c.　　　**Plaintiffs Have Not Pled Equitable Estoppel Under State or
　　　　　　　　　　Federal Law.**

22

23   　　　Under the standards set forth by the Ninth Circuit and California courts described above,

24   Plaintiffs have not pled, and cannot prove, any basis for equitable estoppel. Paragraphs 45

25   through 47 of the Complaint allege acts which purportedly induced Plaintiffs "to refrain from

26   taking any legal action . . . before October 24, 2003, when Four Star was placed in involuntary

27   bankruptcy." Complt, ¶ 47. Such actions allegedly took place over four years before Plaintiffs

28   filed their Complaint, and cannot render the Complaint timely; further, no purported acts by

1    Comerica are alleged.  Paragraphs 48 through 50, involving Four Star's bankruptcy, are belied by

2    the bankruptcy schedules filed in the Four Star, Anson, and Garrett bankruptcies years before

3    Plaintiffs filed this action.  Indeed,  Four Star filed bankruptcy schedules in December 2003 that

4    disclosed all then-pending litigation against Four Star and its principals, and all Four Star bank

5    accounts – including its accounts at Comerica.  *See*, RJN Nos. 11, 23.[6]

6        Finally, plaintiff's contention at paragraphs 53-57 of the Complaint that until Cohn's 2008

7    disclosure they were unable with the exercise of reasonable diligence to learn any facts

8    concerning, or to have "discovered or suspected" the existence of the alleged Banking Scheme

9    and Comerica's purported role therein, are affirmatively disproven by judicially noticeable facts

10   and events.  As demonstrated above, well more than four years before the filing of this action the

11   facts of Four Star's fraud and full information regarding the Comerica bank accounts utilized by

12   Four Star or the Four Star Managers was available through the Four Star, Anson and Garrett

13   bankruptcy proceedings and were also open to Plaintiffs' investigation and discovery through the

14   class action and other lawsuits they filed in 2003 and 2004.  Indeed, Plaintiffs expressly allege

15   that records of the transactions purportedly constituting RICO violations are in the possession of

16   the bankruptcy trustee.  Complt., ¶ 104(a)–(d).  Moreover Plaintiffs, as creditors of Four Star,

17   Anson and Garrett, could have obtained information regarding their alleged claims by attending

18   the 341(a) meeting of creditors and/or taking examinations under Rule 2004 of the Federal Rules

19   of Bankruptcy Procedure, which permits inquiry into "the acts, conduct, or property or to the

20   liabilities and financial condition of the debtor, or to any matter which may affect the

21   administration of the debtor's estate, or to the debtor's right to a discharge."  *See* Jewett-Brewster

22   Declaration, ¶¶ 2-4.  Unquestionably, Plaintiffs were on notice of their potential claims (a fact

23   proven by their actual conduct over six years ago), and equitable estoppel is therefore not a

24   doctrine available to them.

25
26   [6]    Paragraph 51 of the Complaint consists only of conclusory allegations, lacking any
allegations of specific acts by Comerica.  Plaintiffs utterly fail to meet their burden to "plead with
particularity the facts giving rise to the fraudulent concealment claim."  *Volk*, 816 F.2d at 1415-
27   16.  Further, the allegations of paragraphs 51 and 52, that Comerica "failed to alert" the
bankruptcy trustee and "failed to report" certain alleged transactions do not support fraudulent
28   concealment; "silence or passive conduct does not constitute fraudulent concealment."  *Id.*

1          **2.      Equitable Tolling Does Not Save Plaintiffs' State or Federal Claims**

2              **a.      The Federal Equitable Tolling Doctrine Does Not Apply**

3          Unlike equitable estoppel, equitable tolling focuses on excusable delay by plaintiff and

4     lack of prejudice to the defendant.  Under federal law, equitable tolling may be appropriate where

5     there is "excusable ignorance of the limitations period and [a] lack of prejudice to the defendant,"

6     *Naton*, 649 F.2d at 696, or where "the danger of prejudice to the defendant is absent, and the

7     interests of justice [require relief]." *Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002).  Here

8     Plaintiffs' delay was not excusable, and the prejudice to Comerica in requiring it to defend stale

9     claims concerning events that allegedly took place seven to ten years ago is clear.

