**EXHIBIT 1**

MAR 2 0 2000

WRIGHT JUDD & WINCKLER
LAWYERS
THIRD FLOOR
302 EAST CARSON AVENUE
LAS VEGAS, NEVADA 89101
(702) 382-4004

1   Joseph R. Prochaska
    Williams & Prochaska, P.C.
2   401 Church Street
    Suite 2600
3   Nashville, TN 37219
    Telephone: 615/242-0060
4
5   Bruce Judd
    Wright Judd & Winckler
6   302 East Carson Ave. 3rd Flr.
    Las Vegas, NV 89101
7   (702)382-4004
    Attorneys for Sentinel Trust Company
8
9

RECEIVED
AND FILED

Apr 3   3 12 PM '00

U.S.
BANKRUPTCY
PATRICK ...
CLK

**ENTERED** APR 3   2000

10              UNITED STATES BANKRUPTCY COURT

11                    DISTRICT OF NEVADA

12

13   In re Ray and Ross Transport, Inc.        )    Case No. BK-S-97-22098-RCJ
                                               )    Chapter 11
14                                             )
                                               )
15              Debtor.                        )
                                               )
16   _____          )
                                               )
     Sentinel Trust Company,                   )
17                                             )
                Plaintiff,                     )    Adversary Proceeding
18                                             )    Case No. 972239 RCJ
                vs.                            )
19                                             )
     900 Capital Services, Inc.; et al.,       )
20                                             )
                Defendants.                    )    **JUDGMENT**
21   _____          )

22

23          Based upon the Findings of Fact and Conclusions of Law entered in this Adversary Proceeding

24   (the "Findings"), it is hereby ORDERED and ADJUDGED that:

25          1. Judgment is entered in favor of plaintiffs Sentinel Trust Company and the GMS Group, LLC,

26   (the "Plaintiffs") and against 900 Capital Services, Inc., Deet Investment Corp., and Four Star Financial

27   Services, LLC (collectively, the "900 Capital Defendants"), jointly and severally, in the amount of

28

SCANNED

317

$2,259,395.17 (the "Judgment Amount"), plus interest as described below.

2. The Judgment Amount has accrued pre-judgment interest, at the same rate as this Judgment does, from the dates and upon the amounts set forth below:

(A) Upon $310,000 from February 26, 1996;

(B) Upon $955,625.22 from March 8, 1996;

(C) Upon $497,769.85 from May 3, 1996;

(D) Upon $30,000 from May 6, 1996; and

(E) Upon $466,000 from June 6, 1996.

3. Judgment is entered in the form of a constructive trust in favor of the Plaintiffs upon all of the assets subject to the security interests created (A) by that certain deed of trust from Ray and Ross Land Holdings, Inc. to 900 Capital Services, Inc., (the "Deed of Trust") and (B) by that certain security agreement from Ray and Ross Transport, Inc. to 900 Capital Services (the "Security Agreement"), each of which is more particularly described in the accompanying Findings.

4. This constructive trust includes the proceeds of the sale of the real property encumbered by the Deed of Trust and of certain personal property encumbered by the Security Agreement, which are presently held by the Receiver in this case (the "Proceeds"), and the Receiver is directed to turn the Proceeds over to the Plaintiffs. All amounts received by the Plaintiffs from the Proceeds shall be credited against the Judgment Amount.

5. The claims of the 900 Capital Defendants against Transport are subordinated to the claims of the Plaintiffs, and the 900 Capital Defendants are estopped from claiming ahead of the Plaintiffs in the underlying bankruptcy case.

6. The claims of Pacific Coast to the proceeds from the sale of the Real Property are junior to the claims of the Plaintiffs against those proceeds.

7. Costs set forth in N.R.S. Section 18.005 are taxed against the 900 Capital Defendants, jointly

WRIGHT JUDD & WINCKLER
LAWYERS
THIRD FLOOR
302 EAST CARSON AVENUE
LAS VEGAS, NEVADA 89101
(702) 382-4004

1   and severally. Counsel for the Plaintiffs shall, within ten days of the entry of this Judgment, serve upon

2   counsel for the 900 Capital Defendants and file with the Clerk a verified bill of costs.

3   Dated: ~~March~~ April 3, 2000

4

5

6   Bankruptcy Court Judge

7

8   Submitted by:

9   Bruce Judd
    Wright Judd & Winckler

10  302 East Carson, 3rd Floor
    Las Vegas, NV 89101

11

12  Joseph R. Prochaska
    Williams & Prochaska, P.C.

13  401 Church Street, Suite 2600
    Nashville, TN 37219

14  Attorneys for Sentinel Trust Company

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WRIGHT JUDD & WINCKLER
LAWYERS
THIRD FLOOR
302 EAST CARSON AVENUE
LAS VEGAS, NEVADA 89101
(702) 382-4004

**CERTIFICATE OF SERVICE**

I certify that on March 20, 2000, I caused copies of the Judgment to be hand delivered to the following persons at their last known addresses:

Mark. W. Patterson
Kolesar & Leatham, Chtd.
3320 West Sahara Ave., #380
Las Vegas, NV, 89102
362-9472

Rodney Jean
Lionel Sawyer & Collins
300 S. Fourth St. #1700
Las Vegas, NV, 89101
383-8845

Timothy Cory
Timothy Cory & Associates
520 S. Fourth St. #220
Las Vegas, NV 89101
382-7903

I certify that on March 20, 2000, I caused a copy of the Judgment to be placed in the U.S. Mail, postage pre-paid and addressed to the following person at his last known addresses:

Timothy W. Walsh
Leboeuf, Lamb, Greene & MacRae
125 West 55th Street
New York, NY 10019-5389
1-212-424-8500

An employee of Wright Judd & Winckler

WRIGHT JUDD & WINCKLER
LAWYERS
THIRD FLOOR
302 EAST CARBON AVENUE
LAS VEGAS, NEVADA 89101
(702) 382-4004

**EXHIBIT  2**

Receive    ,01/2001 04:15PM in 01:30 on line [2] for 3... * Pg 2/3

FILED
U.S. DISTRICT COURT
IN THE DISTRICT OF MARYLAND
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND 53
(Baltimore Division)
CLERK'S C. ..
AT BALTIMORE

RESERVOIR CAPITAL
CORPORATION,

    Plaintiff,

v.

FOUR STAR FINANCIAL
SERVICES, L.L.C.,

    Defendant.

\*

    _____DEPUTY:

    Civil No. CCB-000-CV-3626

\*   \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## CONSENT ORDER FOR MONEY JUDGMENT AGAINST
## FOUR STAR FINANCIAL SERVICES, L.L.C.

    In accordance with the Stipulation and Order for Settlement of Suit between

Reservoir Capital Corporation, Plaintiff, and Four Star Financial Services, L.L.C., Defendant,

judgment is hereby entered against Four Star Financial Services, L.L.C. in the amount of

$1,866,995.57.

Entered: Oct. 1, 2001       _____
                         Judge

([SIGNATURES CONTINUED]

684398.1 7/10/01

**EXHIBIT 3**

Copy

≤AO 451 (Rev.12/93)  Certification of

# UNITED STATES DISTRICT COURT

DISTRICT OF    MARYLAND (Baltimore)

Reservoir Capital Corporation

        Plaintiff

              V.

Four  Star Financial Services, L.L.C.

        Defendant

**CERTIFICATION OF JUDGMENT
FOR REGISTRATION IN
ANOTHER DISTRICT**

## FJ02 002

Case Number:  00-CV-3626

I, _____ Felicia C. Cannon _____ Clerk of the United States district court certify that the

attached judgment is a true and correct copy of the original judgment entered in this action on October 1, 2001 , as it
                                                               Date

appears in the records of this court, and that

*No notice of appeal from this judgment has been filed, and no motion of any kind listed

in Rule 4(a) of the Federal Rules of Appellate Procedure has been filed.

IN TESTIMONY WHEREOF, I sign my name and affix the seal of this Court.

December 21, 2001
          Date

FELICIA C. CANNON
         Clerk

(By) Deputy Clerk

*Insert the appropriate language: ..."no notice of appeal from this judgment has been filed, and no motion of any kind listed in Rule 4(a) of the Federal Rules of Appellate Procedure has been filed." ..."no notice of appeal from this judgment has been filed, and any motions of the kinds listed in Rule 4(a) of the Federal Rules of Appellate Procedure (†) have been disposed of, the latest order disposing of such a motion having been entered on [date]." ..."an appeal was taken from this judgment and the judgment was affirmed by mandate of the Court of Appeals issued on [date]. ..."an appeal was taken from this judgment and the appeal was dismissed by order entered on [date]."

(†Note: The motions listed in Rule 4(a), Fed. R. App. P., are motions: for judgment notwithstanding the verdict; to amend or make additional findings of fact; to alter or amend the judgment; for a new trial; and for an extension of time for filing a notice of appeal.)

SAO 451 (Rev 12/93) Certification of

# UNITED STATES DISTRICT COURT

DISTRICT OF    MARYLAND (Baltimore)

Reservoir Capital Corporation

Plaintiff

V.

Four Star Financial Services, L.L.C.

Defendant

CERTIFICATION OF JUDGMENT
FOR REGISTRATION IN
ANOTHER DISTRICT

**FJ02 002**

Case Number:  00-CV-3626

I,    Felicia C. Cannon    Clerk of the United States district court certify that the

attached judgment is a true and correct copy of the original judgment entered in this action on October 1, 2001 , as it

                                                                                    Date

appears in the records of this court, and that

*No notice of appeal from this judgment has been filed, and no motion of any kind listed

in Rule 4(a) of the Federal Rules of Appellate Procedure has been filed.

IN TESTIMONY WHEREOF, I sign my name and affix the seal of this Court.

December 21, 2001                                       FELICIA C. CANNON

Date                                                              Clerk

(By) Deputy Clerk

*Insert the appropriate language: ..."no notice of appeal from this judgment has been filed, and no motion of any kind listed in Rule 4(a) of the Federal
Rules of Appellate Procedure has been filed." ..."no notice of appeal from this judgment has been filed, and any motions of the kinds listed in Rule 4(a)
of the Federal Rules of Appellate Procedure (†) have been disposed of, the latest order disposing of such a motion having been entered on [date]." ..."an
appeal was taken from this judgment and the judgment was affirmed by mandate of the Court of Appeals issued on [date]. ..."an appeal was taken from
this judgment and the appeal was dismissed by order entered on [date]."

(†Note: The motions listed in Rule 4(a), Fed. R. App. P., are motions: for judgment notwithstanding the verdict; to amend or make additional findings
of fact: to alter or amend the judgment: for a new trial; and for an extension of time for filing a notice of appeal.)

AO 451 (Rev 12/93) Certification of J...



# UNITED STATES DISTRICT COURT

DISTRICT OF    MARYLAND (Baltimore)

Reservoir Capital Corporation

      Plaintiff

         V.

Four  Star Financial Services, L.L.C.

      Defendant

**CERTIFICATION OF JUDGMENT
FOR REGISTRATION IN
ANOTHER DISTRICT**

FJGC 002

Case Number:  00-CV-3626

I, _____Felicia C. Cannon_____ Clerk of the United States district court certify that the

attached judgment is a true and correct copy of the original judgment entered in this action on _October 1, 2001_ , as it

                                                            Date

appears in the records of this court, and that

\*No notice of appeal from this judgment has been filed, and no motion of any kind listed

in Rule 4(a) of the Federal Rules of Appellate Procedure has been filed.

IN TESTIMONY WHEREOF, I sign my name and affix the seal of this Court.

_____December 21, 2001_____
               Date

_____FELICIA C. CANNON_____
               Clerk

               (By) Deputy Clerk

\*Insert the appropriate language: ..."no notice of appeal from this judgment has been filed, and no motion of any kind listed in Rule 4(a) of the Federal
Rules of Appellate Procedure has been filed." ..."no notice of appeal from this judgment has been filed, and any motions of the kinds listed in Rule 4(a)
of the Federal Rules of Appellate Procedure (†) have been disposed of, the latest order disposing of such a motion having been entered on [date]." ..."an
appeal was taken from this judgment and the judgment was affirmed by mandate of the Court of Appeals issued on [date]. ..."an appeal was taken from
this judgment and the appeal was dismissed by order entered on [date]."

(†Note: The motions listed in Rule 4(a), Fed. R. App. P., are motions: for judgment notwithstanding the verdict; to amend or make additional findings
of fact; to alter or amend the judgment; for a new trial; and for an extension of time for filing a notice of appeal.)



**EXHIBIT  4**

**ASHWORTH & BENEDICT**
John Benedict, Esq.
Nevada Bar No. 005581
1850 E. Flamingo Road, Suite 240
Las Vegas, Nevada 89119
(702) 893-9500

Attorneys for Plaintiffs

ORIGINAL

RECEIVED
AND FILED

OCT 13   3 24 PM '02

LANCE S. WILSON
CLERK

BY _____
        DEPUTY

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

◆ ◆ ◆ ◆     CV-S-02-1385-LDG-PAL

| | |
|---|---|
| 2424 LIMITED, a Nevada Partnership, SOFTWARE CUSTOMIZERS, INC., a Nevada Corporation; NEIL BARON, an Individual, <br><br> vs. <br><br> Plaintiffs, <br><br> MARK COHN, an individual, FOUR STAR FINANCIAL SERVICES, LLC, a California Limited Liability Company; CONDOR INVESTMENTS, a California Corporation, and DOES 1-100, inclusive, <br><br> Defendants. | **COMPLAINT FOR:** <br><br> 1. **Violation of Federal Racketeer Influenced and Corrupt Organization Act** <br> 2. **Violation of State Racketeer Influenced and Corrupt Organization Act** <br> 3. **Conspiracy to Defraud and Fraud** <br> 4. **Conversion** <br> 5. **Breach of Fiduciary Duty** <br> 6. **Unjust Enrichment** <br> 7. **Money Had and Received** <br> 8. **Injunctive Relief** <br> 9. **Appointment of a Receiver and For An Accounting** <br><br> **[JURY DEMAND]** |

Plaintiffs, as claims for relief against Defendants, complain and allege as follows:

## I.     JURISDICTION

1.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. Section 1332, as the amount in controversy exceeds $75,000.00 and Plaintiffs' citizenship

1

1    are diverse from those for each Defendant. Alternatively, this Court has subject matter jurisdiction

2    pursuant to 28 USC §1331, because the case and controversy arises under the Constitution and

3    laws of the United States, specifically the Racketeer Influenced and Corrupt Organizations Act

4    ("RICO"), 18 USC §1961, et. seq., and federal common law.   This Court has supplemental

5    jurisdiction over Plaintiff's other claims per 28 USC §1367, because such claims are related to

6    those claims over which the Court has Federal question  subject matter jurisdiction, and form part

7    of the same case and controversy.

8

9                                    **II.    VENUE**

10        2.    Venue is proper in this District pursuant to 28 U.S.C. Section 1391(a)(2) or

11   alternatively 1391(b)(2).

12                                  **III.   THE PARTIES**

13        3.    At all times material herein, 2424 Limited ("2424")  was and

14   continues to be a Nevada limited partnership conducting business in the City of Las Vegas,

15

16   County of Clark, State of Nevada.

17        4.    At all times material herein, Software Customizers, Inc. ("Software") was

18   and is a Nevada Corporation conducting business in the City of Las Vegas, County of Clark, State

19   of Nevada.

20        5.    At all times herein, Neil Baron  ("Baron") was and is an individual residing

21   in the City of Las Vegas, County of Clark, State of Nevada.   Collectively 2424, Software, and

22

23   Baron are referred to as the Plaintiffs.

24        6.    Plaintiffs are informed and believe and thereon allege that Defendant, Four

25   Star Financial Services, LLC ("Four Star"), is and at all times herein mentioned was, a limited

26   liability company incorporated under the laws of California, conducting business and causing

27   damage within this jurisdiction.

28

                                            2

7.   Plaintiffs are informed and believe and thereon allege that Defendant, Condor Investments ("Condor") is and at all times herein mentioned was, a corporation incorporated under the laws of California, conducting business and causing damage within this jurisdiction.

8.   Plaintiffs are informed and believe and thereon allege that Defendant MARK F. COHN ("Cohn") at all times relevant herein was an individual residing in and/or employed within Brisbane, California, who caused harm in this district.

9.   Plaintiffs do not presently know the true names and capacities of Defendants named as DOES 1 through 100, inclusive, and for that reason, sue such Defendants by their fictitious names. Plaintiffs will seek leave to amend this Complaint to allege the true names and capacities of these Defendants when same have been ascertained. Plaintiffs are informed and believe, and based thereon allege that each of the Defendants named herein as a DOE is liable in some manner for the matters alleged herein. All allegations made in this Complaint against Defendants apply in equal force and effect and are additionally made against each and every DOE

10.   At all times mentioned herein, Defendants, and each of them, were the agents, servants or employees of each other and were acting within the course and scope of this agency or employment, with the permission, authorization and/or consent of all remaining Co-Defendants. Further, Defendants, and each of them were partners, associates, joint venturers and/or co-conspirators of all remaining Co-Defendants. Each and every Defendant acted, at all times herein, within the course, purpose and scope of said partnership, association, joint venture and/or conspiracy with the permission, authorization, consent and/or ratification of the remaining Co-Defendants.

11.   Plaintiffs are informed and believe and thereon allege that Defendants Four Star, Condor, Cohn, and Does 1-100, are all alter egos of one another. Each Defendant is sued as

3

the alter ego of each and every other Defendant, based upon the following:

- Four Star, Condor, Cohn and Does 1-100 (collectively the "Entities") were, and are undercapitalized;

- Cohn has used the Entities' resources for his own purposes, and assets of these alter egos have been commingled;

- Cohn influenced and governed the Entities such that there is such unity of interest and ownership trust the Entities are inseparable from him and from one another;

- The Entities have not followed corporate formalities as required by law, including but not limited to conducting necessary meetings, and no minutes of same have been recorded;

- The Entities failed to maintain proper books and records, to prepare financial documentation required by law and good business practice, and failed to file appropriate federal and state tax returns;

- The Entities engaged in criminal and other illegal activity.

12.    Based on the above, Plaintiffs submit that it would be unjust to allow the alter ego Defendants to be protected from liability by a corporate shield and/or a claim of separateness, and that adherence to the corporate fiction for the entities would sanction fraud and promote a manifest injustice.

### III.    FACTS COMMENT TO ALL CLAIMS FOR RELIEF

#### A.    The Investment Scheme Targeting Plaintiffs

13.    Baron, prior to February of 2000, as a principal in entities that served as telephone billing service providers in the telecommunications industry, had numerous dealings

1   with Defendants Cohn and Four Star.  In the course of those dealings, Baron learned that Cohn

2   was a licensed attorney in the State of California.  Baron concluded, based upon Cohn's

3   knowledge, and special training, that Cohn was aware of the legality of various investment

4   opportunities, and fully understood the concept in the law of what is known as a fiduciary.  Based

5   upon Cohn's invitations, and their previous dealings, as well as Cohn's position as a licensed

6   attorney, Baron came to trust Cohn's representations.

7

8           14.    Plaintiff had, prior to this scheme, previously entrusted funds with Cohn and

9   his alter ego Entities.  Specifically, Plaintiffs had entrusted in excess of $500,000.00 with Cohn

10  and his alter egos, based upon similar representations to the scheme involved here.  The

11  representations were nearly identical, i.e. that there was a high yield investment, that it was safe

12  and secure, that Defendants would at all times control the money, and that the Plaintiffs could

13  receive their money back because it was always protected.  In fact, on the occasion that Plaintiffs

14  entrusted more than a half million dollars to Defendants, the Plaintiffs did indeed, upon their

15  request, receive their money back from Defendants when the high yield investment did not pay in

16  the same time frame as had been represented by Cohn.  Based upon these previous dealings, and

17  specifically a similar investment whereby Plaintiffs' money was returned, Defendants lured

18  Plaintiffs into making large investments in the fraudulent scheme sued upon herein.

19

20          15.    Beginning in or about February 2000, Defendants made various

21  representations to Plaintiffs through their agent Baron concerning investments that Four Star

22  obtained and controlled  which would return rates above the stock market rate of return.

23

24          16.    Specifically, Defendants solicited funds from Plaintiffs, through Baron, and

25  promised to invest those funds in high yield investments, at all times retaining full control over

26  the principal and acting in a fiduciary capacity on Plaintiffs' behalf to safeguard their investment

27  and return the amount agreed upon.

28

17.   Defendants represented that for this investment it would pool funds in multiples of ten million dollars, and then trade on that capital strength by investing into high yield instruments.   Defendants represented that it has successfully participated in such programs in the past, and that the investment was safe inasmuch as Four Star maintained control over the principal.

18.   Based upon these representations, their past dealings, and their trust of Defendant Cohn, Plaintiffs through Neil Baron, entrusted the following amounts to the Defendants:

- ◆   $500,000.00 on March 7, 2000;

- ◆   $1,000,000.00 on February 20, 2001; and

- ◆   $92,000.00 on May 1, 2001.

19.   Defendants represented that these amounts would be held in a bank account at all times to be maintained under the control of Defendants.  One such bank was represented to be Bank of America.  Additionally, Mr. Baron was also shown a bank account at CitiBank in the name of Four Star which supposedly included the amounts Plaintiffs had invested, and millions more in what was represented to be other investors' money.

20.   The so called high yield investment  was to yield payments beginning in or about June, 2001.  Defendants in order to make the investment seem legitimate, and to induce Plaintiffs to invest more, paid to Plaintiffs minimal sums as an advance on interest payments owed.  Since then, Defendants has failed to refund money as promised.

21.   Within the last six months, Plaintiffs demanded return of their principal and their promised return on investment which was entrusted to Defendants, as fiduciary, yet neither has been paid to Plaintiffs.

**B.    The Criminal Racketeering Enterprise**

**1. Plaintiffs and others are targeted in Nevada.**

22.    Plaintiffs are informed and believe and thereon allege that unbeknownst to it, and consistent with the scheme above, Defendants at all times developed, orchestrated and carried out a ponzi scheme whereby early investors in the so called high yield investment fund were paid out of the proceeds of later investors' investment. Plaintiffs are informed and believe that, unbeknownst to them, Defendants took the $1,592,000 entrusted to Defendants by Plaintiffs and utilized that in this ponzi scheme, and for other illegal activity.

