**EXHIBIT 12**

ORIGINAL

SQUAR, MILNER, REEHL & WILLIAMSON, LLP
  STEPHEN P. MILNER
  DEBORAH S. SLACK
4100 Newport Place, Suite 300
Newport Beach, California 92660
Telephone: (949) 222-2999
Facsimile: (949) 222-2989



FILED
FEB 10 2004
CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

ENTERED
FEB 11 2004

Proposed Accountants for
Richard A. Marshack, Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION



In re

FOUR STAR FINANCIAL SERVICES, LLC,

Debtor.

Case No. LA 03-37579 Ee TD

Chapter 11

**APPLICATION OF CHAPTER 11 TRUSTEE TO EMPLOY ACCOUNTANTS (SQUAR, MILNER, REEHL & WILLIAMSON, LLP) EFFECTIVE DECEMBER 11, 2003; AND ORDER THEREON;** LIST COMMENTS

[No Hearing Set Pursuant to Local Rule 2014(a)]

"LODGED"

TO THE HONORABLE ELLEN CARROLL, UNITED STATES BANKRUPTCY JUDGE:

Richard A. Marshack ("Applicant"), the duly-appointed, qualified and acting Chapter 11 Trustee for the estate of Four Star Financial Services, LLC ("Debtor") in this Chapter 11 case, hereby applies to this Court for authority to employ forensic accountants, Squar, Milner, Reehl & Williamson, LLP ("Firm"), to act as accountants in this case and respectfully represents:

1. This case was commenced by the filing of an involuntary petition for relief under Chapter 11 of the Bankruptcy Code on October 24, 2003. By order entered on December 11, 2003, Richard A. Marshack was appointed as the Chapter 11 Trustee.

1

APPLICATION

1   2.   Background: Four Star Financial Services, LLC allegedly raised

2  approximately $200,000,000 from a series of investors which were allegedly guaranteed

3  significant returns on their investments.  Throughout the life of the company and its

4  predecessor companies, the Firm understands that there were investments made in

5  various other entities and businesses in a wide array of industries.  The Firm is not yet

6  aware of the magnitude of the investments, the current status of those investments, or

7  the current status of all assets that may be available to ultimately pay creditors.  The

8  Trustee has asked that the Firm assist him in reviewing more than 800 boxes of books

9  and records as well as computers housing information relevant to the funds raised, the

10  investments made, and the current status of those investments.  At a minimum, there

11  are more than ten entities in which the Debtor holds an interest.  The Trustee requires

12  the forensic accounting services of the Firm to meet with various knowledgeable parties

13  and to analyze the Debtor's records to determine the nature and extent of the various

14  entities in which the Debtor may have an interest.

15   3.   In addition to the foregoing, the Trustee requires the services of the Firm to

16  do the following:

17   (a)   Prepare a report detailing the debtor's interest in various entities

18  and the possible value of those interests for the estate;

19   (b)   Obtain an understanding of the funds raised, the purpose of the

20  funds, returns paid, and whether investors may have been overpaid;

21   (c)   Analyze the books and records of the Debtor and make

22  recommendations to the Trustee as to whether there are any preference or fraudulent

23  transfer actions that should be commenced to recover additional monies for the benefit

24  of the creditors of the Debtor;

25   (d)   Assist in preparing an operating budget for use by the Trustee;

26   (e)   Prepare various schedules and information to support the Trustee

27  and his counsel in pursuing litigation;

28   (f)   Coordinate with various governmental agencies including, but not

APPLICATION

limited to, the Securities and Exchange Commission, the U.S. Postal Inspector, and the Federal Bureau of Investigation, all of whom have already had some investigatory involvement in the activities of the Debtor;

(g)     If requested by the Trustee, to prepare and/or review all income tax returns necessary and appropriate to be filed by the estate, along with respective requests for prompt determination of tax liability;

(h)     Perform any bookkeeping functions and/or reconstruct accounting records necessary to prepare income tax returns for the Debtor estate;

(i)     Perform an analysis of any tax claims, if requested by the Trustee, to determine accuracy and if appropriate, attempt to reduce tax liability of the estate;

(j)     Respond to any government agency tax notices filed with respect to Debtor estate tax returns;

(k)     Perform, if requested by the Trustee, tax analysis of proceeds received or to be received by the estate or tax analysis on any transaction entered into or to be entered into by the estate such as the sale of real or personal property; and

(l)     Obtain tax information such as previously filed income tax returns as required in order to prepare income tax returns, respond to tax claims and tax notices and/or perform requested tax analysis.

4.     For the foregoing and all other necessary and proper purposes, Applicant desires to retain generally the Firm, as accountants to the Trustee. Because the Firm is experienced in the fields of bankruptcy and insolvency, with a particular emphasis on fraud-related forensic accounting investigations, Applicant feels that said accountants are well qualified to render the foregoing services. A copy of the Firm's resume is attached hereto as Exhibit "A".

5.     The Firm has agreed to accept as compensation such sums as the Court may allow pursuant to 11 U.S.C. Sections 330 and 331. It is contemplated that said accountants will seek compensation based upon normal and usual hourly billing rates. The Firm's normal billing rates range from $50 to $390 per hour, depending on the

1   experience and expertise of the individual performing the work.  The Firm reserves the
2   right to increase these rates as time goes by.  A true and correct copy of the Firm's
3   current hourly rates is attached hereto and incorporated herein by reference as Exhibit
4   "B".

5       6.      The Firm has not shared or agreed to share such compensation with any
6   other person, except as among members of the Firm.

7       7.      The Firm has not received a retainer in this case for services to be
8   performed for the Debtor estate herein.

9       8.      To the best of Applicant's knowledge, and based upon the Statement of
10  Disinterestedness for Employment of Professional Person Under F.R.B.P. 2014 filed
11  concurrently herewith, neither the Firm nor any persons employed by the Firm, has any
12  connection with the Debtor, creditors, or any other party in interest, their respective
13  attorneys and accountants, the Judge of the Bankruptcy Court, the United States
14  Trustee, and any person employed by the Office of the United States Trustee, except
15  that from time to time, the Firm serves as accountants to the Trustee for other matters in
16  which Mr. Marshack serves as Trustee, or for other matters in which Jeffrey I. Golden,
17  Proposed Counsel to the Trustee, serves as Trustee.  The Firm refers matters to
18  Messrs. Marshack and Golden and their respective firm, and vice versa.  The Firm also
19  prepares the personal and corporate tax returns of Mr. Marshack as well as the
20  partnership tax returns for Albert, Weiland & Golden LLP.  In this case, the Applicant
21  believes the Firm does not hold or represent any interest adverse to that of the Debtor or
22  the Estate and said Firm is a  "disinterested person" within the meaning of 11 U.S.C.
23  Section 101(14).

24      9.      Applicant believes the employment of the Firm would be in the best
25  interests of the estate.

26  ///
27  ///
28  ///

4                                                          APPLICATION

1         10.    Because Applicant requires the services of Accountants immediately to

2    help him marshal the assets of the estate, he respectfully requests that this Honorable

3    Court enter its order approving the employment of the Firm effective December 11,

4    2003.

5         WHEREFORE, Applicant prays that he be authorized as of December 11, 2003,

6    to employ Squar, Milner, Reehl & Williamson LLP as his accountants, to render services

7    in the areas described above with compensation to be paid at the expense of the estate

8    in such amount as this Court may hereinafter determine and allow.

9

10   DATED: December _17_, 2003     Respectfully submitted,

11

12   By: _____
     **RICHARD A. MARSHACK**

13   Chapter 11 Trustee for Four Star Financial
     Services LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5                                    APPLICATION

## <u>ORDER</u>

Based upon the matters set forth in the foregoing APPLICATION OF CHAPTER 11 TRUSTEE TO EMPLOY ACCOUNTANTS (SQUAR, MILNER, REEHL & WILLIAMSON, LLP) EFFECTIVE DECEMBER 11, 2003,

**IT IS HEREBY ORDERED** that the foregoing Application is approved. The Firm's Employment is approved, effective December 11, 2003, to render services in the areas set forth in the Application, with compensation to be paid at the expense of the estate in such amount as this Court may hereinafter determine and allow

Dated:  2|10|04

THE HONORABLE *Thomas B. Donovin*
UNITED STATES BANKRUPTCY JUDGE

57 wt

1  <u>COMMENTS OF OFFICE OF THE UNITED STATES TRUSTEE</u>

2  (X)  AN OBJECTION IS RAISED AS SET FORTH BELOW.

3  COMMENTS:

4      The Supplemental Declaration of Stephen P. Milner to the

5  Statement of Disinterestedness in Support of the Application of

6  Chapter 11 Trustee to Employ Accountants (Squar, Milner, Reehl &

7  Williamson, LLP) clarifies in ¶3 thereto, that the Chapter 11

8  trustee's proposed accountant has been verbally engaged to prepare

9  the personal tax returns of the Chapter 11 trustee, his children

10  and a wholly owned corporation owed by the Chapter 11 trustee and

11  his wife.

12      Based on this relationship between the Chapter 11 trustee and

13  his proposed accountant, the OUST expresses its concern regarding

14  the degree of independence that the Chapter 11 trustee may be able

15  to exercise when reviewing proposed accountant's fee application if

16  the firm's employment is authorized by this Court.     Noted

17  DATED:  February 4, 2004                                JBW
                                                        2,10,04
18                              OFFICE OF THE U.S. TRUSTEE

19
                                BY: _____
20                              NAME: ALVIN MAR
                                ATTORNEY FOR THE U.S. TRUSTEE
21

22

23  CASE NAME:       In re FOUR STAR FINANCIAL SERVICES, LLC

24  CASE NUMBER:     LA 03-37579-EC

25  TYPE OF DOCUMENT: Application to Employ Accountant

26

27

28

1

# DECLARATION OF SERVICE BY MAIL

2

3    STATE OF CALIFORNIA
     COUNTY OF LOS ANGELES

4

5    I am employed in the County of Los Angeles, State of California, in the Office of the United States
     Trustee under the supervision of a member of the bar of this court at whose direction the service was
6    made; I am over the age of 18 and not a party to the within action; and my business address is
     725 South Figueroa Street, Suite 2600, Los Angeles California.

7

     On February 4, 2004, I served the foregoing document described as **COMMENTS OF OFFICE**
8    **OF THE UNITED STATES TRUSTEE** on the interested parties at their last known address in this
     action by placing a true and correct copy thereof in a sealed envelope with postage thereon fully
9    prepaid in the United States mail at Los Angeles, California, addressed as follows:

10   **CHAPTER 11 TRUSTEE:**
     RICHARD A. MARSHACK
11   26632 TOWNE CENTER DRIVE, SUITE 300
     FOOTHILL RANCH, CA 92610

12

     **PROPOSED COUNSEL TO THE CHAPTER 11 TRUSTEE:**
13   JEFFREY I. GOLDEN, ESQ.
     ALBERT, WEILAND & GOLDEN LLP
14   650 TOWN CENTER DRIVE, SUITE 950
     COSTA MESA, CA 92626

15

     **PROPOSED COUNSEL TO THE DEBTOR:**
16   ARTHUR GREEN BERG, ESQ.
     GREENBERG & BASSS
17   16000 VENTURA BLVD., SUITE 1000
     ENCINO, CA 91436

18

19   I declare under penalty of perjury that the foregoing is true and correct.

20   DATED: February 4, 2004

21

                                        Susan V. Trevino
22

23

24

25

26

27

28



**Squar, Milner, Reehl & Williamson, LLP**
*Certified Public Accountants and Financial Advisors*

4100 Newport Place, Suite 300
Newport Beach, California, 92660
(949) 222-2999
Facsimile (949) 222-2989

# RESUME OF QUALIFICATIONS

## The Firm

Established in 1982, the firm continues to provide financial, tax, accounting and business consulting services to a wide variety of commercial and industrial clients including small to medium-sized public companies. Although Squar, Milner, Reehl & Williamson, LLP ("Squar Milner") serves clients throughout the world, its primary area of service is Southern California. Employing approximately sixty professionals, the firm is able to provide the full range of services including:

- Audit and Accounting Services
- Tax Planning and Compliance
- Estate Planning
- Business Consulting
- Bankruptcy and Workout Services
- Dispute Resolution/Litigation Support
- Assignment for the Benefit of Creditors
- Management Consulting

- Expert Witness
- Business Valuation
- Financial Planning
- IT Consulting
- Mergers & Acquisitions
- Recapitalizations
- Receiverships
- Real Estate Practice

Each partner of the firm is either a Certified Public Accountant or a Certified Insolvency and Reorganization Accountant and in some instances holds both credentials. Additionally, each partner has over fifteen years of experience and each has gained additional expertise in, and is responsible for, specific areas of the firm's practice.

## The Bankruptcy Practice

The firm has been involved with insolvency matters since its inception, and expanded its commitment to the bankruptcy community in 1993 by acquiring the insolvency practice of Newport Financial Services.

The Firm has served as:

- Bankruptcy Examiner
- Accountant to Creditors' Committees
- Accountant to Debtors
- Accountant to Trustees
- Crisis Manager
- Reorganization Consultants
- Member of Creditors' Committee

## The Professionals

*Stephen P. Milner* is currently the firm's Managing Partner, Partner in the Real Estate Practice, and responsible for practices in the tax department, workouts, acquisitions and divestitures and strategic and operational planning. Attorneys, consultants, the courts, Judicial Arbitration and Mediation Services and the Resolution Trust Company have engaged Mr. Milner to investigate a variety of preferences, fraudulent acts and related party transactions on residential and commercial real estate projects.

Before joining the firm, Mr. Milner served as Chief Financial Officer for Indivest, Inc., a commercial real estate developer, and Vice President and Corporate Controller for Birtcher Real Estate. He also served as Senior Tax Consultant with Deloitte & Touche.

Education
LLM Taxation – National Law Center, The George Washington University
JD – Pepperdine University School of Law
BA English – University of California, Los Angeles

Professional Credentials
Certified Public Accountant, California
Member, California State Bar Association
Member, Orange County Bar Association
Certified Insolvency and Reorganization Accountant
Certified Tax Specialist, California State Bar Association
Editor, California Bankruptcy Journal
Member, Association of Insolvency Accountants
Member, Orange County Bankruptcy Forum
Member, California Mortgage Bankers Association
Author, California Bankruptcy Journal


*Steven M. Speier* is a Partner in the Bankruptcy and Business Consulting Group and serves as a Chapter 7 Bankruptcy Trustee and Judicial Receiver. He has over 27 years experience in business. His background encompasses extensive experience in several industries including public accounting, commercial and mortgage banking, and real estate. Mr. Speier has been appointed as a California State Court Receiver or Bankruptcy Trustee in hundreds of cases including office buildings, retail centers, condominium and apartment complexes, hotels/motels, industrial parks, restaurants, residential properties, and retail, professional and technology related businesses.

Prior to joining Squar Milner, Mr. Speier was president for seven years of the California subsidiary of a full service national real estate company that managed and leased in excess of 50 million square feet of commercial space. He was responsible for its growth from a start up company to a company employing 75 professionals and managing and leasing in excess of 5 million square feet of commercial space as well as thousands of apartment units. Mr. Speier has served as receiver and/or consultant on various commercial and multi-family real estate projects

as well as various businesses including hotels, motels, restaurants, golf courses, service businesses, evergreen nurseries, manufacturing companies and limited partnerships.

Mr. Speier began his business career in 1973 with the national public accounting firm of BDO Seidman, then managed by former FDIC Chairman, L. William Seidman. Shortly after receiving his designation as a CPA in 1975, he joined the banking industry.

Mr. Speier was appointed to the Chapter 7 Bankruptcy panel for the Central District of California on July 1, 1998.

Education
MBA, Seidman Graduate School of Business, Grand Rapids, Michigan
BS, Northern Michigan University
United States Air Force Academy (1968-1970)

Professional Credentials
Certified Public Accountant, Michigan (1975), California (1999)
Chapter 7 Bankruptcy Trustee, Central District of California
Judicial Receiver, Los Angeles Superior Court
Real Estate Broker, Colorado (1984), California (1991), Missouri (1995)
Member, Board of Directors, City of Hope

***Scott C. Burack*** is a Partner in the Firm. Scott is a CPA as well as an attorney having earned his undergraduate degree in Business Economics with an emphasis in Accounting from the University of California at Santa Barbara, and his Juris Doctor from Loyola Law School at Los Angeles. Scott practices in the areas of income, estate and gift tax as well as bankruptcy taxation. His affiliations include membership in the American Institute of Certified Public Accountants, California State Bar, Orange County Bar Association and Orange County Bankruptcy Forum.

Scott co-authored "Foreclosures, Private Sales and Deeds-in-Lieu in California: Understanding and Planning for the Debtor's Tax Consequences" published in the California Bankruptcy Journal. He is also a contributor to the treatise The Law of Distressed Real Estate, having co-wrote the chapter *"Tax Consequences to Borrowers, Investors, and Lenders."* Scott has been a speaker on various tax matters at educational programs of the Orange County Bar Association and Orange County Bankruptcy Forum.

Education
JD – Loyola Law School of Los Angeles
BA Business Economics – University of California, Santa Barbara

Professional Credentials
Certified Public Accountant, California
Member, California State Bar Association
Member, Orange County Bar Association

Member, Orange County Bankruptcy Forum
Author, California Bankruptcy Journal
Contributing Author, Law of Distressed Real Estate
Speaker, Orange County Bar Association
Speaker, Orange County Bankruptcy Forum.


*Raymond H. Hermanson* is a Partner practicing in the firm's Audit and Accounting Services Department. Mr. Hermanson is responsible for providing day-to-day field supervision of the firm's professional audit staff and planning audits. In addition, he emphasizes the development and maintenance of a close working relationship with the firm's clients. Before joining the firm, Mr. Hermanson was a Senior Auditor at KPMG Peat Marwick, spent five years as Controller and Director of a California operations for a manufacturing subsidiary of a Fortune 500 firm, and spent approximately five years in private practice in Newport Beach performing tax related services for manufacturing, contractors, real estate development and property management companies.

Education
BA In Economics and Accounting – Claremont McKenna College, Claremont, California

Professional Credentials
Certified Public Accountant, California
Member, American Institute of Certified Public Accountants
Chairman, North Orange County Discussion Group of California Society of CPAs
Board of Directors, California Society of CPAs, Orange County/Long Beach Chapter
Chairman, Newport/Irvine Discussion Group of the California Society of CPAs
Moderator for the Access Education Programs of the California Society of CPAs.


*Ronald R. Williamson* is the Partner-in-Charge of the firm's Tax Services Department, with over 20 years experience in public accounting. Mr. Williamson's background encompasses diverse experience in several industries including manufacturing, distribution and real estate. He also has extensive experience in general business consulting, with significant "hands-on" experience negotiating corporate sales/mergers/acquisitions, divisional spin-offs, due diligence, guidance on succession planning for closely-held businesses and financial of the small and medium size business.

Prior to joining the firm, Mr. Williamson was a Managing Partner at BDO Seidman, LLP. He was with the firm of BDE Seidman for twelve years.

Education
BA Economics – University of California, Los Angeles

Professional Credentials
Certified Public Accountant, California
Member, American Institute of Certified Public Accountants

Member, Orange County/Economic Development Consortium
Rancho Santiago International Business Advisor Board.

***Christy B. Reehl*** is a Consultant and former Partner in Bankruptcy and Business Consulting Group, responsible for all bankruptcy related matters. For fifteen years prior to joining the firm, Mr. Reehl served as Managing Director of Newport Financial Services, a firm engaged in providing financial and accounting services with emphasis on insolvency matters. Prior to founding Newport Financial Services, he served as Chief financial Officer of a public company engaged in the manufacture and sale of computer mainframes and President of a $40 million division of a Fortune 500 (NYSE) textile company. Mr. Reehl also spent approximately ten years with Price Waterhouse winding up as Managing-in-Charge of the management consulting practice in the firm's Sacramento office.

Mr. Reehl has been involved in over a hundred bankruptcy cases representing debtors, creditors, creditors' committees, trustees and has served in several engagements as a Crisis Manager and Bankruptcy Examiner.

Education:
BS Accounting – University of California, Berkeley
MBA Finance – University of California, Berkeley

Professional Credentials:
Certified Public Accountant, California (CPA)
Certified Insolvency and Reorganization Accountant (CIRA)
Bankruptcy Mediator
Bankruptcy Examiner
Member of the Board, Orange County Bankruptcy Forum
Member, American Bankruptcy Institute
Member, American Institute of Certified Public Accountants
Member, Association of Insolvency Accountants
Member, National Association of Certified Valuation Analysts
Speaker, Orange County Bar Association – Commercial Law and **Bankruptcy** Section
Speaker, Orange County Bankruptcy Forum sponsored seminar
Speaker, Seminars on Accounting Topics – various Orange County law firms
Author, California Bankruptcy Journal.

Selected Bankruptcy & L      ition Professionals:

*Deborah S. Slack* is a Senior Manager in the Bankruptcy and Business Consulting Practice. She has over 12 years experience in bankruptcy, receiverships, and litigation. She has served as a Chapter 11 Trustee and as an Instructor on the Trustee's Role in Bankruptcy for the University of California, Irvine. Ms. Slack has been involved in thousands of bankruptcy cases serving on behalf of trustees, debtors, creditors, and creditors' committees. Prior to joining Squar Milner, Ms. Slack was the Director of Trustee and Receivership Services at Marshack, Shulman, Hodges & Bastian, LLP. In addition, she has worked with a number of companies outside of the bankruptcy arena, in structuring out of court workouts, in addition to lost profits calculations for businesses involved in litigation.

Ms. Slack's work experience also includes business consulting for Deloitte & Touche, where she grew a national practice in risk management for health care plans and providers. In addition, she served as the Director of Professional Services for a business process automation company, where she helped companies such as Goodyear, Honeywell, DaimlerChrysler, and GE Capital understand and implement technology solutions to improve their time inventory management.

Education:
BA – Claremont McKenna College
MBA – University of California, Irvine

Professional Credentials:
Certified Insolvency & Restructuring Advisor (CIRA)
Member, Officer & Director, Orange County Bankruptcy Forum
Member, Inland Empire Bankruptcy Forum
Member, Association of Insolvency and Restructuring Advisors
Member, International Women's Insolvency and Restructuring Confederation
Member, Association of Certified Fraud Examiners
Member, Forum for Corporate Directors

*Katherine Gough* is a Senior Manager in the Bankruptcy and Business Consulting Practice. Her services include providing accounting, analytical, investigative and administrative support in litigation, bankruptcy and receivership engagements.

Prior to joining Squar, Milner, Reehl & Williamson, LLP in 1993, Mrs. Gough was the financial analyst at Olen Properties Corporation. She was responsible for preparation of cash flow forecasts, reconciliation of general ledger accounts, and preparation of Interim and Operating reports. She also performed analyses of over 40 individual property financial statements.

From 1980 to 1991, Mrs. Gough was the financial accountant for Odetics, Inc. There she reported directly to the controller. She was in charge of preparing the financial statements, supporting workpapers, and the reconciliation of general ledger accounts. Mrs. Gough had direct interface with independent auditors and assistance in the annual audit. She was also responsible for the preparation of cash flow forecasts and the preparation of adjusting journal entries.

Professional Credentials:
Member, Orange County Bankruptcy Forum

# SQUAR MILNER

## Billing Rates

### July 1, 2003

| Staff ID | Name | Std.Rate | Staff ID | Name | Std.Rate |
|---|---|---|---|---|---|
| 179 | Abbott, Alec | $ 320 | 181 | McCormick, Scott | $ 130 |
| 262 | Adams, Brad | $ 100 | 207 | McNally, Dennis | $ 275 |
| 176 | Brooks, Paulette | $ 145 | 222 | Miller, LaTonya | $ 60 |
| 082 | Burack, Scott | $ 320 | 012 | Milner, Stephen | $ 390 |
| 246 | David, Joseph | $ 120 | 248 | Moore, Vernon | $ 310 |
| 260 | Ducale, Katy | $ 100 | 241 | Morvant, Linda | $ 110 |
| 252 | Dvorakova, Eva | $ 100 | 261 | Nagaty, Mostafa | $ 100 |
| 215 | Flores, Stephen | $ 115 | 060 | Oates, Kristi | $ 220 |
| 097 | Gough, Katherine | $ 200 | 256 | Oenning, Brent | $ 150 |
| 169 | Gough, Matthew | $ 65 | 232 | Parsell, Jeff | $ 130 |
| 190 | Gough, Kevin | $ 65 | 170 | Penaloza, Chelsea | $ 100 |
| 162 | Guillen, Rick | $ 165 | 100 | Perez, Suzanne | $ 165 |
| 198 | Hamdy, Ahmed | $ 175 | 204 | Perkins, Jason | $ 125 |
| 257 | Han, Rhonda | $ 120 | 249 | Price, Tony | $ 185 |
| 197 | Hattox, William | $ 220 | 080 | Reehl, Chris | $ 320 |
| 059 | Hegg, Jennifer | $ 220 | 259 | Shirley, Robert | $ 185 |
| 128 | Hermanson, Raymond | $ 320 | 250 | Shoemaker, Tom | $ 140 |
| 214 | Hinshaw, Barbara | $ 105 | 185 | Speier, Steven | $ 320 |
| 144 | Howard-Browne, Jill | $ 105 | 240 | Skipwith, Naytalia | $ 60 |
| 201 | Jackson, Scharrell | $ 175 | 255 | Slack, Debby | $ 285 |
| 223 | Johnson, Tammy | $ 170 | 224 | Tate, Tamara | $ 100 |
| 171 | Leckich, Jeffrey | $ 310 | 161 | Torre, Gabe | $ 155 |
| 188 | Lietzow, Michael | $ 155 | 264 | Tran, Diane | $ 45 |
| 011 | McCarty, Carol | $ 215 | 263 | Truong, Sydney | $ 100 |
| 211 | McCauley, Elizabeth | $ 130 | 213 | Williamson, Brian | $ 75 |
| | | | 004 | Williamson, Ronald | $ 390 |

Updated: 08/25/2003

Exhibit B   Page 14

1                       **PROOF OF SERVICE BY MAIL**

2   STATE OF CALIFORNIA

3   COUNTY OF ORANGE

4

5          I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 4100 Newport

6   Place, Suite 300, Newport Beach, California 92660.

7          On ___12/22___, 2003, I served the foregoing documents described as:
  **APPLICATION OF CHAPTER 11 TRUSTEE TO EMPLOY ACCOUNTANTS (SQUAR,**

8   **MILNER, REEHL & WILLIAMSON, LLP) EFFECTIVE DECEMBER 11, 2003** on the
  interested parties in this action by placing a true copy thereof enclosed in a sealed

9   envelope addressed as follows:

10   Office of the United States Trustee
  725 S. Figueroa Street, 26th Floor

11   Los Angeles, CA 90017

12   Chapter 11 Trustee

13   Richard A. Marshack
  26632 Towne Center Drive, Suite 300

14   Foothill Ranch, CA 92610

15   Proposed Counsel to the Chapter 11 Trustee

16   Jeffrey I. Golden, Esq.
  Albert, Weiland & Golden LLP

17   650 Town Center Drive, Suite 950

18   Costa Mesa, CA 92626

19   Proposed Counsel to the Debtor
  Arthur Greenberg, Esq.

20   Greenberg & Bass
  16000 Ventura Blvd., Suite 1000

21   Encino, CA 91436

22

23   ___X___      (BY MAIL) I caused such envelope with postage thereon fully prepaid to
               be placed in the United States mail at Newport Beach, California.

24   _____      (BY PERSONAL SERVICE) I caused such envelope to be delivered by
               hand  to the offices of the addressee.

25   _____      (VIA TELECOPY)  I caused the above-mentioned document(s) to be
               telecopied to the parties named on the attached list.

26   _____      (BY OVER NIGHT MAIL) I caused such envelope to be delivered

27                      via Overnight Express.

28          Executed on December 22, 2003, at Newport Beach, California.  I declare
  under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Deborah S. Slack

| In re                                (SHORT TITLE)     |               | CHAPTER 11                 |
|--------------------------------------------------------|---------------|----------------------------|
| **FOUR STAR FINANCIAL SERVICES LLC**                   | Debtor(s).    | CASE NO.: LA 03-37579 EC   |

## NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

### TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

1.     You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(1)(a)(iv), that a judgment or order entitled (specify):

**APPLICATION OF CHAPTER 11 TRUSTEE TO EMPLOY ACCOUNTANTS (SQUAR, MILNER, REEHL & WILLIAMSON, LLP) EFFECTIVE DECEMBER 11, 2003; AND ORDER THEREON**

**Hearing date:**     **No hearing set.**
**Hearing time:**

was entered on (specify date): ___FEB 11 2004___

2.     I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on (specify date):

Dated: ___FEB 11 2004'___

JON DAVID CERETTO
Clerk of the Bankruptcy Court

By: _____
       **Deputy Clerk**

## SERVICE LIST

Office of the United States Trustee
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

**Chapter 11 Trustee**
Richard A. Marshack
26632 Towne Center Drive, Suite 300
Foothill Ranch, CA 92610

**Proposed Counsel to the Chapter 11 Trustee**
Jeffrey I. Golden, Esq.
Albert, Weiland & Golden LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626

**Proposed Counsel to the Debtor**
Arthur Greenberg, Esq.
Greenberg & Bass
16000 Ventura Blvd., Suite 1000
Encino, CA 91436

**Proposed Accountants to the Chapter 11 Trustee**
Deborah S. Slack
Squar, Milner, Reehl & Williamson, LLP
4100 Newport Place, Suite 300
Newport Beach, CA 92660

**EXHIBIT 13**

ORIGINAL

1  STEVEN C. HOLTZMAN (SBN 144177)
   BRENDAN GLACKIN (SBN 199643)
2  KEVIN BARRY (SBN 229748)
   BOIES, SCHILLER & FLEXNER LLP
3  1999 Harrison Street, Suite 900
   Oakland, California 94612
4  Telephone: (510) 874-1000
   Facsimile: (510) 874-1460
5
   Attorneys for Plaintiffs
6
7
8

**FILED**
LOS ANGELES SUPERIOR COURT

FEB 1 3 2004

JOHN A. CLARKE, CLERK

BY JENNY CHEA, DEPUTY

*Judge Assign*
*Mary Ann Murphy*

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9  IN AND FOR THE COUNTY OF LOS ANGELES

10

11  COLIN GILBERT, as trustee for CMG Family
    Irrevocable Trust,
12  PHYLLIS KLEIN,
    KENNETH L. KRAUS and PERRY GIBSON, as
13  trustees for the Kraus/Gibson Revocable Trust of
    1987,
14  JEFF SIMON,
    and GARRISON SINGER,
15
         Plaintiffs,
16
    vs.
17
    MARK F. COHN,
18  JACK GARRETT,
    RONALD ANSON,
19  ROBERT LIPP,
    CONDOR INVESTMENTS,
20  ANSON GARRETT AND CO.,
    FSF LLC,
21  COHN AMERICA CO.,
    GEORGINA ASSET MANAGEMENT LLC,
22  and DOES 1-50,
23       Defendants.

BC310846

CASE NO._____

**CLASS ACTION COMPLAINT**

  **I. CORPORATIONS CODE § 25500**
  **II. FRAUD**
 **III. BREACH OF FIDUCIARY DUTY**
 **IV. CAL. BUS. & PROF. CODE § 17200**
  **V. NEGLIGENT**
     **MISREPRESENTATION**
 **VI. NEGLIGENCE**

**DEMAND FOR JURY TRIAL**

24       NOW COME THE PLAINTIFFS, Colin Gilbert (as trustee for CMG Family Irrevocable

25  Trust), Phyllis Klein, Kenneth L. Kraus and Perry Gibson (as trustees for the Kraus/Gibson

26  Revocable Trust of 1987), Jeff Simon, and Garrison Singer (collectively "Plaintiffs") by and

27  through their attorneys Boies, Schiller & Flexner LLP, and allege as follows, on personal

28  knowledge where possible and on information and belief as to all other matters:

1

COMPLAINT

GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

1.    Plaintiffs seek to recover, on their own behalf and on behalf of all others similarly situated, damages arising from a Ponzi scheme operated through a company called Four Star Financial LLC ("Four Star"). The word "Plaintiff" in this Complaint should be read to include both the individually named plaintiffs and the members of the plaintiff class.

2.    A Ponzi scheme is a simple but sophisticated fraud. The operators of the scheme lure initial investors by combining a legitimate-sounding opportunity with a promise of high returns, regularly paid. They build a history of profitability by secretly distributing invested capital in the form of "profit." The regular generation of substantial "profits" lures more and more investors bearing capital that is leveraged to pay "profits" to both new and old investors. The operators surround the "investment" with a veil of secrecy, ostensibly to protect "sensitive deals" that might fall apart if subjected to too much scrutiny.  When the scheme collapses (as it must), the operators, who by this time have concealed or absconded with substantial profits of their own, bewail and bemoan the failure of a supposedly legitimate enterprise. Despite its history and notoriety, the scheme is regularly perpetrated on unwitting victims even to the present day.

3.    The Ponzi scheme is named for Carl Ponzi, who in 1920 netted $2 million from thousands of victims using just this program. Ponzi told investors about a clever plan he had discovered for converting an "international exchange coupon" into American postage stamps worth six times its face value. Ponzi promised to pay $150 in 45 or 90 days on an initial investment of $100. Ponzi ultimately took in $9.8 million, as enthusiasm for his investment grew based on the $7.8 million in "profits" he simultaneously returned. Investigations and bad press, however, dried up the flow of investment and the scheme ultimately collapsed. Ponzi served four years in prison.

4.    Defendants operated a similar program of fraud. Cohn, Anson and Garrett created Four Star in or around 1997 and, with Lipp, began soliciting funds at around the same time. The Defendants solicited hundreds of millions of dollars based on the assurance that Four Star was a legitimate company engaging in "safe" factoring and arbitrage telecommunications investments

2

COMPLAINT

1   with a high and fixed rate of return. Defendants characterized "factoring" as a form of short-term

2   bridge financing of pay-per-call services, such as 900 numbers. They described Four Star's

3   arbitrage activities as the re-packaging of long-distance telephone minutes by, for instance,

4   buying minutes from New York to Canada and Canada to London and re-selling them as minutes

5   from New York to London. Four Star maintained a regular history of paying monthly returns of

6   approximately 14%-16% on an annual basis, and Defendants repeatedly used this history of

7   regular fixed payments as a basis for soliciting new money. Defendants also encouraged

8   Plaintiffs to "roll over" (i.e. not collect) their distributions and discouraged them from attempting

9   to withdraw their capital.

10          5.      Defendants solicited funds, both at Four Star's inception and on an ongoing basis,

11   through at least three mechanisms: purchase of "memberships" in Four Star, "cash flow notes",

12   and agreements for individual "arbitrage" deals. Each of the agreements memorializing these

13   investments, including Four Star's Private Placement Memorandum dated June 30, 1997,

14   contained numerous material misrepresentations, such as the following:

15          • payments would only be made from cash flowing from Four Star's operations;

16          • capital would only be used to pay certain operating expenses and to fund

17             telecommunications and bridge financing;

18          • capital would only be invested in positions secured by accounts receivable

19             from companies in the telephone industry or in investments where the principal

20             was guaranteed by a rated insurance company;

21          • management's $750,000 annual fees would only be paid to the extent that the

22             company had net income;

23          • the principal was "safe";

24          • return of principal was unconditionally guaranteed.

25          6.      These representations were all false. Four Star did not invest in secured positions,

26   bridge financing, or accounts receivable in the telecommunications industry. Defendant Cohn

27   himself has admitted that Four Star did not earn a net profit in any year from 1998 forward,

28   notwithstanding that it made regular distributions to Plaintiffs up until the Fall of 2002. As Cohn

COMPLAINT

1    has further admitted, these payments came not from income or cash from operations, but rather

2    constituted re-distributions of capital.  Notwithstanding the lack of actual earnings, Defendants

3    collected millions in "management fees" each year and, according to Cohn, extracted millions

4    more in addition to those fees in the form of fraudulent "expense reimbursements."  Whatever

5    funds Defendants did not distribute as fictitious "interest payments" or converted to their own use

6    were, according to Defendants, dissipated in what can only be described as harebrained

7    speculation: investment in distressed Argentinean bank paper, in leases for South American

8    emerald mines, in Speed Racer and Teenage Mutant Ninja Turtles animation art, in boiler rooms

9    practicing telemarketing fraud (for which Cohn and Four Star have been criminally convicted in

10   Maryland), and other ridiculous schemes.  These are the classic facts of a Ponzi scheme.

11        7.    Defendants used the foregoing material misrepresentations, namely that capital

12   was safely invested in legitimate activities that produced regular profits for distribution, to induce

13   Plaintiffs to invest in Four Star or loan Four Star money, and to make further additional

14   investments in and loans to Four Star.  Plaintiffs justifiably relied on these misrepresentations,

15   which Defendants made with an actual intent to defraud, and have suffered losses as a result.

16        8.    Defendants offered regular reassurances in order to conceal the nature of Four

17   Star's activities and thereby forestall the collapse of Four Star.  These additional

18   misrepresentations, made with the intent to defraud, delayed the discovery of Defendants'

19   fraudulent scheme and encouraged yet more investments and loans.

20        9.    For instance, Defendant Garrett stated in a January 4, 2001, letter to all Plaintiffs

21   that Four Star and its predecessor firm had "experienced steady growth and profitability" since

22   1992.  In fact, although Four Star may have experienced a "steady growth" in the amount of

23   capital acquired pursuant to Defendants' scheme ,Four Star, as Defendant Cohn has admitted,

24   had in fact never been profitable since its inception.

25        10.   Furthermore, maintaining a fraud of this nature over such a long period of time

26   required highly creative accounting and the use of fraudulent financial statements.  Defendants

27   used a maze of transactions through attorney trust accounts and shell corporate entities to shuffle

28   money in and out of Four Star while at the same time always assuring that a little bit seeped away

1  into their own pockets. These "transactions" created the appearance of legitimate economic

2  activity and provided a basis for the fictitious accounting statements provided to Plaintiffs, for the

3  purpose of preventing discovery of the fraud and bringing even more money into Four Star.

4      11.    The demise of Four Star also shows the classic elements of a Ponzi scheme.

5  Defendants at first delayed the "interest payments" and distributions in August 2002, and stopped

6  them altogether soon thereafter. To allay concerns over this development, Defendants

7  represented that Four Star had entered into a complex and "secret" deal that would result in rich

8  dividends. Details were never given; instead, Defendants conveniently claimed that a "non-

9  disclosure agreement" mandated that the nature of the transaction be kept secret. They only told

10  Plaintiffs that the deal was very lucrative and nearly consummated. When Plaintiffs gradually

11  demanded more information, Defendants told them that the deal involved the sale of long distance

12  arbitrage contracts in Argentina, in exchange for CDs issued by an Argentinean bank. These CDs

13  would then be sold to a group of Saudi Arabian purchasers who would pay millions more than the

14  cost of the "arbitrage" contracts. Defendants maintained a veil of mystery around this transaction

15  by telling Four Star's investors that any outside examination would cause the deal to fall apart,

16  leading to the failure of Four Star and the loss of its assets.

