Rick Saperstein                    March 14, 2003

1              THE WITNESS:  LLC, I think it's called.

2              MR. GECK:  Q.  And this is a loan that is

3    shown here in the amount of $8,494,501.  Do you see

4    that?

5         A.  Yes.

6         Q.  Is this borrower making any payments on this

7    loan at this time?

8         A.  I'm going to have to defer to Christina on

9    that, because I don't know what's happened since these

10   financial statements that are over --

11        Q.  They are as of December 31, 2001.

12             Ms. Wong, do you know whether any payments

13   are coming from Starlink Communications, LLC?

14             MS. WONG:  No money coming in.

15             MR. GECK:  The paragraph says that

16   management feels security for this loan is adequate.  Do

17   you know what the security is for this loan?

18             MS. WONG:  I do not.

19             MR. GECK:  Q.  Mr. Saperstein, would the

20   management in this sentence refer to Mr. Cohn?

21        A.  Yes.

22        Q.  The next paragraph is called Loan to the

23   Class A Members.  Do you see that?

24        A.  Yes.

25        Q.  Is this the Anson Cohn Garrett loan that we

                                                       200

Rick Saperstein                                    March 14, 2003

1    looked at on the journal ledgers last week?

2         A.   I believe it is, yes.

3         Q.   And Burgess & Company has reported this as a

4    loan to the Class A members.  Do you have any reason to

5    disagree with that?

6         A.   No, I don't have any reason to disagree with

7    that.   It's just I'm still standing by what I tried to

8    communicate to you last week, that it's -- it was purely

9    for the benefit of Four Star.  That there was no direct

10   loan to the Class A members.  And that it was for a

11   transaction purely for the benefit of Four Star.

12         And I think while I can't recall right now,

13   I do believe that the underlying documentation will bear

14   that out.  Why it had to be done this way or shown in

15   the manner that it was, I can't recall at this time.

16   But for one reason or another, this was the form that

17   the transaction had to take and that it was presented

18   as.  I'm confident that there was no loans of money or

19   any other Four Star assets to Class A members.  But for

20   presentation purposes, that's how it had.

21         Q.   Do your work papers contain an explanation

22   of this loan?

23         A.   Perhaps, but I don't recall.  I know I

24   looked at -- I know I looked at -- I looked at some

25   internal Four Star documentation, I would say, I'm

                                                        201

Rick Saperstein                           March 14, 2003

```
 1    trying to recall, maybe an inch or two thick or more
 2    even of documentation to try to get an understanding of
 3    the nature of it.  And ultimately this was the best or
 4    most complete understanding I could get or the most or
 5    the best conclusion I could come to, I guess.
 6              So there are some back-up documents, and
 7    there should be something in my work papers about it, at
 8    least there was that journal entry we kind of referred
 9    to last week that had been -- had to be, the explanation
10    to which had to be truncated in the Four Star general
11    ledger that we read it last week.
12              MR. GECK:  Miles, I know that the Anson Cohn
13    Garrett loan documents were documents that we have
14    prioritized for production this past week but haven't
15    received yet.  Do you know the timing on our receipt of
16    those loan documents?
17              MR. WOODLIEF:  I don't know if they were
18    included with the stuff coming on Wednesday or you'll
19    get them ahead.  I don't know that yet because Nancy
20    hasn't given me an update on that.  She understands
21    through communications with Mr. Cram that it is a
22    priority, and she's trying to locate and obtain those
23    documents so that he can have them.  But I can't sitting
24    here give you a timetable.  I can check with Nancy over
25    the lunch break and perhaps give you an update at that
```

202





COPY FOR YOUR
INFORMATION

## MASTER REVOLVING NOTE

Variable Rate-Maturity Date-Obligatory Advances (Business and Commercial Loans Only)

| AMOUNT | NOTE DATE | MATURITY DATE | TAX IDENTIFICATION # |
|--------|-----------|---------------|----------------------|
| $4,500,000.00 | March 2*, 2002 | March 21, 2003 | 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 |

On the Maturity Date, as stated above, for value received, the undersigned promise(s) to pay to the order of __Comerica__ __Bank-California__ ("Bank"), at any office of the Bank in the State of California, __Four Million Five Hundred Thousand and no/100__ Dollars (U.S.) that portion of it advanced by the Bank and not repaid as later provided) with interest until maturity, whether by acceleration or otherwise, or an Event of Default, as later defined, at a per annum rate equal to the Bank's base rate from time to time in effect __plus__ __0.500__ % per annum and after that at a rate equal to the rate of interest otherwise prevailing under this Note plus 3% per annum (but in no event in excess of the maximum rate permitted by law). The Bank's "base rate" is that annual rate of interest as designated by the Bank and which is changed by the Bank from time to time. Interest rate changes will be effective for interest computation purposes as and when the Bank's base rate changes. Interest shall be calculated on the basis of a 360-day year for the actual number of days the principal is outstanding. Accrued interest on this Note shall be payable on the 21st___ day of each __month__ commencing __April 21, 2002___, until the Maturity Date when all amounts outstanding under this Note shall be due and payable in full. If the frequency of interest payments is not otherwise specified, accrued interest on this Note shall be payable monthly on the first day of each month. If any payment of principal or interest under this Note shall be payable on a day other than a day on which the Bank is open for business, then, that payment shall be extended to the next succeeding business day and interest shall be payable at the rate specified in this Note during this extension. A late payment charge equal to 5% of each late payment may be charged on any payment not received by the Bank within 10 calendar days after the payment due date, but acceptance of payment of this charge shall not waive any Default under this Note.

The principal amount payable under this Note shall be the sum of all advances made by the Bank to or at the request of the undersigned, less principal payments actually received in cash by the Bank. The books and records of the Bank shall be the best evidence of the principal amount and the unpaid interest amount owing at any time under this Note and shall be conclusive absent manifest error. No interest shall accrue under this Note until the date of the first advance made by the Bank; after that interest on all advances shall accrue and be computed on the principal balance outstanding from time to time under this Note until the same is paid in full.

This Note and any other indebtedness and liabilities of any kind of the undersigned (or any of them) to the Bank, and any and all modifications, renewals or extensions of it, whether joint or several, contingent or absolute, now existing or later arising, and however evidenced (collectively "indebtedness") are secured by and the Bank is granted a security interest in all items deposited in any account of any of the undersigned with the Bank and by all proceeds of these items (but not in the possession of the Bank), and by all proceeds of any of the undersigned from time to time with the Bank, by all property of the undersigned from time to time in the possession of the Bank and by any other collateral, rights and properties described in each and every deed of trust, mortgage, security agreement, pledge, assignment and other security or collateral agreement which has been, or will at any time(s) later be, executed by any (or all) of the undersigned to or for the benefit of the Bank (collectively "Collateral"). Notwithstanding the above, (i) to the extent that any portion of the indebtedness is a consumer loan, that portion shall not be secured by any deed of trust or mortgage on or other security interest in any of the undersigned's principal dwelling or any of the undersigned's real property which is not a purchase money security interest as to that portion, unless expressly provided for to the contrary in another place, or (ii) if the undersigned (or any of them) has(have) given or give(s) Bank a deed of trust or mortgage covering real property, that deed of trust or mortgage shall not secure this Note or any other indebtedness of the undersigned (or any of them), unless expressly provided to the contrary in another place.

If the undersigned (or any of them) or any guarantor under a guaranty of all or part of the indebtedness ("guarantor") (i) fail(s) to pay any of the indebtedness when due, by maturity, acceleration or otherwise, or fail(s) to pay any indebtedness owing on a demand basis upon demand; or (ii) fail(s) to comply with any of the terms or provisions of any agreement between the undersigned (or any of them) or any such guarantor and the Bank; or (iii) become(s) insolvent or the subject of a voluntary or involuntary proceeding in bankruptcy, or a reorganization, arrangement or creditor composition proceeding, (if a business entity) cease(s) doing business as a going concern, (if a natural person) die(s) or become(s) incompetent, (if a partnership) dissolve(s) or any general partner of it dies, becomes incompetent or becomes the subject of a bankruptcy proceeding or (if a corporation or a limited liability company) is the subject of a dissolution, merger or consolidation; or (a) if any warranty or representation made by any of the undersigned or any guarantor in connection with this Note or any of the indebtedness shall be discovered to be untrue or incomplete; or (b) if there is any termination, notice of termination, or breach of any guaranty, pledge, collateral assignment or subordination agreement relating to all or any part of the indebtedness; or (c) if there is any failure by any of the undersigned or any guarantor to pay when due any of its indebtedness (other than to the Bank) or in the observance or performance of any term, covenant or condition in any document evidencing, securing or relating to such indebtedness; or (d) if the Bank deems itself insecure believing that the prospect of payment of this Note or any of the indebtedness is impaired or shall have deterioration, removal or waste of any of the Collateral; or (e) if there is filed or issued a levy or writ of attachment or garnishment or other like judicial process upon the undersigned (or any of them) or any guarantor or any of the Collateral, including, without limit, any accounts of the undersigned (or any of them) or any guarantor with the Bank, then the Bank, upon the occurrence of any of these events (each a "Default"), may at its option and without prior notice to the undersigned (or any of them), declare any or all of the indebtedness to be immediately due and payable (notwithstanding any provisions contained in the evidence of it to the contrary), cease advancing money or extending credit to or for the benefit of the undersigned under this Note or any other agreement between the undersigned and Bank, terminate this Note as to any future liability or obligation of Bank, but without affecting Bank's rights and security interests in any Collateral and the indebtedness of the undersigned to Bank, and set or liquidate all or any portion of the Collateral, set off against any indebtedness any amounts owing by the Bank to the undersigned (or any of them), charge interest at the default rate provided in the document evidencing the relevant indebtedness and exercise any one or more of the rights and remedies granted to the Bank by any agreement with the undersigned (or any of them) or given to it under applicable law. In addition, if this Note is secured by a deed of trust or mortgage covering real property, the trustor or mortgagor shall not mortgage or pledge the mortgaged premises as security for any other indebtedness or obligations. This Note, together with all other indebtedness secured by said deed of trust or mortgage, shall become due and payable immediately, without notice, at the option of the Bank, (a) if said trustor or mortgagor shall mortgage or pledge the mortgaged premises or any other indebtedness or obligation or shall convey, assign or transfer the mortgaged premises by deed, installment sale contract instrument, or (b) if this title to the mortgaged premises shall become vested in any other person or party in any manner whatsoever; or (c) if there is any disposition (through one or more transactions) of legal or beneficial title to a controlling interest of said trustor or mortgagor. All payments under this Note shall be in immediately available United States funds, without setoff or counterclaim.

If this Note is signed by two or more parties (whether by all as makers or by one or more as an accommodation party or otherwise), the obligations and undertakings under this Note shall be that of all and any two or more jointly and also of each severally. This Note shall bind the undersigned, and the undersigned's respective heirs, personal representatives, successors and assigns.

The undersigned waive(s) presentment, demand, protest, notice of dishonor, notice of demand or intent to demand, notice of acceleration or intent to accelerate, and all other notices and agree(s) that no extension or indulgence to the undersigned (or any of them) or release, substitution or nonenforcement of any security, or release or substitution of any of the undersigned, any guarantor or any other party, whether with or without notice, shall affect the obligations of any of the undersigned. The undersigned waive(s) all other suretyship defenses or right to discharge available under Section 3-605 of the California Uniform Commercial Code and waive(s) all other suretyship defenses or right to discharge. The undersigned agree(s) that the Bank has the right to sell, assign, or grant participations, or any interest, in any or all of the indebtedness, and that, in connection with this right, but without limiting its ability to make other disclosures to the full extent allowable, the Bank may disclose all documents and information which the Bank now or later has relating to the undersigned or the indebtedness. The undersigned agree(s) that the Bank may provide information relating to the Note or to the undersigned to the Bank's parent, affiliates, subsidiaries and service providers.

