**EXHIBIT 25**

ORIGINAL

FILED

NOV 2 3 2005

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

1  James C. Bastian, Jr. – Bar No. 175415
   Irena Leigh Norton – Bar No. 167017
2  Manijha Kadir – Bar No. 219974
   **SHULMAN HODGES & BASTIAN LLP**
3  3750 University Avenue, Suite 670
   Riverside, California 92501
4  Telephone:    (949) 340-3400
   Facsimile:    (949) 340-3000
5
   Special Counsel for Richard A. Marshack, the Chapter 7 Trustee
6

7

8                **UNITED STATES BANKRUPTCY COURT**

9           **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

10

11  **In re**                             | Case No.  LA 03-37579 TD

12  **FOUR STAR FINANCIAL SERVICES,**     | Chapter 7
    **LLC.,**
13                                         | Adversary No.
              **Debtor.**
14                                         | **COMPLAINT FOR:**

15  **RICHARD A. MARSHACK, solely in his**   | **1. AVOIDANCE OF INTENTIONAL**
    **capacity as the Chapter 7 Trustee,**   | **FRAUDULENT TRANSFERS**
16
              Plaintiff,                   | **2. AVOIDANCE OF CONSTRUCTIVE**
17                                           | **FRAUDULENT TRANSFERS**
    vs.,
18                                           | **3. RECOVERY OF AVOIDED**
    **DAVID ROBERTS, an individual,**        | **TRANSFERS**
19
              Defendant(s).                | **4. DISALLOWANCE OF CLAIMS**
20
                                           | **Status Conference**:
21                                           Date:   [To Be Set]
                                             Time:   [To Be Set]
22                                           Place:  Courtroom 1345
                                                     Edward R. Roybal Federal
23                                                   Building and Courthouse
                                                     255 East Temple Street
24                                                   Los Angeles, CA 90012
25

26

27

28

1

3444-000\11

C:\Documents and Settings\annemarie\Local Settings\Temporary Internet Files\OLK2D\Complaint_Commissions 001.doc

Richard A. Marshack ("Trustee" or "Plaintiff"), solely in his capacity as the duly appointed and acting Chapter 7 Trustee for the bankruptcy estate of Four Star Financial Services, LLC ("Four Star" or "Debtor") hereby brings this Complaint and respectfully complains and alleges as follows:

## I.    STATEMENT OF JURISDICTION AND VENUE

1.    This adversary proceeding is filed pursuant to Federal Rule of Bankruptcy Procedure 7001(1) (a proceeding to recover money or property).

2.    Plaintiff, as Trustee, has standing to bring this action under 11 U.S.C. §§ 323, 544, 548 and 550 and California Civil Code §§ 3439.04, 3439.05, 3439.06, 3439.07 and 3439.09.

3.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 in that this proceeding arises in and is related to the Debtor's bankruptcy case, which was commenced through the filing of an involuntary petition for relief under Chapter 11 of the Bankruptcy Code against the Debtor on October 24, 2003 (the "Petition Date") in the Central District of California, Los Angeles Division.

4.    On November 26, 2003, the court entered an Order for Relief under Chapter 11 of the Bankruptcy Code and directed that the Office of the United States Trustee appoint a Chapter 11 Trustee for the Debtor's bankruptcy estate (the "Estate").

5.    On or about December 11, 2003, the Office of the United States Trustee appointed Richard A. Marshack as the Chapter 11 Trustee for the Debtor's Estate.

6.    Upon the Chapter 11 Trustee's Motion, and pursuant to court order entered on March 18, 2004, the Debtor's case was converted to one under Chapter 7 of the Bankruptcy Code.

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1409(a), as this adversary proceeding arises under Title 11 or arises under or relates to a case under Title 11 which is pending in this District and does not involve a consumer debt less than $5,000.

2

SHULMAN HODGES &
BASTIAN LLP
3750 University Avenue
Suite 670
Riverside, CA 92501

3444-000\11

C:\Documents and Settings\annemarie\Local Settings\Temporary Internet Files\OLK2D\Complaint_Commissions 001.doc

1    8.    This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (H),

2    and to the extent any related claims are determined not to be a core proceeding, the Plaintiff

3    consents to an entry of final judgment and orders by the Bankruptcy Court.

4    9.    To the extent that the Plaintiff asserts claims under 11 U.S.C. § 544, the Plaintiff

5    is informed and believes and based thereon alleges that there exists in this case one or more

6    creditors holding unsecured claims allowable under 11 U.S.C. §502 or are not allowable under

7    11 U.S.C. § 502(e), who can avoid the respective transfers as set forth hereinafter under

8    California or other applicable law.

9    II.    **PARTIES**

10    10.    Plaintiff is the duly appointed Chapter 7 Trustee for the Debtor's bankruptcy

11    estate, and brings the claims asserted herein in that capacity.

12    11.    Plaintiff is informed and believes and thereon alleges that the Defendant, David

13    Roberts, an individual, (the "Defendant") conducted business with the Debtor prior to the

14    Petition Date, specifically as a recipient of commissions and as an investor.

15    III.    **GENERAL ALLEGATIONS**

16    12.    Effective January 1, 1997, Four Star acquired the operations of 900 Capital

17    Services, Inc. ("900 Capital"), in order to convert the operation from a corporation to a limited

18    liability company.  The managers and principals were unchanged.

19    13.    At its inception, Four Star received "roll-over" investments from certain investors

20    who previously invested in 900 Capital.  From 1997 until late 2002, Four Star solicited and

21    received investments through the sale of debt instruments named "Cash Flow Notes", through

22    the sale of limited memberships in Four Star, and through the sale of interests in individual long

23    distance telephone call "Arbitrage Contracts".

24    14.    Plaintiff is informed and believes and thereon alleges that from 1992, when 900

25    Capital was incorporated, until the filing of an involuntary bankruptcy petition against Four Star

26    in October 2003, 900 Capital and Four Star knowingly and intentionally devised and executed a

27    scheme to defraud its investors, creditors and others.

28

3

SHULMAN HODGES &
BASTIAN LLP
3750 University Avenue
Suite 670
Riverside, CA 92501

3444-000\11

C:\Documents and Settings\annemarie\Local Settings\Temporary Internet Files\OLK2D\Complaint_Commissions 001.doc

15.     As part and parcel of this scheme, Four Star obtained investors' money and property in exchange for investments in the form of notes, memberships and "Arbitrage" contracts.

16.     The business of Four Star was to conduct a Ponzi-type scheme through which the principals and employees of Four Star made monthly payments to investors as "commissions" or "interest" on their investments using funds from more recent investors to lull investors into believing that the companies were solvent and profitable and to solicit additional investments.

17.     Plaintiff is informed and believes and thereon alleges that Four Star made false promises to its investors about the business of Four Star and the conditions under which distributions to investors would be made. Four Star prepared and distributed to investors and others false financial statements that overstated the assets, revenues, and profits of Four Star and its predecessor, 900 Capital.

18.     In fact, from the inception of 900 Capital, and certainly at the time of the reorganization of its operations into Four Star, the business carried millions of dollars in bad debt and operated at a loss. The company relied on incoming investment to make its monthly payments to investors. At no time was there income from its investments or operations sufficient to meet its obligations to creditors or to make monthly payments to investors or brokers for "commissions" or investment returns.

19.     Plaintiff is informed and believes, and on that basis alleges, that Four Star did not have or maintain any telephone "Arbitrage" contracts or "Arbitrage" investments, but used the money solicited under those pretenses to pay prior investors.

20.     Contrary to the representations contained in the Private Placement Memoranda ("PPM") with which Four Star solicited investments, Four Star did not earn sufficient returns from its factoring relationships to pay its investors pursuant to the Cash Flow Note; did not have assets in excess of its liabilities; and should not have paid millions of dollars to its management in fees. Instead, to stay in business it relied on increasing the number and amount of investments by Cash Flow Note holders.

4

SHULMAN HODGES &
BASTIAN LLP
3750 University Avenue
Suite 670
Riverside, CA 92501

3444-000\11

C:\Documents and Settings\annemarie\Local Settings\Temporary Internet Files\OLK2D\Complaint_Commissions 001.doc

21.    Plaintiff is informed and believes, and on that basis alleges, that at all times from 1995 forward, and at least from the 1997 reorganization of 900 Capital into Four Star, Four Star was insolvent.  Instead Four Star relied on millions of dollars in worthless, non-performing or non-existing assets to show apparent revenues and solvency.

22.    Four Star could only afford to make investor payments by soliciting new investments because its operating income did not cover its expenses or its obligations to investors.

23.    In its PPM, Four Star represented that distributions of cash to members and/or investors would only be paid from "available cash from operations" and they would not be made if the company were insolvent.

24.    In fact, Four Star was insolvent from its inception, and relied upon new investors to make the monthly payments to investors and/or members, including "commissions" and "interest" on investments.

