1  *LAW OFFICE OF ROBERT LUBIN*
   ROBERT M. LUBIN ESQ. (055863)
2  r1817@aol.com
   JOSEPH CAMENZIND, IV (244154)
3  camenzindlaw@yahoo.com
   177 Bovet Road, Suite 600
4  San Mateo, CA 94402
   Telephone: (650) 638-2331
5  Fax: (650) 638-1005

6  *LAW OFFICE OF KENNETH PRITIKIN*
   KENNETH PRITIKIN, ESQ. (108072)
7  kwpritikin@gmail.com
   2950 Buskirk Avenue, Suite 300
8  Walnut Creek, CA 94597
   Phone: (925) 407-2158
9  Fax: (925) 262-4688

10 Attorneys for the Plaintiffs

11

12                    UNITED STATES DISTRICT COURT

13          NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

14
                                    )  Case No.:  C09 03303 JF
15 ROBERT PRITIKIN, et al.          )
                                    )  **PLAINTIFFS' OPPOSITION TO**
16          Plaintiffs,             )  **COMERICA BANK'S MOTION TO**
                                    )  **DISMISS**
17     vs.                          )
                                    )  Date:    October 30, 2009
18 COMERICA BANK,  et al.,          )  Time:    9:00 a.m.
                                    )  Dept.:   Honorable Jeremy Fogel
19          Defendants              )
                                    )
20                                  )
                                    )
21 _____ )

22                                     Complaint filed:  July 20, 2009
                                       Trial Date Set:
23

24

25

26

27

28

   PRITIKIN v. COMERICA BANK ET. AL.
   **PLAINTIFFS' OPPOSITION TO COMERICA BANK'S MOTION TO DISMISS**

1

**TABLE OF CONTENTS**

2
**Page**

3  I.  INTRODUCTION ........................................................................................................ 1

4  II.  STATEMENT OF FACTS.......................................................................................... 4

5
   III.  LEGAL STANDARD ................................................................................................. 6
6

7  IV.  THE STATUTES OF LIMITATIONS DID NOT BEGIN TO RUN UNTIL PLAINTIFFS
       LEARNED IN 2008 OF FACTS IMPLICATING COMERICA ......................................... 7
8
       A.  The Federal Doctrine of Equitable Tolling Applies to RICO Claims................................. 7
9

10      B.  The Discovery Rule Applies to All of Plaintiffs' State Claims ............................................ 9

11      C.  The Doctrine of Fraudulent Concealment Applies to All of Plaintiffs' State Claims ........ 12

12      D.  Under the Doctrine of Equitable Tolling, the Discovery Rule, and the Doctrine of
           Fraudulent Concealment, the Statute of Limitations for Plaintiffs' Claims Did Not Begin to
13         Run Until October 2008.......................................................................................... 13

14
              1. .......Plaintiffs are Not Charged With Knowledge of Facts in Publicly-Filed Documents
15            Regarding Their Claims Against Comerica Because Plaintiffs Had No Reason to
              Suspect Comerica of Wrongdoing............................................................................. 13
16

17            2. ......Even Assuming that Plaintiffs Could be Charged With Constructive Knowledge of
              the Public Documents Cited by Comerica, Plaintiffs Could Not Have Suspected the
18            Factual Basis for Any Cause of Action Against Comerica.......................................... 14

19
   V.  PLAINTIFFS HAVE SUFFICIENTLY PLED CLAIMS FOR AIDING AND ABETTING
20      BREACH OF FIDUCIARY DUTY AND FRAUD........................................................... 20

21      A.  The Complaint Sufficiently Pleads Comerica's Actual Knowledge of the Specific Primary
22          Wrong that Comerica Aided and Abetted ................................................................. 20

23      B.  There is No "Independent Duty" Requirement for Aiding and Abetting ........................... 21

24
   VI. PLAINTIFFS HAVE SUFFICIENTLY PLED A CLAIM FOR CONSPIRACY TO BREACH
25     FIDUCIARY DUTY.................................................................................................. 23
26

27

28

1

TABLE OF CONTENTS
(continued)

2

VII.   PLAINTIFFS HAVE SUFFICIENTLY PLED RICO CLAIMS ........................................ 24

A.   The RICO Amendment Does Not Apply to Plaintiffs' RICO Claims................................24

B.   The Complaint Sufficiently Pleads the Existence of an "Enterprise"................................30

VIII. CONCLUSION ........................................................................................................... 34

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*1-800 Contracts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568 .................................................... 23

*Anderson v. Thacher* (1946) 76 Cal.App.2d 50 ........................................................................ 24

*April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805 ........................................... 10, 11

*Azer v. Connell*, 306 F.3d 930 (9th Cir. 2002) ........................................................................ 8

*Bald Eagle Area School Dist. v. Keystone Financial Inc.*, 189 F.3d 321 (3d Cir. 1999) ........ 27, 29

*Bennett v. Hibernia Bank* (1956) 47 Cal.2d 540 ................................................................ 10

*Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926 ............................... 12, 13,17

*Cahill v. Liberty Mut. Ins. Co.*, 80 F. 3d 336 (9th Cir. 1996) ................................................ 6

*Casey v. U.S. Bank Nat'l. Assoc.* (2005) 127 Cal.App.4th 1138 ................................. 17, 20, 21, 22

*Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) ........................................................................................................... 4, 26, 28

*Chazen v. Centennial Bank* (1998) 61 Cal. App. 4th 532........................................................ 17

*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ....................................... 6

*County of Orange v. McGraw-Hill Cos.*, 203 B.R. 983 (Bankr.C.D.Cal. 1996).................... 22, 23

*De La Cruz v. Tormey*, 582 F.2d 45 (9th Cir. 1978) ............................................................... 6

*Desai v. Deutsche Bank Securities Limited*, 573 F3d 931 (9th Cir. 2009)................................... 26

*Doctors' Co., supra*, 49 Cal.3d at............................................................................................ 23, 24

*Dreiling v. America Online Inc.*, 578 F.3d 995 (9th Cir. 2009)............................................ 25

*E-Fab, Inc. v. Accountants, Inc.* (2007) 153 Cal.App.4th 1308 ............................................ 14

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003 ............................... 7, 35

*Emrich v. Touche Ross & Co.*, 846 F.2d 1190 (9th Cir. 1988)............................................. 7

*Everest Investors 8 v. Whitehall Real Estate Limited Partnership XI* (2002) 100 Cal.App.4th 1102 .............................................................................................................................................. 24

1

## **TABLE OF AUTHORITIES**

2

(continued)

3

**Page**

4

*Florida Evergreen Fol. v. E.I. Dupont De Nemours*, 165 F.Supp.2d 1345 (S.D. Fla. 2001) .... 28

5

*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797 ................................................. 14, 15, 16

6

*Gardenhire v. IRS*, 220 B.R. 376, 382 (B.A.P. 9th Cir. 1998) ............................................ 7, 8

7

*Gatz v. Ponsoldt*, 297 F.Supp.2d 719, 730 (D. Del. 2003) .................................................. 25

8

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997) .............................................. 7

9

*Gonzales v. Lloyds TXB Bank, PLC*, 532 F. Supp. 2nd 1200 (C.D. Cal. 2006)..............

10

........................... …………………………............................………………………… 4, 22, 30, 31, 33

11

*Gonzalez v. Immigration & Naturalization Serv.*, 272 F.3d 1176 (9th Cir. 2001) .................... 7, 8

12

*Gottreich v. San Francisco Inv. Corp.*, 552 F.2d 866 (9th Cir. 1977) .................................. 21

13

*Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, fn. 7 .................................. 10, 15, 17

14

*Halberstam v. Welch*, 705 F.2d 472, 478 (D.C.Cir.1983) ................................................... 23

15

*Howard v. AOL*, 208 F.3d 741, 749 (9th Cir. 2000)............................................................ 28, 29

16

*In re Brocade Comm. Systems, Inc. Derivative Lit.*, 615 F.Supp.2d 1018, 1043 (N.D.Cal. 2009)..

17

..................................................................................................................................... 26

18

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994)............................................. 21

*In re Kelly*, 841 F.2d 908 n. 3 (9th Cir.1988) ...................................................................... 27

19

*Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980) ................................................ 6

20

*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55,........................................... 22, 23

21

*Jett v. Sunderman*, 840 F.2d 1487 (9th Cir. 1988) ............................................................ 25

22

*Johnson v. Henderson*, 314 F.3d 409 (9th Cir. 2002) ........................................................ 7

23

*Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)... 7

24

*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974 .......................................................... 24

25

*Leorna v. U.S. Dept. of State*, 105 F.3d 548 (9th Cir. 1997) ............................................ 9

26

*Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008) ........ 7, 12, 13

27

28

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal. App.4[th] 1282............. 10, 11

*Moreno v. Sanchez* (2003) 106 Cal.App.4[th] 1415 ................................................................ 10

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) ............................... 34

*Naton v. Bank of California*, 649 F.2d 691 (9th Cir. 1981) ........................................................ 8

*Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2nd 1101 (C.D. Cal, 2003)

............................................................................................................................ 4, 21, 22, 23

*Norgart v. Upjohn Co.* (1999) 21 Cal.4[th] 383 ........................................................... 9, 10

*OSRecovery, Inc. v. One Groupe International, Inc.*, 354 F.Supp.2d 357 (S.D.N.Y. 2005)

.......................................................................................................................... 4, 30

*Perez-Encinas v. Amerus Life Ins. Co.*, 468 F.Supp.2d 1127 (N.D. Cal. 2006)............................. 10

*Prudential Home Mortg. Co. v. Superior Court* (1998) 66 Cal.App.4[th] 1236.................... 3, 13, 14

*Regents of University of California v. Superior Court* (1999) 20 Cal.4[th] 509 ...................... 12

*River Colony Estates* 287 F.Supp.2d at 1222 ................................................................ 12

*Rosenthal v. Gould* (1969) 273 Cal.App.2d 239 ................................................................ 24

*Rowe v. Marietta Corp.*, 955 F.Supp. 836, 847 (W.D. Tenn., 1997)................................ 28

*Samuels v. Mix* (1999) 22 Cal.4[th] 1 ................................................................................ 11

*Sanchez v. South Hoover Hospital* (1976) 18 Cal.3d 93 ............................................... 12

*Santa Maria v. Pacific Bell*, 202 F.3d 1170 (9th Cir. 2000)............................................ 8

*Schulz v. Neovi Data Corp.* (2007) 152 Cal.App.4[th] 86 ............................................. 22

*Sebastian Int'l Inc. v. Russolillo*, 186 F.Supp.2d 1055 (C.D.Cal. 2000).......................... 31

*Snapp & Associates Ins. Services, Inc. v. Robertson* (2002) 96 Cal.App.4[th] 884............. 10, 11, 12

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 128 S.Ct. 761....

.......................................................................................................................... 26

*Suh v. Yang*, 987 F.Supp. 783 (N.D. Cal. 1997) ......................................................... 10, 11, 12

*Supermail Cargo Inc., v. United States*, 68 F.3d 1204 (9th Cir. 1995)............................. 3, 6, 19

1

## TABLE OF AUTHORITIES

2

(continued)

3

**Page**

4

*Teamsters & Employers Welfare v. Gorman Ready Mix*, 283 F.3d 877 (7th Cir. 2002)................. 8

5

*U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586 ............................................... 11

6

*U.S. v. Blinder*, 10 F.3d 1468 (9th Cir. 1993) ............................................................................. 31

7

*U.S. v. Feldman*, 853 F.2d 648 (9th Cir. 1988) .......................................................................... 31

8

*U.S. v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004) ..................................................................... 32

9

*U.S. v. Masters*, 924 F.2d 1362 (7th Cir. 1991) ......................................................................... 34

10

*United States v. Masters*, 924 F.2d 1362 (7th Cir.1991) ........................................................... 30

11

*Webster v. Omnitriton Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996)................................................... 31

12

13

**Statutes**

14

15 U.S.C. § 78j(b) ................................................................................................................. 25, 26

15

18 U.S.C. S 1964(c) ..................................................................................................................... 24

16

**Other Authorities**

17

Rest.2d Torts, § 876, subd. (b) .................................................................................................... 22

18

**Rules**

19

Fed.R.Civ.P. 12(b)(6) .................................................................................................................... 6

20

Fed.R.Civ.P. 15(a) ....................................................................................................................... 34

21

Fed.R.Civ.P., Rule 9(b) ............................................................................................................... 21

22

**Regulations**

23

17 C.F.R. § 240.10b-5 .................................................................................................................. 25

24

25

26

27

28

# I.

## INTRODUCTION

In 2006 when Bernie Madoff's fund was investigated by the SEC, nothing happened. The SEC missed the world's largest investor fraud ever. Madoff has been reported to have said "that the game should have been over in 2006." Defendant Comerica Bank ("Comerica"), however, argues that Plaintiffs should have been put on notice of Comerica's involvement in the Four Star Ponzi scheme by such things as a Wall Street Journal news article in June 2004, despite the fact that the article itself does not even mention Comerica.

