1   BUCHALTER NEMER
    A Professional Corporation
2       PETER G. BERTRAND (#87883)
        RICHARD C. DARWIN (#161245)
3   333 Market Street, 25th Floor
    San Francisco, California  94105-2126
4   Telephone:    (415) 227-0900
    Facsimile:    (415) 227-0770
5   rdarwin@buchalter.com

6   Attorneys for Defendant
    COMERICA BANK

7

8                   UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

10

11  ROBERT PRITIKIN, et al.,            CASE NO. CV 09-03303 JF

12              Plaintiffs,             **COMERICA'S CORRECTED REPLY**
                                        **BRIEF IN SUPPORT OF MOTION TO**
13      v.                              **DISMISS**

14  COMERICA BANK, et al.,              Date:     October 30, 2009
                                        Time:     9:00 a.m.
15              Defendants.             Dept.:    Honorable Jeremy Fogel

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. ARGUMENT ...................................................................................................... 3

    A.  The Complaint Fails To Meet The Federal Pleading Standard Under Rule 8(a) .......................................................................................................... 3

    B.  Plaintiffs' Stale State Law Claims Are Not Saved By The Discovery Rule ........... 5

        1.  The Delayed Discovery Rule Requires Only That Plaintiffs Have Reason To Suspect That They Have Been Injured By Wrongdoing. ........ 6

        2.  The Discovery Rule Applies Only To Discovery Of The Underlying Wrong, Not The Identity Of A Defendant .................................................. 8

        3.  The Fox Decision Did Not Modify The Discovery Rule Set Forth In Norgart ........................................................................................................... 9

    C.  Plaintiffs' RICO Claims Accrued As Soon As They Discovered Their Injury And Are Clearly Time-Barred ......................................................... 11

    D.  Plaintiffs Have Not Pled A Valid Basis For Equitable Estoppel, Equitable Tolling, Or Fraudulent Concealment .................................................. 12

        1.  Equitable Estoppel Does Not Rescue Plaintiffs' Complaint .................... 12

        2.  Equitable Tolling Does Not Rescue Plaintiffs' Complaint ...................... 14

    E.  The Claims For Conspiracy To Breach A Fiduciary Duty, And Aiding And Abetting Such A Breach, Fail For Lack Of An Independent Duty ...................... 18

        1.  There Is No Valid Basis To Exclude Aiding And Abetting From The Rule That One Cannot Conspire To Breach A Duty It Does Not Owe ................................................................................................................ 18

        2.  Plaintiffs' Proffered Theory Of A "Personal Gain" Exception Misstates The Law ...................................................................................... 18

    F.  Plaintiffs Fail To Plead A Factual Basis For The "Actual Knowledge" Required To State An Aiding And Abetting Claim ............................................. 19

    G.  Plaintiffs' RICO "Aiding And Abetting" Claims Are Barred  By The PSLRA ...................................................................................................... 21

    H.  A RICO "Association-In-Fact" Enterprise Has Not Been Adequately Alleged ........................................................................................................ 23

III. CONCLUSION ................................................................................................. 24

# TABLE OF AUTHORITIES

**Page**

## CASES

*1-800 Contacts, Inc. v. Steinberg*
    107 Cal.App.4th 568 (2003) ......................................................................... 19

*Alan Neuman Productions, Inc. v. Albright*
    862 F.2d 1388 (9th Cir. 1988) ...................................................................... 24

*Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.*
    7 Cal.4th 503 (1994) ............................................................................... 18, 19

*Ashcroft v. Iqbal*
    129 S.Ct. 1937 (2009) ......................................................................... passim

*Azer v. Connell*
    306 F.3d 930 (9th Cir. 2002) ...................................................................... 17

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................................. passim

*Bernson v. Browning-Ferris Industries*
    7 Cal.4th 926 (1994) ................................................................................. 8, 13

*Cashman v. Astrue*
    2008 WL 2588711(D. Hawaii, June 27, 2008) ........................................... 17

*Central Bank of Denver, N.A. v. First Intestate Bank of Denver, N.A.*
    511 U.S. 164 (1994) ...................................................................................... 22

*Community Cause v. Boatwright*
    124 Cal.App.3d 888 (1981) ......................................................................... 16

*Conley v. Gibson*
    355 U.S. 41 (1957) ......................................................................................... 3

*Daviton v. Columbia/HCA Healthcare Corp.*
    241 F.3d 1131 (9th Cir. 2001) .................................................................... 17

*Doctors' Co. v. Superior Court*
    49 Cal.3d 39 (1989) ..................................................................................... 19

*Elan Microelectronics Corp. v. Apple, Inc.*
    No. C 09-01531 RS, 2009 WL 2972374 (N.D. Cal. Sept. 14, 2009) ............ 4

*Feduniak v. California Coastal Comm'n*
    148 Cal.App.4th 1346 (2007) ..................................................................... 13

*Fezzani v. Bear, Stearns & Co.*
    No. 99 Civ 0793 RCC, 2005 WL 500377,at *4 ...................................... 22, 23

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Fox v. Ethicon Endo-Surgery, Inc.*
    35 Cal.4th 797 (2005) ....................................................................... 7, 9, 10

*Gidding v. Anderson*
    No. C 07-04755 JSW, 2009 WL 666954 (N.D.Cal. March 13, 2009)................................ 11

*Gonzalez v. Lloyds TSB Bank, PLC*
    532 F.Supp.2d 1200 (C.D.Cal. 2006)................................................................. 23

*Grimmett v. Brown*
    75 F.3d 506 (9th Cir. 1995)........................................................................... 11

*In Re County of Orange*
    203 BR 983 (Bankr.C.D. Cal. 1996)............................................................... 18

*In re Gardenhire*
    220 B.R. 376 (9th Cir.BAP 1998)................................................................. 14

*Irwin v. Department of Veterans Affairs*
    498 U.S. 89 (1990)................................................................................... 14

*Janken v. GM Hughes Electronics*
    46 Cal.App.4th 55 (1996)........................................................................... 18

*Jolly v. Eli Lilly & Co.*
    44 Cal.3d 1103 (1988) ........................................................................ 6, 7, 11

*Kidron v. Movie Acquisition Corp.*
    40 Cal.App.4th 1571 (1995)........................................................................ 18

*Matthews v. Kidder, Peabody & Co.*
    161 F.3d 156 (3d Cir. 1998)......................................................................... 22

*McKelvey v. Boeing North American, Inc.*
    74 Cal.App.4th 151 (1999).......................................................................... 7

*Moore v. State Board of Control*
    112 Cal.App.4th 371 (2003)........................................................................ 13

*Naton v. Bank of California*
    649 F.2d 691 (9th Cir. 1981)................................................................... 12, 17

*Norgart v. Upjohn Co.*
    21 Cal.4th 383 (1999) ....................................................................... 7, 8, 9, 10

*Odom v. Microsoft Corp.*
    486 F.3d 541 (9th Cir. 2007)................................................................... 23, 24

*OSRecovery, Inc. v. One Groupe Intl, Inc.*
    354 F.Supp.2d 357 (S.D.N.Y. 2005)............................................................... 23

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**COMERICA'S CORRECTED REPLY BRIEF ISO MOTION DISMISS – CASE NO. CV 09-03303 JF**

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Peregrine Funding, Inc. v. Sheppard, Mullin, Richter & Hampton, LLP*
   133 Cal.App.4th 658 (2005)................................................................. 11

*Prudential Home Mortgage Co. v. Superior Court*
   66 Cal.App.4th 1236 (1998)................................................................. 16

*Santa Maria v. Pacific Bell*
   202 F.3d 1170 (9th Cir. 2000)........................................................... 12, 14

*Saunders v. Superior Court*
   27 Cal.App.4th 832 (1994)................................................................... 18

*Stearns v. Select Comfort Retail Corp.*
   2009 WL 1635931, *14 (N.D.Cal. June 5, 2009) ............................... 24

*Telegraphers v. Ry. Express Agency*
   321 U.S. 342 (1944)............................................................................ 17

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*
   612 F.Supp.2d 267 (S.D.N.Y. 2009)............................................ 2, 22, 23

