1            IN THE UNITED STATES DISTRICT COURT

2         FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

    PRITIKIN, ET AL,                 )  CV-09-3303-JF
5                                    )
                      PLAINTIFF,     )  SAN JOSE, CALIFORNIA
6                                    )
              VS.                    )
7                                    )  OCTOBER 30, 2009
    COMERICA BANK, ET AL,            )
8                                    )
                      DEFENDANT.     )  PAGES 1-24
9    _____)

10

11              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JEREMY FOGEL
12             UNITED STATES DISTRICT JUDGE

13

14   A P P E A R A N C E S:

15

16   FOR THE PLAINTIFF:  LAW OFFICES OF ROBERT LUBIN
                         BY: ROBERT LUBIN
17                           JOSEPH CAMENZIND, IV
                         177 BOVET ROAD, STE 600
18                       SAN MATEO, CA 94402

19

20   FOR THE DEFENDANT:  BUCHALTER NEMER
                         BY:  PETER G. BERTRAND
21                            RICHARD C. DARWIN
                         333 MARKET STREET, 25TH FL
22                       SAN FRANCISCO, CA 94105

23        (APPEARANCES CONTINUED ON THE NEXT PAGE)

24

25   OFFICIAL COURT REPORTER: SUMMER CLANTON, CSR, RPR
                             CERTIFICATE NUMBER 13185

                                                    1

```
1      FOR THE PLAINTIFF:   LAW OFFICES OF KENNETH PRITIKIN
                            BY:   KENNETH PRITIKIN
2                           2950 BUSKIRK AVE, STE 300
                            WALNUT CREEK, CA 94597
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1    SAN JOSE, CALIFORNIA          OCTOBER 30, 2009
2                   P R O C E E D I N G S
3              (WHEREUPON, COURT CONVENED AND THE
4    FOLLOWING PROCEEDINGS WERE HELD:)
5              THE COURT:  PRITIKIN VERSUS COAMERICA
6    BANK.
7              MR. BERTRAN:  GOOD MORNING, YOUR HONOR.
8    PETER BERTRAND AND RICK DARWIN APPEARING ON BEHALF
9    OF MOVANT COAMERICA BANK.
10             MR. LUBIN:  I'M ROBERT LUBIN, YOUR HONOR,
11   FOR PRITIKIN.
12             MR. PRITIKIN:  KENNETH PRITIKIN,
13   YOUR HONOR, FOR PRITIKIN.
14             THE COURT:  GOOD MORNING, SIR.
15             MR. CAMENZIND:  JOSEPH CAMENZIND FOR
16   PRITIKIN.
17             THE COURT:  THANK YOU.
18             THERE WERE A LOT OF ISSUES AND SUB ISSUES
19   HERE.  I'D LIKE TO FOCUS ON THE RICO EXCLUSION
20   BECAUSE I THINK IT MAY BE A DISPOSITIVE ISSUE AT
21   LEAST AS FAR AS FEDERAL JURISDICTION IS CONCERNED.
22             AND SINCE THAT'S THE ONLY FEDERAL CLAIM,
23   IT MAY WELL BE IF I'M PERSUADED BY THE DEFENDANTS
24   ON THAT POINT THAT I WOULD SIMPLY DISMISS THE
25   MATTER WITHOUT PREJUDICE AND PERMIT AN ACTION TO
```

