**E-Filed 11/17/2009**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT PRITIKIN, et al.,<br><br>       Plaintiffs,<br><br>    v.<br><br>COMERICA BANK, et al.,<br><br>       Defendants. | Case Number C 09-03303 JF (RS)<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Docket Nos. 11, 16, 20 |

### I. BACKGROUND

Plaintiffs, a group of sixty-four investors, filed the instant action on July 20, 2009, alleging claims for aiding and abetting a breach of fiduciary duty; aiding and abetting fraud; violation of California's Unfair Competition Law, Cal. Bus & Prof. Code § 17200 et. seq.; violation of the Racketeer Influence and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1961(1)(c)(d); and civil conspiracy to breach a fiduciary duty against Defendants Comerica Bank, et al. ("Comerica"). On August 28, 2009, Comerica moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs oppose the motion.[1] For the reasons set forth below, the motion

---

[1] On October 8, 2009, Plaintiffs moved to strike the Declaration of Monique Jewett-Brewster submitted by Comerica in support of its motion to dismiss. On October 26, 2009, Plaintiffs moved to strike a portion of Comerica's brief in reply to Plaintiffs' opposition.

will be granted with leave to amend.

The relevant allegations of the complaint, which are assumed to be true for purposes of Comerica's motion, are as follows. From December 1999 through approximately October 2002, ("the loss period"), Plaintiffs invested in Four Star Financial Services, LLC ("Four Star"). Complaint ¶ 9. Four Star was managed by Ron Anson, Jack Garrett, and Mark Cohn ("the Managers"). *Id.* ¶ 8. Although Four Star in fact was insolvent and unable to pay the millions of dollars it owed in creditor claims, the Managers were able to convince Plaintiffs that Four Star was profitable and safe for investments. *Id.* ¶¶ 11, 13.

One way Four Star convinced Plaintiffs that it was financially strong and making good investments was by paying regular monthly distributions to its investors. *Id.* ¶ 45. When the Managers stopped making distributions to Plaintiffs in October 2002, Plaintiffs "immediately suspected that Four Star was in financial trouble and stopped making new investments." *Id.* ¶ 14. As a result, the Managers' "Ponzi" scheme collapsed, and in October 2003, Four Star was put into involuntary bankruptcy. *Id.* ¶¶ 14, 15. The Managers were the subject of a criminal investigation, and Cohn was sentenced to a five-year federal prison term for his role in a Four Star credit card scheme. *Id.* ¶ 54.

Plaintiffs claim that they first learned about Comerica's role in the Ponzi scheme in October 2008, when Cohn spoke publicly about a "banking scheme" between Four Star and Comerica. *Id.* ¶ 55. According to Plaintiffs, Comerica began its participation in the scheme not later than mid-1999, when Richard Smith ("Smith"), then a vice-president of Comerica, issued a multi-million dollar line of credit to Anson and Garrett. *Id.* ¶ 19. Anson and Garrett were Smith's personal accountants. *Id.* ¶ 20. The alleged banking scheme is complex in nature, but it generally involved Comerica knowingly assisting Four Star in moving funds quickly from Four Star's accounts to clear monthly distribution checks to investors while concealing money from creditors. *Id.* ¶ 33.

---

Because the documents in question do not affect the disposition of the motion to dismiss, the motions to strike will be terminated as moot.

During the loss period, Plaintiffs collectively invested more than $50 million in Four Star. *Id.* ¶ 10. Plaintiffs allege that "upon information and belief...Comerica and Smith purposely concealed their material and knowing assistance [of]...Four Star Managers' fraud and breach of fiduciary duty to Plaintiffs and other investors of Four Star." *Id.* ¶ 51. Plaintiffs claim that "it would have been impossible for Plaintiffs to have discovered or suspected the existence of the Banking Scheme or Comerica's...involvement in the Banking Scheme, or the Ponzi Scheme" and that there were "no publicly-available documents Plaintiffs could have accessed in the exercise of reasonable diligence that would have disclosed or implied such participation or involvement, or the existence of the Banking Scheme." *Id.* Plaintiffs also allege upon information and belief that prior to the filing of the instant action, for fear of possible self-incrimination, Anson and Garrett "were unwilling to cooperate with any investigations or inquiries into the operation of Four Star, including without limitation investigations by the trustee of the Four Star bankruptcy estate and others in connection with the Four Star bankruptcy on the ground." *Id.* ¶ 53.