10         Equitable tolling may apply "to excuse a claimant's failure to comply with the time

11    limitations *where she had neither actual nor constructive notice* of the filing period." *Leorna v.*

12    *U.S. Dept. of State*, 105 F.3d 548, 551 (9th Cir. 1997) (emphasis added).  The doctrine "may be

13    applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the

14    existence of his claim. (Citation omitted.) . . .  If a reasonable plaintiff would not have known of

15    the existence of a possible claim within the limitations period, then equitable tolling will serve to

16    extend the statute of limitations for filing suit until the plaintiff can gather what information he

17    needs." *Santa Maria*, 202 F.3d at 1178 (citations omitted).  Equitable tolling is not appropriate,

18    however, where, as here, the facts supporting Plaintiffs' claims "would have been apparent to a

19    similarly situated person with a reasonably prudent regard for his rights." *Boyd v. United States*

20    *Postal Service*, 752 F.2d 410, 414 (9th Cir. 1985) (citations omitted).  Otherwise, "[t]o excuse the

21    failure to timely file under these circumstances would, in Judge Posner's words, 'trivialize the

22    statute of limitations by promiscuous application of tolling doctrines.'" *Santa Maria*, 202 F.3d at

23    1179, citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990), cert denied,

24    501 U.S. 1261, 111 S.Ct. 2916 (1991).

25         As stated by the Supreme Court, equitable tolling is applied sparingly, and does not

26    extend to "a garden variety claim of excusable neglect." *Irwin v. Dept. of Veterans Affairs*, 498

27    U.S. 89, 96 (1990).  Further, once a claimant retains counsel, tolling ceases because she has

28    gained the means of knowledge of her rights and can be charged with constructive knowledge of

1    the law's requirements. *Leorna*, 105 F.3d at 551. As noted above, here plaintiff Gevirtz retained

2    counsel and filed a class action against Anson, Garrett, and Four Star in 2003. RJN No. 5, 26. In

3    May 2004 Plaintiffs Phyllis Klein, the Phyllis Klein Trust, Ken Krause, Perry Gibson, and the

4    Krause/Gibson Revocable Trust  retained counsel and filed an action in Los Angeles Superior

5    Court that is almost identical to the instant matter, alleging, *inter alia*, that *another bank* aided

6    and abetted the Four Star Ponzi scheme by financing its operations and enabling Four Star to lull

7    investors into believing they were receiving interest on their investments. RJN No. 17. These

8    judicially noticeable facts demonstrate not only that information regarding the existence of their

9    claims was available to Plaintiffs, but that they *affirmatively acted upon that information* in the

10   pursuit of their rights. Under these circumstances, the federal doctrine of equitable tolling does

11   not and cannot save Plaintiffs' RICO claims.

12                **b.      State Law Doctrines of Equitable Tolling Do Not Apply**

13              Like the federal courts, the California Supreme Court has "applied equitable tolling in

14   carefully considered situations to prevent the unjust technical forfeiture of causes of action, where

15   the defendant would suffer no prejudice." *Lantzy v. Centex Homes*, 31 Cal.4th 363, 370 (2003).

16   Like the federal doctrine, under California law, equitable tolling requires that plaintiff exercise

17   due diligence. In *Wood v. Elling Corp.* 20 Cal.3d 353 (1977), the plaintiff's first suit against

18   defendants was dismissed for failure to serve it within three years. Plaintiff filed a second action

19   after the statute of limitations had lapsed, contending that the statute was tolled during the

20   pendency of his first action. The court rejected this argument, reiterating the requirement of

21   earlier cases that three elements be present before equitable tolling will apply: (1) the plaintiff

22   must have diligently pursued his or her claim; (2) the fact that the plaintiff is left without a

23   judicial forum for resolution of the claim must be attributable to forces outside the control of the

24   plaintiff; and (3) the defendant must not be prejudiced by application of the doctrine. In *Wood*,

25   diligence was absent. *Id.*, 20 Cal.3d at 361-362.

26              Plaintiffs cannot rely on equitable tolling to save their state law claims. As demonstrated

27   above, they failed to diligently pursue their claims; any inability of Plaintiffs to pursue their

28   claims is due to their failure to exercise due diligence, not to factors outside Plaintiffs' control.