23.    Plaintiffs are further informed and believe and thereon assert that Defendants at all times, unbeknownst to Plaintiffs, were engaged in a racketeering influenced corrupt organization (RICO) as defined in 18 USC §1961 et. seq., and NRS 207.350 et. seq.  To wit, with the so called high yield investment, Defendants fraudulently and through their conspiracy were involved in and committed the following wrongful acts:

- Took property from another under circumstance not amounting to robbery;

- Committed grand larceny;

- Embezzled money or property valued at $250.00 or more;

- Obtained possession of money or property valued at $250.00 or more, by means of false pretenses in violation of NRS §207.350 et. seq.

Plaintiffs are further informed and believe that they are entitled under Nevada law to damages for said violation as set forth more fully below, and as specifically enumerated in NRS 207.360 as a "crime related to racketeering."

24.    Additionally, Plaintiffs are informed and believe and thereon assert that Defendants by use of the mail and wires in violation of 18 USC §1341 and 1343 engaged in

1   numerous federal RICO violations while perpetrating the scheme to defraud Plaintiffs who

2   innocently entrusted their money to Defendants in the so called high yield investment.

3   Additionally, Plaintiffs are informed and believe and thereon assert that the Defendants did come

4   together to conspire to defraud investors by use of the mail and wire, and thereafter upon receipt

5   of the money via the entrustment of the funds by Plaintiffs and others, laundered said money in

6   violation of 18 USC §1956(a)(1) et. seq.   Plaintiffs are informed and believe and thereon assert

7   that the above constitutes a violation of the Federal RICO Statute, 18 USC §1961 et. seq.

8   therefore entitling Plaintiffs to the damages set forth below.

9

10          **2.  Victims of Defendant's other RICO scam are fleeced in Maryland.**

11          25.    Unbeknownst to Plaintiffs, simultaneously with the solicitation and

12   ultimately receipt of funds from Plaintiffs, Defendants and other co-conspirators were engaged in

13   illegal and criminal activities in at least the State of Maryland.

14

15          26.    Plaintiffs specifically here allege that Defendants Cohn and Four Star are

16   named criminal defendants in the United States District Court for the District of Maryland,

17   Criminal Case No. AMD-01-0374 for wire fraud, mail fraud, money laundering, conspiracy, and

18   criminal forfeiture.

19          27.    Plaintiffs are informed and believe and thereon assert that rather than taking

20   the money entrusted by Plaintiffs to these Defendants and placing them in a high yield investment

21   as had been represented, instead Defendants utilized those funds to further criminal activity as set

22   forth in the Criminal Case No. AMD-01-0374 (the "Criminal Case").   Plaintiffs are further

23   informed and believe and thereon assert that Defendants took Plaintiffs' money and utilized it in

24   the criminal scheme that lead to Defendants' Cohn and Four Star's indictment in the Criminal

25   Case.

26

27   ////

28

28. Specifically, according to the second superceding indictment in the Criminal Case filed April 8, 2002, Defendants Cohn and Four Star were part of an illegal scheme that targeted poor people, and those with bad credit. In the scheme, developed and carried out by Defendants, victims who would have otherwise been unable to obtain a creditcard were targeted on the telephone by telemarketers paid by Defendants. Those telemarketers followed a script developed by the Defendants which made it appear that the victims were chosen at random to receive special benefits and to be able to receive a credit card. These victims were placed in a so called club, and it was represented that the victim had chosen at random to receive special financial benefits. In fact, to carry out the conspiracy, the victim was placed on a three way call with what was represented to be a financial institution or a creditcard company in order to "verify" the victim's creditworthiness. In point of fact, the third person on the phone was a conduit of the scheme, and specifically was working on behalf of the Defendants as part of their conspiracy to defraud. Alternatively, the victim would be called by a telemarketer representing him or herself to be acting on behalf of a credit card company or financial institution, when in fact that was not true.

29. This scheme involved more than 27,000 victims and theft by false pretenses and fraud of more than $3 million. Plaintiffs are informed and believe that a conspiracy and criminal enterprise of that size required a great deal of capital. The scheme in Maryland was developed at the same time as Plaintiffs' money was entrusted to the Defendants, and Plaintiffs' money was ultimately used by the Defendants for the Maryland criminal activity.

30. More specifically, at Paragraph 24 of the second superceding indictment in the Criminal Case, it is asserted by the government that Mark Cohn and Four Star in March of 2000 restructured their scheme after one of their co-conspirators pulled out. Plaintiffs are informed and believe and thereon assert that it was at this time that the money from Plaintiffs was

9

1  utilized to continue the criminal conspiracy.  Several victims in Maryland ultimately demanded a

2  refund.  In most instances, those victims were denied a refund based on false pretenses. Plaintiffs

3  are informed and believe and thereon assert that some of the money entrusted to Defendants to be

4  invested in the so called high yield investment, was actually utilized to pay off some victims in

5  the Criminal Case.

6

7          31.    Throughout 2000, 2001 and during the first half of 2002, Defendants and

8  each of them continued to make misrepresentations to Plaintiffs that Plaintiffs' money was still

9  invested in the high yield investment.  In particular, Defendants claimed the money was safe and

10  secure and in the bank account that Defendants had represented the money was placed in, and that

11  only Defendants could release any of those proceeds.  Defendants further gave assurances that

12  because it controlled all the money, Plaintiffs could receive their investment back at any time, and

13  that all funds would be returned upon request.

14

15          32.    When, after a number of broken promises, requests to verify the funds were

16  actually in the bank account controlled by Defendants as promised, and when the investment did

17  not pay off in the time frame represented by Plaintiffs, Baron, acting in his individual capacity and

18  as an agent for the Plaintiffs, demanded all money be returned plus the then accrued profit.

19          33.    After a number of broken promises by the Defendants to reimburse all or

20  some of the proceeds, Baron threatened suit against Cohn and the alter ego Defendants.  It was at

21  this time that Cohn made some partial payment of then accrued interest from his own account or

22  from an account controlled by his alter ego Defendants.

23

24          34.    When still yet additional promises were broken, and Baron demanded return

25  of his investment as partial repayment of accrued interest, Cohn sent a number of checks to Baron

26  drawn on Cohn's personal account.  When Baron tried to cash these checks, they were returned

27  for insufficient funds in violation of NRS 205.130, and furthering Defendants racketeering

28

1   activity in the State through illegal conduct.

2       35.    Recently, in order to continue the façade that the ponzi scheme was still

3   viable, Defendant Cohn from his own account, paid to Plaintiffs $250,000.00 in accrued interest,

4   thereby acknowledging Defendants' ongoing obligations to return all money entrusted to them,

5   plus all then accrued profits according to the high yield investment plan, or alternatively

6

7   prejudgment interest, whichever is greater.

8       36.    Defendants have made repeated excuses not to pay back all the money

9   owed and a return on investment, and have now fully and finally failed and refused to do so.

10                              **FIRST CLAIM FOR RELIEF**

11      **[For Racketeering In Violation of The Racketeer Influenced And Collect**
12      **Organization Act 18 USC §1962 (a) (c) and (d) Against All Defendants]**

13      37.    Plaintiffs reallege as though fully set forth at length and incorporate herein

14   by reference all of the allegations and statements contained in Paragraphs 1 through 36, inclusive,

15   from above.

16      38.    Based upon the above, there was an enterprise, as defined under 18 USC§

17   196(4) among the Defendants that stole money from Plaintiffs in Nevada, and which scammed

18   money from victims in Maryland. All Defendants were associated in fact in the enterprise, and

19

20   benefited from the illegal enterprise to Plaintiffs' financial detriment.

21      39.    Each of the Defendants is a person under 18 USC §1961(3).

22      40.    Defendants engaged in a pattern of racketeering activity as defined in 18

23   USC §1961(5) as set forth herein. This racketeering activity has included multiple predicate acts

24   of mail and wire fraud, money laundering and conspiracy to commit these criminal activities, as

25   well as each Defendant aiding and abetting each other Defendant in conducting said illegal acts;

26

27   and violation of Nevada law.

28

11

41.    Defendants' racketeering activities have been conducted in and have affected Interstate Commerce. Among other things, Defendants utilized federally insured banks to transfer funds via wire and used the U.S. mail in various illegal activity, including but not limited to, the activities in Maryland set forth in the Criminal Case.

42.    Each Defendant named herein has conspired together, then actively participated in a course of conduct, commencing with Plaintiffs' first entrustment of funds for the high yield investment by Defendants, and said participation has continued daily to the present. Each Defendant devised and/or participated in the schemes to defraud or to obtain money from Plaintiffs under false pretenses.

43.    The predicate acts of mail and wire fraud that establish the pattern of racketeering activity under USC §1961(5) all pertained to and furthered the fraudulent schemes described above, and each Defendant participated in such fraudulent schemes intentionally and for the purpose of financial gain.

44.    Specifically, Defendants utilized the mails and wires continuously in violation of federal law, as follows:

- Throughout early 2000, Plaintiffs were solicited via mail, telephone and e-mail to entrust their money to Defendants;

- Defendants' received Plaintiffs' funds via mail, and deposited those funds drawn on federally insured banking institutions, into still other federally insured banking institutions;

- Plaintiffs are informed and believe and thereon assert that Defendants wired Plaintiffs' funds to various bank accounts and other sources, including bank accounts utilized in the Criminal Case;

- Defendants made misrepresentations telephonically and via e-mail that Plaintiffs' money was secure, and that the Defendants controlled all bank accounts into which Plaintiffs' funds had been deposited;

- Defendants in or about October 16, 2000, November 9, 2001 and January 1, 2002, mailed partial interest reimbursement to Plaintiffs to further their scheme and to have Plaintiffs invest additional funds;

- Defendants' agent and alter ego Cohen used the telephone and e-mail to communicate with Baron, making numerous misrepresentations regarding the Plaintiffs' money and the so called high yield investment;

- Defendants in or about April 12, 2002, used the mails to forward the NSF checks to Baron;

- Defendants in or about August, 2002, utilized the wires to forward $250,000 as partial interest reimbursement to Baron to attempt to have Plaintiffs forbear from filing a lawsuit and thereby exposing the criminal schemes identified above.

45   All of the above constitute separate violations of 18 USC §§ 1341 and 1343.

46.   Defendants, set forth above, Plaintiffs have suffered financial loss of at least $1,592,000 in their business and/or property based upon Defendants' racketeering activity.

47.   The above violates all of 18 USC 1962(a), (c) and (d).

48.   Under 18 USC §1964, Plaintiffs are entitled to treble their general damages and special compensatory damages, plus interest, costs and attorney's fees.

49.   By reason of the foregoing, the Co-Conspirators, their agents and assigns, hold the entrusted funds in constructive trust for Plaintiffs' benefit. Thus, in addition to all other

1  remedies, the constructive trust property must immediately be returned, as well as a return of

2  anything gained by the above-named Defendants as a result of their wrongfully possessing and

3  receiving income from the entrusted funds.

4
### SECOND CLAIM FOR RELIEF
5
**[For Racketeering In Violation of NRS §207.35 et. seq.**
6  **Against All Defendants]**

7       50.   Plaintiffs reallege as though fully set forth at length and incorporate herein by

8  reference all of the allegations and statements contained in Paragraphs 1 through 49 , inclusive,
9
from above.
10
        51.   Plaintiffs are informed and believe and thereon assert that Defendants did
11
12  all of the following:

13       •   Took property from another under circumstances not amounting to robbery;

14
         •   Committed grand larceny;
15
16       •   Embezzled money or property valued at $250.00 or more;

17       •   Obtained possession of money or property valued at $250.00 or more, by

18           means of false pretense; all in violation of NRS §207.350 et. seq., and

19  Plaintiffs are further informed and believe that they are entitled under Nevada law to damages for

20  said violation as set forth more fully below, and as specifically enumerated in NRS 207.360 as

21  crimes "related to racketeering."

22
        52.   The above identified acts violate NRS §207.360(9), (16),  (25) and (26)
23
24  among others.

        53.   That Defendants violated such statute on at least two occasions by
25
26  soliciting and receiving three payments from Defendants as set forth above on three separate

27  occasions and on each occasion Defendant used the same misrepresentations, conspiracies in the
28

1  same pattern and intended to accomplish the same or similar results.

2       54.    That Defendants used their business names of Four Star, Four Star II, and

3  Condor to create a criminal enterprise for furthering their racketeering activities.

4       55.    That Defendants' acts constitute unlawful racketeering prohibited by NRS

5  207.400.

6

7       56.    As a direct and proximate result of Defendants' racketeering activity in

8  violation of Nevada law, Plaintiffs suffered injury in their business or property by reason of

9  Defendants' violation of NRS 207.400.

10       57.  Based on the above, Plaintiffs pray for damages in excess of this Court's

11  $75,000 minimum jurisdiction, jointly and severally against all Defendants, for three times the

12  actual damages sustained by Plaintiffs pursuant to NRS 207.470, for pre and post judgment

13  interest, for attorneys fees and costs of the investigation and litigation incurred, and for such other

14  and further relief as this Court may deem just and proper.

15

16       58.  By reason of the foregoing, the Co-Conspirators, their agents and assigns,

17  hold the entrusted funds in constructive trust for Plaintiffs' benefit.  Thus, in addition to all other

18  remedies, the constructive trust property must immediately be returned, as well as a return of

19  anything gained by the above-named Defendants as a result of their wrongfully possessing and

20  receiving income from the entrusted funds.

21

22  **THIRD CLAIM FOR RELIEF**

23  **[For Conspiracy To Defraud And For Fraud Against All Defendants]**

24       59.  Plaintiffs reallege as though fully set forth at length and incorporate herein

25  by reference all of the allegations and statements contained in Paragraphs 1 through 58, inclusive,

26  from above.

27  / / / /

28

1    60.    Plaintiffs are informed and believe and thereon allege that the above-named

2    Defendants and Doe Defendants (collectively, the "Co-Conspirators") came together and did

3    agree to defraud Plaintiffs with regard to their entrustment of in excess of one million five

4    hundred thousand dollars.

5        61.    The Co-Conspirators, their agents, partners, and alter-egos, made

6    representations of fact that include but are not limited to that: (1) there was a high yield

7    investment; (2) Plaintiffs' money, entrusted to Defendants, was part of a much larger pool which

8    allowed for the high yield return; (3) the high yield investment was safe and secure; (4)

9    Defendants controlled the bank account that all funds would be deposited into and that the money

10   would never, under any circumstances, leave Defendant's control; (5) Defendants had

11   successfully traded in similar high yield investments with great success and no previous loss; and

12   (6) Defendants would keep Plaintiffs informed of the status of the high yield investment at all

13   times; and (7) that the investment would pay accrued profit on a regular basis, and about after

14   approximately one year.  Plaintiffs' money would be returned.

15       62.    At the time the representations were made, Plaintiffs were ignorant of their

16   falsity, reasonably believed them to be true, and relied on them in entrusting more than $1.5

17   million to Defendants.

18       63.    Plaintiffs are informed and believe and thereon allege that the Co-

19   Conspirators, when they made the representations, had full knowledge of their falsity, and made

20   them with the intent to defraud and deceive Plaintiffs.  Alternatively, Plaintiffs are informed and

21   believe, and herein allege, that at the time the representations were made, the Co-Conspirators'

22   true intent was concealed, and that the various promises were made without any intent to perform

23   them.

24   / / / /

16

64.    It was not until the summer of 2002, even after Defendants tried to create the appearance of legitimacy by making partial interest payments, that Plaintiffs learned of the Criminal Case, and the scheme to defraud, all confirmed by Defendants refusal to return the entrusted funds or even to allow Plaintiffs to confirm the money was still being held in an account controlled by Defendants.

65.    As a direct and proximate result of the above-named Defendants' and Co-Conspirators' fraud, deceit and concealment, Plaintiffs have been damaged in an amount greater than $75,000.00, to wit at least $1.5 million which they hereby seek, as well as all other damages directly and proximately flowing from the fraud set forth above, in an amount according to proof at the time of trial.

66.    By reason of the foregoing, the Co-Conspirators, their agents and assigns, hold the entrusted funds in constructive trust for Plaintiffs' benefit. Thus, in addition to all other remedies, the constructive trust property must immediately be returned, as well as a return of anything gained by the above-named Defendants as a result of their wrongfully possessing and receiving income from the entrusted funds.

67.    In making the fraudulent representations set forth above, and in engaging in the conspiracy to conceal the truth, the above-named Defendants and Co-Conspirators acted with oppression, fraud and malice, and therefore Plaintiffs is entitled to exemplary and punitive damages.

### FOURTH CLAIM FOR RELIEF

### [For Conversion Against All Defendants]

68.    Plaintiffs reallege as though fully set forth at length and incorporate herein by reference all of the allegations and statements contained in paragraphs 1 through 67, inclusive, from above.

69.   Plaintiffs are informed and believe and thereon allege that the above-named Defendants have and continue to hold assets belonging to Plaintiffs, including but not limited to cash, and derivatives of Plaintiffs' entrusted proceeds such as real estate, stock, monetary investments, personalty, bonds and other items.

70.   Plaintiffs are informed and believe and thereon allege that the above-named Defendants, and Doe Defendants (the "Co-Conspirators") came together and did agree to convert for their own use the above-identified entrusted proceeds and items to hereinafter be identified, which Plaintiffs had the sole right to own and possess.   Despite demand therefor, the Co-Conspirators have refused and continue to refuse to return Plaintiffs' personal property and their derivatives, including but not limited to, the items mentioned above.

71.   As a direct and proximate result of the actions taken by the Co-conspirators, Plaintiffs suffered and continue to suffer damages in an amount not yet determined, but in any event in excess of the minimum jurisdiction of this Court, specifically greater than $75,000.00, in an amount to be proven at trial.   Plaintiffs also demand immediate return of all of the above-identified materials and all other items rightfully belonging to them.

72.   By reason of the foregoing, the Co-Conspirators, their agents and assigns, hold the entrusted funds in constructive trust for Plaintiffs' benefit.   Thus, in addition to all of the remedies the constructive trust property must immediately be returned, as well as a return of anything gained by the above-named Defendants as a result of their wrongfully possessing and receiving income from the entrusted funds.

73.   As a further direct and proximate result of the above-named Defendants' actions, Plaintiffs are entitled as a matter of law and hereby demand fair compensation for the time and money expended in pursuit of the sum due them, and of the above-identified materials, including but not limited to attorney's fees and costs, according to proof.

74.    By reason of the foregoing, the above-named Defendants/Co-Conspirators acted with oppression, fraud and malice, and therefore, Plaintiffs are entitled to exemplary and punitive damages.

## FIFTH CAUSE OF ACTION

### [For Breach of Fiduciary Duty All Defendants]

75.    Plaintiffs reallege as though fully set forth at length and incorporate herein by reference all of the allegations and statements contained in paragraphs 1 through 74, inclusive, from above.

76.    By reason of the foregoing, a relationship of trust was formed whereby Plaintiffs entrusted in excess of $1.5 million to Defendants for placement in what Defendant represented was a high yield investment.  By accepting these funds for safekeeping and placement in a safe and secure investment over which Defendants would maintain control at all times, Defendants owed fiduciary duties to Plaintiffs.

77.    As set forth more fully above, the above-named Defendants breached these fiduciary duties by among other things conspiring to defraud Plaintiffs, from engaging in illegal and criminal activity; by refusing to account to Plaintiffs for their money; by refusing to allow the books and records to verify Plaintiffs proceeds were safe and secure; by diverting Plaintiffs funds for Defendants own use, including in the criminal activity in Maryland; by failing and refusing to account to Plaintiffs for assets, sales and profits of the so called high yield investment; by failing to pay Plaintiffs profits as promised;  by taking and conspiring to take further illegal and wrongful activities so as to preclude Plaintiffs from realizing the benefits of the so called high yield investments, and by failing and refusing to return Plaintiffs' money when requested.

78.    As a direct and proximate result of the above-named Defendants' breach of fiduciary duty, Plaintiffs has been damaged in an amount greater than $75,000.00,  to wit, at least

1   $1.6 million, which Plaintiffs hereby seek, as well as all other damages directly and proximately

2   flowing from the fraud set forth above, in an amount according to proof at the time of trial.

3   79.  By reason of the foregoing, the Co-Conspirators, their agents and assigns,

4   hold the entrusted funds in constructive trusts for Plaintiffs' benefit.   Thus, in addition to all of

5   the remedies the constructive trust property must immediately be returned, as well as a return of

6   anything gained by the above-named Defendants as a result of their wrongfully possessing and

7   receiving income from the entrusted funds.

8   80.  Plaintiffs have retained counsel, and have been forced to incur attorney's

9   fees, and Plaintiffs demand recompense therefor as part of the relief here claimed, which in equity

10  should be awarded for Defendants' above-named acts and admission all of which constitute a

11  breach of fiduciary duty.

## SIXTH CLAIM FOR RELIEF

### [For Unjust Enrichment Against All Defendants]

16  81.  Plaintiffs incorporate herein and make a part hereof Paragraphs 1 through

17  80, inclusive, of this Complaint the same as though said Paragraphs were set forth herein in full.

18  82.  As set forth more fully above, through their course of dealing, Defendants

19  have been unjustly enriched at Plaintiff's expense, in an amount greater than the minimum

20  jurisdiction of this Court, but at least4 $1,592,000, by their failure to pay Plaintiffs monies justly

21  owed.

23  83.  Further, under the equitable principles of this Court, in order to put the

24  parties in the position that they were before Defendants were unjustly enriched, Plaintiffs are

25  entitled to recoup their attorney's fees and costs in bringing this action in an amount to be proven

26  at trial.

27  ////

84.  By reason of the foregoing, Defendants hold all monies received from Plaintiffs in constructive trust for Plaintiffs' benefit. In addition all other remedies, the constructive trust property must immediately be returned, as well as return of anything gained by the Defendants as a result of their wrongfully possessing and receiving money from Plaintiffs.