17      12.    On October 29, 2002, Defendants wrote that:

18          "We recently sent you a letter in mid-September announcing Four
           Star's plan to sell approximately $100 million of it's [sic] portfolio
19          at a significant premium to asset cost. This transaction is still
           subject to a strict Non-Disclosure Agreement." **** "It should be
20          noted that our position [in this transaction] has at all times been
           very well secured." **** "We are confident that the decision we
21          have made, which may require some interim sacrifice on behalf of
           our investors over the short term [cessation of interest payments],
22          will benefit the company financially and help us secure our ability
           to service your goals over the long term."
23
24      13.    This letter contained a number of significant misrepresentations. First, there was

25  nothing remotely approaching $100 million in value within Four Star's portfolio. Second, there

26  was no such transaction to sell Four Star assets, as the company had no assets to sell. Third, even

27  taking Four Star at its word, that an investment in Argentina actually took place, Defendant Cohn

28  has more recently contended that the most that was committed to this purported investment was a

5

COMPLAINT

few million dollars, a far cry from the $100 million represented to Plaintiffs. Finally, as seen by

the total loss of any recovery from this purported deal, Four Star's position was not secured by

anything.

14.    On December 20, 2002, Defendants wrote that:

> "In recent correspondence, we advised you of a large transaction
> which we [*sic*] has been pending. This transaction is proceeding
> much slower than originally anticipated; however, it is moving in a
> forward direction toward closing. We still anticipate that the final
> closing should be within the first quarter of 2003. As has been
> previously mentioned, it is anticipated that there will be significant
> investor pay downs at that time.
>
> With regard to other aspects of the portfolio, we are pleased to
> report that there has been significant progress. Specifically, other
> Four Star investments are beginning to produce increases in cash
> flows. However, it will take some time to build up a cash surplus
> for the company, at which time distributions will recommence."

15.    Inasmuch as there were no other prospects for Four Star at the time, Defendants'

assurance that distributions would recommence was false. Nevertheless, Defendants continued to

assure Plaintiffs that this would be the case.

16.    On March 31, 2003, Defendants wrote that:

> "The key projects on which Four Star has been working are still
> pretty much on track. We did anticipate certain closing [*sic*] by the
> end of the quarter, i.e., March 31. While it appears that this will not
> occur, we do anticipate these closings within the next three to eight
> weeks. That should then put the Company in a position to be
> making distributions on a going forward basis. At this time, we are
> of the view that future distributions will be occurring on a regular
> basis."

17.    These statements were also manifestly false. Four Star had no "key projects" that

would ever show profits or allow the return of capital and the managers of Four Star did not

actually anticipate any "closings" that would allow Four Star to "make distributions on a going

forward basis." No such transactions existed.

18.    Defendants' efforts to stonewall and delay Plaintiffs' attempts to recover their

capital largely succeeded, as Defendants reported in yet another letter to Plaintiffs on May 8,

2003:

> "This letter is intended to provide a further update as to steps being
> taken by management of Four Star. First, we would note that we

6

COMPLAINT

believe that we are still on the track outlined in the March 31, 2003 letter. In response to all previous inquiries concerning the number of people who wish to withdraw money versus the number of people who did not, something less than 27% of Four Star's investor base has requested the return of their capital."

19.    The May 8 letter then proceeded to perpetuate the false image of a legitimate company in need of nothing more than slight restructuring. To that end, the letter proposed a 1/3 reduction in distributions in order to permit the company to pursue "prudent investing." The letter included a ballot for Plaintiffs to accept this reduction. As Four Star had not been engaging in legitimate investing, this election to lower returns was a smokescreen designed to encourage Plaintiffs to take a "wait and see" approach and to further delay their discovery of the truth – that there was little or nothing to invest.

20.    In addition to these written misrepresentations, Defendants made numerous false statements in conversations with Plaintiffs. They repeatedly assured Plaintiffs that the company only invested in safe, secure, and lucrative investments. They described Four Star as well-secured and Plaintiffs' principal as safe. Defendants characterized Four Star's investments as "very safe," sitting somewhere between municipal bonds and U.S. bank CDs on a continuum of security. Further, Defendants assured Plaintiffs that Four Star had sufficient assets that even if none of the investments paid out and the company were liquidated, all principal would be repaid. All of these representations were false, in that capital was not used in investments at all, but rather went either to pay the "distributions" that maintained the fraudulent scheme or into Defendants' pockets.

21.    As time went on, and none of the fruits of the "Argentina Deal" materialized, Defendants continued their campaign to put off the day of reckoning. Defendants repeatedly told Plaintiffs that the transaction would close soon and that it was only a matter of days or weeks until the money came rolling in. They told some Plaintiffs that delay was actually a positive development, for once the deal was closed, Four Star would be shut down and no longer generate "revenue" for Plaintiffs. Defendants told other Plaintiffs that Four Star would take the opportunity to "buy out" smaller participants to focus exclusively on its largest members and note holders.

7

1    22.    When the profits and return to cash-flow solvency failed to materialize,

2    Defendants told Plaintiffs that the Argentinean banks had refused to honor Four Star's CDs and

3    suggested that Four Star itself (!) had been the victim of fraud by the purchasers of its "arbitrage"

4    contracts. This further postponed the collapse of Four Star.

5    23.    Today, according to Defendants, Four Star has, at best, virtually no assets other

6    than highly speculative contingent claims arising from its investment "activities," such as they

7    were, which did not involve safe or profitable bridge financing or arbitrage investments as

8    Plaintiffs were led to believe. Defendants' actions were malicious, fraudulent, oppressive, and

9    intended to injure Plaintiffs. Whatever the true state of affairs, it is plain that whatever

10    Defendants did not distribute or manipulate to maintain the illusion of a successful business, they

11    stole for themselves.

12                                          PARTIES

13                                         PLAINTIFFS

14    24.    Plaintiff Colin Gilbert, trustee for CMG Family Irrevocable Trust, resides in

15    Beverly Hills, California and has lost over $200,000 as a result of Defendants' acts. He seeks

16    restitution, disgorgement, damages, punitive damages, and attorney's fees against Defendants on

17    his own behalf, on behalf of the CMG Family Irrevocable Trust, and as a private attorney general

18    on behalf of the general public of the state of California.

19    25.    Plaintiff Phyllis Klein resides in Marina del Rey, California. She has lost over

20    $1,000,000 as a result of Defendants' acts. She seeks restitution, disgorgement, damages,

21    punitive damages, and attorney's fees against Defendants on her own behalf and as a private

22    attorney general on behalf of the general public of the state of California.

23    26.    Plaintiffs Perry Gibson and Ken Kraus, a married couple, reside in Nashville,

24    Tennessee. They are trustees of the Kraus/Gibson Revocable Trust of 1987. This trust loaned

25    over $2,000,000 in Four Star through a cash flow note. They seek restitution, disgorgement,

26    damages, punitive damages, and attorney's fees against Defendants on their own behalf and as

27    private attorneys general on behalf of the general public of the state of California.

28    27.    Plaintiff Jeff Simon resides in Culver City, California. He has lost over $100,000

                                              8

COMPLAINT

1    as a result of Defendants' actions. He seeks restitution, disgorgement, damages, punitive

2    damages, and attorney's fees against Defendants on his own behalf and as a private attorney

3    general on behalf of the general public of the state of California.

4         28.    Plaintiff Garrison Singer resides in Phoenix, Arizona. He has lost over $600,000

5    as a result of Defendants' actions. He seeks restitution, disgorgement, damages, punitive

6    damages, and attorney's fees against Defendants on his own behalf and as a private attorney

7    general on behalf of the general public of the state of California.

8    <div align="center">DEFENDANTS</div>

9    <div align="center">FOUR STAR'S MANAGERS</div>

10        29.    Defendant Mark F. Cohn ("Cohn") resides in Redwood City, California. Cohn

11   was the Executive Vice President, General Counsel and a Manager of Four Star. Cohn is an

12   attorney formerly admitted to practice in California. In the wake of a federal felony conviction

13   (on multiple counts) for operating a fraudulent telemarketing scheme targeting persons with

14   distressed credit histories, Cohn resigned his license to practice law. Cohn has been sentenced to

15   almost five years in prison as a result of that conviction.

16        30.    Defendant Ronald Anson ("Anson") is a certified public accountant currently

17   residing in Los Angeles, California. Anson was the Chief Financial Officer and a Manager of

18   Four Star.

19        31.    Defendant Jack Garrett ("Garrett") is a certified public accountant currently

20   residing in Calabasas, California. Garrett was the President and a Manager of Four Star.

21        32.    Defendants Anson, Garrett, and Cohn have worked together for more than ten

22   years. Each of these Defendants orchestrated and managed every aspect of the fraudulent scheme

23   known as Four Star. Anson and Garrett operate their accounting firm out of Four Star's offices,

24   and used their status as accountants to solicit money on behalf of Four Star. Cohn, Anson and

25   Garrett each prepared fraudulent statements and agreements for distribution to Plaintiffs,

26   including Four Star's fraudulent financial statements, and each made fraudulent statements to

27   Plaintiffs in individual conversations. They each knew that Four Star was not in fact profitable,

28   solvent or engaged in legitimate economic activity. They each siphoned off large amounts of

<div align="center">9</div>

1  money in the form of fraudulent "fees," "expense reimbursements," loans, and, in some cases,

2  outright conversion of Four Star's assets. They have incorporated, together, multiple shell

3  entities to effect these purposes. They each conspired with the others to hide the fraud from

4  existing and prospective investors through a systematic scheme of lies. Each of them

5  intentionally and knowingly aided and abetted this fraudulent scheme.

6        33.    Defendant Robert Lipp ("Lipp"), a registered investment adviser, conspired with

7  Anson, Garrett and Cohn to defraud Plaintiffs. Lipp boasted to Plaintiffs that he was "intimately"

8  involved in Four Star and that he would eventually be named President of Four Star. Despite

9  holding himself out as an independent investment advisor, Lipp operated out of Four Star's

10  offices and claimed to spend half of every day working on Four Star business. Lipp solicited

11  funds for Four Star with full knowledge of the fraud in order to prop up the enterprise. In return,

12  Lipp received kickbacks and commissions from Four Star on the funds he solicited. Lipp also

13  assisted Defendants in maintaining the appearance of normalcy at Four Star, by, for instance,

14  untruthfully telling Plaintiffs in 2002 that "things are going great with the company, things could

15  not be better." Lipp also executed the Ponzi scheme by ordering incoming capital from Plaintiffs

16  to be converted into payments to other, unknowing members and note-holders of Four Star.

17                              THE CORPORATE DEFENDANTS

18        34.    FSF LLC is a California corporation controlled by Cohn, Anson and Garrett. FSF

19  LLC has offices at 1000 Marina Blvd., Suite 600, Brisbane, California, 94005. FSF LLC engaged

20  in transfers of funds with Four Star both to conceal the true nature of Four Star and to siphon off

21  Four Star's capital for the benefit of FSF LLC and the other Defendants.

22        35.    Condor Investments ("Condor") is a California corporation controlled by Cohn

23  and his family. Condor received at least $11 million in "expense reimbursements" and

24  "management fees" from Four Star. In reality, Condor never rendered $11 million in "services"

25  to Four Star. Instead, Condor received this money both to conceal the true nature of Four Star

26  and to siphon off Four Star's capital for the benefit of Condor and the other Defendants.

27        36.    Defendant Anson Garrett & Co. ("AG&CO") is an accounting firm based in Los

28  Angeles, California. Defendants Anson and Garrett are its principals. AG&CO aided the fraud

10

1    by preparing fictitious financial statements, tax returns, and other documents for distribution to

2    Plaintiffs, which gave the false appearance of sound financial performance. AG&CO did not have

3    its own offices, but was operated from the offices of Four Star, 11755 Wilshire Boulevard, Suite

4    1350, Los Angeles, California, 90025.

5         37.    Defendant Cohn America Co. ("Cohn America") is located at 1497 John Roberts

6    Road, Morrow, Georgia 30260. Cohn America is controlled by Defendants. Cohn America

7    engaged in transfers of funds with Four Star both to conceal the true nature of Four Star and to

8    siphon off Four Star's capital for the benefit of Cohn America and the other Defendants.

9         38.    Defendant Georgina Asset Management LLC ("Georgina") is a Delaware LLC and

10    registered investment adviser officially located at 270 18th Street, Santa Monica, California.

11    Georgina is controlled by Lipp. Georgina claims to actively manage over $86 million in assets.

12    Georgina received fees, commissions and kickbacks in return for participating in the conspiracy

13    through Lipp.

14                              AGENTS AND CO-ACTORS

15        39.    The Four Star scheme consisted of an active conspiracy among all of Defendants.

16    At all relevant times, each Defendant was and is the agent of each of the remaining Defendants,

17    and in doing the acts alleged herein, was acting within the course and scope of such agency. Each

18    Defendant ratified and/or authorized the wrongful acts of each of Defendants.

19        40.    Defendants, and each of them, are individually sued as participants and as aiders

20    and abettors in the improper acts, plans, schemes and transactions, to induce the investments and

21    loans that are the subject of this Complaint.

22        41.    Defendants, and each of them, have participated as members of the fraud or acted

23    with or in furtherance of it, or aided or assisted in carrying out its purposes alleged in this

24    Complaint, and have performed acts and made statements in furtherance of the violations and

25    conspiracy.

26                              OTHER PARTICIPANTS

27        42.    Except as described herein, Plaintiffs are ignorant of the true names of Defendants

28    sued as Does 1 through 50 inclusive and, therefore, sue these Defendants by such fictitious

                                        11

1  names. Plaintiffs will seek leave of the Court to amend this Complaint to allege their true names

2  and capacities when they are ascertained.

3      43.    The Four Star fraud required the participation of numerous individuals and entities

4  both to create the illusion of legitimate activity and to siphon off money for the benefit of the

5  named Defendants. Plaintiffs allege that each of these Doe Defendants is responsible in some

6  manner for the acts and occurrences alleged herein, and that Plaintiffs' damages were caused by

7  such Doe Defendants.

8      44.    Moreover, numerous unnamed individuals and entities participated actively during

9  the course of and in furtherance of the conspiracy to defraud Plaintiffs. There was a conspiracy

10 and many acts were done in the course of and in furtherance of the conspiracy by statements,

11 conduct and intent to defraud. The individuals and entities acted in concert by joint ventures and

12 by acting as agents for principals, in order to advance the objectives of the conspiracy to increase

13 false revenues. The acts were intended to promote the conspiratorial objectives.

14                      CLASS ACTION ALLEGATIONS

15     45.    Plaintiffs bring this action as a class action on behalf of all persons from whom

16 Four Star accepted money on the basis of a membership agreement, an arbitrage investment

17 agreement, or a cash flow note. Excluded from the Class are Defendants and non-Defendant

18 officers, directors and employees of Defendants.

19     46.    The class includes hundreds of persons, including hundreds of natural persons

20 located nationwide. The members of the class are so numerous that joinder of all members is

21 impracticable. The disposition of their claims in a class action will provide substantial benefits to

22 the parties and the Court.

23     47.    There is a well-defined community of interest in the questions of law and fact

24 involved in this case. Questions of law and fact common to the members of the class which

25 predominate over questions which may affect individual class members include:

26         a.   Whether Defendants perpetrated a Ponzi scheme;

27         b.   Whether Defendants knew that Four Star was not profitable and was not engaged

28             in safe, well-secured business activities, when they made statements to all class

                                12

1    members to the contrary;

2    c.   Whether Defendants violated the California Corporations Code;

3    d.   Whether Defendants omitted and/or misrepresented material facts in their

4    agreements with and other statements to class members;

5    e.   Whether Defendants' statements to class members omitted material facts necessary

6    to make the statements made, in light of the circumstances under which they were

7    made, not misleading;

8    f.   Whether Defendants knew or recklessly disregarded that their statements to class

9    members were false and misleading;

10   g.   Whether Defendants breached fiduciary duties and other duties of care owed to

11   members of the class;

12   h.   The extent of damage sustained by class members and the appropriate measure of

13   damages.

14   48.   Plaintiffs' claims are typical of those of the class because Plaintiffs and the class

15   sustained damages from Defendants' wrongful conduct.

16   49.   Plaintiffs will adequately protect the interests of the class and have retained

17   counsel who are experienced in class action fraud litigation. Plaintiffs have no interests which

18   conflict with those of the class.

19   50.   A class action is superior to other available methods for the fair and efficient

20   adjudication of this controversy.

21

22                                    COUNT ONE
                          Violations of Cal. Corp. Code § 25400 et seq.

23   51.   Defendants, and each of them, acting individually and pursuant to a scheme and

24   conspiracy, directly and indirectly, induced the purchase and retention of the notes and other

25   securities by Plaintiffs by circulating or disseminating, in or from California, information to the

26   effect that Four Star was a successful, growing corporation and falsely reporting profits and

27   business activities of Four Star for the purpose of inducing Plaintiffs to purchase and hold Four

28   Star's notes and other securities. Defendants knew that their statements were false or misleading

                                         13

1   in light of the circumstances under which they were made.  Defendants intended that Plaintiffs

2   would be misled and would purchase Four Star notes and other securities based upon false

3   information.  Despite this knowledge, Defendants continued to make the misrepresentations in

4   order to induce Plaintiffs to purchase Four Star notes and other securities.

5       52.    Defendants, and each of them, are liable under Corporations Code Section 25500

6   for willfully participating in acts or transactions in violation of Corporations Code Section 25400

7   and for knowingly providing substantial assistance to violations of Corporations Code Section

8   25400 in violation of Section 25403.  Defendants are therefore liable to Plaintiffs, who purchased

9   Four Star's notes and other securities at a price affected by Defendants' acts, for damages

10  sustained as a result of such violations.

11      53.    Plaintiffs are entitled to prejudgment interest at the legal rate on their economic

12  damages, pursuant to Section 25500.

13      WHEREFORE, Plaintiffs pray for relief as set forth below.

14

15                      COUNT TWO
                Fraud, Deceit and Concealment

16      54.    Over the course of its operating history, Defendants made multiple false

17  representations to Plaintiffs that:

18          a.    Four Star was a legitimate company;

19          b.    Four Star was profitable;

20          c.    Because Four Star was profitable, Four Star was able to distribute regular

21              "interest payments" to Plaintiffs and pay high annual rates of return;

22          d.    Plaintiffs' money was "safe."

23      55.    These false representations were made in the agreements and materials circulated

24  to Plaintiffs and in telephone conversations and emails.

25      56.    From time to time, Defendants made many more fraudulent statements to Plaintiffs

26  about the non-existent operations of Four Star.

27      57.    Defendants made these statements knowing they were false and intending

28  Plaintiffs to rely on them.

14

COMPLAINT

58.   Plaintiffs reasonably relied on these representations to transfer funds to Four Star.

59.   As a result, Plaintiffs have suffered extensive losses of both principal and interest with respect to Four Star.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT THREE
### Breach of Fiduciary Duty

60.   Defendants, and each of them, owed fiduciary duties to Plaintiffs.

61.   Defendants owed these duties by virtue of the fact of their positions as directors, executives and/or "managing members" of Four Star and also as accountants, attorneys and investment advisers to Plaintiffs.

62.   Defendants also owed these duties because they each assumed, and exploited, a special relationship of knowledge and trust by which they undertook to "manage" the funds they solicited for Four Star.

63.   Defendants breached these duties by lying to Plaintiffs about the nature of Four Star and by appropriating their money as part of an elaborate Ponzi scheme.

64.   Defendants also knowingly and intentionally conspired and/or aided and abetted each other's breaches of fiduciary duty.

65.   Plaintiffs were damaged as a direct and proximate result.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT FOUR
### Cal. Bus. & Prof. Code § 17200

66.   Defendants have engaged in fraudulent, unfair and illegal conduct in violation of Cal. Bus. Prof. Code § 17200.  Defendants' conduct was substantially injurious to Plaintiffs.

67.   Defendants' business acts and practices, as alleged herein, constituted and constitute a continuous and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices in violation of the foregoing statute, including, but in no way limited to, the following:

a.   the violations of the securities laws as set forth above are unlawful;

15

COMPLAINT

1     b.  Defendants' business acts and practices are unfair in that they induced investors,

2         including Plaintiffs, to purchase and retain the notes and other securities issued by

3         Four Star based upon false, misleading statements disseminated by Defendants

4         with full knowledge that the statements were false and misleading.

5     68.   Defendants' business acts and practices, as alleged herein, have caused Plaintiffs

6  to purchase and retain the notes and other securitiess and suffer losses as a result thereof.

7     69.   Plaintiffs are entitled to full relief, including full restitution and/or disgorgement of

8  all revenues, earnings, profits, compensation and benefits which may have been obtained by

9  Defendants as a result of such business, acts or practices, and enjoining Defendants to cease and

10  desist from engaging in the practices described herein.

11     WHEREFORE, Plaintiffs pray for relief as set forth below.

12

13                   **COUNT FIVE**
                      **Negligent Misrepresentation**

14     70.   Defendants made numerous representations to Plaintiffs, detailed above, in order

15  to solicit money on behalf of Four Star.

16     71.   Defendants owed a duty of care to Plaintiffs by virtue of their positions in the

17  company and because they undertook to "manage" Plaintiffs' funds.

18     72.   These representations were made without a reasonable belief that the information

19  they communicated to Plaintiffs was true.

20     73.   Plaintiffs reasonably relied on the accuracy of these representations, to their

21  financial detriment.

22     WHEREFORE, Plaintiffs pray for relief as set forth below.

23

24                   **COUNT SIX**
                       **Negligence**

25     74.   As a result of their positions at Four Star and their representations to Plaintiffs,

26  each of Defendants assumed and owed Plaintiffs a duty of reasonable care.

27     75.   Defendants should have reasonably foreseen that the failure to exercise due care

28  would damage Plaintiffs.

<div align="center">16</div>

COMPLAINT

1    76.    Defendants did in fact breach their duties of care by negligently managing Four

2    Star and by negligently failing to investigate and understand the nature of Four Star's true

3    activities.

4    77.    Plaintiffs have been damaged as a direct and proximate result.

5    WHEREFORE, Plaintiffs pray for relief as set forth below.

6                          PRAYER FOR RELIEF

7    For the defendants' various acts of wrongdoing, Plaintiffs seek the following relief:

8        A.  Damages in an amount to be proven at trial;

9        B.  Punitive damages;

10       C.  Interest;

11       D.  Attorneys' fees;

12       E.  Accounting;

13       F.  Disgorgement;

14       G.  Constructive trust.

15   Dated: February 12, 2004                    BOIES, SCHILLER & FLEXNER LLP

16

17

18                                      By:  _Brendan Glackin_

19                                           Brendan Glackin

20                                      STEVEN C. HOLTZMAN
                                         BRENDAN GLACKIN
21                                       KEVIN BARRY
                                         1999 Harrison Street, Suite 900
22                                       Oakland, California 94612
                                         Telephone: (510) 874-1000
23                                       Facsimile: (510) 874-1460

24                                       Attorneys for Plaintiffs

25

26

27

28

                                17

COMPLAINT

1

## JURY DEMAND

2     Plaintiffs demand a jury trial on all issues so triable.

3 Dated: February 12, 2004                 BOIES, SCHILLER & FLEXNER LLP

4

5

6                            By: *Brendan Glac*

7                              Brendan Glackin

8                       STEVEN C. HOLTZMAN
9                       BRENDAN GLACKIN
KEVIN BARRY
10                       1999 Harrison Street, Suite 900
Oakland, California 94612
11                       Telephone: (510) 874-1000
Facsimile: (510) 874-1460

12                       Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

COMPLAINT

ORIGINAL
CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
Brendan P. Glackin, SBN 199643
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900, Oakland, CA 94612
 TELEPHONE NO.: (510) 874-1000      FAX NO.: (510) 874-1460
ATTORNEY FOR (Name): Colin Gilbert, Phyllis Klein, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
 STREET ADDRESS: 111 North Hill
 MAILING ADDRESS: 111 North Hill
 CITY AND ZIP CODE: Los Angeles, CA 90012
 BRANCH NAME: Central District - County Courthouse

CASE NAME:
 COLIN GILBERT, et al. v. MARK COHN, et al.

FILED
LOS ANGELES SUPERIOR COURT
FEB 1 8 2004
JOHN A. CLARKE, CLERK
BY JENNY OHRA, DEPUTY

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | | BC310846 |

JUDGE:
DEPT.:

*All five (5) items below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[✓] Securities litigation (28)
[ ] Environmental /Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [✓] is [ ] is not  complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. [ ] Large number of separately represented parties     d. [✓] Large number of witnesses
  b. [✓] Extensive motion practice raising difficult or novel     e. [✓] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve          in other counties, states or countries, or in a federal court
  c. [✓] Substantial amount of documentary evidence     f. [✓] Substantial post-judgment judicial supervision

3. Type of remedies sought (check all that apply):
  a. [✓] monetary     b. [✓] nonmonetary; declaratory or injunctive relief     c. [✓] punitive

4. Number of causes of action (specify): Six: Cal. Corp. Code s 25400, Fraud, Breach of Fiduciary Duty, 17200, etc.

5. This case [✓] is [ ] is not   a class action suit.
Date:

Brendan P. Glackin
(TYPE OR PRINT NAME)

▶ _Brendan Glack_ (signature)
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
● Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate, Family, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
● File this cover sheet in addition to any cover sheet required by local court rule.
● If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
● Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2003]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 201.8, 1800–1812;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

## To Plaintiffs and Others Filing First Papers

If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must check **all five** items on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 201.8(c) and 227 of the California Rules of Court.

## To Parties in Complex Cases

In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 1800 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) (*if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto*)

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability (*not asbestos or
    toxic/environmental*) (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) (*not civil
    harassment*)(08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      (*not medical or legal*)
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract (*not unlawful detainer
        or wrongful eviction*)
    Contract/Warranty Breach–Seller
      Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage (*not provisionally
    complex*) (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation(14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent
      domain, landlord/tenant, or
      foreclosure*)

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) (*if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or
    Residential.*)

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil
Litigation (Cal. Rules of Court Rule
1800-1812)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Toxic Tort/Environmental (30)
  Insurance Coverage Claims
    (*arising from provisionally
    complex case type listed above*)
    (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment (*non-
      domestic relations*)
    Sister State Judgment
    Administrative Agency Award
      (*not unpaid taxes*)
    Petition/Certification of Entry of
      Judgment on Unpaid Tax
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint (*not specified
    above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-
      harassment*)
    Mechanics Lien
    Other Commercial Complaint
      Case (*non-tort/non-complex*)
    Other Civil Complaint
      (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition (*not specified above*)
    (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late
      Claim
    Other Civil Petition

---

CM-010 [Rev. July 1, 2003]                    **CIVIL CASE COVER SHEET**                    Page 2 of 2

ORIGINAL

| SHORT TITLE.<br>Colin Gilbert. et. al. v. Mark Cohn, et. al. | CASE NUMBER  BC310846 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required in all new civil case filings in the Los Angeles Superior Court**

I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☑ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 15 ☐ HOURS/☑ DAYS.

II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to No. III, Pg. 4):

**1** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below and, to the right in Column **1**, the Civil Case Cover Sheet case type you selected.

**2** Check **one** Superior Court type of action in Column **2** below which best describes the nature of this case.

**3** In Column **3**, circle the reason for the court location choice that applies to the type of action you have checked.

| Applicable Reasons for Choosing Courthouse Location (See Column 3 below) | |
|---|---|
| 1. Class Actions must be filed in County Courthouse, Central District. | 6. Location of property or permanently garaged vehicle. |
| 2. May be filed in Central(Other county, or no Bodily Inj/Prop.Damage) | 7. Location where petitioner resides. |
| 3. Location where cause of action arose. | 8. Location wherein defendant/respondent functions wholly. |
| 4. Location where bodily injury, death or damage occurred. | 9. Location where one or more of the parties reside. |
| 5. Location where performance required or defendant resides. | 10. Location of Labor Commissioner Office. |

**4** Fill in the information requested on page 4 in item III; complete item IV.  Sign the certificate.

| | -1-<br>Civil Case Cover Sheet<br>Category No. | -2-<br>Type of Action<br>(Check only one) | -3-<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Veh. - Pers. Injury/Prop. Dam./Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Pers. Inj/Prop. Dam./Wrongful Death - Unins. Motorist | 1., 2., 4. |
| **Other PI/PD/WD Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestosis - Personal Injury/Wrongful Death | 2.<br>2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1., 2., 4.<br>1., 2., 4. |
| | Other PI/PD/WD (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7271  Negligent Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Dam./Wrongful Death | 1., 2., 4.<br>1., 2., 4.<br>1., 2., 3.<br>1., 2., 3.<br>1., 2., 4. |
| **Non-PI/PD/WD Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Intellectual Property (19) | ☐ A6016  Intellectual Property | 2., 3. |

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**   LASC Rule 2.0

CIV 109  09-03

Page 1 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Colin Gilbert, et. al. v. Mark Cohn, et. al. | |

| | -1-<br>Civil Case Cover Sheet<br>Category No. | -2-<br>Type of Action<br>(Check only one) | -3-<br>Applicable Reasons –<br>See Step 3 Above |
|---|---|---|---|
| **Non-PI/PD/WD Tort (Cont.)** | Prof. Negligence (25) | ☐ A6017  Legal Malpractice<br>☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| | Oth Non-PI/PD/WD Tort (35) | ☐ A6025  Other Non-PI/PD/WD Tort - Intentional<br>☐ A6026  Other Non-PI/PD/WD Tort - Negligence | 2., 3.<br>2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment<br>(15) | ☐ A6024  Other Employment Complaint Case<br>☐ A6109  Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| **Contract** | Breach of Contract/<br>Warranty<br>(06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not UD or wrongful eviction)<br>☐ A6008  Contract/Warranty Breach -Seller Plaintiff(no fraud/negligence)<br>☐ A6019  Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections<br>(09) | ☐ A6002  Collections Case-Seller Plaintiff<br>☐ A6012  Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage<br>(18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract<br>(37) | ☐ A6009  Contractural Fraud<br>☐ A6031  Tortious Interference<br>☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| **Real Property** | Emnt Dom/Inv. Cond. (14) | ☐ A7300  Eminent Domain/Condemnation   Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property<br>(26) | ☐ A6018  Mortgage Foreclosure<br>☐ A6032  Quiet Title<br>☐ A6060  Other Real Property(not em. domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| **Unlawful Detainer** | Unl. Det.-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unl. Det.-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unl. Det.-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**   LASC Rule 2.0

| SHORT TITLE. | CASE NUMBER |
|---|---|
| Colin Gilbers, et. al. v. Mark Cuhn, et. al. | |

| -1-<br>Civil Case Cover Sheet<br>Category No. | -2-<br>Type of Action<br>(Check only one) | -3-<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|
| **Judicial Review (Cont'd.)** | | |
| Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm Arbitration | 2., 5. |
| Writ of Mandate<br><br>(02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| Oth. Jud. Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litig.** | | |
| Antitrust/Trade Reg. (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| Construction Defect (10) | ☐ A6007  Construction defect | 1., 2., 3. |
| Claims Inv. Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| Securities Litig. (28) | ☑ A6035  Securities Litigation Case | ①. 2., 8. |
| Tox. Tort/Environm (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| Ins Clms - Complx Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | | |
| Enforcement<br>of Judgment<br><br>(20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Misc. Civil Petitions Misc. Civ. Cmplts** | | |
| RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| Partnership/Corp.<br>Governance(21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| Other Petitions<br>(Not Specified Above)<br><br>(43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9<br>2., 3., 9<br>2<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

-4-

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**  LASC Rule 2.0

| SHORT TITLE:<br>Colin Gilbert, et. al. v. Mark Cohn, et. al. | CASE NUMBER |
|---|---|

III. Statement of Location: Enter the address of the accident, party residence or place of business, performance, or other circumstance indicated in No. II., item **3** on Page 1 as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER ITEM -3- WHICH APPLIES IN THIS CASE<br>☑1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: |
|---|---|
| CITY: | STATE: | ZIP CODE: | |

IV. Certificate/Declaration of Assignment: The undersigned hereby certifies and declares that the above entitled matter is properly filed for assignment to the <u>County</u> courthouse in the <u>Central</u> District of the Los Angeles Superior Court under Section 392 et seq., Code of Civil Procedure and Rule 2(b), (c) and (d) of this court for the reason checked above. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and this declaration was executed on <u>February 12, 2004</u> at <u>Oakland</u> California.

<div align="right">(date)      (city)</div>

<div align="right">(SIGNATURE OF ATTORNEY/FILING PARTY)</div>

## New Civil Case Filing Instructions

This addendum form is required so that the court can assign your case to the correct courthouse location in the proper district for filing and hearing. It satisfies the requirement for a certificate as to reasons for authorizing filing in the courthouse location, as set forth in Los Angeles Superior Court Local Rule 2.0. It must be completed and submitted to the court along with the Civil Case Cover Sheet and the original Complaint or Petition in **ALL** civil cases filed in any district (including the Central District) of the Los Angeles County Superior Court. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**PLEASE HAVE THE FOLLOWING DOCUMENTS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk (Summons forms available at the Forms Counter.).

3. Civil Case Cover Sheet form required by California Rule of Court 982.2(b)(1), completely filled out (Cover Sheet forms available at the Forms Counter).

4. This "Addendum to Civil Case Cover Sheet" form [Superior Court Form Number CIV 109, revised 09-03], completely filled out (Item II. does not apply in limited civil cases) and submitted with the Civil Case Cover Sheet.*

5. Payment in full of the filing fee (unless filing on behalf of state or local government or no fee is due for the type of case being filed) or an Order of the Court waiving payment of filing fees in forma pauperis (fee waiver application forms available at the Filing Window)

6. In case of a plaintiff or petitioner who is a minor under 18 years of age, an Order of the Court appointing an adult as a guardian ad litem to act on behalf of the minor (Guardian ad Litem Application and Order forms available at the Forms Counter).

7. Additional copies of documents presented for endorsement by the Clerk and return to you.

* With the exception of unlimited civil cases concerning property damage, bodily injury or wrongful death occurring in this County, Labor Commissioner Appeals, and those types of actions required to be filed in the Central District by Local Court Rule 2(b), all unlimited jurisdiction civil actions may be optionally filed either in the Central District or in whichever other court location the rule would allow them to be filed. When a party elects to file an unlimited jurisdiction civil action in Central District that would also be eligible for filing in one or more of the other court locations, this form must still be submitted with location and assignment information completed.

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION** LASC Rule 2.0

CIV 109 09-03

<div align="right">Page 4 of 4</div>

**EXHIBIT 14**

# ORIGINAL



ENTERED

MAR 18 2004

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

1  **ALBERT, WEILAND & GOLDEN, LLP**
Jeffrey I. Golden, State Bar No. 133040
2  Kyra E. Andrassy, State Bar No. 207959
Hutchison B. Meltzer, State Bar No. 217166
3  650 Town Center Drive, Suite 950
Costa Mesa, California 92626
4  Telephone:    (714) 966-1000
Facsimile:    (714) 966-1002
5
Counsel for Richard A. Marshack, Chapter 11
6  Trustee of the Estate of Four Star Financial
Services, Inc.
7



FILED

MAR 17 2004

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

8              **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

10

11  In re                                    )   Case No. LA 03-37579 TD
                                            )
12  FOUR STAR FINANCIAL SERVICES, LLC, )   Chapter 11
                                            )
13              Debtor.                     )   **ORDER CONVERTING CASE TO ONE**
                                            )   **UNDER CHAPTER 7 OF THE**
14                                          )   **BANKRUPTCY CODE**
                                            )
15                                          )   **Hearing Information:**
                                            )   **Date:      March 17, 2004**
16                                          )   **Time:      10:30 a.m.**
                                            )   **Ctrm:      1345**
17  _____)

18        At the above date and time, a hearing was held on the motion (the "Motion") of

19  Richard A. Marshack, the chapter 11 trustee of the bankruptcy estate of Four Star

20  Financial Services, LLC (the "Debtor"), for an order converting this case to chapter 7.

21  Jeffrey I. Golden of Albert, Weiland & Golden, LLP appeared on behalf of the Trustee,

22  who was also present in Court.  All other appearances are as noted on the record.  The

23  Court having reviewed the Motion, the opposition filed by Miles Woodlief, and the

24  Trustee's reply to this opposition, and having found that good cause exists for the

25  granting of the Motion,

26        **IT IS HEREBY ORDERED** that the Motion is granted, and the Debtor's case is

27  converted to one under chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. §

28  1112(b).

1



1    **IT IS FURTHER ORDERED** that any professionals employed by the Trustee

2  during the chapter 11 case pursuant to 11 U.S.C. § 327 may be employed by the chapter

3  7 trustee by the filing and service of a notice of intent to employ the professional (the

4  "Notice"). The Notice shall be served on the Office of the United States Trustee, the

5  twenty largest unsecured creditors, the Debtor and its counsel, and any party who has

6  requested special notice. If there is no objection filed with the Court within fifteen (15)

7  days of service of the Notice, then the professional will be deemed employed by the

8  chapter 7 trustee on the same terms and conditions of its employment during the chapter

9  11 case. If an objection to the professional's employment is timely filed, then a hearing

10  will be held on the employment of the professional.

11    **IT IS SO ORDERED.**

12

13  DATED:    3/17/04

14                              HON. THOMAS DONOVAN
                                United States Bankruptcy Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

NOTE TO THE USERS OF THIS FORM:
Physically attach this form as the last page of the proposed Order or Judgment
Do not file this form as a separate document.

| | | |
|---|---|---|
| In re | (Short Title) | Chapter 11 Case No: |
| **FOUR STAR FINANCIAL SERVICES, LLC** | | **LA 03-37579 TD** |
| | Debtor. | |

## NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1, that a judgment or order entitled (specify):

**ORDER CONVERTING CASE TO ONE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

was entered on (specify date): 3/18/04

I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on (specify date): 3/19/04

DATED: 3/19/04

JON D. CERETTO
Clerk of the Bankruptcy Court

By: _____
Deputy Clerk

In re Four Star Financial Services
Case No. LA 03-37579 EC

## SHORT LIST

**Office of the U.S. Trustee**
Ernst & Young Plaza
725 South Figueroa St., 26th Floor
Los Angeles, CA 90017

Arthur Greenberg, Esq.
Greenberg & Bass
16000 Ventura Blvd., Suite 1000
Encino, CA 91436
**Debtor's Counsel**

Richard Marshack, Trustee
26632 Towne Center Drive, Suite 300
Foothill Ranch, CA 92610
**Chapter 11 Trustee**

Miles Woodlief, Esq.
775 East Blithedale Avenue
Suite 514
Mill Valley, CA 94941
**Opposing Party**

ALBERT, WEILAND & GOLDEN, LLP
650 TOWN CENTER DR. SUITE # 950
COSTA MESA, CA 92626

**EXHIBIT 15**

**FILED**
LOS ANGELES SUPERIOR COURT

APR 0 6 2004

JOHN A. CLARKE, CLERK

BY S. GABB, DEPUTY

1 John C. Nabors (TXSBN 14770000)
GARDERE WYNNE SEWELL, LLP
2 3000 Thanksgiving Tower, 1601 Elm St.,
Dallas, TX 75201-4761
3 Tel: 214-999-3000
Fax: 214-999-3688
4
5 George Stanbury (CASBN 60048)
STANBURY FISHELMAN, INC.
9200 Sunset Boulevard, Penthouse 30
6 Los Angeles, CA 90069
Tel: 310-278-1800
7 Fax: 310-278-1802
8 Attorneys for Plaintiff
MAXMIN YIELD INVESTMENTS
9 LIMITED PARTNERSHIP

EDWARD A. FERNS

10
11        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
12            **FOR THE COUNTY OF LOS ANGELES**
13
14 MAXMIN YIELD INVESTMENTS      Case No.:  BC313316
   LIMITED PARTNERSHIP,
15                               **COMPLAINT FOR:**
            Plaintiff
16                               1.  **Breach of Contract**
      v.                         2.  **Breach of Fiduciary Duty**
17                               3.  **Fraud and Misrepresentation**
                                 4.  **Conversion**
   MARK F. COHN, an individual, 5.  **Gross Negligence and Willful**
18 JACK E. GARRETT, an individual,    **Misconduct**
   RONALD I. ANSON, an individual,
19 AND DOE INDIVIDUALS 1-25 AND  **DEMAND FOR JURY TRIAL**
   ROE ENTITIES 26-50, INCLUSIVE,
20                               **NOTICE TO PRESERVE EVIDENCE**
            Defendants.
21
22      COMES NOW MAXMIN YIELD INVESTMENTS LIMITED PARTNERSHIP

23 complaining of Mark F. Cohn, Jack E. Garrett, Ronald I. Anson, and DOE

24 INDIVIDUALS 1-25 and ROE ENTITIES 26-50 and for causes of action would show

25 the court as follows:

26 / / /

27 / / /

28 / / /

1

STANBURY FISHELMAN, INC.
9200 SUNSET BOULEVARD, PENTHOUSE 30
LOS ANGELES, CA 90069-3601

# I.   PARTIES

1.     Plaintiff, MaxMin Yield Investments Limited Partnership ("MaxMin"), is a limited partnership organized and existing pursuant to the laws of the State of Delaware.  MaxMin maintains its principal office and place of business in Baltimore, Maryland.