CA 00194.1 (4-2000)

The undersigned agree(s) to reimburse the holder or owner of this Note for any and all costs and expenses (including without limit, court costs, legal expenses and reasonable attorney fees, whether inside or outside counsel is used, whether or not suit is instituted and, if suit is instituted, whether at the trial court level, appellate level, in a bankruptcy, probate or administrative proceeding or otherwise) incurred in collecting or attempting to collect this Note or incurred in any other matter or proceeding relating to this Note.

The undersigned acknowledge(s) and agree(s) that there are no contrary agreements, oral or written, establishing a term of this Note and agree(s) that the terms and conditions of this Note may not be amended, waived or modified except in a writing signed by an officer of the Bank expressly stating that the writing constitutes an amendment, waiver or modification of the terms of this Note. As used in this Note, the word "undersigned" means, individually and collectively, each maker, accommodation party, indorser and other party signing this Note in a similar capacity. If any provision of this Note is unenforceable in whole or part for any reason, the remaining provisions shall continue to be effective. THIS NOTE IS MADE IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES.

The maximum interest rate shall not exceed the highest applicable usury ceiling.

THE UNDERSIGNED AND THE BANK ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED. EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS NOTE OR THE INDEBTEDNESS.

This Note is subject to the provisions of the Letter Agreement dated March 21, 2002 and all amendments thereto and replacements therefor.

INITIAL HERE_____

COPY FOR YOUR
INFORMATION

Ronald I. Anson
OBLIGOR NAME TYPED/PRINTED          SIGNATURE

Jack Garrett
OBLIGOR NAME TYPED/PRINTED          SIGNATURE

C/o Anson, Garrett & Co.
11755 Wilshire Blvd., Ste. 1350          Los Angeles          CA          USA          90025
STREET ADDRESS                           CITY        STATE    (COUNTRY)    ZIP CODE

| For Bank Use Only | | CCAR # | | | |
|---|---|---|---|---|---|
| Loan Officer Initials AT | Loan Group Name Private Banking · Beverly Hills | Obligor(s) Name Ronald I. Anson | | | |
| Loan Officer I.D. No 49007 | Loan Group No. 97328 | Obligor # | Note # | Amount $4,500,000.00 | |

CA 00184.1 (4-2000)

ComericA

COPY FOR YOUR
INFORMATION

March 21, 2002

Ronald I . Anson
Jack E. Garrett
c/o Anson, Garret & Co.
11755 Wilshire Blvd., Ste 1350
Los Angeles, CA 90025

This Letter Agreement dated March 21, 2002, is attached to and incorporated in that certain Master Revolving Note ("Note") of even date by and between Comerica Bank-California ("Bank") and Ronald I. Anson and Jack Garrett herein jointly and severally, individually and collectively referred to as Borrower ("Borrower") to the same extent and as though fully set forth therein  All capitalized terms not otherwise defined in this Letter Agreement shall have the same meaning as set forth in the Note.

Borrower acknowledges and agrees to the following terms and conditions:

1.    Borrower shall provide to Bank the following reports:

    a.    Copies of federal income tax returns (with all forms K-1 attached) of Borrower within thirty (30) days of filing each year.

    b.    Personal financial statement of Borrower in a form satisfactory to Bank on an annual basis.

2.    Borrower further agrees as follows:

    a.    The Borrowers agree to maintain unencumbered liquid assets equal to at least 150% of the principal amount outstanding under that certain Master Revolving Note dated March 21, 2002 by and among the Bank and the Borrowers.  As used herein, "liquid assets" shall mean each Borrower's cash and marketable securities.

       Within 15 days of each quarter end, the Borrowers shall provide to the Bank copies of statements from depository institutions or brokerage firms, or other evidence acceptable to the Bank of the Borrower's liquid assets.

    b.    The Borrowers agree to maintain at all times, cash deposits with the Bank equal to at least One Million Dollars ($1,000,000).

    c.    Borrower acknowledges and agrees that the credit facility(ies) referenced herein may be evidenced by a demand note(s) which is payable upon demand.  Nothing in this Letter Agreement is intended to nor shall be deemed to change the demand nature of any credit facility.  The purpose of this Letter Agreement is to provide a means for Bank to monitor the credit facility and demand may, therefore, be made even if the Borrower is in compliance with each and every provision of this Letter Agreement or the Note(s).



March 21, 2002

Ronald L. Anson
Jack E. Garrett
c/o Anson, Garret & Co.
11755 Wilshire Blvd., Ste 1350
Los Angeles, CA 90025

This Letter Agreement dated March 21, 2002, is attached to and incorporated in that certain Master Revolving Note ("Note") of even date by and between Comerica Bank-California ("Bank") and Ronald I. Anson and Jack Garrett herein jointly and severally, individually and collectively referred to as Borrower ("Borrower") to the same extent and as though fully set forth therein. All capitalized terms not otherwise defined in this Letter Agreement shall have the same meaning as set forth in the Note.

Borrower acknowledges and agrees to the following terms and conditions:

1.    Borrower shall provide to Bank the following reports:

    a    Copies of federal income tax returns (with all forms K-1 attached) of Borrower within thirty (30) days of filing each year.

    b.    Personal financial statement of Borrower in a form satisfactory to Bank on an annual basis.

2.    Borrower further agrees as follows:

    a.    The Borrowers agree to maintain unencumbered liquid assets equal to at least ~~110%~~ *100% RA* of the principal amount outstanding under that certain Master Revolving Note dated March 21, 2002 by and among the Bank and the Borrowers. As used herein, "liquid assets" shall mean each Borrower's cash and marketable securities.

        Within 15 days of each quarter end, the Borrowers shall provide to the Bank copies of statements from depository institutions or brokerage firms, or other evidence acceptable to the Bank of the Borrower's liquid assets.

    b.    The Borrowers agree to maintain at all times, cash deposits with the Bank equal to at least ~~One Million Dollars ($1,000,000)~~ *1,500,000 RA*

    c.    Borrower acknowledges and agrees that the credit facility(ies) referenced herein may be evidenced by a demand note(s) which is payable upon demand. Nothing in this Letter Agreement is intended to nor shall be deemed to change the demand nature of any credit facility. The purpose of this Letter Agreement is to provide a means for Bank to monitor the credit facility and demand may, therefore, be made even if the Borrower is in compliance with each and every provision of this Letter Agreement or the Note(s).

IN WITNESS WHEREOF, the parties have agreed to the foregoing as of the date first set forth above.

Comerica Bank-California

By: _Alan Twedt_

Alan Twedt, Vice President

**COPY FOR YOUR INFORMATION**

ACKNOWLEDGED AND ACCEPTED on the _____ day of ____. _____.

By:_____

      Ronald I. Anson

By:_____

      Jack E. Garrett

 **Comerica**

## Automatic Loan Payment Authorization

COPY FOR Y.
INFORMATION

Date: ___March 21, 2002___

Obligor Name (Typed or Printed): Ronald I. Anson and Jack Garrett

Obligor Number: _____    Lender's Cost Center #: 97320

Address: c/o Anson, Garrett & Co.
11755 Wilshire Blvd., Ste 1350    Los Angeles    CA    USA    90025
STREET ADDRESS    CITY    STATE    COUNTRY    ZIP CODE

The undersigned hereby authorizes Comerica Bank-California ("Bank") to charge the account designated below for the payments due on the loan(s) as designated below and all renewals, extensions, modifications and/or substitutions thereof. This authorization will remain in effect unless the undersigned requests a modification that is agreed to by the Bank in writing. The undersigned remains fully responsible for all amounts outstanding to Bank if the designated account is insufficient for repayment.

[x] Automatic Payment Authorization for **all** payments **on all current and future borrowings**, as and when such payments come due (which payments include, without limitation, principal, interest, fees, costs, and expenses).

[ ] Automatic Payment Authorization for **all** payments **on only the specific borrowing identified below**, as and when such payments come due (which payments include, without limitation, principal, interest, fees, costs, and expenses).

Specific Obligation Number: _____

[ ] Automatic Payment Authorization for **less than all** payments **on only the specific borrowing identified below**, as and when such payments come due.

Specific Obligation Number: _____

[ ] Principal and Interest payments only

[ ] Principal payments only

[ ] Interest payments only

[ ] SPECIAL INSTRUCTIONS/IRREGULAR PAYMENT INSTRUCTIONS

_____
_____
_____
_____

**Payment Due Date:** Your loan payments will be charged to your account as indicated above on the dates such payments become due (or on a date thereafter when there are available funds) unless that day is a Saturday, Sunday, or Bank holiday in which case such payments will be charged on the following business day, with interest to accrue during this extension as provided under the loan documents.

Account to be Charged..
[x] Checking Comerica Bank-California.    Comerica Account No. 1891515213
[ ] Savings    Comerica Account No. _____
Number of lead days to issue billing _____

(Charges to account are withdrawals pursuant to account resolution)

Ronald I. Anson
OBLIGOR NAME TYPED/PRINTED    SIGNATURE

Jack Garrett
OBLIGOR NAME TYPED/PRINTED    SIGNATURE

CP00193 (3-01)    Bank Copy



## Automatic Loan Payment Authorization

COPY FOR YOUR INFORMATION

Date: __March 21, 2002__

Obligor Name (Typed or Printed): __Ronald I. Anson and Jack Garrett__ _____ $_____

Obligor Number: _____    Lender's Cost Center #: __97328__ _____
Address: __11755 Wilshire Blvd., Ste 1350___ __Los Angeles___ __CA___ __USA___ __90025__
C/o Anson, Garrett & Co.
STREET ADDRESS          CITY          STATE   COUNTRY   ZIP CODE

The undersigned hereby authorizes Comerica Bank-California _____ ("Bank") to charge the account designated below for the payments due on the loan(s) as designated below and all renewals, extensions, modifications and/or substitutions thereof. This authorization will remain in effect unless the undersigned requests a modification that is agreed to by the Bank in writing. The undersigned remains fully responsible for all amounts outstanding to Bank if the designated account is insufficient for repayment.

[x]  Automatic Payment Authorization for all payments on all current and future borrowings, as and when such payments come due (which payments include, without limitation, principal, interest, fees, costs, and expenses).
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
[ ]  Automatic Payment Authorization for all payments on only the specific borrowing identified below, as and when such payments come due (which payments include, without limitation, principal, interest, fees, costs, and expenses).

Specific Obligation Number: _____
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
[ ]  Automatic Payment Authorization for less than all payments on only the specific borrowing indentified below, as and when such payments come due.

Specific Obligation Number: _____  _____

[ ]  Principal and interest payments only

[ ]  Principal payments only

[ ]  Interest payments only

[ ]  SPECIAL INSTRUCTIONS/IRREGULAR PAYMENT INSTRUCTIONS

_____

_____

_____

_____

**Payment Due Date:** Your loan payments will be charged to your account as indicated above on the dates such payments become due (or on a date thereafter when there are available funds) unless that day is a Saturday, Sunday, or Bank holiday in which case such payments will be charged on the following business day, with interest to accrue during this extension as provided under the loan documents.