25.    In August 2002, however, Four Star's payments to investors ceased.

26.    On October 23, 2003, Four Star's investors placed the company into Involuntary Bankruptcy.

27.    Four Star never developed or acquired any substantial streams of legitimate revenue.  Four Star never had revenue sufficient to meet either its total expenses or its obligations to investors standing alone.  Instead, Four Star used new investor money, credit lines of its affiliated persons and entities, and other non-income sources to make regular monthly payments to existing investors to give the appearance that it was a profitable organization.

28.    Plaintiff is informed and believes and thereon alleges that Defendant solicited and obtained additional investors on behalf of Four Star, and in furtherance of Four Star's scheme, while Defendant knew or should have known that Four Star was not a legitimate business, did not have revenues sufficient to pay any return to its investors, and that payments made by Four Star, including those characterized as "commissions", could only be derived from funds provided by the investments of new investors, including those referred to Four Star by Defendant.

5

SHULMAN HODGES &
BASTIAN LLP
3750 University Avenue
Suite 670
Riverside, CA 92501

3444-000\11

C:\Documents and Settings\annemarie\Local Settings\Temporary Internet Files\OLK2D\Complaint_Commissions 001.doc

Defendant's actions did not provide value to the Debtor, in that the solicitation and obtaining of new investors merely perpetuated the fraudulent scheme of Four Star.    Defendant received "commission" payments from Four Star in the amount $3,000, as follows (the "Commission Payments"):

| Check Date | Check No. | Amount |
|---|---|---|
| 2-29-00 | 7310 | $3,000 |
| | **TOTAL COMMISSION PAYMENTS:** | $3,000 |

29.    Plaintiff is informed and believes and thereon alleges that Defendant was also an investor in Four Star during the years 1997 through 2002.  Unlike nearly all of Four Star's investors, who lost all or nearly all of their investments, Defendant received returns that not only completely refunded the original principal of Defendant's investment, but resulted in a net profit to Defendant of $6,848,604.   If Defendant's commissions are included as returns, the net profit is $6,848,604.

30.    Plaintiff is informed and believes and thereon alleges that Defendant, as an investor of Four Star, received the following transfers of funds from Four Star ("Investor Payments"):

| Date | Ck# | Transfer |
|---|---|---|
| 05/31/2000 | 1013 | $ 90 |
| 06/30/01 | 114868 | $ 630 |
| 06/30/01 | 114867 | $ 209 |
| 04/22/02 | TRF | $ 5,005,699 |
| 04/22/02 | TRF | $ 8,792 |
| 01/16/98 | 1151 | $ 30,000 |
| 03/15/98 | 1525 | $ 30,000 |
| 04/15/98 | 1806 | $ 30,000 |
| 07/15/98 | 2516 | $ 30,000 |
| 11/04/98 | 3357 | $ 250,000 |
| 05/07/02 | 118705 | $ 264,000 |
| 07/31/98 | 51106 | $ 3,945 |
| 08/31/98 | 51281 | $ 5,000 |
| 09/30/98 | 51463 | $ 5,000 |
| 10/31/98 | 51654 | $ 5,000 |
| 11/30/98 | 51850 | $ 658 |
| 3/31/99 | 52716 | $ 3,255 |

6

SHULMAN HODGES &
BASTIAN LLP
3750 University Avenue
Suite 670
Riverside, CA 92501

3444-000\11

C:\Documents and Settings\annemarie\Local Settings\Temporary Internet Files\OLK2D7\Complaint_Commissions 001.doc

| Date | Ck# | Transfer |
|------|-----|----------|
| 4/30/99 | 52949 | $ 4,993 |
| 5/31/99 | 53194 | $ 12,000 |
| 6/30/99 | 53442 | $ 12,000 |
| 7/31/99 | 5598 | $ 18,000 |
| 8/31/99 | 5881 | $ 18,000 |
| 9/30/99 | 6137 | $ 18,000 |
| 10/31/99 | 6311 | $ 18,000 |
| 11/30/99 | 6507 | $ 18,000 |
| 11/30/99 | 54762 | $ 15,986 |
| 01/01/2000 | 6791 | $ 18,000 |
| 01/01/2000 | 55035 | $ 15,000 |
| 01/31/2000 | 7083 | $ 4,521 |
| 01/31/2000 | 7095 | $ 18,000 |
| 01/31/2000 | 55310 | $ 15,000 |
| 02/29/2000 | 7292 | $ 27,500 |
| 02/29/2000 | 7304 | $ 18,000 |
| 02/29/2000 | 55596 | $ 15,000 |
| 03/31/2000 | 320 | $ 48,575 |
| 03/31/2000 | 332 | $ 18,000 |
| 03/31/2000 | 1206 | $ 15,000 |
| 04/30/2000 | 522 | $ 52,500 |
| 04/30/2000 | 585 | $ 18,000 |
| 04/30/2000 | 1520 | $ 15,000 |
| 05/31/2000 | 794 | $ 52,500 |
| 05/31/2000 | 761 | $ 18,000 |
| 05/31/2000 | 1830 | $ 15,000 |
| 06/30/2000 | 1185 | $ 52,500 |
| 06/30/2000 | 1204 | $ 18,000 |
| 06/30/2000 | 2146 | $ 15,000 |
| 07/31/2000 | 1455 | $ 52,500 |
| 07/31/2000 | 1422 | $ 18,000 |
| 07/31/2000 | 112459 | $ 15,000 |
| 08/31/2000 | 1707 | $ 52,500 |
| 08/31/2000 | 1726 | $ 18,000 |
| 08/31/2000 | 112776 | $ 15,000 |
| 09/30/2000 | 1976 | $ 52,500 |
| 09/30/2000 | 1996 | $ 18,000 |
| 09/30/2000 | 113099 | $ 15,000 |
| 10/31/2000 | 2225 | $ 52,500 |
| 10/31/2000 | 2244 | $ 18,000 |

7

SHULMAN HODGES &
BASTIAN LLP
3750 University Avenue
Suite 670
Riverside, CA 92501

3444-000\11

C:\Documents and Settings\annemarie\Local Settings\Temporary Internet Files\OLK2D\Complaint_Commissions 001.doc

| Date | Ck# | Transfer |
|------|-----|----------|
| 10/31/2000 | 1113536 | $ 15,000 |
| 11/30/2000 | 112478 | $ 52,500 |
| 11/30/2000 | 112516 | $ 18,000 |
| 11/30/2000 | 1113851 | $ 15,000 |
| 01/01/01 | 112727 | $ 52,500 |
| 01/01/01 | 112764 | $ 18,000 |
| 01/01/01 | 1114165 | $ 15,000 |
| 01/31/01 | 113008 | $ 52,500 |
| 01/31/01 | 113027 | $ 18,000 |
| 01/31/01 | 1114482 | $ 15,000 |
| 02/28/01 | 113338 | $ 52,500 |
| 02/28/01 | 113376 | $ 18,000 |
| 02/28/01 | 1114809 | $ 15,000 |
| 03/31/01 | 113632 | $ 52,500 |
| 03/31/01 | 113670 | $ 18,000 |
| 03/31/01 | 1115140 | $ 15,000 |
| 04/30/01 | 113915 | $ 52,500 |
| 04/30/01 | 113953 | $ 18,000 |
| 04/30/01 | 1115517 | $ 15,000 |
| 05/31/01 | 114299 | $ 52,500 |
| 05/31/01 | 114337 | $ 18,000 |
| 05/31/01 | 1115842 | $ 7,500 |
| 06/30/01 | 114678 | $ 52,500 |
| 06/30/01 | 114644 | $ 18,000 |
| 06/30/01 | 1116174 | $ 15,000 |
| 07/31/01 | 115155 | $ 52,500 |
| 07/31/01 | 115193 | $ 18,000 |
| 07/31/01 | 1116520 | $ 15,000 |
| 08/31/01 | 115500 | $ 52,500 |
| 08/31/01 | 115539 | $ 18,000 |
| 08/31/01 | 1116865 | $ 15,000 |
| 09/30/01 | 115850 | $ 52,500 |
| 09/30/01 | 115889 | $ 18,000 |
| 09/30/01 | 1117217 | $ 15,000 |
| 10/15/01 | 116091 | $ 175,000 |
| 10/31/01 | 116349 | $ 52,500 |
| 10/31/01 | 116385 | $ 18,000 |
| 10/31/01 | 1117606 | $ 15,000 |
| 11/12/01 | 116499 | $ 220,505 |
| 11/30/01 | 116677 | $ 52,500 |

8

SHULMAN HODGES &
BASTIAN LLP
3750 University Avenue
Suite 670
Riverside, CA 92501