In its motion to dismiss, Comerica asks the Court to take judicial notice of 1074 pages of documents from court filings all over the country in regards to Four Star Financial Services, LLC ("Four Star") to show that Plaintiffs were on notice that Comerica was a culpable party as early as 2002/2003.[1] These filings include, (1) pleadings regarding third party lawsuits against Four Star, (2) complaints from lawsuits against Four Star, its managers and/or third parties, for which approximately seven of the current 60-plus Plaintiffs were named parties, and (3) papers filed in the Four Star bankruptcy. Yet, out of 26 separate documents totaling 1074 pages, Comerica only cites two documents referencing Comerica, first an August 11, 2003 motion to amend judgment brought by third party, and non-investor, Reservoir Capital, whereby it was alleged Four Star managers Anson and Garrett used Four Star money to repay a private Comerica line of credit, and second, a 209-page Four Star Statement of Financial Affairs, which included Comerica bank accounts along with several accounts held at other banks. Motion at 4:7-19.

While Comerica correctly argues that the Plaintiffs knew the *"core facts regarding the Four Star Ponzi scheme"* (Motion at 3:8-9), Comerica fails to address the real issue, which is *whether the Plaintiffs knew or should have reasonably suspected that Comerica knowingly aided and abetted the Four Star Ponzi scheme.*

---

[1]  Concurrently with this Opposition Brief, the Plaintiffs are filing an Objection to Comerica's Request for Judicial Notice.

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS                    Page 1

1    The Complaint alleges that Comerica's role in the Four Star Ponzi scheme was limited

2    to a specific "behind the curtain" role, which, by design, enabled Four Star to continue making

3    regular monthly distributions to its investors, and thus give the illusion of its solvency and

4    significant profitability, when in actuality Four Star was insolvent and being chased by

5    millions of dollars of creditor claims. This "behind the curtain" role, dubbed the "Banking

6    Scheme" and fully described in the Complaint at ¶ 33, was wholly unknown to anyone other

7    than the perpetrators themselves until Four Star Manager Mark Cohn divulged its existence in

8    2008. None of the documents cited by Comerica would have given a diligent plaintiff any

9    reason to suspect either the existence of the Banking Scheme or Comerica's role in it.

10    Under the applicable rules for tolling of statute of limitations, the inquiry focuses on

11    when Plaintiffs should reasonably have known facts essential to their causes of action against

12    Comerica. As the Complaint makes clear, all of Plaintiffs' causes of action against Comerica

13    are premised entirely on the Banking Scheme. In its attempts to misdirect the Court's

14    attention, Comerica's Motion never mentions the Banking Scheme, either by name or by

15    description, except for two passing references. Motion at 2:14-15; 16:8. Instead, Comerica

16    focuses on the well-publicized deceptions perpetrated by the Four Star Managers, and

17    incorrectly argues that the statute of limitations on Plaintiffs' claims against Comerica began to

18    run when Plaintiffs knew that they had been injured and that the cause of the injury was

19    wrongdoing by "someone." Motion at 7:3-14. This is a misstatement of the law. The fact that

20    Plaintiffs knew that Ponzi schemers had swindled them did not start the clock on Plaintiffs'

21    claims against unknown perpetrators whose participation in the scheme *had* been successfully

22    concealed from Plaintiffs and could not have been identified by a reasonable inquiry.

23    Any assertion that the Plaintiffs could have discovered the Banking Scheme and

24    Comerica's involvement through investigation and after reviewing the documents cited by

25    Comerica is without a scintilla of merit.

26    First, the idea that individuals are required to scour the internet for court filings in order

27    to establish due diligence against a party that they had no reason to suspect had done anything

28

---

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS                    Page 2

1   wrong, cannot be and is not the standard.  *See Prudential Home Mortg. Co. v. Superior Court*

2   (1998) 66 Cal.App.4th 1236, 1248, discussed in Section IV.D.1., *infra*.

3        Second, the documents cited and relied upon by Comerica do not show the Plaintiffs

4   knew or had reason to know of Comerica's involvement in the Four Star Ponzi scheme.  On

5   their face, and in the absence of other information, the documents referenced by Comerica

6   show only what Comerica says they show, namely that Comerica was simply a "depository."

7   Motion at 1:7.  Teams of distinguished attorneys and accountants[2] scoured the documents and

8   were unable to discern anything more.  The existence of the Banking Scheme, and Comerica's

9   participation in it, could not be detected from the documents which are referenced by Comerica

10  because the information is not there.   But for Mark Cohn's disclosure of the Banking Scheme,

11  the Banking Scheme and Comerica's role in it would have remained hidden to this day.

12       Moreover, determination of whether or not the Plaintiffs knew, or should have known,

13  of Comerica's involvement in the Four Star Ponzi scheme requires a highly fact-sensitive

14  inquiry not amenable to disposition on a motion to dismiss.  *Supermail Cargo Inc., v. United*

15  *States*, 68 F.3d 1204, 1206-1207 (9th Cir. 1995).

16       As such, Comerica's assertion that Plaintiffs' claims are time-barred fails.

17       Comerica next attacks Plaintiffs' claims for aiding and abetting breach of fiduciary duty

18  and fraud on the grounds that (1) the Complaint does not sufficiently plead Comerica's actual

19  knowledge, and (2) since Comerica did not owe the Plaintiffs a fiduciary duty, it cannot be

20  held liable for aiding and abetting the breach of a fiduciary duty.  Both these arguments are

21  misguided.  First, the Complaint does assert Comerica's actual knowledge of the Four Star

22  Managers' fraud and breach of fiduciary duty in no less than six paragraphs of the Complaint.

23  Complaint, ¶¶ 32, 33, 37, 38, 39, 40.   Second, a non-fiduciary can be held liable for aiding and

24  abetting  breach of fiduciary duty as long as the aider and abettor knows that the primary

25

26  [2]  Including attorneys from the reputable class action firm of Boise, Schiller & Flexner,
    attorneys for judgment creditors such as Reservoir Capital, attorneys for the Bankruptcy
27  Trustee Richard Marshack, and the accounting firm of Squar, Milner Reehl & Williamson,
    which specializes in forensic accounting of fraudulent transactions.
28

---

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS                    Page 3

1 wrongdoer's conduct constitutes a breach of fiduciary duty, and it substantially assists the

2 breach. *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2nd 1101, 1127 (C.D. Cal,

3 2003); *Gonzales v. Lloyds TXB Bank, PLC*, 532 F. Supp. 2nd 1200, 1207 (C.D. Cal. 2006).

4           Comerica next contends that Section 107 of The Private Securities Litigation Reform

5 Act ("PSLRA"), which bars RICO claims against a defendant whose conduct is "actionable"

6 under federal securities law, precludes Plaintiffs' RICO claim against Comerica. Comerica's

7 reasoning is misguided because its role was that of an aider and abettor, and aiding and

8 abetting is not actionable under federal securities law. *Central Bank of Denver v. First*

9 *Interstate Bank of Denver*, 511 U.S. 164, 191, 114 S.Ct. 1439, 1455, 128 L.Ed.2d 119 (1994).

10 A RICO claim based on aiding and abetting conduct is not barred by the PSLRA. *See*

11 *OSRecovery, Inc. v. One Groupe International, Inc.*, 354 F.Supp.2d 357, 371 (S.D.N.Y. 2005).

12          Finally, Comerica contends that Plaintiffs have not adequately alleged the existence of an

13 "enterprise" under RICO. This contention is easily overcome by reviewing the Complaint's

14 detailed allegations which show that the Banking Scheme required careful and ongoing

15 coordination between several distinct persons and entities.

16                                   **II.**

17                          **STATEMENT OF FACTS**

18          Plaintiffs were investors in Four Star. Complaint at ¶ 9. The managers of Four Star

19 were Ron Anson, Jack Garrett, and Mark Cohn (hereinafter referred to as the "Four Star

20 Managers"), who at all times owed a fiduciary duty to the Plaintiffs. Complaint at ¶¶ 8, 67-69.

21          Plaintiffs invested in Four Star because the Four Star Managers led Plaintiffs to believe

22 that Four Star was a highly profitable enterprise offering safe investments with lucrative

23 returns. Complaint at ¶ 11. In fact, Four Star was insolvent and unable to pay millions of

24 dollars in creditor claims. Complaint at ¶¶ 13, 28, 30. Despite its financial insolvency, Four

25 Star was able to convince Plaintiffs that it was actually financially sound and profitable, and

26 thereby induced Plaintiffs to invest over $50 million in Four Star during the period from

27 approximately December 1999 through October 2002.

28 / / /

1        Four Star employed a variety of fraudulent means to portray itself as financially strong.

2    Complaint at ¶ 45.  But the single most important reason why Plaintiffs believed that Four Star

3    was a good investment was that Four Star had a longstanding practice of making regular

4    monthly distributions to its investors.  Without the regular monthly distributions, none of the

5    other acts of deception would have been sufficient to induce Plaintiffs to invest in Four Star.

6    Complaint at ¶ 45.  Indeed, when the Four Star Managers finally ran out of cash and were

7    forced to stop making distributions in October 2002, Plaintiffs immediately suspected that Four

8    Star was in financial trouble and stopped making additional investments.  Without new

9    investment capital, the Ponzi scheme shut down and Four Star was put into bankruptcy.

10   Complaint at ¶¶ 14, 15.

11       All three of the Four Star Managers came under criminal investigation and were

12   unwilling to cooperate with any inquiries about Four Star's operations.  Complaint at ¶¶ 53-56.

13   In fact, Four Star Manager Mark Cohn was sentenced in 2004 to a five year term in federal

14   prison for his role in a credit card scheme operated by Four Star.  Complaint at ¶ 54.

15       But then, on October 1, 2007, while Cohn was still serving his prison sentence, the

16   United States Attorney filed a new Information against Cohn charging him with wire fraud in

17   connection with the Four Star Ponzi scheme.  For the first time, Cohn began to cooperate and

18   tell federal investigators what he knew about the scheme.  As a result, Cohn pleaded guilty to

19   the wire fraud charges under a plea agreement, and the United States Attorney filed a

20   sentencing report recommending leniency because of his cooperation.  On September 29, 2008,

21   the court sentenced Cohn.  Complaint at ¶ 54.

22       The following month, in October 2008, Cohn went public for the first time with his

23   knowledge of the Four Star Ponzi scheme.  In doing so, Cohn disclosed to Plaintiffs the secret

24   mechanism by which Four Star, with the active knowledge and assistance of Comerica, had

25   been able to continue making monthly distributions to Plaintiffs despite being insolvent and

26   having millions of dollars of creditor claims against it.  Complaint at ¶¶ 54, 55.  The secret

27   mechanism described by Cohn involved a complex scheme—described in detail and referred to

28   in the Complaint as the "Banking Scheme"—whereby funds were quickly moved into and out

1  of Four Star's checking account at Comerica to allow Four Star to clear checks to investors but

2  prevent creditors from seizing the funds.[3]  Complaint at ¶¶ 33, 55.  Plaintiffs never would have

3  learned of the Banking Scheme, or of Comerica's role in assisting the Four Star Ponzi scheme,

4  but for Cohn's public disclosure in October 2008.  Complaint at ¶¶ 53, 55, 56.