*United States v. Feldman*
   853 F.2d 648 (9th Cir. 1988)............................................................... 23

*United States v. Fernandez*
   388 F.3d 1199 (9th Cir. 2004)............................................................. 23

*United States v. Turkette*
   452 U.S. 576 (1981)............................................................................ 23

*Volk v. D.A. Davidson & Co.*
   816 F.2d 1406 (9th Cir. 1987)............................................................. 12

### STATUTES

18 U.S.C. § 1964(1) ............................................................................ 21

Business & Professions Code § 17200 ................................................. 6

California Civil Code §3527 .................................................................. 1

FRCP 8(a) ............................................................................................. 3

FRCP 9(b) ............................................................................................. 24

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 4574576v11

## I.    INTRODUCTION

Plaintiffs seek to hold Comerica Bank ("Comerica") liable for over $50 million simply because it provided routine banking services to its clients.  Plaintiffs admittedly had no contact with Comerica, and no misrepresentations by Comerica are alleged.    Instead, the alleged "Banking Scheme" involved Comerica accepting deposits, executing funds transfers and honoring checks payable to **Plaintiffs**. As such, this action seeks to impose on Comerica duties which do not exist at law and to impose theories of liability which would make it virtually impossible for banks to operate.  The fact that Plaintiffs waited over six years after they were on notice of their claims makes this case all the more egregious.

Plaintiffs' opposition is comprised of numerous misstatements of applicable law and implausible theories.  Plaintiffs repeatedly talk out of both sides of their mouths to avoid the effect of inconvenient judicial admissions.  According to Plaintiffs, the well established judicial maxim that "the law helps the vigilant, before those who sleep on their rights"[1] is inapplicable to them.    Instead Plaintiffs argue that applicable statutes of limitation should be ignored and Comerica's rights disregarded in the name of "equity."  Plaintiffs further claim that they had no duty to investigate the identity of possible defendants once they were on notice of Four Star's Ponzi scheme and request that the Court ignore the mountain of public information available to them.

Plaintiffs also improperly argue that this Court is required to assume as true boilerplate allegations that are devoid of factual support and contradicted by both common sense and judicially noticeable facts.  In short, Plaintiffs demand that this Court ignore the requirements of the Supreme Court decisions in *Twombly* and *Iqbal* and treat as plausible their allegations that Comerica was part of a knowing scheme to defraud the investors of one of its many depositors.  Yet Plaintiffs' claims, as well as their assertion that it would have been "impossible" to identify Comerica as a possible defendant, are contrary to the record and simply not plausible.

As demonstrated below, each of Plaintiffs' claims must be dismissed on statute of limitations grounds because they knew of the wrongdoing and their injury by no later than

---

[1] California Civil Code §3527.

1    October 2003. Plaintiffs' assertion that under the delayed discovery rule the statute of limitations

2    did not begin to run until 2008 is contrary to federal and California law, including the California

3    Supreme Court's ruling in *Norgart* which is controlling.

4          Plaintiffs' equitable estoppel arguments fail because Plaintiffs admit Comerica made no

5    representations to them and there was no fiduciary or other relationship upon which to base

6    estoppel. The doctrine of equitable tolling is also inapplicable where, as here, Plaintiffs have not

7    and cannot allege reasonable diligence. Indeed, Plaintiffs allege no diligence at all. Moreover,

8    when comparing Plaintiffs' election to "sleep on their rights" to the manifest prejudice to

9    Comerica, equity requires dismissal.

10          Plaintiffs' claims for aiding and abetting and conspiracy to breach fiduciary duties fail as a

11   matter of law based upon the lack of an independent duty between Plaintiffs and Comerica, as

12   well as Plaintiffs' failure to plead **facts** demonstrating that Comerica had actual knowledge of the

13   specific primary wrong that it is alleged to have assisted. Moreover, Plaintiffs' allegation that

14   Comerica allowed Four Star to maintain minimal balances and honored checks **paid to Plaintiffs**

15   fails to satisfy the substantial assistance prong for aiding and abetting, and no facts supporting

16   any agreement to conspire exist.

17          Finally, Plaintiffs' RICO claims are indisputably based upon securities fraud and,

18   therefore, are barred under the PSLRA. Although Plaintiffs argue that PSLRA should be

19   interpreted to allow RICO claims against those who merely aid and abet a securities fraud, as

20   opposed to the perpetrators themselves, this strained and illogical construction is not only

21   inconsistent with the plain meaning and intent of the PSLRA, it would inflict greater liability

22   (*e.g.*, treble damages) upon those who have a lesser role in the alleged wrongdoing. In light of

23   these and other fundamental defects, the interpretation proffered by Plaintiffs "is both

24   unpersuasive and against the great weight of precedent."[2]

25

26

27   _____

[2]   *See, Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F.Supp.2d
28   267, 281 (S.D.N.Y. 2009).

II.    **ARGUMENT**

   A.    **The Complaint Fails To Meet The Federal Pleading Standard Under Rule 8(a)**

Plaintiffs rely upon the pleading standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), in arguing the sufficiency of their Complaint. *See* Plaintiffs' Opposition ("Opp."), at 6:19-24. Yet *Conley's* interpretation of Rule 8(a) has been superseded by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009) . Application of the correct standard is particularly important here because Plaintiffs' failure to comply with FRCP 8(a) is fatal to their case.

In *Twombly*, the Supreme Court expressly overruled *Conley* and imposed a heightened "plausibility" standard, stating that "...we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. *Twombly* addressed the sufficiency of a class action complaint alleging antitrust conspiracy in violation of the Sherman Act, which requires proof of unreasonable restraints of trade "effected by a contract, combination, or conspiracy...." The central question in that case was whether the challenged anticompetitive conduct "stem[s] from independent decision or from an agreement, tacit or express.'" *Twombly*, 550 U.S. at 553. In testing the sufficiency of the complaint, the Court first ruled out all legal conclusions and "formulaic recitations" of the elements of the cause of action. *Id*. at 555. The Court then found that plaintiffs' allegations amounted to nothing more than lawfully parallel conduct, as no facts were alleged that demonstrated an illegal agreement. *Id*. at 556-57. The Court explained that requiring the allegation of "plausible grounds" from which to infer an agreement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id*. at 556. Since "[f]actual allegations must be enough to raise a right to relief above the speculative level," and "[b]ecause the plaintiffs... have not nudged their claims across the line from conceivable to plausible," the Court dismissed the complaint. *Id*. at 555, 570.

In *Iqbal*, the Supreme Court confirmed that the pleading standards of *Twombly* apply to **all** civil actions in federal court. 129 S.Ct. at 1953. As in *Twombly*, the Court excised all

1    conclusory allegations that are not entitled to the assumption of truth, and then considered the

2    factual allegations to determine if they plausibly suggested an entitlement to relief.  *Id*. at 1944-

3    45.   Although Plaintiffs in *Iqbal* alleged that post-911 detentions of Arabs and Muslims were

4    based upon racial profiling, the Court found that the government's actions were equally consistent

5    with lawful conduct.  Thus the Court found discrimination was not a plausible explanation for the

6    facts alleged "[a]s between that 'obvious alternative explanation' for the arrests… and the

7    purposeful, invidious discrimination respondent asks us to infer…."   *Id*. at 1951-52, citing

8    *Twombly*, 550 U.S. at 567.  Since the factual content of the complaint in *Iqbal* did not "'nudg[e]'

9    [plaintiff's] claim of purposeful discrimination 'across the line from conceivable to plausible,'"

10   the Court dismissed the complaint as to the moving defendants for failure to state a claim.  *Id*. at

11   1952, 1954.