1    STATE COURT.

2            THE LOGIC, IT SEEMS TO ME, OF THE RICO

3    EXCLUSION IS IT'S HARD TO OVERCOME.  I NEED TO HEAR

4    MORE FROM PLAINTIFF ABOUT THIS.

5            A CLAIM OF SECURITIES FRAUD AGAINST THE

6    FRAUDSTERS THEMSELVES CLEARLY CANNOT BE ASSERTED

7    UNDER RICO, IT CAN BE ASSERTED UNDER THE PSLRA, AND

8    CONGRESS IS VERY CLEAR ABOUT THAT.

9            THE ROLE OF THE BANK IN THIS CASE IS

10   ALLEGED TO BE AN AIDER AND ABETTOR, BUT THE

11   PREDICATE ACT FOR PURPOSES OF RICO IS SECURITIES

12   FRAUD.

13           AND SO ESSENTIALLY WHAT'S BEING ARGUED IS

14   THIS, AS I UNDERSTAND IT:  THE PEOPLE WHO ACTUALLY

15   COMMITTED THE FRAUD CANNOT BE SUED UNDER RICO AND

16   HAVE TO BE SUED UNDER THE PSLRA WITH ALL THE

17   PROCEDURAL REQUIREMENTS OF THAT STATUTE.

18           BUT PEOPLE WHO HELP THOSE PEOPLE VIOLATE

19   THE SECURITIES LAWS, WHICH ARGUABLY IS A LESS

20   ONEROUS ACT, CAN BE SUED UNDER RICO.

21           AND THE ARGUMENT IS:  WELL, IF CENTRAL

22   BANK SAYS THAT YOU CAN'T SUE THE AIDERS AND

23   ABETTORS BUT THE PSLRA SAYS THERE'S NO RECOURSE

24   AGAINST THE AIDERS AND ABETTORS, THAT THERE HAS TO

25   BE -- THEREFORE, THERE HAS TO BE RECOURSE UNDER

4

1    RICO.

2              THAT SEEMS TO BE INCONSISTENT WITH WHAT

3    CONGRESS WAS TRYING TO DO.  THEY WERE SAYING THAT

4    IF YOU VIOLATE SECURITIES LAWS, THERE IS A LIMITED

5    PRIVATE RIGHT OF ACTION UNDER THE PSLRA, BUT

6    BASICALLY WHAT WE WANT IS FOR THE SEC TO REGULATE

7    SECURITIES TRANSACTIONS.

8              AND IT SEEMS INCONSISTENT WITH THAT

9    LEGISLATIVE POLICY TO SAY THAT PEOPLE WHO ARE

10   SECONDARILY LIABLE FOR SECURITIES FRAUD, THAT THE

11   PRIVATE CITIZENS HAVE A GREATER RIGHT TO GO AFTER

12   THOSE PEOPLE UNDER THE RICO STATUTE.

13             SO I'M KIND OF -- AND THAT'S ESSENTIALLY

14   THE REASONING THAT THE COURTS THAT HAVE CONSIDERED

15   THIS ISSUE, INCLUDING THREE DISTRICT COURTS IN THE

16   NINTH CIRCUIT, HAVE ARRIVED AT.

17             SO I'M RELUCTANT TO TAKE THAT LEAP.  AND

18   IT DOESN'T LEAVE THE PLAINTIFFS WITHOUT A REMEDY.

19   THEY HAVE ALL OF THEIR STATE LAW FRAUD CLAIMS AND

20   BREACH OF FIDUCIARY DUTY, BUT I THINK THE PLACE I'M

21   FOCUSSING AT THE MOMENT IS ON RICO AND THE

22   SUBSTANCE OF THE RICO.

23             I THINK THERE ARE ALSO SOME PRETTY ROBUST

24   ISSUES HAVING TO DO WITH STATUTE OF LIMITATIONS AND

25   DISCOVERY, BUT I'M NOT SURE THOSE CAN BE RESOLVED

5

1    ON THE 12(B)(6) MOTION.

2            SO THAT'S KIND OF WHERE I'M AT AT THE

3    MOMENT.  SO LET ME HEAR FROM PLAINTIFF'S COUNSEL

4    ABOUT THIS.

5            MR. LUBIN:  YOUR HONOR, IN THE CASES THAT

6    DISCUSSED AIDING AND ABETTING, AND PREDICATE ACTS,

7    THE AIDING AND ABETTING WAS ACTUALLY SECURITIES

8    FRAUD.

9            FOR EXAMPLE, IN THE BANK CASES, THE BANK

10   ITSELF SOLD SECURITIES AND THEY PHONIED UP

11   DOCUMENTS TO SAY THAT THE SECURITIES WERE WORTH A

12   LOT MORE THAN THEY WERE.

13           IN OUR CASE THE PREDICATE ACTS HAVE

14   NOTHING AT ALL TO DO WITH SECURITIES LAW.  THEY

15   HAVE TO DO WITH THE BANKING SCHEME

16           THE COURT:  THE PREDICATE ACTS OF THE

17   BANK AS OPPOSED TO THE PREDICATE ACTS OF THE

18   WRONGDOERS, THE FRAUDSTERS, FOR LACK OF A BETTER

19   PHRASE.

20           MR. LUBIN:  YES.

21           AND ALL OF THAT, THERE ISN'T ONE OF OUR

22   PLAINTIFFS THAT COULD HAVE SUED COAMERICA FOR