The Court takes judicial notice that between the end of the loss period and Cohn's public disclosure of the alleged Banking Scheme, a number of lawsuits were filed against Four Star by former investors. Comerica Requests for Judicial Notice ("RJN") Exs. 4-9, 13, 17. Several of the plaintiffs in these suits are named Plaintiffs herein. On August 4, 2003, Plaintiff Steve Gevirtz filed suit against Anson, Garrett, and Four Star alleging multiple claims related to the scheme at issue in this case. RJN Exs. 5, 26. On October 14, 2003 Plaintiffs Jon Ferrara, Arlene Ferrara, and The Ferrara Family Trust filed suit alleging losses resulting from investments in Four Star. RJN Ex. 9. On February 13, 2004, Plaintiffs Phyllis Klein, Kenneth L. Krause, Perry Gibson, and the Krause/Gibson Revocable Trust retained counsel and filed a class action against Cohn, Garrett, Anson, and others making multiple claims regarding the same alleged scheme at issue here. RJN Ex. 13. On May 24, 2004, Plaintiffs Phyllis Klein, the Phyllis Klein Trust, Kenneth Krause, Perry Gibson, and the Krause/Gibson Revocable Trust amended their class action suit to name two of Four Star's banks as defendants. The amended complaint in that action alleges, among other things, that the banks aided and abetted the Four Star Ponzi scheme by financing Four Star's operations through lines of credit to Anson and Garrett, and by

3

"shuffling funds" among accounts held by Four Star entities. RJN Ex. 17, ¶¶ 63, 86, 92.  In or about March 2004, a public website called "FourStarFraud.com," was created to provide summaries of judicial proceedings in federal, bankruptcy, and state courts.  RJN Ex. 22.

## II.  LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief may be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party.  *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998), *see also Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1997).  However, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.  *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); *see also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive motion to dismiss).  Leave to amend should be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F. 3d 245, 248 (9th Cir. 1995).

## III.  DISCUSSION

### A. Documents considered

"On a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment."  *Thomas v. Walt Disney Co.,* No. 08-15602, 2009 WL 2011388 at *1 (9th Cir. 2009), quoting *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Comerica makes numerous requests for judicial notice, all of which pertain to documents of public record.  *See* RJN Exs. 1-26.  The majority of the documents are court records of complaints and supporting documents filed against Four Star and affiliated parties concerning Four Star's financial dealings and the Ponzi scheme alleged in the instant complaint.  RJN Exs. 2-3, 4-9, 13, 15, 17, 21, 24, 26.  The remaining requests for judicial notice include court filings related to Four Star's bankruptcy, RJN Exs. 1, 10-12, 14, 16, 19, 20, 23, 25, an article from the *Wall Street Journal* about Four Star investments, RJN Ex. 18, and a screenshot of FourStarFraud.com, RJN

Ex. 22.

Plaintiffs contend that the exhibits are irrelevant to the instant proceedings because Plaintiffs had no obligation to investigate public records for evidence of Comerica's misconduct and because even if there were such an obligation the exhibits contain no facts indicating that Plaintiffs might have claims against Comerica. However, as argued by Comerica, each of the documents was in the public domain within the six-year time period between Plaintiffs' injury and the date Plaintiffs filed the instant action. As noted above, some of the documents are from lawsuits by named Plaintiffs in the instant case against Four Star and related affiliates, including banks allegedly involved in activity similar to that alleged in the instant complaint. These documents are directly relevant in determining whether Plaintiffs' claims against Comerica are barred by the applicable statute of limitations or are subject to equitable tolling, the discovery rule, or equitable estoppel. Among other things, Comerica points out that it was named in Four Star's bankruptcy filings as a bank with which Four Star had a commercial relationship. *See e.g.* RJN Ex. 11 at 2. Accordingly, the request for judicial notice will be granted.[2]

**B. Federal Subject-Matter Jurisdiction**

Only one of Plaintiffs' claims for relief – their RICO claim – presents a federal question. Section 107 of the Private Securities Litigation Reform Act ("PSLRA") (the "RICO amendment"), adopted in 1995, eliminated securities fraud as a predicate act upon which a RICO claim may be based. *See* 18 U.S.C. § 1964(c) (providing that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962"); *Trachsel v. Bucholz,* No. C-08-02248 RMW, 2009 WL 86698 at *3 (N.D. Cal. Jan. 9, 2009) (holding that the PSLRA eliminated securities fraud as a predicate act upon which a RICO claim could be based). Plaintiffs argue nonetheless that their RICO claim

---

[2] The Court also will take judicial notice of the House Conference Committee Report on the Private Securities Litigation Reform Act of 1995 ("PSLRA"), H.R. Conf. Rep. No. 104-369 (1995). Plaintiffs' Unopposed Request for Judicial Notice (P. RJN) Ex. A; *Thomas,* 2009 WL 2011388 at *1 (holding that judicial notice of a public record is proper within the context of a motion to dismiss).

5

Case Number C 09-03303 JF (RS)
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFLC1)

falls outside the scope of the amendment. They contend that the amendment was meant to protect securities fraud *defendants*, not securities fraud *conduct*, from the "unnecessary and unfair' threat of treble damages and other extraordinary remedies provided by RICO" (H.R. Conf. Rep. No. 104-369 (1995) at 47), and they point out that their aiding and abetting claims against Comerica may not be maintained under the PSLRA itself. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994) (holding that the private right of action implied in the securities laws does not extend to aiders and abettors).