1    Further, the prejudice to Comerica in requiring it to defend stale claims, involving acts that

2    allegedly took place seven years ago, is beyond reasonable dispute.  In the last seven years

3    memories have faded, employees have moved on, documents have been destroyed pursuant to

4    routine document retention policies, and even Rule 2004 examination and Section 341(a) hearing

5    transcripts have been lost, all to Comerica's prejudice.

6    **C.**    **Plaintiffs Have Failed to Allege Facts Sufficient to State a Claim for Conspiring and/or Aiding and Abetting a Breach of Fiduciary Duty**

7

8    **1.**    **The Law Does Not Recognize a Claim for Aiding and Abetting or Conspiring to Breach a Fiduciary Duty Against a Party Who Owes No Fiduciary Duty to Plaintiffs**

9

10    While Plaintiffs allege that Anson, Garrett, and Cohn owed them a fiduciary duty of care,

11    they make no such allegations with respect to Comerica.  Nor could they, as the law is clear that

12    banks do not owe a fiduciary duty to their account holders – much less to investors in those

13    account holders.  *See, Chazen v. Centennial Bank,* 61 Cal.App.4th 532, 540 (1998).  Nonetheless,

14    Plaintiffs allege claims against Comerica for aiding and abetting a breach of fiduciary duty (First

15    Claim for Relief) and for conspiring to breach the same fiduciary duty (Seventh Claim for Relief).

16    Comerica cannot be held liable for aiding and abetting or conspiring to breach a fiduciary duty it

17    does not owe to Plaintiffs.

18    In *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503 (1994), the

19    California Supreme Court explained that "[c]onspiracy is not an independent tort; it cannot create

20    a duty or abrogate an immunity. It allows tort recovery only against a party who already owes the

21    duty and is not immune from liability based upon applicable substantive tort law principles." *See*

22    *also, Doctor's Co. v. Superior Court,* 49 Cal.3d 39, 44 (1989) ("[a] cause of action for civil

23    conspiracy may not arise, however, if the alleged conspirator, though a participant in the

24    agreement underlying the injury, was not personally bound by the wrongdoing…").).  Plaintiffs'

25    conspiracy to breach a fiduciary duty claim must therefore be dismissed with prejudice.[7]

26    Although there is a split in California authority, the same reasoning has been applied to

27    _____

28    [7]   There is no separate claim for relief for conspiracy, therefore Plaintiffs' Seventh Claim for Relief for Conspiracy as it pertains to Plaintiffs' Second through Sixth Claims for Relief should be dismissed with prejudice in any event.

find that a party is not liable for aiding and abetting a breach of another's fiduciary duty, because it would be an illogical expansion of tort liability to impose liability on a party incapable of committing the tort in the first instance. *See, County of Orange v. McGraw-Hill Cos.*, 203 B.R. 983, 997-99 (Bankr.C.D.Cal. 1996), *rev'd in part on other grds.*, *In re County of Orange*, 245 B.R. 138 (C.D.Cal. 1997). In that case, the court granted a motion to dismiss, holding:

> … I see no reason for treating the vicarious tort of aiding and abetting breach of a fiduciary duty differently from that of conspiracy to breach a fiduciary duty. 'Conspiracy is a concept closely allied with aiding and abetting. A conspiracy generally requires agreement plus an overt act causing damage. Aiding and abetting requires no agreement, but simply assistance. The common basis for liability for both conspiracy and aiding and abetting, however, is concerted action.'

*Id.* at 999, quoting *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 78 (1996). Finding the defendant "vicariously liable for a tort that it is legally incapable of committing," the court held, would be a complete deviation and departure from the rationale of *Applied Equipment.*[8] *Id.*

Plaintiffs have not alleged a fiduciary relationship between themselves and Comerica; Plaintiffs' fiduciary-related causes of action must be dismissed with prejudice.