85.  In addition, Plaintiffs, in accordance with applicable law, hereby demand prejudgment interest on all sums held to be due and owing.

### SEVENTH CLAIM FOR RELIEF

### [For Money Had And Received Against All Defendants]

86.  Plaintiffs incorporates herein and makes a part hereof Paragraphs 1 through 85 inclusive, of this Complaint as though said Paragraphs were set forth in full.

87.  Defendants and each of them were paid within the last four years, $1,592,000 Which was entrusted to them by Plaintiffs for safekeeping and investment.  This money was had and received on March 7, 2000, February 20, 2001 and May 1, 2001.  Neither the whole nor any part of the sums has been paid, although a demand therefor has been made and there is now due owing and unpaid from Defendants and each of them to Plaintiffs the sum of at least $1,592,000, according to proof.

88.  Further, under the equitable principles of this Court, in order to put the parties in the position that they were before Defendants were unjustly enriched, Plaintiffs are entitled to recoup their attorney's fees and costs in bringing this action in an amount to be proven at trial.

89.  By reason of the foregoing, Defendants hold all monies received from Plaintiffs in constructive trust for the benefit of Plaintiffs.  In addition to all other remedies, the constructive trust property  must immediately be returned, as well as a return of anything gained by the Defendants as a result of their wrongfully possessing and receiving money from Plaintiffs.

# EIGHTH CLAIM FOR RELIEF

## [For Injunctive Relief Against All Defendants]

90.    Plaintiffs reallege as though fully set forth at length and incorporate herein by reference all of the allegations and statements contained in paragraphs 1 through 89, inclusive, from above.

91.    Based on the above, Plaintiffs seek the Court to utilize its equitable powers to enjoin, during the pendency of this action, the above-named Defendants from affecting in any way the sums entrusted to them by Plaintiffs.

92.    The Court is asked to enforce the status quo during the pendency of this action by ordering the above-named Defendants and their agents (1) not to sell, attempt to sell, or offer for sale, hypothecate, encumber, lien, transfer, quit-claim, injure, pledge, or in any way to undertake or fail to undertake any act that will in any way affect title to or value of the money Plaintiffs entrusted to Defendants, or any derivatives thereof; (2) not to undertake or fail to undertake any actions that will jeopardize Plaintiff's money, any derivatives therefrom, or Defendants' ongoing business.

93.    Based on Defendants' ongoing criminal activity, and widespread fraud, Plaintiffs will  irreparably be harmed, and may not be made whole because of the actions Defendants may take while litigation is  pending that will make Plaintiff unable to collect what it is owed.  Plaintiffs have raised significant legal issues which, until the court determines them, require the status quo should be maintained, and Defendants should be enjoined as set forth above.

94.    Also, during the pendency of this litigation, pursuant to the Court's inherent power to do so, and FCRP 67, it is requested that all sums Defendants hold in, and receive from, the alleged high yield investment shall be paid into a segregated account of this Court to be held

1    until all rights and obligations of the parties are decided, at which point it shall be distributed as

2    this Court shall then order.

3        95.   At the conclusion of this action, the Court is requested to forever and

4    permanently enjoin the above-named Defendants, their agents or assigned, from undertaking the

5    acts and from failing to act as set forth in Paragraphs ____ and ___ above.

6

7    **NINTH CLAIM FOR RELIEF**

8    **[For Appointment of a Receiver And An Accounting Against**
     **Defendants Four Star, Four Star II, and Condor]**

9

10       96.   Plaintiffs reallege as though fully set forth at length and incorporate herein

11   by reference all of the allegations and statements contained in paragraphs 1 through 95, inclusive,

12   from above.

13       97.   This claim for relief is brought, in part, to compel the above-named

14   Defendants who, Plaintiffs are informed and believe and thereon asserts, may  continue to hold

15   the Plaintiffs' entrusted money, to account to their fiduciary beneficiaries regarding the past and

16   present financial results, and the present status of the purported high yield investment on any

17   investment in which Plaintiffs' money was placed.

18

19       98.   As set forth above,  Plaintiffs are is entitled to return of the $1,592,000 plus

20   the actual yield received thereon by Defendants, or at the very least prejudgment interest,

21   whichever is greater.

22       99.   Plaintiffs hereby demand that the claimed high yield investment be

23   dissolved, and that Plaintiffs be ordered by the Court to receive its entrusted funds back, plus

24   either its share of all profit made thereon, or prejudgment interest on these sums Plaintiffs

25   invested, whichever is greater.

26

27   ////

28

100.    The above-named Defendants have willfully and maliciously failed to Comply with their duties as fiduciaries entrusted with Plaintiffs money as set forth at length above.

101.    Despite their ability to do so, the above-named Defendants have not implemented either adequate or appropriate record keeping procedures that readily permit allocation of the proceeds of the claimed high yield investment, such that profits can be distributed to Plaintiffs.

102.    The above-named Defendants have not accounted for a single item of revenue or profit ever.

103.    Plaintiffs seek that the claimed high yield investment be wound up in accordance with Nevada law, and that all of its assets be distributed.

104.    The above-named Defendants currently possess all of the books and accounts, and assets of the so called high yield investment.

105.    In light of the persistent pattern of financial self-dealing by the above-named Defendants, and given those Defendants' consistent refusal to allow Plaintiffs and their professionals to examine Defendants' books and records, Plaintiffs have, and reasonably believe that they will, be denied plenary access to Defendants' records in the future as they pertain to the money Plaintiffs entrusted to them.

106.    To protect Plaintiffs' interests, it is essential to implement an orderly winding up of the so called high yield investment effective immediately.

107.    Given the above-named Defendants' self-dealing, only a judicial intervention to order, direct and control the winding up of the alleged high yield investment will protect Plaintiffs from suffering irreparable harm in that, among other improprieties, assets will continue to be dissipated, books of account may be altered or destroyed, and investment liabilities

24

1    increased. Moreover, in that the Defendants are still allegedly operating the high yield investment

2    without any oversight, the business can be expected to continue to undergo business failures to

3    Plaintiffs' detriment.

4
     108.    As a result of the foregoing, Plaintiffs have no adequate remedy at law and
5
6    requests all orders from this Court in equity necessary or appropriate to facilitate and ensure a

7    court-supervised winding up of the so called high yield investment, including a full accounting to

8    Plaintiffs of that entity from inception to present.

9
     109.    Plaintiffs also seek immediate appointment of a receiver for Four Star to
10
     prevent its from continuing to engage in racketeering and other illegal activities.
11
             WHEREFORE, Plaintiff prays as follows:
12
13       (1)    For compensatory damages;

14       (2)    For treble damages on the first and second claims for relief;

15       (3)    For punitive/exemplary damages on the third and fourth claims for relief;

16
         (4)    A  constructive  trust  on  all  monies  entrusted  to  Defendants  and  all
17
18              derivatives thereof;

19       (5)    Attorney's fees and costs;

20       (6)    Prejudgment interest allowed by law;

21       (7)    For such other and further relief as the Court may deem proper.
22
         DATED this 18TH day of October, 2002.
23
                                ASHWORTH & BENEDICT
24
25
     By:
26              John Benedict, Esq.
                Nevada Bar No. 005581
27              1850 East Flamingo Road, Ste 240
                Las Vegas, Nevada 89119
28              **Attorneys for Plaintiffs**

1

## DEMAND FOR JURY TRIAL

2    TO:    THE CLERK OF THE ABOVE-ENTITLED COURT:

3
      Plaintiffs, by and through their undersigned counsel, hereby demand that a trial of the
4
   above-entitled action be heard before a jury.
5
      DATED this ___ day of October, 2002.
6

7                                           ASHWORTH & BENEDICT

8

9

10                              By: _____
                                    John Benedict, Esq.
11                                  Nevada Bar No. 005581
                                    1850 East Flamingo Road, Ste 240
12                                  Las Vegas, Nevada 89119
                                    **Attorneys for Plaintiffs**
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 5**

1 | RYAN D. LAPIDUS (Bar No. 196838)
THE LAW OFFICES OF RYAN D. LAPIDUS
2 | A PROFESSIONAL LAW CORPORATION
211 SOUTH BEVERLY DRIVE, SUITE 205
3 | BEVERLY HILLS, CALIFORNIA 90212
TEL: 310-550-8700
4 | FAX: 310-943-2471

5 | Attorneys for Plaintiff **Steve Gevirtz**

6

7 | UNITED STATES DISTRICT COURT

8 | CENTRAL DISTRICT OF CALIFORNIA

9 | CENTRAL DIVISION

10

11 | STEVE GEVIRTZ, an individual, | CASE NO.: CV 03-5548 RSWL (VBKx)

12 | Plaintiff, | **FIRST AMENDED COMPLAINT FOR:**

13 | vs.

14 | FOUR STAR FINANCIAL | **(1) VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934;**
15 | SERVICES, LLC, an entity of unknown origin; ANSON, GARRETT & CO., an | **(2) VIOLATIONS OF THE SECURITIES ACT OF 1933;**
16 | entity of unknown origin; MARK | **(3) VIOLATIONS OF THE RACKETEER INFLUENCED**
17 | COHN, an individual; JACK | **AND CORRUPT ORGANIZATIONS ACT**
GARRETT, an individual; RONALD | **(RICO);**
18 | ANSON, an individual; and DOES 1 | **(4) FRAUD IN THE**
19 | through 9, | **INDUCEMENT;**
| **(5) FRAUD AND DECEIT;**
20 | Defendants. | **(6) BREACH OF FIDUCIARY DUTY;**
21 | | **(7) NEGLIGENCE;**
| **(8) UNFAIR BUSINESS**
22 | | **PRACTICES.**

23

24 | **DEMAND FOR TRIAL BY JURY**

25 | Plaintiff Steve Gevirtz ("Plaintiff") complains and alleges as follows:

26 | ### NATURE OF THE ACTION

27 | 1.   This is a federal securities action brought by the Plaintiff against

28 | defendants Four Star Financial Services, LLC, controlling individuals and

---

FIRST AMENDED COMPLAINT - 1

1   tortfeasors, Mark Cohn, Jack Garrett and Ronald Anson, and co-conspirator/aider
2   and abettor/alter-ego Anson, Garrett & Co. These entities and persons fraudulently
3   induced Plaintiff to invest in Four Star Financial Services, LLC which Plaintiff was
4   told orally and in writing via a private placement memorandum and accounting
5   balance sheets and income statements was a low risk, hedged telecommunications
6   investment vehicle with equity in excess of $68 million as of December 31, 2001
7   and $77 million as of September 30, 2002. In reality, none of Plaintiff's
8   $375,000.00 investment was placed in any telecommunications investment and
9   Four Star Financial Services, LLC conducted no transactions of this sort
10  subsequent to the receipt of Plaintiff's funds. Instead, pursuant to their fraudulent
11  and unlawful scheme, this investment was seized by defendants, and each of them,
12  through their false representations in connection with debts and obligations
13  attendant to undisclosed company and personal liabilities, including expenditures
14  in connection with criminal proceedings (resulting in convictions of defendants
15  Four Star Financial Services, LLC and Mark Cohn), civil claims and other debts of
16  the limited liability company which, contrary to prior representations, had
17  previously suffered a fatal collapse in equity and liquidity. Indeed, it was this
18  collapse that precipitated the Defendants' desperate fraudulent scheme to obtain
19  capital in the form of Plaintiff's supposed investment.  Plaintiff seeks to recover
20  damages caused by Defendants' violations of Section 10(b) of the Securities
21  Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated there
22  under, violations of Section 20(a) of the Exchange Act, registration violations of
23  Section 12 of the Securities Act of 1933 (the "Securities Act") and violations of the
24  Racketeer Influenced and Corrupt Organizations Act ("RICO") as well as damages
25  and relief attendant to State of California claims including fraud in the inducement
26  and fraud.
27
28

FIRST AMENDED COMPLAINT - 2

**THE PARTIES**

2.    Plaintiff Steve Gevirtz is an individual domiciled in the State of California. Plaintiff was deceived and induced into investing in the Defendants' unlawful securities scheme as more fully described herein.

3.    Defendant Four Star Financial Services, LLC ("Four Star") is an entity of unknown origin doing business in this judicial district. Defendant Four Star by and through oral and written representations of its controlling individuals Mark Cohn, Jack Garrett and Ronald Anson and co-conspirator/aider and abettor/alter ego Anson, Garrett & Co. perpetrated the federal securities violations, fraud and other unlawful acts complained of herein.

4.    Defendant Anson, Garrett & Co. is an entity of unknown origin doing business in this financial district. At relevant points herein, defendant Anson, Garrett & Co. served as the point of sale for the fraudulent transaction alleged herein, provided false financial statements and other false accounting records used to intentionally deceive and mislead Plaintiff and otherwise conspired with and aided and abetted the other defendants. Defendant Anson, Garrett & Co., sharing the same office and much of the same controlling individuals and other staff as defendant Four Star, making intentional misrepresentations for Four Star on its letterhead, emails and in its offices and acting as the point of sale for the fraudulent transaction alleged herein is an alter-ego and/or co-conspirator and/or aider and abettor of Four Star for purposes of this action.

5.    Defendant Mark Cohn is an individual and controlling individual of defendant Four Star, and is the Executive Vice-President, General Counsel and Manager of defendant Four Star Financial Services.

6.    Defendant Jack Garrett is an individual and controlling individual of defendants Four Star and Anson, Garrett & Co., and is the President and Manager of defendant Four Star Financial Services.

1         7.   Defendant Ronald Anson is an individual and controlling individual

2    of defendants Four Star and Anson, Garrett & Co., and is the Chief Financial

3    Officer and Manager of defendant Four Star Financial Services.

4         8.   The true names and capacities of defendants Does 1 through 9 are

5    unknown to Plaintiff who therefore sues said defendants by such fictitious names.

6    Plaintiff will amend this complaint to state the true names and capacities of said

7    fictitious defendants when they have been ascertained. (Defendants Four Star,

8    Anson, Garrett & Co., Cohn, Garrett, Anson and Does 1 through 9 will be

9    collectively referred to herein as the "Defendants.")

10        9.   Plaintiff is informed and believes and based thereon alleges that, at all

11   material times, each of the Defendants was acting in a corporate, parent,

12   subsidiary, affiliate, supervisor, agency, associate, employee, employer, proprietor,

13   conspiratorial, alter-ego, co-conspirator and/or other capacity as the parent,

14   subsidiary, agent, supervisor, affiliate, employer, employee, proprietor, co-

15   conspirator, aider and abettor and/or alter ego of the other Defendants and with the

16   permission, consent, knowledge, authorization, ratification and direction of the

17   other Defendants.

18                  **JURISDICTION AND VENUE**

19        10. This action arises under and pursuant to, *inter alia*, Section 10(b) of

20   the Exchange Act, Rule 10b-5 promulgated there under by the SEC (17 C.F.R. §

21   240.10b-5) and Section 20(a) of the Exchange Act as well as other federal claims

22   including violations of the Securities Act and RICO.  This Court has jurisdiction of

23   this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78) and 28

24   U.S.C. §§ 1331 and 1337.  Thus, the Court has federal question jurisdiction

25   pursuant to 28 U.S.C. § 1338(a) and (b).  Additionally, the Court has supplemental

26   jurisdiction pursuant to 28 U.S.C. § 1367 over the related state law claims.

27        11. Venue is proper in this judicial district pursuant to Section 27 of the

28   Exchange Act and 28 U.S.C. § 1391(b).  Defendants Four Star and Anson, Garrett

FIRST AMENDED COMPLAINT - 4

1  & Co. have their headquarters in this district and many of the acts complained of

2  herein occurred in substantial part in this district.

3        12. In connection with the acts alleged in this Complaint, Defendants,

4  directly or indirectly, used the means and instrumentalities of interstate commerce,

5  including, but not limited to interstate investment vehicles, the mails, interstate

6  telephonic communications, interstate wire transactions and other electronic

7  communications.

8                          **COMMON ALLEGATIONS**

9        13. On or about July 2002, Defendants provided Plaintiff with a private

10 placement memorandum (the "PPM") offering securities in the form of $25,000

11 membership units in Four Star. The PPM specified that the principal types of

12 business conducted by Four Star included accounts receivable financing and

13 collateralized bridge loans primarily to telecommunications industry participants

14 including "Pay Per Call Providers," "Telephone Line Marketing Agents," "Small

15 Telephone Carriers" and "Providers of voicemail, Internet services, and paging and

16 cellular services." As explained in the PPM regarding Four Star's accounts

17 receivables lending activities, "the Company enters into a written financing

18 agreement with the client under which the client assigns its rights in the accounts

19 receivable to the Company in exchange for payment by the Company of cash equal

20 to the face amount of the receivables *less* ..." fees, bad debt reserve of the billing

21 intermediaries and, of course, Four Star's reserve for chargebacks and Four Star's

22 financing fee. As described in the PPM regarding Four Star's bridge loan

23 activities, "The Company applies strict lending standards to its bridge loan criteria:

24 Payment of at least the principal guaranteed by an insurance company with a

25 Best's rating of B or better; Payment of at least the principal amount is guaranteed

26 by a company with a net worth of at least 30 times the amount of the subject

27 obligations; Payment (or purchase of the obligation) is guaranteed by a government

28 agency; Payment is secured by collateral with a value of at least one-and-one half

FIRST AMENDED COMPLAINT - 5

(1.5) times the face value of the subject obligations; Payment is secured by cash or cash equivalents; or The obligation is of, or payment is guaranteed by, a company with a net worth of $75 million or more." These statements were material representations relied upon by Plaintiff in ultimately purchasing units as outlined herein below.

14. These statements, and others, in the PPM were false and made by the Defendants to Plaintiff knowing that they were false with the intent to deceive and mislead Plaintiff.

15. As specified in the PPM, the membership units were not and would not be registered under the Securities Act of 1933.

16. The PPM purported to outline liabilities, contingencies and legal claims against Four Star but omitted certain substantial material liabilities, contingencies and legal issues including without limitation the following:

(a) Criminal conduct of Four Star and Mark Cohn ultimately leading to convictions.

(b) On information and belief, knowledge of investigation of criminal conduct of Four Star and Mark Cohn ultimately leading to convictions.

(c) Devastating cash flow and liquidity issues surrounding Four Star's purported equity arising from what was later explained by Defendants to be a liquidity shortfall related to delays in securing the cash proceeds from the previous sale of Four Star's telephone arbitrage portfolio to an international bank that were collateralized by certificates of deposit held by an Argentine bank. (Not only was this purported liquidity shortfall not disclosed, but the sale of the telephone arbitrage portfolio was previously expressly mischaracterized by Defendants to Plaintiff as a significant windfall for Four Star.)

(d) That the alleged capital to be received by Four Star through the purported sale of the telephone arbitrage portfolio and imminent conversion of the certificates of deposit located in Argentina into cash still only represented about 50% to 60% of the capital obligations that Four Star has to investors. Consequently, Plaintiff was fraudulently induced to invest in as instrument that comprised an immediate and significant liquidity discount to the capital invested, in essence, a sinking ship. (The last report from Defendants to Plaintiff purports that the proceeds from the purported Argentine certificates of deposit have not been recovered and details surrounding the sale of Four Star's telecommunications portfolio are vague, including the fact that the definitive legal documentation memorializing the purported transaction has not been located.)

(e) That the new capital received from Plaintiff would not be used for purposes as expressly explained in the PPM and by the Defendants to Plaintiff (*i.e.*, hedged telecommunications investment) and would instead be diverted to meet other non-disclosed liabilities and liquidity shortfalls.

(f) Advances to Four Star by controlling individuals including Ron Anson to meet mounting nondisclosed Four Star debts, liabilities and other operating obligations prior to Plaintiff's investment and fraudulent inducement as explained herein.

(g) Various other civil claims and contingent liabilities against Four Star and its managers.

(h) The actual or attempted withdrawal and/or rescission of numerous other member investors based on newly discovered

liabilities and/or the deteriorating financial condition of Four
Star; and

(i) That the Four Star investors were forced to begin accruing
current interest payments (that had been paid previously on a
current basis) due to Four Star's accelerating liquidity
problems;

(j) Insolvency issues involving Four Star, including a study
initiated by Qwest Communications as a judgment creditor of
Four Star which resulted in an insolvency opinion regarding
Four Star.

17. The PPM also provided summary descriptions of management
experience and managers, including defendants Anson, Garrett and Cohn, but
omitted mention of criminal conduct and/or known investigation into criminal
conduct of controlling individual Mark Cohn and Four Star itself or any record of
current or previous financial defaults, liabilities and debts of the managers.

18. Because the PPM was dated June 23, 1999, although received in July
of 2002 by Plaintiff, Plaintiff conducted further due diligence and met with the
defendants, and each of them, who made further material and false representations
relied upon by Plaintiff as follows:

• On or about July 2002, Plaintiff met with Jack Garrett and
Ronald Anson on behalf of Four Star in the Four Star/Anson,
Garrett & Co. offices in Los Angeles who reiterated the
principal business investment of Four Star, namely, hedged
telecommunications investment vehicles. Because these
investments were reportedly hedged and/or secured, defendants
Garrett and Anson specified that the risk was minimal and that
it was a profitable enterprise for Four Star and its members and
represented a conservative investment philosophy. The Four

FIRST AMENDED COMPLAINT - 8

Star principals also expressly represented that a recent sale of a telecommunications arbitrage investment portfolio represented a major gain to the Four Star, equating to over three times the capital invested and an injection of liquidity exceeding $150 million.

- Plaintiff received two balance sheets from Defendants, first a December 31, 2001 balance sheet which showed a purported $68 million in equity and, also, a September 30, 2002 balance sheet which showed a purported (and, growth enhanced) $77 million in equity. These balance sheets lacked reasonable factual basis as known by each of the Defendants.

- Also on or about September 13, 2002, Plaintiff met with Mark Cohn in San Francisco who further reiterated (while Plaintiff took detailed notes) the principal business investment of Four Star, namely, hedged telecommunications investment arbitrage vehicles per previous representations. Because these investments were hedged, defendant Cohn specified that the risk was minimal, and that it was a profitable enterprise for Four Star and its members. In that discussion, defendant Cohn described in detail the mechanics of certain of the international telephone arbitrage investment vehicles and stated that since the strategy employed offsetting contracts with international telecommunications carriers, the primary risk was the time required to collect receivables, since the long distance carriers were sometimes slow and inefficient (albeit credit-worthy) in paying their obligations.