2.     Four Star Financial Services, LLC ("Four Star"), is a corporation incorporated and organized pursuant to the laws of the State of California and maintains its office and financial records and does business at 11755 Wilshire Boulevard, Suite 1350, Los Angeles, California 90025.  On September 29, 2003, Judgment by Court on Stipulation was entered in the Los Angeles Superior Court, Case Number BC283999 in favor of MaxMin and against Four Star in the total amount of $3,388,317.78.  A true copy of the Judgment is attached hereto and incorporated in full by this reference as Exhibit "A".  No part of this Judgment has been paid.

3.     Defendant, Mark F. Cohn  ("Cohn"), is a resident of Woodside, California.  At all relevant times, Cohn was the Executive Vice President and General Counsel of Four Star.

4.     Defendant, Jack E. Garrett ("Garrett"), is a resident of Los Angeles, California.  Garrett is the President of Four Star.

5.     Defendant, Ronald I. Anson ("Anson"), is a resident of Los Angeles, California.  Anson is the Chief Financial Officer of Four Star.

6.     Plaintiff is unaware of the true names, identities and capacities of Defendants sued herein as DOE INDIVIDUALS 1-25.  Plaintiff will amend this Complaint to allege the true names and capacities of DOE INDIVIDUALS 1-25 when ascertained.  Plaintiff is informed and believes, and based thereupon alleges, that each of the Defendants sued herein as a DOE INDIVIDUAL is legally responsible in some manner for the events and happenings set forth herein, and has proximately caused injuries and damages to Plaintiff as set forth below.

7.     Plaintiff is unaware of the true names, identities and capacities of

STANBURY FISHELMAN, INC.
9200 SUNSET BOULEVARD PENTHOUSE 30
LOS ANGELES, CA 90069-3601

2

1 | Defendants sued herein as ROE ENTITIES 26-50. Plaintiff will amend this Complaint
2 | to allege the true names and capacities of ROE ENTITIES 26-50 when ascertained.
3 | Plaintiff is informed and believes, and based thereupon alleges, that each of the
4 | Defendants sued herein as ROE ENTITIES is legally responsible in some manner for
5 | the events and happenings set forth herein, and has proximately caused injuries and
6 | damages to Plaintiff as set forth below.

7 |        8.      Plaintiff is informed and believes, and based thereupon alleges, that
8 | each of the Defendants, including DOE INDIVIDUALS 1-25 and ROE ENTITIES 26-
9 | 50, was the agent, ostensible agent, servant, representative, associate, borrowed
10 | servant, employee and/or joint venturer of each other Defendant, and of Four Star,
11 | and at all relevant times was acting in the course and scope of such agency, service,
12 | employment and/or joint venture, and with the consent, permission and/or
13 | ratification of the co-defendants, and each of them. Upon further information and
14 | belief, each and every Defendant, as aforesaid, when acting as a principal, was
15 | negligent in the selection, hiring and supervision of each and every Defendant as
16 | agent, servant, employee and/or joint venturer.

17 |        9.      In undertaking the actions set forth in this Complaint, the Defendants,
18 | and each of them, acted in furtherance of a conspiracy to disadvantage, damage,
19 | defraud and injure Plaintiff. Other co-conspirators are not presently known or
20 | named as Defendants in this Complaint, but such persons conspired with the named
21 | Defendants to violate the laws of California as alleged in this Complaint, and all such
22 | Defendants and persons made statements and performed overt acts in furtherance of
23 | the unlawful conspiracy.

24 |        10.     At all times set forth herein, the acts and omissions of each Defendant
25 | caused, led and/or contributed to the various acts and omissions of each and all of
26 | the other Defendants, legally causing Plaintiff injuries and damages as set forth.
27 | / / /
28 | / / /

3

STANBURY FISHELMAN, INC.
9200 SUNSET BOULEVARD PENTHOUSE 30
LOS ANGELES CA 90069-3601

1

2

## II.    JURISDICTION AND VENUE

3        11.    Jurisdiction and venue is proper in Los Angeles, California because Four

4    Star maintains an office in Los Angeles, its accounting books and records are located

5    in Los Angeles, two of its officers, who are also named defendants (Jack E. Garrett

6    and Ronald I. Anson), are residents of Los Angeles, and the money sent by MaxMin

7    to Four Star in connection with the agreements at issue in this Complaint was

8    deposited by Four Star into its bank account at First Charter Bank located in Los

9    Angeles, California.

10

## III.    FACTUAL BACKGROUND

11

12

13        12.    Upon information and belief, there exists, and at all times herein

14    mentioned there existed, a unity of interest and ownership between Four Star and/or

15    Defendant Cohn, and/or Defendant Garrett, and/or Defendant Anson and the Doe

16    Individuals and Roe Entities, such that any individuality and separateness between

17    Four Star, Defendant Cohn, Defendant Garrett, Defendant Anson, and the Doe

18    Individuals and Roe Entities have ceased, and Cohn, Garrett, Anson and the Doe

19    Individuals and Roe Entities are the alter egos of Defendant Four Star, in that:

20            a) Four Star is, and at all times herein was, so inadequately capitalized

21               that, compared with the business done by Four Star and the risks of loss

22               attendant thereon, its capitalization was trifling;

23            b) Four Star repeatedly commingled the funds held in trust for the

24               Participants in the Participation Agreement identified herein below with

25               funds belonging to other people or entities and with personal funds of

26               Cohn, Garrett and Anson;

27            c) Cohn, Garrett and Anson, in the absence of any authorization, either by

28               the Board of Directors or shareholders of Defendant Four Star,

4

STANBURY FISHELMAN, INC.
9200 SUNSET BOULEVARD, PENTHOUSE 30
LOS ANGELES, CA  90069-3601

repeatedly diverted the funds, resources and assets of Four Star to their own use;

d) Cohn, Garret and Anson repeatedly treated the funds, resources and assets of Four Star as their own;

e) Cohn, Garret and Anson failed to observe laws and regulations governing corporate activities, in that, among other things, they did not hold lawful and required meetings of the shareholders or the Board of Directors of Four Star, failed to maintain proper minutes or adequate corporate records, and entered into personal transactions with Four Star without the approval of other, disinterested directors or shareholders;

f) Cohn, Garret and Anson diverted assets from Four Star to, *inter alia*, themselves and other companies, businesses or entities, to the detriment of the creditors and shareholders of Four Star and specifically to the detriment of MaxMin.

13.    Without limiting the generality of the foregoing allegations and based upon information and belief, MaxMin alleges that the following specific facts or failure to disclose the specific facts had a direct relationship and effect upon MaxMin's decision to enter into the Participation Agreement and spend countless hours and additional resources in connection with the Participation Agreement:

a) Cohn, Anson and Garrett represented to MaxMin as an inducement to enter into the Participation Agreement, that Four Star was in excellent financial condition with positive cash flow and no overall debt;

b) In fact, as early as 1996, Cohn, Anson and Garrett had lost fifteen million or more dollars in a failed transaction with Joel Katz and this debt was rolled over and turned into "equity" in Four Star all of which was not known or disclosed to MaxMin;

c) In addition, Cohn, Anson and Garrett had lost money and owed a large debt to Resevoir Capitol that was not known or disclosed to MaxMin

STANBURY FISHELMAN, INC.
9200 SUNSET BOULEVARD, PENTHOUSE 30
LOS ANGELES, CA 90069-3601

5

but, instead, Cohn, Anson and Garrett instructed employees of Four Star to "dummy" up reports to hide the losses or ignored evidence that a reasonable attorney or C.P.A. would have recognized as a false report.

d) Further, Cohn, Anson and Garrett needed MaxMin's money to help pay some of their bad debts, losses and obligations and intentionally solicited and obtained MaxMin's money to satisfy their bad debts, losses and obligations;

e) Cohn, Anson and Garrett attempted to obtain a loan for Four Star from CS/First Boston but, after completing its due diligence, the loan was denied and this was not disclosed to MaxMin but, instead, was intentionally concealed;

f) Cohn, Anson and Garrett used the assets and money of Four Star as if it were their own personal piggy bank including obtaining real property, automobiles, vacations, personal furniture, furnishings, race horses, boats and other benefits according to proof at time of trial.

14.     Upon information and belief, adherence to the fiction of the separate existence of Four Star as an entity distinct from Cohn, Garrett and Anson would permit an abuse of the corporate privilege, would sanction fraud, and would permit injustice. Based on the above, and based on the facts set forth below, it would be unjust to allow the alter ego Defendants to be protected from liability by a corporate shield or claim of separateness.

15.     Prior to 1998, MaxMin was engaged in the factoring of accounts receivables generated by Communications Concepts & Investments, Inc. d/b/a Crown Communications ("Crown"). These accounts were generated by Crown from a segment of the telecommunications industry in which a variety of telephone accounts are utilized to provide various services to selected customers via long distance telephone calls. These calls and the accounts generated by the calls will hereinafter be referred to as "traffic." Because of the complicated history and

STANBURY FISHELMAN, INC.
9245 SUNSET BOULEVARD, PENTHOUSE 30
LOS ANGELES, CA 90069-3601

6

1   relationships between long distance carriers, it is necessary to collect this type of

2   traffic through a Billing and Collection Company.  The traffic is typically factored

3   because of the length of time involved in billing, collecting, and remitting the

4   proceeds generated from the long distance calls.  The Crown traffic financed by

5   MaxMin was billed and collected by Telephone Billing Services, Inc. ("TBS"), a

6   company located in Las Vegas, Nevada, and owned and operated by an individual

7   named Neil Baron ("Baron").   Disputes subsequently arose between MaxMin and

8   TBS concerning its obligations to bill, collect and remit proceeds from Crown traffic;

9   TBS filed bankruptcy; and, litigation between MaxMin and TBS commenced.

10      16.    As a result of its ongoing dispute with TBS, MaxMin became

11  knowledgeable about other entities having relationships with TBS.  One such entity,

12  then known as 900 Capital, was managed by Cohn.  900 Capital or other entities

13  managed by Cohn also factored accounts for clients that were billed and collected

14  through TBS.

15      17.    Cohn represented to MaxMin that he and his companies had a vast

16  amount of experience and expertise in factoring accounts receivables in this industry.

17  Cohn also represented to Maxim that he and his "partners", including Garrett and

18  Anson, who also owned and operated a firm of CPA's and accountants called Anson

19  Garrett & Co. had the office staff, computer systems and infrastructure to closely

20  monitor and account for outstanding factored traffic and to audit, investigate and

21  monitor the activities of TBS to insure that TBS properly performed its duties as a

22  Billing and Collection Company, and to see that all funds were properly accounted

23  for.  Cohn further represented that his companies and specifically Four Star had a net

24  worth in excess of $30 Million Dollars and had net income of over $3 Million Dollars

25  a year.  Garrett and Anson also subsequently represented that Four Star had

26  substantial assets and could timely pay all its obligations.  Based on these

27  representations, Cohn proposed that MaxMin join with Cohn and his partners Garrett

28  and Anson in a new factoring relationship with Crown to be billed and collected by

STANBURY FISHELMAN, INC.
9200 SUNSET BOULEVARD, PENTHOUSE 30
LOS ANGELES, CA 90069-3601

7

1    TBS.

2        18.    The Defendants' representations were extremely material to MaxMin's

3 decision to enter into a new factoring arrangement involving Crown and TBS. First,

4 MaxMin, as known by Defendants, was a small investment company, operated by

5 Arthur J. Hohmann ("Hohmann") who was its sole employee. MaxMin did not have

6 the staff, infrastructure, or expertise to provide the services described by Defendants.

7 In its prior relationship with Crown and TBS, MaxMin had relied on other companies

8 to provide these types of services and had not been satisfied with that experience.

9 Further, MaxMin's previous experiences had convinced MaxMin of the necessity of

10 closely monitoring factored accounts at every stage of the process from making the

11 decision to advance funds until the funds were collected and paid. This included

12 monitoring the activities of TBS. Some of the reasons are set forth below.

13        19.    Crown had a contract with TBS to act as its Billing and Collection

14 Company (the "Billing and Collection Agreement"). Pursuant to this Agreement TBS

15 was to receive telephone billing records, i.e. "traffic" from Crown and "scrub" the

16 records to remove calls that are uncollectible or unbillable for various reasons, such

17 as calls from which certain essential information is incomplete, calls made from

18 blocked lines, calls that are too old, calls made from known problem accounts, and

19 fraudulent calls. TBS was then to take the scrubbed calls from Crown (and other

20 clients for which it provided services) and sort the calls into the geographical region

21 corresponding to the service area of local telephone companies, which are commonly

22 known as local exchange carriers or "LEC's" and with whom TBS had contracts for

23 services. The scrubbed call records from all clients of TBS having call records for a

24 particular LEC are supposed to be combined and transmitted to that LEC.

25        20.    The LEC is blind with regard to which client of TBS generated specific

26 traffic because the submission from TBS to the LEC combines traffic from all of its

27 clients. All collections and all chargebacks, true-ups and other deductions are

28 processed from the combined data of all of TBS's clients for a particular LEC and are

STANBURY FISHELMAN, INC.
9200 SUNSET BOULEVARD, PENTHOUSE 30
LOS ANGELES, CA 90069-3601

Complaint for Breach of Contract; Breach of Fiduciary Duty; Fraud and Misrepresentation;
Conversion; Gross Negligence and Willful Misconduct

submitted in combined form back to TBS by that LEC. However, the LEC's submit the data in a format that allows TBS to segregate virtually all of the data back to its various clients that submitted the traffic originally.

21. Pursuant to agreements between TBS and the LECs, each LEC determines the amount it will advance on these call records after certain internal processing and ascertaining the amount of a reserve, which the LEC will hold. Sixty to ninety days after the receipt of the call records, the LEC advanced to TBS by check or wire transfer an amount reflecting the above calculation and, in addition added or subtracted other items such as additional chargebacks and releases or reserves ("true-ups"), which may be positive or negative amounts. As a result of this process, the LECs do not segregate the funds they deliver to TBS by individual clients. The advances are aggregated for all clients represented by TBS using that particular LEC. When assessing chargebacks and other offsets, LECs assess the entire amount of advances to TBS, which amount is correspondingly reduced. Nevertheless, because of information submitted by the LEC's to TBS, TBS was supposed to have the ability to determine to which of its clients the collections and the chargebacks and offsets belong.

22. An advance from a LEC to TBS was accompanied by a document detailing how the advance amount was determined and, since the call records may not have yet been collected from the LEC's subscriber customers, the document is commonly called the "Purchase of Accounts Receivable" or "PAR". This PAR corresponds to the specific call records submitted by TBS to the LECs and is eventually accompanied by a detailed data record of the actual chargebacks, call by call. Thus, TBS should determine to which clients the collections belong and to whom the negative chargebacks belong and should be charged.

23. From the advance by the LEC's, resulting from Crown traffic, TBS was entitled to: (i) Deduct certain billing and collection fees; (ii) retain a percentage of the funds for reserves, which should be deposited into various TBS reserve accounts

9

STANBURY FISHELMAN, INC.
9210 SUNSET BOULEVARD, PENTHOUSE 30
LOS ANGELES, CA 90069-3601

1    separated by client and held by TBS as protection against chargebacks assessed by the

2    LEC's and which may result in negative true-ups, and (iii) taxes, which should have

3    been deposited into a tax escrow account.  The balance of funds should have been

4    paid to Crown or its assigns.

5        24.    In addition to the reserves maintained by TBS pursuant to the Billing

6    and Collection Agreement, contractual reserves and sometimes-special reserves

7    levied by the LECs are also maintained by the LECs.  Based on historical data it is

8    known that some amount of traffic submitted to the LECs will not be billed or, if

9    billed, not collected. Due to the LEC payment system of utilizing PARS, which

10   essentially pay TBS before the LEC has fully collected its payments from its

11   customers, LECs rely on reserve accounts to make sure they can offset any

12   overpayments to TBS of PARs.

13       25.    After further discussions with Cohn, about Four Star's ability to

14   monitor, properly enter and record financial data and "segregate", audit and

15   properly account for this very complex procedure for determining the appropriate

16   rate and procedures for factoring accounts, collecting factored accounts and

17   segregating the funds collected and preventing fraud and mistakes resulting in the

18   overcharging of fees and under reporting of collected accounts, and in reliance upon

19   these representations, MaxMin agreed to settle its pending dispute with TBS and to

20   invest a designated portion of the resulting settlement proceeds in a new lending

21   relationship with Crown through a Participation Agreement with Four Star.

22       26.    A "Participation Agreement," effective February 1, 1998, was entered

23   into between Four Star, Baron, Hohmann, and Lawrence S. Levinson ("Levinson"),

24   the owner of Crown.  The Participation Agreement provided that the individual

25   Participants could transfer their rights and obligations under the Participation

26   Agreement to "affiliates", but the agreement did not excuse performance by the

27   individuals as a result of such transfers.  Hohmann transferred his rights and

28   obligations under the Participation Agreement to MaxMin, and Baron purportedly

STANBURY FISHELMAN, INC.
9200 SUNSET BOULEVARD, PENTHOUSE 2ⁿᵈ
LOS ANGELES, CA 90069-3601

10

1   transferred his rights and obligations to 2424 Limited Partnership of which he was
2   General Partner. A full and correct copy of the Participation Agreement is attached
3   hereto and incorporated in full by this reference as Exhibit "B".

4       27.     Pursuant to the terms of the Participation Agreement Four Star sold the
5   other Participants "an undivided, full-risk non-recourse participation interest (the
6   "Participation") in the Factoring Arrangement created pursuant to the Factoring
7   Agreement, and in all the Factoring Documents executed in connection therewith…"
8   relating to the factoring of Crown traffic. Four Star acted as agent under the
9   Participation Agreement in connection with the purchase of Accounts from Crown
10  and the receipt and collection of payments with respect to Accounts. The
11  Participation Agreement further provides that, " . . . no amount paid by the
12  Participant to Four Star shall be construed as an extension of credit by the
13  Participants to Four Star."

14      28.     In performing these duties Four Star contracted to "exercise the same
15  degree of care and discretion in servicing the Factoring Arrangement and collecting
16  payments thereunder as Four Star would take in servicing a factoring arrangement
17  and collecting payments thereunder solely for its own account." Four Star further
18  agreed that all payments and other remittances received from such Accounts would
19  be placed "into a segregated account for the benefit of [Four Star] and the
20  Participants." Distributions were supposed to be made to the Participants on a
21  monthly basis. To further protect the Participants, Four Star agreed to "hold all such
22  collections received by it on account of the Factoring Arrangement as trustee for the
23  Participant to the extent of the Participant's proportionate share thereof", and to
24  provide status reports on a monthly basis.

25      29.     Initially, the Participation Agreement contemplated that Crown would
26  be financed at the rate of forty seven percent of the processed and scrubbed traffic
27  submitted to the LECs. That meant that for every $1.00 of eligible traffic that was
28  approved and accepted for submission to the LECs by TBS, Crown would be

11

1    advanced forty-seven cents.  The Participation Agreement also provided how much

2    each Participant was to advance and established a priority order as to how

3    Participants were to be repaid.  Repayments were prioritized to both principal and

4    interest.  Four Star and MaxMin were each to advance 17.875 percent of the amount

5    of approved traffic, and were to be repaid first, including interest, before Baron and

6    Levinson received payment.  Baron was to advance 7.5% of approved traffic and be

7    repaid, including interest, after Four Star and MaxMin, but before Levinson.

8    Levinson was to advance 3.75% of approved traffic and be repaid last.

9        30.    Pursuant to the terms of the Participation Agreement, MaxMin's

10   obligations to fund its share of Crown traffic were limited to a designated portion of

11   the proceeds MaxMin received from its settlement with TBS.  This eventually

12   amounted to $1,595,207.04, and MaxMin duly committed all these funds to the

13   Participation Agreement.

14       31.    Contrary to the representations made by Cohn, Anson and Garrett, and

15   using Four Star as their alter ego, Cohn, Anson and Garrett breached fiduciary and

16   contractual obligations to MaxMin by failing to monitor and audit the status and

17   collectibility of Crown traffic.  In addition, Cohn, Anson and Garrett breached

18   fiduciary duties to MaxMin by failing to keep proper books and records, and failing

19   to properly staff and supervise personnel involved with the Participation Agreement

20   which enabled Cohn, Anson and Garrett to deplete the assets, money and cash

21   belonging to the Participation Agreement and using it for their own personal

22   purposes.

23       32.    The forty-seven percent advance rate proved to be too high in that the

24   LECs were not collecting that amount on Crown traffic.  This resulted in losses to

25   MaxMin even though Baron and Levinson were responsible for 11.25 cents of each 47

26   cents advanced.  Because of Defendants' gross negligence in failing to monitor

27   Crown's traffic, this over advance situation continued for a prolonged period of time

28   from approximately May 1998 until February 1999.  This resulted in unnecessary

STANBURY FISHELMAN, INC.
9200 SUNSET BOULEVARD, PENTHOUSE 30
LOS ANGELES, CA  90069-3601

12

1    losses to MaxMin

2        33.    MaxMin's losses also increased because of Defendants failure to enforce

3    the terms of the Participation Agreement requiring Baron to advance 7.5 cents of each

4    47 cents advanced on Crown traffic.  Baron asserted that after a point in time, the

5    collections from prior Crown traffic were sufficient to fund Baron's portion of current

6    Crown traffic and therefore Baron should not be required to continue to pay

7    additional amounts each week.  This representation was totally untrue, but because

8    Cohn had a personal relationship with Baron and they had business deals together,

9    Four Star, as the alter ego of Cohn, Anson and Garrett, ignored the truth and failed to

10   monitor and audit the status of Crown traffic, and accepted Baron's representations

11   and allowed Baron to cease using new funds to purchase new Crown traffic.

12       34.    In addition to these negligent and unnecessary over advancements

13   Pacific Bell Telephone Company ("PacBell") imposed a special reserve on Crown

14   traffic because of its bad collection experience (the "PacBell Reserve").  Initially, the

15   PacBell Reserve was established at $400,000 and increased to over one million dollars

16   before being established at $951,000 in April 2000.  The withholding of the PacBell

17   Reserve limited the money available to the Participants for the purchase of new

18   traffic from Crown.  To compensate for this loss, the other Participants, excluding

19   MaxMin, agreed to increase the amount of their contributions under the Participation

20   Agreement as follows.   Levinson agreed to advance an additional $20,000 per week

21   to be deducted from the advances otherwise payable to Crown for new traffic

22   factored under the Participation Agreement.  Baron agreed to advance an additional

23   $15,000 per week until the amount of the PacBell Reserve was replaced.  Four Star

24   agreed to advance an additional $2,500 per week, accrue $2,500 per week on behalf of

25   MaxMin, and provide such additional amounts as proved to be necessary to continue

26   to factor Crown traffic at the forty-seven cent advance rate.  Because MaxMin had

27   already advanced the maximum amount it was required to advance under the

28   Participation Agreement, MaxMin was not asked or required to make additional cash

STANBURY FISHELMAN, INC.
9200 SUNSET BOULEVARD, PENTHOUSE 30
LOS ANGELES, CA  90069-3601

13

1   advances.  This agreement would have made additional funds available to finance

2   Crown traffic and at least partially remedy Defendants' failure to make Baron and

3   Levinson finance 11.25 cents of the Crown traffic as required by the Participation

4   Agreement.  However, Defendants totally failed to enforce the agreement against

5   Baron.  Defendants' failure to enforce this agreement caused additional harm to

6   MaxMin.  Specifically, Four Star did not require Baron to make the additional

7   contributions agreed.  This further exacerbated the losses incurred by MaxMin.

8       35.    Losses under the Participation Agreement were also incurred because of

9   Defendants failure to monitor and enforce the provision of the Participation

10  Agreement that required Crown to buy back all Crown traffic that had not been

11  collected at 120 days.  Because of inadequacies in its accounting department and as a

12  result of gross negligence and willful neglect, Defendants never required Crown to

13  honor the buy back provisions.

14      36.    As a result of Defendants actions set forth above major losses were

15  incurred in factoring Crown traffic.  Because of Defendants' gross negligence Crown

16  traffic was factored at forty seven percent long after adjustments and changes should

17  have been made.  However, by December 1998, despite releases by TBS of some of its

18  reserves starting in October 1998, collections on Crown traffic were so poor that even

19  Defendants began to realize that serious mistakes had been made and that corrective

20  actions were necessary.  This lead to a series of discussions between Defendants,

21  Levinson and Baron in the December 1998 - January 1999 time frame.  MaxMin was

22  not consulted or told of these negotiations until after the fact.  As a result of these

23  negotiations Levinson agreed to turn the Crown operation over to others; the

24  advance rate on Crown traffic was reduced from forty seven percent to twenty five

25  percent; Baron and Levinson were relieved of their obligation to contribute; and TBS

26  agreed to continue the release of certain Crown reserves.

27      37.    MaxMin was informed of these changes after the fact by Cohn.  After

28  disclosing the changes, the Defendants represented that these changes would solve

STANBURY FISHELMAN, INC.
9200 SUNSET BOULEVARD, PENTHOUSE 30
LOS ANGELES, CA 90069-3601

14

1    all the prior problems and result in positive recoveries for the remaining participants.

2    Defendants then proposed that if MaxMin would leave its money in the Participation

3    Four Star would fund any additional amounts required and from that point forward

4    Four Star and MaxMin would share profits and losses equally since the

5    commencement of the Participation Agreement. MaxMin, in reliance upon the

6    Defendants representations, accepted Four Star's offer and continued in the

7    Participation Arrangement. This agreement was reached on approximately February

8    7, 1999 and will hereinafter be referred to as the "February 1999 Agreement."

9        38.    The reduction in the advance rate to twenty five percent and the

10    continuing release of the reserves by TBS resulted in positive cash flow for a period

11    of time, but Defendants have failed to properly account for the money. Crown and

12    TBS eventually ceased business. TBS ceased doing business in April 2000, and this

13    created additional problems addressed below.

14        39.    Because of problems with the collection and reporting of Crown traffic

15    MaxMin became concerned about the performance of Four Star. MaxMin first

16    disagreed with Four Star's closeout of Crown traffic for 1998, which was completed in

17    the second quarter of 1999. Although MaxMin worked with employees of Four Star

18    on a reconciliation, unsatisfactory progress was made during 1999. MaxMin and

19    Four Star then mutually agreed to retain Sandee Birdsong (Birdsong"), an outside

20    consultant, to reconcile the balance of the Crown loan and how to evaluate the loan's

21    performance. This effort continued from approximately January 2000 until the

22    second quarter of 2001. Birdsong acted as a consultant during this period with the

23    "hands on" work being done by Suzanne Tikkanen ("Tikkanen"), an officer of Four

24    Star, and her staff, and at a later time, Christina Wong, a C.P.A employed by Four

25    Star also assisted. The work was hindered by insufficient time being devoted to the

26    task by Four Star employees, a lack of understanding of the procedures required, and

27    in some cases, incomplete data. However, after additional work, a spreadsheet was

28    prepared by Tikkanen reflecting the status of accounts between Four Star and

15

STANBURY FISHELMAN, INC.
9200 SUNSET BOULEVARD, PENTHOUSE 30
LOS ANGELES, CA  90069-3601

1  MaxMin after giving effect to the February 1999 Agreement. The results were rejected
2  by Cohn who ordered more work be done.

3      40.    In May 2001, Cohn directed a review by Four Star of the status and
4  accounting of all transactions by the Participants in the Crown factoring. Cohn told
5  MaxMin that it would be given "top priority." Despite this representation, there
6  were numerous delays, all caused by Four Star.

7      41.    Cohn and Four Star were criminally indicted in Federal Court in
8  Baltimore, Maryland in about June 2001, for alleged wrongdoing involving another
9  business transaction totally separate from the instant lawsuit and having nothing to
10  do with Crown and the other loan participants. Other key accounting personnel left
11  during this same time frame for reasons unknown to MaxMin.

12      42.    Finally, in November 2001 a reconciliation of all transactions involving
13  Crown was completed. That reconciliation with minor adjustments was agreed to by
14  Defendants in April 2002 with a single exception involving the proper accounting
15  and credit of approximately $356,000, which will hereinafter be referred to as the
16  "Disputed Amount." Excluding the Disputed Amount, the reconciliation showed
17  that Four Star was holding $1,609,930.76 of principal belonging to MaxMin. Of this
18  amount, $1,595,207.04 had actually been invested by MaxMin under the Participation
19  Agreement. The balance of principal was owed to MaxMin under the terms of the
20  Participation Agreement and the February 1999 Agreement. In addition a large
21  amount of interest was owed to MaxMin as a result of Four Star's wrongful retention
22  of MaxMin's money for several years. Crown was charged three percent a month
23  compounded monthly under the terms of the Factoring Agreement with Four Star,
24  and MaxMin asserts that this is the appropriate interest rate to impose upon Cohn,
25  Anson and Garrett for the benefit they have received from the continued use of
26  MaxMin's money.

27      43.    In addition to the $1,609,920.76, which is undisputed, Four Star as the
28  alter ego for Cohn, Anson and Garrett continues to hold an additional $908,000 to

STANBURY FISHELMAN, INC.

16

1   which MaxMin is entitled to a major portion.  The $908,000 is the remaining balance

2   of the PacBell Reserves, which were distributed to Four Star and retained by it.  The

3   PacBell Reserves are currently the subject of a lawsuit instituted by TBS against Four

4   Star in Federal District Court in Nevada.  MaxMin has intervened in that litigation.

5       44.    In addition to the PacBell Reserves, other reserves and funds for traffic

6   are being held by other LECs.  When Crown went out of business and the factoring of

7   Crown traffic ceased TBS ceased doing business.  On information and belief, the other

8   LECs have failed to account for the residual traffic and return these reserves.  Four

9   Star has taken no action against either the LECs or TBS (other than to answer TBS'

10  complaint) to obtain the return of these funds.  A major portion of these funds

11  belongs to MaxMin under the terms of the Participation Agreement and the February

12  1999 Agreement.

13      45.    At the conclusion of the reconciliation in the fourth quarter of 2001,

14  MaxMin immediately demanded the return of its undisputed $1,609,930.76, with

15  interest, and proposed various methods for the resolution of the Disputed Amount,

16  the PacBell Reserves, and the funds being improperly held by the other LECs.  Four

17  Star, as the alter ego for Cohn, Anson and Garrett, although not disputing the amount

18  of principal owned by and owed to MaxMin, has failed and refused to return any

19  funds to MaxMin and continues to unlawfully retain all of MaxMin's money in

20  flagrant violation of the Participation Agreement, the February 1999 Agreement, its

21  fiduciary duty and the law.

22      46.    MaxMin has discovered that not only have Defendants failed to

23  maintain a segregated account as required by the Participation Agreement,

24  Defendants have used MaxMin's money indiscriminately for their own business and

25  non-business purposes.  Upon information and belief, Defendants have utilized

26  MaxMin's money for working capital, investments, pay out of other "investors", and

27  the pay-off of an unrelated judgment.

28      47.    Cohn, Garrett and Anson were aware that MaxMin's money had not

17

STANBURY FISHELMAN, INC.
9200 SUNSET BLVD., PENTHOUSE 30
LOS ANGELES, CA 90069-3601

1   been segregated and actively participated in using MaxMin's money for their own

2   benefit.  Further, Garrett and Anson were uniquely situated to resolve all accounting

3   issues and advise MaxMin of the true status of accounts between the parties.  Garrett

4   and Anson actively avoided and delayed the accounting so that each could continue

5   to personally benefit from the continued use of MaxMin's money.

6       48.    Early in 2003, Cohn was convicted by a federal jury in Baltimore of more

7   than 50 fraud counts involving a telemarketing scheme that defrauded more than

8   31,000 people of more than $3.6 million.  Four Star was also found guilty of fraud

9   charges and faces fines of more than $500,000.

10

11              IV.    CAUSES OF ACTION

12          First Cause of Action for Breach Of Contract

13

14      49.    MaxMin repeats and realleges the allegations contained in Paragraphs 1

15  through 48 above, and incorporates the same herein by reference.

16      50.    Defendants directly and/or through their alter ego Four Star have

17  totally breached all of their contractual obligations to MaxMin under the

18  Participation Agreement and the February 1999 Agreement.  These breaches include,

19  but are not limited to:

20          a)  Failure to return MaxMin's property in the undisputed amount of

21              $1,609,930.76, together with interest;

22          b)  Failure to account for the Disputed Amount of $356,000;

23          c)  Failure to pay MaxMin its share of the PacBell Reserves;

24          d)  Failure to secure the traffic proceeds and reserves from the other LECs

25              and to account for and pay MaxMin its share of those reserves;

26          e)  Failure to make distributions as required by the provisions of the

27              Participation Agreement;

28          f)  Failure to require Baron to abide by the provisions of the Participation

18

STANBURY FISHELMAN, INC.
5800 SUNSET BOULEVARD, PENTHOUSE 30
LOS ANGELES, CA 90069-3601

Agreement;

g) Failure to account;

h) Failure to maintain segregated accounts;

i) Failure to perform the duties of a Trustee;

j) Failure to maintain adequate records;

k) Failure to provide reports; and

l) Failure to obtain signed Bills of Sale and Submittal Agreements in connection with each advance made by the Participant(s).

51.      Plaintiff has performed each and every obligation required by the Participation Agreement except for any obligation that has been excused by the acts or conduct of the Defendants, and each of them.

52.      As a result of Defendants' breaches of contract MaxMin has been damaged in at least the amount of $5,000,000.

## Second Cause of Action for Breach of Fiduciary Duty and Conspiracy to Breach Fiduciary Duty

53.      MaxMin repeats and realleges the allegations contained in paragraph 1 through 52 above, and incorporates the same by reference herein.

54.      Paragraph 5 of the Participation Agreement specifically states: "Four Star shall hold all such collections received by it on account of the Factoring Arrangement as trustee for the Participant to the extent of the Participant's proportionate share thereof." Paragraph 5 also requires Four Star to hold "payments or other remittances received" in "a segregated account for the benefit of itself and the Participants." Directly and as the alter ego of Four Star, the Defendants have violated their fiduciary duty as Trustee under the Participation Agreement. The Defendants did not hold payments received in a segregated account. The Defendants have unlawfully held MaxMin's money and have refused to account and return the

19

---

Complaint for Breach of Contract; Breach of Fiduciary Duty; Fraud and Misrepresentation; Conversion; Gross Negligence and Willful Misconduct

STANBURY FISHELMAN, INC.
9200 SUNSET BOULEVARD PENTHOUSE 30
LOS ANGELES, CA 90069-3604

money as required. Further, the Defendants have utilized MaxMin's money for their own business purposes and benefit.

55. On information and belief, Cohn, Garrett and Anson have conspired with and assisted Four Star in breaching its fiduciary duty to MaxMin, and each Defendant has individually benefited from these unlawful actions. In addition, Defendants have used Four Star as their own personal piggy bank and alter ego and by this conduct MaxMin has been defrauded.

56. As a result of Defendants breach of fiduciary duty and the conspiracy to breach fiduciary duty and by using Four Star as their alter ego, MaxMin has been damaged in at least the amount of $5,000,000.

**Third Cause of Action for Fraud and Conspiracy to Commit Fraud**

57. MaxMin repeats and realleges the allegations contained in paragraphs 1 through 56 above, and incorporates the same by reference herein.

58. In or around May 1998, the Defendants Cohn, Anson and Garrett represented to MaxMin and in particular to Arthur J. Hohmann that Cohn, Anson and Garrett had a vast amount of expertise in the factoring business and the factoring of specific factoring of accounts of businesses in the telecommunications industry and, in particular, the accounts of Crown and that they would:

a) Establish the proper advance rate applied to Crown accounts;

b) Monitor and regulate the advance rate for Crown traffic to prevent loss,

c) Monitor, properly enter, record and then account for Crown traffic and collections to prevent or lessen the risk of loss,

d) Monitor, properly enter and record all TBS collections and activity relating to Crown accounts and then to financially account for the collections and activity to ensure compliance with all applicable agreements,

STANBURY FISHELMAN, INC.
9200 SUNSET BOULEVARD, PENTHOUSE 30
LOS ANGELES CA 90069-3601

e) Collect and hold all money as a trustee for the benefit of MaxMin, and

f) Enforce and abide by the terms of the Participation Agreement and related activities and agreements to lessen the risk of loss to the Participants.

58.   Defendants Cohn, Anson and Garrett further represented to MaxMin and in particular to Arthur J. Hohmann that Four Star, Cohn, Garret and Anson had the staff and infrastructure to fulfill their promises.

59.   All the above representations were false and were known to be false at the time they were made and were made to induce MaxMin and Hohmann to deliver to Four Star $1,595,207.04 and to enter into the Participation Agreement and the February 1999 Agreement. Alternatively, Defendants made the representations having no intention of fulfilling their promises. The Defendants intended for MaxMin to rely on these representations. MaxMin did not know that these representations were false when the money was delivered to Four Star and when the Participation Agreement was signed. MaxMin did rely upon and acted upon Defendants representations to its detriment. But for Defendants representations, Hohmann and MaxMin would not have become a party to the Participation Agreement and would not have invested $1,595,207.04 in Crown traffic.

60.   On information and belief, Defendants Cohn, Garrett and Anson acted in concert and conspired with each other and with Four Star to fraudulently induce MaxMin to turnover its money to Defendants and to enter into the Participation Agreement and, subsequent thereto, to enter into the February 1999 Agreement..