**Account to be Charged:**
[x]  Checking  Comerica Bank-California _____   Comerica Account No. _____
[ ]  Savings   _____   Comerica Account No. _____
Number of lead days to issue billing _____

(Charges to account are withdrawals pursuant to account resolution)

__Ronald I. Anson__
OBLIGOR NAME TYPED/PRINTED          SIGNATURE


__Jack Garrett__
OBLIGOR NAME TYPED/PRINTED          SIGNATURE



**Borrower's Authorization**

COPY FOR YOUR INFORMATION

Date: ___March 21, 2002___

I (we) hereby authorize and direct ___Comerica Bank-California___      ("Bank") to pay

to __P/O existing $700K & $2.5MM 0326910784__ _____    $ _____

to _____    $ _____

to _____    $ _____

to _____    $ _____

of the proceeds of my (our) loan from the Bank evidenced by a note in the original principal amount of:

$ ___4,500,000.00_____ ,    dated __March 21, 2002___

Borrower(s):

__Ronald I. Anson_____
OBLIGOR NAME TYPED/PRINTED          SIGNATURE

__Jack Garrett_____
OBLIGOR NAME TYPED/PRINTED          SIGNATURE

CP 00184 (5-85)

**Comerica**

COPY FOR YOUR INFORMATION

## Borrower's Telephone and Facsimile Authorization

Obligor Number: _____     Date: March 21, 2002 _____

Assignment Unit: 97328 _____     Obligation Number: _____

The undersigned confirms certain borrowing arrangements pursuant to and subject to the terms of the $4,500,000.00 _____ Note, and all renewals, extensions, modifications, and/or substitutions thereof (the "Note") dated March 21, 2002 _____ , executed and delivered by the undersigned to Comerica Bank-California _____ ("Bank").

Until notice to the contrary to the undersigned, Bank has agreed that advances under the Note may be requested from time to time at the discretion of the undersigned by telephone or facsimile transmission. Upon timely receipt of such telephone request or facsimile transmission from the undersigned, Bank is authorized to lend and credit the next banking day if credit to another financial institution) such sums of money as requested to any of the following accounts or any other account with Bank designated by the undersigned (together with the Security Code) (such account(s) referred to as "Designated Account(s)"):

| Financial Institution Name | Account Number | Transit Number |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

If there is a Security Code assigned below or under the Comerica Flexline System, Bank may rely on receipt of the Security Code as proof that the caller or sender is authorized to make the request for advance, repayment, or change of Security Code.

The undersigned acknowledges that borrowings under the Note may be repaid from time to time at the election of the undersigned, but subject to the terms of the Note and any related agreement with Bank, upon receipt of instructions to do so sent from the undersigned to Bank by telephone or facsimile transmission (together with the Security Code and the Designated Account(s)). Repayment may be effected (in whole or in part) by debiting any account designated above (or designated in compliance with the above paragraph) in accordance with the undersigned's instructions (together with the Security Code). The undersigned shall remain fully responsible for any amounts outstanding under the Note if the undersigned's accounts with Bank are insufficient for the repayment of the Note. All requests for payments are to be against collected funds.

The undersigned acknowledges that if Bank makes an advance or effects a repayment based on a request made by telephone or facsimile transmission, it shall be for the convenience of the undersigned and all risks involved in the use of this procedure shall be borne by the undersigned, and the undersigned expressly agrees to indemnify and hold Bank harmless therefor. Without limitation of the foregoing, the undersigned acknowledges that Bank shall have no duty to confirm the authority of anyone requesting an advance or repayment by telephone or facsimile transmission, and further that Bank has advised the undersigned to protect and safeguard the Security Code to prevent its unauthorized use. The undersigned assumes any losses or damages whatsoever which may occur or arise out of its failure to protect and safeguard the Security Code or out of its unauthorized use.

Borrower(s): Ronald I. Anson and Jack Garrett _____

Address: C/o Anson, Garrett & Co.
     11755 Wilshire Blvd., Ste 1350     Los Angeles     CA     USA     90025
       STREET ADDRESS            CITY       STATE     COUNTRY     ZIP CODE


Ronald I. Anson
OBLIGOR NAME TYPED/PRINTED        SIGNATURE


Jack Garrett
OBLIGOR NAME TYPED/PRINTED        SIGNATURE


Comerica Flexline customers will enter their Security Code directly into Comerica's Flexline system. For customers desiring to utilize a Security Code outside of the Flexline system, please enter your Security Code below.

Security Code _____

CF00188 (04-01)



## STATEMENT

DATE: March 21, 2002

Ronald I. Anson and Jack Garrett
C/o Anson, Garrett & Co.
11755 Wilshire Blvd., Ste 1350
Los Angeles, CA 90025

Comerica Bank-California
9920 S. La Cienega Blvd., Ste. 628
Inglewood, CA 90301-4423

RE: Fee on $ 4,503,600.00 Note, dated March 21, 2002 , and maturing March 21, 2003 Officer 59007

| | | |
|---|---|---|
| Documentation Fee | $150.00 | |
| **Total Due:** | $150.00 | |

☐   Customer Check Attached

☐   Charge DDA No.

Acknowledged by:

PB NO157A (4/92)



# TRUST CERTIFICATION

Comerica Bank-California
(herein called "Bank")

**COPY FOR YOUR INFORMATION**

**BORROWER:** Ronald I. Anson and Jack Garrett

C/o Anson, Garrett & Co. 11755 Wilshire Blvd., Ste 1350
Los Angeles, CA 90025

Name of Trust (e.g., John and Mary Smith Family Trust Declaration of Trust dated 1/1/90): _Garrett Family Trust_____

_____ (hereinafter the "Trust" or "Trust Agreement"). The undersigned trustee
(hereinafter "Trustee") of the above-referenced Trust, and the undersigned as an individual, hereby certifies as follows:

(Box(es) checked if applicable)

1.  Settlor(s). The name(s) of the settlor(s) of the Trust is/are:_Jack Garrett and Jane Garrett_____

2.  Trustee(s). The name(s) of the currently acting trustee(s) is/are:_Jack Garrett and Jane Garrett_____

3.  Number of Trustees.

    A. ☐ I am the current and sole Trustee of the Trust, and the Trust is in full force and has not been revoked, modified or amended in any manner which would cause the representations herein to be incorrect.

    B. ☒ We are the current and all of the Co-Trustees of the Trust, and the Trust is in full force and has not been revoked, modified or amended in any manner which would cause the representations herein to be incorrect.

    The Trust Agreement provides that _____ of _2___ Co-Trustees is/are the minimum number of trustees required to sign an agreement, document or instrument in order to bind the Trust.

4.  Revocability.

    A. ☒ Revocable. This Trust is a revocable trust. The power to revoke is held by the Trustor(s) named below. No trustor has died.

    Trustor 1._____and 2._____

    B. ☐ Irrevocable. The Trust is an irrevocable trust.

5.  Authorization. As Trustee, I/we have the authority and power to:

    A. ☐ Borrow from Bank on such terms as may be agreed upon with Bank, such sum or sums of money as in my/our judgment should be borrowered and for such purpose as I/we determine to be in the best interest of the Trust (referred to below as the "Loan"or "Loans").

    B. ☐ Execute and deliver a promissory note or notes on behalf of the Trust which evidences a Loan or Loans, on Bank's forms, at a rate of interest and on terms agreed upon with the Bank.

    C. ☐ Execute and deliver to Bank all renewals, extensions, modifications, or substitutions for any and all of the notes or any portion of the notes evidencing a Loan or Loans.

    D. ☐ Mortgage, pledge, hypothecate, or otherwise encumber and deliver to Bank any real or personal property which is owned by the Trust or in which the Trust holds an ownership interest, as security for the repayment of any Loan or Loans and the performance of any obligation by the Trust pursuant to any documents evidencing a Loan or Loans. Execute and deliver to Bank the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements in connection with such mortgage, pledge, hypothecation or other encumbrance.

    E. ☒ Execute and deliver a guaranty on Bank's form therefor, whereby the Trust guarantees any and all obligations of _Ronald I. Anson and Jack Garrett_____to Bank.

    F. ☐ Mortgage, pledge, hypothecate, or otherwise encumber and deliver to Bank any real or personal property which is owned by the trust or in which the Trust holds an ownership interest, as security for the performance by the Trust of its obligations under a guaranty executed by the Trust in favor of Bank, whereby the Trust guaranties any and all obligation of _____ _____to Bank. Execute and deliver to Bank the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements in connection with such mortgage, pledge, hypothecation or other encumbrance.

    G. ☐ Mortgage, pledge, hypothecate, or otherwise encumber and deliver to Bank any real or personal property which is owned by the Trust or in which the Trust holds an ownership interest, as security for the performance of any and all obligations of _____ _____to Bank. Execute and deliver to Bank the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements in connection with such mortgage, pledge, hypothecation or other encumbrance.

    H. ☐ Execute and deliver to Bank the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statement which may be submitted by Bank, and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Bank any other written instruments, or any kind or nature, which he or she may in his or her discretion deem reasonably necessary or proper in connection with or pertaining to the giving of the liens and encumbrances.

COPY F...
INFORMATION

I. ☐ To draw, endorse, and discount with Bank any drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to the Trust, and either to receive cash for the same or to cause such proceeds to be credited to any of the Trust's accounts with Bank or to make such other dispositions of the proceeds as they may deem advisable.

6.    **Co-Trustees.** Where this Certification is signed by Co-Trustees, each Trustee certifies for himself or herself and not for the other(s). References to the singular include the plural.

7.    **Tax Identification Number.** The tax identification number of the Trust is _____.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. (Where co-trustees, all trustees must sign below)

By:_____    _____
      Jack Garrett, Trustee                              Date

By:_____    _____
      Jane Garrett, Trustee                              Date

By:_____    _____
                                                                    Date

By:_____    _____
                                                                    Date

## CERTIFICATE OF ACKNOWLEDGEMENT

STATE OF CALIFORNIA

COUNTY OF_____

On _____before me, _____

personally appeared _____

_____ personally

known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

(SEAL)

_____
(Notary Public's Signature)

_____
(Type or Print Name)



COPY FOR YOUR
INFORMATION

Guaranty

The undersigned, for value received, unconditionally and absolutely guarantee(s) to _ Comerica Bank-California ___ ("Bank") a California banking corporation, and to the Bank's successors and assigns, payment when due, whether by stated maturity, demand, acceleration or otherwise, of all existing and future Indebtedness to the Bank of _Ronald L. Anson and Jack Garrett_____ ("Borrower") or any successor In interest, including without limit any debtor-in-possession or trustee in bankruptcy which succeeds to the interest of this party or person (jointly and severally the "Borrower",however this Indebtedness has been or may be incurred or evidenced, whether absolute or contingent direct or indirect, voluntary or involuntary, liquidated or unliquidated, joint or several, and whether or not known to the undersigned at the time of this Guaranty or at the time any future indebtedness Is incurred (the "Indebtedness").

The indebtedness guaranteed includes without limit: (a) any and all direct indebtedness of the Borrower to the Bank, including indebtedness evidenced by any and all promissory notes; (b) any and all obligations or liabilities of the Borrower to the Bank arising under any guaranty where the Borrower has guaranteed the payment of indebtedness owing to the Bank from a third party; (c) any and all obligations or liabilities of the Borrower to the Bank arising out of any agreement by the Borrower including without limit any agreement to indemnify the Bank for environmental liability or to clean up hazardous waste; (e) any and all indebtedness, obligations or liabilities for which the Borrower would otherwise be liable to the Bank were it not for the invalidity, irregularity or unenforceability of them by reason of any bankruptcy, insolvency or other law or order of any kind, or for any other reason, including without limit liability for interest and attorneys' fees or, or in connection with, any of the Indebtedness from and after the filing by or against the Borrower of a bankruptcy petition whether an involuntary or voluntary bankruptcy case, including, without limitation, all attorneys' fees and costs incurred in connection with motions for relief from stay, cash collateral motions, nondischargeability motions, preference liability motions, fraudulent conveyance liability motions, fraudulent transfer liability motions and all other motions brought by Borrower, Guarantor, Bank or third parties in any way relating to Bank's rights with respect to such Borrower, Guarantor, or third party and/or affecting any collateral securing any obligation owed to Bank by Borrower, Guarantor, or any third party, probate proceedings, on appeal or otherwise; (f) any and all amendments, modifications, renewals and/or extensions of any of the above, including without limit amendments, modifications, renewals and/or extensions which are evidenced by new or additional instruments, documents or agreements; and (g) all costs of collecting Indebtedness, including without limit reasonable attorneys' fees and costs.