3444-000\11

C:\Documents and Settings\annemarie\Local Settings\Temporary Internet Files\OLK2D\Complaint_Commissions 001 doc

| Date | Ck# | Transfer |
|------|-----|----------|
| 11/30/01 | 116713 | $ 18,000 |
| 11/30/01 | 1117976 | $ 15,000 |
| 12/27/01 | 117107 | $ 199,640 |
| 01/01/02 | 116895 | $ 52,500 |
| 01/01/02 | 116932 | $ 18,000 |
| 01/01/02 | 1118359 | $ 15,000 |
| 01/31/02 | 117323 | $ 52,500 |
| 01/31/02 | 117359 | $ 18,000 |
| 01/31/02 | 1118733 | $ 15,000 |
| 02/28/02 | 117858 | $ 14,795 |
| 02/28/02 | 117666 | $ 52,500 |
| 02/28/02 | 117630 | $ 18,000 |
| 02/28/02 | 1119094 | $ 15,000 |
| 03/31/02 | 118215 | $ 75,000 |
| 03/31/02 | 118026 | $ 52,500 |
| 03/31/02 | 117989 | $ 18,000 |
| 03/31/02 | 1120839 | $ 15,000 |
| 04/30/02 | 118662 | $ 37,500 |
| 04/30/02 | 118518 | $ 52,500 |
| 04/30/02 | 118482 | $ 18,000 |
| 04/30/02 | 1121206 | $ 15,000 |
| 05/31/02 | 118959 | $ 52,500 |
| 05/31/02 | 119082 | $ 18,000 |
| 05/31/02 | 1121603 | $ 15,000 |
| 06/30/02 | 119416 | $ 52,500 |
| 06/30/02 | 119452 | $ 18,000 |
| 06/30/02 | 1121993 | $ 15,000 |
| 07/31/02 | 119700 | $ 52,500 |
| 07/31/02 | 119759 | $ 18,000 |
| 07/31/02 | 1122386 | $ 15,000 |
| 08/31/02 | 119977 | $ 52,500 |
| 08/31/02 | 120000 | $ 18,000 |
| 08/31/02 | 1122738 | $ 15,000 |
| 9/24/97 | 8090 | $ 100,000 |
| 02/15/98 | 1348 | $ 30,000 |
| 05/15/98 | 2057 | $ 30,000 |
| 06/15/98 | 2303 | $ 30,000 |
| 08/15/98 | 2721 | $ 30,000 |
| 09/15/98 | 2946 | $ 30,000 |
| 10/15/98 | 3174 | $ 9,763 |

9

SHULMAN HODGES &
BASTIAN LLP
3750 University Avenue
Suite 670
Riverside, CA 92501

3444-000\11

C:\Documents and Settings\annemarie\Local Settings\Temporary Internet Files\OLK2D\Complaint_Commissions 001.doc

| Date | Ck# | Transfer |
|------|-----|----------|
| 08/17/01 | 115399 | $    164,062 |
| 11/15/97 | 8386 | $    30,000 |
| 12/15/97 | 8440 | $    30,000 |
| 2/3/97 | 7183 | $    2,917 |
| 3/28/97 | 1755 | $    2,917 |
| 5/28/97 | 1908 | $    2,917 |
| 4/28/97 | 7572 | $    2,917 |
| 8/28/97 | 8031 | $    2,917 |
| 7/28/97 | 7946 | $    2,917 |
| 2/28/97 | 7322 | $    2,917 |
| 6/27/97 | 7849 | $    2,917 |
| 10/15/97 | 8223 | $    30,000 |
| 05/31/2000 | 1831 | $    7,151 |
| 06/30/2000 | 2147 | $    7,500 |
| 07/31/2000 | 112460 | $    7,500 |
| 08/31/2000 | 112777 | $    7,500 |
| 09/30/2000 | 113100 | $    7,500 |
| 10/31/2000 | 1113537 | $    7,500 |
| 11/30/2000 | 1113852 | $    7,500 |
| 01/01/01 | 1114166 | $    7,500 |
| 01/31/01 | 1114483 | $    7,500 |
| 02/28/01 | 1114810 | $    7,500 |
| 03/31/01 | 1115141 | $    7,500 |
| 04/30/01 | 1115518 | $    7,500 |
| 05/31/01 | 1115843 | $    7,500 |
| **TOTAL TRANSFERS:** | | **$  9,848,604** |

31.    The Commission Payments and Investor Payments shall be collectively referred to hereinafter as the "Transfers".

32.    Plaintiff is informed and believes that additional transfers may have been made to the Defendant within four years of the Petition Date.  Plaintiff specifically reserves the right to amend this Complaint to allege additional transfers which may become known after further investigation and discovery is conducted.

33.    Plaintiff is informed and believes that the Debtor did not receive value in exchange for such Transfers.

10

SHULMAN HODGES &
BASTIAN LLP
3750 University Avenue
Suite 670
Riverside, CA 92501

3444-000\11

C:\Documents and Settings\annemarie\Local Settings\Temporary Internet Files\OLK2D\Complaint_Commissions 001.doc

1    34.    Plaintiff is informed and believes that such Transfers are avoidable as fraudulent

2    transfers.

3    **FIRST CLAIM FOR RELIEF**

4    [Avoidance of Intentional Fraudulent Transfers]

5    [11 U.S.C. §§ 544, 548; Cal. Civ. C. §§ 3439.04, 3439.07, 3439.09]

6    35.    Plaintiff hereby incorporates by reference paragraphs 1 through 34 and realleges

7    these paragraphs as though set forth in full.

8    36.    Plaintiff is informed and believes and based thereon alleges that the Transfers

9    were made to or for the benefit of the Defendant.

10    37.    Plaintiff is informed and believes and based thereon alleges that the Transfers

11    were for no consideration or less than reasonably equivalent value.

12    38.    Plaintiff is informed and believes and based thereon alleges that the Transfers

13    were made at a time when the Debtor was insolvent, and/or was rendered insolvent by virtue of

14    said Transfers.

15    39.    Plaintiff is informed and believes and based thereon alleges that the Transfers

16    were made on or within four  (4) years of the Petition Date, but in no event longer than seven

17    years prior the Petition Date.

18    40.    Plaintiff is informed and believes and based thereon alleges that the Transfers

19    were made either in anticipation of bankruptcy and/or to prevent the Debtor from paying its

20    debts.  They were made for the purpose of preventing a prospective bankruptcy trustee and/or

21    creditors of the Debtor from obtaining the value of the Transfers.  Plaintiff is informed and

22    believes and based thereon alleges that the Transfers were made with the actual intent to hinder,

23    delay or defraud creditors of the Debtor and that said Defendant had knowledge of this intent by

24    actively and knowingly participating in the sham transactions described hereinabove.

25    41.    Based upon the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C.

26    §§ 544, 548 and/or California Civil Code §§ 3439.04, 3439.07, 3439.09.

27

28

11

SHULMAN HODGES &
BASTIAN LLP
3750 University Avenue
Suite 670
Riverside, CA 92501

3444-000\11

C:\Documents and Settings\annemarie\Local Settings\Temporary Internet Files\OLK2D\Complaint_Commissions 001.doc

## SECOND CLAIM FOR RELIEF

[Avoidance of Constructive Fraudulent Transfers]

[11 U.S.C. §§ 544, 548; Cal. Civ. C. §§ 3439.04. 3439.05, 3439.07, 3439.09]

42.    Plaintiff hereby incorporates by reference paragraphs 1 through 41 and realleges these paragraphs as though set forth in full.

43.    Plaintiff is informed and believes and based thereon alleges that the Transfers were made to or for the benefit of the Defendant.

44.    Plaintiff is informed and believes and based thereon alleges that there are present creditors of the Debtor listed at the time of the Transfers that still remain unpaid as of the Petition Date.

45.    Plaintiff is informed and believes and based thereon alleges that future creditors of the Debtor existed following the Transfers who remain unpaid as of the Petition Date.

46.    Plaintiff is informed and believes and based thereon alleges that the Transfers were made on or within four  (4) years of the Petition Date, but in no event longer than seven years prior the Petition Date.

47.    Plaintiff is informed and believes and based thereon alleges that Transfers were made:

    a.  For less than reasonably equivalent value, or any value, in exchange for said Transfers;

    b.  While the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or the transaction;

    c.  While the Debtor intended to incur, or believed or reasonably should have believe the Debtor would incur, debts beyond the Debtor's ability to pay them as they became due; and/or

    d.  By the time that the Debtor was insolvent and/or was rendered insolvent by virtue of said Transfers.

12

SHULMAN HODGES &
BASTIAN LLP
3750 University Avenue
Suite 670
Riverside, CA 92501

3444-000\11

C:\Documents and Settings\annemarie\Local Settings\Temporary Internet Files\OLK2D\Complaint_Commissions 001.doc

1    48.    Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C.

2    §§ 544, 548 and/or California Civil Code §§ 3439.04, 3439.05, 3439.07, 3439.09.

3                        **THIRD CLAIM FOR RELIEF**

4                        [Recovery of Avoided Transfers]

5                        [11 U.S.C. § §550]

6    49.    Plaintiff hereby incorporates by reference paragraphs 1 through 48 and realleges

7    these paragraphs as though set forth in full.