5        From approximately December 1999 through October 2002 (referred to in the Complaint

6  as the "Loss Period"), the Banking Scheme enabled Four Star to conceal its cash from creditors

7  holding millions of dollars of unsatisfied writs, while, at the same time, continuing its practice of

8  making regular monthly distributions to its investors.  During the Loss Period, Plaintiffs, having

9  been deceived by these regular distribution payments into believing that Four Star was financially

10 sound and profitable, invested over $50 million into Four Star.  Complaint at ¶ 10.

11
## III.

12
## LEGAL STANDARD

13       When ruling on a motion under Fed.R.Civ.P. 12(b)(6) to dismiss for failure to state a

14 claim, the court must accept all factual allegations as true, and must construe them and draw all

15 reasonable inferences from them "in the light most favorable to nonmoving party."  *Cahill v.*

16 *Liberty Mut. Ins. Co.*, 80 F. 3d 336, 337-38 (9th Cir. 1996).  "The issue is not whether a plaintiff's

17 success on the merits is likely but rather whether the claimant is entitled to proceed beyond the

18 threshold in attempting to establish his claims."  *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.

19 1978).  Thus, the motion can be granted only if it appears beyond doubt that the plaintiff can

20 prove no set of facts in support of his or her claim.  *Jablon v. Dean Witter & Co.*, 614 F.2d 677,

21 682 (9th Cir. 1980), citing *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  When

22 a 12(b)(6) motion to dismiss is based on the running of the statute of limitations, the motion

23 cannot be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts that

24 would establish the timeliness of the claim."  *Supermail, supra,* 68 F.3d at 1207.

25 ///

26

27

28

---

[3]  A description of the specific elements of the Banking Scheme is alleged in the Complaint at
¶ 33.  As that description runs more than two pages in length, it is not repeated in detail here.

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS              Page 6

1       Given this low threshold, there is "a powerful presumption against rejecting pleadings for

2 failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). And if

3 the facts have been insufficiently pled, the liberal rules of amendment under the Federal Rules of

4 Civil Procedure favor granting plaintiffs an opportunity to amend their pleadings. *See Eminence*

5 *Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051-52 (9th Cir. 2003).

6 **IV.**

7 **THE STATUTES OF LIMITATIONS DID NOT BEGIN TO RUN UNTIL**

8 **PLAINTIFFS LEARNED IN 2008 OF FACTS IMPLICATING COMERICA**

9 **A.**     **The Federal Doctrine of Equitable Tolling Applies to RICO Claims**

10       The federal doctrine of equitable tolling applies to RICO claims. *See Johnson v. Railway*

11 *Express Agency, Inc.*, 421 U.S. 454, 466, 95 S.Ct. 1716, 1723, 44 L.Ed.2d 295 (1975); *Emrich v.*

12 *Touche Ross & Co.*, 846 F.2d 1190, 1199 (9th Cir. 1988).

13       Courts have often conflated equitable tolling with the doctrine of equitable estoppel. *See*

14 discussion in *Gonzalez v. Immigration & Naturalization Serv.*, 272 F.3d 1176, 1185 (9th Cir.

15 2001). However, the doctrines are distinct. "[E]quitable tolling applies when the plaintiff is

16 unaware of his cause of action, while equitable estoppel applies when a plaintiff who knows of his

17 cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit."

18 *Id.* at 1184. In order to invoke equitable estoppel, "the plaintiff must point to some fraudulent

19 concealment, some active conduct by the defendant 'above and beyond the wrongdoing upon

20 which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.' " *Lukovsky v. City*

21 *and County of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008) (citation omitted). In contrast,

22 in order to invoke equitable tolling, a plaintiff is not required to show affirmative misconduct by

23 the defendant. "All one need show is that by the exercise of reasonable diligence the proponent of

24 tolling could not have discovered essential information bearing on the claim." *Gardenhire v. IRS,*

25 220 B.R. 376, 382 (B.A.P. 9th Cir. 1998), rev'd on other grounds, 209 F.3d 1145 (9th Cir. 2000);

26 *Gonzalez, supra,* 272 F.3d at 1184-1185; *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002)

27 ("If a reasonable plaintiff would not have known of the existence of a possible claim within the

28 limitations period, then equitable tolling will serve to extend the statute of limitations for filing

1    suit until the plaintiff can gather what information he needs." [citing *Santa Maria v. Pacific Bell*,

2    202 F.3d 1170, 1178 (9th Cir. 2000)]). Indeed, the basis for equitable tolling "is not the plaintiff's

3    reliance on words or actions of the defendant, so the issue of reasonable reliance does not even

4    arise." *Teamsters & Employers Welfare v. Gorman Ready Mix*, 283 F.3d 877, 881-882 (7th Cir.

5    2002).

6         Proving the *Gonzalez* court's point, Comerica conflates equitable tolling and equitable

7    estoppel, arguing incorrectly that "active concealment by Comerica" must be alleged in order for

8    equitable tolling to apply. Motion at 1:18-19. The correct standard for equitable tolling, as noted

9    above, is that Plaintiffs must show that "by the exercise of reasonable diligence [Plaintiffs] could

10   not have discovered essential information bearing on the claim." *Gardenhire, supra*, 220 B.R. at

11   382. The Complaint meets this standard. Plaintiffs allege that, prior to October 2008, Plaintiffs

12   did not know, and could not have known by the exercise of reasonable diligence, the essential

13   information bearing on Plaintiffs' claims against Comerica. Complaint at ¶¶ 45-57.

14        Next, Comerica contends that, in order for Plaintiffs to invoke the doctrine of equitable

15   tolling, Plaintiffs must show that the delay did not result in prejudice to Comerica. Motion at 17:3-

16   7. However, the cases cited by Comerica are distinguishable. They either involve the limited

17   situation of a plaintiff who, having full knowledge of the facts supporting his claim, nonetheless

18   fails to timely file his complaint (*Naton v. Bank of California*, 649 F.2d 691 (9th Cir. 1981) and

19   the cases cited therein), or they do not involve the federal doctrine of equitable tolling at all

20   (*Azer v. Connell*, 306 F.3d 930 (9th Cir. 2002) [court applied the California doctrine of equitable

21   tolling, not the federal doctrine])[4]. Plaintiffs are unaware of any case where lack of prejudice has

22   been imposed as a condition for invoking the doctrine where the delay in filing was because the

23   plaintiff had no actual or constructive knowledge of essential information bearing on his claim.

24

25   [4]  Unlike its federal counterpart, the California doctrine only applies in the case of a later suit
     filed by a plaintiff who had previously filed a suit on the same claim. The doctrine allows for
26   tolling of the statute of limitations on the later suit where the record shows timely notice to the
     defendant in filing the first claim, lack of prejudice to the defendant in gathering evidence to
27   defend against the second claim, and good faith and reasonable conduct by the plaintiff in filing
     the second claim. *See Azer, supra*, 306 F.3d at 936.
28

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS              Page 8

1  Even if prejudice could properly be considered, Comerica has not pointed to any specific

2  prejudice presented by the delay in the filing of Plaintiffs' claims.[5] Instead, Comerica argues

3  vaguely that it is prejudiced by having "to defend stale claims concerning events which allegedly

4  took place seven to ten years ago". Motion at 17:8-9. Comerica cites no authority for its position

5  that the passage of time, without more, constitutes sufficient prejudice to bar equitable tolling.

6  Finally, Comerica cites *Leorna v. U.S. Dept. of State*, 105 F.3d 548, 551 (9th Cir. 1997) for

7  the proposition that, "once a claimant retains counsel, tolling ceases because she has gained the

8  means of knowledge of her rights and can be charged with constructive knowledge of the law's

9  requirements." Motion at 17:27 – 18:1. However, *Leorna* was referring only to the situation

10 where the claimant has all of the essential information bearing on her claim but is unaware of the

11 *filing deadline*, i.e., when counsel has been retained, counsel is deemed to know the deadline.

12 *Leorna, supra, 105 F.3d* at 551. *Leorna* has no application to the case where the claimant is

13 unaware of the essential information bearing on her claim, except to the extent counsel would be

14 charged with knowledge of that information. As discussed in Section IV.D., *infra*, that is not the

15 situation presented here.

16 **B.    The Discovery Rule Applies to All of Plaintiffs' State Claims**

17 Ordinarily, the statute of limitations for a cause of action "begins to run upon the

18 occurrence of the last element essential to the cause of action." *Norgart v. Upjohn Co.* (1999) 21

19 Cal.4th 383, 397 (internal quotations omitted). However, "[a]n exception to the general rule for

20 defining the accrual of a cause of action—indeed, the 'most important' one—is the discovery

21 rule." *Id.* Under the discovery rule, a cause of action accrues when the plaintiff discovers, or

22 could have discovered through the exercise of reasonable diligence, all of the facts essential to his

23

---

24 [5] Comerica has filed a hearsay declaration of its counsel that transcripts of certain hearings in
   the Four Star bankruptcy proceeding are no longer maintained by the U.S. Trustee's office.
25 Plaintiffs have filed a separate objection to that declaration. However, even if the Court could
   take judicial notice of the facts contained in the declaration, the Court is not in a position to
26 determine whether the information disclosed in those hearings is not otherwise available from
   sources still accessible to Comerica, e.g. copies of the transcripts, other audiotapes, or
27 contemporaneous notes and testimony from attendees of the hearings (which attendees
   presumably included counsel for the bankruptcy trustee and for creditors and investors).
28

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS              Page 9

1   cause of action. *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 826. To put it

2   another way, the discovery rule "postpones accrual of a cause of action until the plaintiff

3   discovers, or has reason to discover, the cause of action, until, that is, he at least suspects, or has

4   reason to suspect, a factual basis for its elements." *Norgart, supra*, 21 Cal.4th at 389.

5        It is settled that the California statutes of limitations for claims based on fraud and breach

6   of fiduciary duty are subject to the "discovery rule". *See Bennett v. Hibernia Bank* (1956) 47

7   Cal.2d 540, 559; *Moreno v. Sanchez* (2003) 106 Cal.App.4th 1415, 1423; *Perez-Encinas v.*

8   *Amerus Life Ins. Co.*, 468 F.Supp.2d 1127, 1134 (N.D. Cal. 2006).

9        California appellate courts have split on whether the discovery rule applies to causes of

10   action based on unfair competition. Compare *Snapp & Associates Ins. Services, Inc. v. Robertson*

11   (2002) 96 Cal.App.4th 884, 891 (discovery rule does not apply) with *Massachusetts Mutual Life*

12   *Ins. Co. v. Superior Court* (2002) 97 Cal. App.4th 1282, 1295 (discovery rule "probably" applies);

13   *see Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 634, fn. 7 (noting, but declining

14   to address, the split in authority on the issue). However, a close reading of *Snapp* and

15   *Massachusetts Mutual* shows that the holdings in these cases are *not* in conflict with respect to

16   whether the discovery rule will apply to an unfair competition claim which is based—as

17   Plaintiffs' unfair competition claims are—upon concealed conduct.

18        *Snapp* did not engage in any analysis, but an important clue to the court's reasoning can be

19   gleaned from the fact that the unfair competition claim there was not based on conduct that was

20   concealed from plaintiff to avoid detection. *Snapp, supra*, 96 Cal.App.4th at 892 (defendant

21   improperly solicited plaintiff's employees). Likewise, in the other case cited by Comerica, *Suh v.*

22   *Yang*, 987 F.Supp. 783, 795 (N.D. Cal. 1997), the unfair competition claim was based on business

23   interference ("the wrongful use and dilution of Suh's service marks"), not concealed conduct.[6]

24

25   [6] *Suh*, decided before both *Snapp* and *Massachusetts Mutual*, also engaged in no analysis and

26   merely noted that it was following *Stutz Motor Car of America v. Reebok Intern.*, Ltd., 909
F.Supp. 1353, 1363-64 (C.D. Cal. 1995). In turn, the unfair competition claim in *Stutz* (which

27   also engaged in no analysis) was based solely on business interference, not concealed conduct.