12        Applied to this case, the standard announced in *Twombly* and *Iqbal* requires a two-step

13   approach to analyzing the sufficiency of the Complaint.  First, the Court must determine whether

14   Plaintiffs have pled enough facts to state a cognizable claim without consideration of labels,

15   conclusory allegations, or formulaic recitations of the elements of a claim for relief.  *See Iqbal*,

16   129 S.Ct. at 1949; *Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS, 2009 WL

17   2972374 (N.D. Cal. Sept. 14, 2009).  Second, the Court must evaluate the plausibility of those

18   factual allegations, drawing on its "judicial experience and common sense."  *Iqbal*, 129 S.Ct. at

19   1950.  Only if those allegations are sufficient to nudge the Plaintiffs' claims "across the line from

20   conceivable to plausible" do they meet the pleading standard of Rule 8(a).  If, on the other hand,

21   they merely present a set of facts that is equally consistent with lawful conduct, the Complaint

22   must be dismissed.  *Iqbal*, 129 S.Ct. at 1951, 1954; *see also Elan,* at *2 (dismissing Apple's

23   counterclaims on the grounds that they were "threadbare recitals of the elements of a cause of

24   action, supported by mere conclusory statements.'").

25        Here, Plaintiffs utterly fail to allege facts that plausibly state cognizable claims against

26   Comerica.  The "Banking Scheme" set forth in paragraph 33 of the Complaint simply describes

27   routine cash management services provided by banks to thousands of corporate customers every

28   day.   There is nothing innately sinister about banks allowing customers to maintain minimal

balances, accepting daily deposits to cover outstanding checks, providing immediate credit for deposits, or allowing their customers to transfer funds to affiliates' accounts or select which creditors will be paid.  Further, given that Anson and Garret used their personal lines of credit to make short term advances to Four Star on a routine basis, Four Star's repayment of these advances is hardly remarkable.   Yet Plaintiffs would convert Comerica from a bank to a watchdog and assert that it is liable to them for over $50 million dollars simply because **Plaintiffs, rather than other creditors were paid**.  Plaintiffs' claims are not only implausible, they are absurd.[3]

Moreover, a fair reading of paragraph 32 of the Complaint regarding Comerica's alleged knowledge at best establishes that Comerica knew it was a depository bank for an insolvent company.  Plaintiffs also allege that Comerica knew the source of repayment of the Anson and Garrett line of credit would come from Four Star (the recipient of advances from these individuals); that as an investment firm, Four Star was dependent upon the receipt of investor funds to help fund operations; that investors would stop making investments if Four Star failed to make monthly distributions; and that payment of creditor writs would interfere with Four Star's ability to make investor payments.   Complaint, ¶ 32.   Yet banks routinely act as depository institutions for insolvent companies, including General Motors and Chrysler, and this hardly renders them liable to the investors of their depositors.[4]  Indeed, Plaintiffs submit that "a bank's knowledge of [allegedly] suspicious activities is insufficient to infer knowledge of wrongful conduct by the accountholder and imposes no duty on the bank."  Opp. at 17:3-7.

### B.    Plaintiffs' Stale State Law Claims Are Not Saved By The Discovery Rule

Each of Plaintiffs' state law claims is barred by the proper application of the delayed discovery rule.  Because the Complaint was not filed until July 20, 2009, Plaintiffs have to

---

[3]  The implausibility of Plaintiffs' claims is further established by their admissions that the bankruptcy trustee, his forensic accountants and teams of lawyers after due investigation, found no evidence of wrongdoing on the part of Comerica.  Opp. at 19:16-18.

[4]  Plaintiffs' allegations regarding Four Star's alleged desire to avoid payment of levying creditors are particularly puzzling given that (i) none of the Plaintiffs are alleged to have been a levying creditor, therefore they have no standing to assert claims related to Four Star's failure to make payments; and (ii) presumably, the levying creditors' suits were matters of public record. Therefore, Comerica could hardly be alleged to have contributed to Four Star's image of solvency and profitability since Comerica did not take any action to conceal the existence of such suits.

demonstrate that their claims did not accrue until some time after July 20, 2005 (aiding and abetting breach of fiduciary duty, and Business & Professions Code § 17200 claims), or July 20, 2006 (aiding and abetting fraud). [5]   Yet Plaintiffs explicitly admit that by October 2002, they knew they had been harmed (Complaint, ¶ 14), and also suspected that their injury was caused by wrongdoing. Opposition, at 14:27–15:1 ("Comerica's argument fails because it improperly conflates **suspicion that an injury was due to some kind of wrongdoing, which is what Plaintiffs had as early as October 2002** when Four Star stopped making investor distributions…".) (emphasis added)).   These admissions are bolstered by a detailed record of court filings showing that by the first quarter of 2004, Four Star had declared bankruptcy and **multiple** lawsuits had been filed relating to the Four Star Ponzi scheme, several of which were filed by the same plaintiffs who are now pursuing this action. *See* RJN Nos. 5, 8, 9, 10, 11 and 13.[6]

Faced with these admissions, the rich historical record of Four Star-related litigation, and the public disclosures in the press and the FourStarFraud.com website, Plaintiffs argue that (i) they did not know – and could not have reasonably discovered – all of the facts necessary to establish their causes of action against Comerica, and (ii) that this lack of knowledge prevented their claims against Comerica from accruing until 2008, when Mark Cohn (a convicted felon) allegedly described Comerica's involvement.

### 1.   The Delayed Discovery Rule Requires Only That Plaintiffs Have Reason To Suspect That They Have Been Injured By Wrongdoing.

Under the delayed discovery rule, a cause of action does not accrue until a plaintiff "suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110 (1988).   It does **not**

---

[5]  Plaintiffs' RICO claims are governed by a different accrual doctrine, called the "injury discovery rule," which triggered the limitations period as soon as Plaintiffs became aware of their underlying injury or loss. *See* Section III.C., *infra*.

[6]  Plaintiffs' assertion that many of the exhibits Comerica's RJN do not identify Comerica as a specific target misses the point in that they were on notice of Four Star's wrongdoing and their injury.  Moreover, a Ponzi scheme, by definition, involves the movement of money.  Thus, one of the first places one would look to analyze any such scheme would be the banking records. Therefore, Plaintiffs had notice of the wrongdoing, injury and identity of possible defendants over six years before this action was filed.

1    delay the accrual of a cause of action until the plaintiff discovers or should discover "all of the

2    facts essential to his cause of action," as Plaintiffs argue (citing a 26 year-old court of appeals

3    opinion). Opp., at 9:21–10:1. Rather, as explained by the California Supreme Court, "suspicion

4    of one or more of the elements of a cause of action, coupled with knowledge of any remaining

5    elements, will generally trigger the statute of limitations period." *Fox v. Ethicon Endo-Surgery,*

6    *Inc.*, 35 Cal.4th 797, 807 (2005).

7         The California Supreme Court has further explained that in using the term "elements" of a

8    cause of action, it does not take a "hyper-technical" approach to application of the discovery rule.

9    *Id.* "Rather than examining whether the plaintiffs suspect facts supporting each specific legal

10   element of a particular cause of action, we look to whether the plaintiffs have reason to at least

11   suspect that a type of wrongdoing has injured them." *Id.; see also Norgart v. Upjohn Co.*, 21

12   Cal.4th 383, 398-99 (1999) and *Jolly,* 44 Cal.3d at 1110-11 (Plaintiff need not know the specific

13   facts necessary to establish the elements of a particular cause of action; rather, she has reason to

14   suspect wrongdoing when she has "'notice or information of circumstances to put a reasonable

15   person on inquiry.'"). Furthermore, a plaintiff whose complaint shows on its face that his claim

16   would be barred without the benefit of the discovery rule "must specifically plead facts to show

17   (1) the time and manner of discovery, and (2) the inability to have made earlier discovery despite

18   reasonable diligence." *Fox*, 35 Cal.4th at 808, *quoting McKelvey v. Boeing North American, Inc.*,

19   74 Cal.App.4th 151, 160 (1999). In assessing these required allegations, "the court places the

20   burden on the plaintiff to show diligence; conclusory allegations will not withstand demurrer." *Id.*

21   (internal quotes and citations omitted).