23   SECURITIES FRAUD.  COAMERICA DIDN'T SELL

24   SECURITIES, THEY DIDN'T ADVERTISE SECURITIES.

25           THE COURT:  I UNDERSTAND THAT, COUNSEL.

1    BUT CENTRAL BANK MAKES IT CLEAR THAT YOU CAN'T SUE

2    AIDERS AND ABETTORS FOR SECURITIES FRAUD UNDER THE

3    PSLRA, ANYWAY, SO YOU ARE RIGHT.

4         THEY COULDN'T SUE THEM UNDER THE

5    SECURITIES LAWS, BUT THAT DOESN'T MEAN THEY COULD

6    BE SUED UNDER RICO FOR HELPING SOMEONE ELSE VIOLATE

7    THE SECURITIES LAWS.  THAT'S THE QUESTION.

8         MR. LUBIN:  WELL, IF YOU LOOK AT THE

9    PSLRA, I BELIEVE THAT THE STATUTES -- CONGRESSIONAL

10   INTENT WAS TO PREVENT AIDERS AND ABETTORS WHO

11   PARTICIPATE IN THE SECURITIES VIOLATION, OTHERWISE

12   THIRD PARTY CREDITORS, FOR EXAMPLE, WOULD NOT HAVE

13   A CAUSE OF ACTION AGAINST THE BANK FOR VIOLATING A

14   RICO STATUTE.  THEY WOULDN'T HAVE ANY REMEDY,

15   WHATSOEVER.

16        THE COURT:  WELL, BUT THAT'S WHAT I'M

17   TRYING TO GET AT.  I THINK YOUR CLIENTS DO HAVE A

18   REMEDY, ASSUMING THEY CAN GET AROUND THE TIME BARS

19   THAT HAVE BEEN RAISED AS TO ALL OF THE CLAIMS, BUT

20   THEY HAVE OTHER REMEDIES UNDER BANKING LAW, UNDER

21   COMMON LAW, IF THE CLAIMS ARE TIMELY THEY HAVE

22   CLAIMS AGAINST COAMERICA.

23        BUT THE ONLY QUESTION I'M FOCUSSING ON,

24   BECAUSE IT'S ONE THAT GOES TO FEDERAL JURISDICTION,

25   IS WHETHER THEY HAVE A RICO CLAIM.

1          AND CONGRESS WAS TRYING TO LIMIT THE

2     APPLICATION OF RICO TO SECURITIES FRAUDS SCHEMES, I

3     MEAN, IT'S CLEARLY WHAT THEY WERE DOING.

4          SO THE QUESTION IS:  DOES IT SWEEP IN

5     PEOPLE WHO HELP PEOPLE COMMIT SECURITIES FRAUD

6     SCHEMES AS WELL AS THE PEOPLE WHO COMMIT THE FRAUD

7     THEMSELVES?

8          IF YOUR CLIENTS WOULD HAVE NO REMEDY AT

9     ALL, I THINK IT WOULD BE A MUCH HARDER CASE.  I

10    DON'T THINK CONGRESS WAS INTENDING TO DO THAT.

11    THEY WERE JUST SAYING YOU CAN'T USE THE RICO

12    STATUTE TO, ESSENTIALLY, ENFORCE THE SECURITIES

13    LAWS.

14          AND IT'S TRUE THAT THERE'S NO SECURITIES

15    FRAUD CLAIMS AGAINST COAMERICA, I UNDERSTAND THAT.

16    BUT WHAT COAMERICA IS ACCUSED OF DOING IN THE RICO

17    COUNT THAT YOU HAVE IS HELPING THE BAD GUYS VIOLATE

18    THE SECURITIES LAWS.

19          AND I THINK THAT'S WHERE I'M STUCK.  I

20    MEAN, IT'S JUST A QUESTION OF HOW BROADLY OR HOW

21    NARROWLY THAT -- YOU ARE SAYING -- IF I ADOPT YOUR

22    POSITION YOU ARE SAYING THAT A PRIVATE CITIZEN HAS

23    GREATER RIGHTS AGAINST THE AIDER AND ABETTOR THAN

24    THEY DO AGAINST THE PEOPLE WHO COMMIT THE FRAUD, AT

25    LEAST UNDER RICO.

1          MR. LUBIN:  YOUR HONOR, IN OUR CASE THE

2     ONLY THING THE BANK DID WAS ENTER INTO THE BANKING

3     SCHEME.  AND THE BANKING SCHEME HAD NOTHING AT ALL

4     TO DO WITH VIOLATION OF SECURITIES LAWS.

5          THE COURT:  OKAY.

6          SO YOU ARE SAYING THAT THE RICO

7     CONSPIRACY HAD NOTHING TO DO WITH THE VIOLATION OF

8     SECURITIES LAWS, IT HAD TO DO WITH A BANKING

9     ARRANGEMENT?

10         MR. LUBIN:  THAT'S CORRECT, YOUR HONOR.

11         THE COURT:  BUT THE PURPOSE OF THE

12    BANKING ARRANGEMENT WAS TO ENABLE THE FOUR STAR

13    PEOPLE TO DEFRAUD YOUR CLIENTS IN THE SALE OF

14    SECURITIES.

15         MR. LUBIN:  THAT'S CORRECT.

16         MR. PRITIKIN:  YOUR HONOR, IF I COULD

17    MAKE A POINT.  TWO POINTS.

18         FIRST OF ALL, YOU CAN HAVE A SCHEME THAT,