The Ninth Circuit has yet to address this question directly. However, in *Howard v. America Online Inc.*, 208 F.3d 741 (9th Cir. 2000), *cert. denied*, 531 U.S. 828, 121 S.Ct. 77 (2000), the court concluded that, despite the fact that plaintiffs lacked standing to assert a securities fraud claim, the RICO amendment still applied because the predicate act itself was conduct actionable under section 1962. *Id.* at 749-50.

The United States District Court for the Southern District of New York has held that, "'even were [this] Court to conclude that [defendant's] conduct merely constituted unactionable aiding and abetting...[the] Amended Complaint still relies extensively on...fraud to establish [defendant's] liability under RICO' and therefore falls squarely within the scope of the PSLRA bar." *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F.Supp.2d 267, 281 (S.D.N.Y. 2009), quoting *Fezzani v. Bear, Stearns & Co.*, No. 99 Civ. 0793, 2005 WL 500377, at *4 (S.D.N.Y. Mar 2, 2005). The court's reasoning is persuasive here. Plaintiffs' alleged injury arises entirely from Comerica's alleged aiding and abetting of Four Star's underlying securities fraud scheme. "The language of the statute simply does not require that, for a RICO claim to be barred, the plaintiff who sues under RICO must be able to sue under securities laws, or that the conduct 'actionable as securities fraud' on which the plaintiff relies to establish the RICO violation must be that of the defendant." *Id.* at 281-282.

The holding in *Thomas H. Lee Equity Fund V* is amply supported by the legislative history surrounding the RICO Amendment. As the court observed, "the amendment barring RICO claims was made in the same statute that explicitly dealt with the Supreme Court's decision in *Central Bank* by authorizing only the SEC-not private parties-to bring enforcement

actions against aiders and abettors. *Id.* at 282, citing PSLRA, Pub.L. No. 104-67, § 104, 109 Stat. 737, 757, codified in 15 U.S.C. § 78t(f). The court also noted that:

> It would be strange indeed if Congress, in a statute that otherwise bars private causes of action under RICO for predicate acts that describe conduct actionable as securities fraud, nevertheless chose to allow enhanced RICO remedies-treble damages and attorneys' fees-against *only* the very parties that Congress simultaneously made immune from private suit under the securities laws. The better interpretation-and the one supported by the plain meaning of § 107-is that the RICO Amendment bars claims based on conduct that could be actionable under the securities laws even when the plaintiff, himself, cannot bring a cause of action under the securities laws. *Id.* at 282-83.[3]

**C. Supplemental jurisdiction**

While federal courts may exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction," id. § 1367(c)(3). Indeed, unless "considerations of judicial economy, convenience[,] and fairness to litigants" weigh in favor of the exercise of supplemental jurisdiction, "a federal court should hesitate to exercise jurisdiction over state claims." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966); *see also Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988) ("[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."). Because it remains unclear whether Plaintiffs can state a viable federal claim, the Court will defer its review of the remaining state-law claims against all Defendants. The Court notes however, that as to some or all of those claims, Plaintiffs may have difficulty escaping the bar of the statute of limitations.

---

[3] Plaintiffs rely upon a conflicting Southern District decision *in OSRecovery, Inc. v. One Groupe Intern.,* Inc., 354 F.Supp.2d 357, 369-71 (S.D.N.Y. 2005), a case in which the court held that aiding and abetting securities fraud could serve as the basis of a RICO claim because it was not otherwise actionable. However, no district court within the Ninth Circuit has followed this authority, which as discussed above appears to be logically inconsistent with *Howard. See also Thomas H. Lee Equity Fund V*, 612 F.Supp.2d at 281 (concluding that *OSRecovery, Inc.*'s "approach is both unpersuasive and against the great weight of precedent").

7

### IV. ORDER

Good cause therefor appearing, the motion to dismiss is GRANTED with leave to amend. Any amended complaint shall be filed within thirty (30) days of the date this order is filed.

IT IS SO ORDERED.

DATED: November 17, 2009

_____
JEREMY FOGEL
United States District Judge

1  This Order was served on the following persons:

2

3  Joseph Camenzind , IV     camenzindlaw@yahoo.com

4

5  Richard C. Darwin     rdarwin@buchalter.com, clauren@buchalter.com, hbennett@buchalter.com, lgerace@buchalter.com

6

7  Robert M. Lubin     r1817@aol.com, hcolive@aol.com

8

9  Kenneth Pritikin
Law Offices of Kenneth Pritikin
2950 Buskirk Avenue
10 Suite 300
Walnut Creek, CA 9459

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9
Case Number C 09-03303 JF (RS)
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFLC1)