**D.    Plaintiffs Fail to Allege Facts Sufficient to State a Claim for Aiding and Abetting Fraud or Breach of Fiduciary Duty**

"California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." *Casey*, 127 Cal.App.4th at 1146. As the Court explained in the seminal "aiding and abetting" case of *Lomita Land Water Co. v. Robinson*, 154 Cal. 36, 47 (1908), "[t]he words 'aid and abet' as thus used have a well understood meaning, and may fairly be construed to imply an intentional *participation with knowledge of the object to be obtained*." (emphasis added.) *See also, Gerard v. Ross*, 204 Cal.App.3d 968, 983 (1988)

Like this case, *Casey* arose out of claims that a bank had participated in a fraud against plaintiffs by aiding and abetting corporate officers and directors in looting the company. With

---

[8] Other courts addressing this issue have held otherwise. *See, e.g., Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101 (C.D. Cal. 2003), and *Casey v. U.S. Bank Nat. Ass'n*, 127 Cal.App.4th 1138, 1145, n.2 (2005). For the reasons discussed above, Comerica believes the analysis articulated in *County of Orange v. McGraw-Hill Cos.* is the better view.

1  respect to the required element of "actual knowledge" of the underlying wrong, plaintiffs alleged

2  the bank was aware of activities by the corporate fiduciaries that were "suspicious" in nature, e.g.,

3  making large withdrawals, paying sums in excess of check limits, ignoring internal policies and

4  procedures, and violating banking regulations.  *Casey*, 127 Cal.App.4th at 1142.  The court

5  disagreed, finding these allegations insufficient to meet the standard of actual knowledge required

6  for aiding and abetting and holding that "the banks' alleged knowledge of the DFJ Fiduciaries'

7  suspicious activities – even money laundering – *without more*, does not give rise to tort liability

8  for the banks."  *Id.* at 1151 (emphasis in original).  Actual knowledge of a specific, primary

9  wrong is required.

10  Although Plaintiffs allege that Comerica had "actual knowledge" of the underlying Four

11  Star Ponzi scheme, their allegations are conclusory and unsupported by any real facts or

12  reasonable inferences.  Specifically, Plaintiffs allege Comerica had "actual knowledge" that

13  (1) without regular new capital investments, Four Star would not have funds to pay the

14  Anson/Garrett line of credit, and (2) Four Star was dependent upon the continuous inflow of new

15  investor capital in order to fund its operation and stay in business (Complaint, ¶ 32).  Yet the

16  Complaint is devoid of any *facts* that would tend to support the unlikely and illogical inference

17  that Four Star's principals disclosed to Comerica that they were running a fraudulent scheme.

18  Moreover, the assertion that Richard Smith (a vice president of Comerica) had knowledge that

19  Four Star was insolvent because he reviewed Four Star's financial statements (*see* Complaint,

20  ¶ 39) is directly contradicted by Plaintiffs' own allegation that these same Four Star financial

21  statements were fraudulent and misleading.  *See* Complaint, ¶ 45 ("The Four Star Managers

22  produced fraudulent financial statements for Four Star that concealed material facts about the true

23  financial condition of Four Star…").

24  The balance of plaintiffs' allegations regarding Comerica's actual knowledge of the

25  underlying wrongs are conclusory and unsupported on their face.  *See, e.g.,* Complaint, ¶¶ 72, 82.

26  Plaintiffs' combination of internally inconsistent and conclusory allegations is not sufficient to

27  support an aiding and abetting claim against a bank for its alleged role in Ponzi scheme.  *See,*

28  *Casey,* 127 Cal.App.4th at 1153.  This Court need not accept as true allegations that are

1    conclusory, that are based on unwarranted deductions of fact, or that are premised upon

2    unreasonable inferences. *See, Sprewell*, 266 F.3d at 988. Indeed, the court in *Casey* found that

3    virtually identical conclusory allegations insufficient to defeat a demurrer. As that court held,

4    "kitchen sink" allegations and generic assertions that the bank was aware of wrongdoing on the

5    part of a depositor are not sufficient to support an aiding and abetting claim, particularly where

6    California law "imposes no duty on a bank to investigate or report a depositor's suspicious

7    activities." *Id.* Plaintiffs' aiding and abetting claims must be dismissed.

8        **E.    Plaintiffs Civil RICO Claims Must Be Dismissed**

9            **1.    Plaintiffs' RICO Claims Are Precluded Because They Are Premised**

10           **Upon Securities Fraud**

11       The elements of a civil RICO claim are: (i) conduct, (ii) of an enterprise, (iii) through a

12   pattern, (iv) of racketeering activity (known as "predicate acts"), (v) causing injury to plaintiff's

13   business or property. *Living Designs, Inc. v. E.I. DuPont de Nemours & Company*, 431 F.3d 353,

14   361 (9th Cir. 2005). As the claim is subject to the pleading requirement of Rule 9(b), each

15   element of a civil RICO claim must be pled with specificity. *Stearns v. Select Comfort Retail*

16   *Corp.*, 2009 WL 1635931, at *14.