1    19. These statements, and others, made by Defendants were false and

2  made by the Defendants to Plaintiff knowing that they were false with the intent to

3  deceive and mislead Plaintiff.

4    20. Defendants, and each of them, through these aforementioned meetings

5  and false financial disclosures omitted and failed to inform Plaintiff of the

6  following:

7    (a) Criminal conduct of Four Star and Mark Cohn ultimately

8        leading to convictions.

9    (b) On information and belief, knowledge of investigation of

10       criminal conduct of Four Star and Mark Cohn ultimately

11       leading to convictions.

12   (c) Devastating cash flow and liquidity issues surrounding Four

13       Star's purported equity arising from what was later explained

14       by Defendants to be a liquidity shortfall related to delays in

15       securing the cash proceeds from the previous sale of Four

16       Star's telephone arbitrage portfolio to an international bank that

17       were collateralized by certificates of deposit held by an

18       Argentine bank. (Not only was this purported liquidity

19       shortfall not disclosed, but the sale of the telephone arbitrage

20       portfolio was previously expressly mischaracterized by

21       Defendants to Plaintiff as a significant windfall for Four Star.)

22   (d) That the alleged capital to be received by Four Star through the

23       purported sale of the telephone arbitrage portfolio and

24       imminent conversion of the certificates of deposit located in

25       Argentina into cash still only represented about 50% to 60% of

26       the capital obligations that Four Star has to investors.

27       Consequently, Plaintiff was fraudulently induced to invest in as

28       instrument that comprised an immediate and significant

FIRST AMENDED COMPLAINT - 10

liquidity discount to the capital invested, in essence, a sinking ship. (The last report from Defendants to Plaintiff purports that the proceeds from the purported Argentine certificates of deposit have not been recovered and details surrounding the sale of Four Star's telecommunications portfolio are vague, including the fact that the definitive legal documentation memorializing the purported transaction has not been located.)

(e) That the new capital received from Plaintiff would not be used for purposes as expressly explained in the PPM and by the Defendants to Plaintiff (*i.e.*, hedged and secured telecommunications investment) and would instead be diverted to meet other non-disclosed liabilities and liquidity shortfalls.

(f) Advances to Four Star by controlling individuals including Ron Anson to meet mounting nondisclosed Four Star debts, liabilities and other operating obligations prior to Plaintiff's investment and fraudulent inducement as explained herein.

(g) Various other civil claims and contingent liabilities against Four Star and its managers.

(h) The actual or attempted withdrawal and/or rescission of numerous other member investors based on newly discovered liabilities and/or the deteriorating financial condition of Four Star; and

(i) That the Four Star investors were forced to begin accruing current interest payments (that had been paid previously on a current basis) due to Four Star's accelerating liquidity problems;

(j) Insolvency issues involving Four Star, including a study initiated by Qwest Communications as a judgment creditor of

1    Four Star which resulted in an insolvency opinion regarding

2    Four Star.

3        21. Based on these material representations, including representations

4    going to the very essence of what the investment was supposedly about (namely,

5    telecommunications investment vehicles) and false balance sheet and/or financial

6    statement information provided by Anson, Garrett & Co., Plaintiff relied upon

7    these representations and was induced to invest $375,000.00 in Four Star. A

8    subscription agreement and operating agreement documents were provided to

9    Plaintiff on or about October 2002 by Rita Fernandez of Anson, Garrett & Co.

10   along with wiring instructions. Plaintiff executed these agreements, wired to

11   Defendants his $375,000.00 and was ultimately accepted into Four Star later that

12   month and received documentation of his securities investment. These units

13   purchased by Plaintiff are securities as defined by applicable federal law.

14       22. In reality, Defendants' numerous representations were false. Not only

15   was none of Plaintiff's investment deployed into any telecommunications

16   investment vehicle, Four Star did not conduct any further business of this sort upon

17   receipt of Plaintiff's investment and, instead, took the funds pursuant to

18   Defendants' fraudulent and unlawful scheme to meet mounting non-disclosed

19   debts and liabilities (including criminal liabilities) of Four Star and certain of its

20   controlling individuals. Unbeknownst to Plaintiff, Four Star was in financial

21   disarray at the time Defendants fraudulently induced Plaintiff to invest his money

22   and Plaintiff's money was ostensibly used to temporarily fund liquidity shortfalls

23   and/or attempt to abate substantial non-disclosed liabilities. In essence,

24   Defendants robbed Peter (Plaintiff) to pay Paul.

25       23. Defendants, and each of them, have to this date continued their

26   misrepresentations and attempted cover-up of their intentional material

27   misrepresentations and omissions via inaccurate and incomplete communications

28

1   to Plaintiff concerning criminal proceedings and the locations and liquidity of the

2   sums traced to Plaintiff's investment.

3       24.  Defendants' actions as alleged herein constitute violations of the

4   Exchange Act, the Securities Act, RICO and other laws as specified herein below.

5                        **FIRST CAUSE OF ACTION**

6   **VIOLATIONS OF SECTIONS 20(a) AND 10(b) EXCHANGE ACT, RULE**

7              **10b-5 PROMULGATED THEREUNDER**

8       25.  Plaintiff incorporates herein by reference paragraphs 1 - 24 of the

9   Complaint.

10      26.  Defendants, and each of them, carried out a plan, scheme and course

11  of conduct that was intended to and did deceive Plaintiff into purchasing securities

12  as alleged herein.  In furtherance of this unlawful scheme, plan and course of

13  conduct, Defendants, and each of them, took the actions set forth herein.

14      27.  These Defendants, and each of them, employed devices, schemes and

15  artifices to defraud, made untrue statements of material fact and/or omitted to state

16  material facts necessary to make the statements not misleading, and engaged in

17  acts, practices and a course of business which operated as a fraud and deceit upon

18  Plaintiff who purchased units of Four Star based on these representations and

19  omissions, including misrepresentations regarding the purported

20  telecommunications nature of the securities and contingent liabilities in violation

21  of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated there under.

22      28.  Defendants' material misrepresentations and/or omissions were made

23  knowingly or recklessly and for the purpose and effect of inducing Plaintiff to

24  purchase units of the Four Star security.  The Defendants, and each of them, had no

25  reasonable basis for their many misrepresentations and, indeed, based on their

26  abject and demonstrable falsity intentionally used them in their scheme to

27  intentionally defraud Plaintiff.  Scienter is manifest.  The Defendants, and each of

28  them, also failed to disclose material, adverse information about Four Star, its

---

FIRST AMENDED COMPLAINT - 13

1  financial condition and its controlling individuals which they possessed as part of
2  their scheme to intentionally defraud Plaintiff.
3       29.  As a result of the dissemination of the materially false and misleading
4  information and failure to disclose material facts as set forth herein, Four Star
5  securities were falsely represented to be an active telecommunications investment
6  vehicle when, in fact, it was not.  Likewise, material liabilities were not disclosed
7  as herein alleged.  In ignorance of these facts and reasonably relying directly upon
8  the Defendants' false and misleading statements and in the absence of material
9  adverse information that was known to Defendants but not disclosed to Plaintiff,
10  Plaintiff purchased $375,000.00 worth of units of Four Star thinking that the
11  security was a hedged telecommunications investment vehicle when it was, in
12  point of fact, not and thinking that certain material liabilities not disclosed did not
13  exist.
14       30.  At the time of said misrepresentations and omissions, Plaintiff was
15  ignorant of their falsity and believed them to be true.  Had Plaintiff known of the
16  omitted material facts – including that Four Star was not actually using his
17  investment in connection with any hedged telecommunications investment vehicle
18  and was, contrary to financial statements and previous representations, in dire
19  financial straights – Plaintiff would not have purchased or otherwise acquired his
20  units of Four Star at all.
21       31.  Plaintiff was injured because the risks that materialized were risks of
22  which he was unaware as a result of the Defendants' misrepresentations, omissions
23  and other fraudulent conduct alleged herein.  Absent Defendants' fraudulent
24  conduct, Plaintiff would not have been injured.
25       32.  By virtue of the foregoing, Defendants each violated Section 10(b) of
26  the Exchange Act and Rule 10b-5 promulgated there under.
27       33.  As detailed above, defendants Anson, Garrett, Cohn and Anson,
28  Garrett & Co. were controlling persons of defendant Four Star within the meaning

FIRST AMENDED COMPLAINT - 14

1  of Section 20(a) of Exchange Act. These defendants were controlling persons of
2  Four Star because each had the influence over Four Star to cause and did cause
3  Four Star to engage in the wrongful conduct complained of herein and although
4  each had the power to have prevented Four Star from engaging in the unlawful
5  conduct alleged herein, it purposely and intentionally did not use that power to do
6  so. Accordingly, as controlling persons of Four Star, each of these other
7  defendants is liable to the same extent as Four Star pursuant to Section 20(a).
8      34. As a direct and proximate result of Defendants' wrongful conduct,
9  Plaintiff suffered damages.

10                    **SECOND CAUSE OF ACTION**
11            **VIOLATIONS OF THE SECURITIES ACT OF 1933**
12      35. Plaintiff incorporates herein by reference paragraphs 1 - 34 of the
13  Complaint.
14      36. Defendants violated Section 12 of the Securities Act of 1933 because
15  they marketed and sold to Plaintiff a security using the mails and other instruments
16  of interstate commerce, using a prospectus (including the PPM and other written
17  communications) without filing a registration or, on information and belief, no
18  falling within a lawful safe harbor.
19      37. This lack of registration deprived Plaintiff of all the protections and
20  oversight afforded him pursuant to federal securities regulations and agencies.
21      38. Accordingly, Plaintiff has the right of rescission with respect to the
22  $375,000.00 he invested and seeks such relief pursuant to the Securities Act.

23                     **THIRD CAUSE OF ACTION**
24  **VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT**
25                  **ORGANIZATIONS ACT (RICO)**
26      39. Plaintiff incorporates herein by reference paragraphs 1 - 38 of the
27  Complaint.
28

40. Both Four Star and Anson, Garrett & Co. were and each are a business enterprise as defined by 18 USC §1961(4), which such section is part of that federal act commonly known as Racketeer Influenced and Corrupt Organization Act ("RICO"). Each of these enterprises was dominated and controlled by defendants Anson, Cohn, Garrett and Does 1 – 5, who are also RICO defendants.

41. Plaintiff's investment as herein alleged was accomplished by each of the defendants engaging in racketeering activity in that:

- As provided for in 18 USC §1961(1)(D), the sale and offer to sell to Plaintiff securities was proximately caused and accompanied by fraud as alleged herein, and in violation of the Exchange Act.

- The sale and offer to sell to Plaintiff securities was made pursuant to a related and non-disclosed criminal enterprise for which defendants Four Star and Cohn have been convicted and which each of the defendants have attempted to obfuscate and cover-up from Plaintiff.

- The offering for sale and sale of the aforementioned securities required qualification or a permit under the law of the State of California and registration with the Securities and Exchange Commission under the law of the United States. However, on information and belief, neither the offer nor sale of any security purchased by plaintiff herein was qualified by the Commissioner of Corporations of the State of California, nor by the Securities & Exchange Commission, and thus, the offer to sell and the sale of the securities violated both state and federal securities law as alleged herein.

42. More specifically, defendant Mark Cohn participated in the aforementioned racketeering conduct, including but not limited to, as follows:

  (a) On or about September 13, 2002, in the office of Mark Cohn, in San Francisco, CA, as alleged herein in paragraph 18, defendant Cohn met with the Plaintiff to explain Four Star's purported business model. Defendant Cohn reiterated to the Plaintiff that the principle business investment of Four Star was hedged telecommunications investment arbitrage. Because these investments were hedged, defendant Cohn specified that the risk was minimal, and that it was a profitable enterprise for Four Star and its members. Defendant Cohn explained in detail the strategy and mechanics of certain of the international telephone arbitrage investment vehicles and stated that since the strategy employed offsetting contracts with international telecommunications carriers, the primary risk was the time required to collect receivables, since the long distance carriers were sometimes slow and inefficient (albeit credit-worthy) in paying their credit obligations. Defendant Cohn also assured the Plaintiff that his capital was being deployed explicitly in phone arbitrage transactions. These representations were false and made with the knowledge of their falsity with the intent to deceive and mislead the Plaintiff. Specifically, defendant Cohn omitted information concerning the criminal liabilities of himself and Four Star, and mounting personal and corporate debts, and that Four Star was, in fact, a sham "ponzi" scheme, not an actual investment vehicle;

  (b) On or about September 27, 2002, in the Four Star offices, in Brisbane, CA, as alleged herein in paragraph 18, defendant

FIRST AMENDED COMPLAINT - 17

1   Cohn faxed Plaintiff Four Star's purported December 31, 2001
2   balance sheets on Four Star stationary. Balance sheets showed
3   that there was $39+ million in arbitrage income receivable.
4   Based on subsequent revelations, however, Plaintiff discovered
5   on his own that the "Notes Receivable" were seriously
6   impaired at that point. In addition, the "Statement of Changes
7   of Members' Equity" showed distributions to Members of
8   $15.87 million, depicting liquidity and financial health. These
9   representations were false and made by defendant Cohn with
10   the knowledge of their falsity and with the intent to deceive and
11   mislead the Plaintiff to believe that Four Star was financially
12   healthy, when, in fact, it was dealing with mounting debts and
13   liabilities and, in fact, was not, in actuality, a functioning
14   investment vehicle but, rather a tool for fraud;

15   (c) As alleged herein in paragraph 16, defendant Cohn was charged
16   and convicted of criminal conduct stemming from activities
17   relating to Four Star Financial Services, LLC;

18   (d) As alleged herein in paragraph 21, defendant Cohn knowingly
19   made material misrepresentations to the Plaintiff with the intent
20   to deceive the Plaintiff. The Plaintiff relied on these fraudulent
21   representations, and was thereby induced into contributing
22   substantial capital to Four Star Financial Services, LLC.

23   (e) As alleged herein in paragraph 5, defendant Cohn, as the
24   Executive Vice-President, General Counsel and Manager of
25   Defendant Four Star Financial Services, was a controlling
26   individual of Four Star. All actions attributable to defendant
27   Four Star are the result of decisions made, at least in part, by
28   defendant Cohn. As such, defendant Cohn is liable as a co-

FIRST AMENDED COMPLAINT - 18

1    conspirator and/or aider and abettor and/or alter-ego of Four

2    Star Financial Services;

3    (f) Plaintiff is informed and believes, and thereupon alleges, that

4    defendant Mark Cohn has destroyed relevant documentation

5    and evidence relevant to the Plaintiff's RICO claim, and

6    further, defendant Mark Cohn has concealed and obfuscated

7    documentation relevant to the Plaintiff's RICO claim.

8    43.    More specifically, defendant Jack Garrett participated in the

9    aforementioned fraudulent conduct, including but not limited to, as

10    follows:

11    (a) On or about July 2002, in the offices of Anson, Garrett &

12    Co./Four Star Financial Services, in Los Angeles, CA, as

13    alleged herein in paragraph 18, defendant Garrett met with the

14    Plaintiff and reiterated the business plan and direction of Four

15    Star. Defendant Garrett told the Plaintiff that his capital was

16    being deployed explicitly in phone arbitrage transactions.

17    Defendant Garrett also assured the Plaintiff that the investment

18    was hedged and/or secured and a minimal risk. Garrett also

19    represented that a recent sale of a telecommunications arbitrage

20    investment portfolio represented a major gain to Four Star,

21    equating to over three times the capital invested and an

22    injection of liquidity exceeding $150 million. Defendant

23    Garrett gave the Plaintiff the Private Placement Memorandum

24    for Four Star Financial Services, LLC. Defendant Garrett

25    never told the Plaintiff that Garrett and Defendant Anson had

26    been advancing capital to Four Star or that there were any other

27    contingent liabilities. Further, defendant Garrett failed to

28    disclose to the Plaintiff that Four Star was experiencing cash

flow difficulties at the time or that Four Star and defendant Cohn were under criminal investigation. Despite the representations of defendant Garrett to that effect, none of the capital that the Plaintiff invested was utilized in phone arbitrage transactions. Instead, Plaintiff's investment was used to meet mounting non-disclosed debts and liabilities (including criminal liabilities) of Four Star and certain of its controlling individuals;

(b) On or about June 18, 2003, in the offices of Anson, Garrett & Co./Four Star Financial Services, in Los Angeles, CA, defendant Garrett sent a letter to investors disclosing, in part, the criminal investigation of defendants Cohn and Four Star. This letter said that Four Star first disclosed the criminal investigation in a letter on July 3, 2001. The Plaintiff, however, was never was told about that in the aforementioned July 2002 meeting with defendants Garrett and Anson on behalf of Four Star and Anson, Garrett & Co. This letter also reassured investors that Four Star has more than enough assets to protect the investors. These representations were false and made by defendant Garrett with the knowledge of their falsity and with the intent to deceive and mislead the Plaintiff to believe that Four Star was financially healthy, when it was in fact incurring mounting debts and liabilities, including criminal penalties;

(c) On or about the end of May 2003, defendant Garrett called the Plaintiff to see if the Plaintiff wanted to invest in another arbitrage. This was nearly two years after the criminal investigations into defendants Cohn and Four Star, yet Garrett

FIRST AMENDED COMPLAINT - 20

1    continued to solicit for money without fully and accurately

2    disclosing to the Plaintiff the criminal history of his partners,

3    Four Star Financial Services, LLC, and Anson, Garrett & Co.

4    and the fact that the moneys he fraudulently sought were for his

5    and his co-conspirators' personal benefit and not to be

6    employed in any investment vehicle;

7    (d)As alleged herein in paragraph 21, defendant Garrett knowingly

8    made material misrepresentations to the Plaintiff with the intent

9    to deceive the Plaintiff. The Plaintiff relied on these fraudulent

10    representations, and was thereby induced into contributing

11    substantial capital to Four Star Financial Services, LLC.

12    (e)As alleged herein in paragraph 5, defendant Garrett, as the

13    President and Manager of defendant Four Star Financial

14    Services, was a controlling individual of Four Star. All actions

15    attributable to defendant Four Star are the result of decisions

16    made, at least in part, by defendant Garrett. As such, defendant

17    Garrett is liable as a co-conspirator and/or aider and abettor

18    and/or alter-ego of Four Star Financial Services;

19    (f) As alleged herein in paragraph 5, defendant Garrett was a

20    controlling individual of Anson, Garrett & Co. All actions

21    attributable to defendant Anson, Garrett & Co. are the result of

22    decisions made, at least in part, by defendant Garrett. As such,

23    defendant Garrett is liable as a co-conspirator and/or aider and

24    abettor and/or alter-ego of Anson, Garrett & Co.;

25    (g)Plaintiff is informed and believes, and thereupon alleges, that

26    defendant Jack Garrett has destroyed relevant documentation

27    and evidence relevant to the Plaintiff's RICO claim, and

28

1    further, defendant Jack Garrett has concealed and obfuscated

2    documentation relevant to the Plaintiff's RICO claim.

3    44.   More specifically, defendant Ronald Anson participated in the

4    aforementioned racketeering conduct, including but not limited to,

5    as follows:

6    (a) On or about July 2002, in the offices of Anson, Garrett &

7    Co./Four Star, in Los Angeles, CA, as alleged herein in

8    paragraph 18, defendant Anson met with the Plaintiff and

9    reiterated the business plan and direction of Four Star.

10   Defendant Anson told the Plaintiff that his capital was being

11   deployed explicitly in phone arbitrage transactions. Anson also

12   assured the Plaintiff that the investment was hedged and/or

13   secured and a minimal risk. Anson also represented that a

14   recent sale of a telecommunications arbitrage investment

15   portfolio represented a major gain to Four Star, equating to

16   over three times the capital invested and an injection of

17   liquidity exceeding $150 million. Defendant Anson never told

18   the Plaintiff that Anson and defendant Garrett had been

19   advancing capital to Four Star or that there were any other

20   contingent liabilities. Further, defendant Anson failed to

21   disclose to the Plaintiff that Four Star was experiencing cash

22   flow difficulties at the time or that Four Star and defendant

23   Cohn were under criminal investigation. Despite the

24   representations of defendant Anson, none of the capital that the

25   Plaintiff invested was utilized in phone arbitrage transactions,

26   and was instead used to meet mounting non-disclosed debts and

27   liabilities (including criminal liabilities) of Four Star and

28   certain of its controlling individuals;

FIRST AMENDED COMPLAINT - 22

(b) As alleged herein in paragraph 21, defendant Anson knowingly made material misrepresentations to the Plaintiff with the intent to deceive the Plaintiff. The Plaintiff relied on these fraudulent representations, and was thereby induced into contributing substantial capital to Four Star Financial Services, LLC.

(c) As alleged herein in paragraph 5, defendant Anson, as the Chief Financial Officer and Manager of defendant Four Star Financial Services, was a controlling individual of Four Star. All actions attributable to defendant Four Star Financial Services are the result of decisions made, at least in part, by defendant Anson. As such, defendant Anson is liable as a co-conspirator and/or aider and abettor and/or alter-ego of Four Star Financial Services;

(d) Defendant Anson was a controlling individual of Anson, Garrett & Co. All actions attributable to defendant Anson, Garrett & Co. are the result of decisions made, at least in part, by defendant Anson. As such, defendant Anson is liable as a co-conspirator and/or aider and abettor and/or alter-ego of Anson, Garrett & Co.;

(e) Plaintiff is informed and believes, and thereupon alleges, that defendant Ronald Anson has destroyed relevant documentation and evidence relevant to the Plaintiff's RICO claim, and further, defendant Ronald Anson has concealed and obfuscated documentation relevant to the Plaintiff's RICO claim.

45. More specifically, defendant Anson, Garrett & Co. participated in the aforementioned racketeering conduct, including, but not limited to, as follows:

1      (a) On or about December 5, 2002, in the offices of Anson, Garrett

2      & Co., in Los Angeles, CA, as alleged herein in paragraph 18,

3      along with a cover letter, defendant Anson, Garrett & Co.