61.   As a result of Defendants actions of fraud, fraudulent misrepresentation, fraudulent inducement, alter ego activities, deceit and conspiracy, MaxMin has been damaged in at least the amount of $5,000,000.

62.   By reason of the foregoing facts, the Defendants acted with oppression, fraud and malice and MaxMin is entitled to exemplary and punitive damages.

21

## Fourth Cause of Action for Conversion

63.     MaxMin repeats and realleges the allegations contained in Paragraphs 1 through 62 above, and incorporates the same herein by reference.

64.     Defendants obtained money in the amount of at least $1,595,207.04 by false pretenses.  Thereafter, Defendants conspired together and agreed to keep this money, and other assets of MaxMin, for their own use and benefit, thereby interfering with and depriving MaxMin of its right to the use and possession of this money and property.

65.     MaxMin has demanded that Defendants release and return this money and property to MaxMin but Defendants have refused and continue to refuse to return this money and property to MaxMin.  By this complaint, MaxMin continues to demand that Defendants immediately return at least $1,595,207.04 to MaxMin.

66.     Although having an absolute legal duty, including a fiduciary duty, to return MaxMin's money, Defendants have refused and continue to retain and utilize MaxMin's money without legal right.  Accordingly, Defendants actions constitute Conversion.

67.     As a result of Defendants actions, MaxMin has been damaged in at least the amount of  $1,595,207.04.

68.     By reason of the foregoing facts, the Defendants acted with oppression, fraud and malice and MaxMin is entitled to exemplary and punitive damages.

## Fifth Cause of Action for Gross Negligence and Willful Misconduct

69.     MaxMin repeats and realleges the allegations contained in Paragraphs 1 through 68 above, and incorporates the same herein by reference.

70.     Defendants' actions in failing to monitor Crown traffic, the actions of TBS and the LEC's, their failure to hold payments in a segregated account, their

22

STANBURY FISHELMAN, INC.
9200 SUNSET BOULEVARD, PENTHOUSE 99
LOS ANGELES, CA  90069-3601

1    distribution and/or diversion of funds held in trust to themselves or anyone other
2    than the Participants, and their failure to account and report to MaxMin constitute
3    acts of gross negligence and willful misconduct. Defendants' actions and failures to
4    act far exceed standards of ordinary care and cannot be excused or explained.

5        71.    As a result of Defendants actions, MaxMin has been damaged in at least
6    the amount of $5,000,000.

7

8    **Punitive Damages**

9

10        72.    MaxMin repeats and realleges the allegations contained in Paragraphs 1
11    through 71 above, and incorporates the same herein by reference.

12        73.    Defendants' acts of fraud, breach of fiduciary duty, alter ego,
13    conversion, gross negligence and willful misconduct and conspiracy were deliberate
14    and intentional and were intended to harm MaxMin. Defendants' actions were
15    deliberate and premeditated acts of malice and must be punished accordingly.

16        74.    Because of the magnitude of Defendants' wrongful acts, Defendants can
17    only be appropriately punished by the imposition of Punitive damages. Defendants
18    must be taught that such wrongful acts will not be tolerated and are against public
19    policy.

20

21    **PRAYER**

22

23        WHEREFORE, Plaintiff, MaxMin Yield Investments Limited Partnership, prays
24    that Defendants be duly served and required to answer herein, and following trial,
25    judgment be entered against the Defendants as follows:

26        1)    For general damages in an amount in excess of $5,000,000;

27        2)    For punitive damages according to proof;

28        3)    For attorneys fees and costs;

Complaint for Breach of Contract; Breach of Fiduciary Duty; Fraud and Misrepresentation;
Conversion; Gross Negligence and Willful Misconduct

STANBURY FISHELMAN, INC.
9200 SUNSET BOULEVARD, PENTHOUSE 20
LOS ANGELES, CA 90069-3601

1    4)    For prejudgment interest; and

2    5)    For such other and further relief as this Court may deem just and

3    proper.

4    Dated this ___ day of April 2004.    Respectfully submitted,

5    By: _____

6    John C. Nabors (TXSBN: 14770000)
     GARDERE WYNNE SEWELL LLP

7    1601 Elm Street, Suite 3000
     Dallas, Texas 75201-4761

8    214-999-3000
     214-999-4667 FAX

9    George Stanbury
     STANBURY FISHELMAN WISNER, INC.

10   9200 Sunset Boulevard, Penthouse 30
     Los Angeles, CA 90069

11   310-278-1800
     310-278-1802 FAX

12
     ATTORNEYS FOR MAXMIN YIELD

13   INVESTMENTS LIMITED
     PARTNERSHIP

14

15

16

17

18

19                        **NOTICE TO PRESERVE EVIDENCE**

20   NOTICE IS HEREBY GIVEN to Mark F. Cohn, Jack E. Garrett and Ronald I

21   Anson, both individually and as officers, directors and/or managing agents of Four

22   Star Financial Services, LLC, preserve as evidence in a civil action, all documents,

23   records, videotapes, computerized information, and all other materials or

24   information that, in any way, relate to (1) Four Star Financial Services, LLC, (2)

25   MaxMin, (3) Arthur Hohmann, (4) Joel Katz, (5) Resevoir Capitol, (6) Condor

26   Investment Corp., (7) 900 Capitol, and (9) any financial records or transactions

27   between Cohn, Anson and/or Garrett and Four Star.

28

                                    24

1

## DEMAND FOR JURY TRIAL

2   Plaintiff demands a trial by jury.

3   Dated this ___ day of April 2004.                    Respectfully submitted,

4

5

6                                          By

7                                             John C. Nabors (TXSBN:  14770000)
                                              GARDERE WYNNE SEWELL LLP
8                                             1601 Elm Street, Suite 3000
                                              Dallas, Texas 75201-4761
9                                             214-999-3000
                                              214-999-4667 FAX

10                                            George Stanbury
11                                            STANBURY FISHELMAN WISNER, INC.
                                              9200 Sunset Boulevard, Penthouse 30
12                                            Los Angeles, CA 90069
                                              310-278-1800
13                                            310-278-1802 FAX

14                                            ATTORNEYS FOR MAXMIN YIELD
                                              INVESTMENTS LIMITED
15                                            PARTNERSHIP

16

17

18

19

20

21

22

23

24

25

26

27

28

25



**EXHIBIT "A"**

JUD-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO..        FAX NO. *(Optional):* | |
| E-MAIL ADDRESS *(Optional):* | |
| ATTORNEY FOR *(Name):* | |

**ORIGINAL FILED**

SEP 2 9 2003

**LOS ANGELES SUPERIOR COURT**

**FILED**
LOS ANGELES SUPERIOR COURT
SEP 2 9 2003
BY_____ **DEPUTY**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME:

PLAINTIFF: Maxmin Yield Investment Limited Partnership

DEFENDANT: Four Star Financial Services, LLC

| JUDGMENT | | CASE NUMBER: |
|---|---|---|
| ☐ By Clerk    ☐ By Default    ☐ After Court Trial | | BC283999 |
| ☑ By Court    ☑ On Stipulation    ☐ Defendant Did Not Appear at Trial | | |

## JUDGMENT

1. ☐ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☐ **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
       (1) ☐ plaintiff's testimony and other evidence.
       (2) ☐ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☑ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☑ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court    ☐ the stipulation was stated on the record.

3. ☐ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time):*
       before *(name of judicial officer):*
   b. Appearances by:
     ☐ Plaintiff *(name each):*                         ☐ Plaintiff's attorney *(name each):*
       (1)                                     (1)
       (2)                                     (2)
     ☐ Continued on Attachment 3b.

     ☐ Defendant *(name each):*                       ☐ Defendant's attorney *(name each):*
       (1)                                       (1)
       (2)                                     (2)
     ☐ Continued on Attachment 3b.

   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.

   d. ☐ A statement of decision (Code Civ. Proc., § 632) ☐ was not ☐ was    requested.

Page 1 of 2

| PLAINTIFF: | CASE NUMBER: |
|---|---|
| DEFENDANT: | |

**JUDGMENT IS ENTERED AS FOLLOWS BY:**   [✓] **THE COURT**   [ ] **THE CLERK**

4. [✓] **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is

  a. [✓] for plaintiff (name each):
    Maxmin Yield Investment Limited Partnership

    and against defendant (names):
    Four Star Financial Services, LLC

    [ ] Continued on Attachment 5a.

  b. [ ] for defendant (name each):

  c. [ ] for cross-complainant (name each):

    and against cross-defendant (name each):

    [ ] Continued on Attachment 5c.

  d. [ ] for cross-defendant (name each):

6. **Amount.**

  a. [✓] Defendant named in item 5a above must pay plaintiff on the complaint:

  c. [ ] Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| (1) | [✓] | Damages | $ 3,200,000.00 |
|---|---|---|---|
| (2) | [✓] | Prejudgment interest at the annual rate of   12 % | $    188,317.78 |
| (3) | [ ] | Attorney fees | $ |
| (4) | [ ] | Costs | $ |
| (5) | [ ] | Other (specify): | $ |
| (6) | | **TOTAL** | $ 3,388,317.78 |

| (1) | [ ] | Damages | $ |
|---|---|---|---|
| (2) | [ ] | Prejudgment interest at the annual rate of   % | $ |
| (3) | [ ] | Attorney fees | $ |
| (4) | [ ] | Costs | $ |
| (5) | [ ] | Other (specify): | $ |
| (6) | | **TOTAL** | $ |

  b. [ ] Plaintiff to receive nothing from defendant named in item 5b.
    [ ] Defendant named in item 5b to recover costs $
      [ ] and attorney fees $

  d. [ ] Cross-complainant to receive nothing from cross-defendant named in item 5d.
    [ ] Cross-defendant named in item 5d to recover costs $
      [ ] and attorney fees $

7. [ ] Other (specify):

Date:   SEP 2 9 2003

[✓]   Ralph W. Dau
           JUDICIAL OFFICER

Date:   SEP 2 9 2003

[✕] Clerk, by   M. Nieilo   , Deputy

JOHN A. CLARKE, CLE

**CLERK'S CERTIFICATE** (Optional)

(SEAL)

I certify that this is a true copy of the original judgment on file in the court.

Date:

Clerk, by _____ , Deputy

Page 2 of 2

JUD-100 [New January 1, 2002]                **JUDGMENT**



**EXHIBIT "B"**



**FOUR STAR Financial Services, LLC**

601 Gateway Boulevard, Suite 260
So. San Francisco, CA 94080
Tel: 650.869.3600 Fax: 650.869.3700

May 13, 1998

5⸱   VED

1⸱   1998

FED EX

<u>Via Facsimile: (561) 852-0979</u>
Larry Levinson
Crown Communications
20423 State Road 7 Suite 6283
Boca Raton, FL 33498

<u>Via Facsimile: (970) 925-6767</u>
Arthur Hohmann
MaxMin, Inc.
P.O. P.O. Box 12392
Aspen, Colorado 81612

<u>Via Facsimile: (702) 222-0650</u>
Neil Baron
Long Distance Billing Company
Telephone Billing Services, Inc.
4480 W. Spring Mountain Road
Suite 400
Las Vegas, NV 89102

Dear Larry, Art and Neil:

Enclosed is the revised Participation Agreement. Please execute and return it to me. We
will operate on the basis that execution in counterparts will suffice. We will circulate
copies of counterpart signatures to all Participants.

Sincerely,

Mark F. Culp
Executive Vice President
General Counsel

MFC:sas
Enclosure
Cc:    Mark Brynn

#27542

# PARTICIPATION AGREEMENT

THIS PARTICIPATION AGREEMENT (this "Agreement") is made this 1st day of February, 1998, by and between FOUR STAR FINANCIAL SERVICES, LLC, a California limited liability company ("Four Star") ("the Lead Participant"), and ARTHUR HOHMANN, or a designated affiliate ("Hohmann"), NEIL BARON, or a designated affiliate ("Baron") and LARRY LEVINSON, or a designated affiliate ("Levinson")("the Participants").

## RECITALS

Communications Concepts & Investments, Inc. dba Crown Communications ("Crown"), a Florida corporation (the "Assignor"), desires to sell certain of its open accounts receivable arising from the sale of services (collectively, the "Accounts") to Four Star, and Four Star desires to purchase such of the Assignor's accounts as are, in Four Star's sole discretion, subject to the terms and conditions of this Agreement, acceptable to Four Star. The Assignor and Four Star have entered into an arrangement (the "Factoring Arrangement") for the purchase and sale of certain of the Risk Receivables, pursuant to the terms and conditions of the Factoring Agreement dated February 1st_, 1998, by and between the Assignor and Four Star (the "Factoring Agreement"). Each purchase of a group of Accounts by Four Star is to be evidenced by a Submittal Agreement and a Bill of Sale (each an "Assignment," and collectively, the "Assignments"). The obligations of the Assignor under the Factoring Agreement are secured by, among other things, a lien on and security interest in the Assignor's Accounts. As used herein, the term "Factoring Documents" means, collectively, the Factoring Agreement, the Assignments, the Bill of Sale, the Submittal Agreement and all other documents now or hereafter executed and delivered by the Assignor or by any other party or parties to evidence or secure, or otherwise in connection with, the Factoring Arrangement.

The Participants hereby desire to purchase, and Four Star hereby desires to sell to the Participants an undivided, full-risk, non-recourse participation in the Factoring Agreement any collateral therein and an ownership interest in the Risk Receivables. The amount and percentage participation of the Participants may vary from week to week with each Bill of Sale and Submittal Agreement treated separately, unless as to a particular funding the participation amount requested is in excess of the Participants' limits set forth below. Initially the funding percentage of each Participant will be Baron 7.5%, Levinson 3.75%, Hohmann 17.875% and Four Star 17.875%. The participation percentage will be adjusted to reflect the actual percentage funded by Participant.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Four Star and the Participants hereby agree as follows:

1.   Recitals.  The parties hereby agree that the above Recitals are true and correct, and that the same are incorporated herein and made a part hereof.

2.   The Participation.  Subject to the terms and conditions hereinafter set forth, Four Star hereby agrees to sell, and the Participants hereby agree to purchase, an undivided , full-risk, non-recourse participation interest (the "Participation") in the Factoring Arrangement created pursuant to the Factoring Agreement, and in all of the Factoring Documents executed in connection therewith up to a maximum for Hohmann of the amounts of MaxMin Yield Factoring, LLC's ("Maxmin") new pool buyout as per the Settlement Agreement among MaxMin and Telephone Billing Services, Inc. and for Baron and Levinson no stated maximum. Except as specifically set forth herein, the participation of each party hereto shall be ratably concurrent and undivided, however Baron's investment shall be junior and subordinate in all respects to that of Levinson, Four Star and Hohmann and Baron's investment shall be junior and subordinate in all respects to that of Four Star and Hohmann in that for each batch or group of receivables purchased. Four Star and Hohmann shall be repaid from proceeds prior to any repayment to Levinson and Baron and Baron's repayment shall have priority over Levinson's. The risk of loss shall thus be allocated 3.75% to Levinson (First Position), 7.5% to Baron (Second Position) and 35.75% to Four Star and Hohmann split equally. Four Star shall act as Lead Participant and in that capacity will be the sole Participant to have direct communications with Assignor and will coordinate all matters involving Assignor hereunder. The parties agree that (1) no amount paid by the Participants to Four Star shall be construed as an extension of credit by the Participants to Four Star, (2) the sale of the Participation does not constitute the sale of an "Investment Security" for the purpose of the Securities Act of 1933 and the Securities and Exchange Act of 1934, and (3) neither the execution of this Agreement or any of the other Factoring Documents shall be construed to create a partnership or joint venture between Four Star and the Participants. It is acknowledged and agreed among the parties hereto that in no event shall Participants fund any amount in excess of forty-seven percent (47%) of the gross value of the accounts receivable acquired pursuant to the Factoring Agreement.

3.   Original Factoring Documents.  The Participants agree that Four Star shall have the custody of and shall maintain in its possession, for itself and the Participants, the originals of the Factoring Documents. The Participant and its agents and employees shall have the right and privilege, at reasonable business hours at the business offices of Four Star where such Factoring Documents are maintained, to examine the Factoring Documents and other files relating to the Assignor which are in the possession of Four Star. Participant shall have the right to review the final Factoring Documents prior to its purchase of its participation.

4.   Purchase of Accounts.  Pursuant to the terms of the Factoring Agreement, the Assignor will offer to sell to Four Star certain of its Accounts, and any offer to sell such Accounts shall be accompanied by a signed Bill of Sale and Submittal Agreement (collectively referred to as an "Assignment") and certain other documentation relating to the Accounts which the Assignor desires to sell.  Under the Factoring Agreement, Four Star may, in its sole discretion, accept or refuse to accept any such Accounts. Upon receipt by Four Star of a written

request from the Assignor to purchase a group of Accounts (accompanied by an executed Assignment and all required support documentation). Four Star shall, within two (2) business days from the date that the such request is received, deliver to the Participant copies of the request, the accompanying Assignment, and such other documentation. Within two (2) business days after delivery of such documentation to the Participant, (1) Four Star shall notify the Participant of its decision to accept or to refuse to accept such Assignment, and (2) the Participant shall notify Four Star of its decision to accept or refuse to accept such Assignment. Baron will have recommending authority with respect to the amount of fundings. Unless there is specific empirical data demonstrating that the recommended funding percentage is 7.5% or more off, then Four Star and Hohmann would be bound and mandated to follow the recommendation. However, if the recommendation is 7.5% or more off (based on emperical data), then Four Star and Hohmann may object and said objection would impact funding accordingly. In the event that both Four Star and the Participant decide to accept such Assignment, within one (1) business day after such decision has been made, (1) Four Star shall notify the Assignor of such decision, (2) the Participant shall send to Four Star its pro rata share of the purchase price for such Accounts, and (3) Four Star shall send to the Assignor the full amount of the purchase price and send to the Participant a participation certificate in the form of Exhibit "A" attached hereto. In consideration for Four Star's acting in this capacity of Lead Participant, Four Star shall receive 10% per month of all factoring fees paid to each Participant with the exception of Levinson who shall not contribute to Four Star's fees. The proceeds of all of Assignor's receivables will be paid directly to a Four Star controlled account. Four Star will not assume the risk of any overpayment hereunder, however, Four Star will account for such excess funds, which funds will be placed in the Overage Account referenced in the Factoring Agreement which will be used to offset any shortfall in client obligations which will be applied first to Four Star and Hohmann and, when whole, will be applied to Baron's then Levinson's portion of the shortfall. Any excess overage not offset, upon periodic true up, will be held for one year from the date of transmission before being remitted to the client after verification with the billing company that there are no amounts due and owing the billing company. Baron's obligations to fund pursuant to this Agreement are limited to transactions processed and billed through TBS or affiliates.

It is hereby agreed that no Accounts will be purchased under this Agreement unless Four Star and the Participants jointly agree to purchase such Accounts as set forth above; provided, however, that if Four Star shall be required, for any reason, by order of any court of competent jurisdiction, to accept an Assignment and purchase a group of Accounts, then such acceptance and purchase shall be deemed to have been made in accordance with the provisions hereof. In such event, Four Star shall promptly notify the Participants of such purchase of Accounts, and the Participants shall, within three (3) business days after delivery of such notice, remit to Four Star the Participant's pro rata share of the purchase price of such Accounts. In the event the Participants decline to accept an Assignment, Four Star may accept such Assignment for Four Star's own account.

5    Collection and Servicing. Four Star shall act as the agent of the Participants in connection with (a) the payment of amounts to be paid to the Assignor for the purchase of

Accounts, and (b) the receipt and collection of payments and other remittances made with respect to such Accounts. The Assignor shall be notified by Four Star that all payments and other remittances made with respect to the Accounts shall be made directly to Four Star unless and until the Assignor is notified otherwise by Four Star. The Factoring Agreement shall contain a mandatory 120 day buy back clause which will provide that Assignor will be notified at the expiration of such period of any shortage in proceeds requesting satisfaction of the shortage. Four Star shall exercise the same degree of care and discretion in servicing the Factoring Arrangement and collecting payments thereunder as Four Star would take in servicing a factoring arrangement and collecting payments thereunder solely for its own account. Any payments or other remittances received by Four Star with respect to the Accounts shall be received by Four Star into a segregated account for the benefit of itself and the Participants. Four Star will control the disposition of such funds according to the terms of this Agreement. Within three (3) business days after receipt by Four Star of any such payment or remittance, Four Star shall (1) remit to the Assignor any amount required to be remitted to the Assignor under the terms of the Factoring Agreement, and (2) once per month on ten days notice from any Participant remit to the Participants their proportionate shares of all amounts including principle and interest which are not required to be returned to the Assignor. As set forth herein, Four Star and Hohmann shall be repaid from proceeds prior to any payment to Levinson and Baron. Four Star shall hold all such collections received by it on account of the Factoring Arrangement as trustee for the Participant to the extent of the Participant's proportionate share thereof. Four Star will provide reports monthly in a form reasonably agreed to by the Parties.

6.    Modification of Documents.   Without Hohmann's approval, and prior notice to the Participants. Four Star will not (i) make or consent to any amendment of the terms and conditions of the Factoring Arrangement or any of the Factoring Documents; (ii) waive or release any claim against the Assignor; (iii) make or consent to any release, substitution, or exchange of any collateral for any of the Assignor's obligations under the Factoring Documents: (iv) commence any type of collection proceeding against the Assignor under the Factoring Arrangement; or (v) cease, sell, transfer, assign, foreclose, or attempt to exercise against any collateral for any other Assignor's obligations under the Factoring Arrangement. Notwithstanding anything contained herein to the contrary, in the event that Four Star and Hohmann are unable to reach agreement on any of the above points within a five day period, then Four Star shall have the right but not the obligation to break the deadlock by buying Hohmann out for an amount equal to his investments plus any cumulative yields as defined in the Factoring Agreement.

7.    Representations and Warranties by Four Star.   Four Star represents and warrants to the Participant that Four Star has made available to the Participants copies of all relevant credit and other information currently in the possession of Four Star that were used by Four Star as the basis of its decision to enter into the Factoring Arrangement with the Assignor and that Four Star has provided the Participants with copies of the Factoring Documents. Four Star makes no representations or warranties, whether express or implied, to the Participant as to (a) the validity or enforceability of the Factoring Documents, (b) the collectibility of any amounts owed by the



Assignor under the Factoring Arrangement, (c) the financial status of the Assignor, or (d) the sufficiency and value of any collateral securing the Assignor's obligations under the Factoring Arrangement. To the best of Four Star's knowledge, Four Star hereby represents and warrants that the accounts receivable generated from the consumer calling activity satisfy the requirements imposed by applicable laws and regulations.

8.      Representations and Warranties by the Participant.  The Participants represent and warrant to Four Star that the Participants have based their decision to purchase the Participation solely upon the Participant's own independent evaluation of the Factoring Arrangement, the Factoring Documents, the Assignor's creditworthiness, and the existence, value, and lien status of any collateral securing the Assignor's obligations under the Factoring Documents. Four Star shall not be responsible for the accuracy of any information given to the Participants or Four Star by the Assignor or others. It is understood that the Participants assume all risks of loss in connection with their participation in the Factoring Arrangement to the same extent as if the Participants had negotiated the Factoring Arrangement directly with the Assignor. The Participants acknowledge that for the repayment of their shares of the purchase price of each group of Accounts. it will look solely to recovery under the Factoring Documents.

9      Participation in all Benefits, Payments, and Security.  Upon receipt of any payment of an amount due under an assigned Account, provided that the Assignor is not in default under the Factoring Agreement, Four Star may he required, pursuant to the terms of the Factoring Agreement, to remit to the Assignor the difference between the payment received by Four Star from the payment of such Account, and the agreed-upon assignment price of such Account, less all reasonable accrued and unpaid processing fees and other amounts, if any, due and owing pursuant to the terms of the Factoring Agreement. Any payments of any termination fees paid by Assignor benefits or recoveries received by Four Star or the Participants pursuant to the Factoring Agreement which are not required to be paid to the Assignor and which are in excess of any out of pocket expenses incurred by Four Star, shall, subject to the provisions hereof, be paid to Four Star and the Participants. pari passu, in proportion to their respective interests in the Factoring Arrangement. In the event that the money received by Four Star or the Participants either directly from the Assignor, or as a result of the collection of any of the Accounts, it is not sufficient to cover the purchase price of such Accounts, together with all costs, fees, and expenses incurred in connection therewith any deficiency shall be shared by Four Star and the Participants, pari passu, in proportion to their ownership interest in the Factoring Arrangement.

10.      Exercise of Rights and Remedies.  After becoming aware of the same, either of the parties hereto shall, with reasonable promptness, notify the other party in writing of the existence of any default by the Assignor under the Factoring Agreement or the occurrence of any other event which may materially impair the prospect of payment under the Factoring Documents. Except as otherwise provided for in this Agreement, the exercise of any and all rights and remedies in the context of a default situation in connection with the Factoring Agreement and the other Factoring Documents shall be by Four Star with Hohmann's approval

which may not be unreasonably withheld and the Participants shall have no independent rights with respect thereto.  In the event Hohmann disapproves, Four Star shall have the right to purchase Hohmann's Participation interest to remove the deadlock.  Such approval from Hohmann shall be provided within 48 hours of Four Star providing notice of impending action and, in the absence of any response, Four Star shall have the right to proceed at its discretion.

      11.    <u>Reimbursement of Legal Expenses, Costs, Etc.; Indemnification</u>.  The Participants will promptly reimburse Four Star to the extent of the Participant's <u>pro rata</u> interest in the Factoring Arrangement, for all reasonable costs, expenses, and disbursements which have not been reimbursed by Assignor which may be incurred or made by Four Star in connection with the enforcement of the Factoring Agreement or the other Factoring Documents.  Upon reimbursement of any such costs, expenses, and disbursements, Four Star shall share the same on a pro rata basis with Participants to the extent of prior payment by Participants.  If Four Star shall be sued or threatened with suit by the Assignor as debtor in possession or any trustee or receiver in bankruptcy, or if any action, claim, or demand of any kind shall be asserted against Four Star directly or indirectly relating to any action taken by, for, or on behalf of Four Star or the Participants in connection with the Factoring Arrangement arising during any period in which the Participants owned the Participation or any interest therein, then the Participants shall indemnify and save harmless Four Star and its agents, servants, employees, and permitted successors and assigns from and against the Participant's proportionate shares of all monies paid in satisfaction of any such suit, claim, action or demand, and any expenses, costs, and attorney's fees paid or incurred in connection therewith, as well as any costs, expenses, fees, or disbursements incurred by outside agencies and attorneys retained by Four Star.  Such indemnification shall survive the termination of this Agreement.  Baron does not agree hereby to reimburse any legal expenses relating to litigation against Baron or his affiliate.

      12.    <u>No Recourse</u>.  Except as expressly set forth herein, Four Star makes no representations or warranties.  The sale of the Participation is made without recourse.  Four Star shall not be liable for any error of judgment or for any action taken or omitted to be taken except for willful misconduct.

      13.    <u>Assignment</u>.  This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their successors and assigns; provided, however, that neither party hereto shall be entitled to sell or assign its interest in the Factoring Arrangement or this Agreement without the prior written consent of the other party, provided, however, that either party may assign its interest under this Agreement as security for financing from its respective lenders.

      14.    <u>Repurchase of Participation</u>.  Four Star may, with the consent of Participants, repurchase the Participation at any time.  The purchase price shall be equal to the sum of (1) the Participant's proportionate shares of the purchase price paid for all Accounts which have theretofore been purchased but which have not yet been collected, plus (2) the Participant's proportionate shares of the accrued factoring fees payable on such Accounts (as determined in

accordance with Paragraph 9 hereof), less the Participant's proportionate shares of any costs, expenses, charges, etc. for which the Participants are required to reimburse Four Star pursuant to Paragraph 11 above.

15.     <u>Right to Participate in Quarterly   On Site Examination and Sharing Of Information</u>.   Participants shall have the right to have one of its representatives participate in any quarterly  on site examination of Assignor conducted by Four Star provided that Participant's representative shall not disclose his or her affiliation as other than an agent of Four Star.  Four Star and Participants each agree to share with the other all information received with respect to Assignor and promptly forward such information to the other party.

16.     <u>Notices</u>.  All notices, demands, requests, or other communications which may be or are required to be given, served, or sent by either party hereto to the other shall be deemed to have been properly delivered when (1) sent by facsimile transmission, or (2) when delivered to Federal Express or any other similar overnight delivery service, addressed as follows:

        If to Four Star:      Four Star Financial Services, LLC
                                601 Gateway Blvd., Suite 260
                                South San Francisco, CA  94080
                                Attention: Mark F. Cohn, Executive Vice President
                                        and General Counsel
                                Fax: (650) 869-3700

        If to Participant:     Arthur Hohmann
                                P.O. Box 12392
                                Aspen, Colorado  81612
                                Fax:  (970) 925-6767

                                Larry Levinson
                                1334 North State Road 7
                                Margate, FL 33063
                                Fax:  (954) 968-4243

                                Neil Baron, General Partner
                                2424 Limited Partnership
                                P.O. Box 80930
                                Las Vegas, NV  89180-0930
                                Fax: (702) 222-0650

      The parties shall be responsible for notifying each other of any change of address.

17.     <u>Modification</u>.   This Agreement shall not be modified or amended except by a writing duly executed by both of the parties hereto.

5/14

18.    Termination.    This Agreement shall terminate when (a) the Factoring Arrangement has been terminated and no further payments are required to be made thereunder or in connection therewith, or (b) when the ownership of the entire Factoring Arrangement shall be held entirely by one of the parties hereto.

19.    Counterparts.    This Agreement may be signed in one or more counterparts, each of which shall be considered an original but which together shall constitute one instrument.

20.    Governing Law.    This Agreement shall be governed by and construed under the laws of the State of California.

21.    Entire Agreement; Waivers.    This Agreement constitutes the entire agreement between the parties. The failure or delay of either party to exercise any right hereunder shall not constitute a waiver thereof or bar such party from exercising any of its rights at any time.

22.    No Third Party Beneficiaries:    There are no third party beneficiaries to this Agreement. Accordingly, no persons other than Four Star, the Participants, and their respective assignee's shall be entitled to raise as a defense the failure of any party hereto to comply with any provisions of this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed under seal and delivered by their proper and duly authorized officers as of the day and year first above written.

FOUR STAR FINANCIAL SERVICES, LLC        ARTHUR HOHMANN

By: _____            _____
   Mark F. Cohn
   Executive Vice President and
   General Counsel

                            NEIL BARON, TBS

                            Neil Baron, President

                            LARRY LEVINSON


                            THIS SUPERCEDES ALL OTHER
                            PRIOR PARTICIPATION AGREEMENTS
                            WITH FOUR STAR, CROWN, TBS
                            Neil Baron 5/14/98

#27412 Participation Agreement (FSFS & Hohmann)    Page 8 of 8
Revised 5/13/98

18.   Termination.   This Agreement shall terminate when (a) the Factoring Arrangement has been terminated and no further payments are required to be made thereunder or in connection therewith, or (b) when the ownership of the entire Factoring Arrangement shall be held entirely by one of the parties hereto.

19.   Counterparts.   This Agreement may be signed in one or more counterparts, each of which shall be considered an original but which together shall constitute one instrument.

20.   Governing Law.   This Agreement shall be governed by and construed under the laws of the State of California.

21.   Entire Agreement; Waivers.   This Agreement constitutes the entire agreement between the parties. The failure or delay of either party to exercise any right hereunder shall not constitute a waiver thereof or bar such party from exercising any of its rights at any time.

22.   No Third Party Beneficiaries:   There are no third party beneficiaries to this Agreement. Accordingly, no persons other than Four Star, the Participants, and their respective assignee's shall be entitled to raise as a defense the failure of any party hereto to comply with any provisions of this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed under seal and delivered by their proper and duly authorized officers as of the day and year first above written.

FOUR STAR FINANCIAL SERVICES, LLC                    ARTHUR HOHMANN

By: _____                         _____
    Mark F. Cohn
    Executive Vice President and
    General Counsel                                  NEIL BARON


                                                     _____

                                                     LARRY LEVINSON

18.    Termination.    This Agreement shall terminate when (a) the Factoring Arrangement has been terminated and no further payments are required to be made thereunder or in connection therewith, or (b) when the ownership of the entire Factoring Arrangement shall be held entirely by one of the parties hereto.

19.    Counterparts.    This Agreement may be signed in one or more counterparts, each of which shall be considered an original but which together shall constitute one instrument.

20.    Governing Law.    This Agreement shall be governed by and construed under the laws of the State of California.

21.    Entire Agreement; Waivers.    This Agreement constitutes the entire agreement between the parties. The failure or delay of either party to exercise any right hereunder shall not constitute a waiver thereof or bar such party from exercising any of its rights at any time.

22.    No Third Party Beneficiaries:    There are no third party beneficiaries to this Agreement. Accordingly, no persons other than Four Star, the Participants, and their respective assignee's shall be entitled to raise as a defense the failure of any party hereto to comply with any provisions of this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed under seal and delivered by their proper and duly authorized officers as of the day and year first above written.

FOUR STAR FINANCIAL SERVICES, LLC                    ARTHUR HOHMANN


By: _____

Mark F. Cohn
Executive Vice President and
General Counsel                                        NEIL BARON



                                                       _____



                                                       LARRY LEVINSON



                                                       _____

CM-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*<br>George Stanbury, Esq. (SBN 60048)<br>STANBURY FISHELMAN, INC.<br>9200 Sunset Boulevard, PH 30<br>Los Angeles, CA 90069<br><br>TELEPHONE NO.: (310) 278-1800   FAX NO.: (310) 278-1802<br>ATTORNEY FOR *(Name)*   Plaintiff | **FILED**<br>LOS ANGELES SUPERIOR COURT<br><br>APR 0 6 2004<br><br>JOHN A. CLARKE, CLERK<br>S. Gabb<br>BY S. GABB, DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: Same
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

CASE NAME: MaxMin v. Cohn, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited   [ ] Limited<br>(Amount     (Amount<br>demanded    demanded is<br>exceeds $25,000)   $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 1811) | BC313316<br><br>JUDGE:<br><br>DEPT.: |

*All five (5) items below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 1800–1812 )** |
| [ ] Uninsured motorist (46) | [ ] Collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Insurance coverage (18) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [X] Other contract (37) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | **Real Property** | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Eminent domain/Inverse | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) |     condemnation (14) | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | [ ] Wrongful eviction (33) |    above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Other real property (26) |    types (41) |
| [ ] Business tort/unfair business practice (07) | **Unlawful Detainer** | **Enforcement of Judgment** |
| [ ] Civil rights (08) | [ ] Commercial (31) | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Residential (32) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Drugs (38) | [ ] RICO (27) |
| [ ] Intellectual property (19) | **Judicial Review** | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | [ ] Asset forfeiture (05) | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Petition re: arbitration award (11) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Writ of mandate (02) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Other judicial review (39) | |
| [ ] Other employment (15) | | |

2. This case [ ] is [X] is not complex under rule 1800 of the California Rules of Court. If case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve         in other counties, states or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial post-judgment judicial supervision
3. Type of remedies sought *(check all that apply)*:
   a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [X] punitive
4. Number of causes of action *(specify)*: 5
5. This case [ ] is [X] is not a class action suit.
Date: April 6, 2004

George Stanbury, Esq.
       (TYPE OR PRINT NAME)                                 (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate, Family, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a complex case, this cover sheet shall be used for statistical purposes only.

                                                                   Page 1 of 2

**CIVIL CASE COVER SHEET**

Legal
Solutions
Plus

Cal. Rules of Court, rules 201.8, 1800 –1812;
Standards of Judicial Administration, § 19

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

## To Plaintiffs and Others Filing First Papers

If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must check **all five** items on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1. check the more specific one. If the case has multiple causes of action. check the box that best indicates the **primary** cause of action. To assist you in completing the sheet. examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 201.8(c) and 227 of the California Rules of Court.

## To Parties in Complex Cases

In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 1800 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or. if the plaintiff has made no designation. a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)—Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
     Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice—
     Physicians & Surgeons
    Other Professional Health Care
     Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g.. slip
     and fall)
    Intentional Bodily Injury/PD/WD
     (e.g., assault. vandalism)
    Intentional Infliction of
     Emotional Distress
    Negligent Infliction of
     Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander. libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
     *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
     Contract *(not unlawful detainer
     or wrongful eviction)*
    Contract/Warranty Breach—Seller
     Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
     Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections
     Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
     domain, landlord/tenant, or
     foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise.
    report as Commercial or
    Residential.)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ—Administrative Mandamus
    Writ—Mandamus on Limited Court
     Case Matter
    Writ—Other Limited Court Case
     Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal—Labor
     Commissioner Appeals

**Provisionally Complex Civil
Litigation (Cal. Rules of Court Rule
1800-1812)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Toxic Tort/Environmental (30)
  Insurance Coverage Claims
    *(arising from provisionally
    complex case type listed above)*
    (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
     County)
    Confession of Judgment *(non-
     domestic relations)*
    Sister State Judgment
    Administrative Agency Award
     *(not unpaid taxes)*
    Petition/Certification of Entry of
     Judgment on Unpaid Tax
    Other Enforcement of Judgment
     Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
     harassment)*
    Mechanics Lien
    Other Commercial Complaint
     Case *(non-tort/non-complex)*
    Other Civil Complaint
     (non-tort/non-complex)

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified above)*
    (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
     Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late
     Claim
    Other Civil Petition

SHORT TITLE: MaxMin v. Cohn, et al.

CASE NUMBER: BC 315 3316

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required in all new civil case filings in the Los Angeles Superior Court |
|---|

I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [X] YES    CLASS ACTION? [ ] YES    LIMITED CASE? [ ] YES    TIME ESTIMATED FOR TRIAL  14  [ ] HOURS/ [X] DAYS.