The undersigned waive(s) notice of acceptance of this Guaranty and presentment, demand, protest, notice of protest, dishonor, notice of dishonor, notice of default, notice of intent to accelerate or demand payment of any Indebtedness, and diligence in collecting any indebtedness, and agree(s) that the Bank may modify the terms of any indebtedness, compromise, extend, increase, accelerate, renew or forbear to enforce payment of any or all indebtedness, or permit the Borrower to incur additional indebtedness, all without notice to the undersigned and without affecting in any manner the unconditional obligation of the undersigned under this Guaranty. The undersigned further waive(s) any and all other notices to which the undersigned might otherwise be entitled. The undersigned acknowledge(s) and agree(s) that the liabilities created by this Guaranty are direct and are not conditioned upon pursuit by the Bank of any remedy the Bank may have against the Borrower or any other person or any security. No invalidity, irregularity or unenforceability of any part or all of the indebtedness or any documents evidencing the same, by reason of any bankruptcy, insolvency or other law or order of any kind or for any other reason, and no defense or setoff available at any time to the Borrower, shall impair, affect or be a defense or setoff to the obligations of the undersigned under this Guaranty.

The undersigned deliver(s) this Guaranty based solely on the undersigned's independent investigation of the financial condition of the Borrower and is (are) not relying on any information furnished by the Bank. The undersigned assume(s) full responsibility for obtaining any further information concerning the Borrower's financial condition, the status of the Indebtedness or any other matter which the undersigned may deem necessary or appropriate from time to time. The undersigned waive(s) any duty on the part of the Bank, and agree(s) that it is not relying upon nor expecting the Bank to disclose to the undersigned any fact now or later known by the Bank, whether relating to the operations or condition of the Borrower, the existence, liabilities or financial condition of any co-guarantor of the Indebtedness, the occurrence of any default with respect to the Indebtedness, or otherwise, notwithstanding any effect these facts may have upon the undersigned's risk under this Guaranty or the undersigned's rights against the Borrower. The undersigned knowingly accept(s) the full range of risk encompassed in this Guaranty, which risk includes without limit the possibility that the Borrower may incur indebtedness to the Bank after the financial condition of the Borrower, or its ability to pay its debts as they mature, has deteriorated.

The undersigned represent(s) and warrant(s) that: (a) the Bank has made no representation to the undersigned as to the creditworthiness of the Borrower; and (b) the undersigned has (have) established adequate means of obtaining from the Borrower on a continuing basis financial and other information pertaining to the Borrower's financial condition. The undersigned agree(s) to keep adequately informed of any facts, events or circumstances which might in any way affect the risks of the undersigned under this Guaranty.

The undersigned grant(s) to the Bank a security interest in and the right of setoff as to any and all property of the undersigned now or later in the possession of the Bank. The undersigned subordinate(s) any claim of any nature that the undersigned now or later has (have) against the Borrower to and in favor of all indebtedness and agree(s) not to accept payment or satisfaction of any claim that the undersigned now or later may have against the Borrower without the prior written consent of the Bank. Should any payment, distribution, security, or proceeds, be received by the undersigned upon or with respect to any claim that the undersigned now or may later have against the Borrower, the undersigned shall immediately deliver the same to the Bank in the form received (except for endorsement or assignment by the undersigned where required by the Bank) for application on the indebtedness, whether matured or unmatured, and until delivered the same shall be held in trust by the undersigned as the property of the Bank. The undersigned further assign(s) to the Bank as collateral for the obligations of the undersigned under this Guaranty all claims of any nature that the undersigned now or later has (have) against the Borrower (other than any claim under a deed of trust or mortgage covering real property) with full right on the part of the Bank, in its own name or in the name of the undersigned, to collect and enforce these claims.

The undersigned agree(s) that no security now or later held by the Bank for the payment of any indebtedness, whether from the Borrower, any guarantor, or otherwise, and whether in the nature of a security interest, pledge, lien, assignment, setoff, suretyship, guaranty, indemnity, insurance or otherwise, shall affect in any manner the unconditional obligation of the undersigned under this Guaranty, and the Bank in its sole discretion, without notice to the undersigned, may release, exchange, enforce and otherwise deal with any security without affecting in any manner the unconditional obligation of the undersigned under this Guaranty. The undersigned acknowledge(s) and agree(s) that the Bank has no obligation to acquire or perfect any lien on or security interest in any asset(s), whether realty or personalty, to secure payment of the indebtedness, and the undersigned is (are) not relying upon any asset(s) in which the Bank has or may have a lien or security interest for payment of the indebtedness.

The undersigned acknowledge(s) that the effectiveness of this Guaranty is not conditioned on any or all of the Indebtedness being guaranteed by anyone else.

Until the indebtedness is irrevocably paid in full, the undersigned waive(s) any and all rights to be subrogated to the position of the Bank or to have the benefit of any lien, security interest or other guaranty now or later held by the Bank for the indebtedness or to enforce any remedy which the Bank now or later has against the Borrower or any other person. Until the indebtedness is irrevocably paid in full, the undersigned shall have no right of reimbursement, indemnity, contribution or other right of recourse to or with respect to the Borrower or any other person. The undersigned agree(s) to indemnify and hold harmless the Bank from and against any and all claims, actions, damages, costs and expenses, including without limit reasonable attorneys' fees, incurred by the Bank in connection with the

undersigned's exercise of any right of subrogation, contribution, indemnification or recourse with respect to this Guaranty. The Bank has no duty to enforce or protect any rights which the undersigned may have against the Borrower or any other person and the undersigned assume(s) full responsibility for enforcing and protecting these rights.

Notwithstanding any provision of the preceding paragraph or anything else in this Guaranty to the contrary, if any of the undersigned is or becomes an "insider" or "affiliate" (as defined in Section 101 of the Federal Bankruptcy Code, as it may be amended) with respect to the Borrower, then that undersigned irrevocably and absolutely waives any and all rights of subrogation, contribution, indemnification, recourse, reimbursement and any similar rights against the Borrower (or any other guarantor) with respect to this Guaranty, whether such rights arise under an express or implied contract or by operation of law. It is the intention of the parties that the undersigned shall not be (or be deemed to be) a "creditor" (as defined in Section 101 of the Federal Bankruptcy Code, as it may be amended) of the Borrower (or any other guarantor) by reason of the existence of this Guaranty in the event that the Borrower becomes a debtor in any proceeding under the Federal Bankruptcy Code. This waiver is given to induce the Bank to enter into certain written contracts with the Borrower included in the Indebtedness. The undersigned warrant(s) and agree(s) that none of Bank's rights, remedies or interests shall be directly or indirectly impaired because of any of the undersigned's status as an "insider" or "affiliate" of the Borrower, and the undersigned shall take any action, and shall execute any document, which the Bank may request in order to effectuate this warranty to the Bank.

If any Indebtedness is guaranteed by two or more guarantors, the obligation of the undersigned shall be several and also joint, each with all and also each with any one or more of the others, and may be enforced at the option of the Bank against each severally, any two or more jointly, or some severally and some jointly. The Bank, in its sole discretion, may release any one or more of the guarantors for any consideration which it deems adequate, and may fail or elect not to prove a claim against the estate of any bankrupt, insolvent, incompetent or deceased guarantor; and after that, without notice to any other guarantor, the Bank may extend or renew any or all Indebtedness and may permit the Borrower to incur additional Indebtedness, without affecting in any manner the unconditional obligation of the remaining guarantor(s). This action by the Bank shall not, however, be deemed to affect any right to contribution which may exist among the guarantors.

Any of the undersigned may terminate their obligation under this Guaranty as to future Indebtedness (except as provided below) by (and only by) delivering written notice of termination to an officer of the Bank and receiving from an officer of the Bank written acknowledgement of delivery; provided, the termination shall not be effective until the opening of business on the fifth (5th) day following written acknowledgement of delivery. Any termination shall not affect in any way the unconditional obligations of the remaining guarantor(s), whether or not the termination is known to the remaining guarantor(s). Any termination shall not affect in any way the unconditional obligations of the terminating guarantor(s) as to any Indebtedness existing at the effective date of termination or any Indebtedness created after that pursuant to any commitment or agreement of the Bank or any Borrower loan with the Bank existing at the effective date of termination (whether advances or readvances by the Bank are optional or obligatory), or any modifications, extensions or renewals of any of this Indebtedness, whether in whole or in part, and as to all of this Indebtedness and modifications, extensions or renewals of it, this Guaranty shall continue effective until the same shall have been fully paid. The Bank may, at its duty to give notice of termination by any guarantor(s) to any remaining guarantor(s). The undersigned shall indemnify the Bank against all claims, damages, costs and expenses, including without limit reasonable attorneys' fees and costs, incurred by the Bank in connection with any suit, claim or action against the Bank arising out of any modification or termination of a Borrower loan or any refusal by the Bank to extend additional credit in connection with the termination of this Guaranty.

Notwithstanding any prior revocation, termination, surrender or discharge of this Guaranty (or of any lien, pledge or security interest securing this Guaranty) in whole or part, the effectiveness of this Guaranty, and of all liens, pledges and security interests securing this Guaranty, shall automatically continue or be reinstated, as the case may be, in the event that (a) any payment received or credit given by the Bank in respect of the Indebtedness is returned, disgorged or rescinded as a preference, impermissible setoff, fraudulent conveyance, diversion of trust funds, or otherwise under any applicable state or federal law, including, without limitation, laws pertaining to bankruptcy or insolvency, in which case this Guaranty, and all liens, pledges and security interests securing this Guaranty, shall be enforceable against the undersigned as if the returned, disgorged or rescinded payment or credit had not been received or given by the Bank, and whether or not the Bank relied upon this payment or credit or changed its position as a consequence of it; or (b) any liability is imposed, or sought to be imposed, against the Bank relating to the environmental condition of, or the presence of hazardous or toxic substances on, in or about, any property given as collateral to the Bank by the Borrower, whether this condition is known or unknown, now exists or subsequently arises (excluding only conditions which arise after any acquisition by the Bank of any such property, by foreclosure, in lieu of foreclosure or otherwise, to the extent due to the wrongful act or omission of the Bank), in which case this Guaranty, and all liens, pledges and security interests securing this Guaranty, shall be enforceable against the undersigned to the extent of all liability, costs and expenses (including without limit reasonable attorneys' fees and costs) incurred by the Bank as the direct or indirect result of any environmental condition or hazardous or toxic substances. In the event of continuation or reinstatement of this Guaranty and the liens, pledges and security interests securing it, the undersigned agree(s) upon demand by the Bank to execute and deliver to the Bank those documents which the Bank determines are appropriate to further evidence (in the public records or otherwise) this continuation or reinstatement, although the failure of the undersigned to do so shall not affect in any way the reinstatement or continuation. If the undersigned do(es) not execute and deliver to the Bank upon demand such documents, the Bank and each Bank officer is irrevocably appointed (which appointment is coupled with an interest) the true and lawful attorney of the undersigned (with full power of substitution) to execute and deliver such documents in the name and on behalf of the undersigned. For purposes of this Guaranty, "environmental condition" includes, without limitation, conditions existing with respect to the surface or ground water, drinking water supply, land surface or subsurface and the air, and "hazardous or toxic substances" shall include any and all substances now or subsequently determined by any federal, state or local authority to be hazardous or toxic, or otherwise regulated by any of these authorities.