8    50.    Plaintiff may recover for the benefit of the Estate, the Transfers or the value of

9    such Transfers from the Defendant or from the entity or entities for whose benefit such Transfers

10   were made, or any immediate or mediate transferee of such initial transferee.

11   51.    The Transfers (including any other transfers from the Debtor to the Defendant

12   discovered after the date of this Complaint) are recoverable from the Defendant pursuant to 11

13   U.S.C. § 550 to the extent such Transfers are avoided.

14                       **FOURTH CLAIM FOR RELIEF**

15                       [Disallowance of Claims]

16                       [11 U.S.C. § 502(d)]

17   52.    Plaintiff hereby incorporates by reference paragraphs 1 through 51 and realleges

18   these paragraphs as though set forth in full.

19   53.    Plaintiff is informed and believes and based thereon alleges that the Defendant

20   received avoidable transfers and Defendant is the party from which such transfers are

21   recoverable pursuant to 11 U.S.C. §550.

22   54.    Defendant has not paid the amount or turned over any such property for which

23   Defendant is liable pursuant to the Bankruptcy Code.

24   55.    Pursuant to 11 U.S.C. §502(d), to the extent Defendant files a claim, such claim

25   should be disallowed.

26

27

28

13

SHULMAN HODGES &
BASTIAN LLP
3750 University Avenue
Suite 670
Riverside, CA 92501

3444-000\11

C:\Documents and Settings\annemarie\Local Settings\Temporary Internet Files\OLK2D\Complaint_Commissions 001.doc

1    **WHEREFORE**, Plaintiff prays for Judgment against Defendant as follows:

2    1.    That the Transfers identified herein are avoided as fraudulent transfers under 11

3  U.S.C. §§ 544, 548 and/or Cal. Civ. Code §§ 3439.04, 3439.05, 3439.07, 3439.09;

4    2.    That Plaintiff shall recover from the Defendant or any immediate or mediate

5  transferee of the Defendant the Transfers and any other avoided transfers discovered after the

6  date of this Complaint under 11 U.S.C. § 550;

7    3.    That Judgment be entered against the Defendant for the value of the Transfers,

8  together with interest thereon at the legal rate from the date of each of the Transfers;

9    4.    That if Defendant fails or refuses to turn over the Transfers and/or the value of

10  such Transfers to Plaintiff, any claim of Defendant shall be disallowed;

11    5.    For costs of suit incurred herein, including attorneys' fees and costs as provided

12  by applicable case law, statute and/or agreement of the parties; and

13    6.    For such other and further relief as the Court may deem just and proper under the

14  circumstances of this case.

15

16                       **SHULMAN HODGES & BASTIAN LLP**

17

18  Dated: November 23, 2005

19                       James C. Bastian, Jr.
                           Irena Leigh Norton

20                       Manijha Kadir
                       Special Counsel for Richard A. Marshack, Chapter 7

21                       Trustee for the Bankruptcy Estate of Four Star Financial
                       Services

22

23

24

25

26

27

28                             14

SHULMAN HODGES &
BASTIAN LLP
3750 University Avenue
Suite 670
Riverside, CA 92501

3444-000\11

G:\Wp\Cases\E-P Four Star Financial Services\Adv\Roberts David\Complaint_Commissions.001.doc

# ORIGINAL

| B. 104<br>(Rev. 8/99) | **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|---|

| PLAINTIFFS<br>RICHARD A. MARSHACK, solely in his capacity as the Chapter 7 Trustee,<br><br>Address | DEFENDANTS<br>**DAVID ROBERTS, an individual**<br><br>Address<br>947 Tiverton Avenue, Los Angeles, CA 90024 |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone Number)<br>James C. Bastian, Jr. – Bar No. 175415<br>Irena Leigh Norton – Bar No. 167017<br>Manijha Kadir – Bar No. 219974<br>**SHULMAN HODGES & BASTIAN**<br>3750 University Avenue, Suite 670<br>Riverside, California 92501<br>Telephone:    (949) 340-3400<br>Facsimile:    (949) 340-3000 | ATTORNEYS (If Known)<br>**Unknown** | **RECEIVED**<br><br>NOV 2 3 2005<br><br>CLERK, U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY            Deputy Clerk |
|---|---|---|

| PARTY (Check one box only) | 1 U.S. PLAINTIFF | 2 U.S. DEFENDANT | 3 U.S. NOT A PARTY |
|---|---|---|---|

**CAUSE OF ACTION** (Write a brief statement of cause of action, including all U.S. Statutes involved)

Complaint to Recover Money or Property

## NATURE OF SUIT
(Check the one most appropriate box only.)

| | | | | | |
|---|---|---|---|---|---|
| ☒454 | To recover money or property | 455 | To revoke an order of confirmation of a Chapter11 or Chapter 13 Plan | 456 | To obtain a declaratory judgment relating to any of foregoing causes of action |
| 435 | To determine validity, priority or extent of a lien or other interest in property | 426 | To determine the dischargeability of a debt 11 U.S.C. §523 | 459 | To determine a claim or cause of action removed to a bankruptcy court |
| 456 | To obtain approval for the sale of both the interest of the estate and of a co-owner in property | 434 | To obtain an injunction or other equitable relief | 498 | Other (specify) |
| 424 | To object to or revoke a discharge 11 U.S.C. 727 | 457 | To subordinate any allowed claim or interest except where such subordination is provided in a plan | | |

| ORIGIN OF PROCEEDINGS<br>(Check one box only.) | ☒1 Original Proceeding | 2 Removed Proceeding | 4 Reinstated or Reopened | 5 Transferred from Another Bankruptcy Court | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 |
|---|---|---|---|---|---|

| DEMAND | NEAREST THOUSAND<br>$10M | OTHER RELIEF SOUGHT | JURY DEMAND |
|---|---|---|---|

## BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR<br>Four Star Financial Services LLC | BANKRUPTCY CASE NUMBER<br>**LA 03-37579 TD** |
|---|---|

| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL | DIVISIONAL OFFICE<br>LOS ANGELES | NAME OF JUDGE<br>THOMAS B. DONOVAN |
|---|---|---|

## RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|

| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|

| FILING FEE    (Check one box only.) | FEE ATTACHED | FEE NOT REQUIRED | ☒ FEE IS DEFERRED |
|---|---|---|---|

| DATE<br>November 23, 2005 | PRINT NAME<br>Irena Leigh Norton | SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>SHULMAN HODGES & BASTIAN LLP<br>By: *Irena Leigh Norton* |
|---|---|---|

G:\Wp\Cases\E-F\Four Star Financial Services\Adv\RobertsDavid\AdvCoverSheet.doc

**EXHIBIT 26**

1  RYAN D. LAPIDUS (Bar No. 196838)
   THE LAW OFFICES OF RYAN D. LAPIDUS
2  A PROFESSIONAL LAW CORPORATION
   211 SOUTH BEVERLY DRIVE, SUITE 205
3  BEVERLY HILLS, CALIFORNIA 90212
   TEL: 310-550-8700
4  FAX: 310-943-2471

5  Attorneys for Plaintiff Steve Gevirtz

6

7              UNITED STATES DISTRICT COURT

8             CENTRAL DISTRICT OF CALIFORNIA

9                   CENTRAL DIVISION

10                                    _ 0 3 - 5 5 4 8 RSWL    VBKx

11  STEVE GEVIRTZ, an individual,      CASE NO.:

12            Plaintiff,               **COMPLAINT FOR:**

13        vs.                          **(1) VIOLATIONS OF THE
                                            SECURITIES EXCHANGE ACT
14  FOUR STAR FINANCIAL                     OF 1934;**
    SERVICES, LLC, an entity of unknown  **(2) VIOLATIONS OF THE
15  origin; ANSON, GARRETT & CO., an         SECURITIES ACT OF 1933;**
    entity of unknown origin; MARK      **(3) VIOLATIONS OF THE
16  COHN, an individual; JACK               RACKETEER INFLUENCED
    GARRETT, an individual; RONALD          AND CORRUPT
17  ANSON, an individual; and DOES 1        ORGANIZATIONS ACT
    through 9,                              (RICO);**
18                                     **(4) FRAUD IN THE
            Defendants.                      INDUCEMENT;**
19                                     **(5) FRAUD AND DECEIT;**
                                       **(6) BREACH OF FIDUCIARY
20                                          DUTY;**
                                       **(7) NEGLIGENCE;**
21                                     **(8) UNFAIR BUSINESS
                                            PRACTICES.**
22

23                                     **DEMAND FOR TRIAL BY JURY**

24      Plaintiff Steve Gevirtz ("Plaintiff") complains and alleges as follows:

25                    <u>**NATURE OF THE ACTION**</u>

26      1.    This is a federal securities action brought by the Plaintiff against

27  defendants Four Star Financial Services, LLC, controlling individuals and

28  tortfeasors, Mark Cohn, Jack Garrett and Ronald Anson, and co-conspirator/aider