28   *Stutz, supra*, 909 F.Supp. at 1360 ("The gravamen of plaintiff's state law claims is thus that
Reebok used plaintiff's trade secret in the development of The Pump shoe line.")

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS        Page 10

In contrast, concealed conduct *was* the basis of the unfair competition claim in *Massachusetts Mutual. Massachusetts Mutual, supra,* 97 Cal.App.4th at 1286 (plaintiffs alleged that when they purchased life insurance policies from defendant, the policies were paying a discretionary dividend that the defendant secretly intended to stop paying).  The fact that the claim was based on concealed conduct, i.e., "nondisclosure", was referenced by the court in connection with its conclusion that the discovery rule would "probably" apply.  *Id.* at 1295.  The significance of this fact is revealed by the court's reliance on *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805 and *Samuels v. Mix* (1999) 22 Cal.4th 1.

In *April Enterprises*, the court surveyed cases that applied the discovery rule and noted:

> A common thread seems to run through all the types of actions where courts have applied the discovery rule.  The injury or the act causing the injury, or both, have been difficult for the plaintiff to detect.  In most instances, in fact, the defendant has been in a far superior position to comprehend the act and the injury.

*April Enterprises, Inc., supra,* 147 Cal.App.3d at 831.

In *Samuels*, the court echoed this "common thread" analysis.  In that case, the Supreme Court applied the discovery rule to a professional malpractice claim, on the ground that the defendant had been a fiduciary of the plaintiff, citing as authority *April Enterprises, Inc.* and an earlier Supreme Court case, *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586. *Samuels, supra,* 22 Cal.4th at 9.  In *U.S. Liab. Ins. Co.*, the court noted, on the basis of a survey of previous cases which had either applied or declined to apply the discovery rule, that the discovery rule will always apply to claims based on fraud, mistake or embezzlement, but will not apply to negligence claims (except where the defendant was the plaintiff's fiduciary and the plaintiff failed to discover the negligence due to his reliance on the defendant's faithful performance).  *Id.* at 596.

One can thus see that *Snapp* and *Suh* are not, in fact, in conflict with *Massachusetts Mutual.*  All three cases are consistent with the "common thread" whereby courts will apply the discovery rule only where the defendant has concealed intentional wrongful conduct (or in the case of a negligent fiduciary, where the plaintiff relied on the defendant's faithful performance).

Here, Plaintiffs' claims for unfair competition and for aiding and abetting and conspiracy to commit unfair competition are premised on concealed, fraudulent conduct that Plaintiffs could

1   not have detected.[7]  Applying the discovery rule to these claims falls within the "common thread"

2   noted in *April Enterprises, Inc.* and would be consistent with the holdings in *Snapp* and *Suh.*

3   **C.       The Doctrine of Fraudulent Concealment Applies to All of Plaintiffs' State Claims**

4           "A close cousin of the discovery rule is the 'well accepted principle ... of fraudulent

5   concealment.' " *Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 931, quoting from

6   *Sanchez v. South Hoover Hospital* (1976) 18 Cal.3d 93, 99.  Under this principle, also known as

7   the doctrine of fraudulent concealment, "a defendant may be equitably estopped from asserting

8   the statute of limitations when, as a result of intentional concealment, the plaintiff cannot discover

9   the identity of the defendant." *River Colony Estates, supra,* 287 F.Supp.2d at 1222 (citing

10  *Bernson, supra,* 7 Cal.4th at 936).  The doctrine is judicially extended to be available "in all cases"

11  excepting those limited situations where it would be inconsistent with the clear purpose of a

12  statute of limitations.  *Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509,

13  533-535.[8]  Whether the doctrine will apply to a cause of action is a separate and distinct analysis

14  from whether the discovery rule will apply.  *See, e.g., Snapp, supra,* 96 Cal.App.4th at 890-91.

15          Although the federal doctrine of equitable estoppel is also sometimes referred to as

16  "fraudulent concealment" (*see Lukovsky, supra,* 535 F.3d at 1051), its similarity ends there.

17  Whereas the federal doctrine of equitable estoppel requires a showing of "active conduct by the

18  

19  [7]  While Plaintiffs' unfair competition causes of action rest in part on the allegation of

20  Comerica's illegal conduct, that conduct is the same conduct which Plaintiffs previously
    alleged to have been fraudulent as well, i.e., "Defendants' conduct *as previously alleged*

21  constitutes unlawful business acts or practices within the meaning of California Business &
    Professions Code § 17200".  Complaint at ¶ 88 (italics added); *see also* ¶ 94.  In addition, the

22  unfair competition causes of action separately rely on conduct which is expressly alleged to
    have been fraudulent (Complaint at ¶¶ 90, 96) and purposely concealed by Comerica

23  (Complaint at ¶¶ 51, 52).

24  
25  [8]  For example, in *Regents of University of California, supra,* 20 Cal.4th 509, the court declined
    to apply the doctrine of fraudulent concealment to the 30-day statute of limitations of

26  Government Code § 11130.3(a), on the ground that the purpose of that statute "is to authorize
    the nullification and voidance of an action taken by a state body in violation of the act's notice

27  or open-and-public-meeting requirement, but only under strict conditions—which, in their
    absence, entails the protection of even the most deceptive defendant from the freshest claim of

28  the most diligent plaintiff."  *Id.* at 534.

1  defendant 'above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent

2  the plaintiff from suing in time" (*Lukovsky, supra,* 535 F.3d at 1052), the California doctrine of

3  fraudulent concealment requires only a showing that, as a result of the defendant's intentional

4  concealment, the plaintiff was unable to determine the identity of the defendant as the culpable

5  party. *Bernson, supra,* 7 Cal.4th at 936 ("[W]e hold that a defendant may be equitably estopped

6  from asserting the statute of limitations when, as the result of intentional concealment, the plaintiff

7  is unable to discover the defendant's actual identity.") Thus, the California doctrine serves to

8  prevent the inequitable scenario whereby "a thief, for example, who leaves no clues to his identity

9  [could] defeat an action by the rightful owner to recover the stolen property if the owner fails to

10  find and serve the culprit within the applicable limitations period". *Id.* at 933.

11     Such a scenario is precisely the situation presented by the facts alleged by Plaintiffs.

12  Comerica intentionally concealed both the fact of the Banking Scheme—whereby Four Star,

13  despite being insolvent, was able to continue making investment distributions in order to create

14  the perception of solvency and profitability—and its involvement in that scheme. Complaint at ¶¶

15  51, 52. As a result, until Mark Cohn finally disclosed the existence of the Banking Scheme and

16  Comerica's role in it to Plaintiffs in October 2008, Plaintiffs did not know, and could not have

17  discovered by the exercise of reasonable diligence, that Comerica had engaged in any actionable

18  conduct towards Plaintiffs. Comerica, in other words, had assisted Four Star's theft of Plaintiffs'

19  property but had left no clues to its identity.

20  **D.     Under the Doctrine of Equitable Tolling, the Discovery Rule, and the Doctrine of
21          Fraudulent Concealment, the Statute of Limitations for Plaintiffs' Claims Did Not
            Begin to Run Until October 2008**

22
23          ***1.     Plaintiffs are Not Charged With Knowledge of Facts in Publicly-Filed
                      Documents Regarding Their Claims Against Comerica Because Plaintiffs Had
24                    No Reason to Suspect Comerica of Wrongdoing***

25     Whether Plaintiffs should be charged with constructive knowledge of the facts in the

26  public records attached to Comerica's Motion is a question of fact, not of law. *See Prudential*

27  *Home Mortg. Co. v. Superior Court, supra,* 66 Cal.App.4th at 1248 ("While public records

28  certainly impart presumptive notice under some circumstances, we decline to hold their mere

---

1    existence imparts knowledge as a matter of law.")  Imposition of constructive knowledge requires

2    a finding that the plaintiff, in the exercise of reasonable diligence, should have reviewed the public

3    records in question. *Id.*

4            A plaintiff has no obligation to search public records for evidence of a particular

5    defendant's wrongdoing unless the plaintiff has actual knowledge of facts that would have cast

6    reasonable suspicion of wrongdoing on that defendant in the first instance. *Id.*  In this regard, a

7    plaintiff is ordinarily entitled to assume that a defendant will not engage in wrongful conduct,

8    particularly when the defendant is engaged in a business which is subject to regulations that would

9    be violated by such wrongful conduct. *Id.*  Thus, in *Prudential*, the court applied the discovery

10   rule to plaintiffs' claims against a title company after concluding that the plaintiffs had "no reason

11   to check the public records" to investigate whether the title company had engaged in actionable

12   conduct.  Instead, the plaintiffs were entitled to assume that the title company would act in the

13   manner required by statute, particularly where the failure to so act would constitute a crime. *Id.*

14           The fact that Four Star was a Ponzi scheme did not give Plaintiffs any reason to suspect

15   that Comerica, a federally regulated bank, would knowingly assist in the Ponzi scheme in

16   violation of banking regulations as well as civil and criminal laws.  Having no reason to suspect

17   Comerica in the first instance, Plaintiffs cannot be charged with facts that they might have

18   discovered about Comerica's potential wrongdoing from a search of public records.

19   **2.    *Even Assuming that Plaintiffs Could be Charged With Constructive Knowledge
         of the Public Documents Cited by Comerica, Plaintiffs Could Not Have***
20          ***Suspected the Factual Basis for Any Cause of Action Against Comerica***

21           Comerica argues that, once Plaintiffs suspected or should have suspected that their injury

22   was the result of wrongdoing, "that someone has done something wrong" to them, the statute of

23   limitations began to run on Plaintiffs' claims against Comerica.  Motion at 7:3-14.  But the

24   California Supreme Court has rejected "the rule that all claims arising from an injury accrue

25   simultaneously, even if based upon distinct types of wrongdoing". *Fox v. Ethicon Endo-Surgery,*

26   *Inc.* (2005) 35 Cal.4th 797, 815. *See also E-Fab, Inc. v. Accountants, Inc.* (2007) 153 Cal.App.4th

27   1308, 1323 (applying *Fox*).  Comerica's argument fails because it improperly conflates suspicion

28   that an injury was due to some kind of wrongdoing, which is what Plaintiffs had as early as

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS                    Page 14

1    October 2002 when Four Star stopped making investor distributions, and suspicion of *facts that*

2    *would support Plaintiffs' causes of action against Comerica*, which Plaintiffs did not have, and

3    could not have had, until October 2008.  As stated in *Fox*:

4                 [U]nder the delayed discovery rule, a cause of action accrues and the
5             statute of limitations begins to run when the plaintiff has reason to suspect an
              injury and some wrongful cause, *unless the plaintiff pleads and proves that a*
6             *reasonable investigation at that time would not have revealed a factual basis for*
              *that particular cause of action.* In that case, the statute of limitations for that cause
7             of action will be tolled until such time as a reasonable investigation would have
8             revealed its factual basis.

9    *Fox, supra*, 35 Cal.4th at 803 (italics added).

10          The documents cited in Comerica's Motion would have put Plaintiffs on notice only of

11   facts supporting causes of action against insiders of Four Star for negligence, fraud, breach of

12   fiduciary duty, etc., and indeed those were the causes of action listed in the investor lawsuits

13   attached to Comerica's Request for Judicial Notice.  But the facts supporting these causes of

14   action would not have supported causes of action against Comerica.  Comerica cites no facts or

15   allegations that *Comerica* made any false representations to Plaintiffs, as would be required for a

16   cause of action for fraud, or that *Comerica* had any duty to Plaintiffs, as would be required for a

17   cause of action for negligence or breach of fiduciary duty.