22        The California Supreme Court's explanation of the discovery rule in *Fox, Norgart,* and

23   *Jolly* makes clear that the accrual of a cause of action does **not** depend upon Plaintiffs' discovery

24   of every fact necessary to establish the legal elements of that cause of action. Rather, the inquiry

25   is focused upon when Plaintiffs had a reasonable basis to suspect that they had been injured, and

26   that their injury had been caused by wrongdoing. *Jolly,* 44 Cal.3d at 1110. In light of Plaintiffs'

27   own admissions, the Four Star bankruptcy, and the various lawsuits filed by Four Star investors

28   (including many Plaintiffs here), Plaintiffs' state law causes of action all accrued **several years**

1   before the applicable July 20, 2005 and 2006 deadlines.

2       **2.      The Discovery Rule Applies Only To Discovery Of The Underlying
            Wrong, Not The Identity Of A Defendant.**

3

4       Plaintiffs erroneously argue that a cause of action does not accrue until the plaintiff

5   discovers facts implicating a **particular defendant** in the underlying wrongdoing.   Opp., at

6   Section IV.D.2.  Thus, while they admit knowledge of wrongdoing, Plaintiffs claim they did not

7   know and had no reason to suspect that Comerica had a role in the Four Star Ponzi scheme,

8   thereby delaying the accrual of their claims against Comerica until Cohn's purported revelations

9   in 2008.

10      Plaintiffs' argument that accrual of a cause of action is delayed until a plaintiff learns the

11  identity of a particular defendant, and its role in the underlying wrongdoing, was squarely

12  rejected by the California Supreme Court in *Norgart. v. The UpJohn Co.,* 21 Cal.4th 383 (1999).

13  In that case, a wrongful death action by the parents of a woman who died of a drug overdose, the

14  California Supreme Court held that once plaintiffs had reason to suspect their daughter's death

15  had been caused by wrongdoing, the statute began to run as to all claims and **all defendants**.  The

16  court explained that in order for a cause of action to accrue, a plaintiff need not have known

17  specific facts necessary to establish each of the elements of a cause of action; "rather, he may

18  seek to learn such facts through the 'process contemplated by pretrial discovery....'" *Id.* at 398.

19  More importantly, the court held that under *Bernson v. Browning-Ferris Industries*, 7 Cal.4th 926

20  (1994), "the plaintiff may discover, or have reason to discover, the cause of action even if he does

21  not suspect, or have reason to suspect, the identity of the defendant." *Id.* at 399.  This is because

22  "the identity of the defendant is not an element of any cause of action." *Id.*  "**It follows that**

23  **failure to discover, or have reason to discover, the identity of the defendant does not**

24  **postpone the accrual of a cause of action, whereas a like failure concerning the cause of**

25  **action itself does.**" *Id.* (emphasis added).

26          Although never fully articulated, the rationale for distinguishing between
            ignorance of the defendant and ignorance of the cause of action itself appears to be
27          premised on the commonsense assumption that once the plaintiff is aware of the
            latter, he normally has sufficient opportunity, within the applicable limitations
28          period, to discover the identity of the former.  He may often effectively extend the

limitations period in question by the filing and amendment of a Doe complaint and invocation of the relation-back doctrine. Where he knows the identity of at least one defendant…, **he must proceed thus**.

*Id.* (emphasis added, internal quotes and citations omitted).

Thus filing a complaint and naming Doe defendants is the required procedure for a plaintiff who suspects he or she has been the victim of wrongdoing, but does not know the identify and role of each potentially responsible party. In fact, this is precisely how the Plaintiffs in this case proceeded. Plaintiffs not only admit they knew they were the victims of a wrongdoing in connection with their Four Star investments, but also knew the identity of several persons and entities whom they believed to be responsible for their losses.[7] Plaintiffs even filed suit and actively pursued claims (as members of the class in the *Gilbert* action) arising out of the *same* wrongdoing, for the *same* damages, against multiple defendants who were involved in one way or another with the Four Star Ponzi scheme. *See* RJN No. 13. Furthermore, just as the Supreme Court instructed them to do in *Norgart*, the plaintiffs named Doe defendants in the *Gilbert* complaint and subsequently amended their complaint to add new defendants to the case, including two banks who they alleged were involved in the Four Star scheme. *See* RJN No. 17.

By October 2003, when Plaintiffs admittedly knew they were the victims of a Ponzi scheme, they retained counsel, conducted investigations, and filed actions to recover their damages. Plaintiffs had the opportunity and the means to discover the alleged wrongful conduct by Comerica. Their failure to name Comerica is fatal to their claims.

### 3. The *Fox* Decision Did Not Modify The Discovery Rule Set Forth In *Norgart*.

Plaintiffs erroneously argue *Fox v. Ethicon Endo-Surgery*, 35 Cal.4th 797 (2005) changed the clear holding of *Norgart* that the accrual of a cause of action does not depend upon the discovery of a particular defendant's identity. In *Fox*, the court reached the unremarkable conclusion that a plaintiff may plead a basis for the delayed discovery rule by alleging specific facts showing a reasonable investigation would not have revealed a factual basis for a new type of

---

[7] Proof of that knowledge is supplied by, among other things, the lawsuits that were filed by some of the named plaintiffs in this case in 2003 and the first quarter of 2004. *See* RJN Nos. 5, 9, and 13.

1    claim that is totally distinct from its previously asserted causes of action. *Fox* in fact quoted

2    *Norgart* at length for the proposition that a failure to discover the identity of a particular

3    defendant "does not postpone the accrual of a cause of action," whereas the failure to discover an

4    "element" of a cause of action (as that term is used in the lay sense, *i.e.*, a distinct type of

5    wrongdoing, causation, and harm) does. *Id.* at 807, *quoting Norgart*, 21 Cal.4th at 399. The

6    court emphasized that "plaintiffs are **required** to conduct a reasonable investigation after

7    becoming aware of an injury, and are charged with knowledge of the information that would have

8    been revealed by such an investigation." *Id.* at 808 (emphasis added).

9        Applying these standards, the court found that plaintiff (who had been injured during

10   gastric bypass surgery and timely sued her surgeon for negligence) should be given leave to

11   amend her complaint to allege a basis for applying the delayed discovery rule to a products

12   liability cause of action against a product manufacturer. *Id.* at 810. The court took pains to note

13   the qualitative difference between a negligence cause of action (premised on a mistake by the

14   doctor), and a products liability cause of action, which is premised upon a wholly different type

15   of wrongdoing (manufacture of a defective product) and cause of injury (harm caused by the

16   product defect). *Id.* at 813. Because plaintiff's discovery of the "elements" (wrongdoing,

17   causation) of her negligence claim against the surgeon did not necessarily overlap with her

18   discovery of the wrongdoing and causative mechanism associated with the product liability claim,

19   the court gave plaintiff a chance to explain why she had been unable to discover the latter despite

20   diligent investigation. *Id.* at 812-13.

21       Such reasoning does not apply here, where Plaintiffs admit the Four Star Ponzi scheme

22   was the sole and central wrongdoing and cause of their loss. *See* Opp. at 20:23-26 ("Here, the

23   specific primary wrong is the fraud and breach of fiduciary duty that Four Star and the Four Star

24   Managers committed against Plaintiffs by falsely representing to Plaintiffs that Four Star was a

25   solvent and profitable enterprise, a representation that was designed to, and did, induce Plaintiffs

26   to make new investments in Four Star."). The fraudulent scheme, as described in the Complaint

27   allegedly had many participants with different roles, but it cannot be said that any one of the

28   alleged co-conspirators engaged in a completely different type of wrongdoing, or caused harm

1   through an entirely different mechanism of injury.

2       *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton, LLP*, 133 Cal.App.4th

3   658 (2005), is on point. As here, plaintiffs were investors in a failed Ponzi scheme. Because the

4   company operating the scheme was in bankruptcy, plaintiffs sued the company's law firm on the

5   theory that the firm's lawyers helped the company avoid detection of the scheme. The court

6   found the claims were time barred because, over a year before they filed their complaint,

7   plaintiffs knew they had been harmed by wrongdoing, and knew from publicly available court

8   records and news stories that the law firm was representing the company. The court rejected

9   plaintiffs' argument that accrual of their claims against the law firm should have been delayed

10  because they did not have knowledge of the law firm's role in the underlying wrongdoing, noting

11  that discovering specific facts "is a process contemplated by pretrial discovery. Once the plaintiff

12  has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file

13  suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the

14  facts; she cannot wait for the facts to find her." *Id.* at 685, *quoting Jolly*, 44 Cal.3d at 1111.