19    STANDING ALONE, MEETS THE DEFINITION OF ENTERPRISE

20    UNDER ODOM.  AND THAT SCHEME MAY NOT INVOLVE

21    SECURITIES FRAUD.  THE BANKING SCHEME MEETS THE

22    DEFINITION OF AN ENTERPRISE STANDING A LONE UNDER

23    ODOM.  IT'S A RACKETEERING ENTERPRISE IF YOU

24    FUNCTION AS A UNIT, ALL OF THOSE ELEMENTS.

25         YOU ARE SAYING WELL, YES, THE BANKING

1    SCHEME, THE PURPOSE OF IT WAS TO HELP THE

2    SECURITIES FRAUD THAT WAS GOING ON OVER THERE.  AND

3    THAT'S TRUE; WE DON'T DENY THAT.

4         THE QUESTION IS WHETHER CONGRESS IN

5    ENACTING THE PSLRA INTENDED THAT RESULT.

6         LET ME GIVE YOU AN EXAMPLE.  COUNSEL

7    SUGGESTED THAT FOUR STARS' CREDITORS WOULD BE

8    UNABLE TO PURSUE A RICO CLAIM.  LET ME GIVE A MORE

9    DRAMATIC EXAMPLE, IF I MIGHT.

10         SUPPOSE YOU HAD A GROUP OF PEOPLE WHO GOT

11    TOGETHER AND DECIDED THAT THEY WERE GOING TO KIDNAP

12    THE CHILDREN OF WEALTHY PEOPLE TO GET RANSOMS AND

13    THAT'S ALL THEY WERE INVOLVED IN, KIDNAP FOR

14    RANSOM.

15         BUT THEN THEY TOOK THE MONEY AND THEY

16    USED IT OR GAVE IT TO SOMEONE ELSE WHO THEN USED IT

17    TO PERPETRATE A SECURITIES FRAUD SCHEME, SO THEY

18    WERE TIED TOGETHER.

19         AND THE SUGGESTION HERE IS THAT, WELL,

20    THE PEOPLE WHO THEIR ONLY INVOLVEMENT WAS THE

21    KIDNAPPING AND THEY DID THIS FOR YEARS, THEY

22    COULDN'T BE CHARGED BECAUSE THERE WAS A RELATION TO

23    A SECURITIES FRAUD.

24         THE COURT:  THAT'S A GOOD ARGUMENT, BUT I

25    THINK HERE'S WHERE I'M NOT SURE IT WORKS.

1          THE KIDNAPPING IS INDEPENDENTLY WRONGFUL.

2     YOU DON'T WANT PEOPLE RUNNING AROUND KIDNAPPING

3     PEOPLE FOR RANSOM.

4          WHAT WAS WRONGFUL ABOUT THE BANKING

5     SCHEME?  THINGS WERE DONE TO DECEIVE DEPOSITORS AND

6     SO FORTH.  BUT WHAT MAKES THE -- EVEN IF YOU MEET

7     THE ENTERPRISE REQUIREMENT, WHICH I THINK YOU

8     PROBABLY DO, WHAT IS THE CORRUPT PURPOSE OF THE

9     ENTERPRISE OTHER THAN TO BE PART OF THIS SECURITIES

10    FRAUD SCHEME?

11         MR. PRITIKIN:  TO DEFRAUD CREDITORS.  THE

12    PURPOSE OF THE BANKING SCHEME WAS THAT FOUR STAR

13    HAD FUNDS IN AN ACCOUNT THAT THEY NEEDED TO HAVE

14    ACCESSIBLE TO PAYCHECKS TO ITS INVESTORS AND PAY

15    OTHER EXPENSES OF THE OPERATION.

16         BUT IF THEY DID NOTHING OTHER THAN ACT

17    LEGITIMATELY, FOUR STARS' CREDITORS WITH MULTI

18    MILLION DOLLAR WRITS OF EXECUTION AND PREJUDGMENT

19    WRITS OF ATTACHMENT WOULD HAVE ATTACHED THOSE

20    FUNDS.  THERE WOULD HAVE BEEN NO ABILITY TO DO THAT

21    AND THE OPERATION WOULD SHUT DOWN.

22         SO FOUR STAR AND COAMERICA COOKED UP A

23    SCHEME TO KEEP THE FUNDS AWAY FROM THESE CREDITORS.

24    THEY DID IT THROUGH AN ELABORATE SHELL GAME OF

25    MOVING THE FUNDS BACK AND FORTH TO DEFRAUD THE

1    CREDITORS.  SO THIS IS A VIOLATION OF THE

2    CALIFORNIA FRAUDULENT PRACTICES ACT.

3            IN ADDITION, THE CONDUCT IN AND OF ITSELF

4    VIOLATED, WE'VE ALLEGED IN THE COMPLAINT, FEDERAL

5    BANKING REGULATIONS, ORDINARY BANKING PRACTICES AND

6    COAMERICA'S OWN INTERNAL PROCEDURES.

7            SO THIS WAS THE PRACTICE THAT WAS

8    EXTREMELY UNORTHODOX DESIGNED TO KEEP FUNDS AWAY

9    FROM THE CREDITORS WHO WERE ENTITLED TO THEM.

10           THE COURT:  WHICH IS PART OF THE

11   SECURITIES FRAUD SCHEME.

12           YOUR KIDNAPPING ANALOGY IS ONE THAT I

13   WOULD LIKE TO GET DEFENDANTS TO RESPOND TO.