17       Section 107 of the PSLRA, adopted in 1995, amended RICO to eliminate securities fraud

18   as a "predicate act" upon which a RICO claim can be based. *See*, 18 U.S.C. § 1964(c) ("[n]o

19   person may rely upon any conduct that would have been actionable as fraud in the purchase or

20   sale of securities to establish a violation of Section 1962").[9] The PSLRA amendment was

21   deliberately broad, and was intended not only to remove securities fraud as a predicate act in a

22   civil RICO action, "but also to prevent the plaintiff from pleading other specified offenses, such

23   as mail or wire fraud, as predicate acts under civil RICO if such offenses are *based on* conduct

24   that would have been actionable as securities fraud." *Bald Eagle Area School District v.*

25   *Keystone Financial, Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (emphasis added); *see also,*

---

26

27   [9]   The headings of both of plaintiff's RICO claims purport to identify a "violation of 18 U.S.C. 1961(c)." This appears to be an error, as civil causes of action under RICO arise out of 18 U.S.C.

28   Section 1962 . *See, Veck v. Prupis*, 529 U.S. 494, 495 (2000). Section 1961 simply contains a list of defined terms.

1    *Traschel v. Bucholz*, 2009 WL 86698 (N.D.Cal. Jan. 9, 2009).    This rule applies even if the

2    plaintiff alleging a civil RICO claim could not have personally asserted a claim for securities

3    fraud.    *Howard v. America OnLine, Inc.*, 208 F.3d 741, 749-750 (9th Cir. 2000), cert denied, 531

4    U.S. 828, 121 S.Ct. 77 (2000).

5        Securities fraud is at the core of Plaintiffs' RICO claims.    In paragraph 9 of the

6    Complaint, Plaintiffs identify themselves as "investors in Four Star."    Plaintiffs further allege that

7    "[d]uring the Loss Period, Plaintiffs invested approximately $50 million in Four Star (hereinafter

8    referred to as the 'Loss Period Investments')."    Complaint, ¶ 10.    Plaintiffs assert throughout the

9    Complaint that they made the "Loss Period Investments" in Four Star "in reliance on

10    representations made to Plaintiffs by Four Star and the Four Star Managers that Four Star was a

11    highly profitable enterprise that offered safe investments and lucrative returns to its investors,"—

12    representations that are alleged to have been false.    Complaint, at ¶¶ 11, 13; *see also,* Complaint,

13    at ¶¶ 60, 61, 62, 63, 80 and 81.    These investments, and the misrepresentations upon which the

14    Plaintiffs alleged relied in making them, are the basis for all of the harm alleged, and lie at the

15    heart of every substantive claim in this case.

16        According to the Plaintiffs' own allegations, these investments were securities under state

17    and federal law.    Complaint, ¶¶ 88(c), 94(b).    Plaintiffs further allege that the representations and

18    conduct of Four Star and its principals (which Comerica allegedly facilitated) in connection with

19    the solicitation and sale of these securities constitute securities fraud under Sections 10(b) and

20    12(a)(2) of the Securities Exchange Act of 1934, and California Corporations Code §§ 25401 and

21    25403.    Complaint, ¶¶ 88(c), 94(b), 94(c).

22        Though Plaintiffs label the predicate acts in their RICO claims as "wire fraud" and "mail

23    fraud," they involve the same investments that are alleged to be securities, and the same

24    representations and conduct that are claimed to constitute securities fraud elsewhere in the

25    Complaint.    Plaintiffs cannot avoid their own admissions by alleging mail and wire fraud as

26    predicate acts.    *See, Traschel v. Bucholz* at *4.