4      signed, prepared, and mailed balance sheets of Four Star

5      Financial Services, as of September 30, 2002, and related

6      statements of income and changes in members' equity.  The

7      information constitutes a series of fraudulent

8      misrepresentations in that defendant Anson, Garrett & Co.

9      provided false financial statements and other false accounting

10      records.  For instance, the "Statement of Changes of Members'

11      Equity" shows distributions to members of $14.24 million,

12      depicting liquidity and financial health.  Further, the balance

13      sheet shows $77 million of net equity, indicating more than

14      adequate liquidity and underlying value.  These representations

15      were false and made by defendant Anson, Garrett & Co. with

16      the knowledge of their falsity and with the intent to deceive and

17      mislead the Plaintiff to believe that Four Star was financially

18      healthy, when it was in fact incurring mounting debts and

19      liabilities;

20      (b) On or about June 18, 2003, in the offices of Four Star Financial

21      Services, in Los Angeles, CA, defendant Garrett, controlling

22      individual of Anson, Garrett & Co., sent a letter to investors

23      disclosing the criminal investigation of defendants Cohn and

24      Four Star.  This letter said that Four Star first disclosed the

25      criminal investigation in a letter on July 3, 2001.  Defendants

26      Garrett and Anson on behalf of Four Star and Anson, Garrett &

27      Co., however, never verbalized this information to the Plaintiff

28      in the aforementioned July 2002 meetings.  This letter also

reassured investors that Four Star has more than enough assets to protect the investors. This representation was false and made by defendant Anson, Garrett & Co. with the knowledge of its falsity and with the intent to deceive and mislead the Plaintiff to believe that Four Star was financially healthy, when it was in fact incurring mounting debts and liabilities;

(c) As alleged herein in paragraph 21, defendant Anson, Garrett & Co. knowingly made material misrepresentations to the Plaintiff with the intent to deceive the Plaintiff. The Plaintiff relied on these fraudulent representations, and was thereby induced into contributing substantial capital to Four Star Financial Services, LLC.

(d) Plaintiff is informed and believes, and thereupon alleges, that defendant Anson, Garrett & Co. has destroyed relevant documentation and evidence relevant to the Plaintiff's RICO claim, and further, defendant Anson, Garrett & Co. has concealed and obfuscated documentation relevant to the Plaintiff's RICO claim.

46. More specifically, defendant Four Star Financial Services, LLC participated in the aforementioned racketeering conduct, including but not limited to, as follows:

(a) On or about September 27, 2002, in the offices of Four Star Financial Services, Brisbane, CA, on Four Star stationary, defendant Cohn faxed the Plaintiff Four Star's purported December 31, 2001 balance sheets. The balance sheets showed that there was $39+ million in arbitrage income receivable. Based on subsequent revelations, however, Plaintiff discovered on his own that "Notes Receivable" were seriously impaired at

that point. In addition, the "Statement of Changes of Members'
Equity" showed distributions to members of $15.87 million,
depicting liquidity and financial health. These representations
were false and made by defendant Four Star Financial Services
with the knowledge of their falsity and with the intent to
deceive and mislead the Plaintiff to believe that Four Star was
financially healthy, when it was in fact incurring mounting
debts and liabilities;

(b) On or about July 2002, in the offices of Four Star Financial
Services, Los Angeles, CA, as alleged herein in paragraphs 13-
17, defendant Four Star Financial Services provided the
Plaintiff its Private Placement Memorandum. The PPM was
dated June 23, 1999, yet continued to be mailed to potential
investors up until, at least, July 2002, when it was sent to the
Plaintiff. This was fraudulent, misleading and deceptive in that
the PPM omitted certain it omitted substantial material
liabilities, contingencies and legal issues including without
limitation the following:

- Criminal conduct of Four Star and Mark Cohn ultimately
  leading to convictions;
- An accurate disclosure without material omissions
  regarding the investigation of criminal conduct of Four
  Star and Mark Cohn ultimately leading to convictions
  and financial devastation of Four Star;
- Devastating cash flow and liquidity issues surrounding
  Four Star's purported equity arising from what was later
  explained by Defendants to be a liquidity shortfall related
  to delays in securing the cash proceeds from the previous

sale of Four Star's telephone arbitrage portfolio to an international bank that were collateralized by certificates of deposit held by an Argentine bank. (Not only was this purported liquidity shortfall not disclosed, but the sale of the telephone arbitrage portfolio was previously expressly mischaracterized by Defendants to Plaintiff as a significant windfall for Four Star);

- That the alleged capital to be received by Four Star through the purported sale of the telephone arbitrage portfolio and imminent conversion of the certificates of deposit located in Argentina into cash still only represented about 50% to 60% of the capital obligations that Four Star has to investors. Consequently, Plaintiff was fraudulently induced to invest in as instrument that comprised an immediate and significant liquidity discount to the capital invested, in essence, a sinking ship. (The last report from Defendants to Plaintiff purports that the proceeds from the purported Argentine certificates of deposit have not been recovered and details surrounding the sale of Four Star's telecommunications portfolio are vague, including the fact that the definitive legal documentation memorializing the purported transaction has not been located);

- That the new capital received from Plaintiff would not be used for purposes as expressly explained in the PPM and by the Defendants to Plaintiff (i.e., hedged telecommunications investment) and would instead be diverted to meet other non-disclosed liabilities and

liquidity shortfalls as well as personal liabilities and cashflow needs of the other defendants;

- Advances to Four Star by controlling individuals to meet mounting nondisclosed Four Star debts, liabilities and other operating obligations prior to Plaintiff's investment and fraudulent inducement as explained herein;

- Various other civil claims and contingent liabilities against Four Star and its managers;

- The actual or attempted withdrawal and/or rescission of numerous other member investors based on newly discovered liabilities and/or the deteriorating financial condition of Four Star;

- That the Four Star investors were forced to begin accruing current interest payments (that had been paid previously on a current basis) due to Four Star's accelerating liquidity problems;

- Insolvency issues involving Four Star, including a study initiated by Qwest Communications as a judgment creditor of Four Star which resulted in an insolvency opinion regarding Four Star; and

- The PPM also provided summary descriptions of management experience and managers, including defendants Anson, Garrett and Cohn, but omitted mention of criminal conduct and/or known investigation into criminal conduct of controlling individual Mark Cohn and Four Star itself or any record of current or previous financial defaults, liabilities and debts of the managers.

(c) As alleged herein in paragraph 21, defendant Four Star Financial Services, LLC knowingly made material misrepresentations to the Plaintiff with the intent to deceive the Plaintiff. The Plaintiff relied on these fraudulent representations, and was thereby induced into contributing substantial capital to Four Star Financial Services, LLC.

(d) Plaintiff is informed and believes, and thereupon alleges, that defendant Four Star Financial Services, LLC has destroyed relevant documentation and evidence relevant to the Plaintiff's RICO claim, and further, defendant Four Star Financial Services, LLC has concealed and obfuscated documentation relevant to the Plaintiff's RICO claim.

47. The sale and offer to sell such securities affected interstate commerce in that each such security represented a fractional interest in business enterprises outside of the State of California. The offer to sell, fraudulent misrepresentations and failures and omissions by Defendants as alleged in this Complaint were perpetrated, in part, through the use of public telephone lines, email, financial wire transmissions, international and interstate "ponzi" schemes and the mail.

48. Thus, these fraudulent misrepresentations and failures and omissions to state and disclose to Plaintiffs material facts with respect to his investment as alleged in this Complaint constitutes wire fraud under 18 USC §1343. The Defendants also committed mail fraud as defined in 18 USC §1341 in that each offer to sell and each sale of each investment unit to Plaintiff as alleged herein was a device which used the United States Mails and/or other instruments of interstate commerce to perpetrate the fraudulent scheme as alleged in this Complaint. The Defendants have engaged in the aforementioned racketeering activities from at least July 2002 (when Plaintiff first came in contact with Defendants) to present and have actively participated in the aforementioned criminal conduct through

1   soliciting, organizing and receiving money for use by each of the aforementioned
2   enterprises.

3       49.  The Defendants, and each of them, are guilty of racketeering in
4   violation of 18 USC §1962(a), based on their fraudulent conduct and the predicate
5   acts of securities fraud as alleged herein.

6       50.  Defendants continue their aforementioned racketeering scheme to date
7   by, without limitation, conducting further fraudulent racketeering operations
8   through Four Star Financial Services, LLC and, on information and belief, seeking
9   new "investors" for their "ponzi" scheme. Defendants continue to deceive and
10  defraud remaining investors, including Plaintiff, in violation of securities law of
11  the State of California and the federal securities laws, and in violation of laws
12  against wire fraud and mail fraud, by fraudulent misuse of investor capital. This
13  continued fraudulent misuse of capital in interstate commerce, obfuscation and
14  deception regarding purported investments and equity, and possession of
15  fraudulently obtained capital remains racketeering.

16      51.  On or about the end of May 2003, defendant Jack Garrett on behalf of
17  himself and each of the other defendants asked if the Plaintiff wanted to invest
18  more money in another arbitrage, less than a month before sending a letter to
19  investors informing them of the criminal investigations into defendants Cohn and
20  Four Star. Plaintiff is informed and believes that this arbitrage was either, like
21  Four Star, a sham, "ponzi" investment scheme or a scheme by and through Four
22  Star Financial Services, LLC.

23      52.  There is a continuity in such racketeering activity in that from at least
24  July 2002 to the present, Defendants have solicited clients including repeatedly
25  soliciting Plaintiff, raised money, formed enterprises, and dominated and
26  controlled such enterprises in an illegal manner as alleged in this Complaint with
27  the victims of this racketeering activity continuing to be clients and supposed
28  fiduciaries. Defendants, by virtue of continuing false representations and cover-

FIRST AMENDED COMPLAINT - 30

1  ups of liabilities and criminal behavior continue to engage in such unlawful
2  conduct and it is likely that they will continue to engage in such unlawful conduct
3  in the future.

4       53.  The Defendants, and each of them, benefited directly and indirectly
5  from the aforementioned pattern of racketeering activity in that they received, used
6  or invested the money derived from the pattern of racketeering activity for their
7  own use and benefit and to the detriment of Plaintiff and others.  By remaining in
8  control of the money received from Plaintiff and others, Defendants each continue
9  to benefit from this racketeering activity.

10      54.  Plaintiff was directly injured by the wrongful acts of the Defendants,
11 and each of them, in his business and property by reason of the violation of 18
12 USC §1962 in that defendants, and each of them:

13      •  in violation of 18 USC §1962, received income derived,
14         directly or indirectly, from the pattern of racketeering activity
15         which was used to invest, directly or indirectly, or some part
16         of such income, or the proceeds of such income, in the
17         acquisition of interests in, or the establishment or operation
18         of, enterprises which engaged in, or affected, interstate
19         commerce as herein alleged;

20      •  through the pattern of racketeering activity as herein alleged,
21         directly or indirectly, acquired or maintained an interest in or
22         control of Four Star and/or Anson, Garrett & Co. which
23         engaged in, or activities which affected, interstate commerce;
24         and

25      •  through a pattern of racketeering activity, engaged in
26         activities which involved or affected interstate commerce and
27         participated, either directly or indirectly, in the conduct of
28         such enterprises.

1    55. Plaintiff was directly injured by the wrongful acts of the Defendants,
2  and each of them, by reason of the violations of 18 USC §1962(a) and by virtue of
3  the wrongful acts committed by the Defendants, and each of them, as herein
4  alleged. Said wrongful acts proximately damaged Plaintiff, as herein alleged, in
5  the sum of at least $375,000.00, plus additional sums according to proof.
6    56. Plaintiff is entitled to a judgment in said amount together with interest
7  thereon at the maximum rate from the date the investment was made until present
8  at the maximum rate, and is further entitled under RICO to:

9        • to have the actual damages trebled;
10       • to have a constructive trust imposed upon all proceeds
11         derived by the Defendants, and each of them, as a result of
12         their unlawful conduct as provided for in 18 USC §1961 et
13         seq.;
14       • to recover his cost of investigation of the fraudulent scheme
15         and costs of litigation, expert costs and attorney's fees
16         incurred herein;
17       • the forfeiture by the Defendants, and each of them, of all
18         their wrongfully acquired assets and income which can be
19         traced from the proceeds of said wrongful acts and conduct
20         as herein alleged.

21                     **FOURTH CAUSE OF ACTION**
22                     **FRAUD IN THE INDUCEMENT**
23    57. Plaintiff incorporates herein by reference paragraphs 1 - 56 of the
24  Complaint.
25    58. The Defendants, and each of them, as detailed herein made certain
26  wrongful and false representations and omissions to Plaintiff with the intent to
27  induce Plaintiff into entering into their investment scheme, sign a subscription and
28  operating agreement and, ultimately wire to Defendants $375,000.00.

FIRST AMENDED COMPLAINT - 32

59. At the time of making these representations and taking these actions, the Defendants knew or should have known such representations were false and misleading.

60. The Defendants, and each of them, wrongfully profited, and continue to profit, from these fraudulent and/or deceptive actions.

61. Plaintiff reasonably relied on the aforementioned representations and omissions of Defendants in entering into the investment relationship.

62. As a direct and proximate result of these wrongful and false representations and omissions and Plaintiff's reliance thereon, Plaintiff was induced to enter into an unlawful investment scheme and has been damaged in an amount according to proof at trial.

63. In doing the acts herein alleged, the Defendants, and each of them, were personally and individually guilty of oppression, malice, fraud and despicable conduct directed to Plaintiff in conscious disregard of Plaintiff's rights. The acts alleged herein were known to, authorized and ratified by the Defendants, and each of them. Plaintiff is thus entitled to recover punitive damages from the Defendants, and each of them, in an amount according to proof.

## FIFTH CAUSE OF ACTION

## FRAUD AND DECEIPT

64. Plaintiff incorporates herein by reference paragraphs 1 - 63 of the Complaint.

65. The Defendants, and each of them, as alleged herein made certain wrongful and false representations and omissions to Plaintiff in conjunction with their herein described fraudulent scheme.

66. At the time of making these representations and taking these actions, the Defendants knew or should have known such representations were false.

67. The Defendants, and each of them, wrongfully profited, and continue to profit, from these fraudulent and/or deceptive actions.

1    68.  Plaintiff reasonably relied on the aforementioned representations and

2    omissions of Defendants.

3    69.  As a direct and proximate result of these wrongful and false

4    representations and omissions and Plaintiff's reliance thereon, Plaintiff has been

5    damaged in an amount according to proof at trial.

6    70.  In doing the acts herein alleged, the Defendants, and each of them,

7    were personally and individually guilty of oppression, malice, fraud and despicable

8    conduct directed to Plaintiff in conscious disregard of Plaintiff's rights.  The acts

9    alleged herein were known to, authorized and ratified by the Defendants, and each

10   of them.  Plaintiff is thus entitled to recover punitive damages from the

11   Defendants, and each of them, in an amount according to proof.

12   ## SIXTH CAUSE OF ACTION

13   ## BREACH OF FIDUCIARY DUTIES

14   71.  Plaintiff incorporates herein by reference paragraphs 1 - 70 of the

15   Complaint.

16   72.  As managers and officers of Four Star, defendants Anson, Garrett and

17   Cohn owed member Plaintiff fiduciary duties at relevant times.  As a professional

18   accounting firm providing account balance statement information to Plaintiff and

19   to Four Star, defendant Anson, Garrett & Co. (and its controlling persons

20   defendants Anson and Garrett) also owed Plaintiff fiduciary duties at relevant

21   times.

22   73.  Based on these defendants' misrepresentations, deceptive statements

23   and other intentional conduct to the detriment of Plaintiff, as herein alleged in

24   detail, these defendants breached their fiduciary duties to Plaintiff.

25   74.  As a direct and proximate result of these breaches of fiduciary duty,

26   Plaintiff has been damaged in an amount according to proof at trial.

27   75.  In doing the acts herein alleged, the Defendants Anson, Garrett, Cohn

28   and Anson, Garrett & Co. were personally and individually guilty of oppression,

FIRST AMENDED COMPLAINT - 34

1  malice, fraud and despicable conduct directed to Plaintiff in conscious disregard of
2  Plaintiff's rights.  The acts alleged herein were known to, authorized and ratified
3  by each of these defendants.  Plaintiff is thus entitled to recover punitive damages
4  from each of these defendants in an amount according to proof.

5  ## SEVENTH CAUSE OF ACTION
6  ## NEGLIGENCE

7    76.  Plaintiff incorporates herein by reference paragraphs 1 - 24 of the
8  Complaint.

9    77.  As an accounting firm providing professional statements and balance
10  information to Plaintiff, defendant Anson, Garrett & Co. and its controlling
11  persons, including defendants Anson and Garrett, at relevant times owed a duty to
12  Plaintiff to use reasonable care and professional competence.

13    78.  Defendant Anson, Garrett & Co. and its controlling persons, including
14  defendants Anson and Garrett, made certain accounting representations to Plaintiff
15  (including but not limited to oral representations, written representations, balance
16  sheets and financial statements) without any reasonable basis for believing them to
17  be true at the time that they were made and, in addition, failed to take corrective
18  action when the untruths became manifest as alleged herein.  Thus, these
19  defendants breached their duties to Plaintiff.

20    79.  Plaintiff reasonably relied upon these professional representations of
21  Anson, Garrett & Co. and its controlling persons and, based thereon, entered into
22  the investment scheme as herein alleged.

23    80.  As a direct and proximate result of these negligent misrepresentations,
24  Plaintiff has suffered damages in an amount according to proof as herein alleged.

25    81.  In doing the acts herein alleged, defendants Anson, Garrett & Co. and
26  defendants Anson and Garrett were personally and individually guilty of
27  oppression, malice, fraud and despicable conduct directed to Plaintiff in conscious
28  disregard of Plaintiff's rights.  The acts alleged herein were known to, authorized

FIRST AMENDED COMPLAINT - 35

1  and ratified by each of these defendants.  Plaintiff is thus entitled to recover

2  punitive damages from each of these defendants in an amount according to proof.

3  ## EIGHTH CAUSE OF ACTION

4  ## UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA

5  ## BUSINESS AND PROFESSIONS CODE § 17200

6  82.  Plaintiff incorporates herein by reference paragraphs 1 - 81 of the

7  Complaint.

8  83.  Beginning at an exact date unknown to Plaintiff but at least since July

9  2002, the Defendants have committed acts of unfair business practices, as defined

10  by Business and Professions Code § 17200 *et seq.*, by engaging in, among other

11  unfair and unlawful practices, practices in violation of federal securities laws and

12  fraudulent practices as alleged herein.

13  84.  These acts and practices violate Business and Professions Code §

14  17200 because they are unlawful pursuant to federal and California regulations

15  including the Exchange Act, the Securities Act and RICO and are unfair,

16  fraudulent and deceptive.

17  85.  The unlawful, unfair and/or fraudulent business practices of

18  Defendants thus constitute unlawful business acts or practices within the meaning

19  of Business and Professions Code § 17200.

20  86.  As a direct and proximate result of the aforementioned acts, the

21  Defendants received and continue to hold ill-gotten gains resulting from their

22  herein alleged conduct which properly belongs to Plaintiff.  Plaintiff, accordingly,

23  seeks restitution of all such gains and injunctive relief halting Defendants'

24  unlawful business enterprise.

25  ## PRAYER

26  Plaintiff Steve Gevirtz prays for relief as follows:

27  1.    For the First Cause of Action: (1) a finding that Defendants violated

28        Section 10(b) of the Exchange Act and Rule 10b-5 promulgated there

1  under by their acts and omissions as alleged in this Complaint; (2) an
2  award of damages with interest therein; (3) an order rescinding the
3  fraudulently induced transaction and returning Plaintiff his $375,000
4  plus interest; (4) an award of costs and expenses of this action,
5  including reasonable attorneys' fees, expert fees and other costs and
6  disbursements; and (5) any further relief as may be just and proper
7  under the circumstances.

8    2.   For the Second Cause of Action: (1) a finding that Defendants
9  unlawfully failed to register the securities ultimately purchased by
10  Plaintiff; (2) an award of $375,000.00 plus interest representing
11  rescission of Plaintiff's investment; (3) an award of costs and
12  expenses of this action, including reasonable attorneys' fees, expert
13  fees and other costs and disbursements; and (4) any further relief as
14  may be just and proper under the circumstances.

15    3.   For the Third Cause of Action: (1) damages under RICO in the
16  amount of at least $375,000.00 and that said sum should be trebled as
17  provided in RICO, plus additional sums according to proof at time of
18  trial, together with interest thereon at the maximum rate from the date
19  each investment was made; (2) that a constructive trust be imposed on
20  all the proceeds derived from the racketeering activities and unlawful
21  conduct of the Defendants, and each of them; (3) an injunction halting
22  Defendants' unlawful enterprise; (4) for all costs of investigation of
23  the racketeering activities and for all litigation costs attorney's fees
24  incurred herein; and for a forfeiture by the Defendants, and each of
25  them, of their wrongfully acquired assets and income under 18 USC
26  §1964(a) and (c); and (5) any further relief as may be just and proper
27  under the circumstances.

28

4.  For the Fourth Cause of Action: (1) damages according to proof; (2) punitive damages; (3) a rescission order; (4) interest at the maximum legal rate; and (5) any further relief as may be just and proper under the circumstances.

5.  For the Fifth Cause of Action: (1) damages according to proof; (2) punitive damages; (3) interest at the maximum legal rate; and (4) any further relief as may be just and proper under the circumstances.

6.  For the Sixth Cause of Action: (1) damages according to proof; (2) punitive damages; (3) interest at the maximum legal rate; and (4) any further relief as may be just and proper under the circumstances.

7.  For the Seventh Cause of Action: (1) damages according to proof; (2) punitive damages; (3) interest at the maximum legal rate; and (4) any further relief as may be just and proper under the circumstances.

8.  For the Eighth Case of Action: (1) restitution of unjust gains; (2) rescission; (3) injunctive relief halting Defendants' unlawful actions; (4) attorneys fees and costs pursuant to Business and Professions Code § 17200 et seq.