II. Select the correct district and courthouse location (4 steps - If you checked "Limited Case", skip to No. III, Pg. 4):

**1** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column 1, the Civil Case Cover Sheet case type you selected.

**2** Check **one** Superior Court type of action in Column 2 below which best describes the nature of this case.

**3** In Column 3, circle the reason for the court location choice that applies to the type of action you have checked.

| Applicable Reasons for Choosing Courthouse Location (See Column 3 below) |
|---|

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Inj/Prop.Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**4** Fill in the information requested on page 4 in item III; complete item IV. Sign the certificate.

| | -1-<br>Civil Case Cover Sheet<br>Category No. | -2-<br>Type of Action<br>(Check only one) | -3-<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | [ ] A7100  Motor Veh. - Pers. Injury/Prop. Dam./Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110  Pers. Inj/Prop. Dam./Wrongful Death - Unins. Motorist | 1., 2., 4. |
| **Other PI/PD/WD Tort** | Asbestos (04) | [ ] A6070  Asbestos Property Damage | 2. |
| | | [ ] A7221  Asbestosis - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [ ] A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | [ ] A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other PI/PD/WD (23) | [ ] A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | [ ] A7230  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | [ ] A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | [ ] A7271  Negligent Infliction of Emotional Distress | 1., 2., 3. |
| | | [ ] A7220  Other Personal Injury/Property Dam./Wrongful Death | 1., 2., 4. |
| **Non-PI/PD/WD Tort** | Business Tort (07) | [ ] A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | [ ] A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | [ ] A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | [ ] A6013  Fraud (no contract) | 1., 2., 3. |
| | Intellectual Property (19) | [ ] A6016  Intellectual Property | 2., 3. |

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

CIV 109 09-03

LASC Rule 2.0
Page 1 of 4
LA-4B1

| SHORT TITLE: MaxMin v. Cohn, et al. | | CASE NUMBER |
|---|---|---|

| | -1-<br>Civil Case Cover Sheet<br>Category No. | -2-<br>Type of Action<br>(Check only one) | -3-<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-PI/PD/WD Tort (Contd)** | Prof. Negligence (25) | ☐ A6017 Legal Malpractice | 1., 2.. 3. |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2.. 3. |
| | Oth Non-PI/PD/WD Tort (35) | ☐ A6025 Other Non-PI/PD/WD Tort - Intentional | 2., 3. |
| | | ☐ A6026 Other Non-PI/PD/WD Tort - Negligence | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1., 2.. 3. |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1., 2.. 3. |
| | | ☐ A6109 Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not UD or wrongful eviction) | 2., 5. |
| | | ☐ A6008 Contract/Warranty Breach-Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1.. 2., 5. |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1.. 2., 5. |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 2.. 5., 6. |
| | | ☐ A6012 Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☒ A6009 Contractual Fraud | 1.. ②, 3.. 5. |
| | | ☐ A6031 Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027 Other Contract Dispute (not breach/insurance/fraud/negligence) | 1.. 2., 3., 8. |
| **Real Property** | Emnt Dom/Inv. Cond. (14) | ☐ A7300 Eminent Domain/Condemnation   Number of parcels _____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032 Quiet Title | 2. ,6. |
| | | ☐ A6060 Other Real Property (not em. domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer - Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer - Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2.. 6. |
| | Unlawful Detainer - Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm Arbitration | 2., 5. |

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION** LASC Rule 2.0

SHORT TITLE: MaxMin v. Conn, et al.    CASE NUMBER

| -1-<br>Civil Case Cover Sheet<br>Category No. | -2-<br>Type of Action<br>(Check only one) | | -3-<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (continued)** | | | |
| Writ of Mandate<br>(02) | | A6151  Writ - Administrative Mandamus | 2., 8. |
| | | A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | A6153  Writ - Other Limited Court Case Review | 2. |
| Oth. Jud. Review (39) | | A6150  Other Writ / Judicial Review | 2., 8. |
| **Provisionally Complex Litig.** | | | |
| Antitrust/Trade Reg. (03) | | A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| Construction Defect (10) | | A6007  Construction defect | 1., 2., 3. |
| Claims Inv. Mass Tort (40) | | A6006  Claims Involving Mass Tort | 1., 2., 8. |
| Securities Litig. (28) | | A6035  Securities Litigation Case | 1., 2., 8. |
| Tox. Tort/Envronm (30) | | A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| Ins Clms - Complex Case<br>(41) | | A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | | | |
| Enforcement<br>of Judgment<br>(20) | | A6141  Sister State Judgment | 2., 9. |
| | | A6160  Abstract of Judgment | 2., 6. |
| | | A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Misc. Civ. Cmplts** | | | |
| RICO (27) | | A6033  Racketeering (RICO) Case | 1., 2., 8. |
| Other Complaints<br>(Not Specified Above)<br>(42) | | A6030  Declaratory Relief Only | 1., 2., 8. |
| | | A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Misc. Civil Petitions** | | | |
| Partnership/Corp.<br>Governance (21) | | A6113  Partnership and Corporate Governance Case | 2., 8. |
| Other Petitions<br>(Not Specified Above)<br>(43) | | A6121  Civil Harassment | 2., 3., 9. |
| | | A6123  Workplace Harassment | 2., 3., 9 |
| | | A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9 |
| | | A6190  Election Contest | 2. |
| | | A6110  Petition for Change of Name | 2., 7. |
| | | A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | A6100  Other Civil Petition | 2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

CIV 109 09-03

LASC Rule 2.0
Page 3 of 4

| SHORT TITLE: MaxMin v. Cohn, et al. | CASE NUMBER |
|---|---|

III. Statement of Location: Enter the address of the accident, party residence or place of business, performance, or other circumstance indicated in No. II., item **3** on Page 1 as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER ITEM -3- WHICH APPLIES IN THIS CASE<br>☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: |
|---|---|
| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90025 | |

IV. Certificate/Declaration of Assignment: The undersigned hereby certifies and declares that the above entitled matter is properly filed for assignment to the <u>LOS ANGELES</u> courthouse in the <u>CENTRAL</u> District of the Los Angeles Superior Court under Section 392 et seq., Code of Civil Procedure and Rule 2(b), (c) and (d) of this court for the reason checked above. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and this declaration was executed on <u>April 6, 2004</u> (date) at, <u>Los Angeles</u> (city) California.

(SIGNATURE OF ATTORNEY/FILING PARTY)
George Stanbury, Esq.

## New Civil Case Filing Instructions

This addendum form is required so that the court can assign your case to the correct courthouse location in the proper district for filing and hearing. It satisfies the requirement for a certificate as to reasons for authorizing filing in the courthouse location, as set forth in Los Angeles Superior Court Local Rule 2.0. It must be completed and submitted to the court along with the Civil Case Cover Sheet and the original Complaint or Petition in **ALL** civil cases filed in any district (including the Central District) of the Los Angeles County Superior Court. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

---
**PLEASE HAVE THE FOLLOWING DOCUMENTS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**
---

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk (Summons forms available at the Forms Counter).

3. Civil Case Cover Sheet form required by California Rule of Court 982.2(b)(1), completely filled out (Cover Sheet forms available at the Forms Counter).

4. This "Addendum to Civil Case Cover Sheet" form [Superior Court Form Number CIV 109, revised 09-03], completely filled out (Item II. does not apply in limited civil cases) and submitted with the Civil Case Cover Sheet.*

5. Payment in full of the filing fee (unless filing on behalf of state or local government or no fee is due for the type of case being filed) or an Order of the Court waiving payment of filing fees in forma pauperis (fee waiver application forms available at the Filing Window).

6. In case of a plaintiff or petitioner who is a minor under 18 years of age, an Order of the Court appointing an adult as a guardian ad litem to act on behalf of the minor (Guardian ad Litem Application and Order forms available at the Forms Counter).

7. Additional copies of documents presented for endorsement by the Clerk and return to you.

* With the exception of unlimited civil cases concerning property damage, bodily injury or wrongful death occurring in this County, Labor Commissioner Appeals, and those types of actions required to be filed in the Central District by Local Court Rule 2(b), all unlimited jurisdiction civil actions may be optionally filed either in the Central District or in whichever other court location the rule would allow them to be filed. When a party elects to file an unlimited jurisdiction civil action in Central District that would also be eligible for filing in one or more of the other court locations, this form must still be submitted with location and assignment information completed.

---
**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION** LASC Rule 2.0

CIV 109 09-03   Page 4 of 4

**EXHIBIT 16**

# ORIGINAL

"FILED"

1  **ALBERT, WEILAND & GOLDEN, LLP**
Jeffrey I. Golden, State Bar No. 133040
2  Kyra E. Andrassy, State Bar No. 207959
Hutchison B. Meltzer, State Bar No. 217166
3  650 Town Center Drive, Suite 950
Costa Mesa, California 92626
4  Telephone:   (714) 966-1000
Facsimile:   (714) 966-1002
5
Counsel for Richard A. Marshack,
6  Chapter 7 Trustee of the Estate of Four Star
Financial Services, Inc.
7

8                **UNITED STATES BANKRUPTCY COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

| | |
|---|---|
| 10  In re | )   Case No. LA 03-37579 TD |
| | ) |
| 11  FOUR STAR FINANCIAL SERVICES, LLC, | )   Chapter 7 Case |
| | ) |
| 12 | )   **NOTICE OF RESCHEDULING OF FIRST** |
| | )   **MEETING OF CREDITORS** |
| 13 | ) |
| | )   Old Meeting Information: |
| 14 | )   Date:  May 17, 2004 |
| | )   Time:  10:00 a.m. |
| 15 | )   Place: 725 South Figueroa Street, Room |
| | )          102, Los Angeles, CA 90017 |
| 16 | ) |
| Debtor. | )   New Meeting Information: |
| 17 | )   Date:   May 4, 2004 |
| | )   Time:   10:00 a.m. |
| 18 | )   Place: 725 South Figueroa Street, Room |
| | )          102, Los Angeles, CA 90017 |
| 19 | ) |

20  **TO THE DEBTOR, THE DEBTOR'S COUNSEL, ALL CREDITORS, AND OTHER**

21  **PARTIES IN INTEREST:**

22          **PLEASE TAKE NOTICE** that the meeting of creditors in the above-captioned

23  case has been rescheduled for May 4, 2004 at 10:00 a.m. at 725 South Figueroa Street,

24  Room 102, Los Angeles, California 90017.

25  DATED: April 9, 2004              ALBERT, WEILAND & GOLDEN, LLP

26
By:
27              KYRA E. ANDRASSY
Attorneys for Richard A. Marshack,
28              Chapter 7 Trustee

C:\WP9\KEA\1160.WPD                                              NOTICE

1    **PROOF OF SERVICE**

2    STATE OF CALIFORNIA, COUNTY OF ORANGE

3        I am employed in the County of Orange, State of California.  I am over the age of
     18 and not a party to the within action; my business address is Copi-Rite, 2384 Newport
4    Boulevard, Suite A, Costa Mesa, California 92627.

5        On April 11, 2004, I served the foregoing document described as **NOTICE OF
     RESCHEDULE OF FIRST MEETING OF CREDITORS** on the interested parties in this
6    action by placing true copies thereof enclosed in sealed envelopes addressed as stated
     on the attached mailing list.

7
     [✓]    BY FIRST CLASS MAIL
8
            [✓]    I deposited such envelope in the mail at Santa Ana, California. The
9                  envelope was mailed with first class postage thereon fully prepaid.

10           [  ]    I am "readily familiar" with the firm's practice of collection and processing
                    correspondence for mailing.  It is deposited with U.S. postal service on that
11                  same day with postage thereon fully prepaid at Costa Mesa, California in
                    the ordinary course of business.  I am aware that on motion of the party
12                  served, service is presumed invalid if postal cancellation date or postage
                    meter date is more than one day after date of deposit for mailing in
13                  affidavit.

14     Executed on April 12, 2004, at Costa Mesa, California.

15   [  ]   (State) I declare under penalty of perjury under the laws of the State of California
            that the above is true and correct.
16
     [✓]   (Federal) I declare that I was employed by the office of a member of the bar of this
17          court at whose direction the service was made.

18
       STEVE LIVERMORE                              Signature
19   Type or print name

20

21

22

23

24

25

26

27

28

## SERVICE LIST

**Office of the U.S. Trustee**
Ernst & Young Plaza
725 South Figueroa St., 26th Floor
Los Angeles, CA 90017

Arthur Greenberg, Esq.
Greenberg & Bass
16000 Ventura Blvd., Suite 1000
Encino, CA 91436
**Debtor's Counsel**

Rich Energy Development Co. Retirement Trust
Stanley H. Rich, Trustee
11823 Mayfield Avenue, #101
Los Angeles, CA 90049
**Petitioning Creditor**

Rodney Minott Trust
and Polly Berry Kennedy Minott Trust
c/o Rodney G. Minott
1206 Mariposa Street
San Francisco, CA 94107
**Petitioning Creditor**

Robert Lipp IRA
Lipp Revocable Trust of 1992
Georgina Asset Management, LLC
c/o Robert Lipp
270 18th Street
Santa Monica, CA 90402
**Petitioning Creditors**

Michael J. Plonsker
Alschuler Grossman Stein & Kahan
1620 26th Street
Santa Monica, CA 90404
**Petitioning Creditor**

Maxmin Yield Investments Limited Partnership
c/o Arthur J. Hohmann
P.O. Box 12392
Aspen, CO 81612
**Petitioning Creditor**

Scott Emerson Ungar
The Ungar Family Intervivos Revocable Trust
Regional Holdings
6407 MacLaurin Drive
Tampa, FL 33647
**Petitioning Creditors**

Widelitz Family Trust U/T/D 4/15/94
Bryce Scott Widelitz, UTMA CA
Kiley G. Widelitz, UTMA CA
Heidi Widelitz, IRA
10519 Lauriston Avenue
Los Angeles, CA 90064
**Petitioning Creditors**

Martin S. Zohn, Esq.
Proskauer Rose, LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067
**Petitioning Creditors' Attorney**

In re Four Star Financial Services
Case No. LA 03-37579 TD
Revised 4/7/04

## REQUEST FOR SPECIAL NOTICE

Eric A. Linden, Esq.
Jaffe, Raitt, Heuer & Weiss, P.C.
One Woodward Avenue, Suite 2400
Detroit, Michigan  48226
Phone: (313) 961-8380
FAX: (313) 961-8358
E-mail: elinden@jafferaitt.com
**Attorneys for Woodforest National Bank**

Eric A. Linden, Esq.
Jaffe, Raitt, Heuer & Weiss, P.C.
One Woodward Avenue, Suite 2400
Detroit, Michigan  48226
Phone: (313) 961-8380
FAX: (313) 961-8358
E-mail: elinden@jafferaitt.com
**Attorneys for Global Crossing Bandwidth, Inc.**

Nick I. Iezza
Spiwak & Iezza
2660 Townsgate, Suite 530
Westlake Village, CA  91361-5700
**Attorneys for Creditor, Patricia C. Silver**

Michael A. Vanic
Reish Luftman Reicher & Cohen
11755 Wilshire Boulevard, Tenth Floor
Los Angeles, CA  90025-1539
**Attorneys for Anthony S. Delfino**

Reservoir Capital Corporation
c/o Donald H. Cram, III, Esq.
Severson & Werson
One Embarcadero Center, 26th Floor
San Francisco, CA  94111
**Attorneys for Creditor Reservoir Capital Corporation**

Reservoir Capital Corporation
c/o Irving E. Walker
Saul Ewing, LLP
100 South Charles Street, 15 Floor
Baltimore, MD  21201
**Attorneys for Creditor Reservoir Capital Corporation**

Neil Baron
c/o Ashworth & Benedict
4495 South Pecos Road, Suite B
Las Vegas, NV  89121

Douglas H. Napier
Napier, Wolf & Napier
607 Eighth Street, Suite One
Fort Madison, IA  52627

C:\WP\JIG\MAR01\RSN

Buckmaster deWolf
Howrey Simon Arnold & White, LLP
525 Market Street, Suite 3600
San Francisco, CA  94105
**Attorneys for Creditor Howrey Simon Arnold & White, LLP**

Charles K. Park
Howrey Simon Arnold & White, LLP
550 South Hope Street, Suite 1100
Los Angeles, CA  90071
**Attorneys for Creditor Howrey Simon Arnold & White, LLP**

Michael S. Kogan
Ervin, Cohen & Jessup LLP
9401 Wilshire Boulevard, 9th Floor
Beverly Hills, CA  90212
**Attorneys for 2424 Limited**

John C. Nabors
Deirdre B. Ruckman
Gardere Wynne Sewell LLP
1601 Elm Street, Suite 3000
Dallas, TX  75201-4761
**Attorneys for Maxmin Yield Investments, LP and Arthur J. Hohmann**

George Stanbury, Esq.
Stanbury Fishelman & Wisner, inc.
9200 Sunset Blvd.
Pnethouse 30
Los Anegeles, CA 90069
**Attorneys for Maxmin Yield Investments, LP and Arthur J. Hohmann**

Arthur J. Hofmann
MaxMin Yield Investments, LP
415 E. Hyman, Suite 201
Aspen, CO 81611
**Creditor**

Deborah S. Slack
Squar, Milner, Reehl & Williamson, LLP
4100 Newport Place, 3rd Floor
Newport Beach, CA 92660

Howard Kollitz, Esq.
Danning, Gill, Diamond & Kollitz
2029 Century Park East, 3rd Floor
Los Angeles, CA 90067-2904
**Attorneys for Ron Anson & Jack Garrett**

Katherine Kramer
Law Offices of Katherine Kramer
12400 Wilshire Blvd., Suite 400
Los Angeles, CA  9002-1023
**Attorneys for Creditor Chesterfield**
**Financial Corporation**

C:\WP\JIG\MAR01\RSN

Annie Verdries
Lewis Brisbois Bisgaard & Smith, LLP
650 Town Center Drive, Suite 1400
Costa Mesa, CA  92626
**Attorneys for Anthony S. Delfino, et al.,
and H. Gilbert Jones, et al.**

Martin Zohn
Proskauer Rose, LLP
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
**Attorneys for Proskauer Rose, LLP**

Pamela J. Hoefflin
1444 Moraga Drive
Los Angeles, CA  90049

Steven M. Hoefflin, M.D.
1444 Moraga Drive
Los Angeles, CA  90049

Darius A. Baghai
144 S. Palm Dr, First Floor
Beverly Hills, CA  90212
**Attorneys for Suntiger, Inc.**

Charles M. Levy, Esq.
Levy, Smalls & Lallas
815 Moraga Drive
Los Angeles, CA  90049
**Attorneys for Marjorie Gilbert**

Earl O. Bender
Earl O. Bender A Professional Corporation
11755 Wilshire Boulevard, Suite 1350
Los Angeles, CA  90025
**Attorneys for Earl O. Bender**

Matthew A. Lesnick
Bingham McCutchen LLP
335 South Grand Avenue, Suite 4400
Los Angeles, CA  90071-3106
**Attorneys for Creditor, The Williams Family Trust**

The Williams Family Trust
c/o Kevin Williams
Allied Beverages, Inc.
13287 Ralston Avenue
Sylmar, CA  91342-1296

Alschuler Grossman Stein & Kahan, LLP
Attn: Michael J. Plonsker, Esq.
The Water Garden
1620 26th Street, North Tower, Fourth Floor
Santa Monica, CA  90404
**Attorneys for Creditors Michael J. Plonsker and Lisa Plonsker**

Sam Silverberg
26633 Academy Drive
Palos Verdes Peninsula, CA  90274
**Creditor**

Rich Energy Development Co.
Attn: Stan Rich
11823 Mayfield Avenue, #101
Los Angeles, CA  90049

David C. Douglas
Automation Programming, Inc.
488 29th Street
San Francisco, CA  94131

Four Star Financial Services, LLC
11755 Wilshire Blvd., Suite 13
Los Angeles, CA 90025

Arthur A. Greenberg
16000 Ventura Boulevard
Suite 1000
Encino, CA 91436

Office of the U.S. Trustee (L.A.)
725 S. Figueroa Street
Suite 2600
Los Angeles, CA 90017

CP Solomon Keith & Ilene
2348 Kelton Avenue
Los Angeles, CA 90064

CPA Attention: Vera, c/o Mr.
110 Pine Avenue, Suite 804
Long Beach, CA 90802

ttee Salvarezza Robert
110 Braemar Drive
Hillsborough, CA 94010

Ucautma Rofe Ian
1040 Berkeley Street
Santa Monica, CA 90403

Ucautma Rofe Leo
1040 Berkeley Street
Santa Monica, CA 90403

Vincent & Jerome Navarra
2181 Guy Street
San Diego, CA 92103

900 Capital Services
11755 Wilshire Blvd., #1350
Los Angeles, CA 90025

A&A Legal Service
210 Fell St. #17
San Francisco, CA 94105

Abbi Samuels
18140 Kingsport Drive
Malibu, CA 90265

Accountant Stationers & Printe
712 E. Washington Blvd
Los Angeles, CA 90021

Accpac International Inc
File #73365
PO Box 60000
San Francisco, CA 94160

Adina Seidenfeld
126 Seegar Road
Upper St. Claire, PA 15241

Al Smith
14216 N. 44th Drive
Glendaie, CA 85306

Alan Shapiro
10000 Jefferson Blvd., # C
Culver City, CA 90232

Albert & Judith Lachman
9141 Belcaro Drive
Huntington Beach, CA 92646

Albert and Dorothy Case
12345 Ridge Circle
Los Angeles, CA 90049

Albert and Leah Kaplan
P. O. Box 800845
Aventura, FL 33180

Alejandro Kahan
1341 Brinkley Avenue
Los Angeles, CA 90049

Alex Jaffe
30050 Quail Run Drive
Agoura Hills, CA 91301

Alexis D. Light
316 El Camino Dr.
Beverly Hills, CA 90212

Alfredo N. Diez
Cra 67 #1 Sur 92
Medellin, Colombia

Alicia Young - Sheila Young &
851 Burlway Road, # 520
Burlingame, CA 94010-1714

A-Link Network Services, Inc.
260 S. Sunnyvale Ave Ste 9
Sunnyvale, CA 94086

Allen & Sally Trattner
5121 N. Camino Sumo
Tucson, AZ 85718

Allen H. Spore
1867 St. Andrews Dr
Moraga, CA 94556

~~Allright Realty Company~~
~~Acct#: Filing # 02-1638028~~
~~address unknown~~
MAIL RETURNED

Alvin Baruch
714 Manhattan Beach Blvd.
Manhattan Beach, CA 90266


AMK Reporting Service
4101 Birch St Ste 130
Newport Beach, CA 92660

~~Andrew B. Basch~~
~~4528 Park Serena~~
~~Calabasas, CA 91302~~
MAIL RETURNED

Andrew Orgell
23827 Yellowbill Terrace
Moreno Valley, CA 92557


Angel Williams
4422 Via Marina, P73
Marina del Rey, CA 90292

Ann Navarra
1401 E Street
San Diego, CA 92101

ANNES & ASSOCIATES
5000 Birch St., suite 3000 Wes
Newport Beach, CA 92660


Anson David
11603 Darlington, #7
Los Angeles, CA 90049

Anson Ronald I.
11755 Wilshire Blvd., #1350
Los Angeles, CA 90025

Anson Suzanne
11755 Wilshire Blvd., #1350
Los Angeles, CA 90025


Anson, Garrett & Co.
11755 Wilshire Boulevard #1350
Los Angeles, CA 90025

Anthony Delfino
4640 Admiralty Way, 9th Floor
Marina del Rey, CA 90292

Anthony Delfino
4640 Admiralty Way, Suite 900
Marina del Rey, CA 90292


Anthony S. Delfino
1224 West Bay Avenue
Newport Beach, CA 92661

Anthony S. Delfino
4001 MacArthur Boulevard, # 10
Newport Beach, CA 92660

Anthony S. Delfino-POOL Acco
4640 Admiralty Way, 9th Floor
Marina del Rey, CA 90292-6605


APS
860 Walnut St.
San Luis Obispo, CA 93401

Arlene Kaplan
425 E. 58th Street, # 30C
New York, NY 10022

Arlene Kaplan
P.O. Box 31598
Rochester, NY 14603-1598


Arlene Schwartz
10501 Wilshire Blvd., # 1712
Los Angeles, CA 90024

Art Fink
10580 Wilshire Boulevard, Box
Los Angeles, CA 90024

ASBH RENTALS
11755 Wilshire Blvd. Suite 135
Los Angeles, CA 90025


Asher Brauner
741 N. Martel Avenue
Los Angeles, CA 90046-7506

Attn. David Beckstrom
3941 S. Bristol Street, #E
Santa Ana, CA 92707

Audrey Tuttle Greynald
31840 Foxfield Dr.
Westlake Village, CA 91361-4201


Avaya (Formerly Lucent Technol
PO Box 93000
Chicago, IL 60673-3000

Barry & Nancy Levy
701 N. Doheny Drive
Beverly Hills, CA 90210

Barry Boscoe
15928 Venture Blvd., Suite 204
Encino, CA 91436-4410

Barry E. and Susan Shanley
4383 Cornishon Avenue
La Canada, CA 91011

Barry Krowne
11314 Wilbur Avenue
Northridge, CA 91326

~~Barry Levy~~
~~c/o Polycomp~~
~~1801 Century Park East~~
~~Los Angeles, CA 90067~~
MAIL RETURNED

Beatrice Collis
645 Gould Terrace
Hermosa Beach, CA 90254

Benjamin & Roberta Allen
3322 Colbert Ave.
Los Angeles, CA 90066-1214

Bernard Shapiro
1666 20th Street
Santa Monica, CA 90404

~~Betty J. Handmacher~~
~~3394 Degas Drive West~~
~~Palm Beach Garde, FL 33410~~
MAIL RETURNED

Bing Wang
3775 Canfield Road
Pasadena, CA 91107-2253

.

~~Biomedical Optical Company~~
~~Acct#: Filing # 03-2241257~~
~~7047 Radford Avenue~~
~~North Hollywood, CA 91605~~
MAIL RETURNED

Brad Cohen
P.O. Box 24710
Los Angeles, CA 90024-0710

~~Bret Michaels~~
~~Acct#: Filing #0129160094~~
~~333 S. Grand Ave., Suite 1560~~
~~Los Angeles, CA 90071~~
MAIL RETURNED

Bridge Service Corp

Brookshire Suites
120 E. Lombard Street
Baltimore, MD 21202

~~Bruce Spector~~
~~10880 Wilshire Blvd.~~
~~Los Angeles, CA 90024~~

Bryan M. Krupin
9665 Wilshire Boulevard, #801
Beverly Hills, CA 90212

Burgess & Company
100 Spear Street Suite 1105
San Francisco, CA 94105

Business Services Network
1275 Fairfax Ave.
San Francisco, CA 94124-1720

Business Suites Inner Harbor
400 E Pratt St. 8th Fl.
Baltimore, MD 21202

c/o Charles Schwab & Co
1820 Bryant Street
Palo Alto, CA 94301-3709

~~c/o Charles Schwab & Co., Inc.~~
~~4722 North 24th Street~~
~~Phoenix, AZ 85016~~
MAIL RETURNED

c/o Coast Marine & Indust. Sup
398 Jefferson Street
San Francisco, CA 94133

c/o David Leon
1120 N. Granada Drive
Orange, CA 92869

c/o David Roberts
10390 Santa Monica Blvd., Suit
Los Angeles, CA 90025

c/o First Clearing Corp
10700 Wheat First Dr. WF1030
Glen Allen, VA 23060

c/o Howard Blitz
939 24th Street
Santa Monica, CA 90403

c/o Jack Garrett
3543 Via del Prado
Calabasas, CA 91302

c/o Jessica Sher
3027 Nicada Drive
Los Angeles, CA 90077

c/o Loeb & Loeb
1906 Acklen Avenue
Nashville, TN 37212

c/o Mark Weinstein
1640 5th Street, # 112
Santa Monica, CA 90401

c/o Martin H. Blank Jr.
9454 Wilshire Blvd., Suite 700
Beverly Hills, CA 90212-2434

c/o Sheila Young
851 Burlway Road, # 520
Burlingame, CA 94010

c/o Steven Ungar
6407 Mac Laurin Drive
Tampa, Fl 33647

c/o The Royster Group
696 State Street
San Diego, CA 92101

c/o Thomas N. Nolan
26 Bridgeport
Manhattan Beach, CA 90266

c/o Werner Wolfen, Esq.
1800 Avenue of the Stars, # 60
Los Angeles, CA 90067

California Choice Benefit Admi
721 S Parker Ste 200
Orange, CA 92868-4772

Calvin R. Vander Woude
P. O. Box 350
Sonoma, CA 95476

Candidhosting.Com
Division of Neutelligent Inc.
Tampa, FL 33602
MAIL RETURNED

Carey H. & Susan M. Melcher
23307 W. Park Colombo
Calabasas, CA 91302

Carl G. Love, Esq.
1676 Pleasant Plains Rd.
Annapolis, MD 21401-5929

Carl or Jean Peterson
8919 Thoreau Place
Hudson, FL 34667

Carrie Outlaw
11914 Caneridge Road
San Diego, CA 92128
MAIL RETURNED

Cary or Robin Spencer
18140 Kingsport Dr.
Malibu, CA 90265-5634

Caryl Weinstein
7754 Lakeside Blvd.
Boca Raton, FL 33434-3133

Casey Brett
1911 East 42nd Street
Spokane, WA 99203

Centerpoint Financial Services
Acct#: Filing # 9916060894
1675 Larimer St., #880
Denver, CO 80202

Charles and Irma Heller
83 Princeton Drive
Rancho Mirage, CA 92270

Charles and Jocelyn Scott
P.O. Box 2541
Rancho Santa Fe, CA 92067

Chesterfield Financial Corp
Acct#: Filing # 9935760558
16100 Swingley Ridge Rd., Suite 250
Chesterfield, MO 63017
MAIL RETURNED

Chesterfield Financial Corp.
Acct#: Filing # 0320960731
c/o Katherine Kramer
12400 Wilshire Blvd., #400
Los Angeles, CA 90025

Claudia M. Palencia
Acct#: SC078189
619 North Seward Street
Los Angeles, CA 90004

Cobeaga, Tomlinson, LLP
228 South Fourth Street
Las Vegas, NV 89101

COI Long Distance
P.O. Box 51
Reynoldsburg, OH 43068-0051

Collin Ferrara / Elan Susser
26500 Latigo Shore Drive
Malibu, CA 90265

ConferenceCallService
1450 US Route 22 West Ste 203
Mountainside, NJ 7092

Courtney R. Baldridge
6102 Vernon Terrace
Alexandria, VA 22307

CPIC Life
PO Box 25208
Santa Ana, CA 92799-5208

CT Corporation System
P.O. Box 4349
Carol Stream, IL 60197-4349

Cynthia Orgell
904 Thistlegate Road
Oak Park, CA 91377

Cynthia Weiss
245D South Helix Avenue
Solana Beach, CA 92075

Daily Journal Corporation
915 E First St
Los Angeles, CA 90012

Dakota Communications Solution
P.O. Box 8937
Sioux Falls, SD 57109-9307

Dan Mottaz Video Productions I
182 Second St. Ste 202
San Francisco, CA 94105

Dan Robbin
1439 Santa Fe Avenue
Berkeley, CA 94704

Dana Light
451 S. Peck Drive
Beverly Hills, CA 90212

Dana Solomon
2348 Kelton Avenue
Los Angeles, CA 90064

Daniel and Mary Selznick
3011 E. Broadway, Suite 100
Phoenix, AZ 85040

Daniel H. Plonsker
619 Alta Avenue
Santa Monica, CA 90402

Daniel L. or Kathy Moy
1156 Calle Vista Drive
Beverly Hills, CA 90210

Daniel Selznick
3011 E. Broadway, # 100
Phoenix, AZ 85040

Darda Lourie
12021 Louise Avenue
Los Angeles, CA 90066

Darin K. Harvey
19356 Redbridge Lane
Tarzana, CA 91356

David & Carol Self - c/o Jerry
2181 Guy Street
San Diego, CA 92103

David Brooks Consulting, Inc.
5 E. Monroe Ave. #310
Alexandria, VA 22301

David Chang
928 5th Avenue
Los Angeles, CA 90019
MAIL RETURNED

David J. Berkowitz
700 Massachusetts St. Suite 56
Lawrence, KS 66044
MAIL RETURNED

David Kaplan
41 Mackay Road
Tenafly, NJ 7670

David N. Richman
305 Cape Court
Mill Valley, CA 94941-3374

David N. Richman
305 Cape Court
Mill Valley, CA 94941

David or Celine Hecht
6038 Dumfries
Houston, TX 77096

David Roberts
947 Tiverton Avenue
Los Angeles, CA 90024

David S. Malet (changed to Dav
1320 N. Veitch Street, # 1111
Arlington, VA 22201
MAIL RETURNED

David Seidenfeld
211 California Ave., # 502
Santa Monica, CA 90403

David Sol Leon
1120 N. Granada Drive
Orange, CA 92869

David Wassermil
22287 Mulholland Hwy., # 318
Calabasas, CA 91302

David-Sol Leon
1120 North Granada Drive
Orange, CA 92869

Davis, Brown, Koehn, Shors & R
666 Walnut St., #2500
Des Moines, IA 50309-3993

Debbie Manson-Boscoe
17342 Tiara Street
Encino, CA 91316

Deborah Weller
P.O. Box 22167
Phoenix, AZ 85028

Debra A. Lipp
11407 Orleans Way
Kensington, MD 20895

Dengler, Joe
c/o Kramon & Graham, Lauten On
Baltimore, MD 21202

Dennis J. & Cynthia K. Gilbert
9665 Wilshire Boulevard, # 801
Beverly Hills, CA 90212-2507

Dennis J. Gilbert
9665 Wilshire Boulevard, #801
Beverly Hills, CA 90212

Dennis James Weaver
5540 Owensmouth, Apt. 214
Woodland Hills, CA 91367

Dennis Light
246 East Dorchester Drive
Salt Lake City, UT 84103

Derald E. & Charlotte J. Brack
1708 Marengo Avenue
S. Pasadena, CA 91030

Devlin & Parkinson Trust Acct.
P.O. Box 10387
Greenville, SC 29603

Dilworth Paxson LLP
1735 Market Street
Philadelphia, PA 19103

Donald & Laura Reitzfeld
5019 Pickford Way
Culver City, CA 90230

Donald & Laura Reitzfeld
10784 Jefferson Blvd.
Culver City, CA 90230

Donald P. Rubenstein
Acct#: CIV 188386
Reed Smith Crosby Hrafey, LLP
Two Embarcadero Center, Suite
San Francisco, CA 94111

Donald Passman
132 So. Rodeo Drive
Beverly Hills, CA 90212

Donald S. or Shana Passman
130 So. Rodeo Drive
Beverly Hills, CA 90212

Donald S. Passman
Acct#: Filing # 0321660459
132 So. Rodeo Drive
Beverly Hills, CA 90212

Doris Ann Perez
37 Wildemere
Rancho St Margar, CA 92688

Double Day
428 S. Airport Blvd So.
So.San Francisco, CA 94080

Dovel & Luner, LLP
Sean A. Luner
333 South Grand
Los Angeles, CA 90071

Dr. Derald Brackmann
1708 Marengo Avenue
South Pasadena, CA 91030

Dr. Oscar & Charlotte Sherman
4106 Northeast 29th Avenue
Ft. Lauderdale, FL 33308

Dr. Richard J. Collis
645 Gould Terrace
Hermosa Beach, CA 90254

Dr. Richard J. Collis
2401 Pacific Coast Hwy., # 205
Hermosa Beach, CA 90254

Dr. Shari L. Lukas
P. O. Box 676190
Rancho Santa Fe, CA 92067

Duane M. Geck - Donald H. Cram
Acct#: FJ02-002(MJJ)(CJS)
Severson & Werson
One Embarcadero Ctr, #2600
San Francisco, CA 94111

E.T. Albany
P. O. Box 1918
Venice, CA 90294

Earl and Joan Bender
3597 Knob Hill Drive
Sherman Oaks, CA 91423

Earl Wynn
10390 Wilshire Boulevard, #10
Los Angeles, CA 90024-4719

Early, A. Jackson
450 Maple Ave East suite 301
Vienna, VA 22180

Economy Office Supply
1725 Gardena Avenue
Glendale, CA 91204

Edwin J. Hagerty
1707 N. Fremont
Chicago, IL 60614

Eileen R. Sonheim
4766 Park Granada, # 211
Calabasas, CA 91302

Eisner & Associates
9777 Wilshire Blvd. Ste 718
Beverly Hills, CA 90212

Elaine Lopez
5098 Tottenham Court
San Jose, CA 95136

Elaine Shapiro
3076 Monroe Park Road
Henderson, NV 89052

Ellen R. Vargas
1616 Via Montemar
Palos Verdes Est, CA 90274

Emanuel & Celia Light
10106 Empyrean Way, # 104
Los Angeles, CA 90067-3803

Emanuel & Celia Light
10106 Empyrean Way, # 104
Los Angeles, CA 90067

Emmett J. Gantz
P. O. Box 492533
Los Angeles, CA 90049

Equifax
P.O. Box 105835
Atlanta, GA 30348-5835

Eric A. Linden
Acct#: H-03-4902
Jaffe Raitt Heuer & Weiss, P.C
One Woodward Ave. #2400
Detroit, MI 48226

Eric Light
316 South El Camino Dr.
Beverly Hills, CA 90210

eSec Security Services
c/o George Goldsmith
3450 Fair
Pasadena, CA 91107

Espree Kessler
11823 Mayfield Ave., #101
Los Angeles, CA 90049

Espree Kessler
11823 Mayfield Avenue, # 101
Los Angeles, CA 90049-5724

Ethel Sachs
947 Tiverton Avenue, # 810
Los Angeles, CA 90024

Eugene Lessner
3244 San Amadeo, #3A
Laguna Hills, CA 92653

Expanets Inc.
Dept # 1261
Denver, CO 80271-1261

Fagelbaum & Heller LLP
2049 Century Park East Suite 2
Los Angeles, CA 90067

Farrell and Kay Haralson
43220 Chapelton Drive
Bermuda-Dunes, CA 92201

Fay Miller
6794 Oak Forrest Drive
Oak Park, CA 91377

Fay Miller - c/o Polycomp
6400 Canoga Ave., # 250
Woodland Hills, CA 91367

Federal Express
P.O. Box 1140
Memphis, TN 38101-1140

First Choice In Ink
121 Industrial Road, Unit # 5
Belmont, CA 94002
MAIL RETURNED

First Colony Life Insurance Co
P.O. Box 7314
Baltimore, MD 21279-0314
MAIL RETURNED

Foley McIntosh Fred & Claytor
3675 Mount Diablo Blvd., Ste 2
Lafayette, CA 94549

Franchise Tax Board
Special Procedures BK
P.O. Box 942867
Sacramento, CA 95812

Franchise Tax Board
P.O. Box 942857
Sacramento, CA 94257-0631

Francine Lipp
25 Prospect Street
Ridgefield, CT 6877
MAIL RETURNED

Francine R. Witkin
6400 Canoga Avenue, # 250
Woodland Hills, CA 91367

Frank Becker
2 Wychcombe Studios
London , England NW3 4XY

Frank Bell
Attorney At Law
177 Bovet Road
San Mateo, CA 94402-3191

Freda & Phoebe Chou
Lane 72. Sec II, Chung San N.
Taipei, Taiwan 104

Freda Chou
22331 Sunbrook
Mission Viejo, CA 92692

Freda Rosen
811 Radcliffe Avenue
Pacific Palisade, CA 90272

Freed & Berman, P. C.
3423 Piedmont Road, N. E. Suit
Atlanta, GA 30305

Freisem, Macon, Swann & Malone
2905 Piedmont Road, N.E.
Atlanta, GA 30305-2755

FTI Consulting
c/o Howrey Simon
1299 Pensylva
Washington, DC 2004-2402

FTL Communications LLC
8753 Broadway Suite I
La Mesa, CA 91941

Garry S. or Sonia Brody
219 Tilden Avenue
Los Angeles, CA 90049

Gary T. Lafayette
Eric R. Dew
Acct#: C 01-0220 MJJ
MAIL RETURNED

Lafayette & Kumagai LLP
100 Spear Street, #400
San Francisco, CA 94105

Gary W. & Jerry B. Findlay
315 Calle Delicada
San Clemente, CA 92672

Gary W. Sullivan
Law Offices of Gary W. Sullivan

San Jose, CA 95126

George Stanbury
Stanbury Fishelman, Inc.
9200 Sunset Blvd., Penthouse 3
Los Angeles, CA 90069