Although the intent of the undersigned and the Bank is that California law shall apply to this Guaranty, regardless of whether California law applies, the undersigned further agree(s) as follows: With respect to the limitation, if any, stated in the Additional Provisions below on the amount of principal guaranteed under this Guaranty, the undersigned agree(s) that (a) this limitation shall not be a limitation on the amount of Borrower's Indebtedness to the Bank; (b) any payments by the undersigned shall not reduce the maximum liability of the undersigned under this Guaranty unless written notice to that effect is actually received by the Bank at or prior to the time of the payment; and (c) the liability of the undersigned to the Bank shall at all times be deemed to be the aggregate liability of the undersigned under this Guaranty and any other guaranties previously or subsequently given to the Bank by the undersigned and not expressly revoked, modified or invalidated in writing.

The undersigned waive(s) any right to require the Bank to: (a) proceed against any person, including without limit the Borrower; (b) proceed against or exhaust any security held from the Borrower or any other person; (c) give notice of the terms, time and place of any public or private sale of personal property security held from the Borrower or any other person, or otherwise comply with the provisions of Section 9-504 of the California or other applicable Uniform Commercial Code; (d) pursue any other remedy in the Bank's power; or (e) make any presentments or demands for performance, or give any notices of nonperformance, protests, notices of protest, or notices of dishonor in connection with any obligations or evidences of Indebtedness held by the Bank as security, in connection with any other obligations or evidences of Indebtedness which constitute in whole or in part Indebtedness, or in connection with the creation of new or additional Indebtedness.

The undersigned authorize(s) the Bank, either before or after termination of this Guaranty, without notice to or demand on the undersigned and without affecting the undersigned's liability under this Guaranty, from time to time to: (a) apply any security and direct the order or manner of sale of it, including without limit, a nonjudicial sale permitted by the terms of the controlling security agreement, mortgage or deed of trust, as the Bank in its discretion may determine; (b) release or substitute any one or more of the endorsers or any other guarantors of the Indebtedness; and (c) apply payments received by the Bank from the Borrower to any Indebtedness of the Borrower to the Bank, in such order as the Bank shall determine in its sole discretion, whether or not this Indebtedness is covered by this Guaranty, and the undersigned waive(s) any provision of law regarding application of payments which specifies otherwise. The Bank may without notice assign this Guaranty in whole or in part. Upon the Bank's request, the undersigned agree(s) to provide to the Bank copies of the undersigned's financial statements.

COPY FOR YOUR INFORMATION

The undersigned waive(s) any defense based upon or arising by reason of (a) any disability or other defense of the Borrower or any other person; (b) the cessation or limitation from any cause whatsoever, other than final and irrevocable payment in full, of the indebtedness; (c) any lack of authority of any officer, director, partner, agent or any other person acting or purporting to act on behalf of the Borrower which is a corporation, partnership or other type of entity, or any defect in the formation of the Borrower; (d) the application by the Borrower of the proceeds of any indebtedness for purposes other than the purposes represented by the Borrower to the Bank or intended or understood by the Bank or the undersigned; (e) any act or omission by the Bank which directly or indirectly results in or aids the discharge of the Borrower or any indebtedness or guaranty by operation of law or otherwise; or (f) any modification of the indebtedness, in any form whatsoever, including without limit any modification made after effective termination, and including without limit, the renewal, extension, acceleration or other change in time for payment of the indebtedness, or other change in the terms of any indebtedness, including without limit increase or decrease of the interest rate. The undersigned understands that, absent this waiver, Bank's election of remedies, including but not limited to its decision to proceed to nonjudicial foreclosure on any real property securing the indebtedness, could preclude Bank from obtaining a deficiency judgment against Borrower and the undersigned pursuant to California Code of Civil Procedure sections 580a, 580b, 580d or 726 and could also destroy any subrogation rights which the undersigned has against Borrower. The undersigned further understands that, absent this waiver, California law, including without limitation, California Code of Civil Procedure sections 580a, 580b, 580d or 726, could afford the undersigned one or more affirmative defenses to any action maintained by Bank against the undersigned on this Guaranty.

The undersigned waives any and all rights and provisions of California Code of Civil Procedure sections 580a, 580b, 580d and 726, including, but not limited to any provision thereof that: (i) may limit the time period for Bank to commence a lawsuit against Borrower or the undersigned to collect any indebtedness owing by Borrower or the undersigned to Bank; (ii) may entitle Borrower or the undersigned to a judicial or nonjudicial determination of any deficiency owed by Borrower or the undersigned to Bank, or to otherwise limit Bank's right to collect a deficiency based on the fair market value of such real property security; (iii) may limit Bank's right to collect a deficiency judgment after a sale of any real property securing the indebtedness; (iv) may require Bank to take only one action to collect the indebtedness or that may otherwise limit the remedies available to Bank to collect the indebtedness.

The undersigned waives all rights and defenses arising out of an election of remedies by Bank even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the undersigned's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the Code of Civil Procedure or otherwise.

The undersigned acknowledges and agrees that this is a knowing and informed waiver of the undersigned's rights as discussed above and that Bank is relying on this waiver in extending credit to Borrower.

The undersigned acknowledge(s) that the Bank has the right to sell, assign, transfer, negotiate, or grant participations in all or any part of the indebtedness and any related obligations, including without limit this Guaranty. In connection with that right, the Bank may disclose any documents and information which the Bank now or later acquires relating to the undersigned and this Guaranty, whether furnished by the Borrower, the undersigned or otherwise. The undersigned further agree(s) that the Bank may disclose these documents and information to the Borrower. The undersigned agree(s) that the Bank may provide information relating to this Guaranty or to the undersigned to the Bank's parent, affiliates, subsidiaries and service providers.

The total obligation under this Guaranty shall be UNLIMITED unless specifically limited in the Additional Provisions of this Guaranty, and this obligation (whether unlimited or limited to the extent indicated in the Additional Provisions) shall include, IN ADDITION TO any limited amount of principal guaranteed, any and all interest on all indebtedness and any and all costs and expenses of any kind, including without limit reasonable attorneys' fees and costs, incurred by the Bank at any time(s) for any reason in enforcing any of the duties and obligations of the undersigned under this Guaranty or otherwise incurred by the Bank in any way connected with this Guaranty, the indebtedness or any other guaranty of the indebtedness (including without limit reasonable attorneys' fees and other expenses incurred in any suit involving the conduct of the Bank, the Borrower or the undersigned). All of these costs and expenses shall be payable immediately by the undersigned when incurred by the Bank, without demand, and until paid shall bear interest at the highest per annum rate applicable to any of the indebtedness, but not in excess of the maximum rate permitted by law. Any reference in this Guaranty to attorneys' fees shall be deemed a reference to fees, charges, costs and expenses of both in-house and outside counsel and paralegals, whether or not a suit or action is instituted, and to court costs if a suit or action is instituted, and whether attorneys' fees or court costs are incurred at the trial court level, on appeal, in a bankruptcy, administrative or probate proceeding or otherwise. Any reference in the Additional Provisions or elsewhere (a) to this Guaranty being secured by certain collateral shall NOT be deemed to limit the total obligation of the undersigned under this Guaranty or (b) to this Guaranty being limited in any respect shall NOT be deemed to limit the total obligation of the undersigned under any prior or subsequent guaranty given by the undersigned to the Bank.

The undersigned unconditionally and irrevocably waive(s) each and every defense and setoff of any nature which, under principles of guaranty or otherwise, would operate to impair or diminish in any way the obligation of the undersigned under this Guaranty, and acknowledge(s) that each such waiver is by this reference incorporated into each security agreement, collateral assignment, pledge and/or other document from the undersigned now or later securing this Guaranty and/or the indebtedness, and acknowledge(s) that as of the date of this Guaranty no such defense or setoff exists. The undersigned acknowledge(s) that the effectiveness of this Guaranty is subject to no conditions of any kind.

This Guaranty shall remain effective with respect to successive transactions which shall either continue the indebtedness, increase or decrease it, or from time to time create new indebtedness after all or any prior indebtedness has been satisfied, until this Guaranty is terminated in the manner and to the extent provided above.

The undersigned warrant(s) and agree(s) that each of the waivers set forth above are made with the undersigned's full knowledge of their significance and consequences, and that under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any of these waivers are determined to be contrary to any applicable law or public policy, these waivers shall be effective only to the extent permitted by law.

This Guaranty constitutes the entire agreement of the undersigned and the Bank with respect to the subject matter of this Guaranty. No waiver, consent, modification or change of the terms of this Guaranty shall bind any of the undersigned or the Bank unless in writing and signed by the waiving party or an authorized officer of the waiving party, and then this waiver, consent, modification or change shall be effective only in the specific instance and for the specific purpose given. This Guaranty shall inure to the benefit of the Bank and its successors and assigns. This Guaranty shall be binding on the undersigned and the undersigned's heirs, legal representatives, successors and assigns including, without limit, any debtor in possession or trustee in bankruptcy for any of the undersigned. The undersigned has (have) knowingly and voluntarily entered into this Guaranty in good faith for the purpose of inducing the Bank to extend credit or make other financial accommodations to the Borrower, and the undersigned acknowledge(s) that the terms of this Guaranty are reasonable. If any provision of this Guaranty is unenforceable in whole or in part for any reason, the remaining provisions shall continue to be effective. THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA.

Additional Provisions (if any):

_____

_____

_____

_____

COPY FOR YOUR INFORMATION

THE UNDERSIGNED AND BANK ACKNO___LEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED, EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS GUARANTY OR THE INDEBTEDNESS.

IN WITNESS WHEREOF, the undersigned has (have) signed this Guaranty on __March 21, 2002__ ___ ___ ___.

GUARANTOR(S) _Garrett Family Trust__ ___ ___ ___ ___

By: _____
      Signature of _Jack Garrott

**WITNESS:**

    Its: __Trustee_____
          (if Applicable)

_____ __ ___ ___ ___ ___
Signature of

By: _____
      Signature of Jane Garrett

    Its: __Trustee_____
          (if Applicable)

GUARANTOR'S ADDRESS

_____
Street Address

_____
City                  State     Zip Code

**BORROWER(S):**

Ronald I. Arson and Jack Garrett

COPY FOR YOUR INFORMATION

CA 00165 (3-2000)

4.

CERTIFICATE OF ACKNOWLEDGMENT

STATE OF CALIFORNIA

COUNTY OF_____

On_____before    me,_____

personally appeared_____

_____personally

known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they  executed the same in his/her/their  authorized capacity(ies), and that by his/her/their  signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

   WITNESS my hand and official seal.

(SEAL)
                                        _____
                                        Notary Public's Signature)

                                        _____
                                        (Type or Print Name)

---

STATE OF CALIFORNIA

COUNTY OF_____

On_____before    me,_____

personally appeared_____

_____personally

known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they  executed the same in his/her/their  authorized capacity(ies), and that by his/her/their  signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

   WITNESS my hand and official seal.

(SEAL)
                                        _____
                                        (Notary Public's Signature)

                                        _____
                                        (Type or Print Name)



# TRUST CERTIFICATION

COPY FOR YOUR
INFORMATION.