ENTER ON ICMS

AUG - 7 2003

                    COMPLAINT - 1

1  and abettor/alter-ego Anson, Garrett & Co. These entities and persons fraudulently
2  induced Plaintiff to invest in Four Star Financial Services, LLC which Plaintiff was
3  told orally and in writing via a private placement memorandum and accounting
4  balance sheets and income statements was a low risk, hedged telecommunications
5  investment vehicle with equity in excess of $68 million as of December 31, 2001
6  and $77 million as of September 30, 2002. In reality, none of Plaintiff's
7  $375,000.00 investment was placed in any telecommunications investment and
8  Four Star Financial Services, LLC conducted no transactions of this sort
9  subsequent to the receipt of Plaintiff's funds. Instead, pursuant to their fraudulent
10 and unlawful scheme, this investment was seized by defendants, and each of them,
11 through their false representations in connection with debts and obligations
12 attendant to undisclosed company and personal liabilities, including expenditures
13 in connection with criminal proceedings (resulting in convictions of defendants
14 Four Star Financial Services, LLC and Mark Cohn), civil claims and other debts of
15 the limited liability company which, contrary to prior representations, had
16 previously suffered a fatal collapse in equity and liquidity. Indeed, it was this
17 collapse that precipitated the Defendants' desperate fraudulent scheme to obtain
18 capital in the form of Plaintiff's supposed investment.   Plaintiff seeks to recover
19 damages caused by Defendants' violations of Section 10(b) of the Securities
20 Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated there
21 under, violations of Section 20(a) of the Exchange Act, registration violations of
22 Section 12 of the Securities Act of 1933 (the "Securities Act") and violations of the
23 Racketeer Influenced and Corrupt Organizations Act ("RICO") as well as damages
24 and relief attendant to State of California claims including fraud in the inducement
25 and fraud.
26
27
28

COMPLAINT - 2

**THE PARTIES**

2.    Plaintiff Steve Gevirtz is an individual domiciled in the State of California.  Plaintiff was deceived and induced into investing in the Defendants' unlawful securities scheme as more fully described herein.

3.    Defendant Four Star Financial Services, LLC ("Four Star") is an entity of unknown origin doing business in this judicial district.  Defendant Four Star by and through oral and written representations of its controlling individuals Mark Cohn, Jack Garrett and Ronald Anson and co-conspirator/aider and abettor/alter ego Anson, Garrett & Co. perpetrated the federal securities violations, fraud and other unlawful acts complained of herein.

4.    Defendant Anson, Garrett & Co. is an entity of unknown origin doing business in this financial district.  At relevant points herein, defendant Anson, Garrett & Co. served as the point of sale for the fraudulent transaction alleged herein, provided false financial statements and other false accounting records used to intentionally deceive and mislead Plaintiff and otherwise conspired with and aided and abetted the other defendants.  Defendant Anson, Garrett & Co., sharing the same office and much of the same controlling individuals and other staff as defendant Four Star, making intentional misrepresentations for Four Star on its letterhead, emails and in its offices and acting as the point of sale for the fraudulent transaction alleged herein is an alter-ego and/or co-conspirator and/or aider and abettor of Four Star for purposes of this action.

5.    Defendant Mark Cohn is an individual and controlling individual of defendant Four Star.

6.    Defendant Jack Garrett is an individual and controlling individual of defendants Four Star and Anson, Garrett & Co.

7.    Defendant Ronald Anson is an individual and controlling individual of defendants Four Star and Anson, Garrett & Co.

8.     The true names and capacities of defendants Does 1 through 9 are unknown to Plaintiff who therefore sues said defendants by such fictitious names. Plaintiff will amend this complaint to state the true names and capacities of said fictitious defendants when they have been ascertained. (Defendants Four Star, Anson, Garrett & Co., Cohn, Garrett, Anson and Does 1 through 9 will be collectively referred to herein as the "Defendants.")

9.     Plaintiff is informed and believes and based thereon alleges that, at all material times, each of the Defendants was acting in a corporate, parent, subsidiary, affiliate, supervisor, agency, associate, employee, employer, proprietor, conspiratorial, alter-ego, co-conspirator and/or other capacity as the parent, subsidiary, agent, supervisor, affiliate, employer, employee, proprietor, co-conspirator, aider and abettor and/or alter ego of the other Defendants and with the permission, consent, knowledge, authorization, ratification and direction of the other Defendants.

## JURISDICTION AND VENUE

10.   This action arises under and pursuant to, *inter alia*, Section 10(b) of the Exchange Act, Rule 10b-5 promulgated there under by the SEC (17 C.F.R. § 240.10b-5) and Section 20(a) of the Exchange Act as well as other federal claims including violations of the Securities Act and RICO. This Court has jurisdiction of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78) and 28 U.S.C. §§ 1331 and 1337. Thus, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1338(a) and (b). Additionally, the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the related state law claims.

11.   Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Defendants Four Star and Anson, Garrett & Co. have their headquarters in this district and many of the acts complained of herein occurred in substantial part in this district.

1        12.  In connection with the acts alleged in this Complaint, Defendants,

2    directly or indirectly, used the means and instrumentalities of interstate commerce,

3    including, but not limited to interstate investment vehicles, the mails, interstate

4    telephonic communications, interstate wire transactions and other electronic

5    communications.

6    **COMMON ALLEGATIONS**

7        13.  On or about July 2002, Defendants provided Plaintiff with a private

8    placement memorandum (the "PPM") offering securities in the form of $25,000

9    membership units in Four Star.  The PPM specified that the principal types of

10   business conducted by Four Star included accounts receivable financing and

11   collateralized bridge loans primarily to telecommunications industry participants

12   including  "Pay Per Call Providers," "Telephone Line Marketing Agents," "Small

13   Telephone Carriers" and "Providers of voicemail, Internet services, and paging and

14   cellular services."  As explained in the PPM regarding Four Star's accounts

15   receivables lending activities, "the Company enters into a written financing

16   agreement with the client under which the client assigns its rights in the accounts

17   receivable to the Company in exchange for payment by the Company of cash equal

18   to the face amount of the receivables *less* …" fees, bad debt reserve of the billing

19   intermediaries and, of course, Four Star's reserve for chargebacks and Four Star's

20   financing fee.  As described in the PPM regarding Four Star's bridge loan

21   activities, "The Company applies strict lending standards to its bridge loan criteria:

22   Payment of at least the principal guaranteed by an insurance company with a

23   Best's rating of B or better; Payment of at least the principal amount is guaranteed

24   by a company with a net worth of at least 30 times the amount of the subject

25   obligations; Payment (or purchase of the obligation) is guaranteed by a government

26   agency; Payment is secured by collateral with a value of at least one-and-one half

27   (1.5) times the face value of the subject obligations; Payment is secured by cash or

28   cash equivalents; or The obligation is of, or payment is guaranteed by, a company

1  with a net worth of $75 million or more." These statements were material
2  representations relied upon by Plaintiff in ultimately purchasing units as outlined
3  herein below.

4      14.  These statements, and others, in the PPM were false and made by the
5  Defendants to Plaintiff knowing that they were false with the intent to deceive and
6  mislead Plaintiff.

7      15.  As specified in the PPM, the membership units were not and would
8  not be registered under the Securities Act of 1933.

9      16.  The PPM purported to outline liabilities, contingencies and legal
10 claims against Four Star but omitted certain substantial material liabilities,
11 contingencies and legal issues including without limitation the following:

12      • Criminal conduct of Four Star and Mark Cohn ultimately
13        leading to convictions.

14      • On information and belief, knowledge of investigation of
15        criminal conduct of Four Star and Mark Cohn ultimately
16        leading to convictions.

17      • Devastating cash flow and liquidity issues surrounding Four
18        Star's purported equity arising from what was later explained
19        by Defendants to be a liquidity shortfall related to delays in
20        securing the cash proceeds from the previous sale of Four
21        Star's telephone arbitrage portfolio to an international bank that
22        were collateralized by certificates of deposit held by an
23        Argentine bank.  (Not only was this purported liquidity
24        shortfall not disclosed, but the sale of the telephone arbitrage
25        portfolio was previously expressly mischaracterized by
26        Defendants to Plaintiff as a significant windfall for Four Star.)

27      • That the alleged capital to be received by Four Star through the
28        purported sale of the telephone arbitrage portfolio and

COMPLAINT - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

imminent conversion of the certificates of deposit located in Argentina into cash still only represented about 50% to 60% of the capital obligations that Four Star has to investors. Consequently, Plaintiff was fraudulently induced to invest in as instrument that comprised an immediate and significant liquidity discount to the capital invested, in essence, a sinking ship. (The last report from Defendants to Plaintiff purports that the proceeds from the purported Argentine certificates of deposit have not been recovered and details surrounding the sale of Four Star's telecommunications portfolio are vague, including the fact that the definitive legal documentation memorializing the purported transaction has not been located.)