18          Plaintiffs' causes of action against Comerica are based on conduct amounting to *aiding*

19   *and abetting* an intentional tort, and as such are fundamentally different from causes of action that

20   were asserted in the lawsuits cited in Comerica's Motion.  The elements of the claims are

21   different, and the primary rights and primary duties associated with the claims are different.[9]

22   "Although both claims seek to redress the same physical injury to the plaintiff, they are based on

23   _____

24   [9]   *See Grisham, supra*, 40 Cal.4th at 641 ("The primary right theory is a theory of code
     pleading that has long been followed in California.  It provides that a 'cause of action' is
25   comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant,
     and a wrongful act by the defendant constituting a breach of that duty.  The most salient
26   characteristic of a primary right is that it is indivisible: the violation of a single primary right
     gives rise to but a single cause of action.  A pleading that states the violation of one primary
27   right in two causes of action contravenes the rule against 'splitting' a cause of action.")
     (internal quotations and citations omitted)
28
     _____

1   two distinct types of wrongdoing and should be treated separately in that regard." *Fox, supra*, 35

2   Cal.4[th] at 814-15.

3          Prior to October 2008, the only element of Plaintiffs' claims against Comerica for which

4   Plaintiffs had actual knowledge of supporting facts was that they had been injured by intentional

5   torts committed by insiders of Four Star.  Nothing contained in the documents attached to

6   Comerica's Request for Judicial Notice provides a factual basis for the remaining elements of

7   Plaintiffs' claims, i.e., that persons other than Four Star insiders had knowingly aided and abetted

8   the commission of those intentional torts.  Nothing in these documents would make a reasonable

9   person suspect that Comerica had been involved in any wrongdoing.

10          Comerica argues that a diligent investigation by Plaintiffs would have included a review

11   of the Comerica account statements for Four Star's accounts and the Anson/Garrett line of credit.

12   There is no basis for Comerica's assumption that the line of credit statements would have been

13   accessible to Plaintiffs, i.e., the Complaint does not allege that the line of credit statements are in

14   the bankruptcy trustee's possession.  But even if Plaintiffs had reviewed all of these account

15   statements, at most this would have put Plaintiffs on notice of the facts that (1) investor funds had

16   been deposited into Four Star's account, (2) investor distributions had been paid from that

17   account, and (3) funds had been transferred between that account and non-Four Star accounts,

18   including the Anson/Garrett line of credit and the account of a Four Star affiliate, FSF, LLC.

19   (Complaint at ¶ 104, subparagraphs (a), (b), (c) and (d); ¶ 116, subparagraphs (a), (b).)  Standing

20   alone, i.e., in the absence of any knowledge of the Banking Scheme, none of these banking

21   transactions are suspicious because they are not inconsistent with legitimate business activities.

22          Yet even if the Court were to conclude that these account records should have put a

23   diligent plaintiff on notice of suspicious activities, that fact would not imply any misconduct by

24   Comerica.  If in fact Four Star had been a Ponzi scheme, Plaintiffs should not have been surprised

25   to find evidence of suspicious activities in virtually any Four Star record, but this would not have

26   been enough to suspect everyone who ever did business with Four Star of being a co-conspirator.

27          Even if Plaintiffs could be charged with constructive knowledge that Comerica *must have*

28   *known* that these account activities were suspicious, this would still not be enough to start the

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS                    Page 16

1    statutes of limitations to run on Plaintiffs' claims against Comerica because Plaintiffs would still

2    have no reason to believe that they had any cause of action against Comerica.  As Comerica has

3    duly noted (Motion at 20:25 – 21:8), a bank's knowledge of suspicious account activities is

4    insufficient to infer knowledge of wrongful conduct by the account holder and imposes no duty on

5    the bank.  *See Casey v. U.S. Bank Nat'l. Assoc.* (2005) 127 Cal.App.4[th] 1138, 1142; *Chazen v.*

6    *Centennial Bank* (1998) 61 Cal. App. 4th 532, 540, 541 (bank had no duty to investors of depositor

7    to take any action to protect investors from depositor's misappropriation of their funds).

8           Until such time that Plaintiffs could reasonably have uncovered facts that Comerica had

9    actively facilitated the Four Star Managers' fraud and breach of fiduciary duty, Plaintiffs had no

10   reasonable basis for believing that Comerica had done anything for which Plaintiffs had a cause of

11   action.  Plaintiffs were in no position to sue Comerica based on, at most, evidence of suspicious

12   activity in Four Star's Comerica accounts, which is all that Comerica can point to in the public

13   records attached to its Motion.  "[I]t would be difficult to describe a cause of action filed by a

14   plaintiff, before that plaintiff reasonably suspects that the cause of action is a meritorious one, as

15   anything but frivolous.  At best, the plaintiff's cause of action would be subject to demurrer for

16   failure to specify supporting facts[.]"  *Grisham, supra,* 40 Cal.4[th] at 645.

17          Comerica argues that "common sense" dictated that Plaintiffs should have filed an action

18   against any known defendants, i.e., the Four Star Managers, and then conducted discovery to

19   determine the identity of Doe defendants such as Comerica.  Motion at 14:23 – 15:8.  But in

20   *Bernson, supra,* the Supreme Court rejected that argument where, as here, the plaintiff was

21   ignorant of the Doe defendant's identity because the defendant had intentionally concealed it.

22   "An injured person does not go to the expense of legal representation and litigation merely

23   because he knows he has been wronged. … [I]f he has no knowledge of the wrongdoer's identity

24   … it is scarcely expectable that he will file an action and hope that something turns up to make it

25   worthwhile...."  *Id.* at 936.

26          Comerica points to the allegations in the Reservoir Capital lawsuit, i.e., that Four Star hid

27   its assets in shell entities, as facts which put Plaintiffs on notice of their claims against Comerica.

28   *See* Exhibits 2, 3, 6, 7 attached to Comerica's Request for Judicial Notice.  Yet what is significant

---

1   about these documents is the fact that Reservoir Capital did not attempt to assert a claim against

2   any of the banks at which the hidden funds were allegedly kept.  Since Reservoir Capital could

3   only have made such a claim by alleging that the banks had actual knowledge of the fraud, a

4   reasonable Plaintiff reviewing these documents would have to infer that Reservoir Capital had no

5   information that any bank knew about the fraud.

6          The only information cited by Comerica that relates to a bank's actual knowledge of the

7   Four Star Ponzi scheme is an allegation in a class action complaint that First Charter Bank had

8   knowingly permitted its accounts to be used by Four Star "to perpetrate the fraud on their

9   unwitting investors."  *See* Exhibit 17 to Comerica's Request for Judicial Notice, at ¶ 63.

10  However, that allegation was not made on the basis of facts that would reasonably cast suspicion

11  on any of the other banks at which Four Star maintained accounts.[10]  Rather, the allegation of First

12  Charter's actual knowledge appears to be based on the allegation that a First Charter officer,

13  Steven Wade, was also a Four Star manager who was personally involved in perpetrating the

14  fraud.  *See* Exhibit 17 to Comerica's Request for Judicial Notice at ¶¶ 4, 5, 24-29, 45, 62.

15  Plaintiffs had no reason to suspect that a Four Star insider was an insider at any other bank.  On

16  the contrary, the fact that the complaint targeted only First Charter, and no other bank, would be

17  viewed by a reasonable Plaintiff to mean that these allegations were unique to First Charter.

18         Although not one of the documents cited by Comerica contains any evidence or

19  accusation that Comerica either knew of or assisted in the Four Star Ponzi scheme, Comerica

20  nonetheless argues that the aggregate of these documents ought to have aroused Plaintiffs'

21  suspicion about Comerica.  The unreasonableness of this argument is made clear when one

22  realizes that Comerica's culpability was never evident to any of the attorneys who spent years

23  actively seeking to recover damages for Four Star investors and creditors in the numerous lawsuits

24  cited in these documents.

25  ///

26

27  [10]  In addition to First Charter and Comerica, Four Star also held accounts at Citibank, Bank of
    America, and HSBC Bank.  *See* "Statement of Financial Affairs, Question No. 11 (Bank Account
28  Listing)" in Exhibit 11 to Comerica's Request for Judicial Notice.

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS                    Page 18

1    Comerica argues that the Comerica bank records in possession of the Four Star

2    bankruptcy trustee should have put Plaintiffs on notice of Comerica's culpability.  Motion at

3    16:14-16.  Plaintiffs do not deny that the bank records are likely to contain important evidence.

4    With the benefit of Four Star Manager Mark Cohn's disclosures of the existence and detailed

5    mechanics of the Banking Scheme, Plaintiffs expect that a forensic accountant will be able to

6    provide confirmation for Cohn's disclosures by charting the movement of funds in and out of

7    these accounts and comparing that movement of funds with the timing of the execution of creditor

8    writs against the Comerica accounts.

9    Should a diligent Plaintiff have been able to recognize the Banking Scheme by examining

10   these same records at some earlier time?  Before answering that question, the Court should

11   consider that in 2004, the bankruptcy trustee retained Squar, Milner Reehl & Williamson, an

12   accounting firm with special expertise in fraud-related forensic accounting for the express purpose

13   of analyzing Four Star's books, records and computers in order to, among other things, "make

14   recommendations to the Trustee as to whether there are any preference or fraudulent transfer

15   actions that should be commenced to recover additional monies for the benefit of the creditors of

16   the Debtor".  *See* Exhibit 12 to Comerica's Request for Judicial Notice.  Yet the bankruptcy

17   trustee never reported any suspicious movement of funds in any Comerica accounts, nor any

18   misconduct by Comerica, nor any potential claims to be asserted against Comerica.

19   At bottom, Comerica's argument boils down to its assertion that Plaintiffs should be

20   charged with knowledge of facts that teams of litigation attorneys and forensic accountants, who

21   were looking for precisely these kinds of facts, couldn't find for the past five years.  Comerica will

22   have the opportunity to make this assertion to the trier of fact, but it is not an assertion that can or

23   should be disposed of by motion to dismiss.  *See Supermail, supra,* 68 F.3d at 1206-07 ("Because

24   the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it

25   'is not generally amenable to resolution on a Rule 12(b)(6) motion.' ") (citation omitted).

26   / / /

27   / / /

28   / / /

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS                Page 19

**V.**

**PLAINTIFFS HAVE SUFFICIENTLY PLED CLAIMS FOR
AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND FRAUD**

A.    **The Complaint Sufficiently Pleads Comerica's Actual Knowledge of the Specific
Primary Wrong that Comerica Aided and Abetted**

Comerica attacks as insufficient the Complaint's allegations that Comerica had "actual knowledge" of the wrongdoing that Comerica is alleged to have aided and abetted, on the ground that the allegation of actual knowledge is "conclusory and unsupported by any real facts or reasonable inferences." Motion at 21:10-12. Comerica relies on *Casey, supra,* 127 Cal.App.4th 1138. Motion at 20:17 – 21:9; 21:27 – 22:7. However, *Casey* is factually distinguishable.

*Casey* held that in pleading aiding and abetting liability, the requirement of the defendant's "actual knowledge" means actual knowledge of the "specific primary wrong" for which the plaintiff seeks to impose the aiding and abetting liability. *Casey, supra,* 127 Cal.App.4th at 1145. In *Casey,* the specific primary wrong was the misappropriation of the plaintiff's assets. *Id.* at 1149. The court noted that the complaint did not allege that the banks had actual knowledge of this misappropriation. Instead, the complaint alleged the banks knew that the fiduciaries "were making unauthorized cash withdrawals from [the banks' accounts] in breach of their fiduciary duties to the Estate and were actually involved in a criminal or dishonest and wrongful enterprise and were, at the very least, laundering money." *Id.* at 1152-53. This allegation, the court held, fell short of actual knowledge of the specific primary wrong: "This 'kitchen sink' allegation – either carefully parsed out or read as a whole – does not assert the banks had actual knowledge of the misappropriation at issue here." *Id.* at 1154.