15  Here, despite an admitted suspicion of wrongdoing and a multitude of options for investigating

16  their claims, Plaintiffs sat on their rights.

17      **C.**     **Plaintiffs' RICO Claims Accrued As Soon As They Discovered Their Injury**
        **And Are Clearly Time-Barred.**

18

19      In its moving papers, Comerica established that (1) that the statute of limitations for a civil

20  RICO claim is four years; and (2) a RICO cause of action accrues when plaintiff "knows or

21  should know of the injury that underlies his cause of action." *See Grimmett v. Brown*, 75 F.3d

22  506, 510 (9th Cir. 1995); *Gidding v. Anderson*, No. C 07-04755 JSW, 2009 WL 666954 (N.D.Cal.

23  March 13, 2009). Plaintiffs do not dispute either point. Instead, they erroneously argue that the

24  statute of limitations "did not begin to run" because the RICO claims were equitably tolled. *See*

25  Opp., Heading IV, at 7:6-9. Plaintiffs have confused equitable tolling with the discovery rule.

26  The former tolls or extends the deadline to file suit once the cause of action accrues and the

27  statute of limitations begins to run. The latter prevents the cause of action from accruing, and the

28  statute of limitations from running, in the first place.

1    Plaintiffs' RICO claims are subject to the "injury discovery rule," and as noted above,

2    began to run as soon as they became aware of their underlying injury. *See Grimmett,* 75 F.3d at

3    510. Plaintiffs admit in their Complaint, and again in their Opposition, that this occurred in

4    October 2002. Complaint, ¶ 14; Opp. at 14:27–15:1. There is, therefore, no dispute before this

5    Court that Plaintiffs' RICO claims accrued, and the statute of limitations began running, in

6    October 2002. Under the applicable four year limitations period, the statute ran in October 2006,

7    unless Plaintiffs can demonstrate it was somehow equitably tolled. As explained below, they

8    cannot.

9    **D.      Plaintiffs Have Not Pled A Valid Basis For Equitable Estoppel, Equitable**

10   **Tolling, Or Fraudulent Concealment.**

11   Plaintiffs' attempt to rely on the doctrines of equitable estoppel and equitable tolling to

12   excuse the late filing of their Complaint fail. These equitable doctrines are premised upon two

13   basic theories: (1) Plaintiffs were unable to discover their claims despite the exercise of

14   reasonable diligence; or (2) Comerica misrepresented or concealed key information relating to

15   Plaintiffs' claims. Neither has any merit.

16   **1.      Equitable Estoppel Does Not Rescue Plaintiffs' Complaint.**

17   Plaintiffs cannot establish a basis for equitable estoppel under either federal or state law.

18   Plaintiffs concede that the federal doctrine of equitable estoppel does not save their RICO claims.

19   As Plaintiffs admit, the federal doctrine of equitable estoppel (sometimes called "fraudulent

20   concealment") requires active conduct by defendant to prevent plaintiff from suing in time. *Santa*

21   *Maria v. Pacific Bell*, 202 F.3d 1170, 1177 (9th Cir. 2000). Plaintiffs "must establish that they

22   used due diligence in trying to uncover the facts. [Defendant's] silence or passive conduct does

23   not constitute fraudulent concealment." *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415-16

24   (9th Cir. 1987) (internal citations omitted). Further, a showing of the plaintiff's actual and

25   reasonable reliance on the defendant's conduct or representations is "of critical importance."

26   *Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir. 1981).

27   Plaintiffs admit they can allege neither "active conduct" nor reliance on any conduct of

28

1    Comerica.   They argue that "[t]he Complaint makes no allegation that Comerica made any

2    misrepresentation to Plaintiffs, and the Complaint alleges no facts showing that Plaintiffs and

3    Comerica had a fiduciary or agency relationship, prior dealings, or circumstances such that

4    Plaintiffs placed trust and confidence in defendant . . . ."   Opp. at 25:19-22.   Further, as

5    demonstrated below, Plaintiffs cannot truthfully allege facts demonstrating diligence in pursuing

6    their claims.

7            Conceding there was no active conduct by Comerica that prevented them from suing in a

8    timely fashion, Plaintiffs seek to save their non-RICO claims under the state law doctrine of

9    fraudulent concealment.   This attempt also fails.   "[S]ilence as the basis for estoppel usually

10   requires a showing of special circumstances, such as a confidential or fiduciary relationship or an

11   undertaking to provide advice by one who claims to be informed and knowledgeable in the

12   matter."   *Moore v. State Board of Control*, 112 Cal.App.4th 371, 385 (2003).   Indeed, "[i]t is

13   settled that when the party to be estopped does not say or do anything, its silence and inaction

14   may support estoppel only if it had a duty to speak or act under the particular circumstances."

15   *Feduniak v. California Coastal Comm'n*, 148 Cal.App.4th 1346, 1362 (2007).   Here, Plaintiffs

16   allege Comerica remained silent.   They do not, however, allege any special circumstance or

17   relationship that would render Comerica's silence subject to estoppel; rather, they admit the

18   Complaint alleges no facts showing a fiduciary or agency relationship, or any circumstances such

19   that Plaintiffs placed trust and confidence in Comerica.   Opp. at 25:19-22.[8]

20           As under federal law, under California law a plaintiff must exercise reasonable diligence

21   in pursuing his or her claims.   "Lack of knowledge alone is not sufficient to stay the statute; a

22   plaintiff may not disregard reasonably available avenues of inquiry which, if vigorously pursued,

23   might yield the desired information."   *Bernson,* 7 Cal.4th at 936.

24           In determining whether a plaintiff acted with reasonable diligence, courts must consider

25   whether the filing of a timely "Doe" complaint would have facilitated discovery of defendant's

---

26   [8] Plaintiffs' reliance on *Bernson* is misplaced.   In *Bernson*, unlike this case, defendant

27   affirmatively concealed its allegedly wrongful conduct.   There, plaintiff obtained copies of
     allegedly libelous documents. He contacted defendant's counsel, who not only denied defendant

28   had any responsibility for the documents, but wrote to the Los Angeles Times demanding that it
     retract any attribution of authorship to defendant.   *Id.*, 7 Cal.4th at 929.

1   identity.  *Id.* at 936-37.  "Where the identity of at least one defendant is known . . . the plaintiff

2   **must** avail himself of the opportunity to file a timely complaint naming Doe defendants and take

3   discovery."   *Id.* at 937 (emphasis added).   Equitable estoppel is proper only in the "rare and

4   exceptional case" in which plaintiff could genuinely claim that it was aware of no defendants, or

5   the "even more rare" instance where, as here, plaintiffs who were long aware of some defendants

6   can demonstrate that they could not discover the others through the filing of a Doe complaint and

7   normal discovery processes.  *Id.*  Plaintiffs have not made, and cannot make, any such showing.

8                    **2.       Equitable Tolling Does Not Rescue Plaintiffs' Complaint.**

9                    **a.       Plaintiffs Did Not Exercise Reasonable Diligence.**

10          Plaintiffs similarly have not pled any basis for the federal doctrine of equitable tolling.[9]

11   Like equitable estoppel, to invoke equitable tolling with respect to their RICO claims Plaintiffs

12   must demonstrate that they exercised reasonable diligence.  After ruling out all legal conclusions

13   and "formulaic recitations" of Plaintiffs' equitable tolling claim, as required by *Twombly* and

14   *Iqbal*, the Complaint reveals that Plaintiffs did not exercise due diligence, or any diligence at all,

15   in pursuing their belated claims.

16          Federal courts extend equitable relief only sparingly, and are "much less forgiving in

17   receiving late filings where the claimant failed to exercise due diligence in preserving his legal

18   rights."   *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990).   Equitable tolling

19   applies only "if, despite all due diligence, a plaintiff is unable to obtain vital information bearing

20   on the existence of his claim."  *Santa Maria*, 202 F.3d at 1178.