14           BUT THE SCHEME IN THIS CASE IS TO, AND

15   IT'S A PONZI SCHEME, THAT'S WHAT'S ALLEGED.  AND

16   THE WAY THAT THE INVESTORS ARE KEPT IN THE DARK IS

17   BY MONEY BEING MOVED AROUND IN THE WAY YOU JUST

18   DESCRIBED, BUT THAT'S ALL IN AID OF THE PONZI

19   SCHEME.

20           YOU COULD PROBABLY BREAK ANYTHING DOWN TO

21   AN ATOMIC LEVEL IF YOU WANTED TO.  THE QUESTION IS

22   HOW INTERTWINED ARE THE ACTS OF THE BANK AND THE

23   ALLEGED SECURITIES FRAUD SCHEME?

24           MR. PRITIKIN:  THE SECOND POINT I WOULD

25   LIKE TO MAKE, AND THIS GOES TO THE QUESTION OF

1    BREAKING IT DOWN TO THIS ATOMIC LEVEL YOU TALKED

2    ABOUT, WHAT ARE THE PREDICATE ACTS HERE?

3              I THINK THAT'S THE KEY BECAUSE I HAVEN'T

4    SEEN THE NINTH CIRCUIT CASE THAT IS DIRECTLY ON

5    POINT HERE, BUT THE *BALD EAGLE CASE WHICH IS THIRD

6    CIRCUIT SAID THE PURPOSE OF THE PSLRA AMENDMENT OF

7    THE RICO STATUTE WAS TO EXCLUDE CONDUCT WHICH AS A

8    PREDICATE WOULD BE RELIED UPON AS A PREDICATE ACT

9    FOR RICO WHERE THAT CONDUCT IS ACTIONABLE

10   SECURITIES FRAUD.

11             AND SO YOU DO LOOK AT THE PREDICATE ACT.

12   AND HERE THE PREDICATE ACTS THAT ARE ALLEGED IN

13   SUPPORT OF THE RICO CLAIM AGAINST COAMERICA IS THE

14   WIRE FRAUD AND THE VIOLATION OF LAW, OF FEDERAL

15   LAW, THAT COAMERICA DID.  NONE OF THOSE PREDICATE

16   ACTS STANDING ALONE INVOLVE CONDUCT WHICH WOULD BE

17   ACTIONABLE SECURITIES FRAUD.

18             SO I THINK THE REAL QUESTION IS WHEN YOU

19   LOOK AT PSLRA AMENDMENT AND IT SAYS THAT A

20   PLAINTIFF CANNOT RELY ON CONDUCT THAT WOULD BE

21   ACTIONABLE SECURITIES FRAUD TO SUPPORT TO ESTABLISH

22   A RICO CLAIM, WHOSE CONDUCT ARE WE TALKING ABOUT?

23   AND I DON'T KNOW THAT THE STATUTE IS CLEAR.  BUT IF

24   YOU LOOK AT CONGRESSIONAL INTENT, IT TELLS YOU

25   EXACTLY WHAT THEY ARE TALKING ABOUT.

1          THE HOUSE CONFERENCE COMMITTEE REPORT

2     SAYS THAT WHAT THEY'RE CONCERNED ABOUT IS

3     SECURITIES FRAUD DEFENDANTS WHO HAVE TO FACE THIS

4     TRIPLE BLUNDER, SINCE THE COURT TALKED ABOUT IT, OF

5     RICO.

6          THEY ARE ALREADY SUBJECT TO SECURITIES

7     FRAUD REMEDIES, THEY SHOULDN'T BE -- IT'S UNFAIR,

8     THAT WAS THE TERM USED IN THE HOUSE COMMITTEE

9     REPORT AND THAT WAS THE TERM USED WHEN THE SEC

10    CHAIRMAN TESTIFIED BEFORE CONGRESS, IT'S UNFAIR TO

11    SUBJECT THESE PEOPLE WHO ALREADY HAVE SECURITIES

12    FRAUD REMEDIES AGAINST THEM TO ALSO HAVE RICO

13    REMEDIES.

14          BUT THAT'S NOT THE CASE HERE.  AND THAT

15    GOES TO THE QUESTION OF WHAT DID CONGRESS MEAN WHEN

16    THEY TALKED ABOUT YOU SHOULD NOT RELY ON CONDUCT.

17    WHOSE CONDUCT?

18          THE COURT:  THANK YOU.

19          THAT'S VERY HELPFUL.  LET ME GET A

20    RESPONSE FROM DEFENDANTS.

21          MR. BERTRAND:  THANK YOU, YOUR HONOR.

22    PETER BERTRAND ON BEHALF OF COAMERICA BANK.

23          I THINK YOUR HONOR HIT THE NAIL ON THE

24    HEAD WHEN YOU NOTED THE HARM THAT'S BEING ALLEGED

25    IS BASED UPON SECURITIES FRAUD.

1          AND THE THOMAS H. LEE EQUITY FUND CASE

2     DIRECTLY ADDRESSED IT.

3          THE COURT:  THAT'S THE NEW YORK CASE?

4          MR. BERTRAND:  THAT'S CORRECT,

5     YOUR HONOR.

6          AND THERE ARE A NUMBER OF OTHER CASES

7     THAT HAVE COME DOWN THE EXACT SAME WAY, AND THAT IS

8     YOU DON'T HAVE TO SHOW THAT THE DEFENDANT YOU ARE

9     SUING IS THE PERPETRATOR OF A SECURITIES FRAUD