27        This is precisely what the Third Circuit in *Bald Eagle* found to be an improper attempt to

28    avoid the clear prohibitions of the PSLRA amendment.    Like this case, *Bald Eagle* arose out of an

1    alleged Ponzi scheme. In a civil enforcement action against the same defendants, the SEC had

2    alleged that the Ponzi scheme was perpetrated through the purchase and sale of securities in

3    violation of Section 10(b) and Rule 10b-5. *Id.* at 328. The Court found the same Ponzi scheme

4    was "at the heart" of plaintiffs' RICO action, and that the RICO claims were therefore barred by

5    the PLSRA. *Id.* The plaintiffs' efforts to relabel the claims as mail and wire fraud were rejected:

6             Consequently, Plaintiff cannot avoid the RICO amendments barred
              by pleading mail fraud, wire fraud, and bank fraud as predicate
7             offenses if the conduct giving rise to those predicate offenses
              amounts to securities fraud. Allowing such surgical presentation of
8             the cause of action here would undermine the congressional intent
              behind the RICO amendment.
9

10    *Id.* at 330. Plaintiffs cannot avoid the effect of their own allegations, and the RICO claims must

11    be dismissed with prejudice.

12            **2.    Plaintiffs Have Failed to Adequately Allege the Required Element of
                      an Enterprise.**
13

14            Plaintiffs' RICO claim must also be dismissed due to their failure to adequately allege an

15    "enterprise" independent of the allegedly wrongful activity. The existence of an enterprise is a

16    required element of a civil RICO claim, (*see*, *Living Designs*, 431 F.3d at 361) and must be

17    adequately alleged for a plaintiff to maintain a claim for conspiracy to commit a RICO violation.

18    *See*, *Niebel v. Transworld Assurance Co.*, 108 F.3d, 1123, 1127 (9th Cir. 1997).

19            Here Plaintiffs attempt to allege an "associated in fact" enterprise. As explained by the

20    Ninth Circuit, an associated in fact enterprise is "a group of persons associated together for a

21    common purpose of engaging in a course of conduct." *Odom v. Microsoft Corp.*, 486 F.3d, 541,

22    552 (9th Cir. 2007). "To establish the existence of such an enterprise, a Plaintiff must provide

23    both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various

24    associates function as a continuing unit.'" *Odom*, 486 F.3d at 552. In particular, "[the]

25    'enterprise' is not the 'pattern of racketeering activity;' it is an entity separate and apart from the

26    pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct

27    2524 (1981). It is not enough to allege that several parties conspired to commit a wrong; under

28    RICO, a plaintiff must allege facts to support an enterprise which exists independently of the

1    racketeering activity itself.  *See*, *Johnson v. J.P. Morgan Chase Bank*, 2008 WL 1925026 (E.D.

2    Ca. April 29, 2008).

3        While Plaintiffs allege in conclusory fashion that "Four Star, the Four Star Managers,

4    Smith and Comerica collectively constituted an 'enterprise' . . . within the meaning of that term as

5    used in 18 USC § 1962," the facts alleged in the Complaint do not support anything of this sort.

6    In the Fifth Claim for Relief, Plaintiffs allege that Comerica caused funds to be transferred from

7    the Four Star checking account to the Anson and Garrett line of credit, failed to return checks on

8    overdrawn accounts, accepted transfers of money and deposits from Plaintiffs, and was served

9    with writs by Four Star creditors.  Complaint, ¶ 104(a)–(g).  In the Sixth Claim for Relief,

10    Plaintiffs allege that other parties used the Comerica checking account to pay distributions to and

11    receive investments from Plaintiffs, and caused transfers of funds between Four Star accounts and

12    the Anson and Garrett line of credit.  Complaint, ¶ 116(a)–(f). There is no allegation of, or even a

13    reference to, an independently existing enterprise, an ongoing organization, or a single fact

14    tending to establish that the various parties functioned as a continuing unit.  Plaintiffs have simply

15    confused or conflated the alleged wrongful activity with the element of an enterprise.  The law is

16    clear, however, that the two are not synonymous.  Therefore, the Fifth and Sixth Claims for Relief

17    must be dismissed.

18    **VI.    CONCLUSION**

19        Based upon the foregoing, Comerica respectfully requests that Complaint be dismissed

20    with prejudice in its entirety.

21    DATED: August 28, 2009

    BUCHALTER NEMER
    A Professional Corporation

22

23    By: _____

24        Richard C. Darwin
    Attorneys for Defendant, COMERICA BANK

25

26

27

28