DATED: October 23, 2003    THE LAW OFFICES OF RYAN D. LAPIDUS
A PROFESSIONAL LAW CORPORATION

_____

RYAN D. LAPIDUS
ATTORNEYS FOR PLAINTIFF
STEVE GEVIRTZ

FIRST AMENDED COMPLAINT - 38

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR TRIAL BY JURY

Plaintiff Steve Gevirtz hereby demands a trial by jury.

DATED: October 23, 2003          THE LAW OFFICES OF RYAN D. LAPIDUS
                                 A PROFESSIONAL LAW CORPORATION


                                 _____
                                 RYAN D. LAPIDUS
                                 ATTORNEYS FOR PLAINTIFF
                                 STEVE GEVIRTZ

FIRST AMENDED COMPLAINT - 39

**EXHIBIT  6**

1  DUANE M. GECK (State Bar No. 114823)
   DONALD H. CRAM (State Bar No. )
2  DAVID E. PINCH (State Bar No. 124851)
   SEVERSON & WERSON
3  A Professional Corporation
   One Embarcadero Center, Suite 2600
4  San Francisco, CA 94111
   Telephone: (415) 398-3344
5  Facsimile: (415) 956-0439

6  Attorneys for Plaintiff
   RESERVOIR CAPITAL
7  CORPORATION

8            UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11

12  RESERVOIR CAPITAL                    )  No.  FJ02-002 (MJJ)(CJS)
    CORPORATION, a Maryland              )
13  Corporation,                         )  00-CV-3626
                                         )
14            Plaintiff,                 )  **RESERVOIR CAPITAL
                                         )  CORPORATION'S NOTICE OF
15       vs.                             )  MOTION AND MEMORANDUM
                                         )  OF POINTS AND AUTHORITIES
16  FOUR STAR FINANCIAL SERVICES,        )  TO AMEND JUDGMENT TO
    L.L.C., a California Limited Liability )  INCLUDE ALTER EGOS**
17  Company,                             )
                                         )  Hearing—
18            Defendant.                 )
                                         )  Date:    September 19, 2003
19                                       )  Time:    9:30 a.m.
                                            Judge:   The Hon. Joseph Spero
20

21

22

23

24

25

26

27  11073/0001/427690.1                        RESERVOIR CAPITAL CORPORATION'S
    No. FJ02-002 (MJJ)(CJS)             MEMORANDUM OF POINTS AND AUTHORITIES TO
28                                      AMEND JUDGMENT TO INCLUDE ALTER EGOS
                                        *Reservoir Capital Corporation v. Four Star
                                        Financial Services,* Case No. FJ 02-002
                                                            (MJJ) (JCS)

# TABLE OF CONTENTS

I.   NOTICE OF MOTION.................................................................1

II.  REQUEST FOR RELIEF .............................................................1

III. STATEMENT OF FACTS ............................................................2

    A.  Procedural History...........................................................2

        1.  Identification of the Parties.........................................2

        2.  Entry of Judgment...................................................3

        3.  Execution Efforts on Modified Judgment .........................4

        4.  Evidence of Failure to Comply with Business Formalities ...................................................................4

        5.  Unity of Interests....................................................5

        6.  Evidence of Commingling of Assets ...............................7

            a. Telephone Arbitrage Contracts..............................6

            b. Animation Art Cels............................................8

            c. Loans between Members and Four Star .....................9

        7.  Evidence of Control of Litigation...............................10

IV.  AUTHORITY TO AMEND JUDGMENT TO INCLUDE ALTER EGOS OF JUDGMENT DEBTOR .......................................10

V.   ANSON, GARRETT, COHN, FSF AND CBA ARE THE ALTER EGOS OF FOUR STAR .......................................12

    A.  Alter Ego Doctrine .........................................................12

    B.  Conditions Precedent for Determining Alter Ego ...............12

    C.  Specific Factors Considered by Courts-Generally ...............14

    D.  Application of Alter Ego Doctrine Between Four Star, Anson, Garrett, FSF, and CBA. .......................................15

    E.  Same Parties Controlled Litigation and All Three LLC's.................17

VI.  CONCLUSION......................................................................18

RESERVOIR CAPITAL CORPORATION'S
MEMORANDUM OF POINTS AND AUTHORITIES TO
AMEND JUDGMENT TO INCLUDE ALTER EGOS

# TABLE OF AUTHORITIES

## Federal Cases

*In Re Levander,*
    180 F.3d 1114 (9th Cir. 1999) ................................................. 2, 10, 11

## State Cases

*Alexander v. Abbey of Chimes,*
    104 Cal. App. 3d 39 (1980) .................................................... 10

*Associated Vendors, Inc. v. Oakland Meat Co.,*
    210 Cal. App. 2d 825 (1962) ............................................ 12, 13, 14

*Carr v. Barnabey's Hotel Corp.,*
    23 Cal. App. 4th 14 (1994) ................................................. 10, 16

*Dow Jones Co. v. Avenel,*
    151 Cal. App. 3d 144 (1984) ................................................. 11

*Erkenbrcher v. Grant,*
    187 Cal. 7 (1921) .......................................................... 11

*Laird v. Capital Cities/ABC Inc.,*
    68 Cal. App. 4th 727 (1998) ................................................ 12

*Marr v. Postal Union Life Insurance Co.,*
    40 Cal. App. 2d 673 (1940) ................................................. 11

*McClellan v. Northridge Park Townhome Owners Association, Inc.,*
    89 Cal. App. 4th 746 (2001) ................................................ 11

*NEC Electronics Inc. v. Hurt,*
    208 Cal. App. 3d 778 (1989) .............................................. 10, 16

*Riddle v. Leuschner,*
    51 Cal. 2d 574 (1959) ...................................................... 11

## Statutes

F.R.C.P. 69        ........................................................... 11

California Code of Civil Procedure
    Section 187 ............................................................... 10

California Corporations Code
    Section 17058 ........................................................... 5, 14

RESERVOIR CAPITAL CORPORATION'S
MEMORANDUM OF POINTS AND AUTHORITIES TO
AMEND JUDGMENT TO INCLUDE ALTER EGOS
*Reservoir Capital Corporation v. Four Star
Financial Services,* Case No. FJ 02-002
(MJJ) (JCS)

## I.    NOTICE OF MOTION

TO FOUR STAR FINANCIAL SERVICES, LLC ("Four Star"), its wholly owned subsidiaries, FSF, LLC and COMMUNITY BENEFIT ALLIANCE, LLC, and to Four Star's principals, RONALD ANSON, JACK GARRETT, and MARK COHN, and to MILES ARCHER WOODLIEF their attorney of record:

NOTICE IS HEREBY GIVEN that on September 19, 2003, at 9:30 a.m., or as soon thereafter as the matter may be heard, before the Honorable Magistrate Judge Joseph C. Spero, located at 450 Golden Gate Avenue, Courtroom A, 15th Floor, San Francisco, California, Judgment Creditor, Reservoir Capital Corporation, A Maryland Corporation, ("Reservoir") will move this court for an order to amend the Judgment entered in this action, as modified, to hold:

(1) Four Star's managing members:  Ron Anson, Jack Garrett, and Mark Cohn; and,

(2) Four Star's wholly owned subsidiaries: FSF, LLC and Community Benefit Alliance, LLC,

as additional judgment creditors.

## II.    REQUEST FOR RELIEF

Reservoir has been unable to satisfy its judgment against Four Star.  While it has been diligent in seeking to identify Four Star's assets, the process has made it abundantly clear that Four Star has hidden its assets among its subsidiaries and principals.  Neither Four Star, nor its subsidiaries, have kept sufficient records and together they have failed to produce documents of title, corporate minutes, contracts, or other records that define the assets and liabilities between them.  The evidence also support that Four Star's principal managers have used Four Star and its subsidiary limited liability companies as a shell to keep the liabilities separated from any assets which could be used to satisfy those liabilities.

11073/0001/427690.1
No. FJ02-002 (MJJ)(CJS)

-1-

RESERVOIR CAPITAL CORPORATION'S
MEMORANDUM OF POINTS AND AUTHORITIES TO
AMEND JUDGMENT TO INCLUDE ALTER EGOS
*Reservoir Capital Corporation v. Four Star
Financial Services,*  Case No. FJ 02-002
(MJJ) (JCS)

1    Both federal and state law empower this court to amend a judgment to

2  include judgment debtor's alter egos as additional judgment debtors. *See, In re*

3  *Levander,* 180 F3d 1114, 1121-3 (9th Cir. 1999).  To allow an amendment to a

4  judgment, the Judgment Creditor must establish two elements:  (1) the party to be

5  added to the judgment must be the alter ego of the judgment debtor; and (2) the

6  party to be added must have had an opportunity to participate in the original action.

7    While Reservoir sued neither Four Star's managing members, nor its

8  subsidiaries, in the underlying action, Reservoir asserts that the managing members

9  and its subsidiary limited liability companies are merely alter egos of Four Star and

10 further, that through the managing members they had the opportunity to defend the

11 original action.  Accordingly, Reservoir Capital Corporation is entitled to amend its

12 judgment to include these parties.

13    **III.   STATEMENT OF FACTS**

14   **A.    Procedural History**

15     **1.    Identification of the Parties**

16    1.  Reservoir is a judgment creditor of Four Star Financial Services, LLC

17 ("Four Star").  (RJN,[1] Ex. B).

18    2.  Four Star is a limited liability company that is active and in good standing

19 with the State of California.  Four Star's principal place of business is at 11755

20 Wilshire Boulevard, Suite 1350, Los Angeles, California  90025.  (RJN, Ex. "G").

21 It also does business at 255 Shoreline Drive, Suite 100, Redwood City, California

22 94065.

23    3.  Ron Anson ("Anson"), Mark Cohn ("Cohn"), and Jack Garrett ("Garrett")

24 are managing members of Four Star.  (RJN, Ex. "G").

25  ───────────────────

26    [1] RJN is used to denote "Judgment Creditor's Request to Take Judicial Notice"
   throughout.

27   11073/0001/427690.1          - 2 -       RESERVOIR CAPITAL CORPORATION'S
   No. FJ02-002 (MJJ)(CJS)                MEMORANDUM OF POINTS AND AUTHORITIES TO

28                                    AMEND JUDGMENT TO INCLUDE ALTER EGOS
                                    *Reservoir Capital Corporation v. Four Star*
                                    *Financial Services,*  Case No. FJ 02-002
                                    (MJJ) (JCS)

1    4. FSF, LLC ("FSF") is a California limited liability company (RJN, Ex.

2 "H") and a wholly owned subsidiary of Four Star. (Geck Dec. ¶18, Exs. "S" and

3 "U" at page 15). Anson and Garrett are also managing members of FSF. (Geck

4 Dec. Exs "X" and "Y").

5    5. Community Benefit Alliance, LLC ("CBA") is a California limited

6 liability company (RJN, Ex. "I") and a wholly owned subsidiary of Four Star.

7 (Geck Dec. ¶18, Exs. "S" and "U" at page 15). Four Star is the managing member

8 of CBA. (RJN Ex. "H").

9               **2.    Entry of Judgment**

10    6. On December 12, 2000, Reservoir filed a breach of contract action

11 against Four Star in the United States District Court for the District of Maryland as

12 Case No. 00-CV-3626. On July 16, 2001, Reservoir and Four Star filed a

13 "Stipulation and Order for Settlement of Suit" ("Stipulation") under which Four

14 Star stipulated to pay Reservoir a discounted sum $1,250,000.00 no later than

15 September 12, 2001, or the full contractual obligation if paid after that date. (RJN,

16 Ex. "A").

17    7. Upon Four Star's default on the Stipulation, Reservoir had judgment

18 entered against Four Star for $1,866,995.57 (the "Judgment"). (RJN Ex. "B.")

19    8. Reservoir registered its Maryland District Court Judgment in the United

20 States District Court for the Northern District of California on January 11, 2002.

21 (RJN Ex. "C." )

22    9. On July 20, 2002, Reservoir and Four Star entered into a second

23 stipulation for installment payments of the judgment in this court under an

24 agreement entitled "Stipulation Modifying Judgments and Order Thereon"

25 (referred to as "Modified Judgment"). (RJN Ex. "D.")  While Four Star made

26

27    11073/0001/427690.1            - 3 -        RESERVOIR CAPITAL CORPORATION'S
      No. FJ02-002 (MJJ)(CJS)                    MEMORANDUM OF POINTS AND AUTHORITIES TO
                                                 AMEND JUDGMENT TO INCLUDE ALTER EGOS
28                                               *Reservoir Capital Corporation v. Four Star*
                                                 *Financial Services,*  Case No. FJ 02-002
                                                 (MJJ) (JCS)

1    initial payments under that Modified Judgment, it again defaulted. (Geck Decl. ¶9).

2         10.  The principal balance now due and owing on the Modified Judgment is

3    $1,089,455.00 with further interest and fees accruing each day.  (Geck Dec. ¶9).

4

5         **3.**     **Execution Efforts on Modified Judgment**

6         11.  Reservoir has separately  demanded the production of documents and

7    has been conducting an on-going judgment debtor's examination of Four Star since

8    February 2003. (Geck Decl. ¶10 and 11).

9         12.  Four Star has been reluctant and dilatory in producing responsive

10   records regarding its assets and liabilities.  Reservoir has sought the assistance of

11   this Court on five separate occasions to enforce its rights to inspect documents and

12   to examine witnesses under its Orders for Examination.  (Geck Decl. ¶11 a-e ).

13        13.  Through inspection of the limited financial statements Four Star has

14   produced, Reservoir has pieced together information which indicate that Four Star

15   has failed to maintain the business formalities of its limited liability companies and

16   has commingled its assets with those of its managing members and subsidiaries.

17        **4.**     **Evidence of Failure to Comply with Business**
                  **Formalities**

18

19        14.  Reservoir demanded that Four Star produce its minute books and other

20   corporate records for itself and its subsidiaries, FSF and CBA. (Geck Dec. ¶11(b)).

21   Four Star produced only the formal documents necessary to create the limited

22   liability companies.

23        15.  Four Star has produced only:

24   **Four Star:**  Its Limited Liability Company Articles of Organization and

25   Limited Liability Company Statement of Information; (Geck Dec. ¶33, Ex. "Y";

26   RJN "G").

27   11073/0001/427690.1                 - 4 -         RESERVOIR CAPITAL CORPORATION'S
     No. FJ02-002 (MJJ)(CJS)                MEMORANDUM OF POINTS AND AUTHORITIES TO

28                                          AMEND JUDGMENT TO INCLUDE ALTER EGOS
                                      *Reservoir Capital Corporation v. Four Star*
                                        *Financial Services,*  Case No. FJ 02-002
                                            (MJJ) (JCS)

1    **CBA:**   Its  (1) Limited Liability Company Statement of Information; (2)

2    Certificate of Amendment; (3) Amended and Restated Operating Agreement;

3    and (4) Amendment to the Amended and Restated Operating Agreement; (Geck

4    Dec. ¶33, Ex. "Z," "AA," "BB," and "CC"; RJN Ex. "I")

5    **FSF:**   Its  (1) Limited Liability Company Articles of Organization; and (2)

6    Amended Liability Company Agreement. (Geck Dec. ¶33, Ex. "DD"; RJN Ex.

7    "H")

8        16.    Neither Four Star, FSF, nor CBA have produced any records of its

9    membership meetings in the form of notices, minutes, or resolutions or other

10   business records mandated under California Corp. Code §17058.   Four Star has

11   not produced the records to support that these entities have complied with any of

12   the formalities required of limited liability companies.  (Geck Decl. ¶32).

13       17.    On March 7, 2003, this Court ordered, in part, that Four Star execute

14   an affidavit that it had no further records or minute books for the limited liability

15   companies.   In response, Dana L. Pierson filed two declarations stating "Four Star,

16   its parent(s), affiliate(s), and subsidiary(ies) have each produced all Corporate

17   Organization documents within their possession or control."  (RJN, Exs. "L" and

18   "M").

19       18.    In addition, Four Star's counsel filed a response to a motion for civil

20   sanctions on June 10, 2003, in which he asserted that "evidence to date

21   demonstrates that, apart from whether Four Star should have the records (i.e.

22   related to business formalities), they do not…. The point of the declaration is clear:

23   Four Star has no further corporate documents in its possession." (RJN, Ex. "M" p.

24   5 lns. 4-12).

25       **5.    Unity of Interests**

26

27   11073/0001/427690.1                    - 5 -              RESERVOIR CAPITAL CORPORATION'S
     No. FJ02-002 (MJJ)(CJS)                                   MEMORANDUM OF POINTS AND AUTHORITIES TO
                                                               AMEND JUDGMENT TO INCLUDE ALTER EGOS
28                                                             *Reservoir Capital Corporation v. Four Star*
                                                               *Financial Services,* Case No. FJ 02-002
                                                               (MJJ) (JCS)

19.    FSF and CBA are wholly owned subsidiaries of Four Star. (Geck Dec. ¶18, Ex. "R").

20.    Four Star is the managing member of CBA. (RJN, Ex. "J").

21.    Four Star and FSF share members Anson, Garrett, and Dana L. Pierson. (RJN "H" and "I")

22.    Four Star, FSF and CBA conduct business out of the same set of offices at 255 Shoreline Drive, Suite 100, Redwood City, CA 94065 and share a common telephone number of (650)486-8401. (RJN "H" and "I").

23.    Anson Garret & Co. maintain the books and records of Four Star. The principal owners Anson & Garret Co. are Ron Anson and Jack Garrett who are also the principal members of Four Star. Anson & Garret & Co. operates its business out of Four Star's office location and uses the same telephone number. (RJN, Exs. "F" and "G").

24.    Four Star, through Anson Garrett & Co., has produced only a single consolidated financial statement that includes the financial books and records of Four Star, FSF, and CBA, among others in one document. There are no specific records to account fully for each company as a separate entity. (Geck Dec. Ex. "R").

25.    Four Star and Anson Garrett & Co. hired an independent accounting firm, Burgess & Co., to review and prepare a year-end financial statement. (Geck Dec. ¶22, Ex. "U").

26.    Burgess & Co. prepared only a single consolidated year-end financial report that jointly reports the financial condition and status of Four Star, FSF, and CBA. (Geck Dec. Ex. "U").

RESERVOIR CAPITAL CORPORATION'S
MEMORANDUM OF POINTS AND AUTHORITIES TO
AMEND JUDGMENT TO INCLUDE ALTER EGOS
*Reservoir Capital Corporation v. Four Star*
*Financial Services,* Case No. FJ 02-002
(MJJ) (JCS)

## 6.    Evidence of Commingling of Assets

27.    Through Four Star's limited compliance with the discovery demands, Reservoir has uncovered information that shows Four Star transferred its most valuable assets to its wholly owned and controlled, subsidiary limited liability companies. (Geck Decl., ¶19).

### a.    Telephone Arbitrage Contracts

28.    Four Star produced its Financial Statements for the Nine Months Ending September 30, 2002. (Geck Decl. ¶ 20, Ex. "R" (hereinafter "Anson Garret & Co. Financial Report"). Among the assets that Four Star disclosed in the Anson Garret & Co. Financial Report was income generated from Telephone Arbitrage Contracts.

29.    Reservoir examined Rick Saperstein at a debtor's examination on March 7, 2003. Rick Saperstein is a member of Anson Garrett & Co. and is the accountant that Anson Garrett & Co. assigned to oversee the Four Star's books and records. Reservoir asked Saperstein questions related to that Anson Garret & Co. Financial Report including an asset described as Telephone Arbitrage Contracts. Saperstein advised that Four Star was negotiating a sale of the Telephone Arbitrage Contracts for a gross sales price in excess of $100,000,000.00. (Geck Decl. 20 and 21 Exhibit "T").

30.    At the time of the March 7, 2003, debtor's examination, Reservoir believed and was led to believe that Four Star owned the Telephone Arbitrage Contracts and that it would be conducting the sale. (Geck Decl. Exhibit "T").

31.    Thereafter, on March 12, 2003, Four Star produced its "Financial Statements of Four Star Financial Services, LLC and Subsidiaries for the year ended December 31, 2001" which Burgess & Company had prepared (the "2001

11073/0001/427690.1
No. FJ02-002 (MJJ)(CJS)

- 7 -

RESERVOIR CAPITAL CORPORATION'S
MEMORANDUM OF POINTS AND AUTHORITIES TO
AMEND JUDGMENT TO INCLUDE ALTER EGOS
*Reservoir Capital Corporation v. Four Star*
*Financial Services,* Case No. FJ 02-002
(MJJ) (JCS)

1  Burgess Financial Statement"). (Geck Decl. ¶22, Exhibit "U").

2      32.    The "2001 Burgess Financial Statement" discloses that FSF claims

3  ownership to all of the Telephone Arbitrage Contracts and not Four Star as

4  Saperstein had indicated previously. (Geck Decl. ¶23, Exhibit "U").

5      33.    Further, Four Star now represents that FSF has always been the owner

6  of the Telephone Arbitrage Contracts. (Geck Decl. Exhibit "U").  But Four Star

7  did not create FSF until February 13, 2001.  Since the December 2000 Financial

8  Statement for Four Star Financial Services, LLC, which Burgess & Company

9  prepared, reports that Four Star received $40,119,175.00 in telephone arbitrage

10  income, Four Star had to own the Telephone Arbitrage Contracts before FSF did.

11  (Geck Decl. ¶22, Exhibit "V").

12      34.    Neither Four Star, nor FSF, have produced any documents of title

13  showing that Four Star transferred its ownership interest in the Telephone

14  Arbitrage Contracts to FSF.  (Geck Decl. ¶29-30;  RJN, Ex. "M" p. 6; lns. 3-8).

15  And Four Star has produced no records that FSF exchanged any value for the

16  ownership of these Telephone Arbitrage Contracts. (Geck Decl. ¶31-33).

17      35.    Despite Four Star's inability to produce any of the Telephone

18  Arbitrage Contracts, it alleges that these contracts are the subject of a pending sale

19  for $100,000,000.00 to a large financial institute that it cannot – or will not –

20  identify.  (Geck Decl., ¶21).