Georgina Asset Management, LLC
11755 Wilshire Blvd. #1350
Los Angeles, CA 90025

Gerald A. Thompson
549 Citation Way
Thousand Oaks, CA 91320

Gerald and Lynne Ostrow
1800 Avenue of the Stars, # 60
Los Angeles, CA 90067

Geraldine Perlman
2200 Coldwater Canyon Drive
Beverly Hills, CA 90210

Gilbert & Geraldine Perlman
2200 Coldwater Canyon Drive
Beverly Hills, CA 90210

Gilbert P. Cohen
1948 Malcolm Ave. unit 403
Los Angeles, CA 90025

Gilbert Perlman
2200 Coldwater Canyon Dr.
Beverly Hills, CA 90210

Gilbert Romoff
2200 San Ysidro
Beverly Hills, CA 90210

Glankler Brown, PLLC/Formely W
One Commerce Square 17th
Memphis, TN 38103

Global Options
1615 L St NW  Ste 300
Washington, DC 20036

Greenberg & Bass
16000 Ventura Blvd.
Suite 1000
Encino, CA 91436

Greg & Lynda Hart
50905 Calle Quito
La Quinta, CA 92253

Gregory and Gloria McCandless
26777 Almaden Ct.
Los Altos Hills, CA 94022

Gregory and Marianne Bloom
5482 Granada Way
Carpinteria, CA 93013

Gregory M. Senofsky, M.D.
1123 Donaire Way
Pacific Palisade, CA 90272

Grossman & Cotter Inc
2421 Park Blvd.  Ste A-200
Palo Alto, CA 94306

Grub & Ellis Mgmt Services
Dept LA 21277
Pasadena, CA 91185-1277

Guillermo & Sabrina Kahan
2226 Bagley Avenue
Los Angeles, CA 90034

Gwendolyn Orgell
23827 Yellowbill Terrace
Moreno Valley, CA 92557

Harry Faversham
120 N. Bentley Ave.
Los Angeles, CA 90049

Harry Faversham
11755 Wilshire Blvd., #1350
Los Angeles, CA 90025

Harry S. and Dorothy Gartsman
9921 Sunset Blvd.
Beverly Hills, CA 90210

Harwell Howard Hyne Gabbert &
315 Deaderick Street
Nashville, TN 37238-1800

Heidi Widelitz
10519 Lauriston Ave.
Los Angeles, CA 90064

Henry D. Gradstein-Bruce E. Va
Acct#: BC 295734
Gradstein Luskin and Van Dalse
12100 Wilshire Blvd., #350
Los Angeles, CA 90025-7103

Henry S. Stone
Attorney at Law
3544 Kirkwood Place
Boulder, CO 80304

Herbert I. Glazer
2562 Almaden Ct.
Los Angeles, CA 90077-2520

~~Holman Hansen & Colville, P.C.~~
~~9400 Mission Road 2nd floor~~
~~Prairie Village, KS 66206~~
MAIL RETURNED

Hoover Partners
1101 Connecticut Ave., NW Suit
Washington, DC 20036

Howard & Tracey Blitz
939 - 24th Street
Santa Monica, CA 90403

Howard c/o Schulte Roth & Zabe
900 Third Avenue, 23rd Floor
New York, CA 10022

Howard L. Rosoff, Esq.
11755 Wilshire Blvd, Suite 145
Los Angeles, CA 90025

~~Howard R Price, A prof Corp Ge~~
~~9227 Wilshire Blvd. Ste 900~~
~~Beverly Hills, CA 90212~~
MAIL RETURNED

Howrey Simon Arnold & White
Attorneys at Law 550 South Hop
Los Angeles, CA 90071-2627

Ian N. Ferrara / Elan Susser
26500 Latigo Shore Drive
Malibu, CA 90265

ICON RECEIVABLES 1998-A, INC
c/o Valentine & Kebartas, Inc.
Lawrence, MA 1840

Ilene Pritikin
222 Meigs Road, # 13
Santa Barbara, CA 93109

Innovative Business Concepts
7248 W 91 Street
Los Angeles, CA 90045

Intelli-Flex Communications, I
4540 E. 7th St.
Long Beach, CA 90804

Internal Revenue Service
Special Procedures
300 N. Los Angeles St, #4062
Los Angeles, CA 90012

Investor Unknown
177 S. Beverly Drive
Beverly Hills, CA 90212

Investor Unknown
270 18th Street
Santa Monica, CA 90402

Investor Unknown
11755 Wilshire Boulevard. # 13
Los Angeles, CA 90025

Investor Unknown
4900 East District Boulevard
Los Angeles, CA 90058

Investor Unknown
351 Veteran Avenue
Los Angeles, CA 90024

Investor Unknown
585 Marina Blvd.
San Francisco, CA 94123

Investor Unknown
3322 Corinth Avenue
Los Angeles, CA 90066

Investor Unknown
9665 Wilshire Blvd., Suite 801
Beverly Hills, CA 90212-2507

~~Investor Unknown~~
~~1301 Bank of America Tower, #4~~
~~Central Hong Kon~~
MAIL RETURNED

Investor Unknown
PO Box 8819
Calabasas, CA 91372

Investor Unknown
9665 Wilshire Blvd., # 801
Beverly Hills, CA 90212-2507

Investor Unknown
2501 Clubhouse Dr.
Plant City, FL 33567

Investor Unknown
2501 Silverlake Terrace
Los Angeles, CA 90039

Investor Unknown
4221 Wilshire Boulevard, # 260
Los Angeles, CA 90010

Investor Unknown
4713 Park Jacaranda
Calabasas, CA 91302

Investor Unknown
4943 McConnell Ave., Suite T
Los Angeles, CA 90066

Investor Unknown
4200 Via Arbolada, Apt 202
Los Angeles, CA 90042

~~Investor Unknown~~
~~350 South Center Street, Suite~~
~~Reno, NV 89501~~
MAIL RETURNED

Investor Unknown
445 East 77th Street #4E
New York, NY 10021

Investor Unknown
6124 S. Bedford Ave.
Los Angeles, CA 90056

Investor Unknown
11645 Wilshire Blvd. #825
Los Angeles, CA 90025

Investor Unknown
237 Mansfield Avenue
Los Angeles, CA 90036

Investor Unknown
P.O. Box 856
Del Mar, CA 92014

Investor Unknown
4943 McConnell Avenue #T
Los Angeles, CA 90066

Investor Unknown
1257 Coldwater Canyon Drive
Beverly Hills, CA 90210

Investor Unknown
4241 Colony Road
South Euclid, OH 44121

Investor Unknown
2400 W. Washington Blvd.
Los Angeles, CA 90018

Investor Unknown
11755 Wilshire Blvd., # 1350
Los Angeles, CA 90025

Investor Unknown
26666 Seagull Drive, #C111
Malibu, CA 90265

Investor Unknown
818 Harbor Island Drive
Newport Beach, CA 92660

Investor Unknown
1640 5th Street, Suite 112
Santa Monica, CA 90401

Investor Unknown
7949 Woodley Avenue
Van Nuys, CA 91406

Investor Unknown
4221 Wilshire Blvd., Suite 221
Los Angeles, CA 90010

Investor Unknown
15760 Ventura Boulevard #1800
Encino, CA 91436

Investor Unknown
139 S. Beverly Dr., #313
Beverly Hills, CA 90212

Investor Unknown
730 West Mc. Nab Road
Fort Lauderdale, FL 33309

Investor Unknown
1800 Avenue of the Stars, # 90
Los Angeles, CA 90067

Investor Unknown
c/o 11755 Wilshire Blvd., # 13
Los Angeles, CA 90025

Investor Unknown
521 N. Rexford Drive
Beverly Hills, CA 90210-3309

~~Investor Unknown~~
~~2025 First Avenue, # 1050~~
~~Seattle, WA 98121~~
MAIL RETURNED

Investor Unknown
1245 - 3&5 South Orange Grove
Pasadena, CA 91105

National Metal & Steel Corporation
2061 East 220th Street
Long Beach, CA 90810

Investor Unknown
7931 Deering Avenue
Canoga Park, CA 91304

Investor Unknown
1530 Arizona Ave.
Santa Monica, CA 90404

Investor Unknown
11755 Wilshire Boulevard, Suit
Los Angeles, CA 90025

Investor Unknown
1800 Avenue of the Stars, # 90
Los Angeles, CA 90067-4211

Investor Unknown
P.O. Box 2528
San Francisco, CA 94126

Invicta Law Group
1000 Second Ave., Ste 3310
Seattle, WA 98104

Irell & Manella, LLP
1800 Avenue of the Stars Suite
Los Angeles, CA 90067-4276

Irell and Manella - Nita Shulm
1800 Avenue of the Stars, # 60
Los Angeles, CA 90067

Iron Mountain
P.O. Box 601018
Los Angeles, CA 90060-1018

Jack & Nonie White
4400 Palos Verdes Drive East
Rancho Palos Ver, CA 90274

Jack & Sylvia Arian
503 N. Victory Blvd.
Burbank, CA 91502

Jack Arian
503 N. Victory Blvd.
Burbank, CA 91502

Jack Garrett
11755 Wilshire Blvd, Suite 1350
Los Angeles, CA 90025-1528

Jack Martin
P.O. Box 4878
El Monte, CA 91734-0878

Jack Wohlstadter
0086 Ronce Lane
Carbondale, IL 81623

Jacobson Sobo & Moselle
6950 Cypress Road Northwest 2N
Plantation, FL 33317-0359

Jacqueline Greynald
31840 Foxfield Drive
Westlake Village, CA 91361

Jaime & Susan Gesundheit
3720 Meadville Drive
Sherman Oaks, CA 91403

James Baum
701 Panoramic Way
Berkeley, CA 94704

James D. Fornari Attorney
1020 Park Avenue Suite 3-A
New York, NY 10028

James E. Demetriou
1200 - 9 Indiana Avenue
South Pasadena, CA 91030

Jamie Selznick
7302 El Fuerte Street
Carlsbad, CA 92009

JAMS
2 Embarcadero Center, Suite 11
San Francisco, CA 94111

Jan Brown & Associates
476 Jackson St. 2nd Flr
San Francisco, CA 94111

Jane Annan Tuma
P. O. Box 309
Woodland Hills, CA 91367

Jane Feil
601 Hightree Road
Santa Monica, CA 90405

Janet Trent
P.O. Box 514
Los Olivos, CA 93441

Janice and Teddy Seidenfeld
126 Seegar Road
Upper St. Claire, PA 15241

Jay Grossman
11671 La Grange Ave
Los Angeles, CA 90025

Jean Kauth McGrath
8571 Cliffridge Avenue
La Jolla, CA 92037

Jeff & Joanne Kimes
4243 Rhodes Avenue
Studio City, CA 91604

Jeffrey & Francine Light
316 South El Camino
Beverly Hills, CA 90212

Jeffrey & Lenna Carroll
4427 Commonwealth Ave.
La Canada, CA 91011

Jeffrey & Suzanne Feder
10407 Sunnydale Drive
Rancho Mirage, CA 92270

Jeffrey Feder
180 E. Ocean Blvd., #202
Long Beach, CA 90802

Jeffrey Vogelman, Esq.
124 South Royal Street
Alexandria, VA 22314

Jennifer Greynald
31840 Foxfield Drive
Westlake Village, CA 91361

Jerome & Eleanor Navarra
2181 Guy Street
San Diego, CA 92103

Jerome Grosslight
5313 Wortser Street
Sherman Oaks, CA 91401

Jerome L. Faversham M.D.
11930 Gorham Ave., Apt. 102
Los Angeles, CA 90049

Jerome Navarra
1401 E Street
San Diego, CA 92101

Navarra
1401 'E' Street
San Diego, CA 92101

Esther Navarra
1401 E Street
San Diego, CA 92101

Jerry & Barbara Weinstein
5411 Francisca Way
Agoura Hills, CA 91301-5204

Jessica Greynald
31840 Foxfield Drive
Westlake Village, CA 91361

Jessica Sher
3027 Nicada Drive
Los Angeles, CA 90077

Jodi R. Sullivan
4908 Halstead Way
Tampa, FL 33647

Joe and Julie Seetoo (TIC)
2501 Coach House Way, Apt. 3B
Frederick, MD 21702

Joe Seetoo
4127 Via Marina, Unit 414
Marina del Rey, CA 90292

Johanna Pipes
7209 Rindge Avenue
Playa del Rey, CA 90293

John A. and Toni M. Schulman
4000 Warner Blvd.
Burbank, CA 91522

John A. Schulman
400 Warner Blvd., Bldg. 2, Roo
Burbank, CA 91522

John Benedict, Esq.
Katin Spat
Acct#: CV-S-02-1385-LDG-(P
1850 E. Flamingo Road, Suite 240
Las Vegas, NV 89119

John C. Nabors
Acct#: BC 283999
Gardere Wynne Sewell, LLP
3000 Thanksgiving Twr. 1601 El
Dallas, TX 75201-4761

John G S Wong
1530 West 22nd Street
Los Angeles, CA 90007

John P. Sarandon
544 Spring Lake Circle
Tarpon Springs, FL 34689

Jon & Arleen Ferrara
502 16th Street
Santa Monica, CA 90402

Jon & Suzy Saferstein
12301 1st Helena Drive
Los Angeles, CA 90049

Jones Vargas
100 West Liberty Street P.O. B
Reno, NV 89504-0281

Joseph R. Johnson
1 Ranchero Road
Rolling Hills, CA 90274

Judith J. Rentschler, Esq.
Ran – Acct#: C 418733
Rentschler Tursi Guastamachio,
989 East Hillsdale Blvd., Suit
Foster City, CA 94404

Judith Rothman
1040 Berkeley Street
Santa Monica, CA 90403

Juli Friedman
1370 Schoolhouse Road
Montecito, CA 93108-2794

Julie & Tony A. Nofi
2501 Coach House Way, Apt. 3B
Frederick, MD 21702

Justine Jaffe
30050 Quail Run Drive
Agoura Hills, CA 91301

Kaiser Permanente
P.O. Box 60000
San Francisco, CA 94160-3030

Katherine Kramer
Acct#: CIV 428217
Law offices of Katherine Krame
12400 Wilshire Blvd.,#400
Los Angeles, CA 90025

Kathleen Y. Moy
1156 Calle Vista Drive
Beverly Hills, CA 90210

Kaye Scholer, LLP
1999 Avenue of the Stars Suite
Los Angeles, CA 90067

Keith and Lynn McKee
2730 Shirland Tract Road
Auburn, CA 95603

Keith B. Solomon , c/o Polycom
6400 Canoga Ave., # 250
Woodland Hills, CA 91367

Keith V. Breon
Acct#: CIV 431868
Breon Shaeffer & Bryant
225 Bush Street, Suite 1600
San Francisco, CA 94104

Keiley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

Kelly Paper
288 Brea Canyon Rd
City of Industry, CA 91789

Kenneth A. & Teresa A. Brett
1911 East 42nd Street
Spokane, WA 99203

Kenneth and Heidi Widelitz
10519 Lauriston Avenue
Los Angeles, CA 90064

Kenneth L. Schoenfeld
71-098 Colorado Court
Rancho Mirage, CA 92270

Kenneth L. Schoenfeld
800 Nicollet Mall, Suite 800
Minneapolis, MN 55402-7020

Kenneth L. Schoenfeld
721 45th NE, Suite A
Auburn, CA 98002

Kenneth S. Widelitz
10519 Lauriston Avenue
Los Angeles, CA 90064

Kevin Wiser
159 Dapplegray Road
Bell Canyon, CA 91307

Khateeb Lateef
8 Idlewood Road
Kentfield, CA 94904

Klein, Zelman, Rothermel & Dic
485 Madison Avenue
New York, NY 10022

Klestadt & Winters, LLP
381 Park Ave South 12th Floor
New York, NY 10016-8811

Kopple & Klinger
2029 Century Park East, #1040
Los Angeles, CA 90067

Kramer & Frank, P.C
9666 Olive Blvd., Suite 450
St. Louis, MO  63132

Kramon & Graham, P. A.
One South Street, Ste 2600
Baltimore, MD  21202-3201

Kurt D. Wolff
2373 Roberts Road
Penngrove, CA  94951


LA Commercial Group
c/o Carol Hamilton, Trustee 31

Glendale, CA  91204

Lanier Worldwide Inc
PO Box 105533
Atlanta, GA  30348

Larry Ames
62 Silver Saddle lane
Rolling Hills Es, CA  90274


~~Larry Hargrove~~
~~c/o Condor Investment~~
~~1000 Mar~~
~~Brisbane, CA  94005-1842~~
MAIL RETURNED

Larry Quilling
1000 Stradella Road
Los Angeles, CA  90077

Laureno Merideth
11201 Santa Fe Avenue
Lynwood, CA  90262


Laurie & Jonathan Deer
2112 Ewing Street
Los Angeles, CA  90039

Law Office of Earl O. Bender
11755 Wilshire Blvd., Ste 1350
Los Angeles, CA  90025-1519

Law Office of Eric Honig
P.O. Box 10327
Marina Del Rey, CA  90295


Law Office of Horvitz & Levy,
15760 Ventura Boulevard Floor
Encino, CA  91436-3000

Law Office of Jon F Mains
10511 Judicial Dr  Ste 107
Fairfax, VA  22030

Law Office of Stella A. Havkin
Litwak & Havkin
6320 Canoga Avenue, Suite 1500
Woodland Hills, CA 91367


Law Offices of Arnold H. Wuhrm
17291 Irvine Blvd., Suite 156
Tustin, CA  92780

Lawrence R. and Dorothy J. Gra
2122 Century Park Lane, # 317
Los Angeles, CA  90067

Leader Publications
345 Park Avenue South
New York, NY  10010


Lease Acceptance Corp.
30955 Northwestern Hwy.
Farmington Hills, MI  48334

Lee & Susan Lee Wertheimer
3461 Laurelvale Drive
Studio City, CA  91604

Leonard Shapiro
1666 20th Street
Santa Monica, CA  90404


Leslee Estin
10327 Missouri Ave., # 205
Los Angeles, CA  90025-6938

Lexis Nexis
P.O. Box 7247-0178
Philadelphia, PA  19170-0178

Litwak & Havkin
6320 Canoga Avenue #1500
Woodland Hills, CA  91367


Loren Woll
6716 Clybourn Ave, Unit 220
North Hollywood, CA  91606

Lottie Crespin
5453 Trumpet Court
Castro Valley, CA  94552

Louis Krass, Esq.
Acct#: BC 245051
120 El Camino Drive, #100
Beverly Hills, CA  90212


Luis Kahan
21205 Yacht Club Drive, # 508
Aventura, FL  33180

Lya Pinkus
4404 El Caballero Drive
Tarzana, CA  91356

Lynn Tillotson & Pinker, L.L.P
750 N. St. Paul Street Suite 1
Dallas, TX  75201

Lynn Woll
9810 Reseda Boulevard, # 202
Northridge, CA 91324

Lynton D. Aston
1211 N. Rio Vista Road
Ft. Lauderdale, FL 33301

Madeleine Herron
1210 Pinewood Drive
Pittsburgh, PA 15243

Mae & Ed Schwartz
7416 Capstan Drive
Carlsbad, CA 92009

Mae and Edward Schwartz
211 Saxony Road, # 150
Encinitas, CA 92024

Mains, John F.
Attorney at Law

Mangels, Butler, Marmaro & O'r
325 S. Maryland Parkway Suite
Las Vegas, NV 89101

Mardel Blum
400 Walker Drive
Beverly Hills, CA 90212

Margo S. Bernard
1722 Malcolm Ave., Apt 403
Los Angeles, CA 90024

Marilyn Bernard
38 Turkey Hill Raod South
Westport, CT 06880-5521

~~Marilyn J. Richard~~
~~30473 Mulholland Highway, # 11~~
~~Agoura Hills, CA 91301~~
MAIL RETURNED

Marion or Steven Wade
1157 S. Riverside Drive
Palm Spring, CA 92264

Marjorie W. Gilbert
10118 Empyrean Way, Building #
Los Angeles, CA 90067

Mark A. Leib
7642 Foxboro Lane
West Hills, CA 91304

Mark Cohn
255 Shoreline Drive Suite 100
Redwood City, CA 94065

Mark D. Brutzkus Nicholas A. R
Acct#: BC 279005
Ezra, Brutzkus, Gubner LLP.
16830 Ventura Blvd., Suite 310
Encino, CA 91436

Mark Weinstein
1640 5th Street, # 112
Santa Monica, CA 90401

Marshall & Ruth Goldberg
612 North Oakhurst Drive
Beverly Hills, CA 90210

Marsy & Vititoe
5707 Corsa Avenue, 2nd Floor
Westlake Village, CA 91363

Martin & Linda Blank
1990 South Bundy Drive, Suite
Los Angeles, CA 90025-5245

Martin Blank
1990 South Bundy Drive, Suite
Los Angeles, CA 90025

Martin Blank Jr. & Richard Zim
1990 S Bundy Dr., Suite 540
Los Angeles, CA 90025-5245

Martin Goldberg
6603 Convoy Court
San Diego, CA 92111

Martin H. and Linda M. Blank
1364 Warner Avenue
Los Angeles, CA 90024

Martin H. Blank, Jr.
1990 South Bundy Drive, Suite
Los Angeles, CA 90025

Martin or Elaine Beckerman
6407 MacLaurin Drive
Tampa, FL 33647

Marvin & Lorraine Jacobs
493 S. Spalding Drive
Beverly Hills, CA 90212

Mary F. Sarandon
4800 La Villa Marina, Apt. G
Marina del Rey, CA 90292

Mary S. McCandless
16326 Ridgecrest Avenue
Monte Sereno, CA 95030

Mary Williams
16469 Oldham Street
Encino, CA 91436

Mathew J. Plonsker
619 Alta Avenue
Santa Monica, CA 90402

Matrix Logic Corporation
695 De Long Avenue, Ste 101
Novato, CA 94945

Matthews & Associates, Inc.
17815 Mountain Ranch Rd.
Granada Hills, CA 91344

Max Finkelstein
621 N. Curson Avenue
Los Angeles, CA 90036

Max Orgell
904 Thistlegate Road
Oak Park, CA 91377

McDermott, Will & Emery
P.O. Box 894549
Los Angeles, CA 90189-4549

Mehlman & Greenblatt, LLC
1838 Green Tree Road Ste 360
Baltimore, MD 21208

Melba E. Hoban
6162 La Pintura Drive
La Jolla, CA 92037

Melvin Witkin
6400 Canoga Avenue, # 250
Woodland Hills, CA 91367

Merideth L. Laureno c/o Polyco
6400 Canoga Ave., # 250
Woodland Hills, CA 91367

Merrick Austin Ungar
6407 MacLaurin Drive
Tampa , FL 33647

Mervin and Wilma Kurtzman
2131 Century Woods Way, # 1
Los Angeles, CA 90067

Mervin Kurtzman
1950 Avenue of the Stars, 2nd
Los Angeles, CA 90067

Michael A. Green, Esq.
Acct#: No. 003453
Law Offices of Michael A. Gree
1819 John F. Kennedy Blvd., #4
Philadelphia, PA 19103

Michael A. Schwartz
3194 Gateway LP
Springfield, IL 97477

Michael A. Schwartz
3194 Gateway Loop
Springfield, IL 97477

Michael A. Taitelman – David Mar
Acct#: 03CC11806
Freedman & Taitelman, LLP
1901 Ave. of the Stars, #500
Los Angeles, CA 90067

Michael and Barbara O'Malley
6204 Emmons Ln.
Tampa, FL 33647-1148

Michael and Robin Kline
23 Wrangler Lane
Bell Canyon, CA 91307

Michael Andrews
c/o Maureen An
129 Via Nice
Newport Beach, CA 92663

Michael Freehling
13472 Bayless Road
Los Angeles, CA 90049

Michael Gold
7301 Topanga Cyn., # 200
Canoga Park, CA 91303

Michael Greynald
12617 McDonald Drive
Ojai, CA 93023

Michael J. Greynald
621 Via Alondra, Suite 607
Camarillo, CA 93012

Michael J. O'Malley
6204 Emmons Ln
Tampa, FL 33647-1148

Michael L. Boli, Esq.
Atty Client Trust
Law Office of Michael L. Boli
1815 Clement Ave Bldg 26
Alameda, CA 94501

Michael Plonsker
619 Alta Avenue
Santa Monica, CA 90402

Michele Orgell
23827 Yellowbill Terrace
Moreno Valley, CA 92557

Miguel and Kathlyn Kahan
601 24th Street
Santa Monica, CA 90402

Mike & Susan Smith
23732 Brisbane Bay
Dana Point, CA 92629

Miles Archer Woodlief
775 E. Blithedale Ave #514
Mill Valley, CA 94941

Miller & Martin LLP
832 Georgia Ave Ste 1000
Chattanooga, TN 37402

Milton A. Shepard
10314 Sunnydale Drive
Rancho Mirage, CA 92270

Miss Cynthia Orgel
865 Comstock Ave., Penthouse D
Los Angeles, CA 90024

Miss Jessica Friedman
c/o Juli
1370 Schoolhouse Road
Montecito, CA 93108

Monroe and Andrea Rosenthal
765 Ranch Lane
Pacific Palisade, CA 90272

Monroe Rosenthal - M.D.
765 Ranch Lane
Pacific Palisade, CA 90272

Morton Turndorf
953 4th Street, # 205
Santa Monica, CA 90403

Moss Adams LLP
18101 Von Karman Ste 1900
Irvine, CA 92612

Mr. John Kurokawa
1944 Colby Avenue
Los Angeles, CA 90025

Mr. Paul Schwartz
111 N. Sepulveda Blvd., # 336
Manhattan Beach, CA 90266

Mr. Al Lachman
9141 Belcaro Drive
Huntington Beach, CA 92646

Mr. Alan Alpert
16004 Valley Vista Blvd.
Encino, CA 91436

Mr. Andrew Crooker
P.O. Box 2062
Taos, NM 87571

Mr. Anthony Delfino
1224 West Bay Avenue
Newport Beach, CA 92661

Mr. Antonio Kahan
601 - 24th Street
Santa Monica, CA 90402

Mr. Bert Greynald
621 Via Alondra, Suite 607
Camarillo, CA 93012

~~Mr. Charles Hill~~
~~10880 Wilshire Boulevard~~
~~Los Angeles, CA 90024~~
MAIL RETURNED

Mr. Charles Hill
262 White Horse Trail
Palm Desert, CA 92211

Mr. Cliff Warren
2309 Pacific Coast Highway, #
Hermosa Beach, CA 90254

Mr. Craig Bramscher
7118 Highway 66
Ashland, OR 97520-9736

Mr. David Blum
1230 Huntington Drive, Suite 3
Duarte, CA 91010

Mr. Edward Leevan
10521 Cheviot Drive
Los Angeles, CA 90064

Mr. Elwood H. & Weun S. Kim
1136 Pescador Drive
Newport Beach, CA 92660

Mr. Emmett J. Gantz
P.O. Box 492533
Los Angeles, CA 90049

Mr. Frank McGrath
8571 Cliffridge Avenue
La Jolla, CA 92037

Mr. Garrison M. Singer
8131 North 18th Way
Phoenix, AZ 85020

Mr. Gary Goldberg
8554 Owensmouth Ave
Canoga Park, CA 91304

Mr. George H. Brett
612 West Sumner Avenue
Spokane, WA 99204

Mr. Harry Faversham
11755 Wilshire Blvd, Suite 1350
Los Angeles, CA 90025

Mr. Harry Faversham
120 North Bentley Avenue
Los Angeles, CA 90049

Mr. Henry Ungar
11625 Westminster Ave
Los Angeles, CA 90066

Mr. Jack Arian
25321 Prado De Los Arboles
Calabasas, CA 91302

Mr. Jack Arian
503 N. Victory Boulevard
Burbank, CA 91502

Mr. Jack W. Dollahite
1079 Terrace View
Alberton, MT 59820

Mr. Jeffrey Bronfman
176 Valley Drive
Santa Fe, NM 87501

Mr. Joshua Kheel
11500 San Vicente Blvd., No. 2
Los Angeles, CA 90049

Mr. K. Dale Baer
6641 West Tropicana #202
Las Vegas, NV 89103

Mr. Kenneth Brett
1911 East 42nd Avenue
Spokane, WA 99203

Mr. Kenneth Estin
10327 Missouri Ave., # 205
Los Angeles, CA 90025

Mr. Kenneth Estin / Leslie Est
10327 Missouri Avenue, # 205
Los Angeles, CA 90025

Mr. Kenneth Pritikin
439 Boynton Avenue
Berkeley, CA 94707

Mr. Kevin Wiser
159 Dapplegray Road
Bell Canyon, CA 91307

Mr. Lester Pasco
1945 Camino Vida Roble, Suite
Carlsbad, CA 92008

Mr. Lewis Worms
403 North Foothill Road
Beverly Hills, CA 90210

Mr. Marshall Goldberg
612 North Oakhurst Drive
Beverly Hills, CA 90210

Mr. Martin Lee
467 South Market Street
Inglewood, CA 90301
MAIL RETURNED

Mr. Martin Ruderman
1157 South Riverside Drive
Palm Springs, CA 92264

Mr. Michael Crossley
120 - 33rd Street
Newport Beach, CA 92663

Mr. Milton Widelitz
10787 Wilshire Blvd., # 1601
Los Angeles, CA 90024
MAIL RETURNED

Mr. Philip Bloom
1260 Vista Chino
Palm Spring, CA 92262

Mr. Phillip Rittenberg
11755 Wilshire Boulevard, # 13
Los Angeles, CA 90025

Mr. Richard and Cheryl Hageman
2027 Vista Alcedo
Camarillo, CA 93012

Mr. Richard Silver
1200 Gough Street, # 13D
San Francisco, CA 94109

Mr. Richard Trattner
17306 Bridleway Trail
Boca Raton, FL 33496

Mr. Rick Saperstein
22234 Drums Court
Calabasas, CA 91302

Mr. Robert Antin
115 Westwind Mall
Marina del Rey, CA 90292

Mr. Ronald Lessner
12258 Sunset Parkway
Los Angeles, CA 90064

Mr. Scott Alper
31 Spencer Ave.
Lynbrook, NY 11563

Mr. Scott Alper
271-21 W Grand Central Parkway
Floral Park, NY 11005
MAIL RETURNED

Mr. Sidney Crossley
1799 Newport Blvd., Apt. B
Costa Mesa, CA 92627

Mr. Steven A. Drucker
7909 Bermuda Dunes Ave
Las Vegas, NV 89113-1223

Mr. Steven Abrams
7032 Jellico Avenue
Van Nuys, CA 91406

Mr. William Bonnell
2360 East Cheryl Drive
Phoenix, AZ 85028

Mr. William Mazoff
2541 Aragon Boulevard #410
Sunrise, FL 33322-3112

Mr. William Peterson
2801 West Coast Hwy., Suite 24
Newport Beach, CA 92663

Ms. Ann Navarra
464 Prospect, # 103
La Jolla, CA 92037

Ms. Barbara Bitters
8 Sundown Pass
Irvine, CA 92604-2829

Ms. Beatrice Wescott Collis
645 Gould Terrace
Hermosa Beach, CA 90254

Ms. Beryl Lee
1655 Selby Avenue, # 301
Los Angeles, CA 90024

Ms. Caroline or Amancio Sycip
1542 S. Autumn Hill Road
Diamond Bar, CA 91765

Amanda Sycip, a minor
1542 S. Autumn Hill Road
Diamond Bar, CA 91765

Ms. Cyma Lehman
4623 Willis Avenue, # 204
Sherman Oaks, CA 91403

Ms. Debra Cascardo
1 Fox Run
Armonk, NY 10504-1011

Ms. Denise Crosby
935 Embury Street
Pacific Palisade, CA 90272

Ms. Eileen A. Trattner
270 - 8 W Grand Central Parkway
Floral Park, NY 11005

Ms. Eileen A. Trattner
17306 Bridleway Trail
Boca Raton, FL 33496

Ms. Esther Navarra
3682 Kite Street
San Diego, CA 92103

Ms. Francine Lipp
42 Pin Pack Road
Ridgefield, CT 6877

Ms. Geraldine Perlman
1121 Montana Avenue
Santa Monica, CA 90403

Ms. Helen Kraus
4240 Fulton Avenue, #310
North Hollywood, CA 91604

Ms. Ilene Pritikin
222 Meigs Road, # 13
Santa Barbara, CA 93109

Ms. Jane Annan Tuma
13214 Fiji Way #N
Marina del Rey, CA 90292

Ms. Jane Garrett
3543 Via del Prado
Calabasas, CA 91302

Ms. Julie Blank
1990 South Bundy Drive, Suite
Los Angeles, CA 90025

Ms. Kathy Lynn Carpenter
928 7th Street
Hermosa Beach, CA 90254

Ms. Lilianna Dydak Kaplan
3304 Plaza Del Paz
Las Vegas, NV 89102

Ms. Lottie Crespin
3500 Castro Valley Blvd.
Castro Valley, CA 94546

Ms. Lynda Hart
50905 Calle Quito
La Quinta, CA 92253

Ms. Margot Strong
16422 Shadow Mountain Drive
Pacific Palisade, CA 90272-2354

Ms. Marilyn F. Wilson
P.O. Box 232
Rancho Santa Fe, CA  92067

Ms. Marlyn Ginsburg
427 Beirut Avenue
Pacific Palisade, CA  90272

Ms. Mary Ann Hulbert
4337 Marina City Drive, Apt. 2
Marina del Rey, CA  90292

Ms. Maureen Andrews
CalFed Bank
129 Via Nice
Newport Beach, CA  92663

Ms. Melanie Goldberg Hechter
20908 Verne Avenue
Lakewood, CA  90715

Ms. Michele Byer
435 Arnaz Drive, Suite 301
Los Angeles, CA  90048

Ms. Nancy Brodsky
16490 Oldham Street
Encino, CA  91436

Ms. Nita Shulman - c/o Irell & Manella
1800 Avenue of the Stars, # 60
Los Angeles, CA  90067

Ms. Renee Mauss
17306 Bridleway Trail
Boca Raton, FL  33496

Ms. Renee Mauss
271 - 21 W Grand Central Pkwy
Floral Park, NY  11005
MAIL RETURNED

Ms. Ruth Goldberg
612 North Oakhurst Drive
Beverly Hills, CA  90210

Ms. Sandra Crooker
P.O. Box 2062
Taos, NM  87571

Ms. Sheila Young
851 Burlway Road, # 520
Burlingame, CA  94010

Ms. Sophie Wolfe
3027 Nicada Drive
Los Angeles, CA  90077

Ms. Stephanie Grimaldi
11755 Wilshire Boulevard, Suit
Los Angeles, CA  90025
MAIL RETURNED

Ms. Susan Coddon
1155 North La Cienega Blvd., #
Los Angeles, CA  90069-2440

Ms. Sylvia Silver Faversham
120 North Bentley Avenue
Los Angeles, CA  90049

Ms. Sylvia Silver Faversham
P.O. Box 5629
Portland, OR  97228-5629

Ms. Toby Gronimof
#1 Brittany A
Del Rey Beach, FL  33446

Murphy & Shaffer - Client Escr
36 South Charles Street
Baltimore, MD  21201

Murtha Culina LLP
Cityplace 1
185 Asylum St
Hartford, CT  06103-3469

MyMacMasters
P.O. Box 21510
Bakersfield, CA  93390-1510

Name Unknown
1820 Bryant Street
Palo Alto, CA  94301-3709

Nance Sokoloff
2000 Island Blvd., Apt. 2309
Aventura, FL  33160

Nancy Alpert
1755 Filbert Street, #1N
San Francisco, CA  94123

Nancy Levy - c/o Polycomp
1801 Century Park East
Los Angeles, CA  90067
MAIL RETURNED

Nancy Ozimek

Nancy S. Alpert
125 S. Barrington Place
Los Angeles, CA  90049

Nelda J. Linsk
2550 La Condesa Drive
Palm Springs, CA  92264

Netconexi/Von.net
3050 Pullman St
Costa Mesa, CA  92626

Nextel Communications
PO Box 54977
Los Angeles, CA 90054-0977

Nicholas C. Babchuk
1370 Taylor Street, # 8
San Francisco, CA 94108

Nick Hershman
575 Nyla Lane
Ashland, OR 97520

Nick I. Iezza
Acct#: CIV 427921
Spiwak & Iezza
2660 Townsgate Road, # 530
Westlake Village, CA 91361

Nicole Lee Moy
1156 Calle Vista Drive
Beverly Hills, CA 90210

Nicolette Orgell
23827 Yellowbill Terrace
Moreno Valley, CA 92557

Noelle Lee Moy
1156 Calle Vista Drive
Beverly Hills, CA 90210

Norman & Elise Rips
10375 Wilshire Blvd., Suite 1
Los Angeles, CA 90024

Norris, McLaughlin & Marcus
P.O. Box 1018
Somerville, NJ 08876-1018

Ocean View Medical Group, Inc.
c/o Monroe Rosenthal
765 Ranch
Pacific Palisade, CA 90272

Office Depot
Dep. 56-6183575798
P.O. Box 9020
Des Moines, IA 50368-9020

OMA, LLC
6204 Emmons Lane
Tampa, FL 33647

On Trial Associates, Inc.
6404 Western Avenue
Chevy Chase, MD 20815

Oppenheimer & Co., Inc. c/o Ja
10880 Wilshire Boulevard
Los Angeles, CA 90024-4114

O'Reilly & Ferrario, LLC
Attorneys at Law
325 S Marylan
Las Vegas, NV 89101-5300

Orrick, Herrington & Sutcliffe
File 72887 P.O. Box 61000
San Francisco, CA 94161-2887

~~Oscar Sherman~~
~~10880 Wilshire Blvd.~~
~~Los Angeles, CA 90024~~
MAIL RETURNED

Oscar Sherman
4106 NE 29th Avenue
Fort Lauderdale, FL 33308-5717

PAJO Networks
700 Wilshire, 6th Floor
Los Angeles, CA 90017

Pamela Harris
6400 Canoga Ave., # 250
Woodland Hills, CA 91367

Pamela J. Wilson Hoefflin
1444 Moraga Drive
Bel Air, CA 90049

Pat & Arthur Antin
108 Foxtail Drive
Santa Monica, CA 90402

Patricia C. Silver
c/o K. Freeman
214 Grant Ave., #301
San Francisco, CA 94108

Patricia E. Oster
9950 Durant Drive, # 306
Beverly Hills, CA 90212

Patricia Silver
1224 West Bay Avenue
Newport Beach, CA 92661

Patrick O'Hara
11736 Carmel Creek Road, Unit
San Diego, CA 92130

Paul Greenberg
100 Wilshire Blvd., Suite 1300
Santa Monica, CA 90401

Paul J. Nadel
318 24th Street
Santa Monica, CA 90402-2518

Paul N Frimmer
1800 Avenue of the Stars, # 90
Los Angeles, CA 90067

Paul or Wilma Bieler
14 Terhune Drive
Westport, CT 6880

Payment Resources Int'l
Acct#: Filing # 03-1499518
620 Newport Ctr. Drive, #150
Newport Beach, CA 92660

Perez Alati, Grondona, Benites
Suipacha 1111-Piso 18
Buenos Aires, Argentina   C1008AAW

Perry N. Harmon
802 Delaware Street
Berkeley, CA 94710

Peter M. Levine, Attorney at Law
331 Madison Avenue
New York, NY 10017

Peter Orgel
904 Thistlegate Road
Oak Park, CA 91377

Peter Rofe - Polycomp Self Dir
6400 Canoga Ave. # 250
Woodland Hills, CA 91367

Peter Rofe & Judith Rothman c/
3133 East Camelback
Phoenix, AZ 85016

Peter Weiss
3335 Caminito Cabo Viejo
Del Mar, CA 92014

Philip Waldman & Teri Alpert
25021 Buckskin Drive
Laguna Hills, CA 92653

Phillip Rittenberg
c/o 11755 Wilshire Blvd., # 13
Los Angeles, CA 90025

Phyllis D. Leventhal
10880 Wilshire Boulevard
Los Angeles, CA 90024-4114
MAIL RETURNED

Phyllis Klein
13080 Mindanao Way, # 92
Marina del Rey, CA 90292

Phyllis Klein
6400 Canoga Ave., #250
Woodland Hills, CA 91367

Pitney Bowes, Inc.
P.O. Box 856460
Louisville, KY 40285-6460

Polygon Hall - (Trustee Herita
P.O. Box 135, Le Marchant Str
Guernsey, Channel Islands GY1 4EL

Practicing Law Institute

Preston Orgel
904 Thistlegate Road
Oak Park, CA 91377

Principal Life Insurance Co
Group, Grand Island
P.O. Box 1451
Des Moines, IA 50306-3513

Provident Mutual Life
P.O. Box 41731
Philadelphia, PA 19101-1731

Margarita Hause
1925 Century Park East, Suite
Los Angeles, CA 90067-2706
MAIL RETURNED

Quail Capital Corp.
P.O. Box 41598
Philadelphia, PA 19101-1598

Qwest Communications Corp
555 Seventeenth Street
Denver, CO 80202

Qwest Communications Corporation
450000

Rafael Sabag
607 South Hill, # 808
Los Angeles, CA 90014

Ralph Pritikin
3115 Douglas Circle
Lake Oswego, OR 97035

Raymond & Barbara Alpert
5521 La Pasada
Long Beach, CA 90815

Raymond & Florence Malkiewicz
2650 Cita Avenue
Escondido, CA 92029-5814

Recovar Group
c/o Harvey Moore Bidna & Keys
Newport Beach, CA 92660

Recycon, Inc.