Comerica Bank California
(herein called "Bank")

**BORROWER:** Ronald I. Anson and Jack Garrett

C/o Anson, Garrett & Co. 11755 Wilshire Blvd., Ste 1350
Los Angeles, CA 90025

Name of Trust (e.g., John and Mary Smith Family Trust Declaration of Trust dated 1/1/90): _ Anson Inter Vivos Trust_
Agreement _____

_____ (hereinafter    the "Trust"or "Trust Agreement"). The undersigned trustee
(hereinafter "Trustee") of the above-referenced Trust, and the undersigned as an individual, hereby certifies as follows:

(Box(es) checked if applicable)

1.     Settlor(s). The name(s) of the settlor(s) of the Trust is/are: _ Ronald I. Anson and Suzanne G. Anson_ .

2.     Trustee(s). The name(s) of the currently acting trustee(s) is/are: _ Ronald I. Anson and Suzanne G. Anson_

3.     Number of Trustees.

    A.   ☐  I am the current and sole Trustee of the Trust, and the Trust is in full force and has not been revoked,
modified or amended in any manner which would cause the representations herein to be incorrect.

    B.   ☒  We are the current and all of the Co-Trustees of the Trust, and the Trust is in full force and has not been
revoked, modified or amended in any manner which would cause the representations herein to be
incorrect.

The Trust Agreement provides that _____ of _2_ _____ Co-Trustees is/are  the minimum number of trustees required
to sign an agreement, document or instrument in order to bind the Trust.

4.     Revocability.

    A.   ☒  Revocable. The Trust is a revocable trust. The power to revoke is held by the Trustor(s) named below. No
trustor has died.

        Trustor 1._____,and   2. _____

    B.   ☐  Irrevocable. The Trust is an irrevocable trust.

5.     Authorization. As Trustee, I/we  have the authority and power to:

    A.   ☐  Borrow from Bank on such terms as may be agreed upon with Bank, such sum or sums of money as in
my/our judgment should be borrowered and for such purpose as I/we  determine to be in the best interest
of the Trust (referred to below as the "Loan"or "Loans").

    B.   ☐  Execute and deliver a promissory note or notes on behalf of the Trust which evidences a Loan or Loans, on
Bank's forms, at a rate of interest and on terms agreed upon with the Bank.

    C.   ☐  Execute and deliver to Bank all renewals, extensions, modifications, or substitutions for any and all of the
notes or any portion of the notes evidencing a Loan or Loans.

    D.   ☐  Mortgage, pledge, hypothecate, or otherwise encumber and deliver to Bank any real or personal property
which is owned by the Trust or in which the Trust holds an ownership interest, as security for the
repayment of any Loan or Loans and the performance of any obligation by the Trust pursuant to any
documents evidencing a Loan or Loans. Execute and deliver to Bank the forms of mortgage, deed of trust,
pledge agreement, hypothecation agreement, and other security agreements and financing statements in
connection with such mortgage, pledge, hypothecation or other encumbrance.

    E.   ☒  Execute and deliver a guaranty on Bank's form therefor, whereby the Trust guarantees any and all
obligations of _Ronald I. Anson and Jack Garrett_____to    Bank.

    F.   ☐  Mortgage, pledge, hypothecate, or otherwise encumber and deliver to Bank any real or personal property
which is owned by the trust or in which the Trust holds an ownership interest, as security for the
performance by the Trust of its obligations under a guaranty executed by the Trust in favor of Bank,
whereby the Trust guaranties any and all obligation of _____
_____to    Bank.  Execute and deliver to Bank the forms of
mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and
financing statements in connection with such mortgage, pledge, hypothecation or other encumbrance.

    G.   ☐  Mortgage, pledge, hypothecate, or otherwise encumber and deliver to Bank any real or personal property
which is owned by the Trust or in which the Trust holds an ownership interest, as security for the
performance of any and all obligations of _____
_____ to Bank.  Execute and deliver to Bank the forms of
mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and
financing  statements in connection with such mortgage, pledge, hypothecation or other encumbrance.

    H.   ☐  Execute and deliver to Bank the forms of mortgage, deed of trust, pledge agreement, hypothecation
agreement, and other security agreements and financing statement which may be submitted by Bank, and
which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances,
or any of them, are given; and also to execute and deliver to Bank any other written instruments, of any
kind or nature, which he or she may in his or her discretion deem reasonably necessary or proper in
connection with or pertaining to the giving of the liens and encumbrances.

CA TRUST (12-94)                       1.

COPY YOUR INFORMATION

i. ☐ To draw, endorse, and discount with Bank any drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to the Trust, and either to receive cash for the same or to cause such proceeds to be credited to any of the Trust's accounts with Bank or to make such other dispositions of the proceeds as We may deem advisable.

6. Co-Trustees. Where this Certification is signed by Co-Trustees, each Trustee certifies for himself or herself and not for the other(s). References to the singular include the plural.

7. Tax Identification Number. The tax identification number of the Trust is_____.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. (Where co-trustees, all trustees must sign below)

By:_____    By:_____
   Ronald I. Anson, Trustee    Date       Suzanne G. Anson, Trustee    Date

By:_____    By:_____
                              Date                                  Date

### CERTIFICATE OF ACKNOWLEDGEMENT

STATE OF CALIFORNIA

COUNTY OF_____

On _____before me, _____

personally appeared _____

_____ personally

known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

(SEAL)

_____
(Notary Public's Signature)

_____
(Type or Print Name)



COPY FOR YOUR INFORMATION

Guaranty

The undersigned, for value received, unconditionally and absolutely guarantee(s) to _America Bank California_ ("Bank") a California banking corporation, and to the Bank's successors and assigns, payment when due, whether by stated maturity, demand, acceleration or otherwise, of all existing and future indebtedness to the Bank of _Ronald J. Amen and Jack Garrett_ _____ ("Borrower") or any successor in interest, including without limit any debtor-in-possession or trustee in bankruptcy which succeeds to the interest of this party or person (jointly and severally the "Borrower"),however this indebtedness has been or may be incurred or evidenced, whether absolute or contingent direct or indirect, voluntary or involuntary, liquidated or unliquidated, joint or several, and whether or not known to the undersigned at the time of this Guaranty or at the time any future indebtedness is incurred (the "indebtedness").

The indebtedness guaranteed includes without limit: (a) any and all direct indebtedness of the Borrower to the Bank, including indebtedness evidenced by any and all promissory notes; (b) any and all obligations or liabilities of the Borrower to the Bank arising under any guaranty where the Borrower has guaranteed the payment of indebtedness owing to the Bank from a third party; (c) any and all obligations or liabilities of the Borrower to the Bank arising from applications or agreements for the issuance of letters of credit; (d) any and all obligations or liabilities of the Borrower to the Bank arising out of any other agreement by the Borrower including without limit any agreement to indemnify the Bank for environmental liability or to clean up hazardous wastes; (e) any and all indebtedness, obligations or liabilities for which the Borrower would otherwise be liable to the Bank were it not for the invalidity, irregularity or unenforceability of them by reason of any bankruptcy, insolvency or other law or order of any kind, or for any other reason, including without limit liability for interest and attorneys' fees on, or in connection with, any of the indebtedness from and after the filing by or against the Borrower of a bankruptcy petition whether an involuntary or voluntary bankruptcy case, including, without limitation, all attorneys' fees and costs incurred in connection with motions for relief from stay, cash collateral motions, nondischargeability motions, preference liability motions, fraudulent conveyance liability motions, fraudulent transfer liability motions and all other motions brought by Borrower, Guarantor, Bank or third parties in any way relating to Bank's rights with respect to such Borrower, Guarantor, or third party and/or affecting any collateral securing any obligation owed to Bank by Borrower, Guarantor, or any third party, probate proceedings, on appeal or otherwise; (f) any and all amendments, modifications, renewals and/or extensions of any of the above, including without limit amendments, modifications, renewals and/or extensions which are evidenced by new or additional instruments, documents or agreements; and (g) all costs of collecting indebtedness, including without limit reasonable attorneys' fees and costs.

The undersigned waive(s) notice of acceptance of this Guaranty and presentment, demand, protest, notice of protest, dishonor, notice of dishonor, notice of default, notice of intent to accelerate or demand payment of any indebtedness, and diligence in collecting any indebtedness, and agree(s) that the Bank may modify the terms of any indebtedness, compromise, extend, increase, accelerate, renew or forbear to enforce payment of any or all indebtedness, or permit the Borrower to incur additional indebtedness, all without notice to the undersigned and without affecting in any manner the unconditional obligation of the undersigned under this Guaranty. The undersigned further waive(s) any and all other notices to which the undersigned might otherwise be entitled. The undersigned acknowledge(s) and agree(s) that the liabilities created by this Guaranty are direct and are not conditioned upon pursuit by the Bank of any remedy the Bank may have against the Borrower or any other person or any security. No invalidity, irregularity or unenforceability of any part or all of the indebtedness or any documents evidencing the same, by reason of any bankruptcy, insolvency or other law or order of any kind or for any other reason, and no defense or setoff available at any time to the Borrower, shall impair, affect or be a defense or setoff to the obligations of the undersigned under this Guaranty.

The undersigned deliver(s) this Guaranty based solely on the undersigned's independent investigation of the financial condition of the Borrower and is (are) not relying on any information furnished by the Bank. The undersigned assume(s) full responsibility for obtaining any further information concerning the Borrower's financial condition, the status of the indebtedness or any other matter which the undersigned may deem necessary or appropriate from time to time. The undersigned waive(s) any duty on the part of the Bank, and agree(s) that it is not relying upon nor expecting the Bank to disclose to the undersigned any fact now or later known by the Bank, whether relating to the operations or condition of the Borrower, the existence, liabilities or financial condition of any co-guarantor of the indebtedness, the occurrence of any default with respect to the indebtedness, or otherwise, notwithstanding any effect these facts may have upon the undersigned's risk under this Guaranty or the undersigned's rights against the Borrower. The undersigned knowingly accept(s) the full range of risk encompassed by this Guaranty, which risk includes without limit the possibility that the Borrower may incur indebtedness to the Bank after the financial condition of the Borrower, or its ability to pay its debts as they mature, has deteriorated.

The undersigned represent(s) and warrant(s) that: (a) the Bank has made no representation to the undersigned as to the creditworthiness of the Borrower; and (b) the undersigned has (have) established adequate means of obtaining from the Borrower on a continuing basis financial and other information pertaining to the Borrower's financial condition. The undersigned agree(s) to keep adequately informed of any facts, events or circumstances which might in any way affect the risks of the undersigned under this Guaranty .

The undersigned grant(s) to the Bank a security interest in and the right of setoff as to any and all property of the undersigned now or later in the possession of the Bank. The undersigned subordinate(s) any claim of any nature that the undersigned now or later has (have) against the Borrower to and in favor of all indebtedness and agree(s) not to accept payment or satisfaction of any claim that the undersigned now or later may have against the Borrower without the prior written consent of the Bank. Should any payment, distribution, security, or proceeds, be received by the undersigned upon or with respect to any claim that the undersigned now or may later have against the Borrower, the undersigned shall immediately deliver the same to the Bank in the form received (except for endorsement or assignment by the undersigned where required by the Bank) for application on the indebtedness, whether matured or unmatured, and until delivered the same shall be held in trust by the undersigned as the property of the Bank. The undersigned further assign(s) to the Bank as collateral for the obligations of the undersigned under this Guaranty all claims of any nature that the undersigned now or later has (have) against the Borrower (other than any claim under a deed of trust or mortgage covering real property) with full right on the part of the Bank, in its own name or in the name of the undersigned, to collect and enforce these claims.