- That the new capital received from Plaintiff would not be used for purposes as expressly explained in the PPM and by the Defendants to Plaintiff (*i.e.*, hedged telecommunications investment) and would instead be diverted to meet other non-disclosed liabilities and liquidity shortfalls.

- Advances to Four Star by controlling individuals including Ron Anson to meet mounting nondisclosed Four Star debts, liabilities and other operating obligations prior to Plaintiff's investment and fraudulent inducement as explained herein.

- Various other civil claims and contingent liabilities against Four Star and its managers.

- The actual or attempted withdrawal and/or rescission of numerous other member investors based on newly discovered liabilities and/or the deteriorating financial condition of Four Star; and

COMPLAINT - 7

- That the Four Star investors were forced to begin accruing current interest payments (that had been paid previously on a current basis) due to Four Star's accelerating liquidity problems;

- Insolvency issues involving Four Star, including a study initiated by Qwest Communications as a judgment creditor of Four Star which resulted in an insolvency opinion regarding Four Star.

17.  The PPM also provided summary descriptions of management experience and managers, including defendants Anson, Garrett and Cohn, but omitted mention of criminal conduct and/or known investigation into criminal conduct of controlling individual Mark Cohn and Four Star itself or any record of current or previous financial defaults, liabilities and debts of the managers.

18.  Because the PPM was dated June 23, 1999, although received in July of 2002 by Plaintiff, Plaintiff conducted further due diligence and met with the defendants, and each of them, who made further material and false representations relied upon by Plaintiff as follows:

- On or about July 2002, Plaintiff met with Jack Garrett and Ronald Anson on behalf of Four Star in the Four Star/Anson, Garrett & Co. offices in Los Angeles who reiterated the principal business investment of Four Star, namely, hedged telecommunications investment vehicles.  Because these investments were reportedly hedged and/or secured, defendants Garrett and Anson specified that the risk was minimal and that it was a profitable enterprise for Four Star and its members and represented a conservative investment philosophy.  The Four Star principals also expressly represented that a recent sale of a telecommunications arbitrage investment portfolio represented

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a major gain to the Four Star, equating to over three times the capital invested and an injection of liquidity exceeding $150 million.

- Plaintiff received two balance sheets from Defendants, first a December 31, 2001 balance sheet which showed a purported $68 million in equity and, also, a September 30, 2002 balance sheet which showed a purported (and, growth enhanced) $77 million in equity.  These balance sheets lacked reasonable factual basis as known by each of the Defendants.

- Also on or about September 13, 2002, Plaintiff met with Mark Cohn in San Francisco who further reiterated (while Plaintiff took detailed notes) the principal business investment of Four Star, namely, hedged telecommunications investment arbitrage vehicles per previous representations.  Because these investments were hedged, defendant Cohn specified that the risk was minimal, and that it was a profitable enterprise for Four Star and its members.  In that discussion, defendant Cohn described in detail the mechanics of certain of the international telephone arbitrage investment vehicles and stated that since the strategy employed offsetting contracts with international telecommunications carriers, the primary risk was the time required to collect receivables, since the long distance carriers were sometimes slow and inefficient (albeit credit-worthy) in paying their obligations.

19.  These statements, and others, made by Defendants were false and made by the Defendants to Plaintiff knowing that they were false with the intent to deceive and mislead Plaintiff.

---

COMPLAINT - 9

20. Defendants, and each of them, through these aforementioned meetings and false financial disclosures omitted and failed to inform Plaintiff of the following:

- Criminal conduct of Four Star and Mark Cohn ultimately leading to convictions.

- On information and belief, knowledge of investigation of criminal conduct of Four Star and Mark Cohn ultimately leading to convictions.

- Devastating cash flow and liquidity issues surrounding Four Star's purported equity arising from what was later explained by Defendants to be a liquidity shortfall related to delays in securing the cash proceeds from the previous sale of Four Star's telephone arbitrage portfolio to an international bank that were collateralized by certificates of deposit held by an Argentine bank. (Not only was this purported liquidity shortfall not disclosed, but the sale of the telephone arbitrage portfolio was previously expressly mischaracterized by Defendants to Plaintiff as a significant windfall for Four Star.)

- That the alleged capital to be received by Four Star through the purported sale of the telephone arbitrage portfolio and imminent conversion of the certificates of deposit located in Argentina into cash still only represented about 50% to 60% of the capital obligations that Four Star has to investors. Consequently, Plaintiff was fraudulently induced to invest in as instrument that comprised an immediate and significant liquidity discount to the capital invested, in essence, a sinking ship. (The last report from Defendants to Plaintiff purports that the proceeds from the purported Argentine certificates of

COMPLAINT - 10

deposit have not been recovered and details surrounding the sale of Four Star's telecommunications portfolio are vague, including the fact that the definitive legal documentation memorializing the purported transaction has not been located.)

- That the new capital received from Plaintiff would not be used for purposes as expressly explained in the PPM and by the Defendants to Plaintiff (*i.e.*, hedged and secured telecommunications investment) and would instead be diverted to meet other non-disclosed liabilities and liquidity shortfalls.

- Advances to Four Star by controlling individuals including Ron Anson to meet mounting nondisclosed Four Star debts, liabilities and other operating obligations prior to Plaintiff's investment and fraudulent inducement as explained herein.

- Various other civil claims and contingent liabilities against Four Star and its managers.

- The actual or attempted withdrawal and/or rescission of numerous other member investors based on newly discovered liabilities and/or the deteriorating financial condition of Four Star; and

- That the Four Star investors were forced to begin accruing current interest payments (that had been paid previously on a current basis) due to Four Star's accelerating liquidity problems;

- Insolvency issues involving Four Star, including a study initiated by Qwest Communications as a judgment creditor of Four Star which resulted in an insolvency opinion regarding Four Star.

COMPLAINT - 11

1    21.  Based on these material representations, including representations
2  going to the very essence of what the investment was supposedly about (namely,
3  telecommunications investment vehicles) and false balance sheet and/or financial
4  statement information provided by Anson, Garrett & Co., Plaintiff relied upon
5  these representations and was induced to invest $375,000.00 in Four Star.  A
6  subscription agreement and operating agreement documents were provided to
7  Plaintiff on or about October 2002 by Rita Fernandez of Anson, Garrett & Co.
8  along with wiring instructions.  Plaintiff executed these agreements, wired to
9  Defendants his $375,000.00 and was ultimately accepted into Four Star later that
10 month and received documentation of his securities investment.  These units
11 purchased by Plaintiff are securities as defined by applicable federal law.

12   22.  In reality, Defendants' numerous representations were false.  Not only
13 was none of Plaintiff's investment deployed into any telecommunications
14 investment vehicle, Four Star did not conduct any further business of this sort upon
15 receipt of Plaintiff's investment and, instead, took the funds pursuant to
16 Defendants' fraudulent and unlawful scheme to meet mounting non-disclosed
17 debts and liabilities (including criminal liabilities) of Four Star and certain of its
18 controlling individuals.  Unbeknownst to Plaintiff, Four Star was in financial
19 disarray at the time Defendants fraudulently induced Plaintiff to invest his money
20 and Plaintiff's money was ostensibly used to temporarily fund liquidity shortfalls
21 and/or attempt to abate substantial non-disclosed liabilities.  In essence,
22 Defendants robbed Peter (Plaintiff) to pay Paul.

23   23.  Defendants, and each of them, have to this date continued their
24 misrepresentations and attempted cover-up of their intentional material
25 misrepresentations and omissions via inaccurate and incomplete communications
26 to Plaintiff concerning criminal proceedings and the locations and liquidity of the
27 sums traced to Plaintiff's investment.

28

---

24. Defendants' actions as alleged herein constitute violations of the Exchange Act, the Securities Act, RICO and other laws as specified herein below.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF SECTIONS 20(a) AND 10(b) EXCHANGE ACT, RULE 10b-5 PROMULGATED THEREUNDER

25. Plaintiff incorporates herein by reference paragraphs 1 - 24 of the Complaint.

26. Defendants, and each of them, carried out a plan, scheme and course of conduct that was intended to and did deceive Plaintiff into purchasing securities as alleged herein. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

27. These Defendants, and each of them, employed devices, schemes and artifices to defraud, made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading, and engaged in acts, practices and a course of business which operated as a fraud and deceit upon Plaintiff who purchased units of Four Star based on these representations and omissions, including misrepresentations regarding the purported telecommunications nature of the securities and contingent liabilities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated there under.

28. Defendants' material misrepresentations and/or omissions were made knowingly or recklessly and for the purpose and effect of inducing Plaintiff to purchase units of the Four Star security. The Defendants, and each of them, had no reasonable basis for their many misrepresentations and, indeed, based on their abject and demonstrable falsity intentionally used them in their scheme to intentionally defraud Plaintiff. Scienter is manifest. The Defendants, and each of them, also failed to disclose material, adverse information about Four Star, its financial condition and its controlling individuals which they possessed as part of their scheme to intentionally defraud Plaintiff.

29. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts as set forth herein, Four Star securities were falsely represented to be an active telecommunications investment vehicle when, in fact, it was not. Likewise, material liabilities were not disclosed as herein alleged. In ignorance of these facts and reasonably relying directly upon the Defendants' false and misleading statements and in the absence of material adverse information that was known to Defendants but not disclosed to Plaintiff, Plaintiff purchased $375,000.00 worth of units of Four Star thinking that the security was a hedged telecommunications investment vehicle when it was, in point of fact, not and thinking that certain material liabilities not disclosed did not exist.

30. At the time of said misrepresentations and omissions, Plaintiff was ignorant of their falsity and believed them to be true. Had Plaintiff known of the omitted material facts – including that Four Star was not actually using his investment in connection with any hedged telecommunications investment vehicle and was, contrary to financial statements and previous representations, in dire financial straights – Plaintiff would not have purchased or otherwise acquired his units of Four Star at all.

31. Plaintiff was injured because the risks that materialized were risks of which he was unaware as a result of the Defendants' misrepresentations, omissions and other fraudulent conduct alleged herein. Absent Defendants' fraudulent conduct, Plaintiff would not have been injured.

32. By virtue of the foregoing, Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated there under.

33. As detailed above, defendants Anson, Garrett, Cohn and Anson, Garrett & Co. were controlling persons of defendant Four Star within the meaning of Section 20(a) of Exchange Act. These defendants were controlling persons of Four Star because each had the influence over Four Star to cause and did cause

1  Four Star to engage in the wrongful conduct complained of herein and although
2  each had the power to have prevented Four Star from engaging in the unlawful
3  conduct alleged herein, it purposely and intentionally did not use that power to do
4  so. Accordingly, as controlling persons of Four Star, each of these other
5  defendants is liable to the same extent as Four Star pursuant to Section 20(a).
6         34.  As a direct and proximate result of Defendants' wrongful conduct,
7  Plaintiff suffered damages.

8                     SECOND CAUSE OF ACTION
9             VIOLATIONS OF THE SECURITIES ACT OF 1933
10        35.  Plaintiff incorporates herein by reference paragraphs 1 - 34 of the
11  Complaint.
12        36.  Defendants violated Section 12 of the Securities Act of 1933 because
13  they marketed and sold to Plaintiff a security using the mails and other instruments
14  of interstate commerce, using a prospectus (including the PPM and other written
15  communications) without filing a registration or, on information and belief, no
16  falling within a lawful safe harbor.
17        37.  This lack of registration deprived Plaintiff of all the protections and
18  oversight afforded him pursuant to federal securities regulations and agencies.
19        38.  Accordingly, Plaintiff has the right of rescission with respect to the
20  $375,000.00 he invested and seeks such relief pursuant to the Securities Act.

21                     THIRD CAUSE OF ACTION
22  VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT
23                   ORGANIZATIONS ACT (RICO)
24        39.  Plaintiff incorporates herein by reference paragraphs 1 - 38 of the
25  Complaint.
26        40.  Both Four Star and Anson, Garrett & Co. were and each are a
27  business enterprise as defined by 18 USC §1961(4), which such section is part of
28  that federal act commonly known as Racketeer Influenced and Corrupt

---

COMPLAINT - 15

1 Organization Act ("RICO"). Each of these enterprises was dominated and
2 controlled by defendants Anson, Cohn, Garrett and Does 1 – 9.

3      41.  Plaintiff's investment as herein alleged was accomplished by each of
4 the defendants engaging in racketeering activity in that:

5      • As provided for in 18 USC §1961(1)(D), the sale and offer to
6        sell to Plaintiff securities was proximately caused and
7        accompanied by fraud as alleged herein, and in violation of
8        the Exchange Act.

9      • The sale and offer to sell to Plaintiff securities was made
10       pursuant to a related and non-disclosed criminal enterprise for
11       which defendants Four Star and Cohn have been convicted.

12     • the offering for sale and sale of the aforementioned securities
13       required qualification or a permit under the law of the State of
14       California and registration with the Securities and Exchange
15       Commission under the law of the United States.  However, on
16       information and belief, neither the offer nor sale of any
17       security purchased by plaintiff herein was qualified by the
18       Commissioner of Corporations of the State of California, nor
19       by the Securities & Exchange Commission, and thus, the
20       offer to sell and the sale of the securities violated both state
21       and federal securities law as alleged herein.

22     42.  The sale and offer to sell such securities affected interstate commerce
23 in that each such security represented a fractional interest in business enterprises
24 outside of the State of California.  The offer to sell, fraudulent misrepresentations
25 and failures and omissions by Defendants as alleged in this Complaint were
26 perpetrated, in part, through the use of public telephone lines, email, financial wire
27 transmissions and the mail.

28

43. Thus, these fraudulent misrepresentations and failures and omissions to state and disclose to Plaintiffs material facts with respect to his investment as alleged in this Complaint constitutes wire fraud under 18 USC §1343. The Defendants also committed mail fraud as defined in 18 USC §1341 in that each offer to sell and each sale of each investment unit to Plaintiff as alleged herein was a device which used the United States Mails and/or other instruments of interstate commerce to perpetrate the fraudulent scheme as alleged in this Complaint. The Defendants have engaged in the aforementioned racketeering activities from at least July 2002 (when Plaintiff first came in contact with Defendants) to present and have actively participated in the aforementioned criminal conduct through soliciting, organizing and receiving money for use by each of the aforementioned enterprises.

44. On information and belief, Defendants continue to solicit and receive money for this fraudulent scheme and/or continue to deceive and defraud remaining investors, including Plaintiff, in violation of securities law of the State of California and the federal securities laws, and in violation of laws against wire fraud and mail fraud.

45. There is a continuity in such racketeering activity in that from at least July 2002 to the present, Defendants have solicited clients including Plaintiff, raised money, formed enterprises, and dominated and controlled such enterprises in an illegal manner as alleged in this Complaint with the victims of this racketeering activity continuing to be clients and supposed fiduciaries. Defendants, by virtue of continuing false representations and cover-ups of liabilities and criminal behavior continue to engage in such unlawful conduct and it is likely that they will continue to engage in such unlawful conduct in the future.

46. The Defendants, and each of them, benefited directly and indirectly from the aforementioned pattern of racketeering activity in that they received, used or invested the money derived from the pattern of racketeering activity for their

own use and benefit and to the detriment of Plaintiff and others.  By remaining in control of the money received from Plaintiff and others, Defendants each continue to benefit from this racketeering activity.

47.  Plaintiff was directly injured by the wrongful acts of the Defendants, and each of them, in his business and property by reason of the violation of 18 USC §1962 in that defendants, and each of them:

- in violation of 18 USC §1962, received income derived, directly or indirectly, from the pattern of racketeering activity which was used to invest, directly or indirectly, or some part of such income, or the proceeds of such income, in the acquisition of interests in, or the establishment or operation of, enterprises which engaged in, or affected, interstate commerce as herein alleged;

- through the pattern of racketeering activity as herein alleged, directly or indirectly, acquired or maintained an interest in or control of Four Star and/or Anson, Garrett & Co. which engaged in, or activities which affected, interstate commerce; and

- through a pattern of racketeering activity, engaged in activities which involved or affected interstate commerce and participated, either directly or indirectly, in the conduct of such enterprises.

48.  Plaintiff was directly injured by the wrongful acts of the Defendants, and each of them, by reason of the violations of 18 USC §1962 and by virtue of the wrongful acts committed by the Defendants, and each of them, as herein alleged. Said wrongful acts proximately damaged Plaintiff, as herein alleged, in the sum of at least $375,000.00, plus additional sums according to proof.

49.  Plaintiff is entitled to a judgment in said amount together with interest thereon at the maximum rate from the date the investment was made until present at the maximum rate, and is further entitled under RICO to:

- to have the actual damages trebled;
- to have a constructive trust imposed upon all proceeds derived by the Defendants, and each of them, as a result of their unlawful conduct as provided for in 18 USC §1961 et seq.;
- to recover his cost of investigation of the fraudulent scheme and costs of litigation, expert costs and attorney's fees incurred herein;
- the forfeiture by the Defendants, and each of them, of all their wrongfully acquired assets and income which can be traced from the proceeds of said wrongful acts and conduct as herein alleged.

## FOURTH CAUSE OF ACTION
## FRAUD IN THE INDUCEMENT

50.  Plaintiff incorporates herein by reference paragraphs 1 - 49 of the Complaint.

51.  The Defendants, and each of them, as detailed herein made certain wrongful and false representations and omissions to Plaintiff with the intent to induce Plaintiff into entering into their investment scheme, sign a subscription and operating agreement and, ultimately wire to Defendants $375,000.00.

52.  At the time of making these representations and taking these actions, the Defendants knew or should have known such representations were false and misleading.