Here, the specific primary wrong is the fraud and breach of fiduciary duty that Four Star and the Four Star Managers committed against Plaintiffs by falsely representing to Plaintiffs that Four Star was a solvent and profitable enterprise, a representation that was designed to, and did, induce Plaintiffs to make new investments in Four Star. Complaint at ¶¶ 59-62, 66, 69, 70, 80. Unlike in *Casey,* Plaintiffs have not merely sought to *imply* Comerica's actual knowledge of the specific primary wrong by alleging that Comerica was aware of various disjointed components—

1    i.e., *Casey's* "kitchen sink" allegation. Instead, the Complaint *expressly alleges* that Comerica

2    had actual knowledge of all elements of the Banking Scheme and that the sole purpose of the

3    scheme was to commit the specific primary wrong. Complaint at ¶¶ 32, 33, 37, 38, 39, 40.[11]

4            Comerica argues that, even though the Complaint expressly alleges Comerica's actual

5    knowledge of the specific primary wrong, this is insufficient because the allegation is "conclusory

6    and unsupported by any real facts or reasonable inferences". Motion at 21:11-12. Comerica is

7    incorrect. A party must plead fraud and mistake with particularity, but may plead malice, intent,

8    knowledge, and other conditions of a person's mind generally. Fed.R.Civ.P., Rule 9(b). Indeed,

9    courts have found pleadings sufficient if they allege generally that defendants had actual

10   knowledge of a specific primary violation. *Neilson, supra*, 290 F. Supp. 2d at 1120. See also *In

11   re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc) (Rule 9(b) does not

12   require "any particularity in connection with an averment of intent, knowledge or condition of the

13   mind"; *Gottreich v. San Francisco Inv. Corp.*, 552 F.2d 866, 866-67 (9th Cir. 1977) (plaintiffs'

14   conclusory allegation that defendants "knew" their representations were false held sufficient to

15   plead element of fraudulent intent).

16   **B.    There is No "Independent Duty" Requirement for Aiding and Abetting**

17           Comerica argues that Plaintiffs' claim for aiding and abetting breach of fiduciary duty

18   must fail because "Comerica cannot be held liable for aiding and abetting … to breach a fiduciary

19   duty it does not owe to Plaintiffs." Motion at 19:16-17. However, the law is contrary. "Under

20   California law, [a claim of aiding and abetting] does not require that the aider and abettor owe

21

22   [11]  The Complaint's allegation that Smith had actual knowledge of Four Star's insolvency
23   because he reviewed Four Star's financial statements is attacked by Comerica as "directly
     contradicted by Plaintiffs' own allegation that these same Four Star financial statements were
24   fraudulent and misleading." Motion at 21:18-23. Comerica has mischaracterized the
     Complaint's allegations. The Complaint alleges that Plaintiffs received "fraudulent financial
25   statements for Four Star that concealed material facts about the true financial condition of Four
     Star and falsely represented that Four Star had sufficient income and assets to support its
26   ongoing operations and investor distributions". ¶ 45. In contrast, the Complaint alleges that
27   Smith not only received the financial statements, but also regularly reviewed "*back-up
     documentation* for said financial statements, *which documentation disclosed the insolvent
28   condition of Four Star.*" ¶ 39 (italics added)

1   plaintiff a duty so long as it knows the primary wrongdoer's conduct constitutes a breach of duty,

2   and it substantially assists that breach of duty." *Neilson, supra*, 290 F.Supp.2d at 1127. *See also*

3   *Casey, supra*, 127 Cal.App.4th at 1145 n. 2 ("For the reasons articulated so well in the *Neilson*

4   opinion, we reject the banks' attempt to overlay the civil conspiracy 'independent duty'

5   requirement onto an aiding and abetting claim."). *See also Gonzales, supra*, 532 F.Supp.2d at

6   1207 ("Defendant can be liable for aiding and abetting a breach of fiduciary duty, even if it did

7   not personally owe a duty to the injured party."); *see also* Rest.2d Torts, § 876, subd. (b) ("For

8   harm resulting to a third person from the tortious conduct of another, one is subject to liability if

9   he [¶] ... [¶] (b) knows that the other's conduct constitutes a breach of duty and gives substantial

10  assistance or encouragement to the other so to conduct himself"), cited with approval in *Schulz v.*

11  *Neovi Data Corp.* (2007) 152 Cal.App.4th 86, 93.

12          The plaintiffs in *Gonzales* were investors in a Ponzi scheme who contended that the

13  scheme's operators had breached their fiduciary duty to plaintiffs by misappropriating invested

14  funds. Plaintiffs sued Lloyds TXB Bank, Plc ("Lloyds") for aiding and abetting the scheme by

15  facilitating the misappropriation of the funds through the use of various Lloyds accounts

16  maintained by the schemers. *Gonzales, supra*, 532 F.Supp.2d at 1204-1205. Lloyds filed a

17  motion to dismiss on the ground that it did not owe any duty to the plaintiffs, who were not

18  depositors with the bank. *Id.* at 1204, 1206-1207. In denying Lloyds' motion, the court expressly

19  followed the holdings in *Neilson, supra*, 290 F.Supp.2d at 1127, and *Casey, supra*, 127

20  Cal.App.4th at 1145 n. 2. *Gonzales, supra*, 532 F.Supp.2d at 1207.

21          In support of its argument that an independent duty is required for aiding and abetting,

22  Comerica cites *County of Orange v. McGraw-Hill Cos.*, 203 B.R. 983, 999 (Bankr.C.D.Cal.

23  1996), where the court said: "I see no reason for treating the vicarious tort of aiding and abetting

24  breach of a fiduciary duty differently from that of conspiracy to breach a fiduciary duty." Motion

25  at 20:6-7. *County of Orange* made this statement without any analysis, other than a citation to

26  *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 78, regarding the similarities of the

27  two torts. *County of Orange, supra*, 203 B.R. at 999. But *Janken* never addressed the issue of

28  whether aiding and abetting requires an independent duty. The issue in *Janken* was whether the

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS                    Page 22

1  employee immunity rule would apply to both torts, i.e., that, just as an employee cannot be held

2  liable for conspiring with his or her employer to commit a tort, neither can the employee be liable

3  for aiding and abetting the employer's commission of a tort. *Janken, supra*, 46 Cal.App.4th at 78.

4        Several years after *County of Orange*, a survey of cases from numerous jurisdictions led

5  the court in *Neilson, supra*, 290 F.Supp.2d 1101, to conclude that there is no rational basis for

6  imposing an independent duty as an element of aiding and abetting:

7          Unlike a conspirator, an aider and abettor does not "adopt as his or her

8        own" the tort of the primary violator.  Rather, the act of aiding and abetting is
      distinct from the primary violation; liability attaches because the aider and abettor

9        behaves in a manner that enables the primary violator to commit the underlying

10        tort. *Halberstam v. Welch*, 705 F.2d 472, 478 (D.C.Cir.1983) ....

11  *Neilson, supra*, 290 F.Supp.2d at 1134.[12]

12        The correct rule is stated by *Neilson* for the reasons discussed therein.

13  **VI.**

14
15  **PLAINTIFFS HAVE SUFFICIENTLY PLED A CLAIM FOR
CONSPIRACY TO BREACH FIDUCIARY DUTY**

16        Ordinarily, one who owes no fiduciary duty to the plaintiff is not liable for conspiring with

17  the plaintiff's fiduciary to breach the latter's duty to the plaintiff. *1-800 Contracts, Inc. v.*

18  *Steinberg* (2003) 107 Cal.App.4th 568, 592.  Moreover, under the agent's immunity rule, if a

19  fiduciary breaches his duty to a plaintiff, the fiduciary's agent generally cannot be held liable for

20  conspiring with his principal. *Id.*  However, there is an exception to both of these rules: When an

21  agent of a fiduciary conspires with his principal to breach the latter's fiduciary duty to the

22  plaintiff, and the agent acts in part for the agent's own personal gain, then the agent is liable to the

23  plaintiff on a theory of conspiracy to breach fiduciary duty. *Id.*  This exception was recognized by

24  the Supreme Court in *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39:

25  */ / /*

26

27  [12]  *Neilson* also rejected the argument that "federal courts interpreting California law have
28  required that plaintiffs prove that defendant owed them an independent duty as a prerequisite to
the imposition of aider and abettor liability." *Id.* at 1136-37.

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS        Page 23

1
2
3
4

> ... a plaintiff, defrauded by means of one defendant's violation of a fiduciary duty, [is] allowed to recover against another defendant who, though not subject to the fiduciary duty, had conspired in the fraud ... [where] ... the nonfiduciary defendants had acted not simply as agents or employees of the fiduciary defendants but rather in furtherance of their own financial gain[.]

5   *Doctors' Co., supra,* 49 Cal.3d at 47. *See also Anderson v. Thacher* (1946) 76 Cal.App.2d 50, 72;

6   *Rosenthal v. Gould* (1969) 273 Cal.App.2d 239, 243-244; *Everest Investors 8 v. Whitehall Real*

7   *Estate Limited Partnership XI* (2002) 100 Cal.App.4th 1102, 1107.

8   Thus, Plaintiffs may assert a claim for conspiracy to breach fiduciary duty by alleging that

9   Comerica (1) acted for its own gain, and (2) acted in the capacity as an agent of the fiduciaries.

10  Plaintiffs have done this. The Complaint satisfies the first element by alleging that Comerica

11  engaged in its conduct in order to profit from the Banking Scheme and that Comerica did so

12  profit. Complaint at ¶¶ 40-44. As to the second element, the essence of an agency relationship is

13  that the agent is not merely instructed as to the desired result, but is instead directed to take

14  specific acts in order to achieve that result. *See Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974,

15  983. That is precisely what is alleged here, i.e., the Four Star Managers devised a precisely

16  calibrated scheme that required Comerica to take *specific* actions, i.e., providing instant credit for

17  deposits (Complaint at ¶ 33(d)), moving credited deposits immediately into specified non-Four

18  Star accounts (*id.*), and cooperating with Four Star to clear selected checks (Complaint at ¶ 35).

19                                          **VII.**

20                **PLAINTIFFS HAVE SUFFICIENTLY PLED RICO CLAIMS**

21  **A.     The RICO Amendment Does Not Apply to Plaintiffs' RICO Claims**

22  Comerica argues that the amendment to RICO under Section 107 of the PSLRA (the

23  "RICO Amendment") bars Plaintiffs' RICO claims because "[s]ecurities fraud is at the core of

24  Plaintiffs RICO claims." Motion at 23:5. Comerica has misconstrued the RICO Amendment.

25  The RICO Amendment provides that "no person may rely upon any conduct that would have been

26  actionable as fraud in the purchase or sale of securities to establish a violation of section 1962".

27  *See* 18 U.S.C. S 1964(c). In other words, the focus of the RICO Amendment is on the conduct of

28

---

1   the RICO defendant. "The proper test is whether 'the conduct pled as predicate offenses is

2   actionable as securities fraud.'" *Gatz v. Ponsoldt*, 297 F.Supp.2d 719, 730 (D. Del. 2003).

3          The initial inquiry, then, is to identify "the conduct pled as predicate offenses" for

4   Plaintiffs' RICO claims against Comerica.  Comerica argues that the predicate offenses are the

5   "misrepresentations and conduct" of the Four Star.  Motion at 23:5-21.  This is incorrect.  The

6   predicate offenses alleged in support of Plaintiffs' RICO claims consist entirely of Comerica's

7   own conduct.  Complaint at ¶¶ 104, 108-110, 119.  The Four Star Managers' conduct is relevant

8   to Plaintiffs' RICO claims only to the extent that Comerica is alleged to have aided and abetted

9   the Four Star Managers' conduct.  Complaint at ¶¶ 108-110, 119.

10         The next inquiry is to determine whether Comerica's conduct is actionable as securities

11  fraud.  Clearly it is not.  There is no conceivable plaintiff with standing to bring a security fraud

12  action based on Comerica's conduct.