21          Plaintiffs' reliance on *In re Gardenhire*, 220 B.R. 376 (9th Cir.BAP 1998) demonstrates

22   the fallacy of their claim.[10]  The *Gardenhire* court repeatedly noted that the key issue in applying

23   equitable tolling is the diligence of the party seeking relief.  The court held that "[t]olling can

24   only be applied when the claimant can demonstrate appropriate diligence at a time in which there

25

26   [9] Plaintiffs concede the California doctrine of equitable tolling does not apply.  Opp. at 8:25-28,
     n.4.

27   [10]  The BAP's decision was subsequently reversed by the Ninth Circuit, which concluded
     equitable tolling was inconsistent with the applicable Bankruptcy Code and Rules.   *In re*

28   *Gardenhire*, 209 F.3d 1145, 1152 (9th Cir. 2000).

is still an opportunity to apply effective relief" (*id.* at 384 (emphasis added)), and noted that equitable tolling "is suitable for application only in exceptional cases and cannot be applied in a wholesale manner that would function to eviscerate valid rules of procedure." *Id.*

The Complaint reveals Plaintiffs failed to exercise the diligence required by the case law on which they rely. When stripped of its legal conclusions and "formulaic recitations," the allegations of paragraphs 45-57 of the Complaint show Plaintiffs did **absolutely nothing** to investigate the claims they now assert. While Plaintiffs allege in conclusory fashion that prior to October 2008 it would have been "impossible for Plaintiffs to have discovered or suspected" the existence of their claims, and that "there were no publicly available documents which Plaintiffs could have accessed with reasonable diligence that would have disclosed or implied" the facts on which they base their claims (Complt., ¶ 56), facts and court documents of which this Court may take judicial notice demonstrate such claims are objectively false.

In fact, multiple sources of information were readily available to Plaintiffs. The Complaint alleges that in 2003 Four Star was placed in bankruptcy, and several adversary proceedings were commenced in Bankruptcy Court. Complt., ¶¶ 15, 47-48, 50. Plaintiffs expressly allege that records of the transactions purportedly constituting RICO violations are in the possession of the bankruptcy trustee. Complt., ¶ 104(a)–(d). During 2004 the trustee scheduled Bankruptcy Rule 2004 examinations of Four Star lawyers, employees, and investors. RJN No. 16. Plaintiffs, as creditors of Four Star, Anson and Garrett, could have obtained information regarding their alleged claims by attending the 341(a) meeting of creditors and/or by requesting documents from the bankruptcy trustee. They could have participated in the trustee's 2004 examinations or noticed their own 2004 examinations. They did **none** of these things. Plaintiffs' lack of diligence is even more egregious given that in 2002 and 2003, Kenneth Pritikin, Plaintiffs' co-counsel, was retained as counsel for Four Star, and acted as an intermediary between Four Star and its investors. RJN Nos. 20, 21. Further, in 2004 a website entitled "FourStarFraud.com" was created which provided summaries of various judicial proceedings in the state, federal and bankruptcy courts. RJN No. 22. There is no dispute that numerous of the present Plaintiffs sued Four Star and its principals. RJN Nos. 5, 8, 9, 13, 17, 26. Nonetheless, no

investigation was undertaken regarding Plaintiffs' newly-concocted claims.

Plaintiffs cannot rely on *Prudential Home Mortgage Co. v. Superior Court*, 66 Cal.App.4th 1236 (1998) to contend they had no obligation to investigate such numerous available sources of information. *Prudential* was a "delayed accrual" case involving claims against real estate lenders for violation of California statutes regulating recordation of reconveyances of deeds of trust after the pay off of secured loans. Defendants contended, *inter alia*, that there was no basis for delayed accrual of the statute of limitations because absence of the required reconveyances was a matter of public record. Contrary to Plaintiffs' contention, the court did not hold that a plaintiff need not diligently investigate publicly available information. To the contrary, it found that "[w]hen a plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation (such as public records or corporation books), the statute applicable to the cause of action commences to run." *Id.* at 1247, quoting *Community Cause v. Boatwright*, 124 Cal.App.3d 888, 902 (1981). The *Prudential* court distinguished *Boatwright* because in *Prudential* "the borrowers alleged they 'reasonably relied upon defendants as professionals, and as agents and fiduciaries, to perform the services that they were professionally, contractually and statutorily required to perform.'" *Id.* at 1248. Further, in *Prudential* "[l]etters from title insurance companies . . . 'instructed borrowers not to investigate into whether their titles had been cleared, by advising the borrower that: 'YOU NEED NOT TAKE ANY ACTION ..., unless you have not paid this loan off.'" *Id. Prudential* does not aid Plaintiffs here, who concede they had neither a fiduciary relationship, nor any communications, with Comerica.

Plaintiffs further spend over six pages of their Opposition arguing they could not possibly have unearthed any basis for their belated claims. Such contentions are belied by the fact that paragraphs 45-57 of the Complaint reveal Plaintiffs did **absolutely nothing** to investigate the claims they now assert. Having made no effort to determine whether there was a basis for their claims, Plaintiffs cannot now be heard to claim such non-existent investigation would have been futile. Plaintiffs failed to exercise reasonable diligence, and cannot claim the protection of equitable tolling or estoppel.

**b.   Allowance Of Plaintiffs' Untimely Action Would Prejudice Comerica.**

Plaintiffs' contention that this Court should ignore the prejudice to Comerica in determining whether to apply equitable tolling is baseless, and contravenes the basic purpose of statutes of limitation.

First, Plaintiffs cannot distinguish *Azer v. Connell*, 306 F.3d 930 (9th Cir. 2002) on the ground that *Azer* applied California's tolling rules. *Azer's* statement that equitable tolling is proper only where there is no prejudice to defendant is a statement of federal law: "**Under federal law**, '[w]here the danger of prejudice to the defendant is absent, and the interests of justice so require, equitable tolling of the limitations period may be appropriate.'" *Cashman v. Astrue,* No. 07-00560 ACK-BMK, 2008 WL 2588711(D. Hawaii, June 27, 2008). (emphasis added). Plaintiffs further cite no authority for the proposition that *Naton v. Bank of California*, 649 F.2d 691 (1981) is limited to the situation where a plaintiff with full knowledge of the facts supporting his claim files an untimely complaint. There is none.

Prejudice to defendants due to the assertion of untimely claims is the primary basis for statutes of limitation. "The purpose of a statute of limitation is 'to prevent assertion of stale claims against a defendant.'" *Azer*, 306 F.3d at 936, quoting *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1136 (9th Cir. 2001). As Justice Holmes stated, "statutes of limitation served to prevent 'surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Daviton,* 241 F.3d at 1136, quoting *Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348-49 (1944). The prejudice to Comerica is plain, and has already occurred. While the dockets of the Four Star bankruptcy reflect numerous 2004 examinations which included testimony and production of documents, due to Plaintiffs' delay in bringing this action transcripts pertaining to these proceedings are no longer available, prejudicing Comerica's defense. *See* Jewett-Brewster Declaration, ¶¶ 5-8.

Equitable tolling is, as its name implies, an equitable doctrine. Prejudice to Comerica must therefore be taken into account. Plaintiffs' claim that they are entitled to equitable tolling

1    and/or equitable estoppel must fail.