10    THAT'S AT THE BASIS OF THE CLAIM IS SECURITIES

11    FRAUD.

12         THE PLAINTIFFS HAVE NO CLAIM AGAINST

13    COAMERICA BANK WITH RESPECT TO THEIR HAVING

14    RECEIVED PAYMENTS OUT OF THE FOUR STAR ACCOUNTS,

15    THEIR CLAIMS ARE AIDING AND ABETTING FRAUD.

16         THE COURT:  ALL RIGHT.  LET ME REPHRASE

17    THAT AND MAKE SURE I UNDERSTAND YOU.

18         THE PLAINTIFF WOULD NOT HAVE A CLAIM FOR

19    DAMAGES AGAINST COMERICA IF THERE HADN'T BEEN A

20    SECURITIES FRAUD.  SECURITIES FRAUD IS THE BUT FOR.

21         IT MAY BE THAT THE ALLEGATIONS ARE

22    SUFFICIENT TO STATE THAT COAMERICA VIOLATED THIS

23    AND THAT BANKING CODE AND THIS AND THAT STANDARD OF

24    PRACTICE, BUT PLAINTIFFS WOULDN'T HAVE STANDING TO

25    COMPLAIN ABOUT THAT IF THEY HADN'T BEEN THE VICTIMS

1      OF THE PONZI SCHEME.

2              MR. BERTRAND:  THAT'S EXACTLY RIGHT.  IT

3      GOES RIGHT TO THE HEART OF IT.

4              AND AS YOUR HONOR HAS NOTED, THE RESULT

5      OF SOMEBODY WHO'S MERELY ALLEGED TO BE AN AIDER AND

6      ABETTOR HAS GREATER LIABILITY THAN A PRIMARY

7      PERPETRATOR MAKES NO SENSE AND THE COURTS HAVE

8      KNOCKED THAT ISSUE DOWN.

9              THE COURT:  WHAT ABOUT MR. PRITIKIN'S

10     KIDNAPPER ANALOGY?

11             ARE THERE THINGS SO CORRUPT IN AND OF

12     THEMSELVES THAT THERE OUGHT TO BE RICO LIABILITIES?

13     DOES IT GO BACK TO THE STANDING DISCUSSION WE JUST

14     HAD?

15             MR. BERTRAND:  I THINK IT DOES,

16     YOUR HONOR.

17             NUMBER ONE, IF YOU LOOK AT THE ACTUAL

18     ALLEGATIONS, THEY DON'T EVEN ALLEGE THAT COAMERICA

19     HAD KNOWLEDGE OF THE PONZI SCHEME.  THEIR

20     ALLEGATIONS ARE MERELY THAT COAMERICA WAS A

21     DEPOSITORY BANK OR AN INSOLVENT ACCOUNT HOLDER WHO

22     CHOSE TO PAY ONE GROUP OF CREDITORS OVER ANOTHER

23     GROUP OF CREDITORS.

24             NOW HOW THAT RENDERS A BANK LIABLE FOR

25     $50 MILLION TO PEOPLE THAT IT HAS NO CONNECTION

1    WITH WHATSOEVER MAKES NO SENSE AT ALL.  THE <u>CASEY</u>

2    CASE ADDRESSED THAT ABSOLUTELY, SPECIFICALLY.

3            THEY ARE NOT THE BENEFICIARIES, THEY

4    DON'T GET TO COME IN AND SAY, WE THINK THEY

5    VIOLATED BANK POLICY, THEREFORE WE AS

6    NON-DEPOSITORS HAVE SOME RIGHTS AGAINST THE BANK OR

7    A BANK HAS TO BE A WATCHDOG OR POLICEMAN WITH

8    RESPECT TO ACCOUNTS.

9            THAT'S NOT WHAT THE LAW IS, AND THE CASES

10   ARE CLEAR ON THAT.

11           WE DON'T EVEN OWE FIDUCIARY DUTIES TO OUR

12   DEPOSITORS.  HOW COULD WE POSSIBLY HAVE THESE

13   DUTIES EXTENDED TO INVESTORS OF DEPOSITORS.  IT

14   MAKES NO SENSE, WHATSOEVER.

15           I'D LIKE TO ADDRESS ONE LAST THING.  I

16   KNOW YOU ARE VERY TIGHT ON TIME, BUT I WOULD LIKE

17   TO SUGGEST TO YOUR HONOR THAT I BELIEVE THE RICO

18   CLAIM CLEARLY HAS TO BE DISMISSED, BUT I THINK THAT

19   DISMISSAL OF ALL OF THE CLAIMS IS APPROPRIATE.

20           THE COURT:  BECAUSE OF THE TIME BAR?

21           MR. BERTRAND:  CORRECT, YOUR HONOR.

22           AND YOU KNOW, YOU CAN DISMISS THE RICO

23   CLAIM AND THEY CAN GO FILE IN STATE COURT AND WE

24   MAY VERY WELL BE BACK HERE WITH THESE CLAIMS UNDER

25   DIVERSITY JURISDICTION ISSUES.

1            SO I'M JUST SUGGESTING AT THIS POINT THAT

2     I THINK THAT THE CLAIMS ARE CLEARLY TIME BARRED AND

3     THAT THE ARGUMENTS REALLY COME DOWN TO, WELL, WE

4     DIDN'T KNOW ABOUT COAMERICA.

5            WELL, THAT'S NOT THE TEST AND THAT'S NOT