21              **b.    Animation Art Cels**

22      34.    The 2001 Burgess Financial Statement also discloses an asset

23  described as Animation Art Cels. (Geck Decl., ¶24, Ex. "U" at page 12).  Four Star

24  represents that the Animation Art Cels have an appraised value between

25  $100,000,000.00 and $272,000,000.00.  (Geck Decl. ¶21, Ex. "W").  The 2001

26

27  11073/0001/427690.1                – 8 –                RESERVOIR CAPITAL CORPORATION'S
    No. FJ02-002 (MJJ)(CJS)                                MEMORANDUM OF POINTS AND AUTHORITIES TO

28                                                         AMEND JUDGMENT TO INCLUDE ALTER EGOS
                                                           *Reservoir Capital Corporation v. Four Star*
                                                           *Financial Services,* Case No. FJ 02-002
                                                           (MJJ) (JCS)

1    Burgess Financial Statement does not reveal the identity of the owner of the

2    Animation Art Cels.  Instead, the Animation Art Cels appear to be another asset of

3    Four Star.  (See, Geck Decl., ¶24, Ex. "U," at page 12).

4        35.    Rick Saperstien, however, asserted at his  March 14, 2003, debtor's

5    examination that the Animation Art Cels are the sole property of CBA – another of

6    Four Star's wholly owned subsidiaries. (Geck Decl. ¶21, Ex. "W").

7        36.    On the other hand, despite a court órder compelling production of the

8    documents of title to the Animation Art Cels, neither Four Star nor CBA has

9    produced any records of title.  (Geck Decl. ¶31; RJN Ex. "M" p. 6; lns 12-21).

10        37.    Although Four Star alleges that FSF owns the Telephone Arbitrage

11    Contracts exclusively and CBA owns the Animation Art Cels exclusively, Four

12    Star has pledged CBA's "Animation Art Cels as collateral in connection with the

13    sale of the Company's positions in arbitrage contracts." (Geck Decl. ¶32, Ex. "U"

14    page 12).

15            c.    **Loans Between Members and Four Star**

16        38.    Four Star has made loans to Garrett, Anson, and Cohn.  Garrett and

17    Anson are members of Four Star, FSF and CBA. On April 1, 2003, Garrett

18    executed a declaration stating that Four Star has no note or any other loan

19    document regarding a loan of money from Four Star to these members.  (Geck Dec.

20    ¶35 Ex. "EE").  Garrett stated that the only record of the loan is a "General Ledger

21    entry." Garrett's declaration is filed simultaneously with this motion. (RJN Ex.

22    "M")

23        39.    In another transaction, Anson and Garrett executed a Master

24    Revolving Note for a *personal* line of credit from Comerica Bank. (Geck Decl. ¶36,

25    Ex. "FF").

26

27    11073/0001/427690.1                    - 9 -                RESERVOIR CAPITAL CORPORATION'S
      No. FJ02-002 (MJJ)(CJS)                                MEMORANDUM OF POINTS AND AUTHORITIES TO
                                                            AMEND JUDGMENT TO INCLUDE ALTER EGOS
28                                                          *Reservoir Capital Corporation v. Four Star*
                                                          *Financial Services,*  Case No. FJ 02-002
                                                                        (MJJ) (JCS)

40.    Although Four Star is not a party to the Master Revolving Note, Four Star makes all of payments for the Master Revolving Note through an automatic withdrawal authorization on Four Star's general checking account. (Geck Decl. ¶37, Ex. "GG" and "HH").

### 7.    Evidence of Control of Litigation

43.    Four Star controls FSF and CBA as wholly owned subsidiaries.

44.    Four Star is the sole Managing Member for CBA.

45.    Four Star and FSF share Anson, Garrett, and Pierson as their managing members.

46.    Pierson executed the Stipulation filed in the Maryland District Court as vice-president of Four Star.  She is also a member of FSF. (RJN, Ex. "A").

47.    Anson and Garrett own Anson Garrett & Co. and prepare all accounting records – other than the year-end consolidated report – for  Four Star, FSF, and CBA as a consolidated financial unit. (Geck Dec. Ex. "R"). The year-end consolidated report also treats the companies as a single financial entity. (Geck Dec. Ex. "U").

## IV.    AUTHORITY TO AMEND JUDGMENT TO INCLUDE ALTER EGOS OF JUDGMENT DEBTOR

Reservoir Capital Corporation seeks to amend its judgment to hold Anson, Garrett, Cohn,  FSF and CBA liable for the Four Star judgment debt.  Four Star wholly owns and controls FSF and CBA as subsidiary limited liability companies. This court can amend the judgment if it finds that the subsidiary companies are (1) the alter ego of Four Star and  (2) that parties who controlled the litigation on behalf of Four Star control the subsidiary companies. *In re Levander*,  180 F3d 1114, 1120-23  (9th Cir. 1999).

Section 187 of the California Code of Civil Procedure grants every court the

11073/0001/427690.1
No. FJ02-002 (MJJ)(CJS)

RESERVOIR CAPITAL CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES TO AMEND JUDGMENT TO INCLUDE ALTER EGOS *Reservoir Capital Corporation v. Four Star Financial Services*,  Case No. FJ 02-002 (MJJ) (JCS)

1    power to use all means necessary to carry its jurisdiction into effect, even if those

2    means are not set out in the code. *NEC Electronics Inc. v. Hurt,* 208 Cal.App.3d

3    778 (1989). The California Courts have interpreted CCP §187 as authority to

4    amend a judgment to add additional judgment debtors. *Id.* The theory is that when

5    the court amends the judgment to include an alter ego as a liable party, the court is

6    not adding a new party; it is merely correcting the name of the judgment debtor.

7    *See, Carr v. Barnabey's Hotel Corp.,* 23 CalApp 4th 14, 20 (1994).

8        An additional factor that the courts sometimes examine is the extent to which

9    the judgment creditor attempted to execute on the original judgment. *Alexander v.*

10   *Abbey of Chimes,* 104 CalApp3d 39, 47-49 (1980) (judgment creditor's failure to

11   show attempts to satisfy judgment is an equitable consideration in court's

12   determination to grant or deny motion). Here, Reservoir has followed Four Star

13   across the country, served it with writs of execution[2], conducted numerous debtor

14   examinations[3], requested documents, attended hearings on motions to compel, and

15   sought a charging order in efforts to satisfy its judgment. (RJN "N"). Reservoir has

16   been diligent in asserting its rights, but has been denied access to Four Star's real

17   assets through a fiction that FSF and CBA are separate and distinct entities from

18   Four Star.

19       The Ninth Circuit empowers the United States District Courts to amend

20   judgments following the California rule. *See, In re Levander,* 180 F3d 1114 (9th

21   Cir. 1999). The Ninth Circuit reasons that FRCP 69 permits a judgment creditor to

22   use any means to enforce a judgment that is consistent with the local state's

23   practice. *Id.,* at 1120-1.

24

25   _____

     [2] Reservoir has a concurrently filed motion to enforce a writ of execution.
26   [3] Four Star's failure to comply with the Court's numerous order is the subject of a Order to
     Show Cause Re: Contempt set for hearing on July 31, 2003.

27   11073/0001/427690.1                        - 11 -              RESERVOIR CAPITAL CORPORATION'S
     No. FJ02-002 (MJJ)(CJS)                                       MEMORANDUM OF POINTS AND AUTHORITIES TO
28                                                                 AMEND JUDGMENT TO INCLUDE ALTER EGOS
                                                                   *Reservoir Capital Corporation v. Four Star*
                                                                   *Financial Services,* Case No. FJ 02-002
                                                                   (MJJ) (JCS)

1    V.    **ANSON, GARRETT, COHN,  FSF AND CBA ARE THE ALTER**
                         **EGOS OF FOUR STAR**

2

3        A.    **Alter Ego Doctrine**

4        Although a corporation or a limited liability company is generally deemed to

5 be an entity that is separate and distinct from its members, shareholders, and

6 subsidiaries, the law can overlook that fiction when it is necessary to circumvent

7 fraud upon the court, to protect the rights of third persons, and accomplish justice.

8 *Erkenbrcher v. Grant,* 187 Cal. 7, 10-11 (1921) (alter ego held between

9 shareholders and corporation).  The finding that a company is the  "alter ego" of its

10 members or subsidiaries results in the obligations of the entity being treated as the

11 obligations of the other. *Riddle v. Leuschner,* 51 Cal 2d 574, 580 (1959)

12 (corporation to owners); *Marr v. Postal Union Life Insurance Co.* 40 CalApp 2d

13 673, 681-2 (1940) (corporation to subsidiary).

14        The alter ego doctrine is an equitable one, and there is no right to a jury trial.

15 *Dow Jones Co. v. Avenel,* 151 CalApp 3d 144, 147 (1984).  Therefore, a court can

16 make its own independent determination of alter ego liability.  Due to the equitable

17 nature of the remedy, the court can assess alter ego liability even after a judgment

18 is entered. *McClellan v. Northridge Park Townhome Owners Association, Inc.,* 89

19 CalApp 4th 746, 753-756 (2001).  In *McClellan,* the Court modified a judgment to

20 include a successor corporation to debt of predecessor where same parties

21 controlled both corporations and assets were merely transferred from one to the

22 other.

23        B.    **Conditions Precedent for Determining Alter Ego**

24        Before the acts, debts and obligations of a limited liability company can be

25 legally recognized as those of its members, subsidiaries, or successors, the court

26

27    11073/0001/427690.1         - 12 -         RESERVOIR CAPITAL CORPORATION'S
      No. FJ02-002 (MJJ)(CJS)                       MEMORANDUM OF POINTS AND AUTHORITIES TO

28                                               AMEND JUDGMENT TO INCLUDE ALTER EGOS
                                           *Reservoir Capital Corporation v. Four Star*
                                           *Financial Services,*  Case No. FJ 02-002
                                                         (MJJ) (JCS)

1    must find that the following two conditions exist:

2        1) It must appear that the entity is not only influenced and governed by the

3           same person or person(s), but that there is such a unity of interest and

4           ownership that the separateness between the entities have ceased.

5        2) The facts are such that an adherence to the fiction of the separate

6           existence of the entities would sanction a fraud or promote an injustice.

7    *Associated Vendors, Inc. v. Oakland Meat Co.* 210 CalApp 2d 825, 837

8    (1962).

9        Because the alter ego doctrine does not depend on the presence of an actual

10    fraud and is designed to prevent injustice, the courts usually look for some form of

11    bad faith before they will enforce the doctrine. *Laird v. Capital Cities/ABC Inc.* 68

12    CalApp 4th 727, 742 (1998). In *Laird,* the court declined to find that there was an

13    alter ego where plaintiff failed to show specific manipulative conduct of a parent

14    toward its subsidiary sufficient to relegate the subsidiary to a mere instrumentality

15    of the parent.

16        Here, Four Star has transferred assets to subsidiaries for dubious reasons.

17    While it was in litigation, Four Star transferred assets to FSF valued at

18    $100,000,000.00. Yet, it cannot document the transfer. Similarly, it cannot

19    document CBA's ownership of the Animation Art Cels valued at between

20    $100,000,000.00 and $272,000,000.00. Four Star has used the CBA Animation Art

21    Cels as collateral in FSF's sale of Arbitration Contracts. It appears that Four Star

22    transfers assets to subsidiaries while it continues to hold the debt which promotes

23    an injustice. Accordingly, Reservoir has satisfied the two required conditions.

24

25

26

27    11073/0001/427690.1
    No. FJ02-002 (MJJ)(CJS)

    - 13 -

    RESERVOIR CAPITAL CORPORATION'S
MEMORANDUM OF POINTS AND AUTHORITIES TO
AMEND JUDGMENT TO INCLUDE ALTER EGOS
*Reservoir Capital Corporation v. Four Star
Financial Services,* Case No. FJ 02-002
(MJJ) (JCS)

28

## C.   Specific Factors Considered by Courts-Generally

The variety of factors that courts have considered in reaching their determination as to whether the alter ego doctrine should be applied were summarized in *Associated Vendors Inc. v. Oakland Meat Co.* 210 Cal. App. 2d 825, 838-840 (1962) (individual citations omitted):

- Commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses.

- The treatment by an individual of the assets of the corporation as his or her own.

- The failure to obtain authority to issue stock or to subscribe to or issue the same.

- The holding out by an individual that he or she is personally liable for the debts of the corporation.

- The failure to maintain minutes or adequate corporate records and the confusion of the records of the separate entities.

- The identical equitable ownership in the two entities; the identification of the equitable owners with the domination and control of the two entities; identification of the directors and officers of the two entities as the responsible supervision and management; sole ownership of all of the stock in a corporation by one individual or the members of a family.

- The use of the same office or business location and the employment of the same employees or attorneys or both.

- The failure to adequately capitalize a corporation or the total absence of corporate assets and under- capitalization.

- The use of a corporation as a mere shell, instrumentality, or conduit for a single venture or the business of an individual or another corporation.

- The concealment and misrepresentation of the identity of the responsible ownership, management, and financial interest, or concealment of personal business activities.

- The disregard of legal formalities and the failure to maintain arm's-length relationships among related entities.

- The use of the corporate entity to procure labor, services, or merchandise for another person or entity.

RESERVOIR CAPITAL CORPORATION'S
MEMORANDUM OF POINTS AND AUTHORITIES TO
AMEND JUDGMENT TO INCLUDE ALTER EGOS
*Reservoir Capital Corporation v. Four Star
Financial Services,* Case No. FJ 02-002
(MJJ) (JCS)

1 • The diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of the creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in the other.

3 • The contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions.

5 • The formation and use of a corporation to transfer to it the existing liability of another person or entity.

7    In most cases involving an alter ego, several of the foregoing factors were

8 present and considered by the court but none of the factors has been deemed

9 conclusive standing alone. *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal.

10 App. 2d 825, 840 (1962).

11    **D.    Application of Alter Ego Doctrine Between Four Star, Anson, Garrett, FSF, and CBA.**

12    Four Star has attempted to obfuscate the nexus between itself, FSF, and

13 CBA. Reservoir, however, has doggedly uncovered facts to support that FSF and

14 CBA are mere business shams created to hide assets that belong to a debt laden

15 Four Star. As long as Four Star's managers Anson, Garrett, and Pierson can keep

16 Four Star's assets separated from its liabilities, they can personally share in the

17 wealth of the business without the burden of paying its creditors. Reservoir has

18 learned the following:

19    1.    The same three principals operate and manage Four Star, FSF, and

20 CBA; they are Anson, Garrett, and Pierson.

21    2.    Four Star, FSF, and CBA each operate out of the same offices located

22 at 11755 Wilshire Blvd., Los Angeles, California, and at 255 Shoreline Drive,

23 Suite 100, Redwood City, California.

24    3.    Four Star, FSF, and CBA have failed to maintain official minutes,

25 draft resolutions or maintain other formalities of the limited liability company

26

27    11073/0001/427690.1
No. FJ02-002 (MJJ)(CJS)

28

- 15 -

RESERVOIR CAPITAL CORPORATION'S
MEMORANDUM OF POINTS AND AUTHORITIES TO
AMEND JUDGMENT TO INCLUDE ALTER EGOS
*Reservoir Capital Corporation v. Four Star
Financial Services,*  Case No. FJ 02-002
(MJJ) (JCS)

1    structure as required by California Corp. Code §17058.

2        4.    Four Star has made loans to Garrett, Anson and Cohn without any

3    formal note or other instrument. (Declaration of Jack Garrett, ¶2).

4        5.    Four Star's books and records show that Garrett, Anson and Cohn

5    have made no effort to repay the loans. (Geck Decl. Exs "R" and "U" and Garrett

6    Decl. ¶2).

7        6.    While Four Star has claimed that FSF has always owned the

8    Telephone Arbitrage Contracts, its year end financial statement for 2000 show that

9    Four Star book over $40 million income from its Telephone Arbitrage Contracts.

10   Yet, FSF was not created until February 13, 2001. (RJN, Ex. "H"). The books and

11   records of Four Star indicate that it received no consideration for the transfer of any

12   assets to FSF.

13       7.    Despite FSF's claim of ownership of Telephone Arbitrage Contracts

14   that formerly belonged to Four Star, neither Four Star nor FSF have produced any

15   documents of ownership.

16       8.    Despite CBA's claim of ownership of Animation Art Cels, neither

17   Four Star nor CBA has produced any documents of ownership.

18       9.    While CBA claims ownership of the Animation Art Cels, Four Star

19   can produce no document of title showing that ownership. Meanwhile, the 2001

20   Burgess Financial Statements show the Animation Art Cels as an asset of Four

21   Star.

22       10.   While CBA claims ownership of the Animation Art Cels, the Cels

23   have been pledged as collateral for FSF's sale of the Telephone Arbitrage

24   Contracts.

25       11.   Anson and Garrett have a personal line of credit in the sum of

26

27   11073/0001/427690.1          - 16 -        RESERVOIR CAPITAL CORPORATION'S
     No. FJ02-002 (MJJ)(CJS)                    MEMORANDUM OF POINTS AND AUTHORITIES TO
                                                AMEND JUDGMENT TO INCLUDE ALTER EGOS
28                                              *Reservoir Capital Corporation v. Four Star*
                                                *Financial Services,* Case No. FJ 02-002
                                                (MJJ) (JCS)

1   $4,500,000.00 from Comerica Bank that Four Star repays monthly from its general

2   business checking account through an automatic withdrawal authorization.

3   **E.   Same Parties Controlled Litigation and All Three LLC's**

4   The facts support that FSF and CBA had the opportunity to defend the

5   original litigation between Reservoir and Four Star. An opportunity to participate

6   and control the prior litigation is necessary because without it, a party sought to be

7   added as a judgment debtor would never have an opportunity to litigate any

8   questions beyond its relationship to the corporation and  that would infringe upon

9   its right to due process. *NEC Electronics Inc. v. Hurt,* 208 Cal.App.3d 778, 779

10   (1989).

11   In this case, the same principals manage and control each of these limited

12   liability companies.  Reservoir has submitted evidence that Anson, Garrett, Cohn,

13   and Pierson each control Four Star, FSF, and CBA as the managing members.

14   Where the business entities share the same managing  partners, or officers,

15   share a common address, and have transferred assets between themselves, the

16   courts have found sufficient justification to find that the alter ego had the

17   opportunity to control the defense of the prior action. *See, Carr v. Barnabey's*

18   *Hotel Corp.,* 23 CalApp 4th 14, 20-22 (1994).  In *Barnabey,* a woman obtained a

19   judgment against Barnabey's Hotel only to learn that Peppercorn, Ltd. owned and

20   controlled the hotel and that Barnabey's Hotel had ceased doing business.  The

21   court found that the Barnabey's Hotel and Peppercorn, Ltd. operated from the same

22   business location and had the same officers.  The principals of Peppercorn

23   participated directly in the litigation.  They offered testimony and always referred

24   to the defendant as Barnabeys and never corrected the court or the plaintiff as to

25   the misnomer.  The Court deemed that  Peppercorn's silence was tantamount to a

26

27   11073/0001/427690.1          - 17 -          RESERVOIR CAPITAL CORPORATION'S
     No. FJ02-002 (MJJ)(CJS)                      MEMORANDUM OF POINTS AND AUTHORITIES TO
                                                  AMEND JUDGMENT TO INCLUDE ALTER EGOS
28                                                *Reservoir Capital Corporation v. Four Star*
                                                  *Financial Services,* Case No. FJ 02-002
                                                  (MJJ) (JCS)

1    fraud on the court.

2         Following the analysis in *Barnabey's*, FSF and CBA controlled the strategy

3    and the settlement of the original complaint.  They are managed by the same

4    members.  They share a common addresses.  And, they have transferred assets

5    between themselves without evidence of arm's length dealing.  Finally, when Four

6    Star and Reservoir entered into the settlement agreement in Maryland, Dana L.

7    Pierson, a common member to all, executed the agreement.

8                    **VI.    CONCLUSION**

9         Four Star, FSF and CBA have not made the slightest effort to maintain the

10   formalities of limited liability structure.  The evidence strongly indicates that Four

11   Star diverted its assets to FSF and CBA to shield those assets from execution.  In

12   the midst of litigation, Four Star created a wholly owned subsidiary, FSF, in which

13   it then deposited Telephone Arbitrage Contracts which it values at

14   $100,000,000.00.  In addition, it has shielded Animation Art Cels that it has valued

15   between $100,000,000.00 and $272,000,000.00 in CBA.  Neither Four Star, FSF,

16   nor CBA can produce documents of title for these very valuable assets.  Neither

17   Four Star, nor FSF, nor CBA have kept minutes, held meetings, or executed

18   company resolutions.  Four Star lent money to its principals without a note and  the

19   principals show no indication that they will repay the loan.  Inter-company and

20   personal assets of Four Star, FSF, CBA, Anson and Garrett are intermingled.  CBA

21   assets are used to collateralize an FSF deal.  Anson and Garrett borrow from Four

22   Star with no apparent intent to pay back.  Anson and Garrett borrow from Comerica

23   Bank, but have Four Star repay the debt through an automatic payment

24   authorization from Four Star's checking account.

25        The only rational conclusion is that Four Star, FSF, CBA, Anson and Garret

26

27   11073/0001/427690.1                        - 18 -                    RESERVOIR CAPITAL CORPORATION'S
     No. FJ02-002 (MJJ)(CJS)                                             MEMORANDUM OF POINTS AND AUTHORITIES TO
                                                                        AMEND JUDGMENT TO INCLUDE ALTER EGOS
28                                                                       *Reservoir Capital Corporation v. Four Star*
                                                                        *Financial Services,*  Case No. FJ 02-002
                                                                        (MJJ) (JCS)

1   are merely one conglomerate company that maintains a fiction of separateness to

2   shield assets from its creditors. The fiction prevents Reservoir from execution

3   despite known valuable assets. Four Star's intent verges on fraud and the effect is

4   pervasively unjust.