Regional Holdings, Inc.
c/o Steven Ungar
6407 Maclauri
Tampa, FL 33647

Renee Warren
2309 Pacific Coast Highway, #
Hermosa Beach, CA 90254

Rent A PC
265 Oser Ave.
Hauppauge, NY 11788

Reservoir Capital Corp.
Acct#: Filing # 0307360101
6 Resevoir Circle, Suite 103
Baltimore, MD 21208

Richard A. Kavanau
c/o 11755 Wilshire Blvd., # 13
Los Angeles, CA 90025

Richard and Hana Kaplan
16839 Sunset Blvd.
Pacific Palisade, CA 90272

Richard and Nancy Strick
528 20th Street
Santa Monica, CA 90402

Richard Carpenter
1800 Avenue of the Stars, # 90
Los Angeles, CA 90067

Richard Davis
1527 S. Sherbourne Drive
Los Angeles, CA 90035

Richard G. Witkin
22287 Mulholland Hwy., # 318
Calabasas, CA 91302

Richard H. Elder
5372 Highland Dr. SE
Bellevue, WA 98006-4216

Richard H. Elder
5372 Highland Drive
Bellevue, WA 98006

Richard M. Wolfen
919 N. Roxbury Drive
Beverly Hills, CA 90210

Richard N. Hornstrom
2926 West Wallcrast
Tampa, FL 33611

Richard Selznick c/o Daniel Se
3011 E Broadway, Suite 100
Phoenix, AZ 85040

Richard Trattner or Jack Stein
17306 Bridleway Trail
Boca Raton, FL 33496

Ricoh Business Systems
Acct#: Filing # 0204660886
P.O. Box 1638
Livingston, NJ 07039

Ricoh Business Systems, Inc.
P.O. Box 10706
Pasadena, CA 91189-0706

Robert & Cathleen Brett
612 W. Sumner
Spokane, WA 99204

Robert & Diane Lipp
1709 Georgina Avenue
Santa Monica, CA 90402-2401

Robert & Elaine Lewon
11421 Barnett Valley Rd.
Sebastopol, CA 95472-9554

Robert & Esther Silverberg
33 - 190 Laura Drive
Thousand Palms, CA 92276

Robert & Sheila Jaffe
30050 Quail Run Ridge
Agoura Hills, CA 91301

Robert A. Brett (MPP)
612 West Sumner Avenue
Spokane, WA 99204

Robert A. Briskin
24531 Ventage Point Terrace
Malibu, CA 90265-4721

Robert Bernard
38 Turkey Hill Road South
Westport, CT 6880

Robert C. Schoenfeld
18861 SE 42nd Street
Issaquah, WA 98027-9352

Robert Cirillo, Inc.
182 Columbia Turnpike
Florham Park, NJ 7932

Robert Isenberg
32855 West Mulholland Highway
Malibu, CA 90265

Robert Lipp
6400 Canoga Ave., # 250
Woodland Hills, CA 91367

Robert Love
34509 Goldridge Lane
Acton, MA 93510

Robert M. Priest
5937 Hillview Park Ave.
Van Nuys, CA 94104

Robert Pritikin
P.O. Box 50737
Santa Barbara, CA 93150

Robert S. Toll
3830 Willat Ave.
Culver City, CA 90232

Robert Silverberg
1925 Century Park East, # 500
Los Angeles, CA 90067

Robert Silverberg
26633 Academy Drive
Palos Verdes Pen, CA 90274

Robert W. Levy
1112 Estatewood Dr
Brandon, FL 33510

Roberts Roach & Associates
22320 Foothill Blvd., Suite 51
Hayward, CA 94541-2700

Rodney Minott
1206 Mariposa Street
San Francisco, CA 94107

Ron Anson
11755 Wilshire Blvd., #1350
Los Angeles, CA 90025

Ronald Andre
6400 Canoga Ave., #250
Woodland Hills, CA 91367

Ronald I. Anson
Acct#: Filing # 0319561145
11755 Wilshire Blvd., # 1350
Los Angeles, CA 90025

Ronald J. Mation
2324 Carroll Mill Road
Phoenix, MD 21131

Rothenberg, Nick
2843 NE 13th Avenue
Portland, OR 97212-3223

Royce Harriet Younger
1631 Barry Ave., # 14
Los Angeles, CA 90025

Royce Harriet Younger
310 Tahiti Way, # 311
Marina del Rey, CA 90292

Rudolf A. Nelson
22603 Benner Ave.
Torrance, CA 90505-2817

Russin Vecchi & Heredia Bonett
Attn: N.V. Hai
815 Connecticut
Washington, DC 20006

Ruth B. Clayburg - c/o R.H.E
5372 Highland Drive SE
Bellevue, WA 98006

Ruth Tansey Goldberg
612 North Oakhurst Drive
Beverly Hills, CA 90210

Ryan D. Lapidus
Law Offices of Ryan D. Lapidus
211 South Beverly Drive, #205
Beverly Hills, CA 90212

Sabine Geiger
869 Ocean Avenue
Point Richmond, CA 94801

Sam Silverberg - c/o Polycomp
6400 Canoga Ave., # 250
Woodland Hills, CA 91367

San Francisco Telephone
3450 Sacramento Street, # 603
San Francisco, CA 94118

Sandra Crooker
P.O. Box 2062
Taos, NM 87571

Sandra Sutton
7 Victoria Falls Drive
Rancho Mirage, CA 92270

Sandy Bondgard
P.O. Box 2151
Sun Valley, ID 83353

Sara Sack
1157 S. Riverside Dr.
Palm Spring, CA 92264

Sarah J. Curtiss
3664 l6th Street
San Francisco, CA 94114

Saul Moskowitz
6400 Canoga Ave., # 250
Woodland Hills, CA 91367

SBC/Pacific Bell
Payment Center
Sacramento, CA 95887-0001

Schiffman, Berger, Abraham, Ka
P.O. Box 568
Hackensack, NJ 07602-0568

Schrold, Jack L.
5338 N.W. 117th Avenue
Coral Spring, FL 33076

Schulman, Treem, Kaminkow, Gil
401 East Pratt St., Ste 1800
Baltimore, MD 21202

Scott Andrews
c/o Maureen Andr
129 Via Nice
Newport Beach, CA 92663

Scott Emerson Ungar
6407 MacLaurin Drive
Tampa, FL 33647

Sean & Dianna Baker
537 Oakhampton Street
Thousand Oaks, CA 91361

Seymour & Jessica Sher
3027 Nicada Drive
Los Angeles, CA 90077

Sheila Schwartz
3194 Gateway Loop
Springfield, IL 97477

Sheri Feinstein
4926 Ascot Lane, # 4
Madison, WI 53711-1266

Sheridan Brett
1911 East 42nd Street
Spokane, WA 99203

Sheriff of LA County
Sheriff of, LA

Shirley Greenberg
211 California Ave., # 502
Santa Monica, CA 90403

Sidney Blitz
10490 Wilshire Boulevard, Suit
Los Angeles, CA 90024-4114

Silva Albert & Kathryn
6404 Renwick Circle
Tampa, FL 33647

Silver Patricia
1224 West Bay Avenue
Newport Beach, CA 92661

Simon Jeff & Lisa
15318 DePauw Street
Pacific Palisade, CA 90272

Simon Stuart
426 Linnie Canal Ct.
Venice, CA 90291

Smith Debnam Narrown & Myers,
4700 New Bern Avenue P.O. Box
Raleigh, NC 27611-6268

Speciale & Burton Attnys at Law
21300 Victory Blvd., #820 Attn
Woodland Hills, CA 91367

Spencer Investigation, Inc.
57 Mill River Road
Upper Brookville, NY 11771

Splin Silverman Cohen & Bartl
1620 26th Street, Suite 2000 N
Santa Monica, CA 90404

Stason Strong
16422 Shadow Mountain Drive
Pacific Palisade, CA 90272-2354

State of California Franchise
P.O. Box 942857
Sacramento, CA 942857-202

Stephen & Tina Greenberg
32 Portuguese Bend Road
Rolling Hills, CA 90274

Stephen Greenberg M.D.
32 Portuguese Bend Road
Rolling Hills, CA 90274

Steven & Christine Wade
16653 Calle Brittany
Pacific Palisade, CA 90273

Steven & Karen Ungar
6407 MacLaurin Drive
Tampa, FL 33647

Steven & Karen Ungar
6407 Mac Laurin Drive
Tampa, FL 33647

Steven A. Alpert, Esq.
Acct#: BC 296284
Price Law Group, APC
15760 Ventura Blvd., #1100
Encino, CA 91436

Steven Gevirtz
1270 Coast Village Circle
Santa Barbara, CA 93108

Steven J. Greynald
31840 Foxfield Dr.
Westlake Village, CA 91361

Steven M. Orenstein
500 North Genesee Avenue
Los Angeles, CA 90036

Steven Moen
18430 San Jose St.
Northridge, CA 91326

Stewart Booker
2964 Haddington Drive
Los Angeles, CA 90064

Stuart Allan & Associates, Inc
The Bonded Building
5447 East
Tucson, AZ 85711

Stutman Treister & Glatt
1901 Avenue of the Stars 12th
Los Angeles, CA 90067

Suntiger, Inc.
Acct#: Filing #03-2241257
7047 Radford Avenue
North Hollywood, CA 91605
MAIL RETURNED

Susan Babst
324 South Palm Drive
Beverly Hills, CA 90212-3512

Susan Fairhurst
PMB # 297, 4455 Torrance Boule
Torrance, CA 90503

Susan Novick
10573 West Pico Blvd. # 65
Los Angeles, CA 90064

Susan P. Ruttenberg
5416 Mark Ct.
Agoura Hills, CA 91301

Suzanne Enis
3601 Via La Selva
Palos Verdes Est, CA 90274-1146

Suzanne L. Enis
23642 Tampico Bay
Dana Point, CA 92629-4210

Swift Services Inc
1800 S Robertson Blvd Ste 139
Los Angeles, CA 90035

Swift Services, Inc.

Sydney Vender
16454 Royal Hills Drive
Encino, CA 91436

Sylvester & Polednak, LTD
3016 W. Charleston #195
Las Vegas, NV 89102

Teddy Orgell
865 Comstock Ave., Penthouse D
Los Angeles, CA 90024-2572

Teri Alpert / Gaytan Kallman &
8648 Wilshire Blvd.
Beverly Hills, CA 90211
MAIL RETURNED

Terry D. Buller
1418 Lakeside Dr.
Oakland, CA 94612

The Duff Law Firm
11320 Random Hills Rd Suite 52
Fairfax, VA 22030

The Gerald A. Teel Company, In
974 Campbell Road, Suite 204
Houston, TX 77024

The Recorder
P.O. Box 421378
San Francisco, CA 94142-1378

Thelen, Reid & Priest, LLP
333 South Grand Ave. 34th Floor
Los Angeles, CA 90071

Thelma Muzinek
2050 NE 202 Street
North Miami Beac, FL 33179
MAIL RETURNED

Theodore Glaessner - M.D.
1491 North Capri Dr.
Pacific Palisade, CA 90272

Theodore Glaessner - M.D.
Real State & Loan Processing
San Francisco, CA 94145
MAIL RETURNED

Theodore Glaessner - M.D.
1491 North Capri Drive
Pacific Palisade, CA 90272

Therese L. White
1578 Plymouth Lane
San Pedro, CA 90732

Thomas & Marguerite Kelly
6333 W. Maclaurin Drive
Tampa, FL 33647

Tiffany B. Lawrence & Pamela D
15325 Michael Crest Drive
Santa Clarita, CA 91351

Todd & Cary Garrett
3543 Via del Prado
Calabasas, CA 91302

Tonia and Joseph Kessler
5200 Kanan Road, Suite 210
Agoura Hills, CA 91301-3383

Toshiba Easy Lease
P.O. Box 31001- 0273
Pasadena, CA 91110-0273

Tracy and David Johnson
601 Tyburn Road
Palos Verdes Est, CA 90274

Trans West Investigation, Inc
c/o Sylvester & Polednak, LTD

Las Vegas, NV 89102

Travelers Insurance
c/o Gilbert/Krupin
9595 Wilshire
Beverly Hills, CA 90212-2507

Trojan, Inc.
2926 West Wallcrast
Tampa, FL 33611

Turndorf - Polycomp / Morton
6400 Canoga Avenue#250
Woodland Hills, CA 91367

Turner & Maasch, INC.
550 West C Street, Suite#1150
San Diego, CA 92101

U.S. Dept. of Justice
U.S. Atty., Dist. of Maryland
101 W. Lombard St.
Baltimore, MD 21201

Unitek
39465 Paseo Drive #2900
Fremont, CA 94538

Vail Systems, Inc
570 Lake Cook Road, Suite 410
Deerfield, IL 60015

Vardan Tchalikian
10227 Andasol Avenue
Northridge, CA 91325

Verizon California
P.O. Box 30001
Inglewood, CA 90313-0001

Virgil & Patricia Anglin - NTS
4926 Blackhorse Road
Rancho Palos Ver, CA 90275

Virgin Capital Corp.
13th floor

New York, NY 10028

Virginia D. Patterson
2840 Honolulu Ave., # 315
Verdugo City, CA 91046

Walter Babchuk
5075 Lakeview Canyon Road
Westlake Village, CA 91362

Walter Babchuk
5075 Lakeview Canyon Rd.
Westlake Village, CA 91362

Waring Cox, PLC
50 North Front St. Suite #1300
Memphis, TN 38103-1190
MAIL RETURNED

Warner F. Wolfen c/o Nita Shul
1800 Avenue of the Stars, # 60
Los Angeles, CA 90067

Warren Slocum, Assessor-County
555 County Center, 1st Floor
Redwood City, CA 94063-1665

Wehner & Perlman
12121 Wilshire Blvd., Ste 1120
Los Angeles, CA 90025-1123

Werner F. Wolfen
1800 Avenue of the Stars, # 90
Los Angeles, CA 90067

West Publishing
Thomson West PO Box 6292
Carol Stream, IL 60197-6292

WFT Investments
16653 Calle Brittany
Pacific Palisade, CA 90273

Whitmont Legal Copying, Inc.
P.O. Box 71129
Los Angeles, CA 90071-0129

Whitworth, Smith & Trunnell, P
2101 Defense Highway Maryland
Crofton, MD 21114

William & Janet Todosychuk Ros
23535 Hatteras Street
Woodland Hills, CA 91367

William & Nina Gelbart
967 Bluegrass Lane
Los Angeles, CA 90049-1432

William A. Harris
129 Via Nice
Newport Beach, CA 92663

William A. Kaplan
3521 E North Lane
Phoenix, AZ 85028

William H. Economos
428 W. 2nd Street
Elmhurst, IL 60126

William H. Slotter
1530 Locust Street, Apt. 10G
Philadelphia, PA 19102

William J. Adams / Polycom Sel
6400 Canoga Avenue, Suite 250
Woodland Hills, CA 91367

William Jarblum Retainer Trust
433 N. Camden Dr., Suite 888
Beverly Hills, CA 90210

William Peterson
1020 E. Balboa Blvd.
Newport Beach, CA 92661

William Pritikin
13301 Leslie Lane
Lake Oswego, OR 97034

Withey & Tobin, P.L.C.
3101 North Central Avenue Suit
Phoenix, AZ 85012
MAIL RETURNED

Wong George or John
1530 West 22nd Street
Los Angeles, CA 90007

Wood Gayle
500 S. Sepulveda Blvd., Suite
Manhattan Beach, CA 90266

World Communication Center
1347 N Alma School Rd Ste 15
Chandler, AZ 85224

Yi-Qin Liu
3775 Canfield Road
Pasadena, CA 91107

Yvonne Young - Sheila Young &
851 Burlway Road, # 520
Burlingame, CA 94010-1714

Zohn, Martin S. Esq.
Proskauer Rose, LLP
2049 Cent
Los Angeles, CA 90067

Stan Rich
Rich Energy Development Co.
11823 Mayfield Ave., #101
Los Angeles, CA 90049

**EXHIBIT 17**

1   STEVEN C. HOLTZMAN (SBN 144177)
    BRENDAN GLACKIN (SBN 199643)
2   KEVIN BARRY (SBN 229748)
    BOIES, SCHILLER & FLEXNER LLP
3   1999 Harrison Street, Suite 900
    Oakland, California 94612
4   Telephone: (510) 874-1000
    Facsimile: (510) 874-1460
5
    Attorneys for Plaintiffs
6

**FILED**
LOS ANGELES SUPERIOR COURT

MAY 2 4 2004

JOHN A. CLARKE, CLERK
BY A. WATTS, DEPUTY

7

8        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9           IN AND FOR THE COUNTY OF LOS ANGELES

10

11   COLIN GILBERT, as trustee for the CMG
     FAMILY IRREVOCABLE TRUST,
12   PHYLLIS KLEIN, as trustee for the PHYLLIS C.
     KLEIN LIVING TRUST,
13   KENNETH L. KRAUS and PERRY GIBSON, as
     trustees for the KRAUS/GIBSON REVOCABLE
14   TRUST OF 1987,
     JEFF SIMON, as trustee for the JEFFREY AND
15   LISA SIMON FAMILY TRUST,
     STUART SIMON, as trustee for THE STUART
16   SIMON REVOCABLE TRUST,
     GARRISON SINGER, as trustee for the
17   GARRISON M. SINGER LIVING TRUST,
     HANK'S WILSHIRE TOW, INC.,
18   and JOHN R. WHITE,

19          Plaintiffs,

20   vs.

21   MARK F. COHN,
     JACK GARRETT, individually and as trustee of
22   the GARRETT FAMILY TRUST,
     RONALD ANSON, individually and as trustee of
23   the ANSON FAMILY TRUST,
     ROBERT LIPP, individually and as trustee of the
24   LIPP REVOCABLE TRUST OF 1992,
     STEVEN WADE, individually and as trustee of
25   the WADE FAMILY TRUST,
     W.F.T. INVESTMENTS, INC.,
26   CONDOR INVESTMENTS, also d/b/a
     PLATYPUS INVESTMENT INC.,
27   ANSON, GARRETT AND CO.,
     FSF LLC,
28   GAIL CATO, individually and d/b/a COHN

---

**CASE NO. BC 310 846**

**Assigned to The Honorable Anthony Mohr, Department 309**

**AMENDED CLASS ACTION COMPLAINT**

   I.  **CORPORATIONS CODE §§ 25400 and 25401**
  II.  **FRAUD**
 III.  **BREACH OF FIDUCIARY DUTY**
 IV.  **CAL. BUS. & PROF. CODE § 17200**
  V.  **NEGLIGENT MISREPRESENTATION**
 VI.  **NEGLIGENCE**
VII.  **FRAUDULENT CONVEYANCE (CIVIL CODE § 3439 et seq.)**

**DEMAND FOR JURY TRIAL**

---

1

1 | AMERICA CO.,
GEORGINA ASSET MANAGEMENT LLC,
2 | GARRETT & ANSON INVESTMENT
CORPORATION,
3 | CAPITAL ONE INVESTMENT GROUP, INC.,
ETHEL WOLFF, a/k/a ETHEL COHN,
4 | STEVEN COHN,
ALEXIS COHN,
5 | FIRST COMMUNITY BANCORP,
PACIFIC WESTERN NATIONAL BANK,
6 | BENEFICIARY DOES 1-50,
and DOES 1-50,

7

        Defendants.

8

9       NOW COME THE PLAINTIFFS, Colin Gilbert (as trustee for CMG Family Irrevocable

10 Trust), Phyllis Klein (as trustee for the Phyllis C. Klein Living Trust), Kenneth L. Kraus and

Perry Gibson (as trustees for the Kraus/Gibson Revocable Trust of 1987), Jeff Simon (as trustee

11 for the Jeffrey and Lisa Simon Family Trust), Stuart Simon (as trustee for The Stuart Simon

12 Revocable Trust), Garrison Singer (as trustee for the Garrison M. Singer Living Trust), Hank's

13 Wilshire Tow, Inc., and John R. White (collectively "Plaintiffs") by and through their attorneys

14 Boies, Schiller & Flexner LLP, and allege as follows, on personal knowledge where possible and

15 on information and belief as to all other matters:

16

17           <u>GENERAL ALLEGATIONS COMMON TO ALL CLAIMS</u>

18      1.     Plaintiffs seek to recover, on their own behalf and on behalf of all others similarly

19 situated, damages arising from a Ponzi scheme operated through a company called Four Star

20 Financial Services LLC ("Four Star"). The word "Plaintiff" in this Complaint should be read to

21 include both the individually named plaintiffs and the members of the plaintiff class.

22      2.     A Ponzi scheme is a simple but sophisticated fraud. The operators of the scheme

23 lure initial investors by combining a legitimate-sounding opportunity with a promise of high

24 returns, regularly paid. They build a history of profitability by secretly distributing invested

25 capital in the form of "profit." The regular generation of substantial "profits" lures more and

26 more investors bearing capital that is leveraged to pay "profits" to both new and old investors.

27 The operators surround the "investment" with a veil of secrecy, ostensibly to protect "sensitive

28 deals" that might fall apart if subjected to too much scrutiny. When the scheme collapses (as it

<div align="center">2</div>

1    must), the operators, who by this time have concealed or absconded with substantial invested

2    funds of the victims, bewail and bemoan the failure of a supposedly legitimate enterprise.

3    Despite its history and notoriety, the scheme is regularly perpetrated on unwitting victims even to

4    the present day.

5          3.    The Ponzi scheme is named for Carl Ponzi, who in 1920 netted $2 million from

6    thousands of victims using just this program. Ponzi told investors about a clever plan he had

7    discovered for converting an "international exchange coupon" into American postage stamps

8    worth six times its face value. Ponzi promised to pay $150 in 45 or 90 days on an initial

9    investment of $100. Ponzi ultimately took in $9.8 million, as enthusiasm for his investment grew

10    based on the $7.8 million in "profits" he simultaneously returned. Investigations and bad press,

11    however, dried up the flow of investment and the scheme ultimately collapsed. Ponzi served four

12    years in prison.

13          4.    Defendants operated a similar program of fraud. Defendants Cohn, Anson and

14    Garrett formed 900 Capital Services ("900 Capital"), a predecessor to Four Star, in or around

15    1991. Defendants characterized the business of 900 Capital as "factoring," a form of short-term

16    bridge financing of pay-per-call services, such as 900 numbers. According to Defendants, pay-

17    per-call companies experienced delays of several months in collecting their receivables, because

18    those receivables flowed through the major phone companies who carried and billed the calls.

19    900 Capital purported to provide operating financing to these companies while they awaited their

20    receivables. 900 Capital claimed to earn a high rate of return and claimed to be fully secured by

21    the receivables themselves. Defendants Cohn, Anson, Garrett and Wade raised millions of

22    dollars for 900 Capital on the basis of these representations.

23          5.    Defendants Cohn, Anson and Garrett created Four Star in or around 1996 and,

24    with Wade, began soliciting funds at around the same time. In a letter dated June 26, 1996, the

25    Defendants told existing 900 Capital investors that they had formed Four Star for tax benefit

26    purposes and to realize "potential increased yields to the investors." They represented that the

27    new company would branch out into the "'long-distance' market" and that 900 Capital already

28    had "$15 million of accounts receivable positions supported by long-distance paper." They

3

1  further represented that the new "long-distance" business would result in even "greater security

2  for all of our investors." They told investors that Credit Suisse First Boston had performed

3  several days of due diligence in their offices and come to "very favorable" conclusions about the

4  business of 900 Capital. The Defendants induced 900 Capital investors to "roll over" their

5  investment into Four Star—rather than demanding it back—by offering them slightly higher rates

6  of return than those offered to new investors in Four Star, and still higher rates of return

7  depending on the amount of 900 Capital investment they rolled over into Four Star.

8        6.    The Defendants then proceeded to solicit hundreds of millions of dollars of new

9  investment in Four Star. They did so based on the assurance that Four Star was a legitimate

10  company engaging in "safe" factoring and arbitrage telecommunications investments with a high

11  and fixed rate of return. According to verified pleadings filed by Defendants Anson and Garrett in

12  another case, in September of 2003 the invested capital of Four Star consisted of approximately

13  $250 million collected from several hundred individuals.

14        7.    Defendants solicited funds, both at Four Star's inception and on an ongoing basis,

15  through at least three mechanisms: purchase of "memberships" in Four Star, "cash flow notes",

16  and agreements for individual "arbitrage" deals. Each of the agreements memorializing these

17  investments, including Four Star's Private Placement Memorandum dated June 30, 1997,

18  contained numerous material misrepresentations, such as the following:

19        • payments would only be made from cash flowing from Four Star's operations;

20        • capital would only be used to pay certain operating expenses and to fund

21          telecommunications and bridge financing;

22        • capital would only be invested in positions secured by accounts receivable

23          from companies in the telephone industry or in investments where the principal

24          was guaranteed by a rated insurance company;

25        • management's aggregate $750,000 annual fees would only be paid to the

26          extent that the company had net income;

27        • the principal was "safe";

28        • return of principal was unconditionally guaranteed.

4

GILBERT ET AL. V. COHN ET AL., NO. BC 310 846
AMENDED COMPLAINT

8.     Four Star maintained a regular history of paying monthly "returns" of approximately 14%-16% on an annual basis, and Defendants repeatedly used this history of regular fixed payments as a basis for soliciting new money.  Defendants also encouraged Plaintiffs to "roll over" (i.e. not collect) their distributions and discouraged them from attempting to withdraw their capital.  IRS Form 1099s issued to Plaintiffs by Defendants attributed "income" from Four Star to Four Star's investors, including interest "rolled over".

9.     These representations were all false and designed to mislead, as was the purported history of "profitable" operations and "timely" payments.  Four Star did not invest in secured positions, bridge financing, or accounts receivable in the telecommunications industry. Defendant Cohn himself has admitted that Four Star did not earn a net profit in any year from 1998 forward, notwithstanding that it made regular distributions to Plaintiffs until the Fall of 2002.  As Cohn has further admitted, these payments came not from income or cash from operations, but rather constituted re-distributions of capital.  Notwithstanding the lack of actual earnings, Defendants collected millions in "management fees" and "salaries" each year and, according to Cohn, extracted millions more in addition to those fees in the form of fraudulent "expense reimbursements."  Whatever funds Defendants did not distribute as fictitious "interest payments" or convert to their own use were, according to Defendants, dissipated through a series of high-risk, speculative transactions, such as investment in distressed Argentinean bank paper, in leases for South American emerald mines, in Speed Racer and Teenage Mutant Ninja Turtles animation art, in boiler rooms practicing telemarketing fraud (for which Cohn and Four Star have been criminally convicted in Maryland), and other ridiculous schemes.  These are the classic facts of a Ponzi scheme.

10.    Defendants used the foregoing material misrepresentations, namely that capital was safely invested in legitimate activities that produced regular profits for distribution, to induce Plaintiffs to invest in Four Star or loan Four Star money, and to make further additional investments in and loans to Four Star.  Plaintiffs justifiably relied on these misrepresentations, which Defendants made with an actual intent to defraud, and have suffered losses as a result.

11.    Defendants offered regular reassurances in order to conceal the nature of Four

5

1    Star's activities and thereby forestall the collapse of Four Star. These additional

2    misrepresentations, made with the intent to defraud, delayed the discovery of Defendants'

3    fraudulent scheme and encouraged yet more investments and loans.

4         12.    For instance, Defendant Garrett stated in a January 4, 2001, letter to all Plaintiffs

5    that Four Star and its predecessor firm had "experienced steady growth and profitability" since

6    1992. In fact, although Four Star may have experienced a "steady growth" in the amount of

7    capital acquired pursuant to Defendants' scheme, Four Star, as Defendant Cohn has admitted,

8    had in fact never been profitable since its inception.

9         13.    Furthermore, maintaining a fraud of this nature over such a long period of time

10    required highly creative accounting and the use of fraudulent financial statements. Defendants

11    used a maze of transactions through attorney trust accounts and shell corporate entities to shuffle

12    money in and out of Four Star while at the same time always assuring that a little bit seeped away

13    into their own pockets. These "transactions" created the appearance of legitimate economic

14    activity and provided a basis for the fictitious accounting statements provided to Plaintiffs, for the

15    purpose of preventing discovery of the fraud and bringing even more money into Four Star.

16         14.    The Defendants also did not disclose to Plaintiffs that Mark Cohn and Four Star

17    had been indicted on July 10, 2001, on multiple counts of telemarketing fraud.

18         15.    The demise of Four Star also shows the classic elements of a Ponzi scheme.

19    Defendants at first delayed the "interest payments" and distributions in August 2002, and stopped

20    them altogether soon thereafter. To allay concerns over this development, Defendants

21    represented that Four Star had entered into a complex and "secret" deal that would result in rich

22    dividends. Details were never given; instead, Defendants conveniently claimed that a "no

23    disclosure agreement" mandated that the nature of the transaction be kept secret. They only told

24    Plaintiffs that the deal was very lucrative and nearly consummated. When Plaintiffs gradually

25    demanded more information, Defendants told them that the deal involved the sale of long distance

26    arbitrage contracts in Argentina, in exchange for CDs issued by an Argentinean bank. These CDs

27    would then be sold to a group of Saudi Arabian purchasers who would pay millions more than the

28    cost of the "arbitrage" contracts. Defendants maintained a veil of mystery around this transaction

6

1    by telling Four Star's investors that any outside examination would cause the deal to fall apart,

2    leading to the failure of Four Star and the loss of its assets.

3        16.    Specifically, a July 26, 2002, letter from Mark Cohn informed Plaintiffs that:

4            "This letter is intended to provide you with an update concerning
             your arbitrage investment." *** "There have recently been certain
5            developments, which we believe to be very positive.   Specifically,
             we have arranged for and in fact have sold the future income stream
6            generated by the subject investments.

7            "This sale is subject to a very strict no disclosure [sic] agreement,
             and, accordingly, we will have to be somewhat limited as to what
8            we are currently disclosing.  We will, however, provide a general
             outline as to status.
9
             "The party that has purchased this investment is a large financial
10           institution having an asset base an [sic] excess of $50 billion
             dollars.
11
             "The purpose of this sale is to convert a series of investments with
12           somewhat sporadic streams into an absolute, irrevocable obligation
             from the above referenced financial institution to pay a sum certain.
13
             "It is estimated that it will take 120 to 150 days to obtain all
14           required approvals.  At the conclusion of this time, the transaction
             will close.
15
             "The commitment that we have from the above referenced
16           institution is absolute.  This has been confirmed to us by our legal
             counsel.  Further, we have obtained security supporting
17           performance.  In our view, that security is more than adequate to
             ensure performance in relatively short order."
18

19   The letter went on to warn that "pending closing of the transaction" Four Star's cash receipts

20   would have to be escrowed, meaning that distributions would have to be suspended for a

21   "relatively short period."  The letter nevertheless reassured Plaintiffs that "The entirety of your

22   principal and accrued yield will be paid to you upon closing."

23       17.    These representations were all false. There was no deal with a "$50 billion dollar"

24   financial institution that would, on a fully secured basis, provide complete recovery to Plaintiffs.

25       18.    A mid-September, 2002, letter sent by Defendants Anson and Garrett further re-

26   assured Plaintiffs that:

27           "Our unique ability to form complex arbitrage transactions has not
             gone unnoticed.  In this regard, we are very pleased to announce
28           that we have recently concluded contractual negotiations resulting

                                         7
     GILBERT ET AL. V. COHN ET AL., NO. BC 310 846
     AMENDED COMPLAINT

1       in the sale of approximately $100 million of the $240 million Four
Star asset base for a significant premium. This transaction with a
2       large financial institution is subject to a very strict Non-Disclosure
Agreement (NDA) and therefore limits the amount of detail we can
3       present at this time."

4    Notwithstanding the intense secrecy surrounding the "transaction", Anson and Garrett further

5    assured Plaintiffs that although "it is a requirement that the majority of Four Star cashflow be set

6    aside and placed in escrow", "[t]he closing of the transaction will materially enhance the overall

7    liquidity of Four Star." The letter directed anyone with questions to contact Defendant Steven

8    Wade.

9        19.    These representations were all false. As demonstrated by subsequent events, there

10    was no deal with a "large financial institution" to sell "approximately $100 million of the $240

11    million Four Star asset base for a significant premium." Moreover, the claim that Four Star had a

12    $240 million "asset base" can only be described as preposterous.

13        20.    In an October 29, 2002, letter, Defendants Anson and Garrett wrote that:

14       "We recently sent you a letter in mid-September announcing Four
Star's plan to sell approximately $100 million of it's [sic] portfolio
15       at a significant premium to asset cost. This transaction is still
subject to a strict Non-Disclosure Agreement." **** "It should be
16       noted that our position [in this transaction] has at all times been
very well secured." **** "We are confident that the decision we
17       have made, which may require some interim sacrifice on behalf of
our investors over the short term, will benefit the company
18       financially and help us secure our ability to service your goals over
the long term."
19

20        21.    This letter contained a number of significant misrepresentations. First, there was

21    nothing remotely approaching $100 million in value within Four Star's portfolio. Second, there

22    was no such transaction to sell Four Star assets, as the company had no assets to sell. Third, even

23    taking Four Star at its word, that an investment in Argentina actually took place, Defendant Cohn

24    has more recently contended that the most that was committed to this purported investment was a

25    few million dollars, a far cry from the $100 million represented to Plaintiffs. Finally, as seen by

26    the total loss of any recovery from this purported deal, Four Star's position was not secured by

27    anything.

28

<div align="center">8</div>

22. On December 20, 2002, Defendants wrote that:

> "In recent correspondence, we advised you of a large transaction which we [sic] has been pending. This transaction is proceeding much slower than originally anticipated; however, it is moving in a forward direction toward closing. We still anticipate that the final closing should be within the first quarter of 2003. As has been previously mentioned, it is anticipated that there will be significant investor pay downs at that time.

> "With regard to other aspects of the portfolio, we are pleased to report that there has been significant progress. Specifically, other Four Star investments are beginning to produce increases in cash flows. However, it will take some time to build up a cash surplus for the company, at which time distributions will recommence."

23. Inasmuch as there were no other prospects for Four Star at the time, Defendants' assurance that distributions would recommence was false. Nevertheless, Defendants continued to assure Plaintiffs that this would be the case.

24. A January 28, 2003, letter from Defendant Steven Wade perpetuated the fraud. It stated that:

> "Since writing you on December 20, 2002, the senior management of Four Star and their counsel continue to work diligently towards concluding the disposition of certain assets, as well as reinstating its cash flow. While there are no guarantees in this regard, we remain confident that Four Star will have surplus cash flow during the second quarter of this year."

The letter went on to ask investors intending to ask for capital back to provide notice "on an informal basis" so that the company could engage in the necessary "advance planning." The letter hastily disclaimed, however, any "binding commitment on the company" to return investments. The letter then offered a specious economic analysis blaming "a sluggish economy and increased competition in the banking and telecommunications sectors and general market trends" for a "decline" in Four Star's "portfolio." The letter went on to argue that, nevertheless, a dollar invested in Four Star had "grown" nearly twice as much as a dollar invested in the S&P 500.

25. These representations were all false. Four Star's problems had nothing to do with a "sluggish economy" or "increased competition in the telecommunications and banking sectors [or] general market trends." Moreover, the representation that a dollar invested in Four Star had

9

1  "performed better" than a dollar invested in the S&P 500 was patently false given the true asset

2  picture at Four Star, of which "[s]enior management" was quite well aware.

3      26.    A March 31, 2003, letter from Defendant Steven Wade further represented that:

4          "The key projects on which Four Star has been working are still
           pretty much on track. We did anticipate certain closing [*sic*] by the
5          end of the quarter, i.e., March 31. While it appears that this will not
           occur, we do anticipate these closings within the next three to eight
6          weeks. That should then put the Company in a position to be
           making distributions on a going forward basis. At this time, we are
7          of the view that future distributions will be occurring on a regular
           basis."
8
9      27.    These statements were also manifestly false. Four Star had no "key projects" that

10  would ever show profits or allow the return of capital and the managers of Four Star did not

11  actually anticipate any "closings" that would allow Four Star to "make distributions on a going

12  forward basis." No such transactions existed.

13     28.    Defendants' efforts to stonewall and delay Plaintiffs' attempts to recover their

14  capital largely succeeded, as Defendants reported in yet another letter to Plaintiffs (signed by

15  Defendant Steven Wade) on May 8, 2003:

16         "This letter is intended to provide a further update as to steps being
           taken by management of Four Star. First, we would note that we
17         believe that we are still on the track outlined in the March 31, 2003
           letter. In response to all previous inquiries concerning the number
18         of people who wish to withdraw money versus the number of
           people who did not, something less than 27% of Four Star's
19         investor base has requested the return of their capital."

20     29.    The May 8 letter then proceeded to perpetuate the false image of a legitimate

21  company in need of nothing more than slight restructuring. To that end, the letter proposed a 1/3

22  reduction in distributions in order to permit the company to pursue "prudent investing." The

23  letter included a ballot for Plaintiffs to accept this reduction. As Four Star had not been engaging

24  in legitimate investing, this election to lower returns was a smokescreen designed to encourage

25  Plaintiffs to take a "wait and see" approach and to further delay their discovery of the truth—that

26  there was little or nothing to invest.