The undersigned agree(s) that no security now or later held by the Bank for the payment of any indebtedness, whether from the Borrower, any guarantor, or otherwise, and whether in the nature of a security interest, pledge, lien, assignment, setoff, ownership guaranty, indemnity, insurance or otherwise, shall affect in any manner the unconditional obligation of the undersigned under this Guaranty, and the Bank, in its sole discretion, without notice to the undersigned, may release, exchange, enforce and otherwise deal with any security without affecting in any manner the unconditional obligation of the undersigned under this Guaranty. The undersigned acknowledge(s) and agree(s) that the Bank has no obligation to acquire or perfect any lien on or security interest in any asset(s), whether really or personally, to secure payment of the indebtedness, and the undersigned is (are) not relying upon any asset(s) in which the Bank has or may have a lien or security interest for payment of the indebtedness.

The undersigned acknowledge(s) that the effectiveness of this Guaranty is not conditioned on any or all of the indebtedness being guaranteed by anyone else.

Until the indebtedness is irrevocably paid in full, the undersigned waive(s) any and all rights to be subrogated to the position of the Bank or to have the benefit of any lien, security interest or other guaranty now or later held by the Bank for the indebtedness or to enforce any remedy which the Bank now or later has against the Borrower or any other person. Until the indebtedness is irrevocably paid in full, the undersigned shall have no right of reimbursement, indemnity, contribution or other right of recourse to or with respect to the Borrower or any other person. The undersigned agree(s) to indemnify and hold harmless the Bank from and against any and all claims, actions, damages, costs and expenses, including without limit reasonable attorneys' fees, incurred by the Bank in connection with the

undersigned's exercise of any right of subrogation, contribution, indemnification or recourse with respect to this Guaranty. The Bank has no duty to enforce or protect any rights which the undersigned may have against the Borrower or any other person and the undersigned assume(s) full responsibility for enforcing and protecting these rights.

Notwithstanding any provision of the preceding paragraph or anything else in this Guaranty to the contrary, if any of the undersigned is or becomes an "insider" or "affiliate" (as defined in Section 101 of the Federal Bankruptcy Code, as it may be amended) with respect to the Borrower, then that undersigned irrevocably and absolutely waives any and all rights of subrogation, contribution, indemnification, recourse, reimbursement and any similar rights against the Borrower (or any other guarantor) with respect to this Guaranty, whether such rights arise under an express or implied contract or by operation of law. It is the intention of the parties that the undersigned shall not be (or be deemed to be) a "creditor" (as defined in Section 101 of the Federal Bankruptcy Code, as it may be amended) of the Borrower (or any other guarantor) by reason of the existence of this Guaranty in the event that the Borrower becomes a debtor in any proceeding under the Federal Bankruptcy Code. This waiver is given to induce the Bank to enter into certain written contracts with the Borrower included in the Indebtedness. The undersigned warrant(s) and agree(s) that none of Bank's rights, remedies or interests shall be directly or indirectly impaired because of any of the undersigned's status as an "insider" or "affiliate" of the Borrower, and undersigned shall take any action, and shall execute any document, which the Bank may request in order to effectuate this warranty to the Bank.

If any Indebtedness is guaranteed by two or more guarantors, the obligation of the undersigned shall be several and also joint, each with all and also each with any one or more of the others, and may be enforced at the option of the Bank against each severally, any two or more jointly, or some severally and some jointly. The Bank, in its sole discretion, may release any one or more of the guarantors for any consideration which it deems adequate, and may fail or elect not to prove a claim against the estate of any bankrupt, insolvent, incompetent or deceased guarantor; and after that, without notice to any other guarantor, the Bank may extend or renew any or all Indebtedness and may permit the Borrower to incur additional Indebtedness, without affecting in any manner the unconditional obligation of the remaining guarantor(s). This action by the Bank shall not, however, be deemed to affect any right to contribution which may exist among the guarantors.

Any of the undersigned may terminate their obligation under this Guaranty as to future Indebtedness (except as provided below) by (and only by) delivering written notice of termination to an officer of the Bank and receiving from an officer of the Bank written acknowledgment of delivery; provided, that termination shall not be effective until the opening of business on the fifth (5th) day following written acknowledgment of delivery. Any termination shall not affect in any way the unconditional obligations of the remaining guarantor(s), whether or not the termination is known to the remaining guarantor(s). Any termination shall not affect in any way the unconditional obligations of the terminating guarantor(s) as to any Indebtedness existing at the effective date of termination or any Indebtedness created after that pursuant to any commitment or agreement of the Bank or any Borrower loan with the Bank existing at the effective date of termination (whether advances or readvances by the Bank are optional or obligatory), or any modifications, extensions or renewals of any of this Indebtedness, whether in whole or in part, and as to all of this Indebtedness and modifications, extensions or renewals of it, this Guaranty shall continue effective until the same shall have been fully paid. The Bank has no duty to give notice of termination by any guarantor(s) to any remaining guarantor(s). The undersigned shall indemnify the Bank against all claims, damages, costs and expenses, including without limit reasonable attorneys' fees and costs, incurred by the Bank in connection with any suit, claim or action against the Bank arising out of any modification or termination of a Borrower loan or any refusal by the Bank to extend additional credit in connection with the termination of this Guaranty.

Notwithstanding any prior revocation, termination, surrender or discharge of this Guaranty (or of any lien, pledge or security interest securing the Guaranty) in whole or part, the effectiveness of this Guaranty, and of all liens, pledges and security interests securing this Guaranty, shall automatically continue or be reinstated, as the case may be, in the event that (a) any payment received or credit given by the Bank in respect of the Indebtedness is returned, disgorged or rescinded as a preference, impermissible setoff, fraudulent conveyance, diversion of trust funds, or otherwise under any applicable state or federal law, including, without limitation, laws pertaining to bankruptcy or insolvency, in which case this Guaranty, and all liens, pledges and security interests securing this Guaranty, shall be enforceable against the undersigned as if the returned, disgorged or rescinded payment or credit had not been received or given by the Bank, and whether or not the Bank relied upon this payment or credit or changed its position as a consequence of it; or (b) any liability is imposed, or sought to be imposed, against the Bank relating to the environmental condition of, or the presence of hazardous or toxic substances on, in or about, any property given as collateral to the Bank by the Borrower, whether this condition is known or unknown, now exists or subsequently arises (excluding only conditions which arise after any acquisition by the Bank of any such property, by foreclosure, in lieu of foreclosure or otherwise, to the extent due to the wrongful act or omission of the Bank), in which case this Guaranty, and all liens, pledges and security interests securing this Guaranty, shall be enforceable against the undersigned to the extent of all liability, costs and expenses (including without limit reasonable attorneys' fees and costs) incurred by the Bank as the direct or indirect result of any environmental condition or hazardous or toxic substances. In the event of continuation or reinstatement of this Guaranty and the liens, pledges and security interests securing it, the undersigned agree(s) upon demand by the Bank to execute and deliver to the Bank those documents which the Bank determines are appropriate to further evidence (in the public records or otherwise) this continuation or reinstatement, although the failure of the undersigned to do so shall not affect in any way the reinstatement of the continuation. If the undersigned do(es) not execute and deliver to the Bank upon demand such documents, the Bank and each Bank officer is irrevocably appointed (which appointment is coupled with an interest) the true and lawful attorney of the undersigned (with full power of substitution) to execute and deliver such documents in the name and on behalf of the undersigned. For purposes of this Guaranty, "environmental condition" includes, without limitation, conditions existing with respect to the surface or ground water, drinking water supply, land surface or subsurface and the air; and "hazardous or toxic substances" shall include any and all substances now or subsequently determined by any federal, state or local authority to be hazardous or toxic, or otherwise regulated by any of these authorities.

Although the intent of the undersigned and the Bank is that California law shall apply to this Guaranty, regardless of whether California law applies, the undersigned further agree(s) as follows: With respect to the limitation, if any, stated in the Additional Provisions below on the amount of principal guaranteed under this Guaranty, the undersigned agree(s) that (a) this limitation shall not be a limitation on the amount of Borrower's Indebtedness to the Bank; (b) any payments by the undersigned shall not reduce the maximum liability of the undersigned under this Guaranty unless written notice to that effect is actually received by the Bank at or prior to the time of the payment; and (c) the liability of the undersigned to the Bank shall at all times be deemed to be the aggregate liability of the undersigned under this Guaranty and any other guaranties previously or subsequently given to the Bank by the undersigned and not expressly revoked, modified or invalidated in writing.

The undersigned waive(s) any right to require the Bank to: (a) proceed against any person, including without limit the Borrower; (b) proceed against or exhaust any security held from the Borrower or any other person; (c) give notice of the terms, time and place of any public or private sale of personal property security held from the Borrower or any other person, or otherwise comply with the provisions of Section 9-504 of the California or other applicable Uniform Commercial Code; (d) pursue any other remedy in the Bank's power; or (e) make any presentments or demands for performance, or give any notices of nonperformance, protests, notices of protest, or notices of dishonor in connection with any obligations or evidences of Indebtedness held by the Bank as security, in connection with any other obligations or evidences of Indebtedness which constitute in whole or in part Indebtedness, or in connection with the creation of new or additional Indebtedness.

The undersigned authorize(s) the Bank, either before or after termination of this Guaranty, without notice to or demand on the undersigned and without affecting the undersigned's liability under this Guaranty, from time to time to: (a) apply any security and directly the order or manner of sale of it, including without limit, a nonjudicial sale permitted by the terms of the controlling security agreement, mortgage or deed of trust, as the Bank in its discretion may determine; (b) release or substitute any one or more of the endorsers or any other guarantors of the Indebtedness; and (c) apply payments received by the Bank from the Borrower to any Indebtedness of the Borrower to the Bank, in such order as the Bank shall determine in its sole discretion, whether or not this Indebtedness is covered by this Guaranty, and the undersigned waive(s) any provision of law regarding application of payments which specifies otherwise. The Bank may without notice assign this Guaranty in whole or in part. Upon the Bank's request, the undersigned agree(s) to provide to the Bank copies of the undersigned's financial statements.

FOR YOUR INFORMATION

The undersigned waive(s) any defense based upon or arising by reason of (a) any disability or other defense of the Borrower or any other person; (b) the cessation or limitation from any cause whatsoever, other than final and irrevocable payment in full, of the indebtedness; (c) any lack of authority of any officer, director, partner, agent or any other person acting or purporting to act on behalf of the Borrower which is a corporation, partnership or other type of entity, or any defect in the formation of the Borrower; (d) the application by the Borrower of the proceeds of any indebtedness for purposes other than the purposes represented by the Borrower to the Bank or intended or understood by the Bank or the undersigned; (e) any act or omission by the Bank which directly or indirectly results in or aids the discharge of the Borrower or any indebtedness by operation of law or otherwise; or (f) any modification of the indebtedness, in any form whatsoever, including without limit any modification made after effective termination, and including without limit, the renewal, extension, acceleration or other change in time for payment of the indebtedness, or other change in the terms of any indebtedness, including without limit increase or decrease of the interest rate. The undersigned understands that, absent this waiver, Bank's election of remedies, including but not limited to its decision to proceed to nonjudicial foreclosure on any real property securing the indebtedness, could produce Bank from obtaining a deficiency judgment against Borrower and the undersigned pursuant to California Code of Civil Procedure sections 580a, 580b, 580d or 726 and could also destroy any subrogation rights which the undersigned has against Borrower. The undersigned further understands that, absent this waiver, California law, including without limitation, California Code of Civil Procedure sections 580a, 580b, 580d or 726, could afford the undersigned one or more affirmative defenses to any action maintained by Bank against the undersigned on this Guaranty.