53.  The Defendants, and each of them, wrongfully profited, and continue to profit, from these fraudulent and/or deceptive actions.

54. Plaintiff reasonably relied on the aforementioned representations and omissions of Defendants in entering into the investment relationship.

55. As a direct and proximate result of these wrongful and false representations and omissions and Plaintiff's reliance thereon, Plaintiff was induced to enter into an unlawful investment scheme and has been damaged in an amount according to proof at trial.

56. In doing the acts herein alleged, the Defendants, and each of them, were personally and individually guilty of oppression, malice, fraud and despicable conduct directed to Plaintiff in conscious disregard of Plaintiff's rights. The acts alleged herein were known to, authorized and ratified by the Defendants, and each of them. Plaintiff is thus entitled to recover punitive damages from the Defendants, and each of them, in an amount according to proof.

## FIFTH CAUSE OF ACTION
## FRAUD AND DECEIPT

57. Plaintiff incorporates herein by reference paragraphs 1 - 56 of the Complaint.

58. The Defendants, and each of them, as alleged herein made certain wrongful and false representations and omissions to Plaintiff in conjunction with their herein described fraudulent scheme.

59. At the time of making these representations and taking these actions, the Defendants knew or should have known such representations were false.

60. The Defendants, and each of them, wrongfully profited, and continue to profit, from these fraudulent and/or deceptive actions.

61. Plaintiff reasonably relied on the aforementioned representations and omissions of Defendants.

62. As a direct and proximate result of these wrongful and false representations and omissions and Plaintiff's reliance thereon, Plaintiff has been damaged in an amount according to proof at trial.

63. In doing the acts herein alleged, the Defendants, and each of them, were personally and individually guilty of oppression, malice, fraud and despicable conduct directed to Plaintiff in conscious disregard of Plaintiff's rights. The acts alleged herein were known to, authorized and ratified by the Defendants, and each of them. Plaintiff is thus entitled to recover punitive damages from the Defendants, and each of them, in an amount according to proof.

## SIXTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTIES

64. Plaintiff incorporates herein by reference paragraphs 1 - 63 of the Complaint.

65. As managers and officers of Four Star, defendants Anson, Garrett and Cohn owed member Plaintiff fiduciary duties at relevant times. As a professional accounting firm providing account balance statement information to Plaintiff and to Four Star, defendant Anson, Garrett & Co. (and its controlling persons defendants Anson and Garrett) also owed Plaintiff fiduciary duties at relevant times.

66. Based on these defendants' misrepresentations, deceptive statements and other intentional conduct to the detriment of Plaintiff, as herein alleged in detail, these defendants breached their fiduciary duties to Plaintiff.

67. As a direct and proximate result of these breaches of fiduciary duty, Plaintiff has been damaged in an amount according to proof at trial.

68. In doing the acts herein alleged, the Defendants Anson, Garrett, Cohn and Anson, Garrett & Co. were personally and individually guilty of oppression, malice, fraud and despicable conduct directed to Plaintiff in conscious disregard of Plaintiff's rights. The acts alleged herein were known to, authorized and ratified by each of these defendants. Plaintiff is thus entitled to recover punitive damages from each of these defendants in an amount according to proof.

## SEVENTH CAUSE OF ACTION
## NEGLIGENCE

69.  Plaintiff incorporates herein by reference paragraphs 1 - 24 of the Complaint.

70.  As an accounting firm providing professional statements and balance information to Plaintiff, defendant Anson, Garrett & Co. and its controlling persons, including defendants Anson and Garrett, at relevant times owed a duty to Plaintiff to use reasonable care and professional competence.

71.  Defendant Anson, Garrett & Co. and its controlling persons, including defendants Anson and Garrett, made certain accounting representations to Plaintiff (including but not limited to oral representations, written representations, balance sheets and financial statements) without any reasonable basis for believing them to be true at the time that they were made and, in addition, failed to take corrective action when the untruths became manifest as alleged herein.  Thus, these defendants breached their duties to Plaintiff.

72.  Plaintiff reasonably relied upon these professional representations of Anson, Garrett & Co. and its controlling persons and, based thereon, entered into the investment scheme as herein alleged.

73.  As a direct and proximate result of these negligent misrepresentations, Plaintiff has suffered damages in an amount according to proof as herein alleged.

74.  In doing the acts herein alleged, defendants Anson, Garrett & Co. and defendants Anson and Garrett were personally and individually guilty of oppression, malice, fraud and despicable conduct directed to Plaintiff in conscious disregard of Plaintiff's rights.  The acts alleged herein were known to, authorized and ratified by each of these defendants.  Plaintiff is thus entitled to recover punitive damages from each of these defendants in an amount according to proof.

## EIGHTH CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200

75.  Plaintiff incorporates herein by reference paragraphs 1 - 74 of the Complaint.

76.  Beginning at an exact date unknown to Plaintiff but at least since July 2002, the Defendants have committed acts of unfair business practices, as defined by Business and Professions Code § 17200 *et seq.*, by engaging in, among other unfair and unlawful practices, practices in violation of federal securities laws and fraudulent practices as alleged herein.

77.  These acts and practices violate Business and Professions Code § 17200 because they are unlawful pursuant to federal and California regulations including the Exchange Act, the Securities Act and RICO and are unfair, fraudulent and deceptive.

78.  The unlawful, unfair and/or fraudulent business practices of Defendants thus constitute unlawful business acts or practices within the meaning of Business and Professions Code § 17200.

79.  As a direct and proximate result of the aforementioned acts, the Defendants received and continue to hold ill-gotten gains resulting from their herein alleged conduct which properly belongs to Plaintiff.  Plaintiff, accordingly, seeks restitution of all such gains and injunctive relief halting Defendants' unlawful business enterprise.

## PRAYER

Plaintiff Steve Gevirtz prays for relief as follows:

1.    For the First Cause of Action: (1) a finding that Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated there under by their acts and omissions as alleged in this Complaint; (2) an award of damages with interest therein; (3) an order rescinding the

fraudulently induced transaction and returning Plaintiff his $375,000 plus interest; (4) an award of costs and expenses of this action, including reasonable attorneys' fees, expert fees and other costs and disbursements; and (5) any further relief as may be just and proper under the circumstances.

2.    For the Second Cause of Action: (1) a finding that Defendants unlawfully failed to register the securities ultimately purchased by Plaintiff; (2) an award of $375,000.00 plus interest representing rescission of Plaintiff's investment; (3) an award of costs and expenses of this action, including reasonable attorneys' fees, expert fees and other costs and disbursements; and (4) any further relief as may be just and proper under the circumstances.

3.    For the Third Cause of Action: (1) damages under RICO in the amount of at least $375,000.00 and that said sum should be trebled as provided in RICO, plus additional sums according to proof at time of trial, together with interest thereon at the maximum rate from the date each investment was made; (2) that a constructive trust be imposed on all the proceeds derived from the racketeering activities and unlawful conduct of the Defendants, and each of them; (3) an injunction halting Defendants' unlawful enterprise; (4) for all costs of investigation of the racketeering activities and for all litigation costs attorney's fees incurred herein; and for a forfeiture by the Defendants, and each of them, of their wrongfully acquired assets and income under 18 USC §1964(a) and (c); and (5) any further relief as may be just and proper under the circumstances.

4.    For the Fourth Cause of Action: (1) damages according to proof; (2) punitive damages; (3) a rescission order; (4) interest at the maximum

1    legal rate; and (5) any further relief as may be just and proper under
2    the circumstances.

3    5.    For the Fifth Cause of Action: (1) damages according to proof; (2)
4          punitive damages; (3) interest at the maximum legal rate; and (4) any
5          further relief as may be just and proper under the circumstances.

6    6.    For the Sixth Cause of Action: (1) damages according to proof; (2)
7          punitive damages; (3) interest at the maximum legal rate; and (4) any
8          further relief as may be just and proper under the circumstances.

9    7.    For the Seventh Cause of Action: (1) damages according to proof; (2)
10          punitive damages; (3) interest at the maximum legal rate; and (4) any
11          further relief as may be just and proper under the circumstances.

12    8.    For the Eighth Case of Action: (1) restitution of unjust gains; (2)
13          rescission; (3) injunctive relief halting Defendants' unlawful actions;
14          (4) attorneys fees and costs pursuant to Business and Professions
15          Code § 17200 et seq.

17    DATED: August 4, 2003          THE LAW OFFICES OF RYAN D. LAPIDUS
18                                   A PROFESSIONAL LAW CORPORATION

21                                   RYAN D. LAPIDUS

22                                   Attorneys for Plaintiff Steve Gevirtz

## DEMAND FOR TRIAL BY JURY

Plaintiff Steve Gevirtz hereby demands a trial by jury.

DATED: August 4, 2003

THE LAW OFFICES OF RYAN D. LAPIDUS
A PROFESSIONAL LAW CORPORATION

RYAN D. LAPIDUS

Attorneys for Plaintiff Steve Gevirtz