13         A purchaser of Four Star securities could not bring a securities fraud action against

14  Comerica under SEC Rule 10b-5 (Section 10(b) of the Securities Exchange Act of 1934).  Rule

15  10b-5 liability lies in connection with either (1) a material misrepresentation or omission, or (2)

16  conduct that constitutes a deceptive act or furtherance of a fraudulent scheme, including any

17  device, scheme, or artifice to defraud.  15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.  Neither

18  condition is met by the allegations in the Complaint.

19         The Complaint makes no allegation that Comerica made any misrepresentation to

20  Plaintiffs, and the Complaint alleges no facts showing that Plaintiffs and Comerica had a fiduciary

21  or agency relationship, prior dealings, or circumstance such that the plaintiff had placed trust and

22  confidence in the defendant, as would be required for a Section 10(b) claim based on omission.

23  *See Jett v. Sunderman*, 840 F.2d 1487, 1493 (9th Cir. 1988).

24         Comerica's alleged conduct also is not "conduct that constitutes a deceptive act or

25  furtherance of a fraudulent scheme".  *See Dreiling v. America Online Inc.*, 578 F.3d 995, 1003 (9th

26  Cir. 2009) ("Section 10(b) of the Exchange Act authorizes private litigants to bring actions against

27  issuers for securities fraud, but private litigants are barred from bringing actions against

28  'secondary actors,' such as AOL, for allegedly aiding and abetting securities fraud [by deceptive

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS                    Page 25

1  conduct]"). *See also Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S.

2  148, 128 S.Ct. 761, 771, __ L.Ed.2d __ (2008), where the court rejected Section 10(b) liability

3  against a third party based on concealed deceptive conduct that enabled the fraudulent scheme

4  ("Were we to adopt this construction of §10(b), it would revive in substance the implied cause of

5  action against all aiders and abettors except those who committed no deceptive act in the process

6  of facilitating the fraud"). But even if Comerica's conduct were deemed to satisfy the definition

7  of deceptive conduct under Section 10(b), there could still be no actionable securities fraud claim

8  without an allegation of facts showing reliance. *Stoneridge, supra*, 128 S.Ct. at 769; *In re*

9  *Brocade Comm. Systems, Inc. Derivative Lit.*, 615 F.Supp.2d 1018, 1043 (N.D.Cal. 2009).

10 Plaintiffs could not have relied on Comerica's conduct, because that conduct had been concealed

11 from Plaintiffs. *See Stoneridge, supra*, 128 S.Ct. at 770 (where a defendant's deceptive conduct is

12 not disclosed to the investing public, such conduct will be "too remote to satisfy the requirement

13 of reliance"). Unlike a Rule 10b-5 action based on a misrepresentation or omission, reliance is not

14 presumed in a 10b-5 action based on deceptive conduct. *See Desai v. Deutsche Bank Securities*

15 *Limited*, 573 F3d 931, 940-41 (9th Cir. 2009).[13]

16        Comerica's conduct does not itself constitute securities fraud, but instead amounts to

17 aiding and abetting the securities fraud perpetrated by the Four Star Managers. In *Central Bank*

18 *of Denver, supra,* 511 U.S. at 191, 114 S.Ct. at 1455, the Supreme Court held that conduct

19 consisting of aiding and abetting securities fraud is not actionable under the securities laws.

20        The final inquiry, then, is to determine whether the RICO Amendment applies to conduct

21 which, while not actionable itself under the securities laws, consists of aiding and abetting

22

23

24 [13] Other potential bases for a securities fraud action against Comerica have no application
   here. Section 11 of the 1933 Act, 15 U.S.C. §77k, applies to false registration statements and
25 has no application to Comerica's alleged conduct; Sections 12(a)(1) and 12(a)(2) of the 1933
   Act, 15 U.S.C. §77l(a)(1) and (a)(2), can only be asserted against persons who sell or offer for
26 sale the security, and thus have no application to Comerica's alleged conduct; and there is no
27 private right of action under Section 17(a) of the 1933 Act, 15 U.S.C. §77q(a) (*see In re*
   *Washington Public Power Supply System Securities Litigation*, 823 F.2d 1349, 1355-1358 (9th
28 Cir. 1987); *In re Sherman*, 491 F.3d 948, 960 (9th Cir. 2006)).

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS            Page 26

1  actionable securities fraud. The answer is that the RICO Amendment does not apply to aiding and

2  abetting conduct.

3       First, the language of the statute makes this point clear. The RICO Amendment prohibits

4  RICO claims based only on "conduct that would have been *actionable* as fraud in the purchase or

5  sale of securities" (italics added).

6       Next, the legislative history of the statute underscores that Congress was concerned only

7  with prohibiting RICO claims against a defendant who was already subject to a private securities

8  fraud action. A Conference Committee report "is the most persuasive evidence of congressional

9  intent besides the statute itself". *In re Kelly*, 841 F.2d 908, 912 n. 3 (9th Cir.1988). The House

10 Conference Committee report on the RICO Amendment contains the following discussion

11 regarding the purpose of the RICO Amendment:[14]

12       INAPPLICABILITY OF RACKETEER INFLUENCED AND CORRUPT
         ORGANIZATIONS ACT (RICO) TO *PRIVATE SECURITIES ACTIONS*
13

14            The SEC has supported removing securities fraud as a predicate offense
         in a civil action under the Racketeer Influenced and Corrupt Organizations Act
15       ("RICO"). SEC Chairman Arthur Levitt testified: "Because the securities laws
         generally provide *adequate remedies for those injured by securities fraud*, it is
16       both unnecessary and unfair to expose defendants in securities cases to the
         threat of treble damages and other extraordinary remedies provided by RICO."
17

18 H. R. Conf. Rep. No. 104-369 (1995) at 47 (bold and italics added)

19       In other words, the Conference Committee Report shows that the RICO Amendment

20 had the specific and limited purpose of eliminating the "unnecessary and unfair" threat of

21 RICO remedies against a defendant where private remedies for the defendant's conduct already

22 exist under the securities laws. In *Bald Eagle Area School Dist. v. Keystone Financial Inc.*, 189

23 F.3d 321 (3d Cir. 1999), the court reviewed the House Conference Committee report and

24 reached this same conclusion: "The 'focus' of the Amendment was on "completely eliminating

25 the so-called 'treble damage blunderbuss of RICO' in securities fraud cases." *Bald Eagle, supra*,

26

27 [14] The report deals with the entire PSLRA and includes a section on the RICO Amendment (§
28 107 of the PSLRA). A copy of the report, H. R. Conf. Rep. No. 104-369 (1995), is attached as
   Exhibit A to Plaintiffs' Request for Judicial Notice.

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS              Page 27

1    189 F.3d at 327-28. *See also Florida Evergreen Fol. v. E.I. Dupont De Nemours*, 165

2    F.Supp.2d 1345, 1357 (S.D. Fla. 2001); *Rowe v. Marietta Corp.*, 955 F.Supp. 836, 847 (W.D.

3    Tenn., 1997).

4        It is also significant that the RICO Amendment was enacted barely a year after the

5    Supreme Court's holding, in *Central Bank of Denver*, that aiding and abetting conduct is not

6    actionable under the securities laws.  Coming on the heels of that decision, it would be strange

7    for Congress to have used the phrase "conduct that would have been *actionable* as fraud in the

8    purchase or sale of securities" if, as Comerica is arguing, Congress intended the RICO

9    Amendment to apply to aiding and abetting.

10        At the very least, if Congress did not intend the word "actionable" to exclude aiding and

11    abetting conduct, one would have expected Congress to make that point very clear by adding the

12    words "aid" and "abet" to the statute.  Indeed, Congress would have been expected to be

13    especially vigilant on that point, in view of the Supreme Court's recent reasoning as to why

14    Congress must not have intended the securities laws to apply to aiding and abetting conduct:

15            Congress knew how to impose aiding and abetting liability when it
16        chose to do so. … If … Congress intended to impose aiding and abetting
        liability, we presume it would have used the words "aid" and "abet" in the
17        statutory text.  But it did not.

18    *Central Bank of Denver, supra,* 511 U.S. at 176-77, 114 S.Ct. at 1448.

19        Comerica cites *Howard v. AOL*, 208 F.3d 741, 749 (9th Cir. 2000), for the proposition that

20    the RICO Amendment bars RICO claims even where the plaintiff could not have personally

21    asserted a claim for securities fraud.  Motion at 23:1-4.  While this is true, *Howard's* point relates

22    to a standing issue that does not apply to Plaintiffs' RICO claims.  In *Howard*, the plaintiffs were

23    internet subscribers of AOL who asserted a RICO claim against AOL based upon, among other

24    things, securities fraud arising from AOL's alleged misrepresentation of its revenues, profits and

25    number of subscribers. *Howard, supra*, 208 F.3d at 745-46, 749.  No allegation was made that the

26    plaintiffs had purchased AOL securities, so there was no basis for the plaintiffs to assert a

27    securities fraud claim against AOL.  Relying on this point, the plaintiffs argued that the RICO

28    Amendment did not apply to their RICO claim because AOL's alleged conduct was not actionable

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS            Page 28

1   *by plaintiffs* under the securities laws.  *Id.* at 749.  The court rejected this argument, holding that

2   the RICO Amendment's reference to "conduct that would have been actionable as [securities]

3   fraud" means conduct that would have been actionable "by a plaintiff with proper standing".  *Id.*

4   Since plaintiffs did not dispute that a securities fraud action based on AOL's alleged conduct

5   could be brought by a plaintiff with proper standing, the court ruled that the RICO Amendment

6   barred plaintiffs from using that conduct as predicate acts for RICO.  *Id. Howard* is not applicable

7   because, unlike in *Howard*, there is no conceivable plaintiff with standing to bring a securities

8   fraud action based on Comerica's alleged conduct.

9          Comerica cites *Bald Eagle, supra*, for the proposition that whenever securities fraud is

10  alleged to be "at the heart" of a Ponzi scheme, the RICO Amendment bars RICO claims against

11  anyone who facilitated the scheme.  Motion at 24:3-5.  But *Bald Eagle* says no such thing.  In that

12  case, the court simply held that where the conduct giving rise to the predicate offenses amounts to

13  securities fraud, a plaintiff cannot avoid the RICO Amendment through "surgical presentation of

14  the cause of action."  *Bald Eagle, supra*, 189 F.3d at 330.  This is no different than the rule

15  discussed above.  Comerica points out that the *Bald Eagle* court granted the defendant banks'

16  motion to dismiss the plaintiffs' RICO claim.  Motion at 24:3-5.  However, the facts of *Bald*

17  *Eagle* are distinguishable.  The RICO claim in that case was based not merely on allegations of

18  aiding and abetting, but also on the allegation that the banks had "either misrepresented, or failed

19  to disclose," material facts to plaintiffs about the Ponzi scheme.  The court focused on that

20  particular allegation in concluding that the banks' alleged conduct was actionable as securities

21  fraud and thus could not support a RICO claim.  *Bald Eagle, supra*, 189 F.3d at 330.[15]

22  / / /

23  / / /

24  / / /

25

26  [15]  The court did not discuss whether the banks had a fiduciary duty to disclose, but such a duty

27  is inferred from the complaint's allegations that the banks actually purchased the securities in
    question on behalf of client accounts maintained in the names of plaintiffs, and provided

28  monthly account statements to plaintiffs with regard to the investments.  *Id.* at 324-25.