2    **E.    The Claims For Conspiracy To Breach A Fiduciary Duty, And Aiding And
3           Abetting Such A Breach, Fail For Lack Of An Independent Duty**

4           **1.    There Is No Valid Basis To Exclude Aiding And Abetting From The
                    Rule That One Cannot Conspire To Breach A Duty It Does Not Owe.**

5           The law is clear that a defendant cannot be liable for conspiring to breach a duty he or she

6    does not owe to plaintiff.  *See, Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.*, 7 Cal.4th

7    503, 510-511 (1994); *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1597 (1995) ("A

8    nonfiduciary cannot conspire to breach a duty owed only by a fiduciary.").   Although in

9    California there is a split of authority, the better reasoned cases apply the same reasoning to

10   aiding and abetting claims.  As the court found in *In Re County of Orange*, 203 BR 983, 999

11   (Bankr.C.D. Cal. 1996), "I see no reason for treating the vicarious tort of aiding and abetting

12   breach of a fiduciary duty differently from that of conspiracy to breach a fiduciary duty."   The

13   two concepts are closely allied and indeed, aiding and abetting does not require the agreement

14   necessary to find a conspiracy; conspiracy imposes liability for an agreement plus overt action in

15   support of a wrongful scheme, while aiding and abetting imposes liability for providing assistance

16   even in the absence of an agreement.  *See, Janken v. GM Hughes Electronics,* 46 Cal.App.4th 55,

17   77-78 (1996); *Saunders v. Superior Court*, 27 Cal.App.4th 832, 846 (1994).  Both doctrines rely

18   upon concerted action to impose liability upon one who works with another to accomplish a

19   wrong.  *Janken*, 46 Cal.App.4th at 78.  If Comerica could not conspire with Four Star and its

20   principals to breach their (alleged) fiduciary duties to Plaintiffs, it should not be held liable for

21   aiding and abetting the same parties to breach those same duties.

22          **2.    Plaintiffs' Proffered Theory Of A "Personal Gain" Exception
                    Misstates The Law**

23

24          Plaintiffs misstate the law in claiming that a 'personal gain' exception applies to negate

25   the definitional rule that, to be liable for conspiracy to breach a fiduciary duty, the defendant must

26   be bound by that duty and capable of breaching it.[11]   The "personal gain" exception was

---

27   [11] "Conspiracy is not an independent cause of action, but rather a doctrine imposing liability for a
28   tort upon those involved in its commission.   And 'tort liability arising from conspiracy
     presupposes that the coconspirator is legally capable of committing the tort, *i.e.*, that he or she

1    **explicitly rejected** in *1-800 Contacts, Inc. v. Steinberg*, 107 Cal.App.4th 568, 592 (2003), a case

2    cited in Plaintiffs' own brief. Steinberg explicitly held that the "attribution of a 'personal gain or

3    advantage' exception to the bar against liability for conspiracy to breach a legal duty that is not

4    binding on the defendant involves a misapprehension of relevant Supreme Court authority." *Id.*

5    at 592.

6           *Steinberg* held that the plaintiff in that case had wrongly concocted the "personal gain"

7    exception by conflating two independent principles articulated in *Doctors' Co. v. Superior Court*,

8    49 Cal.3d 39 (1989) (on which Plaintiffs also rely), "namely that (i) parties not subject to a duty

9    cannot be liable for conspiracy to breach it, and (ii) 'duly acting agents and employees cannot be

10   held liable for conspiring with their own principals (the 'agent's immunity rule.')'" *Id.* quoting

11   *Applied Equipment*, 7 Cal.4th at 510-11. "[T]he exception for conduct undertaken in pursuit of a

12   personal interest or advantage applies only to the agent's immunity rule. **It does not relax the**

13   **requirement that to be liable for conspiracy to breach a duty, the defendant must be bound**

14   **by that duty and capable of breaching it.**" *Id.* at 592 (emphasis added). *Steinberg* further

15   noted that, "practically, to impose such an exception would effectively swallow up the rule,

16   because personal interest or advantage is generally the impetus or goal of conspiratorial conduct."

17   *Id.* at 593. Plaintiffs' conspiracy claim therefore must be dismissed with prejudice.

18   **F.      Plaintiffs Fail To Plead A Factual Basis For The "Actual Knowledge"**

19   **Required To State An Aiding And Abetting Claim.**

20          Plaintiffs concede that when pleading a claim for aiding and abetting, "the requirement of

21   the defendant's 'actual knowledge' means actual knowledge of the 'specific primary wrong' for

22   which the plaintiff seeks to impose the aiding and abetting liability." Opp. at 20:11-13 (*quoting*

23   *Casey v. U.S. Bank, N.A.*, 127 Cal.App.4th 1138, 1145 (2005)). Nonetheless, Plaintiffs

24   erroneously claim that (i) *Casey* is distinguishable on its facts; (ii) Plaintiffs have pled Comerica's

25   knowledge of the "specific underlying wrong" committed by Four Star; and (iii) under applicable

26   pleading standards, Comerica's actual knowledge can be generally alleged.

27

28   owes a duty to plaintiff…and is potentially subject to liability for breach of that duty.'" *1-800*
     *Contacts, Inc. v. Steinberg* (2003) 107 Cal. App. 4th 568, 591 (internal citation omitted).

1     First, although Plaintiffs attempt to distinguish *Casey* by arguing the "specific primary

2  wrong" in that case was a misappropriation of assets by fiduciaries, as opposed to a Ponzi

3  scheme, California law still requires a plaintiff to allege actual knowledge of the specific

4  underlying wrong, and general allegations of knowledge that the primary actor's conduct was

5  "suspicious" are not sufficient.  *Casey*, 127 Cal.App.4th at 1153.  The nature of the underlying

6  wrong in *Casey* has no bearing on either of those two requirements.

7     Second, Plaintiffs' opposition establishes the disconnect between the alleged Ponzi

8  scheme and the facts of which Comerica is alleged to have had knowledge.  Plaintiff's opposition

9  states "[h]ere, the **specific primary wrong** is the fraud and breach of fiduciary duty that Four Star

10 and the Four Star managers committed against Plaintiffs by falsely representing to Plaintiffs that

11 Four Star was a solvent and profitable enterprise, a representation that was designed to, and did,

12 induce plaintiffs to make new investments in Four Star."  Opp. at 20:23-26.  Plaintiffs then admit

13 that the complaint only alleges that Comerica had knowledge of the "Banking Scheme" – not the

14 specific primary wrong they had just identified.  Opp. at 21:1-3.  Yet the alleged "Banking

15 Scheme" merely consisted of the moving of money between Four Star accounts and the

16 Anson/Garrett line of credit and acting as a depository for insolvent company, all of which are

17 perfectly legal.  Opp. at 21:1-3.  The alleged Banking Scheme is drastically and qualitatively

18 different from the Ponzi scheme and the fraudulent representations that form the basis of what

19 Plaintiffs describe as the "specific primary wrong."  Knowledge of one is not, and cannot be

20 credibly argued to be, knowledge of the other.  The Complaint does **not** allege that Comerica had

21 actual knowledge that Four Star and its principals were defrauding Four Star's investors.

22    Finally, Plaintiffs argue actual knowledge may be pled "generally" under federal pleading

23 requirements.  But that is **not** consistent with the standards announced in *Iqbal* and *Twombly*, nor

24 is it consistent with the holding of *Casey*, each of which is controlling.  Indeed, in *Casey*, the

25 plaintiffs similarly attempted to satisfy the actual knowledge requirement by making the

26 generalized allegation – without any supporting facts – that "each [bank] acted with knowledge of

27 the primary wrongdoing and realized that its conduct would substantially assist the

28 accomplishment of the wrongful conduct."  *Casey*, 127 Cal.App.4th at 1153.  The court in *Casey*

rejected this allegation as inadequate. "This conclusory allegation fails to identify the primary wrong and is not otherwise supported by the rest of the complaint, . . ." *Id*. The court thus found that a generalized allegation of actual knowledge was insufficient to meet the actual knowledge requirement of an aiding and abetting claim. *Id*. The same result should occur here.

### G.    Plaintiffs' RICO "Aiding And Abetting" Claims Are Barred By The PSLRA.

There is no dispute that in 1995, RICO was amended by the PSLRA to eliminate securities fraud as a predicate act upon which a RICO claim can be based (the "RICO Amendment"). *See* 18 U.S.C. § 1964(1). Nor is there a dispute that Plaintiffs specifically allege that Four Star and its principals allegedly engaged in fraud under federal securities laws when they sold the various Four Star investment vehicles to Plaintiffs. *See* Complaint ¶¶ 88(c), 94(b), 94(c). Finally, there is no dispute that those investments were the cause of the losses for which Plaintiffs now seek recovery. Complaint, ¶ 98. Nonetheless, Plaintiffs contend their RICO claims are not prohibited by the RICO Amendment on the theory that, while the underlying scheme may have constituted securities fraud, Comerica is only alleged to have "aided and abetted" that scheme. Plaintiffs' contention that their RICO claim against Comerica does not fall within the scope of the RICO amendment because there is no private right of action for "aiding and abetting" securities fraud is simply wrong.