6     THE TEST UNDER JOLLY AND BERNSON AND NORGART AND

7     FOX, AND THE SHEPARD MULLEN CASE.

8            AND THEY ALSO HAD A DUTY OF DILIGENCE,

9     AND THERE IS NOT ONE WORD IN THEIR COMPLAINT ABOUT

10    ANY DILIGENCE THAT THEY EXERCISED AT ALL.

11            THE COURT:  THEY KNEW BANKS WERE INVOLVED

12    IN THE SUITS THAT WERE FILED IN '03 AND '04, THEY

13    JUST DIDN'T NAME YOUR CLIENT.

14            MR. BERTRAND:  THAT'S CORRECT,

15    YOUR HONOR.

16            ONE POINT I WOULD MAKE, AND WE MAKE IN

17    THE PAPERS, BUT I REALLY WANT TO EMPHASIZE IT.

18    EVEN THOUGH THEY FILED LAWSUITS AND THEY COULD HAVE

19    NAMED COAMERICA AS A DOE AND THEY COULD HAVE TAKEN

20    DISCOVERY, THE FACT THERE WAS BANKRUPTCIES FILED BY

21    FOUR STAR, ANSON AND GARRETT MEANT THEY DIDN'T EVEN

22    HAVE TO FILE A LAWSUIT.

23            UNDER RULE 2004, ALL THEY HAD TO DO WAS

24    GO INTO ANY ONE OF THOSE BANKRUPTCY PROCEEDINGS AND

25    FILE A REQUEST FOR DOCUMENTS AND FILE AND REQUEST

1    TO EXAMINE A BANK EMPLOYEE, AND THEY COULD HAVE

2    GOTTEN WHATEVER INFORMATION THEY CLAIM WAS NOT

3    OTHERWISE AVAILABLE TO THEM EVEN THOUGH THE ANSON

4    AND GARRETT LINE OF CREDIT AND PAYMENTS TO THE BANK

5    FROM FOUR STAR ACCOUNTS AND THE MOVING OF MONEY WAS

6    CLEARLY KNOWN.  THAT'S ALL THEY HAD TO DO AND THEY

7    DIDN'T.

8         AND AS BERNSON TELLS US, YOU KNOW, THE

9    TEST IS, DID THEY VIGOROUSLY PURSUE AVENUES?  THEY

10    DIDN'T.

11         AND THE FACT THAT THEY HAD NINE MONTHS TO

12    BRING THIS COMPLAINT AND FAILED TO ALLEGE A SINGLE

13    ITEM OF DUE DILIGENCE, THEY DID IT WITH RESPECT TO

14    THE CLAIMS, PARTICULARLY GIVEN WHAT'S IN THE PUBLIC

15    RECORD, I THINK ALL THEIR CLAIMS MUST BE DISMISSED.

16         THE COURT:  OKAY.  ALL RIGHT.

17         A BRIEF REPLY, PLEASE.

18         MR. LUBIN:  YES, YOUR HONOR.

19         THERE'S NOTHING IN THE PUBLIC RECORD

20    WHATSOEVER WHICH WOULD HAVE PUT A PLAINTIFF ON

21    NOTICE OR SUSPICION OF A RICO CLAIM AGAINST

22    COAMERICA.

23         THE COURT:  WHAT ABOUT THE OTHER CLAIMS,

24    THOUGH?

25         WHAT COUNSEL IS SAYING IS THAT YOUR

1    CLIENTS ARE FILING INDIVIDUAL LAWSUITS AGAINST THE

2    PRIMARY WRONGDOERS, AND IN THAT THEY ALLEGE THE USE

3    OF BANKS TO CARRY OUT THE SCHEME.

4              SO WHAT ABOUT THE ARGUMENT THAT BASED ON

5    WHAT'S IN THE PUBLIC RECORD, THE COURT SHOULD FIND

6    THAT AT SOME POINT THEY SHOULD HAVE FIGURED OUT

7    WHICH BANKS THEY WERE?

8              MR. LUBIN:  YES, YOUR HONOR.

9              THE ONLY BANK THAT WAS INVOLVED WAS

10   RESERVOIR CAPITAL FIRST CHARTER.

11             AND IN THAT CASE, THE FIRST CHARTER

12   ATTORNEYS DIDN'T SUE ANY OTHER BANK EVEN THOUGH

13   THEY HAD KNOWLEDGE THAT OTHER BANKS WERE AROUND.

14             AND IF THE ATTORNEYS WHO HANDLED THAT

15   CASE, WE ASSUME THEY DID THEIR DUE DILIGENCE, WOULD

16   OBJECT TO OTHER BANKS.  THE BANKS, AS COUNSEL SAYS,

17   WERE IN THE BANKRUPTCY RECORDS, THERE ARE FIVE

18   DIFFERENT COUNTS.  BUT NOTHING IN THAT CASE

19   SUGGESTS THAT THE PLAINTIFFS WOULD HAVE BEEN ON

20   NOTICE.

21             IN 2002 OR 2003, WHO COULD HAVE IMAGINED

22   A BANK BEING INVOLVED IN A PONZI SCHEME?  IT JUST

23   COULDN'T HAPPEN.

24             THE COURT:  WELL, BUT APPARENTLY IT DID.

25             MR. LUBIN:  APPARENTLY IT DID WITH ONE

1    BANK, BUT THERE WERE A NUMBER OF BANKS THAT WERE

2    LISTED.

3            AND IF THE PLAINTIFFS IN THE BANK CASE OR

4    THEIR ATTORNEYS -- THEY KNEW ABOUT COAMERICA.

5    THERE IS A CERTAIN -- MR. WAY, *STEVEN WAY WHO WAS

6    ON THE BOARD OF DIRECTORS OF THE BANK THAT WAS

7    SUED, AND HE WAS AN OFFICER OF COAMERICA, A -- OF

8    FOUR STAR.

9            AND CERTAINLY, IF THE ATTORNEY KNEW THAT

10   HE WAS AN OFFICER OF FOUR STAR HE WOULD HAVE DONE

11   THAT INVESTIGATION AND COME UP WITH NOTHING.

12            THE COURT:  OKAY.  ALL RIGHT.

13            MR. PRITIKIN:  YOUR HONOR, MAY I BRIEFLY?

14            THE COURT:  AGAIN, I NEED TO REMIND

15   EVERYONE THERE ARE OTHER CASES.

16            MR. PRITIKIN:  YOUR HONOR, WITH REGARD TO

17   THE ISSUE OF DILIGENCE, THE LAW IS CLEAR THAT

18   PLAINTIFF ISN'T REQUIRED TO DO A FUTILITY ACT.  THE

19   QUESTION IS:  WOULD IT HAVE BEEN FUTILE TO

20   INVESTIGATE THE RECORDS, THE PUBLIC RECORDS?

21            COAMERICA ARGUES ON THE ONE HAND THAT

22   PLAINTIFFS SHOULD HAVE LOOKED AT THE RECORDS THAT

23   WERE AVAILABLE, BUT THEY ARGUE EQUALLY STRENUOUSLY

24   THERE'S NOTHING IN THE RECORDS THAT SUGGEST

25   ANYTHING OTHER THAN LEGITIMATE BANKING

21

1    TRANSACTIONS.

2              AND THEY CAN'T HAVE IT BOTH WAYS.  THE

3    FACT OF THE MATTER IS THE BANKING SCHEME ALLEGED IN

4    OUR COMPLAINT WAS SO SOPHISTICATED THAT IF YOU

5    LOOKED AT THE BANK STATEMENTS THEY WOULD LOOK LIKE

6    BANKING TRANSACTIONS, OVERDRAFTS, THINGS THAT BANKS

7    DO ALL THE TIME.

8              IT WAS THE CONSPIRACY THAT MADE IT

9    IMPROPER, AND ONLY THE CONSPIRATORS KNEW THE

10   CONSPIRACY.  ONE OF THE CONSPIRATORS HAD TO BREAK

11   IN ORDER FOR PEOPLE TO KNOW WHAT WAS GOING ON.  AND

12   IN 2008 ONE OF THE CONSPIRATORS, MARK COHN, DID

13   BREAK.

14             WITH REGARD TO THE STATUTE OF

15   LIMITATIONS, AGAIN, JUST REALLY BRIEFLY.  FOX AND

16   GRISHAM AND THE E-FAB CASES THAT WE'VE CITED ALL

17   STEM FROM THE PROPOSITION YOU MAY KNOW THAT YOU

18   HAVE BEEN HARMED AND THE HARM WAS PROBABLY DUE TO

19   SOMEBODY'S WRONGDOING.

20             BUT IF THERE'S A SEPARATE CAUSE OF ACTION

21   THAT INVOLVES A DIFFERENT SET OF FACTS THAT UNLESS

22   YOU EITHER KNOW THOSE FACTS OR HAVE REASON TO

23   SUSPECT THOSE FACTS, THE STATUTE OF LIMITATIONS

24   HASN'T STARTED IN THOSE FACTS.

25             WITH FOX IT WAS A DIFFERENT TYPE OF

1    WRONGDOING.  WITH E-FAB IT WAS A DIFFERENT TYPE OF

2    WRONGDOING.  BUT WITH GRISHAM THE WRONGDOING WAS

3    THE SAME.  WELL, WHAT WAS DIFFERENT WAS THE TYPE OF

4    HARM, ECONOMIC HARM VERSUS PHYSICAL HARM.

5            SO THE ISSUE IS:  IS THERE AN ELEMENT OF

6    THAT SECOND CAUSE OF ACTION, AN ESSENTIAL ELEMENT

7    WHICH YOU HAVE NO REASON TO SUSPECT THE FACTS?

8            THE COURT:  IT'S EVEN MORE BASIC THAN

9    THAT.  AND THAT IS:  IS THERE AN ISSUE OF FACT AS

10   TO WHAT PLAINTIFF SHOULD HAVE KNOWN?

11           MR. PRITIKIN:  SURE.

12           THE COURT:  I HAVE TO STOP.

13           MATTER IS SUBMITTED.  I WILL GET A RULING

14   OUT TO YOU VERY SOON.

15           THANK YOU VERY MUCH.

16           (WHEREUPON, THE PROCEEDINGS IN THIS

17   MATTER WERE CONCLUDED.)

18

19

20

21

22

23

24

25

1

2

3

4                        <u>**CERTIFICATE OF REPORTER**</u>

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22                    _____
                       SUMMER A. CLANTON, CSR, RPR
23                     CERTIFICATE NUMBER 13185

24

25