5       This District Court can however fashion a remedy for Reservoir. The court

6   can and should amend Reservoir's judgment so that FSF, CBA, Anson and Garrett

7   are added as judgment debtors so that their assets are available to satisfy the

8   judgment debt owed to Reservoir. Four Star, FSF, CBA, Anson, Cohn. and Garrett

9   must not be permitted to continue to perpetrate a fraud upon this Court and to

10  trample the legitimate rights of its lawful judgment creditors.

11      WHEREFORE, Reservoir prays that this Court amend its judgment to hold

12  FSF, CBA, Ronald Anson, Jack Garrett, and Mark Cohn liable as the alter egos of

13  Four Star and end the existing injustice.

14

15  DATED:  August 8, 2003

16                                  SEVERSON & WERSON
                                    A Professional Corporation
17

18                                  By: _____
                                    David E. Pinch
19                                  Attorneys for Plaintiff

20                                  RESERVOIR CAPITAL CORPORATION

21

22

23

24

25

26

27  11073/0001/427690.1          - 19 -       RESERVOIR CAPITAL CORPORATION'S
    No. FJ02-002 (MJJ)(CJS)                   MEMORANDUM OF POINTS AND AUTHORITIES TO
                                              AMEND JUDGMENT TO INCLUDE ALTER EGOS
28                                            *Reservoir Capital Corporation v. Four Star
                                              Financial Services,* Case No. FJ 02-002
                                              (MJJ) (JCS)

ORIGINAL
FILED

03 AUG 11 AM 10: 00

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   DUANE M. GECK (State Bar No. 114823)
   DONALD H. CRAM (State Bar No. 164001)
2   DAVID E. PINCH (State Bar No. 124851)
   SEVERSON & WERSON
3   A Professional Corporation
   One Embarcadero Center, Suite 2600
4   San Francisco, CA 94111
   Telephone: (415) 398-3344
5   Facsimile: (415) 956-0439

6   Attorneys for Plaintiff
   RESERVOIR CAPITAL
7   CORPORATION

8             UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10            SAN FRANCISCO DIVISION

| | |
|---|---|
| 11   RESERVOIR CAPITAL | No. FJ02-002 MJJ (JCS) |
| 12   CORPORATION, A Maryland Corporation, | 00-CV-3626 |
| 13         Plaintiff, | **NOTICE OF MOTION, MOTION AND MEMORANDUM OF** |
| 14     vs. | **POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR** |
| 15   FOUR STAR FINANCIAL SERVICES, | **ORDER ASSESSING LIABILITY AGAINST INDIVIDUALS FOR** |
| 16   LLC. a California Limited Liability Company, | **FAILURE TO MAKE PAYMENTS TO LEVYING OFFICER AND** |
| 17         Defendant. | **FOR REIMBURSEMENT OF FEES AND COSTS FOR** |
| 18 | **FAILURE TO RETURN GARNISHEE'S MEMORANDUM** |
| 19 | **{CALIFORNIA CODE OF CIVIL** |
| 20 | **PROCEDURE §§701.020 & 701.030}** |
| 21 | Date: September 19, 2003 |
| 22 | Time: 9:30 a.m. |
| 23 | Place: U.S. District Court Courtroom of Judge Spero 15th Floor, Courtroom A, |
| 24 | 450 Golden Gate Avenue San Francisco, CA |

25

26

27   11073/0001/440920.1

28

CHAMBER'S
COPY

1      TO FOUR STAR FINANCIAL SERVICES, LLC. ("Four Star"), MILES

2  ARCHER WOODLIEF, its attorney of record, RONALD I. ANSON, JACK E.

3  GARRETT and MARK COHN:

4      NOTICE IS HEREBY GIVEN that on September 19, 2003, at 9:30 o'clock,

5  or as soon thereafter as the matter may be heard, before the Honorable Joseph C.

6  Spero, located at 450 Golden Gate Avenue, Courtroom A, 15th Floor, San

7  Francisco, California, Judgment Creditor, Reservoir Capital Corporation, a

8  Maryland Corporation, ("Reservoir") will move this Court for an Order:

9      1.  Assessing liability in the amount of the unsatisfied portion of the

10  judgment entered against Four Star Financial Services, LLC, against RONALD I.

11  ANSON.  The United States District Court of the District of Maryland entered that

12  judgment on July 16, 2001.  Plaintiff registered a certified copy of that judgment in

13  this court on January 11, 2002.  The judgment was modified by Court Order filed

14  July 25, 2002.

15      2.  Assessing liability in the amount of the unsatisfied portion of the

16  judgment entered against Four Star Financial Services, LLC, against JACK E.

17  GARRETT.  The United States District Court of the District of Maryland entered

18  that judgment on July 16, 2001.  Plaintiff registered a certified copy of that

19  judgment in this court on January 11, 2002.  The judgment was modified by Court

20  order filed July 25, 2002.

21      3.  Assessing liability in the amount of the unsatisfied portion of the

22  judgment entered against Four Star Financial Services, LLC, against MARK

23  COHN.  The United States District Court of the District of Maryland entered that

24  judgment on July 16, 2001.  Plaintiff registered a certified copy of that judgment in

25  this court on January 11, 2002.  The judgment was modified by Court order filed

26

27

28

11073/0001/440920.1                        - 2 -         MEMORANDUM OF POINTS AND AUTHORITIES IN
                                                         SUPPORT OF MOTION FOR ORDER ASSESSING
                                                         LIABILITY AGAINST INDIVIDUALS FOR FAILURE
                                                         TO MAKE PAYMENTS TO LEVYING OFFICER AND
                                                         FOR REIMBURSEMENT OF FEES AND COSTS FOR
                                                         FAILURE TO RETURN GARNISHEE'S
                                                         MEMORANDUM

1   July 25, 2002.

2        4. Requiring RONALD I. ANSON to reimburse Reservoir for its reasonable

3 attorney's fees and costs incurred in obtaining information required to be provided

4 in the garnishee's memorandum.

5        5. Requiring JACK E. GARRETT to reimburse Reservoir for its reasonable

6 attorney's fees and costs incurred in obtaining information required to be provided

7 in the garnishee's memorandum.

8        6. Requiring MARK COHN to reimburse Reservoir for its reasonable

9 attorney's fees and costs incurred in obtaining information required to be provided

10 in the garnishee's memorandum.

11      This motion will be made on the grounds that Reservoir holds a judgment

12 against Four Star that was entered in the United States District Court for the

13 District of Maryland on October 18, 2001, in the sum of $1,866,995.57, and was

14 registered in this Court on January 11, 2002. The judgment was modified by

15 Stipulated Order filed on July 25, 2002. The balance due and owing on the

16 judgment as of May 27, 2003, is $1,089,455. Individual members of Four Star,

17 RONALD I. ANSON, JACK E. GARRETT and MARK COHN whom are indebted

18 to Four Star, were properly served with a writ of execution. These individuals,

19 without good cause, failed and refused to make payments to the levying officer and

20 failed to return a garnishee's memorandum to the levying officer.

21      The motion will be based on this Notice of Motion, on the Declaration of

22 Donald H. Cram, III, who is the attorney of record for Reservoir, on the

23 Memorandum of Points and Authorities served and filed herewith, on the papers

24 and records on file in this action, and on any oral and documentary evidence that

25 may be presented at the hearing on the motion.

26

11073/0001/440920.1          - 3 -       MEMORANDUM OF POINTS AND AUTHORITIES IN

27                                    SUPPORT OF MOTION FOR ORDER ASSESSING

                                       LIABILITY AGAINST INDIVIDUALS FOR FAILURE

28                                      TO MAKE PAYMENTS TO LEVYING OFFICER AND

                                       FOR REIMBURSEMENT OF FEES AND COSTS FOR

                                       FAILURE TO RETURN GARNISHEE'S

                                       MEMORANDUM

1

## I. INTRODUCTION

2

3      Reservoir moves for an order assessing personal joint and several liability, in

4      the amount of the unsatisfied portion of the judgment entered against Four Star

5      against Ronald I. Anson ("Anson"), Jack E. Garrett ("Garrett") and Mark Cohn

6      ("Cohn"). Anson, Garrett and Cohn are members of Four Star and are also

7      indebted to Four Star to the approximate amount of $2.5 million. Reservoir

8      personally served Anson, Garrett and Cohn with a Writ of Execution and Notice of

9      Levy which required them to turn over all funds and/or property held in the name

10     of and/or owed to Four Star. Anson, Garrett and Cohn failed to make any payment

11     to the levying office and failed to return a garnishee's memorandum.

12     Under Federal Rules of Civil Procedure 69, the District Courts are to employ

13     the procedures authorized under California law regarding enforcement of

14     judgments. *See, In re Levander*, 180 F3d 1114, 1121-1123 (9th Cir. 1999).

15     California Code of Civil Procedure ("CCP") §§701.010 and 701.020 impose

16     personal liability on third persons for failure to deliver property or make payments

17     to a levying officer under a valid execution writ. Additionally, CCP §701.030

18     permits recovery of attorney's fees and costs incurred in any proceeding to obtain

19     information required in a garnishee's memorandum against a third person who fails

20     to give the levying officer a garnishee's memorandum.

21

22

## II. STATEMENT OF FACTS

23     1. Reservoir is a judgment creditor of Four Star. Four Star is a limited

24     liability company that is active and in good standing with the State of California.

25     Four Star's principal place of business is at 11755 Wilshire Boulevard, Suite 1350,

26

11073/0001/440920.1                               - 4 -      MEMORANDUM OF POINTS AND AUTHORITIES IN

27                                                             SUPPORT OF MOTION FOR ORDER ASSESSING

                                                             LIABILITY AGAINST INDIVIDUALS FOR FAILURE

28                                                           TO MAKE PAYMENTS TO LEVYING OFFICER AND

                                                             FOR REIMBURSEMENT OF FEES AND COSTS FOR

                                                             FAILURE TO RETURN GARNISHEE'S

                                                             MEMORANDUM

1    Los Angeles, California  90025. Garrett and Anson are managing members of Four
2    Star. (DHC Decl. ¶ 2, Exhibit "A").

3         2.  On October 18, 2001, Reservoir obtained a judgment for $1,866,995.57
4    against Four Star in the United States District Court for the District of Maryland
5    (the "Judgment").  (DHC Decl. ¶ 3, Exhibit "B").

6         3.  Reservoir registered its Maryland District Court Judgment in the United
7    States District Court for the Northern District of California on January 11, 2002.
8    (DHC Decl. ¶ 4, Exhibit "C").

9         4.  On July 20, 2002, Reservoir and Four Star entered into a second
10   stipulation for installment payments of the judgment in this court under an
11   agreement entitled "Stipulation Modifying Judgments and Order Thereon"
12   (referred to as "Modified Judgment").  (DHC Decl. ¶ 5, Exhibit "D").

13        5.  Under the Modified Judgment, Four Star agreed to pay interest on the
14   unpaid judgment balance from and after June 24, 2002, at 15% interest per annum
15   and agreed to pay Reservoir's attorney's fees and costs incurred in its collection
16   efforts.  While Four Star made initial payments under that Modified Judgment, it
17   again defaulted. (DHC Decl. ¶ 6).

18        6.  As of May 27, 2003, the balance due and owing on the Modified
19   Judgment is $1,089,455.00.   (DHC Decl. ¶ 7, Exhibit "E").

20        7.  Through inspection of the limited financial statements Four Star has
21   produced, Reservoir learned that Four Star had made a personal loan to Anson,
22   Garrett and Cohn with an outstanding balance in excess of $2.5 million. (DHC
23   Decl. ¶ 8, Exhibits "F" & "G").

24        8.  Anson, Garret and Cohn are members and officers of Four Star.  (DHC
25   Decl. ¶ 2, Exhibit "A").

26        11073/0001/440920.1                    - 5 -    MEMORANDUM OF POINTS AND AUTHORITIES IN
27                                                               SUPPORT OF MOTION FOR ORDER ASSESSING
                                                                  LIABILITY AGAINST INDIVIDUALS FOR FAILURE
                                                                   TO MAKE PAYMENTS TO LEVYING OFFICER AND
28                                                                 FOR REIMBURSEMENT OF FEES AND COSTS FOR
                                                                   FAILURE TO RETURN GARNISHEE'S
                                                                   MEMORANDUM

1    9. On April 1, 2003, Garrett executed a declaration stating that Four Star has

2    no note or any other loan document regarding a loan of money from Four Star to

3    these members.  Garrett stated that the only record of the loan is a "General Ledger

4    entry." (DHC Decl. ¶ 10, Exhibit "H").  Notably, his declaration does not deny the

5    obligation or state that this loan has been paid.

6    10. On March 31, 2003, the Court issued a Writ of Execution ("Writ"). (DHC

7    Decl. ¶ 11, Exhibit "I").

8    11. The United States Marshal served Anson, Garrett and Cohn with the Writ

9    and Notice of Levy on April 8, 2003. (DHC Decl. ¶ 12, Exhibits "J").  The Notice

10   of Levy defined the property to be levied on as, "[A]ny and all funds and/or

11   property held in the names of and/or owed to Judgment Debtor, FOUR STAR

12   FINANCIAL SERVICES, LLC, including but not limited to notes payable,

13   contract debts, oral loan obligations, funds held in trust, pledges, cel art, or other

14   payables."

15   12. On April 9, 2003, Anson sent counsel for Reservoir a letter stating that he

16   was not in possession of any assets of Four Star. (DHC Decl. ¶ 13, Exhibit "K").

17   13. Similarly, Garrett sent counsel for Reservoir a letter stating that he was

18   not in possession of any assets of Four Star. (DHC Decl. ¶ 14, Exhibit "L").

19   14. Cohn did not respond to the levy.  (DHC Decl. ¶ 15).

20   15. Neither Anson, Garrett or Cohn delivered any property or made any

21   payments to the U.S. Marshal's Office. (DHC Decl. ¶ 16).

22   16. Neither Anson, Garrett or Cohn delivered memorandums of garnishee to

23   the U.S. Marshal's Office.  (DHC Decl. ¶ 17).

24

25

26   11073/0001/440920.1                    - 6 -        MEMORANDUM OF POINTS AND AUTHORITIES IN
27                                                        SUPPORT OF MOTION FOR ORDER ASSESSING
                                                         LIABILITY AGAINST INDIVIDUALS FOR FAILURE
28                                                       TO MAKE PAYMENTS TO LEVYING OFFICER AND
                                                         FOR REIMBURSEMENT OF FEES AND COSTS FOR
                                                         FAILURE TO RETURN GARNISHEE'S
                                                         MEMORANDUM

# III.  ARGUMENT

## A.  Failure to Comply with Levy:

CCP Section 701.010 provides in part,

(a) Except as otherwise provided by statute, when a levy is made by service of a copy of the writ of execution and a notice of levy on a third person, the third person at the time of levy or promptly thereafter shall comply with this section.

(b) Unless the third person has good cause for failure or refusal to do so:

(1) The third person shall deliver to the levying officer any of the property levied upon that is in the possession or under the control of the third person at the time of levy unless the third person claims the right to possession of the property.

(2) To the extent that the third person does not deny an obligation levied upon, or claim a priority over the judgment creditor's lien, the third person shall pay to the levying officer both of the following:

(A) The amount of the obligation levied upon that is due and payable to the judgment debtor at the time of levy.

11073/0001/440920.1                    - 7 -                MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR ORDER ASSESSING
LIABILITY AGAINST INDIVIDUALS FOR FAILURE
TO MAKE PAYMENTS TO LEVYING OFFICER AND
FOR REIMBURSEMENT OF FEES AND COSTS FOR
FAILURE TO RETURN GARNISHEE'S
MEMORANDUM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(B) **Amounts that become due and payable to the judgment debtor on the obligation levied upon during the period of the execution lien.** (emphasis added).

CCP §701.020 provides in part,

(a) If a third person is required by this article to deliver property to the levying officer or to make payments to the levying officer and the third person fails or refuses without good cause to do so, **the third person is liable to the judgment creditor for whichever of the following is the lesser amount:** (emphasis added).

(1) The value of the judgment debtor's interest in the property or the amount of the payments required to be made.

(2) The amount required to satisfy the judgment pursuant to which the levy is made.

Reservoir has submitted evidence obtained from Four Star that Anson, Garrett and Cohn owe Four Star over $2.5 million on an outstanding loan.  Garrett admits to the existence of the loan in his April 11, 2003, declaration.  The Notice of Levy defined the property to be levied on as, "[A]ny and all funds and/or property held in the names of and/or owed to Judgment Debtor, FOUR STAR FINANCIAL SERVICES, LLC, including but not limited to notes payable, contract debts, oral

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER ASSESSING LIABILITY AGAINST INDIVIDUALS FOR FAILURE TO MAKE PAYMENTS TO LEVYING OFFICER AND FOR REIMBURSEMENT OF FEES AND COSTS FOR FAILURE TO RETURN GARNISHEE'S MEMORANDUM

1    loan obligations, funds held in trust, pledges, cel art, or other payables." This

2    definition includes any outstanding loan obligation owing by Anson, Garrett and

3    Cohn to Four Star. The language of CCP §701.010(b)(2) requires Anson, Garrett

4    and Cohn to pay the amounts owing to Four Star (to the extent of the balance

5    owing on the Judgment) to the U.S. Marshal. While Garrett stated in his

6    declaration that there are no documents that evidence this personal loan other than

7    Four Star's General Ledger entries, his declaration implicitly admits to the

8    obligation. In addition, the letters Anson and Garrett sent in "response" to the writ

9    do not deny the loan obligation.

10    Once the judgment creditor has presented prima facie evidence of the

11    existence of a debt that a third person owes to the judgment debtor, the burden

12    shifts to the third person to show by a preponderance of the evidence that his or her

13    denial of the debt is made in good faith. *Evans v. Paye*, (1995) 32 Cal.App.4[th]

14    265,282, 37 Cal.Rptr.2d 915.

15    The principal balance that Anson, Garrett and Cohn owe to Four Star is over

16    $2,500,000. This sum is substantially more than the judgment balance of

17    $1,089,455 Four Star owes to Reservoir.

18    Anson, Garrett and Cohn have failed to tender any funds to the U.S. Marshal

19    and have not offered "good cause" for failing to tender funds as required by CCP

20    §701.020(a). As such, the law holds them personally liable to Reservoir for the

21    balance owing on the judgment.

22

23    **B. Failure to Provide Garnishee Memorandum**

24    CCP §701.030 provides in part,

25    (d) . . . if a third person does not give the levying officer a

26           MEMORANDUM OF POINTS AND AUTHORITIES IN
27                                                                SUPPORT OF MOTION FOR ORDER ASSESSING
                                                                LIABILITY AGAINST INDIVIDUALS FOR FAILURE
                                                                TO MAKE PAYMENTS TO LEVYING OFFICER AND
28                                                                FOR REIMBURSEMENT OF FEES AND COSTS FOR
                                                                FAILURE TO RETURN GARNISHEE'S
                                                                MEMORANDUM

1    garnishee's memorandum within the time provided in

2    subdivision (a) or does not provide complete information, the

3    third person may, in the court's discretion, be required to pay

4    the costs and reasonable attorney's fees incurred in any

5    proceedings to obtain the information required in the

6    garnishee's memorandum.

7

8        The failure to provide the U.S. Marshal with a garnishee's memorandum

9   supports a request by Reservoir to the Court for an award of attorneys' fees and

10  costs against Anson, Garrett and Cohn for having to obtain the information

11  through the Court. The only information provided by Anson and Garrett was a

12  letter stating they had no assets of Four Star in their possession. Paragraph 3 of the

13  memorandum of garnishee requires the garnishee to explain why money owed to

14  the judgment debtor is not being paid to the levying officer and to describe the

15  amount and terms of the obligation and the reason for not paying it to the levying

16  officer. Reservoir is entitled to this information.

17

## IV. CONCLUSION

18

19       Anson, Garrett and Cohn have not made the slightest effort to make

20  payments to the U.S. Marshal or explain why they have failed to do so. The

21  evidence is clear that Anson, Garrett and Cohn owe money to Four Star in an

22  amount that exceeds the judgment balance. Anson, Garrett and Cohn have refused

23  to comply with the writ of execution. They have turned over no money and have

24  not filed the garnishee memorandum.

25       This District Court can fashion a remedy for Reservoir pursuant to the

26    11073/0001/440920.1          - 10 -    MEMORANDUM OF POINTS AND AUTHORITIES IN

27                                  SUPPORT OF MOTION FOR ORDER ASSESSING
LIABILITY AGAINST INDIVIDUALS FOR FAILURE
TO MAKE PAYMENTS TO LEVYING OFFICER AND

28                                  FOR REIMBURSEMENT OF FEES AND COSTS FOR
FAILURE TO RETURN GARNISHEE'S
MEMORANDUM

1   California Code of Civil Procedure. If the Court holds Anson, Garrett and Cohn

2   personally liable for the amounts they should have paid to Reservoir up to the

3   balance owing on the judgment, Reservoir can obtain a writ of execution and

4   recover personal assets directly from Anson, Garrett and Cohn. This Court must

5   exercise its power to stop Anson, Garrett and Cohn from dismissing this Court's

6   authority and the applicable laws.

7         WHEREFORE, Reservoir prays that this Court assess personal liability

8   against Anson, Garrett and Cohn in the amount of the unsatisfied portion of the

9   judgment entered against Four Star and award Reservoir its reasonable attorneys'

10   fees and costs in having to seek Court assistance in obtaining the information

11   required in the garnishee memorandum.

12

13   DATED: August 7, 2003

14                               SEVERSON & WERSON
                                A Professional Corporation

15

16                               By: _Donald H. Cram III_

17                                  Donald H. Cram, III

18                               Attorneys for Plaintiff
                              RESERVOIR CAPITAL CORPORATION

19

20

21

22

23

24

25

26     11073/0001/440920.1             - 11 -        MEMORANDUM OF POINTS AND AUTHORITIES IN

27                                    SUPPORT OF MOTION FOR ORDER ASSESSING
                                    LIABILITY AGAINST INDIVIDUALS FOR FAILURE

28                                     TO MAKE PAYMENTS TO LEVYING OFFICER AND
                                    FOR REIMBURSEMENT OF FEES AND COSTS FOR
                                    FAILURE TO RETURN GARNISHEE'S
                                    MEMORANDUM