27     30.    As late as June 18, 2003, the Defendants persisted in telling Plaintiffs that Four

28  Star's problems would be solved by the realization of proceeds from a "large transaction." In a

                                    10

GILBERT ET AL. V. COHN ET AL., NO. BC 310 846
AMENDED COMPLAINT

1    letter sent that day by Garrett, Defendants represented that:

2        "Four Star has more than enough assets to protect the investors, but
         the assets will take considerable time to be converted into cash.
3        The large transaction that has been the subject of numerous updates
         is moving along and is believed to be very close to completion, but
4        we are not yet in a position to identify a date by which Four Star
         will be in receipt of liquidated funds that will be distributed to
5        investors."

6    Defendants knew that Four Star had nowhere near enough assets to repay its investors and knew

7    that no "large transaction" would appear to magically rescue Four Star. In fact, Four Star's

8    investors placed the company into involuntary bankruptcy on October 23, 2003, and Four Star did

9    not contest this action. On March 17, 2004, the bankruptcy case was converted to a Chapter 7

10   liquidation.

11       31.    In addition to these written misrepresentations, Defendants made numerous false

12   statements in conversations with Plaintiffs. They repeatedly assured Plaintiffs that the company

13   only invested in safe, secure, and lucrative investments. They described Four Star as well-

14   secured and Plaintiffs' principal as safe. Defendants characterized Four Star's investments as

15   "very safe," sitting somewhere between municipal bonds and U.S. bank CDs on a continuum of

16   security. Further, Defendants assured Plaintiffs that Four Star had sufficient assets such that even

17   if none of the investments paid out and the company were liquidated, all principal would be

18   repaid. All of these representations were false, in that capital was not used in investments at all,

19   but rather went either to pay the "distributions" that maintained the fraudulent scheme or into

20   Defendants' pockets.

21       32.    As time went on, and none of the fruits of the "Argentina Deal" materialized,

22   Defendants continued their campaign to put off the day of reckoning. Defendants repeatedly told

23   Plaintiffs that the transaction would close soon and that it was only a matter of days or weeks

24   until the money came rolling in. They told some Plaintiffs that delay was actually a positive

25   development, for once the deal was closed Four Star would be shut down and no longer generate

26   "revenue" for Plaintiffs. Defendants told other Plaintiffs that Four Star would take the

27   opportunity to "buy out" smaller participants to focus exclusively on its largest members and note

28   holders.

11

GILBERT ET AL. V. COHN ET AL., NO. BC 310 846
AMENDED COMPLAINT

33.    When the profits and return to cash-flow solvency failed to materialize, Defendants told Plaintiffs that the Argentinean banks had refused to honor Four Star's CDs and suggested that Four Star itself (!) had been the victim of fraud by the purchasers of its "arbitrage" contracts.  This further postponed the collapse of Four Star.

34.    Today, according to Defendants, Four Star has, at best, virtually no assets other than highly speculative contingent claims arising from its investment "activities," such as they were, which did not involve safe or profitable bridge financing or arbitrage investments as Plaintiffs were led to believe.  Defendants' actions were malicious, fraudulent, oppressive, and intended to injure Plaintiffs.  Whatever the true state of affairs, it is plain that whatever Defendants did not distribute or manipulate to maintain the illusion of a successful business, they stole for themselves.

<div align="center">PARTIES</div>

<div align="center">PLAINTIFFS</div>

35.    Plaintiff Colin Gilbert, trustee for CMG Family Irrevocable Trust, resides in Beverly Hills, California.  Mr. Gilbert invested over $200,000 in Four Star.  Mr. Gilbert seeks restitution, disgorgement, damages, punitive damages, and attorney's fees against Defendants on his own behalf, on behalf of the CMG Family Irrevocable Trust, and as a private attorney general on behalf of the general public of the state of California.

36.    Plaintiff Phyllis Klein resides in Marina del Rey, California.  Defendants Robert Lipp and Georgina Asset Management managed her investments, and Defendants Anson and Garrett were her accountants.  In reliance on their collective management and advice, Ms. Klein invested over $750,000 in Four Star over a period of approximately 18 months, from June of 2000 through December of 2001.  In addition to the statements made to all Plaintiffs, Defendants told her that Four Star's assets were fully backed by certificates of deposit issued by Comerica Bank.  When she asked for her money back in 2002, Lipp and Garrett told her that Four Star was in the process of winding up operations and would, after liquidating its assets, make a complete repayment to all investors.  Ms. Klein seeks restitution, disgorgement, damages, punitive damages, and attorney's fees against Defendants on her own behalf and as a private attorney

<div align="center">12</div>

1    general on behalf of the general public of the state of California.

2    37.    Plaintiffs Perry Gibson and Ken Kraus, a married couple, reside in Nashville,

3    Tennessee. They are trustees of the Kraus/Gibson Revocable Trust of 1987. This trust loaned

4    over $2,000,000 in Four Star through a series of cash flow notes issued in 1999 and 2001. Garrett

5    described Four Star's business as pay-per-call factoring, which he characterized as purchasing

6    receivables from telephone companies at a 1/3 markdown. Garrett described Cohn, whom he

7    characterized as the brains of the operation, as having developed special software that enabled

8    him to avoid receivables that wouldn't be paid. Mr. Kraus had multiple conversations with

9    Anson, Garrett, Wade (who handled "investor relations") and Cohn, in which they perpetuated

10    the image of a legitimate, profitable company and, after payments dried up in 2002, furthered the

11    myth of an "Argentinean transaction" that would rescue Four Star. Plaintiffs Gibson and Kraus

12    seek restitution, disgorgement, damages, punitive damages, and attorney's fees against

13    Defendants on their own behalf and as private attorneys general on behalf of the general public of

14    the state of California.

15    38.    Plaintiff Jeff Simon resides in Culver City, California. He is a trustee of the

16    Jeffrey and Lisa Simon Family Trust. Defendant Lipp in April of 2002 advised Jeff Simon to

17    invest $100,000 of trust assets in Four Star. Jeff Simon has now lost that investment. Mr. Simon

18    seeks restitution, disgorgement, damages, punitive damages, and attorney's fees against

19    Defendants on his own behalf and as a private attorney general on behalf of the general public of

20    the state of California.

21    39.    Plaintiff Stuart Simon resides in Venice, California. He is the trustee of The Stuart

22    Simon Revocable Trust. Defendant Lipp advised Stuart Simon to invest a total of $200,000 of

23    trust assets in Four Star. He has now lost that investment. He seeks restitution, disgorgement,

24    damages, punitive damages, and attorney's fees against Defendants on his own behalf and as a

25    private attorney general on behalf of the general public of the state of California.

26    40.    Plaintiff Garrison Singer resides in Phoenix, Arizona. He is the trustee of the

27    Garrison M. Singer Living Trust. Mr. Singer was a client of First Charter Bank, predecessor of

28    Defendants Pacific Western National Bank and First Community Bancorp. First Charter Bank

13

1   provided banking and investment services, including investment advice, to Mr. Singer. Steven

2   Wade, then an employee of First Charter Bank, managed Mr. Singer's accounts. In 1995, Wade

3   and First Charter Bank advised Mr. Singer to invest $100,000 in 900 Capital. Wade told Mr.

4   Singer that Anson and Garrett, who managed Four Star, were fellow First Charter Bank

5   customers who engaged in conservative and safe investment practices. In further reliance on the

6   advice of Wade and First Charter Bank, Mr. Singer invested a further $300,000 in 1997, which

7   included part of the proceeds of the sale of his home. In 2000 and 2001, he invested another

8   $200,000 in two "arbitrage" transactions, bringing his total investment to $600,000. Mr. Singer

9   seeks restitution, disgorgement, damages, punitive damages, and attorney's fees against

10   Defendants on his own behalf and as a private attorney general on behalf of the general public of

11   the state of California.

12      41.    Plaintiff John R. White is a licensed physician residing in Rancho Palos Verdes,

13   California. Mr. White is a an officer and part-owner of Plaintiff Hank's Wilshire Tow, Inc.

14   Defendant Wade, while an employee of First Charter, advised Mr. White to invest in 900 Capital.

15   John White and Hank's Wilshire Tow, Inc., ultimately invested nearly $1,000,000 in 900 Capital

16   and Four Star.

17                         **DEFENDANTS**

18                  **FOUR STAR'S MANAGERS**

19      42.    Defendant Mark F. Cohn ("Cohn") formerly resided in Redwood City, California.

20   Cohn was the Executive Vice President, General Counsel and a Manager of Four Star. Cohn is an

21   attorney formerly admitted to practice in California. In the wake of a federal felony conviction

22   (on multiple counts) for operating a fraudulent telemarketing scheme targeting persons with

23   distressed credit histories, Cohn resigned his license to practice law. Cohn has been sentenced to

24   almost five years in prison as a result of that conviction. He is currently incarcerated and is in the

25   custody of the Federal Bureau of Prisons.

26      43.    Defendant Ronald Anson ("Anson") is a certified public accountant currently

27   residing in Los Angeles, California. Anson was the Chief Financial Officer and a Manager of

28   Four Star.

<center>14</center>

1    44.    Defendant Jack Garrett ("Garrett") is a certified public accountant currently

2    residing in Calabasas, California.  Garrett was the President and a Manager of Four Star.

3    45.    Defendant Steven Wade ("Wade") resides in Pacific Palisades, California.  Wade

4    was a Vice President of Four Star who solicited investment in Four Star and 900 Capital.  Wade

5    also served as an officer of First Charter Bank, and solicited investment in the scheme in his

6    official capacity as a bank officer, with full knowledge of the fraudulent scheme.  His victims

7    included investment clients of First Charter Bank, such as Plaintiff Garrison Singer.  For

8    soliciting investment in Four Star and 900 Capital, Wade received undisclosed kickbacks and

9    commissions.

10    46.    Defendants Anson, Garrett, and Cohn have worked together for more than ten

11    years.  Each of these Defendants orchestrated and managed every aspect of the fraudulent scheme

12    known as Four Star.  Anson and Garrett operated their accounting firm out of Four Star's offices,

13    and used their status as accountants to solicit money on behalf of Four Star.  Wade held himself

14    out as a Vice President of Four Star and personally solicited investments into Four Star.  Cohn,

15    Anson, Garrett and Wade each prepared fraudulent statements and agreements for distribution to

16    Plaintiffs, including Four Star's fraudulent financial statements, and each made fraudulent

17    statements to Plaintiffs in individual conversations.  They each knew that Four Star was not in

18    fact profitable, solvent or engaged in legitimate economic activity.  Through their family trusts,

19    shell companies and their own personal accounts, they each siphoned off millions of dollars in the

20    form of fraudulent "fees," "expense reimbursements," loans, and, in some cases, outright

21    conversion of Four Star's assets.  Collectively, the amounts stolen by these individuals total in the

22    tens of millions of dollars.  They have incorporated, together, multiple shell entities to effect these

23    purposes.  They each conspired with the others to hide the fraud from existing and prospective

24    investors  through a systematic scheme of lies.  Each of them intentionally and knowingly aided

25    and abetted this fraudulent scheme.

26    47.    Defendant Robert Lipp ("Lipp"), a registered investment adviser, conspired with

27    Anson, Garrett and Cohn to defraud Plaintiffs.  Lipp boasted to Plaintiffs that he was "intimately"

28    involved in Four Star and that he would eventually be named President of Four Star. Despite

15

1  holding himself out as an independent investment advisor, Lipp operated out of Four Star's

2  offices and claimed to spend half of every day working on Four Star business. Lipp solicited

3  funds for Four Star with full knowledge of the fraud in order to prop up the enterprise. In return,

4  Lipp received kickbacks and commissions from Four Star on the funds he solicited. Lipp also

5  assisted Defendants in maintaining the appearance of normalcy at Four Star, by, for instance,

6  untruthfully telling Plaintiffs in 2002 that "things are going great with the company, things could

7  not be better." Lipp also executed the Ponzi scheme by ordering incoming capital from Plaintiffs

8  to be converted into payments to other, unknowing members and note-holders of Four Star. Lipp

9  knew that Four Star was not profitable and needed continued infusions of capital to stay "alive",

10  i.e. to stay current on its obligations to investors.

11  <center>THEIR FAMILY TRUSTS AND COMPANIES</center>

12        48.    Cohn, Anson, Garrett, Wade and Lipp each also created and controlled family

13  trusts and companies through which they also perpetrated the fraud. These entities participated in

14  and profited from the fraudulent scheme by receiving transfers of investor money through a

15  company they controlled—Four Star—via their own trustees and officers: Cohn, Anson, Garrett,

16  Lipp and Wade. They also served as a vehicle for those individuals' attempts to hide assets from

17  creditors—namely, Plaintiffs. The Defendants also used these companies to disguise the true

18  nature of Four Star's fraudulent activities. Each of these entities collected hundreds of thousands

19  or millions of dollars from Four Star, and in total they received tens of millions of dollars.

20        49.    In addition, Cohn, Anson, Garrett, Lipp and Wade each used their family trusts

21  and companies in an attempt to sequester assets from the rightful claims of the persons they

22  defrauded. Every transfer they made to these trusts was made for the purpose of hindering,

23  delaying and defrauding their creditors—namely, Plaintiffs. The Defendants who made the

24  transfers did not receive a reasonably equivalent value in exchange for those transfers and the

25  Defendants (1) were engaged in a business for which their remaining assets were unreasonably

26  small in relation to the business and (2) intended to incur, or believed or reasonably should have

27  believed that they would incur, debts beyond their ability to pay as they became due.

28        50.    The Defendant trusts are: the Defendant Garrett Family Trust; the Defendant

<center>16</center>

1    Anson Family Trust; the Defendant Lipp Revocable Trust of 1992; and the Defendant Wade

2    Family Trust. Together, these trusts collected millions from Four Star by way of the fraud they

3    perpetrated through their trustees.

4        51.    FSF LLC is a California corporation controlled by Cohn, Anson and Garrett. FSF

5    LLC has offices at 1000 Marina Blvd., Suite 600, Brisbane, California, 94005. FSF LLC engaged

6    in transfers of funds with Four Star both to conceal the true nature of Four Star and to siphon off

7    Four Star's capital for the benefit of FSF LLC and the other Defendants.

8        52.    Condor Investments ("Condor") is a Delaware corporation controlled by Cohn and

9    Defendants Ethel Wolff (a/k/a Ethel Cohn), Steve Cohn and Alexis Cohn. Condor received at

10   least $11 million in "expense reimbursements" and "management fees" from Four Star. In

11   reality, Condor never rendered $11 million in "services" to Four Star. Instead, Condor received

12   this money both to conceal the true nature of Four Star and to siphon off Four Star's capital for

13   the benefit of Condor and the other Defendants. Condor is headquartered at 601 Gateway

14   Boulevard in South San Francisco, California.

15       53.    Defendant Anson, Garrett & Co. ("AG&CO") is an accounting firm based in Los

16   Angeles, California. Defendants Anson and Garrett are its principals. AG&CO aided the fraud

17   by preparing fictitious financial statements, tax returns, and other documents for distribution to

18   Plaintiffs, which gave the false appearance of sound financial performance. AG&CO did not

19   have its own offices, but was operated from the offices of Four Star, 11755 Wilshire Boulevard,

20   Suite 1350, Los Angeles, California, 90025. AG&CO received millions of dollars from Four

21   Star.

22       54.    Defendant Garrett & Anson Investment Co. ("GAICO") is a California corporation

23   doing business at Four Star's address and in Redwood City, California. Cohn, Anson and Garrett

24   own and control GAICO and used it to perpetrate the fraud. GAICO received millions of dollars

25   from Four Star.

26       55.    Defendant Georgina Asset Management LLC ("Georgina") is a Delaware LLC and

27   registered investment adviser officially located at 270 18th Street, Santa Monica, California.

28   Georgina is controlled by Lipp. Georgina claims to actively manage over $86 million in assets.

17

1  Georgina received fees, commissions and kickbacks in return for participating in the conspiracy

2  through Lipp.

3  BENEFICIARIES

4  56.    Each of the transfers made to the foregoing defendant trusts and companies was

5  made, in part, for the benefit of the persons with beneficial interests in those trusts and companies

6  (the "Beneficiaries").  None of the Beneficiaries gave a reasonably equivalent value in exchange

7  for the benefit received by the transfer.

8  57.    Defendant Ethel Wolff, the mother of Mark Cohn, is a part-owner of Condor.  The

9  transfers made to Condor were, in part, for her benefit, and she did not provide reasonably

10  equivalent value in exchange.  Defendant Ethel Wolff resides in California.

11  58.    Defendant Steve Cohn, the brother of Mark Cohn, is a part owner of Condor.  The

12  transfers made to Condor were, in part, for his benefit, and he did not provide reasonably

13  equivalent value in exchange.  Defendant Steve Cohn resides in California.

14  59.    Defendant Alexis Cohn, the sister of Mark Cohn, is a part owner of Condor.  The

15  transfers made to Condor were, in part, for her benefit, and she did not provide reasonably

16  equivalent value in exchange.  Defendant Alexis Cohn resides in New York.

17  60.    Plaintiffs are ignorant of the true names of the remaining Beneficiaries.  Plaintiffs

18  therefore sue these persons by the fictitious names of Beneficiary Does 1 through 50 inclusive.

19  Plaintiffs will seek leave of the Court to amend this Complaint to allege their true names and

20  capacities when they are ascertained.

21  FIRST CHARTER BANK

22  61.    Defendant Pacific Western National Bank is a California bank wholly owned and

23  operated by Defendant First Community Bancorp, a holding company.  Defendants Pacific

24  Western National Bank and First Community Bancorp are the surviving entities of a series of

25  S&L mergers involving First Charter Bank, N.A. ("First Charter"), First Professional Bank, N.A.,

26  First Community Bank of the Desert, Rancho Santa Fe National Bank and Pacific Western

27  National Bank.  By way of these mergers, Defendants Pacific Western National Bank and First

28  Community Bancorp succeeded to the liabilities of First Charter.

18

62.     First Charter was a California Bank with offices at 11620 Wilshire Boulevard, Los Angeles—two blocks away from Four Star. Defendant Steven Wade was a First Charter bank officer who directed First Charter clients to invest in 900 Capital and Four Star. Anthony Delfino, a director of First Charter, also solicited investment in Four Star and 900 Capital. The aura of legitimacy that First Charter lent to its agents helped them raise millions for Four Star and 900 Capital.

63.     Four Star and 900 Capital also maintained checking and savings accounts at First Charter. First Charter also held accounts in the name of other supposedly distinct business entities that were dominated by Four Star and its managers, such as Air/Wave Communications. With the knowledge and consent of First Charter, Four Star and 900 Capital used these accounts to perpetrate the fraud on their unwitting investors. Through these accounts, Four Star and 900 Capital paid investors money supposedly generated by profitable operations but in reality financed by new investor money, by the shuffling of funds among First Charter accounts held by different entities run by Four Star's managers, by payments from Cohn or other lawyers' attorney trust accounts, or by private lines of credit maintained by Anson and Garrett at First Charter. In return for its participation in and/or willful ignorance of the obviously fraudulent activity occurring on its books, and in return for helping Four Star and 900 Capital raise millions in investor capital, First Charter received hundreds of thousands of dollars in fees and the benefit of millions of dollars in investor funds.

## GAIL CATO

64.     Defendant Gail Cato ("Cato"), a convicted felon, resides at 1497 John Roberts Road, Morrow, Georgia 30260. Cato dominates and controls Defendant Capital One Investment Group, Inc. ("Capital One"). Capital One received at least $1 million in payments from Four Star. According to Defendants Anson and Garrett, Cato, an accomplice of Cohn, defrauded Four Star of millions of dollars. In Anson and Garrett's lawsuit against Cato, Cato has produced a letter supposedly from "BBVA Banco Francés" in Buenos Aires to "Mrs. Cato" at "Cohn America Co." located at 1497 John Roberts Rd. in Morrow, Georgia. The letter purports to confirm that the bank holds $200,000,000.00 in the name of "COHN AMERICA Co." on behalf

19

1   of "Mrs. Cato," supposedly in relation to the Argentinean deal on which Defendants have blamed

2   the loss of Four Star's assets. Plaintiffs make no allegation about the authenticity of this letter,

3   the corporate existence of "Cohn America Co.", or about any facts relating to the infamous

4   "Argentina deal." Plaintiffs do allege that Cato received at least a million dollars for no

5   legitimate reason and as, indeed, a payment for assisting Defendants in a scheme to hide their

6   misdeeds from investors.

7                               **AGENTS AND CO-ACTORS**

8       65.     The Four Star scheme consisted of an active conspiracy among all of Defendants.

9   At all relevant times, each Defendant was and is the agent of each of the remaining Defendants,

10   and in doing the acts alleged herein, was acting within the course and scope of such agency. Each

11   Defendant ratified and/or authorized the wrongful acts of each of Defendants.

12       66.     Defendants, and each of them, are individually sued as participants and as aiders

13   and abettors in the improper acts, plans, schemes and transactions, to induce the investments and

14   loans that are the subject of this Complaint.

15       67.     Defendants, and each of them, have participated as members of the fraud or acted

16   with or in furtherance of it, or aided or assisted in carrying out its purposes alleged in this

17   Complaint, and have performed acts and made statements in furtherance of the violations and

18   conspiracy.

19                               **OTHER PARTICIPANTS**

20       68.     Except as described herein, Plaintiffs are ignorant of the true names of Defendants

21   sued as Does 1 through 50 inclusive and, therefore, sue these Defendants by such fictitious

22   names. Plaintiffs will seek leave of the Court to amend this Complaint to allege their true names

23   and capacities when they are ascertained.

24       69.     The Four Star fraud required the participation of numerous individuals and entities

25   both to create the illusion of legitimate activity and to siphon off money for the benefit of the

26   named Defendants. Plaintiffs allege that each of these Doe Defendants is responsible in some

27   manner for the acts and occurrences alleged herein, and that Plaintiffs' damages were caused by

28   such Doe Defendants.

<center>20</center>

70.     Moreover, numerous unnamed individuals and entities participated actively during the course of and in furtherance of the conspiracy to defraud Plaintiffs. There was a conspiracy and many acts were done in the course of and in furtherance of the conspiracy by statements, conduct, and intent to defraud. The individuals and entities acted in concert by joint ventures and by acting as agents for principals, in order to advance the objectives of the conspiracy to increase false revenues. The acts were intended to promote the conspiratorial objectives.

## CLASS ACTION ALLEGATIONS

71.     Plaintiffs bring this action as a class action on behalf of all persons from whom Four Star accepted money on the basis of a membership agreement, an arbitrage investment agreement, or a cash flow note. Excluded from the class are Defendants and non-Defendant officers, directors and employees of Defendants.

72.     The class includes hundreds of persons, including hundreds of natural persons located nationwide. The members of the class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

73.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the class which predominate over questions which may affect individual class members include:

    a.  Whether Defendants perpetrated a Ponzi scheme;

    b.  Whether Defendants knew that Four Star was not profitable and was not engaged in safe, well-secured business activities, when they made statements to all class members to the contrary;

    c.  Whether Defendants violated the California Corporations Code;

    d.  Whether Defendants omitted and/or misrepresented material facts in their agreements with and other statements to class members;

    e.  Whether Defendants' statements to class members omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

21

1

       f.   Whether Defendants knew or recklessly disregarded that their statements to class

2

           members were false and misleading;

3

       g.   Whether Defendants breached fiduciary duties and other duties of care owed to

4

           members of the class;

5

       h.   The extent of damage sustained by class members and the appropriate measure of

6

           damages.

7

    74.    Plaintiffs' claims are typical of those of the class because Plaintiffs and the class

8

sustained damages from Defendants' wrongful conduct.

9

    75.    Plaintiffs will adequately protect the interests of the class and have retained

10

counsel who are experienced in class action fraud litigation.  Plaintiffs have no interests which

11

conflict with those of the class.

12

    76.    A class action is superior to other available methods for the fair and efficient

13

adjudication of this controversy.

14

<div align="center">

COUNT ONE
Cal. Corp. Code §§ 25400 and 25401
(Against All Defendants Except the "Beneficiaries")

</div>

15

16

    77.    Defendants, and each of them, acting individually and pursuant to a scheme and

17

conspiracy, directly and indirectly, induced the purchase and retention of the notes and other

18

securities by Plaintiffs by circulating or disseminating, in or from California, information to the

19

effect that Four Star was a successful, growing corporation and falsely reporting profits and

20

business activities of Four Star for the purpose of inducing Plaintiffs to purchase and hold Four

21

Star's notes and other securities.  Defendants knew that their statements were false or misleading

22

in light of the circumstances under which they were made.  Defendants intended that Plaintiffs

23

would be misled and would purchase Four Star notes and other securities based upon false

24

information.  Despite this knowledge, Defendants continued to make the misrepresentations in

25

order to induce Plaintiffs to purchase Four Star notes and other securities.

26

    78.    Defendants, and each of them, are liable under Corporations Code Sections 25500

27

and 25501 for willfully participating in acts or transactions in violation of Corporations Code

28

Sections 25400 and 25401 and/or for knowingly providing substantial assistance to violations of

<div align="center">22</div>

1   Corporations Code Sections 25400 and 25401 in violation of Section 25403. Defendants are

2   therefore liable to Plaintiffs, who purchased Four Star's notes and other securities at a price

3   affected by Defendants' acts, for damages sustained as a result of such violations.

4         79.   Pursuant to California Corporations Code Section 25504, Defendants, and each of

5   them, are also liable as control persons, officers, principals, employees, broker-dealers and/or

6   agents who provided material aid to a person liable under Section 25501.

7         80.   Plaintiffs are entitled to prejudgment interest at the legal rate on their economic

8   damages.

9        WHEREFORE, Plaintiffs pray for relief as set forth below.

10
<div align="center">

**COUNT TWO**
Fraud, Deceit and Concealment
(Against All Defendants Except the "Beneficiaries")
</div>

11

12        81.   Over the course of its operating history, Defendants made multiple false

13  representations to Plaintiffs that:

14          a.   Four Star was a legitimate company;

15          b.   Four Star was profitable;

16          c.   Because Four Star was profitable, Four Star was able to distribute regular

17            "interest payments" to Plaintiffs and pay high annual rates of return;

18          d.   Plaintiffs' money was "safe."

19        82.   These false representations were made in the agreements and materials circulated

20  to Plaintiffs, in telephone conversations, emails and in-person communication.

21        83.   From time to time, Defendants made many more fraudulent statements to Plaintiffs

22  about the non-existent operations of Four Star.

23        84.   Defendants made these statements knowing they were false and intending

24  Plaintiffs to rely on them.

25        85.   Plaintiffs reasonably relied on these representations to transfer funds to Four Star.

26        86.   Every Defendant conspired in and aided and abetted the scheme to defraud

27  Plaintiffs, by providing knowing and substantial assistance to the fraud.

28        87.   As a result, Plaintiffs have suffered extensive losses of both principal and interest

<div align="center">23</div>

1    with respect to Four Star.

2        WHEREFORE, Plaintiffs pray for relief as set forth below.

3                              COUNT THREE
                          Breach of Fiduciary Duty
4              (Against All Defendants Except the "Beneficiaries")

5        88.    As directors, executives and/or "managing members" of Four Star, Defendants

6    Cohn, Anson, Garrett and Wade, and each of them, owed fiduciary duties to Plaintiffs. Each of

7    these Defendants assumed, and exploited, a special relationship of knowledge and trust by which

8    they undertook to "manage" the funds they solicited for Four Star.

9        89.    Defendants Cohn, Anson and Garrett expressly assumed fiduciary duties to

10   Plaintiffs in the constituent documents of Four Star.

11       90.    As an agent, consultant, and de facto manager of Four Star, Defendant Lipp

12   assumed fiduciary duties to Plaintiffs. Defendants, including First Charter, also owed fiduciary

13   duties to some Plaintiffs by virtue of their positions as accountants, attorneys and investment

14   advisers to those Plaintiffs.

15       91.    These Defendants breached these duties by lying to Plaintiffs about the nature of

16   Four Star and by appropriating their money as part of an elaborate Ponzi scheme.

17       92.    Every Defendant knowingly and intentionally conspired and/or aided and abetted

18   the aforementioned breaches of fiduciary duty. With full knowledge of the fiduciary duties owed,

19   they knowingly and substantially assisted the breach of those duties through making or assisting

20   in fraudulent misrepresentations, by raising money for the fraudulent scheme, and/or by

21   participating in the transfers of assets needed to perpetrate the fraud.

22       93.    Plaintiffs were damaged as a direct and proximate result.

23       WHEREFORE, Plaintiffs pray for relief as set forth below.

24                              COUNT FOUR
                        Cal. Bus. & Prof. Code § 17200
25             (Against All Defendants Except the "Beneficiaries")

26       94.    Defendants have engaged in fraudulent, unfair and illegal conduct in violation of

27   Cal. Bus. Prof. Code § 17200. Defendants' conduct was substantially injurious to Plaintiffs.

28       95.    Defendants' business acts and practices, as alleged herein, constituted and

                                    24

1   constitute a continuous and continuing course of conduct of unfair competition by means of

2   unfair, unlawful and/or fraudulent business acts or practices in violation of the foregoing statute,

3   including, but in no way limited to, the following:

4             a.   the violations of the securities laws as set forth above are unlawful;

5             b.   Defendants' business acts and practices are unfair in that they induced investors,

6                  including Plaintiffs, to purchase and retain the notes and other securities issued by

7                  Four Star based upon false, misleading statements disseminated by Defendants

8                  with full knowledge that the statements were false and misleading.

9        96.   Defendants' business acts and practices, as alleged herein, have caused Plaintiffs

10   to purchase and retain the notes and other securities and suffer losses as a result thereof.

11        97.   Plaintiffs are entitled to full relief, including full restitution and/or disgorgement of

12   all revenues, earnings, profits, compensation and benefits which may have been obtained by

13   Defendants as a result of such business, acts or practices, and enjoining Defendants to cease and

14   desist from engaging in the practices described herein.

15        WHEREFORE, Plaintiffs pray for relief as set forth below.

16                              COUNT FIVE
                           Negligent Misrepresentation
17              (Against All Defendants Except the "Beneficiaries")

18        98.   Defendants made numerous representations to Plaintiffs, detailed above, in order

19   to solicit money on behalf of Four Star.

20        99.   Defendants owed a duty of care to Plaintiffs by virtue of their positions in Four

21   Star; by virtue of their status as accountants or advisers to Plaintiffs; by virtue of their relationship

22   to Four Star, including as banks and salesmen; and because they undertook to "manage"

23   Plaintiffs' funds.

24        100.  These representations were made without a reasonable belief that the information

25   they communicated to Plaintiffs was true.

26        101.  Plaintiffs reasonably relied on the accuracy of these representations, to their

27   financial detriment.

28        102.  Every Defendant knowingly and intentionally conspired and/or aided and abetted

                                        25

1   the aforementioned breaches of duty.  With full knowledge of the duties owed, they knowingly

2   and substantially assisted the breach of those duties through making or assisting in

3   misrepresentations, by raising money for the scheme, and/or by participating in the transfers of

4   assets needed to perpetrate the it.

5          WHEREFORE, Plaintiffs pray for relief as set forth below.

6                                   COUNT SIX
                                   Negligence
7          (Against All Defendants Except the "Beneficiaries")

8          103.    As a result of their positions at Four Star; their status as accountants or advisers to

9   Plaintiffs; their relationship with Four Star, including banking and agency relationships; and their

10  representations to Plaintiffs, each of Defendants assumed and owed Plaintiffs a duty of reasonable

11  care.

12         104.    Defendants should have reasonably foreseen that the failure to exercise due care

13  would damage Plaintiffs.

14         105.    Defendants did in fact breach their duties of care by negligently managing Four

15  Star and by negligently failing to investigate and understand the nature of Four Star's true

16  activities.

17         106.    Plaintiffs have been damaged as a direct and proximate result.

18         107.    Every Defendant knowingly and intentionally conspired and/or aided and abetted

19  the aforementioned breaches of duty.  With full knowledge of the duties owed, they knowingly

20  and substantially assisted the breach of those duties through making or assisting in

21  misrepresentations, by raising money for the scheme, and/or by participating in the transfers of

22  assets needed to perpetrate the it.

23         WHEREFORE, Plaintiffs pray for relief as set forth below.

24

25                                COUNT SEVEN
                   Fraudulent Conveyance (Civil Code § 3439)

26         108.    Each of Defendants Anson, Garrett, Lipp, Wade and Cohn transferred money into

27  entities, including their Defendant family trusts and companies, for the purpose of delaying,

28  hindering and defrauding their creditors.  Some of these transfers were made directly from Four

                                          26

1   Star to the Defendant entities. The transfers were for the benefit not only of the trusts and

2   companies themselves, but were also for the benefit of the Beneficiaries.

3       109.    Each of Defendants Anson, Garrett, Lipp, Wade and Cohn was insolvent at the

4   time of these transfers, in that the claims against them, by both Plaintiffs and others, dwarfed their

5   remaining assets.

6       110.    None of Defendants Anson, Garrett, Lipp, Wade and Cohn received a reasonably

7   equivalent value in exchange for any of these transfers.

8       111.    Each of them was engaged in a business for which his remaining assets were

9   unreasonably small in relation to the business or transaction.

10      112.    Each of them intended to incur, or believed or reasonably should have believed

11  that he would incur, debts beyond his ability to pay as they became due.

12      WHEREFORE, Plaintiffs pray for relief as set forth below.

13                              PRAYER FOR RELIEF

14  For Defendants' various acts of wrongdoing, Plaintiffs seek the following relief:

15      A.  Damages in an amount to be proven at trial;

16      B.  Punitive damages;

17      C.  Interest;

18      D.  Attorneys' fees;

19      E.  Accounting;

20      F.  Disgorgement; and

21      G.  Constructive trust;

22      In addition to whatever other legal and equitable relief the Court shall deem just and

23  proper.

24  Dated: May 21, 2004                    BOIES, SCHILLER & FLEXNER LLP

25

26                                          By: _Brendan Glac__

27                                              Brendan Glackin

28

                                   27

GILBERT ET AL. V. COHN ET AL., NO. BC 310 846
AMENDED COMPLAINT

1

## JURY DEMAND

2     Plaintiffs demand a jury trial on all issues so triable.

3     Dated: May 21, 2004

BOIES, SCHILLER & FLEXNER LLP

4

5     By: *Brendan Glac*

6     Brendan Glackin

7     STEVEN C. HOLTZMAN
      BRENDAN GLACKIN
8     KEVIN BARRY
      1999 Harrison Street, Suite 900
9     Oakland, California  94612
      Telephone: (510) 874-1000
10    Facsimile: (510) 874-1460

11    Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28

1

2    I am employed in the County of Alameda, State of California; I am over the age of eighteen years
     and am not a party to this action; my business address is 1999 Harrison Street, Suite 900,

3    Oakland, California, 94612, in said County and State; on May 21, 2004, I served the within
     AMENDED CLASS ACTION COMPLAINT to the persons named below at the addresses

4    indicated:

5
     John K. Rubiner, Esq.                                      Attorney for Defendants Ron Anson,
6    Bird, Marella, Boxer & Wolpert                             Jack Garrett, and Anson, Garrett & Co.
     1875 Century Park East, 23rd Floor
7    Los Angeles, California 90067-2561
     Telephone: (310) 201-2100
8    Facsimile: (310) 201-2110

9    John Gordon, Esq.                                          Attorneys for Robert Lipp and Georgina
     Quinn Emanuel Urquhart Oliver & Hedges, LLP                Asset Management
     865 South Figueroa Street, 10th Floor
10   Los Angeles, California 90017
     Telephone: (213) 624-7707
11   Facsimile: (213) 624-0643

12   Claudia M. Palencia, Esq.                                  Attorney for Plaintiff Norman Rips, in
     619 North Seward Street                                    Case No. SC078189
13   Los Angeles, CA 90004
     Phone: (310) 490-9615

14   Miles Archer Woodief, Esq.                                 Attorney for Defendant Mark F. Cohn
     775 East Blithedale, Suite 514
15   Mill Valley, CA 94941
     Phone: (415) 730-3032
16   Fax: (415) 449-3569

17   Michael Plonsker, Esq.                                     Attorneys for Plaintiff Michael Plonsker,
     Alschuler Grossman Stein & Kahan LLP                       In Propria Persona, and Plaintiff Lisa
18   The Water Garden                                           Plonsker, in Case No. SC079281
     1620 26th Street
19   Fourth Floor, North Tower
     Santa Monica, CA 90404-4060
20   Phone: (310) 907-1000
     Fax: (310) 907-2000

21   Brent Parker, Esq.                                         Attorneys for FSF, LLC
     Spolin, Silverman Cohen & Bartlett LLP
22   1620 26th Street, Suite 2000 North
     Santa Monica, CA 90404
23   Phone: (310) 576-1221
     Fax: (310) 586-2444
24
     William D. Locher, Esq.                                    Attorneys for Plaintiff Alan D. Shapiro,
25   Kathy Thong, Esq.                                          in Case No. BC306165
     Gibbs, Giden, Locher & Turner LLP
26   2029 Century Park East, 34th Floor
     Los Angeles, CA 90067-3039
27   Phone: (310) 552-3400
     Fax: (310) 552-0805

28

                                                29
     GILBERT ET AL. V. COHN ET AL., NO. BC 310 846
     AMENDED COMPLAINT

1    ☑    <u>BY FIRST CLASS MAIL</u>:  I placed a true copy in a sealed envelope addressed
2    as indicated above, on the above-mentioned date.  I am familiar with the firm's
practice of collection and processing correspondence for mailing.  It is
3    deposited with the U.S. Postal Service on that same day in the ordinary course
of business.  I am aware that on motion of party served, service is presumed
4    invalid if postal cancellation date or postage meter date is more than one day
after date of deposit for mailing in affidavit.
5

6    ☐    <u>BY PERSONAL SERVICE</u>:  I placed a true copy in a sealed envelope
7    addressed to each person[s] named at the address[es] shown and giving same to
a messenger for personal delivery before 5:00 p.m. on the above-mentioned
8    date.

9    ☑    <u>BY FACSIMILE</u>:  From facsimile machine telephone number (510) 874-1460,
10    on the above-mentioned date, I served a full and complete copy of the above-
referenced document[s] by facsimile transmission to the person[s] at the
11    number[s] indicated.
12

13    ☐    <u>BY FEDERAL EXPRESS NEXT DAY AIR</u>:  I placed a true copy in a sealed
14    envelope addressed as indicated above, on the above-mentioned date.  I am familiar
with the firm's practice of collection and processing correspondence for delivery by
15    Federal Express.  Pursuant to that practice, envelopes placed for collection at
designated locations during designated hours are delivered to Federal Express with a
16    fully completed airbill, under which all delivery charges are paid by Boies, Schiller &
Flexner LLP, that same day in the ordinary course of business.

17    ☑    (STATE)    I declare under penalty of perjury under the laws of the State of
18    California that the above is true and correct and that the foregoing
document(s) were printed on recycled paper.
19

20    ☐    (FEDERAL)    I declare that I am employed in the office of a member of the bar of
this court at whose direction the service was made.
21

22    Executed on May 21, 2004, at Oakland, California.

23

24

25    Jessica Chavez
26

27

28

30

GILBERT ET AL. V. COHN ET AL., NO. BC 310 846
AMENDED COMPLAINT