The undersigned waives any and all rights and provisions of California Code of Civil Procedure sections 580a, 580b, 580d and 726, including, but not limited to any provision thereof that: (i) may limit the time period or time period for Bank to commence a lawsuit against Borrower or the undersigned to collect any indebtedness owing by Borrower or the undersigned to Bank; (ii) may entitle Borrower or the undersigned to a judicial or nonjudicial determination of any deficiency owed by Borrower or the undersigned to Bank, or to otherwise limit Bank's right to collect a deficiency based on the fair market value of such real property security; (iii) may limit Bank's right to collect a deficiency judgment after a sale of any real property securing the indebtedness; (iv) may require Bank to take only one action to collect the indebtedness or that may otherwise limit the remedies available to Bank to collect the indebtedness.

The undersigned waives all rights and defenses arising out of an election of remedies by Bank even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the undersigned's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the Code of Civil Procedure or otherwise.

The undersigned acknowledges and agrees that this is a knowing and informed waiver of the undersigned's rights as discussed above and that Bank is relying on this waiver in extending credit to Borrower.

The undersigned acknowledges(s) that the Bank has the right to sell, assign, transfer, negotiate, or grant participations in all or any part of the indebtedness and any related obligations, including without limit this Guaranty. In connection with that right, the Bank may disclose any documents and information which the Bank now or later acquires relating to the undersigned and this Guaranty, whether furnished by the Borrower, the undersigned or otherwise. The undersigned further agree(s) that the Bank may disclose these documents and information to the Borrower. The undersigned agree(s) that the Bank may provide information relating to this Guaranty or to the undersigned to the Bank's parent, affiliates, subsidiaries and service providers.

The total obligation under this Guaranty shall be UNLIMITED unless specifically limited in the Additional Provisions of this Guaranty, and this obligation (whether unlimited or limited to the extent indicated in the Additional Provisions) shall include, IN ADDITION TO any limited amount of principal guaranteed, any and all interest on all indebtedness and any and all costs and expenses of any kind, including without limit reasonable attorneys' fees and costs, incurred by the Bank at any time(s) for any reason in enforcing any of the duties and obligations of the undersigned under this Guaranty or otherwise incurred by the Bank in any way connected with this Guaranty, the indebtedness or any other guaranty of the indebtedness (including without limit reasonable attorneys' fees and other expenses incurred in any suit involving the conduct of the Bank, the Borrower or the undersigned). All of these costs and expenses shall be payable immediately by the undersigned when incurred by the Bank, without demand, and until paid shall bear interest at the highest per annum rate applicable to any of the indebtedness, but not in excess of the maximum rate permitted by law. Any reference in this Guaranty to attorneys' fees shall be deemed a reference to fees, charges, costs and expenses of both in-house and outside counsel and paralegals, whether or not a suit or action is instituted, and to court costs if a suit or action is instituted, and whether attorneys' fees or court costs are incurred at the trial court level, on appeal, in a bankruptcy, administrative or probate proceeding or otherwise. Any reference in the Additional Provisions or elsewhere (a) to this Guaranty being secured by certain collateral shall NOT be deemed to limit the total obligation of the undersigned under this Guaranty or (b) to this Guaranty being limited in any respect shall NOT be deemed to limit the total obligation of the undersigned under any prior or subsequent guaranty given by the undersigned to the Bank.

The undersigned unconditionally and irrevocably waive(s) each and every defense and setoff of any nature which, under principles of guaranty or otherwise, would operate to impair or diminish in any way the obligation of the undersigned under this Guaranty, and acknowledge(s) that each such waiver is by this reference incorporated into each security agreement, collateral assignment, pledge and/or other document from the undersigned now or later securing this Guaranty and/or the indebtedness, and acknowledge(s) that as of the date of this Guaranty no such defense or setoff exists. The undersigned acknowledge(s) that the effectiveness of this Guaranty is subject to no conditions of any kind.

This Guaranty shall remain effective with respect to successive transactions which shall either continue the indebtedness, increase or decrease it, or from time to time create new indebtedness after all or any prior indebtedness has been satisfied, until this Guaranty is terminated in the manner and to the extent provided above.

The undersigned warrant(s) and agree(s) that each of the waivers set forth above are made with the undersigned's full knowledge of their significance and consequences, and that under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any of these waivers are determined to be contrary to any applicable law or public policy, these waivers shall be effective only to the extent permitted by law.

This Guaranty constitutes the entire agreement of the undersigned and the Bank with respect to the subject matter of this Guaranty. No waiver, consent, modification or change of the terms of this Guaranty shall bind any of the undersigned or the Bank unless in writing and signed by the waiving party or an authorized officer of the waiving party, and then this waiver, consent, modification or change shall be effective only in the specific instance and for the specific purpose given. This Guaranty shall inure to the benefit of the Bank and its successors and assigns. This Guaranty shall be binding on the undersigned and the undersigned's heirs, legal representatives, successors and assigns including, without limit, any debtor in possession or trustee in bankruptcy for any of the undersigned. The undersigned has (have) knowingly and voluntarily entered into this Guaranty in good faith for the purpose of inducing the Bank to extend credit or make other financial accommodations to the Borrower, and the undersigned acknowledge(s) that the terms of this Guaranty are reasonable. If any provision of this Guaranty is unenforceable in whole or in part for any reason, the remaining provisions shall continue to be effective. THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA.

Additional Provisions (if any):

_____

_____

_____

_____

COPY FOR YOUR INFORMATION

THE UNDERSIGNED AND BANK ACKNO... ..DGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED, EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS GUARANTY OR THE INDEBTEDNESS.

IN WITNESS WHEREOF, the undersigned has (have) signed this Guaranty on  March 21, 2002

**COPY FOR YOUR INFORMATION**

GUARANTOR(S)  Anson Inter Vivos Trust Agreement

By:_____
         Signature of Ronald I. Anson

WITNESS:                                     Its:  Trustee
                                                      (if Applicable)

_____          By:_____
Signature of                                       Signature of Suzanne G. Anson

                                                     Its:  Trustee
                                                            (if Applicable)

GUARANTOR'S ADDRESS

_____
Street Address

_____
City                              State          Zip Code

BORROWER(S):

Ronald I. Anson and Jack Garrett

CA 00166 (3-2000)                    4.



1
2                    UNITED STATES DISTRICT COURT
3                   NORTHERN DISTRICT OF CALIFORNIA
4                            --o0o--
5

RESERVOIR CAPITAL CORPORATION,          )
6                                        )
                                         )
7              Plaintiff,                )
                                         )
8         vs.                            )  No. FJ02-0002MJJ
                                         )        (JCS)
9    FOUR STAR FINANCIAL SERVICES,       )
                                        )
10             Defendants.               )
     _____)
11
12
13
14
15                     DEPOSITION OF
16                    RICK SAPERSTEIN
17              (Volume II, Pages 160-258)
                _____

18
                 Friday, March 14, 2003
19                  CERTIFIED COPY
20
     REPORTED BY:  GAIL C. HECK, CSR 5289        JOB 01-330712
21
22
23
24
25
                                                         160



global court reporting • large case specialists
legal videography • litigation support • trial presentation
Combs & Greenley
601 Van Ness Avenue, Suite 2052  San Francisco, CA 94102

Rick Saperstein                    March 14, 2003

1  but I don't know.  Not that I'm aware of, but I wouldn't

2  rule it out.

3           MR. GECK:  Let's mark this as the next

4  exhibit.

5           (Plaintiff's Exhibit No. 8

6           marked for identification.)

7           MR. GECK:  Q.  Mr. Saperstein, I show you

8  Exhibit 8, which was produced by Four Star this week.

9  It's the Master Revolving Note by Comerica Bank to Mr.

10 Anson and Mr. Garrett.  Have you ever seen this

11 document?

12      A.  No.

13          MR. GECK:  Have you ever seen it, Ms. Wong?

14          MS. WONG:  Yes.

15          MR. GECK:  The copy that we have is not

16 signed.  Do you know, did Mr. Anson or Mr. Garrett

17 signed this note?

18          MS. WONG:  I'm sure they would sign it.  If

19 not, the bank won't give us a loan.

20          MR. GECK:  When you say the bank won't give

21 us a loan, who are you referring to?

22          MS. WONG:  It won't give Anson and Garrett a

23 loan.

24          MR. GECK:  Turn to the sixth page of the

25 exhibit.  It is a document entitled Automatic Loan

                                                    241

1    Payment Authorization.  Do you see that?

2              MS. WONG:  Yes.

3              MR. GECK:  I think I'll direct these to Ms.

4    Wong for the moment.

5              Do you know, has this document been signed by

6    Mr. Anson and Mr. Garrett?

7              MS. WONG:  I do not know.

8              MR. GECK:  Have you seen this document

9    before?

10             MS. WONG:  Yes.

11             MR. GECK:  Is this the document that permits

12   Comerica Bank to draw payment for the debts owing under

13   the Master Revolving Note?

14             MS. WONG:  Can you repeat one more time.

15             MR. GECK:  What's the purpose of the

16   Automatic Loan Payment Authorization; what's the purpose

17   of this document?

18             MS. WONG:  I don't know what's the purpose

19   of this one.  But I know that Comerica Bank can withdraw

20   interest without our authorization to do that, interest

21   only.

22             MR. GECK:  And where does it draw that

23   interest only from?

24             MS. WONG:  From the checking account, Four

25   Star's checking account.

                                                    242

**EXHIBIT HH**

**ComericA**

### Automatic Loan Payment Authorization

COPY FOR YOUR INFORMATION

Date: March 21, 2002

Obligor Name (Typed or Printed): Ronald L. Anson and Jack Garrett

Obligor Number: _____ Lender's Cost Center #: 97320

Address: 11755 Wilshire Blvd., Ste 1350    Los Angeles    CA    USA    90025
STREET ADDRESS    C/o Anson, Garrett & Co.    CITY    STATE    COUNTRY    ZIP CODE

The undersigned hereby authorizes Comerica Bank-California _____ ("Bank") to charge the account designated below for the payments due on the loan(s) as designated below and all renewals, extensions, modifications and/or substitutions thereof. This authorization will remain in effect unless the undersigned requests a modification that is agreed to by the Bank in writing. The undersigned remains fully responsible for all amounts outstanding to Bank if the designated account is insufficient for repayment.

☒ Automatic Payment Authorization for all payments on all current and future borrowings, as and when such payments come due (which payments include, without limitation, principal, interest, fees, costs, and expenses).

☐ Automatic Payment Authorization for all payments on only the specific borrowing identified below, as and when such payments come due (which payments include, without limitation, principal, interest, fees, costs, and expenses).

Specific Obligation Number: _____

☐ Automatic Payment Authorization for less than all payments on only the specific borrowing indentified below, as and when such payments come due.

Specific Obligation Number: _____

  ☐ Principal and interest payments only

  ☐ Principal payments only

  ☐ Interest payments only

  ☐ SPECIAL INSTRUCTIONS/IRREGULAR PAYMENT INSTRUCTIONS

Payment Due Date: Your loan payments will be charged to your account as indicated above on the dates such payments become due (or on a date thereafter) when there are available funds) unless that day is a Saturday, Sunday, or Bank holiday in which case such payments will be charged on the following business day, with interest to accrue during this extension as provided under the loan documents.

Account to be Charged:
  ☒ Checking Comerica Bank-California _____    Comerica Account No. 1891515213
  ☐ Savings _____    Comerica Account No. _____

Number of lead days to issue billing _____

(Charges to account are withdrawals pursuant to account resolution)


Ronald I. Anson
OBLIGOR NAME TYPED/PRINTED          SIGNATURE


Jack Garrett
OBLIGOR NAME TYPED/PRINTED          SIGNATURE


CP00199 (5-01)          Bank Copy