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS                    Page 29

1        It is important to recognize that none of the cases cited by Comerica involve a RICO

2   claim where the underlying conduct of the defendant consists solely of aiding and abetting

3   securities fraud, as is the situation here.  However, a case that does fit this profile is *OSRecovery,*

4   *Inc, supra,* 354 F.Supp.2d 357.  The plaintiffs were investors in a Ponzi scheme who asserted a

5   RICO claim against Latvian Economic Commercial Bank ("Lateko") based on predicate acts

6   of wire fraud and mail fraud.  *Id.* at 363.  Just as Comerica has done, Lateko moved to dismiss

7   the RICO claim on the ground that the plaintiffs' RICO claim was barred by the RICO

8   Amendment.  *Id.* at 364.  The court began its analysis by noting that "[u]nderlying plaintiffs'

9   RICO claims are allegations of Lateko's facilitation of the fraud by providing banking

10  services".  *Id* at 369.  However, the court explained that this conduct did not constitute

11  actionable securities fraud because (1) Lateko was not alleged to have made false

12  representations to plaintiffs, and (2) Lateko's alleged failure to disclose its knowledge of the

13  Ponzi scheme to plaintiffs did not amount to actionable securities fraud because Lateko had no

14  fiduciary duty to the plaintiffs to disclose anything to them, since plaintiffs did not hold

15  accounts with Lateko.  *Id.* at 370-371.  Thus, Lateko's conduct "was no more than aiding and

16  abetting.  Hence, it is not actionable under the securities laws and therefore actionable under

17  RICO, assuming the claims are otherwise sufficient."  *Id.* at 370.

18  **B.      The Complaint Sufficiently Pleads the Existence of an "Enterprise"**

19       "An enterprise can be identified by its ability to engage in conduct that 'would have been

20  beyond the capacities of the individual defendants acting either singly or without the aid of their

21  organizations.' "  *Gonzales, supra,* 532 F.Supp.2d at 1209, citing *United States v. Masters*, 924

22  F.2d 1362, 1367 (7th Cir.1991).  Here, the Complaint's allegations make it clear that the Banking

23  Scheme was beyond the capabilities of the Four Star Managers without the aid of Comerica, and

24  conversely, the Banking Scheme was beyond the capability of Comerica without the aid of the

25  Four Star Managers.  Complaint at ¶¶ 33, 104, 116, 119.

26       Comerica ignores Plaintiffs' numerous allegations about the existence, organization and

27  activity of the Four Star Enterprise when it argues that the Complaint fails to allege facts showing

28  the existence of an enterprise "which exists independently of the racketeering activity itself."

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS                    Page 30

1 Motion at 24:28 – 25:1. Plaintiffs allege that various individuals and entities comprised the Four

2 Star Enterprise. Complaint at ¶ 101. Several of the member entities, i.e., Comerica Bank and its

3 related entities (collectively termed "Comerica" in the Complaint [Complaint at ¶ 3]), have one or

4 more corporate structures and exist for separate legal purposes aside from committing acts of

5 racketeering. Complaint at ¶¶ 1, 3.[16] The Comerica corporate entities "had a legal existence

6 separate from their participation in the racketeering, and the very existence of a corporation meets

7 the requirement for a separate structure." *See U.S. v. Feldman*, 853 F.2d 648, 660 (9th Cir. 1988).

8 *See also Webster v. Omnitriton Int'l, Inc.*, 79 F.3d 776, 786 (9th Cir. 1996) ("The participation of a

9 corporation in a racketeering scheme is sufficient, of itself, to give the enterprise a structure

10 separate from the racketeering activity"); *Sebastian Int'l Inc. v. Russolillo*, 186 F.Supp.2d 1055,

11 1067 (C.D.Cal. 2000); *Gonzales, supra*, 532 F.Supp.2d at 1209. And the fact that each corporate

12 entity engaged in "[l]egal activity is also probative of a separate existence." *Feldman*, 853 F.2d at

13 660. *See also U.S. v. Blinder*, 10 F.3d 1468, 1474 (9th Cir. 1993) (affirming denial of motion to

14 dismiss RICO claims against brokerage firm "with extensive operations" "engaged in activities

15 other [than] those predicate acts") (emphasis omitted).

16      Comerica contends that Plaintiffs have merely alleged that the members of the Four Star

17 Enterprise engaged in "wrongful activity", which is not synonymous with the element of an

18 enterprise. Motion at 25:14-16. But this statement simply ignores the detailed allegations in the

19 Complaint that the members of the Four Star Enterprise, including Comerica, actively worked

20 together to formulate and implement a highly sophisticated and complex scheme, i.e., the Banking

21 Scheme, that was predicated upon a common understanding between the members of the

22 enterprise as to the purpose and the essential elements of the scheme. Complaint at ¶¶ 32, 33,

23 104(b), 104(c), 104(d), 104(e) and 104(g), 109, 116, 119.

24 ///

25

26 [16] Although not alleged in the Complaint, Plaintiffs would be able to allege upon information

27 and belief that Four Star, which was a limited liability company and thus a separate legal
entity, was not originally formed or operated for the purpose of racketeering, but only turned to

28 racketeering when its original business model became unprofitable.

As for Comerica's demand for facts "tending to establish that the various parties functioned as a continuing unit" (Motion at 25:13-14), the fact is that RICO enterprises do not have (or do not make readily available) detailed "org charts" delineating their chain of command. Accordingly, none should be required of Plaintiffs, particularly at the pleading stage. The Ninth Circuit has made clear that the existence of a "separate and apart" enterprise "is often-times more readily proven by what [the enterprise] *does*, rather than by an abstract analysis of its structure." *U.S. v. Fernandez*, 388 F.3d 1199, 1224 (9th Cir. 2004) (emphasis in original). *See also Gonzales, supra*, 532 F.Supp.2d at 1209-1210. And here, Plaintiffs allege that what the Four Star Enterprise *did* required a high level of coordination.

For example, in order to insure that no creditor writ could seize Four Star funds, it was necessary to have a near-zero or negative balance in Four Star's checking account at all times, but, in order to allow Four Star to continue its operations, it was also necessary for Four Star to be able to clear checks each day from the account. Complaint at ¶ 7. In order to accomplish these twin objectives, it was necessary for a carefully-orchestrated daily dance to take place. At the end of each banking day, the account balance would be near-zero. The next banking day, the account would open with a large negative bank balance because of the checks that had been posted against the account the previous night. Funds from non-Four Star accounts would then be transferred into the account to clear these checks—but only enough funds to cover the negative balance and return the account balance to near-zero, which is how the account would end the day. Four Star would prepare Cash Reports each day in order to determine the precise amount of funds that needed to be deposited in order to clear that day's checks. The next banking day, the process would repeat itself. In order to insure that deposits into the account from other sources, e.g. new investment funds, did not remain in the account for even a day, where they could be seized by creditor writs, Comerica routinely gave instant credit to the account for these deposits, even before the funds were actually received by Comerica, and then promptly swept the credited funds out of the account into non-Four Star accounts. Complaint at ¶ 33.

Thus, at all times, there were little or no funds available in the account to satisfy creditor writs, even while Four Star was regularly clearing checks through the account every banking day,

1   and receiving a constant stream of new investor funds into the account. Complaint at ¶ 34. These

2   daily transactions could hardly have gone unnoticed by Comerica, as they violated ordinary

3   banking practices as well as Comerica's own operational guidelines. Complaint at ¶¶ 35, 104(b).

4   Meanwhile, while all of this was occurring, Four Star was paying regular monthly investor

5   distributions to Plaintiffs from the account, thereby portraying itself to Plaintiffs as a solvent and

6   profitable operation, and inducing Plaintiffs to invest more funds. (Complaint at ¶¶ 7, 29, 45.)

7         The above-described acts are not a mere assemblage of independently wrongful conduct,

8   or merely a conspiracy to commit a wrong, as Comerica suggests. Motion at 24:27, 25:15.

9   Rather, these acts evidence a well-coordinated scheme by each of the members of the Four Star

10  Enterprise to "hide the ball"—the "ball" being Four Star's cash—in order to defraud Four Star's

11  creditors and sustain Four Star's ability to falsely portray itself to Plaintiffs as solvent and

12  profitable, and thus to induce Plaintiffs to continue making new investments in Four Star. The

13  scheme could not have succeeded without the affirmative contribution of each member of the

14  enterprise. It would have been pointless, for example, for Four Star to have duly written investor

15  distribution checks unless Four Star also knew that there would be funds in the account to clear

16  the checks. But Four Star could not have known that unless it knew that Comerica would take

17  affirmative steps which were contrary to ordinary banking practices and in violation of

18  Comerica's own procedures—to instantly credit deposits into the account, to continuously sweep

19  the account of excess cash, and to take no adverse action on an account that was overdrawn on a

20  daily basis, but instead to routinely wait for funds to be deposited to clear the checks. Such

21  coordinated conduct demonstrates the decision-making structure of "a loose-knit but effective

22  criminal organization [that] was in place ready to respond effectively by planning and carrying out

23  a detection-proof crime that would have been beyond the capacity of the individual [members]

24  acting either singly or without the aid of their organizations." *U.S. v. Masters*, 924 F.2d 1362,

25  1367 (7th Cir. 1991). Indeed, the sufficiency of the facts alleged in the Complaint concerning the

26  existence of the Four Star Enterprise measure up well with the facts which were found to be

27  sufficient to establish the existence of an enterprise in *Gonzales, supra*, 532 F.Supp.2d at 1212.

28  */ / /*

---

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS                    Page 33

1       But it is not necessary for this Court to look for *inferences* of coordination from the

2   alleged conduct, because Plaintiffs have additionally alleged that each member of the Four Star

3   Enterprise had actual knowledge that the express purpose of the foregoing activities was to enable

4   Four Star to make monthly investor distributions despite a lack of funds to pay its obligations, and

5   thus to induce new investments.  Complaint at ¶¶ 32, 33, 104(g), 119.

6                                   **VIII.**

7                              **CONCLUSION**

8       The statute of limitations on Plaintiffs' causes of action against Comerica did not begin

9   to run until Plaintiffs should have known, by the exercise of reasonable diligence, of the

10  essential elements of the causes of action.  There is no basis for the Court to conclude that

11  Plaintiffs should have known of these essential elements prior to the disclosure in 2008 by Four

12  Star Manager Mark Cohn.  The documents cited by Comerica underscore this point by

13  demonstrating that teams of lawyers and forensic accountants couldn't find these elements

14  despite years of trying.

15      Plaintiffs' aiding and abetting claims are sufficiently pled because Comerica is alleged

16  to have had actual knowledge of the specific primary wrong that Comerica is alleged to have

17  aided and abetted.  There is no independent duty requirement for aiding and abetting.

18      Plaintiffs' claim for conspiracy to breach fiduciary duty is sufficiently pled because

19  Comerica is alleged to have acted for its own personal gain as an agent of the Four Star

20  Managers, who had a fiduciary duty to Plaintiffs.

21      Plaintiffs' RICO claims are sufficiently pled because Comerica's conduct was not

22  actionable securities fraud and the Complaint sufficiently pleads the existence of an enterprise.

23      For the foregoing reasons, Comerica's Motion to Dismiss is without merit and should

24  be denied in its entirety.

25      If the Court were nonetheless inclined to dismiss any of Plaintiffs' causes of action, the

26  dismissal should be without prejudice to afford an opportunity to amend.  *See* Fed.R.Civ.P.

27  15(a) (leave to amend a complaint or pleading "shall be freely given when justice so requires");

28  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) (9th Circuit requires

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS                    Page 34

1  that this policy favoring amendment be "applied with extreme liberality"); *Eminence Capital,*

2  *LLC, supra,* 316 F.3d at 1053 (dismissal without leave to amend is not appropriate where it

3  appears that plaintiffs have "a reasonable chance of successfully stating a claim if given

4  another opportunity").

5

6  DATED:  October 8 , 2009

7                                                          LAW OFFICE OF ROBERT LUBIN
                                                          LAW OFFICE OF KENNETH PRITIKIN
8

9

10                                                        ROBERT LUBIN
                                                          KENNETH PRITIKIN
11                                                        JOSEPH CAMENZIND, IV
                                                          Attorneys for the Plaintiffs.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRITIKIN v. COMERICA BANK ET. AL.
PLAINTIFFS' OPPOSITION TO COMERICA BANK'S
MOTION TO DISMISS                    Page 35