Plaintiffs' argument focuses on the term "actionable" as used in the RICO Amendment. Under Plaintiffs' theory, so long as they do not hold actionable securities fraud claims against Comerica (because Comerica is allegedly merely an "aider and abettor"), they may pursue RICO claims against Comerica. This argument fails on several levels. First, the RICO Amendment makes no reference to the identity of the party whose "conduct" would have been actionable as securities fraud.[12] To the contrary, it is written broadly to bar reliance upon **any** conduct that would constitute securities fraud, regardless of whose conduct it was. That distinction is critical here, because Plaintiffs admit that they are relying upon securities fraud committed by another

---

[12] In other words, the amendment does **not** state (as it certainly could have) that "no person may rely upon **a defendant's** conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962 **against that defendant**." (Emphasis added.) *See Fezzani v. Bear, Stearns & Co.*, 2005 WL 500377, * 3 (S.D.N.Y. Mar. 2, 2005) (emphasis added).

1   (Four Star) to establish Comerica's liability under RICO.  As explained by a court that recently

2   analyzed this exact issue, "the language of the statute simply does not require that, for a RICO

3   claim to be barred, the plaintiff who sues under RICO must be able to sue under securities laws,

4   **or that the conduct 'actionable as securities fraud' on which the plaintiff relies to establish**

5   **the RICO violation must be that of the defendant**." *Thomas H. Lee Equity Fund, supra* 612

6   F.Supp.2d at 281-282 (emphasis added).  Plaintiffs' argument misconstrues the plain text of the

7   statute.

8           Second, Plaintiffs' argument would undermine the intent of Congress by creating a huge

9   loophole in the RICO Amendment, which would incentivize plaintiffs to avoid its bar on

10  securities fraud-based RICO claims through artful pleading.   As courts have repeatedly

11  recognized, the RICO Amendment was intended to eliminate "the so-called treble damages

12  blunderbuss of RICO" in securities fraud cases.  *Id.* at 282, quoting *Matthews v. Kidder,*

13  *Peabody & Co.*, 161 F.3d 156, 164 (3d Cir. 1998).  Plaintiffs' theory would undermine this intent

14  by giving claimants the ability to maintain RICO actions by simply pleading facts that establish

15  no more than an aiding and abetting claim against a particular defendant. *Id.; Fezzani,* at *4.

16          Plaintiffs' position is also inconsistent with other provisions of the PSLRA.  As Plaintiffs

17  themselves note, the PSLRA was enacted on the heels of the Supreme Court's decision in *Central*

18  *Bank of Denver, N.A. v. First Intestate Bank of Denver, N.A.,* 511 U.S. 164, 191 (1994), which

19  held that the private right of action implied in the securities laws does not extend to aiders and

20  abettors.  In the PSLRA Congress codified this limitation, and gave the Securities & Exchange

21  Commission the exclusive right to bring enforcement actions against aiders and abettors.  *See,*

22  PSLRA, Pub.L. No. 104-67, § 104, 109 Stat. 737, 757; 15 U.S.C. § 78t(e), 15 U.S.C. § 78u(d).

23  Yet under Plaintiffs' theory, the PSLRA would permit the enhanced treble damages remedies of

24  RICO to be asserted by private litigants against the very parties that Congress simultaneously

25  made immune from private actions under Section 10b and Rule 10b-5 of the securities laws.  This

26  illogical argument would lead to the nonsensical and inequitable result that secondary actors who

27  simply assist in the commission of securities fraud would be subject to greater exposure from

28  private litigants than the primary actors they assisted.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 4574576v11                                    22

1       Plaintiffs are attempting to parse out an exception to the RICO amendment that simply

2   does not exist.  Their argument is inconsistent with the language of the PSLRA, would undermine

3   congressional intent, and would lead to nonsensical results.  It worth noting that the sole case

4   cited by the Plaintiffs in which their theory was adopted, *OSRecovery, Inc. v. One Groupe Int'l,*

5   *Inc.*, 354 F.Supp.2d 357 (S.D.N.Y. 2005) has not been followed by any court in this district, and

6   at least two judges within the Southern District of New York (where the decision was issued)

7   have declined to follow it.  *See Thomas H. Lee Equity Fund*, 612 F.Supp.2d at 281; and *Fezzani v.*

8   *Bear, Stearns & Co.*, at ** 4-6 ("When Congress said that no person may rely on **any conduct**

9   actionable as securities fraud to establish a RICO violation, it meant it. (cites omitted). Plaintiffs

10  cannot seriously claim that their RICO cause of action incorporating over 300 paragraphs of

11  alleged securities fraud centered on [a co-defendant's] securities-fraud schemes, does not rely on

12  any such conduct.") (emphasis in original).

13      **H.      A RICO "Association-In-Fact" Enterprise Has Not Been Adequately Alleged.**

14      Plaintiffs argue that proof of the existence of an enterprise requires no more than the fact

15  that it engaged in conduct beyond the capacity of the individual participants.  Opp. at 30:19-21,

16  citing *Gonzalez v. Lloyds TSB Bank, PLC,* 532 F.Supp.2d 1200, 1209 (C.D.Cal. 2006).  This is

17  not a viable definition, for it would render meaningless the distinction between the "enterprise"

18  and the conduct in which it allegedly engages.  "[P]roof of a 'pattern of racketeering activity' is

19  not, by itself, proof of an 'enterprise.'  'Enterprise' and 'pattern of racketeering activity' are

20  separate elements that require separate proof." *Odom v. Microsoft Corp.*, 486 F.3d 541, 549 (9th

21  Cir. 2007) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981) .

22      An associated-in-fact enterprise of the sort alleged here requires proof that the

23  organization (whether formal or informal) "exhibits a hierarchical or consensual decision-making

24  structure beyond that inherent in the alleged racketeering activity." *United States v. Fernandez*,

25  388 F.3d 1199, 1223 (9th Cir. 2004)[13]  Comerica does not argue, as Plaintiffs claim, that the law

---

26  [13] Plaintiffs also cite *United States v. Feldman*, 853 F.2d 648 (9th Cir. 1988) for the proposition
    that Comerica's status as a corporate entity by itself satisfies the "enterprise" element of the
27  RICO claim.  That is a misreading of *Feldman*, which simply stated that a corporation "is in itself
    a legal entity and, *alone*, may be charged as the RICO enterprise." *Id.* at 655.  In other words, if a
28  corporation is alone charged or sued under RICO, its existing legal structure is sufficient to meet

1  requires organizational charts or evidence of a formal legal structure.  But the law *does* require

2  factual allegations (1) showing that the purported organization functioned as a "continuing unit"

3  of *some* kind, and (2) describing the decision-making structure that was in place for executing the

4  purpose of the enterprise.  *Odom*, 486 F.3d at 552; *Stearns v. Select Comfort Retail Corp.*, 2009

5  WL 1635931, *14 (N.D.Cal. June 5, 2009).  Those facts must be pled with the particularity

6  required for fraud-related claims set forth in Rule 9(b) of the Federal Rules of Civil Procedure.

7  *See, Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988); *Stearns*, at

8  *14.  Despite Plaintiffs' voluminous recitations of Comerica's alleged conduct, they fail to plead

9  facts showing the required element of an enterprise, and the RICO claims should be dismissed.

10 **III.     CONCLUSION**

11       For the reasons set forth above, Plaintiffs' complaint should be dismissed with prejudice.

12

13 DATED:  October 19, 2009                    BUCHALTER NEMER
                                             A Professional Corporation
14

15

16                                           By:_____/s/ Richard C. Darwin_____
                                                    RICHARD C. DARWIN
17                                                  Attorneys for Defendant
                                                    COMERICA BANK
18

19

20

21

22

23

24

25

26

27

28
   the enterprise element.  That is not the case here, where the "enterprise" is entirely undefined.

BN 4574576v11                                    24

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO